**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | CASE NO. 22-bk-02380 (ESL) |
| LAS MARTAS, INC. | CHAPTER 12 |
| Debtor. | |

**OBJECTION TO CONFIRMATION OF AMENDED CHAPTER 12 PLAN OF
REORGANIZATION DATED JANUARY 10, 2023**
(Related ECF No. 93)

TO THE HONORABLE COURT:

COMES NOW Condado 5, LLC ("Condado") through the undersigned counsel, and respectfully states and prays as follows:

Factual and Procedural Background

1. On or around January 12, 2005, Banco Popular de Puerto Rico ("BPPR"), predecessor in interest of Condado, extended to the Debtor a credit facility in the amount of $1,850,000.00 (the "Loan"). See *Loan Agreement* (Proof of Claim No. 1, Part 4, pp. 1-23).

2. The *Loan Agreement* is a commercial loan which purpose was to consolidate corporate and personal debts for the purchase of land, 5,000 quarts of milk quota, 36 heifers, machinery, equipment and for improvements to for the Debtor's facilities (that is, for the benefit of the corporate debtor). See *Loan Agreement*, Proof of Claim No. 1, Part 4, p. 2.

3. The Debtor's principal, Mr. Juan Manuel Barreto Ginorio, his former spouse, Ms. Maria Elena Hernandez Ruiz, and JM Dairy, Inc. all serve as guarantors to the Loan. See *Loan Agreement*, Proof of Claim No. 1, Part 4, p. 1 and *Amended Note*, Proof of Claim No. 1, Part 5, p. 9.

4. The *Loan Agreement* secures a *Master Promissory Note* in the amount of $1,850,000.00 (the *"Note",* Proof of Claim No. 1, Part 5, p. 1).

5. The Loan was to be repaid in a term of five (5) years, but BPPR agreed to extend it for ten (10) more years, which ultimately matured and has been past due and payable since January 12, 2015, to wit, over six (6) years ago. See *Amended Note*, Proof of Claim No. 1, Part

5, p. 22.

6. The Loan is also secured by, *inter alia*, 58,700 quarts of Debtor's bi-weekly milk quota. See *Security Agreement* executed on January 12, 2005, authenticated through affidavit no. 28,485 before Notary Public Francisco J. Arraiza Donate (Proof of Claim No. 1, Part 7, pp. 1-36.).

7. The lien afforded in the *Security Agreement* extends over the interests, rents and proceeds arising from the milk quotas and the continuing production of milk under the quotas every 14 days, as well as the existing accounts receivable related to the processing plant Suiza Dairy, Corp., and those that may be acquired subsequently or in the future by the Debtor. See *Security Agreement*, Proof of Claim No. 1, Part 7 and *UCC-1 Financing Statement No. 20210005226*, Proof of Claim No. 1, Part 8, p. 4

8. The *Security Agreement* was duly registered with the Oficina de Reglamentación de la Industria Lechera in compliance with the PR Registry of the Milk Industry Production Quota Transactions Registry Act of 2000, as amended, 5 L.P.R.A. §§ 1126 *et seq*. See ORIL's *Certification*[1]*,* ECF No. 22-1.

9. On June 21, 2011, the Debtor filed its first Chapter 12 petition, Bankr. Case No. 11-05237-ESL, which was substantively consolidated with Bankr. Case No. 11-05236-ESL, filed by Juan M. Barreto Ginorio, one of the Debtor's guarantors. These previously consolidated cases were dismissed on January 16, 2018 for material default with the terms of the confirmed plan on August 30, 2018. See Bankr. Case No. 11-05236-ESL12, ECF Nos. 386, 387 (dismissed upon Chapter 12 Trustee's request pursuant to 11 U.S.C. § 1208(c)(1),(6) for unreasonable delay prejudicial to creditors and material default with respect to the terms of a confirmed plan).

10. On December 14, 2018, the Debtor filed its second Chapter 12 petition (Case No. 18-07304-ESL12, ECF No. 1). More than two years later, on April 22, 2021, the case was dismissed through an *Opinion and Order* pursuant 11 U.S.C. § 1208(c)(1) for unreasonable delay

---

[1] For the sake of judicial economy, Condado seeks leave to file these documents in Spanish and, if an appeal should be taken, Condado will submit a certified English translation.

prejudicial to creditors, and <u>failure to timely file a confirmable plan</u> under 11 U.S.C. § 1208(c)(3). <u>See</u> *Opinion and Order*, Bankr. Case No 18-07304-ESL12, ECF No. 251, 2021 Bankr. LEXIS 1075, 2021 WL 8200008 (Bankr. D.P.R. Apr. 22, 2021). Such *Opinion and Order* was appealed to Bankruptcy Appellate Panel for the First Circuit (BAP 1st Cir. No. 22-0017), which affirmed the dismissal through an *Opinion and Order* issued on April 21, 2022. <u>See</u> <u>Vaqueria Las Martas, Inc. v. Condado 5, LLC (In re Vaqueria Las Martas, Inc.)</u>, 638 B.R. 482 (B.A.P. 1st Cir. 2022).

11. After the dismissal of the second bankruptcy case, Condado filed three (3) separate UCC-1 Financing Statements with the Puerto Rico Department of State, pursuant to Puerto Rico's Secured Commercial Transactions Act, as amended, 19 L.P.R.A. §§ 2211 *et seq.*, which were duly approved on May 4 and 5, 2021. <u>See</u> *UCC-1 Financing Statement Nos. 20210005226, 20210005227* and *20210005228* (Proof of Claim No. 1, Part 8, pp. 1-17).

12. Pursuant to the aforementioned UCC-1 Financing Statements and the Puerto Rico Uniform Commercial Code ("PR UCC"), 19 L.P.R.A. §§ 1221 *et seq.*, Condado has a secured lien over Debtor's milk quota and accounts receivables, *inter alia*, as follows:

> The amount of 58,700 quarts of quota to produce raw milk every 14 days under license number 3064 issued by the Puerto Rico Dairy Industry to operate in the Municipality of Hatillo. The entire taxed quota guarantees the amount of one million sixty thousand two hundred dollars (USD 1,060,200.00) of a loan granted to the Debtor by BPPR for the principal amount of one million eight hundred fifty thousand dollars (USD 1,850,000.00) with the quota being assessed to eighteen dollars with seven cents (USD 18.07) for every quart.

UCC-1 Financing Statement No. 20210005227, Proof of Claim No. 1, Part 8, p. 9. And,

> … the existing accounts receivable related to the processing plant Suiza Dairy, Corp., and those that may be acquired subsequently or in the future by the Debtor due to the payment for the sale of raw milk to the aforementioned processing plant, in accordance with payment settlement every 14 days, the preferred payment will be of USD 7,450.00 fortnightly, over 118 fortnights.

UCC-1 Financing Statement No. 20210005226, Proof of Claim No. 1, Part 8, p. 4.

13. On May 28, 2021, Condado filed a *Foreclosure Complaint* with the PR Court of First Instance, Superior Court of Arecibo (the "PR Court of First Instance"), Case No. AR2021CV00693 (the "Foreclosure Case") against the Debtor, the Debtor's principal and co-guarantor (Mr. Juan Manuel Barreto Ginorio), his former spouse and co-guarantor (Ms. Maria

-3-

Elena Hernandez Ruiz) and JM Dairy, Inc. (as further co-guarantor of the Loan). See Proof of Claim No. 1, Part 3, pp. 1-18, and Part 9, pp. 1-10.

14. On August 16, 2022, the Debtor filed the instant **third** Chapter 12 bankruptcy petition (ECF No. 1).

15. As of today, this case has the following outstanding contested matters:

   i. *Motion to Prohibit Use of Cash Collateral and for Entry of Order Authorizing Condado to Seek and Collect Proceeds* (the "*Motion to Prohibit Use of Cash Collateral*", ECF No. 9);

   ii. *Response to Motion to Prohibit Use of Cash Collateral and for Entry of Order Authorizing Condado 5, LLC, to Seek and Collect Proceeds* (the "*Opposition*", ECF No. 15);

   iii. *Reply to the Debtor's Response to Motion to Prohibit Use of Cash Collateral and for Entry of Order Authorizing Condado 5, LLC, to Seek and Collect Proceeds* (the "*Reply*", ECF No. 25);

   iv. *Trustee's Position and Memorandum of Law in Support Thereof to the Motion to Prohibit Use of Cash Collateral* (the "*Trustee's Position*", ECF No. 35);

   v. *Response to Trustee's Position* (the "*Response to Trustee's Position*", ECF No. 46);

   vi. *Motion to Dismiss* (the "*Motion to Dismiss*", ECF No. 22);

   vii. *Response to Motion to Dismiss* (the "*Opposition*", ECF No. 37);

   viii. *Reply* to Debtor's *Response to Motion to Dismiss* (the "*Reply to Debtor's Response to Motion to Dismiss*", ECF No. 47);

Condado hereby reiterates and adopts by reference the motions and briefs it filed as if fully transcribed herein.

16. On November 14, 2022, the Debtor filed a *Chapter 12 Plan of Reorganization* (the "*Plan*", ECF No. 49)

17. On December 5, 2022, this Court entered an *Opinion and Order* finding that "[t]he present issue gives sense of *déjà vu* to the statements made by the court in its opinion and order of April 22, 2021, in case number 18-07304 (dkt. #251). Thus, the same is incorporated herein". *Opinion and Order*, ECF No. 65, p. 4, lines 21-23. The court also ordered the Debtor to show cause "why confirmation should not be denied pursuant to sections 1225(a)(3,6) of the Bankruptcy

Code, and the case dismissed pursuant to section 1208(c)(5) of the Bankruptcy Code" (ECF No. 65, p. 6, lines 25-27), finding that "[t]he future course of this case will depend on the timely response by the Debtor" (id., p. 7, line 1). Finally, "the court also caution[ed] the Debtor that, after considering the Debtor's history of bankruptcy filings, conclusory allegations will not move the court and that feasibility and changed circumstances require supporting documentation. The same must be attached to the response to this order." Id., p. 7, lines 1-4.

18. On December 13, 2022, the Chapter 12 Trustee filed an *Unfavorable Recommendation* of the *Plan* (the "*Unfavorable Recommendation*", ECF No. 70) sustaining that: (i) the *Plan* does not comply with 11 U.S.C. § 1225(b)(1); (ii) the *Plan* does not comply with 11 U.S.C. § 1225(a)(5) and (6); and (iii) the *Plan* is contrary to 28 U.S.C. § 586(e)(2). To avoid repetition, Condado hereby joins and incorporates the *Unfavorable Recommendation* by reference as if fully transcribed herein.

19. On December 16, 2022, the Court granted Condado's *Motion to Convert the Confirmation Hearing to a Status Conference* (ECF No. 73).

20. On December 19, 2022, Condado filed an *Objection to Confirmation of the Plan* (the "*Objection to Confirmation*", ECF No. 81).

21. Also on December 19, 2023, the Debtor filed a *Response to Order to Show Cause* (ECF No. 83).

22. On December 20, 2022, the Court held a Status Conference wherein the Court: (i) ordered the Debtor to file an amended plan within 21 days; (ii) took the cash collateral issue under advisement; and (iii) scheduled an evidentiary hearing on the *Motion to Dismiss* for March 30 - 31, 2023 (*Minutes of Status Conference*, ECF No. 85, p. 3, lines 22-27).

23. On January 10, 2023, the Debtor filed an *Amended Chapter 12 Plan of Reorganization* (the "*Amended Plan*", ECF No. 93) proposing the following treatment for Condado's claim:

> 3.6 Class E (Condado 5 Secured Claim). Class E consists of the Secured Claim of Condado 5 LLC. The Secured Claim of Condado 5, LLC, shall be bifurcated into 3 components and treated as follows:

-5-

>E-1 The claim is secured by a prepetition receivable from Suiza Dairy, Inc., in the amount of $3000. Upon the Effective Date of the Plan, if not paid sooner, Suiza Dairy shall pay $3000 to Condado 5 from the receivables of the Debtor that it is holding. If the funds are paid to the Debtor or into escrow prior to that, then the payment shall be made from that source. Condado shall retain its lien on the prepetition receivable to the extent thereof, until paid.
>
>E-2. The claim is otherwise secured as to the Debtor by Debtor's ORIL milk quota of 58,700 quarts/2 weeks. The secured claim as to the Milk Quota shall be valued at $5/quart/2 weeks, $293,500. Condado 5 shall be paid by the Debtor directly 8.5% interest only on the $293,500 for 6 months ($2078.96/month) from the Effective Date, and then $293,500 amortized at 8.5% p.a.by the Debtor directly in equal monthly installments of $4224.09 over 8 years (96 months) from 6 months after the Effective Date, and shall retain its lien until paid as provided in this Paragraph E-2. Should Suiza Dairy Inc. and Condado 5 agree, these payments may be made in weekly installments directly from Debtor's receivables due from Suiza Dairy.
>
>E-3 The balance of the claim of Condado 5 is unsecured under 11 USC 506 and shall be treated for all purposes as a general unsecured claim.
>
>As its claim is not secured by post-petition receivables or otherwise by the proceeds of post-petition milk sales, upon confirmation Condado 5 will release its claim to a lien on such proceeds and Suiza Dairy shall turn them over to the Debtor.

*Amended Plan*, ECF No. 93, pp. 5-6, ¶ 3.6.

24. Condado hereby objects to the confirmation of the *Amended Plan*.

<u>Applicable Law and Discussion</u>

(A) The Amended Plan does not comply with Section 1225(a)(5)(B) of the Bankruptcy Code.

25. Section 1225 of the Bankruptcy Code governs the confirmation requirements in a Chapter 12 case.

26. If the holder of an allowed secured claim does not accept a proposed plan, and if the debtor does not surrender to the creditor the property securing the claim, then the plan must meet the requirements of 11 U.S.C. § 1225(a)(5)(B). There are two components to that subsection.

27. <u>First</u>, the plan must provide that the holder of the claim will retain its lien on the property securing the lien. See 11 U.S.C. § 1225(a)(5)(B)(i). <u>Second</u>, the plan must provide that

-6-

the value, as of the effective date of the plan, of property to be distributed under the plan on account of the claim is not less than the allowed amount of such claim. See 11 U.S.C. § 1225(a)(5)(B)(ii). In other words, the creditor must be paid the present value of its allowed, secured claim, or the Plan cannot be confirmed over the creditor's objection. See In re Lockard, 234 B.R. 484, 494-496 (Bankr. W.D. Mo. 1999).

28. The *Amended Plan* does not afford Condado the present value of its claim and no valuation evidence has been attached to the plan, proffered and/or submitted to Condado.

29. Also, in determining the appropriate amortization of a secured claim to be paid through deferred cash installments, the threshold issue is determining the length of time over which payments may be made. The primary consideration in analyzing the appropriate term for payment of a secured claim is the type of property securing the claim. Courts have ruled that when determining if the repayment terms of a plan are appropriate, **due consideration should be given to the original terms of the note**. See In re Lockard, *supra* (where the Court determined that extending a note well beyond any period the Bank bargained for and beyond the ordinary amortization period for agricultural real estate loans was unacceptable). The shorter the original term of the loan, the more scrutiny a court should give to a proposed long-term payout. See 8 Collier on Bankruptcy, §1225.03[4][b].

30. "[T]he term of repayment under § 1225(a)(5)(B)(ii) should be supported by some evidence of reasonableness, customary lender practices, or market standards not simply mathematical present value." In re Koch, 131 B.R. 128, 132 (Bankr. N.D. Iowa 1991).

31. "The present value requirement of section 1225(a)(5)(B)(ii) is identical to the present value requirement of sections 1129(a)(9), 1129(b)(2)(A)(i)(II) and 1325(a)(5)(B)(ii). Case law interpreting those provisions is equally applicable to determining present value under section 1225(a)(5)(B)(ii)." 8 Collier on Bankruptcy ¶ 1225.03 (16th ed. 2018). Also see In re St. Cloud, 209 B.R. 801, 809 (Bankr. D. Mass. 1997).

32. The adjustments made to the base rate adequately compensate the secured party for the forced nature of the extension of credit to Chapter 13 debtors, the 100 percent loan to

value ratio, and the risks of additional defaults associated with a loan to a person with a poor credit record and a history of default. Thus, the Court may adjust the base rate through the application of various factors, including the type and value of the collateral, the terms of the plan, the debtor's financial history and prospects, the lender's risk factors and lost opportunity costs. In re St. Cloud, 209 B.R. at 808.

33. The U.S. Bankruptcy Court for the District of Puerto Rico has determined that "in light of the purpose of the statutory provision and in order to determine the present value of the claim to be paid under the plan, the appropriate discount rate to be applied at the date of confirmation is the market rate, that is, the interest on a loan disbursed in that region at that time which is similar in character, amount and duration." In re Ibarra, 235 B.R. 204, 215 (Bankr. D.P.R. 1999). The Court further adopted "the rebuttable presumption that the contract rate is the proper interest rate in a Chapter 13 case. This Court holds that the market rate, together with the rebuttable presumption approach, provides the best formula for a correct determination of the present value." Id.

34. Other Courts have determined that the appropriate interest rate to which creditors are entitled under a plan should consist of prime rate plus risk factor, to be determined based on nature and extent of creditor's security and feasibility of repayment. See Till v. SCS Credit Corp., 541 U.S. 465 (2003) (the correct method for determining the rate of interest payable to a secured lender over the life of a Chapter 13 cram-down plan was the national prime rate plus a risk factor depending on the creditworthiness of the debtor); see also In re Foster, 79 B.R. 906 (Bankr. D.C. Mont. 1987); In re Big Hook Land & Cattle Co., 81 B.R. 1001 (Bankr. D.C. Mont. 1988) (proper rate of interest on deferred cash payments to creditors under Chapter 12 plan, pursuant to 11 USCS § 1225(a)(5), is prime rate, to which base rate 2 percent risk factor is added); In re Patterson, 86 B.R. 226 (B.A.P. 9th Cir. 1988) (Interest rate for Chapter 12 plan under 11 USCS § 1225 is properly set at prime rate plus 4 percent with quarterly variations where: (1) loan is long term; and (2) agricultural economy is volatile); In re Bolender, 2011 Bankr. Lexis 2824 (Bankr. D. Ohio) (applying Till v. SCS Credit Corp. formula rate to cases filed under chapter 12).

35. The above analysis is based on the proposition that a debtor's promise of future payments is worth less that an immediate payment of the same total amount because the creditor cannot use the money right away, inflation may cause the value of the dollar to decline before the debtor pays, and there is always some risk of nonpayment. See Till v. SCS Credit Corp., *supra.*

36. In Till, the U.S. Supreme Court determined that:

> the need for a methodology that was familiar in the financial community and that would minimize the need for an expensive evidentiary proceeding in every case. It also believed that the determination needed to be based on an objective rather than a subjective inquiry. **The result is that the plurality endorsed an approach it characterized as the "formula" approach. To determine an interest rate, it noted, a court should start with the prime rate because the prime rate indicates the market rate of interest for a standard commercial loan with a relatively slight risk of default. A court should then adjust the rate upward to reflect the enhanced level of risk associated with the greater risk of nonpayment that is present in the particular circumstances.** The size of the risk adjustment [] would depend on factors such as the circumstances of the estate, the type of collateral at issue, the duration of the payment stream and the feasibility of the plan. To analyze these factors, and determine the appropriate size of the risk adjustment in a particular case, the bankruptcy court will need to hold a hearing at which the parties can present evidence on these points. The evidentiary burden, however, is to be placed on the creditor to substantiate any risk adjustment over a moderate level.

8 Collier on Bankruptcy ¶ 1225.03 (16th ed. 2018).

37. "Though Till provided a method to determine a cramdown interest rate in chapter 13 cases, bankruptcy courts have applied its reasoning to cases under chapter 11." In re Moultonborough Hotel Grp., LLC, 2012 Bankr. LEXIS 5243, at *20, 2012 WL 5464630 (Bankr. D.N.H. 2012).

38. As of today, the prime rate is 7.50% (effective as of December 15, 2022). See https://www.jpmorganchase.com/about/our-business/historical-prime-rate (last visited January 17, 2023).

39. In the present case, the Loan was to be repaid in a term five (5) years, which BPPR agreed to extend to ten (10) and became past due and payable more than eight (8) years ago, to wit, January 12, 2015. See Proof of Claim No. 1-1, Part 4 p. 2, Part 5, p. 22.

40. In its *Amended Plan*, the Debtor proposes to repay the amounts owed to Condado through monthly installments over a period of eight (8) years. **This proposed repayment period**

**almost *doubles* the original repayment term, which at this juncture is due and payable.** Additionally, the Debtor proposes to pay the secured amount of $417,986.40 (ECF No. 93, pp. 5-6, ¶ 3.6.) when Condado's secured unobjected Claim amounts to $1,532,855.78 (Proof of Claim No. 1).

41. Moreover, the *Amended Plan* proposes to pay interest at 8.5% *per annum*. This proposed interest is improper considering the Debtor's long history of default and previous bankruptcies. Moreover, Condado's claim has been past due and payable for almost eight (8) years and the Debtor is proposing to extend the original repayment term for an additional eight (8) years in this *third* bankruptcy case.

42. As previously explained, a determination on the interest rate to be paid to a secured creditor should be made using the national prime rate plus a risk factor depending on the creditworthiness of the debtor.

43. Taking into consideration the above factors and the eight-year period over which the Debtor proposes to pay Condado's claim, the failure to provide an adequate interest rate, failure to provide for the secured claim in its entirety, and failure to provide adequate monthly payments render the *Amended Plan* unconfirmable. Such treatment results unfair and insufficient in light of Condado's rights and under a review of the circumstances in this case ("The court's inquiry, however, should not be limited to the maximum period of time over which the claim could be paid but should also address whether the particular length of time proposed by the debtor is appropriate under the circumstances." 8 Collier on Bankruptcy ¶ 1225.03 (16th ed. 2018).

44. Thus, the *Amended Plan* does not comply with Section 1225(a)(5)(B) of the Bankruptcy Code and confirmation should be denied.

*(B)    The Amended Plan is not feasible and fails to comply with Section 1225(a)(6) of the Bankruptcy Code.*

45. Section 1225(a)(6) states, *inter alia*, that the Court shall confirm a plan if "the debtor will be able to make all payments [proposed] under the plan and to comply with the plan." 11 U.S.C. §1225(a)(6). This is known as the "feasibility" test.

46. Section 1225(a)(6) requires the Court to find that the debtor will be able to make all payments propose under the plan, and thus comply with the terms of the proposed plan. This "feasibility test" requires the court to analyze the debtor's proposed plan payments in light of the debtor's projected income and expenses and determine that the debtor is likely to be able to make all payments required by the plan under the totality of the circumstances.

47. Feasibility involves considerations of the probability of payment based upon a determination of reasonableness. "Feasibility, which depends on a determination of the reasonable probability of payment, is fundamentally a fact question. Resolution of feasibility necessarily entails a determination of the comparative credibility of experts, as well as the credibility of the debtor." In re Ellis, 478 B.R. 132, 139 (Bankr. N.D.N.Y. 2012).

48. In assessing the feasibility of a proposed Chapter 12 plan under 11 U.S.C. § 1225(a)(6), courts consider the: (1) adequacy of debtor's reorganized capital structure; (2) earning potential of the industry; (3) general economic conditions; (4) ability of debtor's reorganized management structure; (5) prospective availability of credit; and (6) whether debtor will have future ability to meet its requirements for capital expenditures. See In re Snider Farms, Inc., 83 B.R. 1003, 1012 (Bankr. N.D. Ind. 1988). When long-term payments are contemplated under a proposed plan, stricter proof of feasibility should be required. Id.

49. "To satisfy the feasibility test, it will be necessary for the debtor to submit sufficient evidence with regard to the debtor's projected income and expenses to enable the court to determine that the debtor can make all of the payments called for by the plan. [] In analyzing the debtor's income projections, the court should examine whether they are consistent with the debtor's prepetition performance. Are the projected crop yields reasonable based on past crop yields? Are projected expenses consistent with historical expenses? Is the projected market price reasonable? The court should also consider whether the assumptions contained in the plan are reasonable." 8 Collier on Bankruptcy § 1225.02[5] (16th ed. 2022).

50. Chapter 12 debtors bear the burden of proof on all elements necessary for confirmation of plan, including feasibility under 11 U.S.C. § 1225(a)(6). See In re Snider Farms,

Inc., 83 B.R. at 1014; In re Morris, 590 B.R. 753, 758 (Bankr. N. D. Miss. 2018) ("the burden of feasibility is on the Debtor, and "the Court need not try and prove the Debtor's case…").  As such, a debtor must be able to show a likelihood of having *enough surplus income* from its operation to be able to make the secured debt payments to satisfy the feasibility test.  Although debtors are not required to guarantee success of plan, they must provide reasonable assurance that a plan can be effectuated, and the plan's income projections must be based on concrete evidence and must not be speculative or conjectural.  See In re Snider Farms, Inc., 83 B.R. at 1004 ("the Court may not itself indulge in highly speculative and unduly optimistic assumptions."); In re Ames, 973 F.2d 849 (10th Cir. 1992); In re Eber-Acres Farm, 82 B.R. 889 (Bankr. S.D. Oh. 1987) (confirmation of a Chapter 12 plan was denied where the debtor did present evidence that it would be able to make all payments under plan as required by 11 U.S.C. § 1225(a)(6)); In re Fenske, 96 B.R. 244 (Bankr. D.N.D. 1988) (for plan to be confirmable under 11 U.S.C. § 1225, debtors must be able to show that plan is feasible and bear burden of proving proposal is both realistic and will cash flow).

51.     In the instant case, the proposed *Amended Plan* is entirely speculative and raises serious concerns as to whether the Debtor can actually achieve the proposed targets.

52.     First, the Debtor proposes to "fund th[e] Plan from income from its dairy farming operation". *Amended Plan*, ECF No. 93, p. 6, Article IV.  Condado is in the process of foreclosing the lot of land where the Debtor operates its dairy farm.  See *Foreclosure Complaint*, Proof of Claim No. 1, Part 3, pp. 1-18, and Part 9, pp. 1-10.  This Property where the Debtor's dairy farm operates does *not* belong to the Debtor, but to the Debtor's principal, Mr. Juan M. Barreto Ginorio, and his ex-spouse, Ms. Maria E. Hernandez Ruiz, is therefore *not* part of the bankruptcy estate[2]. Henceforth, once Condado forecloses on this Property, the Debtor will not be able to operate its dairy farm therein and no evidence has been proffered or submitted of an alternate plan of action to address this very foreseeable contingency.

---

[2] See Schedule A/B, ECF No. 18, pp.4, Part 9, ¶ 54 (Debtor does not disclose owning any real property).

-12-

53. Second, the success and/or feasibility of the *Amended Plan* is also conditioned on the final resolution of whether Condado's lien over Debtor's milk quota extends to the milk produced and sold to milk proceeding plants under Debtor's bi-weekly milk quota, and the proceeds generated thereunder, a matter that is pending before this Court and might adversely affect the viability of the *Amended Plan*. The Debtor proposes no fallback or alternative proposal should the Court rule otherwise.

54. Third, both the Bankruptcy Court and the Bankruptcy Appellate Panel for the First Circuit have found that "with the passage of time, the Debtor's livestock decreased by 50%, thus evidencing a marked diminution in the Debtor's assets. This, in turn, caused raw milk production to decrease dramatically, making the feasibility of any plan even less likely." In re Vaqueria Las Martas, Inc., 638 B.R. at 498. This situation has not changed since the dismissal of the second bankruptcy case and the filing of the instant case. In fact, there are *no* significant changes in circumstances from the previous bankruptcy cases to the instant one. If anything, the Debtor is now in a more precarious financial position.

55. In its previous second bankruptcy case, the Debtor valued its property at $948,320.06 in *Schedule A/B* (Case No. 18-07304-ESL12, ECF No. 1, p. 9, ¶ 1c) and informed having $1,809,245.13 in total liabilities (Case No. 18-07304-ESL12, ECF No. 1, p. 9, ¶ 4). In the instant case, the Debtor valued its property at $275,986.22 in *Schedule A/B* (ECF No. 18, p. 2, ¶ 1c) and informed having $2,179,355.92 in total liabilities (ECF No. 18, p. 2, ¶ 4). This translates to the Debtor having lost $672,333.84 in the value of its property, while augmenting its total liabilities in the amount of $370,110.79 from the filing of the Debtor's previous case on December 14, 2018 to the filing of the instant case on August 16, 2022.

56. Additionally, while it appears that the Debtor may seem to have more milking cows as of the commencement of this case, it has fewer cows now than it did then. For instance, in the Debtor's second bankruptcy case, it informed in *Schedule A/B* having 110 total cows (Case No. 18-07304-ESL12, ECF No. 1, p. 12, ¶ 29), while in the instant case, it informed in *Schedule A/B* having a total of 106 cows (ECF No. 18, p. 4, ¶ 29).

57. Furthermore, as this Court has found, "[t]he monthly operations report corresponding to the month of August 2022, filed on October 11, 2022 (dkt. #42) shows a negative cash flow. The monthly operations report corresponding to the month of September 2022, filed on October 27, 2022 (dkt. #48), shows a net cash flow of $771.32." *Opinion and Order*, ECF No. 65. P. 4, lines 3-6. This is further demonstrated by the monthly operating report for the month of December 2022, which provides that the Debtor has a net cash flow of just $610.36 (ECF No. 94, p. 2, ¶ 22).

58. Thus, the *Amended Plan* fails to comply with the feasibility requirements outlined in 11 U.S.C. § 1225(a)(5) and (6) and confirmation should be denied.

*(C) The Amended Plan does not comply with the contents of the plan requirement under Section 1222(c) of the Bankruptcy Code.*

59. Section 1222 of the Bankruptcy Code provides the requirements for the contents of a Chapter 12 plan.

60. Section 1222(c) of the Bankruptcy Code provides:

Except as provided in subsections (b)(5) and (b)(9), the plan may not provide for payments over a period that is longer than three years unless the court for cause approves a longer period, but the court may not approve a period that is longer than five years.

11 U.S.C. § 1222(c).

61. Pursuant to 11 U.S.C. § 1222(b)-(c), a Chapter 12 debtor must propose a repayment plan to make installments to creditors over a period of three to five (5) years. Specifically, a debtor's proposed plan "may not provide for payments over a period that is longer than three years unless the court for cause approves a longer period, but the court may not approve a period that is longer than five years." In re Vaqueria Las Martas, Inc., 2021 WL 8200008, at *2 (Bankr. D.P.R. 2021), aff'd sub nom. Vaqueria Las Martas, Inc., 638 B.R. 482 (B.A.P. 1st Cir. 2022).

62. Section 1222(c) carves out two exceptions that allow payments to extend beyond this five-year limit. One exception relates to curing defaults under 11 U.S.C. § 1222(b)(5), which is not relevant here. The second exception is found under 11 U.S.C. § 1222(b)(9), which states

that a plan may "provide for payment of allowed secured claims consistent with Section 1225(a)(5) of this title, over a period exceeding the period permitted under Section 1222(c)." 11 U.S.C. § 1222(b)(9).

63. In other words, a plan may extend payments to creditors who hold allowed secured claims beyond five years, only if the plan provides for payment of allowed secured claims consistent with Section 1225(a)(5). 11 U.S.C. § 1222(b)(9).

64. Section 1225(a)(5) provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if—
    (5) with respect to each allowed secured claim provided for by the plan—
        (A) the holder of such claim has *accepted* the plan;
        (B)
            (i) the plan provides that the holder of such claim retain the lien securing such claim; and
            (ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim; or
        (C) the debtor surrenders the property securing such claim to such holder;

11 U.S.C. § 1225(a)(5) (italics added).

65. Through the *Amended Plan*, the Debtor proposes to repay the amounts owed to Condado through installments over a period of eight years. See *Amended Plan*, ECF No. 93, pp. 5-6, ¶ 3.6.

66. However, Condado does not accept the *Amended Plan*. Therefore, the *Amended Plan* is inconsistent with Section 1225(a)(5)(A).

67. On the other hand, even though the *Amended Plan* does provide for Condado's retention of the lien securing its claim, the value of property to be distributed by the debtor under the *Amended Plan* as of the effective date is less than the allowed amount of Condado's claim. Compare the value of the Secured Claim as to the Milk Quota in the *Amended Plan* at ECF No. 93, p. 6, ¶ 3.6 ($293,500.00) with Proof of Claim No. 1-1 ($1,532,855.78). Therefore, the *Amended Plan* is also inconsistent with Section 1225(a)(5)(B).

68. Finally, the Debtor is not proposing to surrender the property securing Condado's claim to Condado. Therefore, the *Amended Plan* is also inconsistent with Section 1225(a)(5)(C).

69. Pursuant to the foregoing, the *Amended Plan* exceeds the payment period established in Section 1222(c) of the Bankruptcy Code and confirmation should be denied.

*(D)   The Amended Plan fails to comply with Section 1225(a)(4) of the Bankruptcy Code.*

70. Section 1225(a)(4) provides that the Court shall confirm a plan if "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date". 11 U.S.C. § 1225(a)(4).

71. Here, the *Amended Plan* fails altogether to include any financial projection whatsoever to support feasibility and it is also completely devoid of a liquidation analysis. In other words, the *Amended Plan* fails to provide that the amount to be distributed for each allowed unsecured claim is not less than that amount that would be paid on such claim if Debtor were liquidated under Chapter 7. See 11 U.S.C. § 1225(a)(4).

72. Thus, the *Amended Plan* fails to comply with the feasibility requirements outlined in 11 U.S.C. § 1225(a)(4) and confirmation should be denied.

*(E)   Reservation of Rights.*

73. Condado hereby reserves any and all remedies and/or rights it has asserted or may assert with regard to the outstanding contested matters or any subsequent plan, if applicable. Moreover, Condado hereby objects any further plan that proposes any treatment similar to the *Amended Plan* (ECF No. 93).

<u>Prayer for Relief</u>

WHEREFORE, Condado respectfully requests the Court to deny the confirmation of Debtor's *Amended Plan* (ECF No. 93) or any subsequent plan with a similar treatment to Condado and grant any other relief that is just and proper.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, on this 23rd day of January 2023.

<u>Certificate of Certificate of Service</u>

We hereby certify on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

**Ferraiuoli** LLC
Attorneys for Condado
221 Ponce de León Avenue
5th Floor
San Juan, PR 00917
PO Box 195168
San Juan, PR 00919-5168
Phone: (787) 766-7000
Facsimile: (787) 766-7001

<u>/s/ Gustavo A. Chico-Barris</u>
GUSTAVO A. CHICO-BARRIS
USDC-PR No. 224205
gchico@ferraiuoli.com

<u>/s/Tomás F. Blanco-Pérez</u>
TOMAS F. BLANCO-PEREZ
USDC-PR No. 304910
tblanco@ferraiuoli.com