IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                                    CASE NO. 22-02380 (ESL)

Las Martas, Inc. (Vaquería Las Martas)                   CHAPTER 12

    Debtor

OPINION AND ORDER

This case is before the court to determine whether Condado 5, LLC ("Condado") has a secured lien over Debtor's milk quota and accounts receivables, and, consequently, the proceeds from Debtor's milk quota and accounts receivable became "cash collateral" under Section 363(a) of the Bankruptcy Code. The Debtor, Las Martas, Inc., does not dispute that Condado has a security interest that has attached and is perfected in the milk quota; and that it has a perfected security interest in accounts receivable, but only those that existed as of the petition date, as 11 U.S.C. § 552(a) prevents the attachment of the prepetition security interest to post-petition receivables. The Debtor alleges that Condado does not have a security interest in the cows. The Chapter 12 trustee's position is that the perfected security agreement held by Condado over the Debtor's milk quota and accounts receivable does not extend to the post-petition milk production and to the proceeds from its sale.

Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A and K). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

Facts and Procedural Background

The facts and sequence of events related to the constitution of the security interest held by Condado over Debtor's property is not in controversy. The contested matter before the court centers on the how the applicable law determines the extent of Condado' s security interest after

-1-

the filing of the current bankruptcy petition, which is Debtor's third petition. The court borrows from Condado' s factual and procedural background to place the matter in perspective.

Facts

1. On or around January 12, 2005, Banco Popular de Puerto Rico ("BPPR"), predecessor in interest of Condado, extended to the Debtor a credit facility in the amount of $1,850,000.00 (the "Loan").

2. The Loan is secured by, inter alia, 58,700 quarts of Debtor's bi-weekly milk quota.

3. The Security Agreement was duly registered with the Oficina de Reglamentación de la Industria Lechera in compliance with the PR Registry of the Milk Industry Production Quota Transactions Registry Act of 2000, as amended, 5 L.P.R.A. §§ 1126 et seq.

4. On March 23, 2021, Condado filed three (3) separate UCC-1 Financing Statements with the Puerto Rico Department of State, pursuant to Puerto Rico's Secured Commercial Transactions Act, as amended, 19 L.P.R.A. §§ 2211 et seq., which were duly approved on May 4, 2021.

5. On August 16, 2022, the Debtor filed the instant Chapter 12 bankruptcy petition. This is Debtor's third bankruptcy case. Case No. 11-bk-05237 was dismissed pursuant to pursuant 11 U.S.C. § 1208(c)(6) for material default with respect to the terms of a confirmed plan, and pursuant 11 U.S.C. § 1208(c)(1) for unreasonable delay prejudicial to creditors. Case No. 18-bk-07304 was dismissed pursuant 11 U.S.C. § 1208(c)(1) for unreasonable delay prejudicial to creditors, and Debtor's failure to file a timely confirmable plan under 11 U.S.C. § 1208(c)(3).

Procedural Background

On August 17, 2022, Condado filed a *Motion to Prohibit Use of Cash Collateral and for Entry of Order Authorizing Condado to Seek and Collect Proceeds*. On August 29, 2022, Debtor filed a *Response to Motion to Prohibit Use of Cash Collateral and for Entry of Order Authorizing Condado 5, LLC, to Seek and Collect Proceeds*. On September 6, 2022, Condado filed a *Reply to the Debtor's Response to Motion to Prohibit Use of Cash Collateral and for Entry of Order Authorizing Condado 5, LLC, to Seek and Collect Proceeds*. On September 23,

2022, the Trustee filed his *Position and Memorandum of Law in Support Thereof to the Motion to Prohibit Use of Cash Collateral*. On October 14, 2022, Condado filed a response to the trustee's position. The matter came before the court for a status conference on December 2022. The same was taken under advisement.

Issue(s)

The main issues before the court are whether the accounts receivable generated by the sale of milk to Suiza Dairy, Inc. and Vaquería Tres Monjitas, Inc. constitute cash collateral subject to Condado' s lien, and whether such pre-petition security agreement extends to post-petition proceeds to the extent provided in the security agreement pursuant to the exception provided in 11 U.S.C. § 552(b) to the provision in 11 U.S.C. §552(a), which prevents the attachment of post-petition collateral, such as receivables. The court must also determine whether the court approved stipulations and the confirmation order in the first bankruptcy case have a *res judicata*, collateral and or judicial estoppel, effect over the contested matter now before the court in this third petition.

Position of the Parties

Condado 5, LLC

Pursuant to the UCC-1 Financing Statements and the Puerto Rico Uniform Commercial Code ("PR UCC"), 19 L.P.R.A. §§ 1221 et seq., Condado has a secured lien over Debtor's milk quota and accounts receivables, inter alia, as follows:

> The amount of 58,700 quarts of quota to produce raw milk every 14 days under license number 3064 issued by the Puerto Rico Dairy Industry to operate in the Municipality of Hatillo. The entire taxed quota guarantees the amount of one million sixty thousand two hundred dollars (USD 1,060,200.00) of a loan granted to the Debtor by BPPR for the principal amount of one million eight hundred fifty thousand dollars (USD 1,850,000.00) with the quota being assessed to eighteen dollars with seven cents (USD 18.07) for every quart.

UCC-1 Financing Statement No. 20210005227, Exhibit V, p. 4. And,
... the existing accounts receivable related to the processing plant Suiza
Dairy, Corp., and those that may be acquired subsequently or in the future

by the Debtor due to the payment for the sale of raw milk to the aforementioned processing plant, in accordance with payment settlement every 14 days, the preferred payment will be of USD 7,450.00 fortnightly, over 118 fortnights.

UCC-1 Financing Statement No. 20210005226.

Thus, the income generated from the Debtor's milk quota, as described above, is encumbered by Condado' s lien.

Condado asserts that section 552(a) does not apply to the facts of this case.  Pursuant to Section 552(a), property acquired by the bankruptcy estate post- petition is generally not subject to any lien resulting from a pre-petition security agreement. 11 U.S.C. § 552(a); Cadle Co. v. Schlichtmann, 267 F.3d 14, 19-20 (1st Cir. 2001) ("Under 11 U.S.C. § 552(a), '[p]roperty acquired ... by the debtor after the commencement of the case is not subject to any lien resulting from a security agreement entered into by the debtor before the commencement of the case.' "). The foregoing "does not apply to a secured party's lien on proceeds, products, offspring, rents, profits or hotel revenues generated from the original collateral if the contract contains a provision to that effect." In re National Promoters and Services, Inc., 499 B.R. 192, 205-206 (Bankr. D.P.R. 2013) (Lamoutte, B.J.), citing 11 U.S.C. § 552(b)(1),(2).  Section 552(b) provides that if a creditor, such as Condado, obtained a pre-petition security interest in proceeds paid to the debtor, such security interest extends to post-petition proceeds to the extent provided in the security agreement. In re Manuel Mediavilla, Inc., 505 B.R. 94, 100 (Bankr. D.P.R. 2014) (Caban, B.J.).

For the exception in Section 552(b) to apply, there must be: (a) a pre-petition security agreement; (b) the agreement by its terms must extend to the debtor's pre-petition property and to proceeds, product, offspring, or profits of such property; and (c) applicable non-bankruptcy law must permit the security agreement to extend to such after-acquired property. In re National Promoters, 499 B.R. at 207, citing 9C Am. Jur. 2d Bankruptcy § 2626 (2013).

Condado concludes that "[i]n the instant case, the lien registered with ORIL and the UCC-1 Financing Statements comply with both non-bankruptcy law and Section 552(b) of the Bankruptcy Code: a pre-petition security agreement exists, which —by its express terms—

-4-

extends to the Debtor's pre-petition property and to proceeds, product, offspring, or profits of such property; and, applicable non-bankruptcy law, i.e., the PR UCC, permits the security interest to extend to such after-acquired property. See 19 L.P.R.A. § 2234 ("security agreement may create or provide for a security interest in after-acquired collateral"); 19 L.P.R.A. § 2335(a) ("a filed financing statement is effective for a period of five (5) years after the date of filing.") (official citation)."

Condado, in its reply to the Debtor's opposition expanded on the applicable provisions governing the milk quotas and the changed facts and circumstances which differentiate this third case from the second case.

In Puerto Rico, "[n]o producer, processor, or sterilizer of milk or its byproducts may operate without a license issued therefor by the Administrator [of ORIL]". 5 L.P.R.A. § 1101(a). The license results in a "milk quota", and dairy farmers are only paid for milk they produce within their allowed quota.

The registration of liens over milk quotas in Puerto Rico and all related transactions thereunder is governed by the PR Registry of Transactions of Production Quotas of the Milk Industry Act, PR Act No. 301 of September 2, 2000, 5 L.P.R.A. §§ 1126 et seq (the "Milk Quota Act"). Article 11 of the Milk Quota Act, 5 L.P.R.A. § 1135(a), governs the creation of liens over milk quotas as follows:

> Liens upon quotas subject them, directly and immediately to compliance with the obligation for the security of which they were constituted. Liens recorded in this registry shall constitute an effective encumbrance upon quotas, provided said liens were constituted or recorded in additional compliance with §§ 1221 et seq. of Title 19, which pertains to guaranteed transactions.

Condado alleges that in the second bankruptcy case it "did not have a recorded pre-petition security interest via UCC (and thus the Court did not consider any UCC liens), here, after the dismissal of the Debtor's previous case and prior to the filing of the instant case, Condado renewed three (3) separate UCC-1 Financing Statements with the PR Department of

State pursuant to Puerto Rico's Secured Commercial Transactions Act, as amended, 19 L.P.R.A. §§ 2211 et seq., which were duly approved on May 4, 2021."

These currently recorded UCC-1 Financing Statements afford a valid lien over:

[t]he amount of 58,700 quarts of quota to produce raw milk every 14 days under license number 3064 issued by the Puerto Rico Dairy Industry to operate in the Municipality of Hatillo. The entire taxed quota guarantees the amount of one million sixty thousand two hundred dollars (USD 1,060,200.00) of a loan granted to the Debtor by BPPR for the principal amount of one million eight hundred fifty thousand dollars (USD 1,850,000.00) with the quota being assessed to eighteen dollars with seven cents (USD 18.07) for every quart.

UCC-1 Financing Statement No. 20210005227. Moreover, the UCC also encumbers:

... the existing accounts receivable related to the processing plant Suiza Dairy, Corp., and those that may be acquired subsequently or in the future by the Debtor due to the payment for the sale of raw milk to the aforementioned processing plant, in accordance with payment settlement every 14 days, the preferred payment will be of USD 7,450.00 fortnightly, over 118 fortnights.

UCC-1 Financing Statement No. 20210005226.

"Hence, these liens (currently registered with ORIL and the PR Department of State) comply with applicable non-bankruptcy law and thus, with Section 552(b) of the Bankruptcy Code. In other words, a pre-petition security agreement exists, which —by its express terms— extends to the Debtor's pre-petition property and subsequent proceeds, products, offspring, or profits. The applicable non-bankruptcy law, to wit, the PR UCC, permits these security interests. See 19 L.P.R.A. § 2234 ("security agreement may create or provide for a security interest in after-acquired collateral"); 19 L.P.R.A. § 2335(a) ("a filed financing statement is effective for a period of five (5) years after the date of filing")."

In view of the above, Condado concludes that its "security interest encumbers post-petition proceeds derived from the milk quotas under non-bankruptcy law, to wit, the Milk Quota Act and the PR Commercial Transactions Act. Therefore, Section 552(b) is applicable, and the post-petition proceeds from the milk quotas are duly encumbered."

Condado alleges that the Chapter 12 trustee and the Debtor are judicially estopped from stating its position detailed below as the arguments in this case are the same as those presented in the first bankruptcy petition, and to which they did not raise any objection. In the first bankruptcy case the creditor and the Debtor filed a stipulation that led to the confirmation of the

proposed Chapter 12 plan. Stipulations in bankruptcy carry *res judicata* authority. See Preserba Compañia De Desarrollos, Inc. v. Condado 2, LLC, 635 B.R. 185, 197 (B.A.P. 1st Cir. 2022). Therefore, "the confirmations of both the Amended Plan and the Post Confirmation Modification, along with the approved Cash Collateral Stipulations carry *res judicata* effect and the Trustee and the Debtor are both collaterally and/or judicially estopped from arguing otherwise at this juncture in this third bankruptcy petition."

Debtor/Las Martas, Inc.

The Debtor does not dispute that Condado has a security interest that has attached and is perfected in the milk quota; and that Condado has a perfected security interest in accounts receivable, but only those that existed as of the petition date, as 11 USC 552(a) prevents the attachment of the prepetition security interest to post-petition receivables. However, Condado does not have is a security interest in the cows. This Court held in In re Vaquería Las Martas, Inc., 617 BR 429, 441 (Bankr. D.P.R. 2020), that milk is a product of cows, not of quotas. Thus, without a security interest in the cows, Condado 5 cannot have a lien on post-petition products and proceeds of the cows, that is, the milk.

The Debtor acknowledges that the facts and circumstances between the Debtor and Condado "are identical, except for two irrelevant developments. First, Condado 5 did file a UCC-1 financing statement to perfect its lien on accounts receivables (and, unnecessarily, the quota), and second, the Puerto Rico Supreme Court affirmed the decision of the Court of Appeals in PR Asset Portfolio 2013-1 Intern., LLC v. Tropical Heifers, Inc., 2017 WL 2462052 (2017). See PR Asset Portfolio 2013- 1 Intern., LLC v. Tropical Heifers, Inc., 2021 DTS 30 (2021)."

The milk quota itself is not cash collateral. This court already held that:

> The issue is whether the lien over the milk quota extends to the milk produced by the cows.
> The security agreement does not specify that the dairy cows or the raw milk produced by
> Debtor's dairy farm operation serve as collateral to the loans. The milk is produced by the cows. The court agrees with the Chapter 12 trustee that the milk quota assigned by ORIL is the amount of milk that can be produced by the milk producer for the fresh milk market. The milk quota is a production limit. A milk

-7-

quota is an asset, and the value is determined by market conditions under ORIL regulations. Milk quotas do not produce milk. Since Condado's collateral does not include the cows, it may not claim that its security interest attaches to any identifiable proceeds of the cows.

In re Vaquería Las Martas, Inc., 617 BR 429, 441 (Bankr. D.P.R. 2020).

This is a question of attachment to the milk and its proceeds, not one of perfection. "The UCC-1 filings perfect liens that have attached; they cannot create or cause a lien to attach when the security agreement does not include it. As such, except as to the existing pre-petition receivable, discussed above, the UCC-1 filing makes no difference." The prepetition "property" is only a milk quota. There is no security agreement that includes the cows. The Security Agreement does not in fact include "proceeds, product, offspring, or profits of such property". But even if it did, the milk and the proceeds of the milk are not a product or proceeds of the quota, but of the unencumbered cows. "Thus, the exception to § 552(a) simply does not apply, and the lien does not attach to post-petition receivables."

Chapter 12 Trustee

"This is debtor's third Chapter 12 bankruptcy petition. In the second case (18- 07304) the same legal issues were litigated. Nevertheless, the facts in this case vary some. In this case, Condado continues to have a valid pre-petition lien over debtor's 58,700 litters of Milk Quota and, unlike the previous case, it now has a valid pre-petition lien over debtor's account receivables with Suiza Dairy, Corp." The UCCs in the first case are not the same UCCs relevant to the present case. The security agreement and the collateral descriptions in each UCC-1, however, are identical. Condado argues that in the first case there was no challenge of Condado's UCCs and, thus, the confirmation order has a *res judicata* effect. However, the Debtor does not dispute the security agreement, "just the extent of the lien over debtor's post-petition acquired property." The Chapter 12 trustee questions Condado's *res judicata* allegations stating that "[w]hen there are two inconsistent judgments, and each would be entitled to preclusive effect if it stood alone, the later judgment controls in a third action. In re Gates, 187 B.R. 426, 430, 1995 WL 613425 (Bankr. N.D.N.Y. 1995)."

Condado claims that its security agreement also extends to proceeds arising from the milk quotas and the continuing production of milk under the quotas every 14 days. Section 552(a) of the Bankruptcy Code invalidates the attachment to post-petition property acquired by either the estate or the debtor, of all consensual liens arising from security agreements entered by a debtor before the commencement of a case. "This section's general invalidation rule is subject to two exceptions under its subsections (b)(1) and (b)(2). A plain reading of section 552(b)(1) shows there are three (3) pre-conditions that must be present before a prepetition lien could be extended post-petition. First, there must be a valid and enforceable pre-petition security agreement that contains an express provision that it extends to property acquired prepetition, second, such agreement must also contain an express provision extending the security interest to the proceeds, products, offspring, or profits of such property, and third, that such agreement is allowed under applicable non-bankruptcy law. If those three preconditions exist, then to the extent provided in the agreement, the security agreement will extend to post-petition proceeds, products, offspring, or profits of such property, unless the Court orders otherwise based on the equities of the case." "Significantly, Section 552(b)(1)'s exception to Section 552(a)'s general rule only extends to "property of the debtor acquired before the commencement of the case" and the "proceeds, products, offspring, or profits of such property." In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 385 F. Supp. 3d 138, 149, 2019 WL 2636270 (D.P.R. 2019), aff'd, 948 F.3d 457, 2020 WL 486163 (1st Cir. 2020)." Based on this legal precept and decision, the Chapter 12 trustee concludes that "[s]ince this case is not related to a security agreement over amounts paid as rents or fees, charges, accounts, or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties, subsection (b)(2) does not apply to the facts of this case. Subsection (b)(1) would apply if all the requirements for the extension of Condado' s pre-petition lien are present."

Condado' s perfected pre-petition security agreement over debtor's milk quota is limited to the milk quota, it does not extend to its proceeds or products. ORIL issues a "license" to "milk producers" allowing them to operate a dairy farm. Also, ORIL assigns to each licensed

milk producer a set amount of quarts of milk of its dairy production that can be sold. The milk quota "is not a product, and it cannot create a product as it has no substance or material that could be extracted from it. The term "product" is not defined in the Puerto Rico's Secured Commercial Transactions Act, as amended, 19 L.P.R.A. §§ 2211 et seq. (herein after also referred as "UCC CH-9"). Article 262 of the Civil Code7 defines Products as: "[t]hose not renewable objects that separated or extracted of something alter or diminish its substance." (Unofficial Translation.) A good example of a product is raw milk transformed into processed milk or into cheese. The Milk Quota is an intangible asset. An intangible asset is defined as any nonphysical asset or recourse that can be amortized or converted to cash, such as patents, goodwill, and computer programs, or a right to something, such as services paid for in advance. Black's Law Dictionary, 9 th Ed.1979.""

Condado' s main argument regarding the lien over the milk quota is that since the milk may be sold because of the encumbered milk quota, then the post-petition "proceeds" from such sales are directly linked to the pre-petition right to sell under the milk quota and are covered by the pre-petition security agreement. Therefore, it falls within the exception of § 552(b)(1) to the general rule under § 552(a).

The Chapter 12 trustee agrees with Condado' s expanded definition of "proceeds" under Puerto Rico UCC CH-9 but contends that the revised definitions of Article 9 are irrelevant when applying § 552(b)(1).

"First, Congress codified the term "proceeds" in § 552(b)(1) well before Puerto Rico or any state revised Article 9. Compare Bankruptcy Abuse Prevention Act of 2005, 119 Stat. 23 (2005) (amending § 552 in 2005, its most recent amendment), with Law No. 21 of January 17, 2012, 2012 P.R. Laws 162 (codified at P.R. Laws Ann. tit. 19, §§ 2211-2409) (implementing the American Law Institute's revisions to the UCC on January 13, 2013); Paul Hodnefield, Proposed 2010 Amendments to UCC Article 9: State-by-State Adoption (June 6, 2015), Westlaw Practical Law. When enacting, or last amending, § 552, Congress employed the definition of "proceeds" as it was at that time (not as it would be if there were a material alteration made in a future alteration of Article 9). See Saint Francis Coll. v. Al-

Khazraji, 481 U.S. 604, 610, 107 S. Ct. 2022, 95 L.Ed.2d 582 (1987) (stating that courts should look to a statutory term's definition when Congress enacted the statute). So, the revised definition in Puerto Rico law of Article 9 is irrelevant."

In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 948 F.3d 457, 472, 2020 WL 486163 (1st Cir.), cert. denied sub nom. Andalusian Glob. Designated Activity Co. v. Fin. Oversight & Mgmt. Bd. for Puerto Rico, 208 L. Ed. 2d 422, 141 S. Ct. 844, 2020 WL 6701083 (2020).

The Chapter 12 trustee argues that "[e]ven applying Condado' s suggested expanded definition of "proceeds" under UCC CH-9, the security agreement does not include in its description of the collateral, "proceeds" from the Milk Quota. [See, Dkt. 009, Exhibit III, p.3, §IV(1) & p.4, ¶3 "Collateral"] Hence, it does not comply with the second requirement of § 552(b)(1); the security agreement fails to contain an express provision extending the security interest to the proceeds from a pre-petition encumbered property." Moreover, at the time the bankruptcy petition was filed, "Condado did not have a property right to collect post-petition proceeds from the sale of milk. This is because the amounts of post-petition milk sales transactions could not be determined as of the petition date, they were not payable pre-petition and Condado did not have any security interest in such proceeds."

"If the security agreement had included "proceeds" from the Milk Quota, at the time the bankruptcy petition was filed, Condado' s relevant right to collect from milk sales proceeds would only come into existence as the result of and contemporaneously with post-petition acts. The proceeds of that right are therefore "proceeds" of post-petition property. Hence, Condado' s right to collect "proceeds" of the post-petition property is not "property of the debtor acquired before the commencement of the case". The proceeds of that post-petition property therefore are outside of the ambit of § 552(b)(1). In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 385 F. Supp., at 150:

"The foregoing decisions persuade the Court that Section 552(b)(1) protects postpetition attachment of security interests in property acquired after the petition date where that property constitutes the proceeds of collateral that was fixed in form or quantity and owned by the pledgor pre-

-11-

petition. Subsequent events, such as sales of pre-petition inventory or automatic payments of fixed amounts pursuant to pre-petition contractual rights, may generate post-petition proceeds that are protected by Section 552(b)(1) because their value is traceable to and calculable by reference to the pre-petition property without any additional post-petition labor or other intervening value-defining or -adding action. Here, the relevant statutory provisions made the accrual and computation of the employers' contribution obligations contingent upon their contemporaneous payrolls, workforce demographics, and the actuarial funding status of ERS. ERS therefore gained rights to collect the particular amounts once they could be computed, and there is nothing in the record to indicate the employers' actual post-petition contribution liabilities were the product of anything other than computations based on then-current payrolls, demographics, and actuarial factors. Accordingly, the contributions acquired post-petition were not proceeds of ERS's inchoate pre-petition right to receive future contributions computed by reference to yet-to-be determined post-petition circumstances."

In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 385 F. Supp. 3d, at 152.

The three UCC Financing Statements filed by Condado in March 2021, include the following collateral description:

"The amount of 58,700 quarts of quota to produce raw milk every 14 days under license number 3064 issued by the Puerto Rico Dairy Industry to operate in the Municipality of Hatillo. The entire taxed quota guarantees the amount of one million sixty thousand two hundred dollars (USD 1,060,200.00) of a loan granted to the Debtor by BPPR for the principal amount of one million eight hundred fifty thousand dollars (USD 1,850,000.00) with the quota being assessed to eighteen dollars with seven cents (USD 18.07) for every quart."

The description is limited to the milk quota but does not include proceeds, products, or profits of the milk quota. Milk is not a product or proceeds of the milk quota, thus, the perfected lien does not extend beyond the milk quota.

Condado's perfected pre-petition security agreement over debtor's account receivables with Suiza Dairy Corp. does not extend to post-petition account receivables. The exception in 11 U.S.C. § 552(b)(1) is not applicable.

"It is not contested that debtor's account receivables with Suiza Dairy Corp. are subject to Condado' s prepetition lien as it is perfected by the filing of a UCC-1 in the Puerto Rico Department of State, pursuant to UCC CH-9.

Condado' s perfected pre-petition lien complies with the first and third requirement of subsection (b)(1), (first requirement) there is a valid and enforceable pre-petition security agreement that contains an express provision that it extends to property acquired prepetition, i.e. existing accounts receivables and (third requirement) non-bankruptcy law — UCC CH-9, 19 L.P.R.A. § 2234 — which allows the extension of the lien to after acquired property—future account receivables. Nevertheless, the second requirement is not met, — that the agreement must also contain an express provision extending the security interest to the proceeds, products, offspring, or profits of SUCH property. The proceeds or profits of post-petition milk sales transactions resulting in account receivables are not traceable to a pre-petition collateral. They are after acquired property of the estate free and clear of the pre- petition lien, when § 552(a) invalidated it."

"The milk produced post-petition is post-petition acquired property of the estate from debtor's dairy cows, cattle that is not subject to any pre-petition lien by Condado."

"Every time the raw milk is collected by the milk processor a civil sale transaction occurs pursuant to Article 1274 of the Civil Code. Upon collection, the possession of the produced raw milk is permanently transferred from the milk producer to the milk processor, in compliance with the seller's obligation under Article 1287 of the Civil Code. The price of the property sold by the milk producer is set by law to be determined by a third party, i.e., ORIL, as allowed by Article 1282 of the Civil Code. Each transaction creates an account receivable, notwithstanding that the price will be determined and fixed in the future and applied retroactively to all milk collected within the 14 days prior to the liquidation date — account receivables in which the "milk producer" becomes post-petition 'seller—creditor' of the milk processing plant, the post-petition 'buyer—debtor'."

"When the bankruptcy petition is filed during the 14-days-period of milk collection (the sale transactions) and the bi-weekly liquidation of the sale price, the prepetition sale transactions, and its related account receivables, would be covered by Condado' s pre-petition lien (as they are property that can be traced back to prepetition acquired and encumbered property). Post-petition sales transactions, however, would be sales of post-petition acquired property, free from such pre-petition lien, as the lien became inoperative by virtue of § 552(a)."

"It is precisely the purpose of § 552 to prevent a creditor's pre-petition security interest in after acquired property, like a 'floating lien' or a 'continuing lien', from attaching to property acquired by the estate or the debtor in possession after a bankruptcy petition was filed. See: In re Cross Baking Co., Inc., 818 F.2d 1027, 1029, 55 USLW 2658, 17 Collier Bankr. Cas. 2d 236, Bankr. L. Rep. P 71825 (1st Cir. 1987)."

Therefore, "Condado' s perfected pre-petition security agreement over debtor's account receivables does not extend to post-petition account receivables of Suiza Dairy Corp. as it became ineffective by the effect of § 552(a)."

Applicable Law

There is no issue as to the fact that Condado has a validly perfected security interest and that the pre-petition sales are subject to its lien. Therefore, there is no need to discuss the applicable law on this matter. The critical legal issue is whether the post-petition accounts receivables come within the prohibition in section 552(a) or under the exception in section 552(b). If the facts would involve rents and room revenues, the decision would be clear, section 552(b) would apply. Feeney, Williamson, Stepan, Bankruptcy Law Manual, 5th Edition, 2022, §11.20. However, the facts of this case concern account receivables generated by the sale of milk produced by cows, which are not subject to the lien. The collateral to the lien is the milk quota authorized by ORIL, which authorizes the debtor to operate a farming operation wherein cows produce milk.

Section 552 of the Bankruptcy Code governs the extent of valid security agreements over property acquired post-petition. The general rule is that property acquired post-petition is

not subject to a pre-petition security agreement. 11 U.S.C. § 552(a). However, the general rule is subject to exceptions set forth in section 552(b), such as: proceeds, products, offspring, rents, profits, or hotel revenues generated from the original collateral. The main purpose of the general rule in section 552(a) is to facilitate debtor's fresh start, rehabilitation, and reorganization. The exceptions in section 552(b) intend to balance debtor's rights with the secured creditors' right to preserve their interest in the collateral over a valid pre-petition lien. Feeney, Williamson, Stepan, Bankruptcy Law Manual, 5th Edition, 2022, §6:52.

Discussion

The record clearly shows that in the Debtor's first bankruptcy case the critical factor was the repayment terms of the secured loan with Banco Popular de Puerto Rico, Condado' s predecessor in interest. The travel of the first case shows the numerous joint stipulations filed by and between the Debtor and Banco Popular de Puerto Rico over the use of cash collateral, which were ultimately incorporated into the plan  confirmed in August 2012 and the post-confirmation amended plan dated August 3, 2016, confirmed in September 2016.  However, the debtor's first case, 11-05237, filed under the name of Vaquería Las Martas, Inc., was consolidated in July 2011, with case number 11-05236 filed by Juan Manuel Barreto Ginorio, and case number 11-05239 filed by JM Dairy, Inc., all chapter 12 cases with docket entries made in case 11-05236 for being the first filed case of the three. The confirmed plan was a consolidated plan of all three debtors.  The secured debt with Banco Popular de Puerto Rico, now Condado, was guaranteed by collateral of each of the three consolidated Chapter 12 debtors. Thus, the facts are different from the instant case, wherein only Las Martas, Inc. (Vaquería Las Martas, Inc.) is the only debtor, and the collateral is only the milk quota. This difference is of critical importance as the court is conscious that court approved stipulations must be observed.

The court has thoroughly considered the position and argument of the debtor, Condado and the Chapter 13 trustee.  The court agrees with the position and legal basis espoused by the Chapter 13 trustee.  Since the same has been detailed above, a repetition is not necessary and is

incorporated as the court's own, in the following conclusions: considering the facts leading to the stipulations and the confirmed plans in the first case and that the court's decision in the second case is the later, the court finds that the doctrine of *res judicata* is not applicable; Condado' s perfected pre-petition security agreement over debtor's milk quota is limited to the milk quota, it does not extend to its proceeds or products; Condado' s collateral is limited to the milk quota but does not include proceeds, products, or profits of the milk quota; and, Condado's perfected pre-petition security agreement over debtor's account receivables does not extend to post-petition account receivables as the same became ineffective by the effect of § 552(a).

Conclusion

In view of the foregoing, the court denies Condado' s motion for prohibition to use cash collateral resulting from the post-petition sale of milk.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 15th day of February 2023.

Enrique S. Lamoutte
United States Bankruptcy Judge