**FUNDS, APLDIST, APPEAL, DISMISSED**

# U.S. Bankruptcy Court
## District of Puerto Rico (Old San Juan)
## Bankruptcy Petition #: 22−02380−ESL12

*Date filed:* 08/16/2022
*341 meeting:* 09/21/2022
*Deadline for objecting to discharge:* 11/21/2022

*Assigned to:* Bankruptcy Judge ENRIQUE S. LAMOUTTE INCLAN
Chapter 12
Voluntary
Asset

| | |
|---|---|
| *Debtor*<br>**LAS MARTAS INC**<br>HC 05 BOX 91635<br>ARECIBO, PR 00612<br>HATILLO−PR<br>Tax ID / EIN: 66−0541863<br>*dba* **VAQUERIA LAS MARTAS** | represented by **DANIEL MARK PRESS**<br>Chung & Press, P.C.<br>6718 Whittier Ave. Ste. 200<br>McLean, VA 22101<br>703−734−3800<br>Fax : 703−734−−0590<br>Email: dpress@chung−press.com |
| *Trustee*<br>**JOSE RAMON CARRION MORALES**<br>PO BOX 9023884<br>SAN JUAN, PR 00902−3884<br>787 977−3535 | represented by **JOSE RAMON CARRION MORALES**<br>PO BOX 9023884<br>SAN JUAN, PR 00902−3884<br>787 977−3535<br>Email: newecfmail@ch13−pr.com<br><br>**ALEXANDRA MILAGROS RODRIGUEZ DIAZ**<br>JRCarrion, Standing Chapter 13 & 12 Trustee<br>PO BOX 9023884<br>Ochoa Building<br>Ste 501<br>SAN JUAN, PR 00902−3884<br>787−317−8125<br>Email: arodriguez@ch13−pr.com |
| *U.S. Trustee*<br>**MONSITA LECAROZ ARRIBAS**<br>OFFICE OF THE US TRUSTEE (UST)<br>OCHOA BUILDING<br>500 TANCA STREET SUITE 301<br>SAN JUAN, PR 00901 | |
| *Counter−Defendant*<br>**US SMALL BUSINESS ADMINISTRATION**<br>273 PONCE DE LEON AVE SUITE 510<br>PLAZA 273<br>SAN JUAN, PR 00917−1930<br>787−766−5269 | represented by **PEDRO J LOPEZ BERGOLLO**<br>US SMALL BUSINESS ADMINISTRATION<br>273 PONCE DE LEON AVE<br>PLAZA 273, SUITE 510<br>SAN JUAN, PR 00917<br>787−766−5269<br>Email: pedro.lopez−bergollo@sba.gov |

1

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 08/16/2022 | | 1 | Voluntary petition under chapter 12 Attorney Statement of Compensation ( Filing Fee: $278, ) Chapter 12 plan due by 11/14/2022.. Filed by DANIEL MARK PRESS on behalf of Las Martas, Inc. (PRESS, DANIEL) (Entered: 08/16/2022) |
| 08/16/2022 | | 2 | Receipt of Voluntary Petition Chapter 12( 22−02380−12) [misc,volp12] ( 278.00) filing fee. Receipt number A15885347, amount $ 278.00. (RE: related document(s) 1) (U.S. Treasury) (Entered: 08/16/2022) |
| 08/16/2022 | | 3 | Disclosure of Compensation 2016(b). Filed by DANIEL MARK PRESS on behalf of Las Martas, Inc. (PRESS, DANIEL) (Entered: 08/16/2022) |
| 08/16/2022 | | 4 | Notice of appearance and request for notice filed by SONIA COLON COLON on behalf of CONDADO 5 LLC. (COLON COLON, SONIA) (Entered: 08/16/2022) |
| 08/16/2022 | | 5 | Notice of appearance and request for notice filed by Gustavo A Chico−Barris on behalf of CONDADO 5 LLC. (Chico−Barris, Gustavo) (Entered: 08/16/2022) |
| 08/16/2022 | | 6 | Notice of appearance and request for notice filed by FRANCES C BRUNET URIARTE on behalf of CONDADO 5 LLC. (BRUNET URIARTE, FRANCES) (Entered: 08/16/2022) |
| 08/16/2022 | | 7 | Notice of appearance and request for notice filed by Tomas F. Blanco−Perez on behalf of CONDADO 5 LLC. (Blanco−Perez, Tomas) (Entered: 08/16/2022) |
| 08/17/2022 | | 8 | Notice to creditors: 341(a) meeting to be held on 9/21/2022 at 10:20 AM via Telephonic Conference Information for Chapter 13 Trustee Jose Carrion Morales. Last day to oppose discharge or dischargeability is 11/21/2022. Proof of Claims due by 10/25/2022. Government Proof of Claim due by 2/12/2023. (CENTENO GONZALEZ, ALVIN) (Entered: 08/17/2022) |
| 08/17/2022 | | 9 | Motion to prohibit use of cash collateral *and for Entry of Order Authorizing Condado 5, LLC to Seek and Collect Proceeds (14 + 3 day(s) OBJECTION LANGUAGE)* (Attachments: # 1 Exhibit I− Loan Agreement # 2 Exhibit II− Endorsed Note # 3 Exhibit III− Security Agreement # 4 Exhibit IV− UCC 20210005226 # 5 Exhibit V− UCC 20210005227 # 6 Exhibit VI− UCC 20210005228 # 7 Exhibit VII− 08.16.2022 Email from Debtor's Counsel) filed by FRANCES C BRUNET URIARTE, Tomas F. Blanco−Perez, SONIA COLON COLON, Gustavo A Chico−Barris on behalf of CONDADO 5 LLC [Chico−Barris, Gustavo] (Entered: 08/17/2022) |
| 08/17/2022 | | 10 | Certificate of service (RE: related document(s)9). Filed by SONIA COLON COLON on behalf of CONDADO 5 LLC (COLON COLON, SONIA) (Entered: 08/17/2022) |
| 08/17/2022 | | 11 | Motion requesting entry of order *Declaring the Codebtor Stay Inapplicable (14 + 3 day(s) OBJECTION LANGUAGE)* (Attachments: # 1 Exhibit I− Loan Agreement # 2 Exhibit II− Master Promissory Note # 3 Exhibit III− Amendment to Note # 4 Exhibit IV− Amendment to Note) filed by FRANCES C BRUNET URIARTE, Tomas F. Blanco−Perez, Gustavo A Chico−Barris on behalf of CONDADO 5 LLC [Chico−Barris, |

| | | | |
|---|---|---|---|
| | | | Gustavo] (Entered: 08/17/2022) |
| 08/18/2022 | | 12 | Certificate of service (RE: related document(s)11). Filed by SONIA COLON COLON on behalf of CONDADO 5 LLC (COLON COLON, SONIA) (Entered: 08/18/2022) |
| 08/18/2022 | | 13 | Notice of appearance and request for notice. Filed by RAFAEL A GONZALEZ VALIENTE on behalf of SUIZA DAIRY, INC. (GONZALEZ VALIENTE, RAFAEL) (Entered: 08/18/2022) |
| 08/19/2022 | | 14 | Certificate of service (RE: related document(s)8) Notice Date 08/19/2022. (Admin.) (Entered: 08/20/2022) |
| 08/29/2022 | | 15 | Response to *MOTION TO PROHIBIT USE OF CASH COLLATERAL AND FOR ENTRY OF ORDER AUTHORIZING CONDADO 5, LLC, TO SEEK AND COLLECT PROCEEDS* Filed by DANIEL MARK PRESS on behalf of LAS MARTAS, INC. (RE: related document(s)9). (PRESS, DANIEL) (Entered: 08/29/2022) |
| 08/30/2022 | | 16 | Motion for Leave to File *Reply to Debtor's "Response to Motion to Prohibit Use of Cash Collateral and for Entry of Order to Seek and Collect Proceeds" or Otherwise Plead* filed by FRANCES C BRUNET URIARTE, Tomas F. Blanco−Perez, SONIA COLON COLON, Gustavo A Chico−Barris on behalf of CONDADO 5 LLC [Chico−Barris, Gustavo] (Entered: 08/30/2022) |
| 08/30/2022 | | 17 | Notice of appearance and request for notice filed by PEDRO J LOPEZ BERGOLLO on behalf of US SMALL BUSINESS ADMINISTRATION. (LOPEZ BERGOLLO, PEDRO) (Entered: 08/30/2022) |
| 08/30/2022 | | 18 | Declaration About Individual Debtor's Schedules , Schedule A/B: Property Non−Individual , Schedule D: Non−Individual− Creditors Having Claims Secured by Property , Schedule E/F: Creditors Who Have Unsecured Claims Non−Individual , Schedule G: Non−Individual− Executory Contracts and Unexpired Leases , Schedule H: Non−Individual− Codebtors , Statement of Financial Affairs for Non−Individual , Summary of Assets and Liabilities Schedules for Non−Individual . Filed by DANIEL MARK PRESS on behalf of LAS MARTAS, INC. (PRESS, DANIEL) (Entered: 08/30/2022) |
| 08/31/2022 | | 19 | Order Granting Motion for Leave to File Reply to Debtor's "Response to Motion to Prohibit Use of Cash Collateral and for Entry of Order to Seek and Collect Proceeds" or Otherwise Plead Signed on 8/31/2022. (RE: related document(s)16).(HERNANDEZ ALEJANDRO, CYBELLE) (Entered: 08/31/2022) |
| 08/31/2022 | | 20 | ORDER AND NOTICE TO CONSIDER: Condado 5, LLCs motion to prohibit use of collateral and for entry of order authorizing them to seek and collect proceeds (docket #9); Debtors response to Condado 5, LLCs motion to prohibit use of collateral (docket #15). Signed on 8/31/2022. Hearing scheduled 9/16/2022 at 10:00 AM at Microsoft Teams Video & Audio Conferencing and/or Telephonic Hearings. (RE: related document(s)9, 15).(HERNANDEZ ALEJANDRO, CYBELLE) (Entered: 08/31/2022) |
| 09/01/2022 | | 21 | Adversary case 22−00062. 02 (Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy)): Complaint by SUIZA DAIRY, INC. against CONDADO 5, LLC, VAQUERIA LAS MARTAS INC. Fee Amount $350 (Attachments: # 1 Exhibit 1 # 2 Exhibit |

| | | | |
|---|---|---|---|
| | | | 2 # 3 Exhibit 3 # 4 Exhibit 5 # 5 Exhibit 6 # 6 Exhibit 7 # 7 Proposed Order Proposed Order # 8 Supplement Summons # 9 Supplement Summons) (GONZALEZ VALIENTE, RAFAEL) (Entered: 09/01/2022) |
| 09/01/2022 | | 22 | Motion to dismiss case *under Section 1208(c) of the Bankruptcy Code. (30 day objection language)* (Attachments: # 1 Exhibit I − ORILs Certification # 2 Exhibit II − Certification from the Property Registry) filed by FRANCES C BRUNET URIARTE, SONIA COLON COLON, Gustavo A Chico−Barris, Tomas F. Blanco−Perez on behalf of CONDADO 5 LLC [Blanco−Perez, Tomas] (Entered: 09/01/2022) |
| 09/02/2022 | | 23 | Certificate of service (RE: related document(s)19) Notice Date 09/02/2022. (Admin.) (Entered: 09/03/2022) |
| 09/02/2022 | | 24 | Certificate of service (RE: related document(s)20) Notice Date 09/02/2022. (Admin.) (Entered: 09/03/2022) |
| 09/06/2022 | | 25 | Reply to *Debtor's Response to Motion to Prohibit Use of Cash Collateral and for Entry of Order Authorizing Condado 5 LLC to Seek and Collect Proceeds* Filed by FRANCES C BRUNET URIARTE, Tomas F. Blanco−Perez, SONIA COLON COLON, Gustavo A Chico−Barris on behalf of CONDADO 5 LLC (RE: related document(s)9, 15, 16, 19). (Attachments: # 1 Exhibit I: Signed and Executed UCCs)(Chico−Barris, Gustavo) (Entered: 09/06/2022) |
| 09/07/2022 | | 26 | Motion requesting entry of order *granting the "Motion to Declare the Codebtor Stay Inapplicable" as Unopposed* (related document(s): 11) filed by FRANCES C BRUNET URIARTE, Tomas F. Blanco−Perez, SONIA COLON COLON, Gustavo A Chico−Barris on behalf of CONDADO 5 LLC [Chico−Barris, Gustavo] (Entered: 09/07/2022) |
| 09/12/2022 | | 27 | Order Granting Unopposed Motion Signed on 9/12/2022. (RE: related document(s)11, 26).(ZAYAS BUJOUVEN, DARHMA) (Entered: 09/12/2022) |
| 09/12/2022 | | 28 | ORDER: The motion filed by CONDADO 5 LLC requesting to declare the co−debtor stay inapplicable as unopposed (Docket Entry #26) is hereby granted. Signed on 9/12/2022. (RE: related document(s)26).(ZAYAS BUJOUVEN, DARHMA) (Entered: 09/12/2022) |
| 09/13/2022 | | 29 | Notice of continuance of 341 meeting for *Sep 21, 2022 at 10:20 AM (Telephone Conference)* filed by JOSE RAMON CARRION MORALES (CARRION MORALES, JOSE) (Entered: 09/13/2022) |
| 09/13/2022 | | 30 | Motion to inform *Errata* (RE: related document(s)25). Filed by FRANCES C BRUNET URIARTE, SONIA COLON COLON, Gustavo A Chico−Perez, Tomas F. Blanco−Perez on behalf of CONDADO 5 LLC (Blanco−Perez, Tomas) (Entered: 09/13/2022) |
| 09/14/2022 | | 31 | Certificate of service (RE: related document(s)27) Notice Date 09/14/2022. (Admin.) (Entered: 09/15/2022) |
| 09/14/2022 | | 32 | Certificate of service (RE: related document(s)28) Notice Date 09/14/2022. (Admin.) (Entered: 09/15/2022) |
| 09/20/2022 | | 33 | Notice of continuance of 341 meeting for *Oct 12, 2022 at 10:00 AM (Telephone Conference)* filed by JOSE RAMON CARRION MORALES |

| | | | |
|---|---|---|---|
| | | | (CARRION MORALES, JOSE) (Entered: 09/20/2022) |
| 09/21/2022 | | [34](#) | Minutes of Hearing Held on September 16, 2022: ORDER: The Chapter 12 Trustee shall file its position in writting fourteen (14) days. Condado shall reply to the same within fourteen (14) days, and the Debtor may reply to both fourteen (14) days thereafter. IT IS SO ORDERED. Order due by 10/5/2022. (Re: related document(s)[20](#)).(ZAYAS BUJOUVEN, DARHMA) (Entered: 09/21/2022) |
| 09/23/2022 | | [35](#) | Trustee's Position *and Memorandum of Law in Support Thereof re Dkt 009* filed by JOSE RAMON CARRION MORALES on behalf of JOSE RAMÓN CARRION MORALES (RE: related document(s) [9](#), [15](#), [25](#), [34](#)). (CARRION MORALES, JOSE) (Entered: 09/23/2022) |
| 09/23/2022 | | [36](#) | Certificate of service (RE: related document(s)[34](#)) Notice Date 09/23/2022. (Admin.) (Entered: 09/24/2022) |
| 10/03/2022 | | [37](#) | Response to *Motion to Dismiss* Filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC (RE: related document(s)[22](#)). (PRESS, DANIEL) (Entered: 10/03/2022) |
| 10/04/2022 | | [38](#) | Motion for Leave to File *Reply to Debtor's "Response to Motion to Dismiss" or Otherwise Plead and for Extension of Time* filed by FRANCES C BRUNET URIARTE, Tomas F. Blanco−Perez, SONIA COLON COLON, Gustavo A Chico−Barris on behalf of CONDADO 5 LLC [Chico−Barris, Gustavo] (Entered: 10/04/2022) |
| 10/05/2022 | | [39](#) | Order Granting Motion for leave to reply to the Debtors response or otherwise plead. Signed on 10/5/2022. **Due by 10/18/2022.** (RE: related document(s)[38](#)).(HERNANDEZ ALEJANDRO, CYBELLE) (Entered: 10/05/2022) |
| 10/07/2022 | | [40](#) | Motion requesting extension of time( 7 days) to file its response or otherwise plead. (related document(s):[34](#), [35](#)) filed by FRANCES C BRUNET URIARTE, SONIA COLON COLON, Gustavo A Chico−Barris, Tomas F. Blanco−Perez on behalf of CONDADO 5 LLC [Blanco−Perez, Tomas] (Entered: 10/07/2022) |
| 10/07/2022 | | [41](#) | Certificate of service (RE: related document(s)[39](#)) Notice Date 10/07/2022. (Admin.) (Entered: 10/08/2022) |
| 10/11/2022 | | [42](#) | Monthly Operating Report for the period of August 2022 . Filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC (PRESS, DANIEL) (Entered: 10/11/2022) |
| 10/11/2022 | | [43](#) | ORDER GRANTING EXTENSION OF TIME for Condado 5, LLC, to file its response to Trustee's position and memorandum of law or otherwise plead. Signed on 10/11/2022. **Order due by 10/14/2022.** (RE: related document(s)[40](#)).(HERNANDEZ ALEJANDRO, CYBELLE) (Entered: 10/11/2022) |
| 10/13/2022 | | [44](#) | Minutes of 341 meeting closed. filed by JOSE RAMON CARRION MORALES on behalf of JOSE RAMON CARRION MORALES (CARRION MORALES, JOSE) (Entered: 10/13/2022) |
| 10/13/2022 | | [45](#) | Certificate of service (RE: related document(s)[43](#)) Notice Date 10/13/2022. (Admin.) (Entered: 10/14/2022) |

| | | | |
|---|---|---|---|
| 10/14/2022 | | 46 | Response to *"Trustee's Position and Memorandum of Law in Support Thereof"* Filed By FRANCES C BRUNET URIARTE, Tomas F. Blanco−Perez, SONIA COLON COLON, Gustavo A Chico−Barris on behalf of CONDADO 5 LLC (RE: related document(s)35). (Chico−Barris, Gustavo) (Entered: 10/14/2022) |
| 10/17/2022 | | 47 | Reply to *Debtor's "Response to Motion to Dismiss"* Filed By FRANCES C BRUNET URIARTE, Tomas F. Blanco−Perez, SONIA COLON COLON, Gustavo A Chico−Barris on behalf of CONDADO 5 LLC (RE: related document(s)37). (Attachments: # 1 Exhibit I: Email to Debtor's attorney)(Chico−Barris, Gustavo) (Entered: 10/17/2022) |
| 10/27/2022 | | 48 | Monthly Operating Report for the period of September 2022 . Filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC (PRESS, DANIEL) (Entered: 10/27/2022) |
| 11/14/2022 | | 49 | Chapter 12 Plan of Reorganization. Filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC (PRESS, DANIEL) (Entered: 11/14/2022) |
| 11/15/2022 | | 50 | Motion requesting entry of order *for the Chapter 12 Trustee to Perform Duties Specified in 11 U.S.C. § 1202(b)(2).* (Attachments: # 1 Exhibit I − Transcript Excerpt of 341 Meeting # 2 Exhibit II − October 13 Email # 3 Exhibit III − October 19 Email # 4 Exhibit IV − November 7 Email # 5 Exhibit V − November 10 Email) filed by FRANCES C BRUNET URIARTE, GUSTAVO A CHICO−BARRIS, SONIA COLON COLON, TOMAS F. BLANCO−PEREZ on behalf of CONDADO 5 LLC [BLANCO−PEREZ, TOMAS] (Entered: 11/15/2022) |
| 11/15/2022 | | 51 | ORDER AND NOTICE ON CONFIRMATION HEARING. Signed on 11/15/2022. Confirmation hearing to be held on 12/20/2022 at 09:30 AM at Microsoft Teams Video & Audio Conferencing and/or Telephonic Hearings. (RE: related document(s)49).(HERNANDEZ ALEJANDRO, CYBELLE) (Entered: 11/15/2022) |
| 11/17/2022 | | 52 | Certificate of service (RE: related document(s)51) Notice Date 11/17/2022. (Admin.) (Entered: 11/18/2022) |
| 11/21/2022 | | 53 | Response to *Motion for Entry of Order* Filed By ALEXANDRA Milagros RODRIGUEZ DIAZ on behalf of JOSE RAMON CARRION MORALES (RE: related document(s)50). (RODRIGUEZ DIAZ, ALEXANDRA) (Entered: 11/21/2022) |
| 11/22/2022 | | 54 | Leave to Consign Funds for the amount of $ 48,583.37 (Attachments: # 1 Exhibit 1 − Check) filed by RAFAEL A GONZALEZ VALIENTE on behalf of SUIZA DAIRY, INC. [GONZALEZ VALIENTE, RAFAEL] (Entered: 11/22/2022) |
| 11/23/2022 | | 55 | ORDER GRANTING Consignment of Funds Signed on 11/23/2022. (RE: related document(s)54).(HERNANDEZ ALEJANDRO, CYBELLE) (Entered: 11/23/2022) |
| 11/28/2022 | | 56 | Motion requesting entry of order *converting the Confirmation Hearing to a Status Conference.* (related document(s): 9, 15, 22, 25, 35, 37, 46, 47, 49, 50, 51) filed by FRANCES C BRUNET URIARTE, GUSTAVO A CHICO−BARRIS, TOMAS F. BLANCO−PEREZ on behalf of CONDADO 5 LLC [BLANCO−PEREZ, TOMAS] (Entered: 11/28/2022) |
| 11/28/2022 | | 57 | |

| | | | |
|---|---|---|---|
| | | | Motion for Leave to File *Reply to "Response to Motion Requesting Entry of Order for the Chapter 12 Trustee to Perform Duties Specified in 11 U.S.C. 1202(b)(2)" and for Extension of Time* filed by TOMAS F. BLANCO−PEREZ, FRANCES C BRUNET URIARTE, SONIA COLON COLON, GUSTAVO A CHICO−BARRIS on behalf of CONDADO 5 LLC [CHICO−BARRIS, GUSTAVO]. Related document(s) 53. Modified on 11/29/2022 (HERNANDEZ ALEJANDRO, CYBELLE). (Entered: 11/28/2022) |
| 11/28/2022 | | 58 | Response to *MOTION FOR ENTRY OF ORDER FOR THE CHAPTER 12 TRUSTEE TO PERFORM DUTIES SPECIFIED IN 11 U.S.C.§ 1202(b)(2)* Filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC (RE: related document(s)50). (PRESS, DANIEL) (Entered: 11/28/2022) |
| 11/29/2022 | | 59 | Order Granting Motion for leave to file a Reply to Chapter 12 response over motion requesting entry of order to perform duties specified in 11 U.S.C. 1202(b)(2) and for an extension of time. Signed on 11/29/2022. **Due by 12/12/2022.** (RE: related document(s)57).(HERNANDEZ ALEJANDRO, CYBELLE) (Entered: 11/29/2022) |
| 11/29/2022 | | | Receipt of Registry Funds − 48583.37 by CA. Receipt Number 00455152. (admin) (Entered: 11/29/2022) |
| 11/30/2022 | | 60 | Motion for Leave to File *Reply to Debtor's "Response to Motion Requesting Entry of Order for the Chapter 12 Trustee to Perform Duties Specified in 11 U.S.C. 1202(b)(2)" and for Extension of Time* filed by TOMAS F. BLANCO−PEREZ, FRANCES C BRUNET URIARTE, SONIA COLON COLON, GUSTAVO A CHICO−BARRIS on behalf of CONDADO 5 LLC [CHICO−BARRIS, GUSTAVO]. Related document(s) 50, 58. Modified on 12/1/2022 (HERNANDEZ ALEJANDRO, CYBELLE). (Entered: 11/30/2022) |
| 12/01/2022 | | 61 | Order Granting Motion for leave to file a Reply to Debtor's response over motion requesting entry of order to perform duties specified in 11 U.S.C. 1202(b)(2) and for an extension of time. Signed on 12/1/2022. **Due by 12/14/2022.** (RE: related document(s)60).(HERNANDEZ ALEJANDRO, CYBELLE) (Entered: 12/01/2022) |
| 12/01/2022 | | 62 | Certificate of service (RE: related document(s)59) Notice Date 12/01/2022. (Admin.) (Entered: 12/02/2022) |
| 12/02/2022 | | 63 | Motion to shorten time *Objection Period of Motion requesting entry of order converting the Confirmation Hearing to a Status Conference.* (related document(s): 56) filed by FRANCES C BRUNET URIARTE, GUSTAVO A CHICO−BARRIS, TOMAS F. BLANCO−PEREZ on behalf of CONDADO 5 LLC [BLANCO−PEREZ, TOMAS] (Entered: 12/02/2022) |
| 12/03/2022 | | 64 | Certificate of service (RE: related document(s)61) Notice Date 12/03/2022. (Admin.) (Entered: 12/04/2022) |
| 12/05/2022 | | 65 | OPINION AND ORDER: Debtor to show cause within eleven (11) days why confirmation should not be denied pursuant to sections 1225(a)(3,6) of the Bankruptcy Code, and the case dismissed pursuant to section 1208(c)(5) of the Bankruptcy Code. The future course of this case will depend on the timely response by the Debtor. The court cautions the Debtor that, after considering the Debtors history of bankruptcy filings, conclusory allegations will not move the court and that feasibility and changed circumstances require supporting documentation. The same must |

| | | | |
|---|---|---|---|
| | | | be attached to the response to this order. Signed on 12/5/2022. Order due by 12/16/2022. (RE: related document(s)22, 34, 37, 42, 47, 48, 49, 56).(RODRIGUEZ RODRIGUEZ, DENNIS) (Entered: 12/05/2022) |
| 12/07/2022 | | 66 | Certificate of service (RE: related document(s)65) Notice Date 12/07/2022. (Admin.) (Entered: 12/08/2022) |
| 12/12/2022 | | 67 | Motion requesting extension of time( 7 days) to File Objection to Confirmation of Chapter 12 Plan or Otherwise Plead. (related document(s):49) filed by TOMAS F. BLANCO−PEREZ, GUSTAVO A CHICO−BARRIS on behalf of CONDADO 5 LLC [CHICO−BARRIS, GUSTAVO] (Entered: 12/12/2022) |
| 12/12/2022 | | 68 | Reply to *Chapter 12 Trustee's and Debtor's Responses to Motion Requesting Entry of Order for the Chapter 12 Trustee to Perform Duties Specified in 11 U.S.C. § 1202(b)(2).* Filed by FRANCES C BRUNET URIARTE, GUSTAVO A CHICO−BARRIS, TOMAS F. BLANCO−PEREZ on behalf of CONDADO 5 LLC (RE: related document(s)53, 58). (Attachments: # 1 Exhibit I − Chapter 12 Trustee's Handbook # 2 Exhibit II − NRCS−CPA−1202 Appendix Form)(BLANCO−PEREZ, TOMAS) (Entered: 12/12/2022) |
| 12/12/2022 | | 69 | Response to *MOTION TO CONVERT THE CONFIRMATION HEARING TO A STATUS CONFERENCE* Filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC (RE: related document(s)56). (PRESS, DANIEL) (Entered: 12/12/2022) |
| 12/13/2022 | | 70 | Trustee Report on Confirmation: Not Recommends Plan *dated November 14, 2022* (Attachments: # 1 Exhibit Certificate of Mailing)filed by ALEXANDRA Milagros RODRIGUEZ DIAZ on behalf of JOSE RAMON CARRION MORALES (RE: related document(s) 49). (RODRIGUEZ DIAZ, ALEXANDRA) (Entered: 12/13/2022) |
| 12/14/2022 | | 71 | Motion for Leave to File *Surreply to Reply to Chapter 12 Trustee's and Debtor's Responses to Motion Requesting Order* filed by ALEXANDRA Milagros RODRIGUEZ DIAZ on behalf of JOSE RAMON CARRION MORALES [RODRIGUEZ DIAZ, ALEXANDRA] (Entered: 12/14/2022) |
| 12/15/2022 | | 72 | Order Granting Motion for Chapter 12 Trustee to surreply to Condado 5, LLC's reply to trustee's and Debtor's response over Condado's request for entry of order. Signed on 12/15/2022. **Due by 1/4/2023.** (RE: related document(s)50, 53, 68, 71).(HERNANDEZ ALEJANDRO, CYBELLE) (Entered: 12/15/2022) |
| 12/16/2022 | | 73 | ORDER: The motion filed by CONDADO 5 LLC requesting to convert confirmation hearing into a status conference (Docket Entry #56) is hereby granted. See also Docket #69. Signed on 12/16/2022. (RE: related document(s)56).(ZAYAS BUJOUVEN, DARHMA) (Entered: 12/16/2022) |
| 12/16/2022 | | 74 | ORDER: The motion filed by LAS MARTAS INC requesting to convert confirmation hearing into a status conference (Docket Entry #69) is hereby granted. Signed on 12/16/2022. (RE: related document(s)69).(ZAYAS BUJOUVEN, DARHMA) (Entered: 12/16/2022) |
| 12/16/2022 | | 75 | Motion requesting extension of time( 1 business days) to Respond to Order to Show Cause. (related document(s):65) filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC [PRESS, DANIEL] (Entered: 12/16/2022) |

| | | | |
|---|---|---|---|
| 12/17/2022 | | 76 | Certificate of service (RE: related document(s)72) Notice Date 12/17/2022. (Admin.) (Entered: 12/18/2022) |
| 12/18/2022 | | 77 | Certificate of service (RE: related document(s)73) Notice Date 12/18/2022. (Admin.) (Entered: 12/19/2022) |
| 12/18/2022 | | 78 | Certificate of service (RE: related document(s)74) Notice Date 12/18/2022. (Admin.) (Entered: 12/19/2022) |
| 12/19/2022 | | 79 | ORDER: The motion filed by Debtor requesting extension of one (1) day to respond to order to show cause (Docket Entry #75) is hereby granted. Signed on 12/19/2022. (RE: related document(s)75).(ZAYAS BUJOUVEN, DARHMA) (Entered: 12/19/2022) |
| 12/19/2022 | | 80 | Monthly Operating Report for the period of October 2022 . Filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC (PRESS, DANIEL) (Entered: 12/19/2022) |
| 12/19/2022 | | 81 | Objection to Confirmation of Plan *Dated 11/14/22*. Filed by TOMAS F. BLANCO−PEREZ, FRANCES C BRUNET URIARTE, SONIA COLON COLON, GUSTAVO A CHICO−BARRIS on behalf of CONDADO 5 LLC (CHICO−BARRIS, GUSTAVO) (Entered: 12/19/2022) |
| 12/19/2022 | | 82 | Monthly Operating Report for the period of November 2022 . Filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC (PRESS, DANIEL) (Entered: 12/19/2022) |
| 12/19/2022 | | 83 | Response to *Show Cause* Filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC (RE: related document(s)65). (Attachments: # 1 Affidavit)(PRESS, DANIEL) (Entered: 12/19/2022) |
| 12/21/2022 | | 84 | Trustee's Position *AMENDED re Condado 5, LLC request for Order* filed by JOSE RAMON CARRION MORALES on behalf of JOSE RAMON CARRION MORALES (RE: related document(s) 50, 53, 58, 68, 71). (CARRION MORALES, JOSE) (Entered: 12/21/2022) |
| 12/21/2022 | | 85 | Minutes of Status Conference held on December 20, 2022: ORDER: 1.The Chapter 12 trustee shall file motion regarding Condado's fraud concerns within 60 days. The court notes that the motion was already filed at dkt. #84. 2. The Debtor shall file an amended Chapter 12 plan within 21 days. 3. The cash collateral issue is taken under advisement. 4. An evidentiary hearing on Condado's motion to dismiss on bad faith grounds is scheduled for March 30−31, 2023 at 9:30 a.m. The parties shall file proposed findings of fact and conclusions of law seven (7) days prior to the hearing. Each finding of fact shall refer to either a document to be submitted as an exhibit, or to a witness. IT IS SO ORDERED. (PLEASE READ FULL MINUTES FOR FURTHER DETAILS). Order due by 2/21/2023. (Re: related document(s)51).(ZAYAS BUJOUVEN, DARHMA) (Entered: 12/21/2022) |
| 12/21/2022 | | 86 | ORDER AND NOTICE ON EVIDENTIARY HEARING: An Evidentiary hearing is hereby scheduled for March 30, 2023 at 9:30 AM and March 31, 2023 at 9:30 a.m. at the U.S. Bankruptcy Court for the District of Puerto Rico, Jose V. Toledo Fed. Bldg. & U.S. Courthouse, 300 Recinto Sur, Courtroom No. 2, Floor 2, San Juan, Puerto Rico, to consider the following: Motion to dismiss filed by Condado 5 LLC (Docket #22); Debtors response (Docket #37); Condado 5 LLC Reply (Docket #47); Order to show cause re dismissal entered on December 5, 2022 (Docket #65) and Debtors response to the Order to show cause filed on December |

| | | | |
|---|---|---|---|
| | | | 19, 2022 (Docket #83). The parties shall file proposed findings of fact and conclusions of law seven (7) days prior to the hearing. Each finding of fact shall make reference to either a document to be submitted as an exhibit, or to a witness. The court advises the parties that it will not hold an evidentiary hearing without timely filed proposed findings of fact and conclusions of law. Signed on 12/21/2022. Hearing scheduled 3/30/2023 at 09:30 AM at JOSE V TOLEDO FED BLDG & US COURTHOUSE, 300 RECINTO SUR, 2ND FLOOR COURTROOM 2. (RE: related document(s)22, 37, 47, 65, 83).(ZAYAS BUJOUVEN, DARHMA) (Entered: 12/21/2022) |
| 12/21/2022 | | 87 | Certificate of service (RE: related document(s)79) Notice Date 12/21/2022. (Admin.) (Entered: 12/22/2022) |
| 12/23/2022 | | 88 | Motion resigning legal representation *and for the Clerk of the Court to Cease Notifications Pursuant to P.R. LBR 9010−1(d)(3)* (Attachments: # 1 Exhibit I) filed by FRANCES C BRUNET URIARTE on behalf of CONDADO 5 LLC [BRUNET URIARTE, FRANCES] (Entered: 12/23/2022) |
| 12/23/2022 | | 89 | Certificate of service (RE: related document(s)85) Notice Date 12/23/2022. (Admin.) (Entered: 12/24/2022) |
| 12/23/2022 | | 90 | Certificate of service (RE: related document(s)86) Notice Date 12/23/2022. (Admin.) (Entered: 12/24/2022) |
| 12/28/2022 | | 91 | Urgent motion *Requesting Permission to Consign Funds* filed by RAFAEL A GONZALEZ VALIENTE on behalf of SUIZA DAIRY, INC. [GONZALEZ VALIENTE, RAFAEL] (Entered: 12/28/2022) |
| 12/28/2022 | | 92 | ORDER GRANTING CONSIGNMENT OF FUNDS: The urgent motion filed by Suiza Dairy, Inc. requesting permission to consign with the Court the bi−weekly payments due to Las Martas, Inc. (docket #91) is hereby granted. Signed on 12/28/2022. (RE: related document(s)91).(HERNANDEZ ALEJANDRO, CYBELLE) (Entered: 12/28/2022) |
| 12/29/2022 | | | Receipt of Registry Funds − 13000.00 by CA. Receipt Number 00455301. (admin) (Entered: 12/29/2022) |
| 01/10/2023 | | 93 | Amended Chapter 12 Plan . Filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC (PRESS, DANIEL) (Entered: 01/10/2023) |
| 01/16/2023 | | 94 | Monthly Operating Report for the period of December 2022 . Filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC (PRESS, DANIEL) (Entered: 01/16/2023) |
| 01/23/2023 | | 95 | Objection to Confirmation of Plan *dated 1/10/2023*. Filed by GUSTAVO A CHICO−BARRIS, TOMAS F. BLANCO−PEREZ on behalf of CONDADO 5 LLC (BLANCO−PEREZ, TOMAS) (Entered: 01/23/2023) |
| 01/25/2023 | | | Receipt of Registry Funds − 13000.00 by CA. Receipt Number 00455342. (admin) (Entered: 01/25/2023) |
| 01/26/2023 | | 96 | Trustee's Position *as to Chapter 12 plan dated January 10, 2023* (Attachments: # 1 Exhibit Certificate of Mailing)filed by ALEXANDRA Milagros RODRIGUEZ DIAZ on behalf of JOSE RAMON CARRION MORALES (RE: related document(s) 93). (RODRIGUEZ DIAZ, |

| | | | |
|---|---|---|---|
| | | | ALEXANDRA) (Entered: 01/26/2023) |
| 01/31/2023 | | 97 | Motion requesting continuance of hearing *scheduled for March 30 − 31, 2023 at 9:30 a.m.* (related document(s):85, 86) filed by GUSTAVO A CHICO−BARRIS, TOMAS F. BLANCO−PEREZ on behalf of CONDADO 5 LLC [BLANCO−PEREZ, TOMAS] (Entered: 01/31/2023) |
| 02/02/2023 | | 98 | ORDER AND NOTICE RESCHEDULING EVIDENTIARY HEARING: The motion filed by Condado 5, LLC requesting a continuance of the evidentiary hearing scheduled for March 30, 2023 and March 31, 2023 (docket #97) is hereby granted. The evidentiary hearing to consider: Motion to dismiss filed by Condado 5 LLC (Docket #22); Debtors response (Docket #37); Condado 5 LLC Reply (Docket #47); Order to show cause re dismissal entered on December 5, 2022 (Docket #65) and Debtors response to the Order to show cause filed on December 19, 2022 (Docket #83) is hereby rescheduled for June 15, 2023 and June 16, 2023 at 9:30 a.m at the U.S. Bankruptcy Court for the District of Puerto Rico, Jose V. Toledo Fed. Bldg. & U.S. Courthouse, 300 Recinto Sur, Courtroom No. 2, Floor 2, San Juan, Puerto Rico. (RE: related document(s)86, 97).(HERNANDEZ ALEJANDRO, CYBELLE) (Entered: 02/02/2023) |
| 02/04/2023 | | 99 | Certificate of service (RE: related document(s)98) Notice Date 02/04/2023. (Admin.) (Entered: 02/05/2023) |
| 02/10/2023 | | 100 | Report *by Chapter 12 Trustee re Dkts 50,53,58,68 & 85* (Attachments: # 1 Exhibit Exhibit 12019 09−30 Debtor's NRCS Application # 2 Exhibit Exhibit 22020 08−13 NRCS−USDA Contract # 3 Exhibit Exhibit 32020 09−03 NRCS Contract # 4 Exhibit Exhibit 42022−08 Bank Stmt_Redacted # 5 Exhibit Exhibit 52022 10−22341 Transcript−Exh I of Dkt 050 Condado Motion # 6 Exhibit Exhibit 62022 11−09 Check No. 4041013 for $37,000_Redacted # 7 Exhibit Exhibit 72023 01−29 Declaration Mr. Juan Barreto # 8 Exhibit Exhibit 82022 11−13 Rubi SteelWorksContrato Techo−Las Martas # 9 Exhibit Exhibit 92022 11−12 LM Cheque techo Contratista_Redacted # 10 Exhibit Exhibit 102023 01−27 Ltr to NRCS # 11 Exhibit Exhibit 112023 02−09 USDA Ltr re Las Martas_INC)filed by JOSE RAMON CARRION MORALES on behalf of JOSE RAMON CARRION MORALES (CARRION MORALES, JOSE) (Entered: 02/10/2023) |
| 02/13/2023 | | 101 | Certificate of service (RE: related document(s)100). Filed by JOSE RAMON CARRION MORALES on behalf of JOSE RAMON CARRION MORALES (CARRION MORALES, JOSE) (Entered: 02/13/2023) |
| 02/15/2023 | | 102 | OPINION AND ORDER ON USE OF CASH COLLATERAL: CONCLUSION: In view of the foregoing, the court denies Condados motion for prohibition to use cash collateral resulting from the post−petition sale of milk. SEE ORDER FOR ADDITIONAL DETAILS. Signed on 2/15/2023. **Order due by 3/1/2023.** (RE: related document(s)9, 15, 25, 30, 35, 46, ).(HERNANDEZ ALEJANDRO, CYBELLE). (Entered: 02/15/2023) |
| 02/15/2023 | | 103 | Notice of Appeal and Statement of Election to District Court. Fee Amount $298. Due by 03/1/2023. filed by TOMAS F. BLANCO−PEREZ, SONIA COLON COLON, GUSTAVO A CHICO−BARRIS on behalf of CONDADO 5 LLC (RE: related document(s)102). (CHICO−BARRIS, GUSTAVO) (Entered: 02/15/2023) |
| 02/15/2023 | | 104 | |

| | | | |
|---|---|---|---|
| | | | Receipt of Notice of Appeal and Statement of Election( 22−02380−ESL12) [appeal,ntcaplel] ( 298.00) filing fee. Receipt number A16129247, amount $ 298.00. (RE: related document(s) 103) (U.S. Treasury) (Entered: 02/15/2023) |
| 02/16/2023 | | 105 | BNC NOTICE OF APPEAL AND STATEMENT OF ELECTION (RE: related document(s)103) (RODRIGUEZ RODRIGUEZ, DENNIS) (Entered: 02/16/2023) |
| 02/16/2023 | | 106 | Transmittal Form to District Court (RE: related document(s)102, 103) (RODRIGUEZ RODRIGUEZ, DENNIS) (Entered: 02/16/2023) |
| 02/16/2023 | | 107 | Withdrawal of Claim. 7 *filed by CRIM*. Filed by CARMEN PRISCILLA FIGUEROA on behalf of CRIM (FIGUEROA, CARMEN) (Entered: 02/16/2023) |
| 02/16/2023 | | 108 | Acknowledgment of Appeal by District Court. District Court Case No: 3:23−cv−01074 (RE: related document(s)102, 103) (RODRIGUEZ RODRIGUEZ, DENNIS) (Entered: 02/16/2023) |
| 02/16/2023 | | 109 | Statement of Issues on Appeal, *and Designation of Items to be Included in the Record on Appeal* filed by TOMAS F. BLANCO−PEREZ, GUSTAVO A CHICO−BARRIS on behalf of CONDADO 5 LLC (RE: related document(s)103). (CHICO−BARRIS, GUSTAVO) (Entered: 02/16/2023) |
| 02/17/2023 | | 110 | Order Granting Motion Signed on 2/17/2023. (RE: related document(s)107).(ROMO, JOSE) (Entered: 02/17/2023) |
| 02/17/2023 | | 111 | Certificate of service (RE: related document(s)102) Notice Date 02/17/2023. (Admin.) (Entered: 02/18/2023) |
| 02/18/2023 | | 112 | Certificate of service (RE: related document(s)105) Notice Date 02/18/2023. (Admin.) (Entered: 02/19/2023) |
| 02/18/2023 | | 113 | Certificate of service (RE: related document(s)106) Notice Date 02/18/2023. (Admin.) (Entered: 02/19/2023) |
| 02/18/2023 | | 114 | Certificate of service (RE: related document(s)106) Notice Date 02/18/2023. (Admin.) (Entered: 02/19/2023) |
| 02/19/2023 | | 115 | Certificate of service (RE: related document(s)110) Notice Date 02/19/2023. (Admin.) (Entered: 02/20/2023) |
| 02/21/2023 | | 116 | Monthly Operating Report for the period of January 2023 . Filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC (PRESS, DANIEL) (Entered: 02/21/2023) |
| 02/24/2023 | | | Receipt of Registry Funds − 13000.00 by CA. Receipt Number 00455398. (admin) (Entered: 02/24/2023) |
| 03/03/2023 | | 117 | Clerk's Certification for Transmittal of Complete Record on Appeal to District Court **District Case 3:23−cv−01074** (Attachments: # 1 Proof of Claim #1) (RE: related document(s)103, 109) (HERNANDEZ ALEJANDRO, CYBELLE) (Entered: 03/03/2023) |
| 03/05/2023 | | 118 | |

| | | | |
|---|---|---|---|
| | | | Certificate of service (RE: related document(s)117) Notice Date 03/05/2023. (Admin.) (Entered: 03/06/2023) |
| 03/05/2023 | | 119 | Certificate of service (RE: related document(s)117) Notice Date 03/05/2023. (Admin.) (Entered: 03/06/2023) |
| 03/07/2023 | | 120 | Acknowledgment of Complete Record on Appeal by District Court. . District Court Case No: 23−01074 (RE: related document(s)117) (AGUAYO LOPEZ, BRENDA) (Entered: 03/07/2023) |
| 03/09/2023 | | 121 | Motion To Stay Pending Appeal (related documents 102) filed by GUSTAVO A CHICO−BARRIS, SONIA COLON COLON, TOMAS F. BLANCO−PEREZ on behalf of CONDADO 5 LLC (RE: related document(s)102). (BLANCO−PEREZ, TOMAS) (Entered: 03/09/2023) |
| 03/19/2023 | | 122 | Monthly Operating Report for the period of February 2023 . Filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC (PRESS, DANIEL) (Entered: 03/19/2023) |
| 03/23/2023 | | 123 | Opposition to *Motion to Stay Pending Appeal* Filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC (RE: related document(s)121). (PRESS, DANIEL) (Entered: 03/23/2023) |
| 03/24/2023 | | 124 | Motion for Leave to File *Reply to "Debtor's Opposition to Motion to Stay Pending Appeal" and for Extension of Time* filed by TOMAS F. BLANCO−PEREZ, GUSTAVO A CHICO−BARRIS on behalf of CONDADO 5 LLC [CHICO−BARRIS, GUSTAVO] (Entered: 03/24/2023) |
| 03/27/2023 | | 125 | Order Granting Motion requesting for leave to reply to debtors opposition. Signed on 3/27/2023. (Due by 4/19/2023). (RE: related document(s)121, 123, 124).(RODRIGUEZ RODRIGUEZ, DENNIS) (Entered: 03/27/2023) |
| 03/29/2023 | | | Receipt of Registry Funds − 12608.19 by CA. Receipt Number 00455458. (admin) (Entered: 03/29/2023) |
| 03/29/2023 | | 126 | Certificate of service (RE: related document(s)125) Notice Date 03/29/2023. (Admin.) (Entered: 03/30/2023) |
| 04/03/2023 | | 127 | Order Granting Motion: Chapter 12 Trustees amended position to Condado 5, LLCs request for entry order to perform duties specified in 11 U.S.C. §1202(b)(2) (docket #84) is hereby granted. See docket #100. Signed on 4/3/2023. (RE: related document(s)50, 53, 58, 84, 100).(HERNANDEZ ALEJANDRO, CYBELLE) (Entered: 04/03/2023) |
| 04/05/2023 | | 128 | Certificate of service (RE: related document(s)127) Notice Date 04/05/2023. (Admin.) (Entered: 04/06/2023) |
| 04/17/2023 | | 129 | Reply to *Debtor's Response to Motion to Stay Pending Appeal* Filed by TOMAS F. BLANCO−PEREZ, SONIA COLON COLON, GUSTAVO A CHICO−BARRIS on behalf of CONDADO 5 LLC (RE: related document(s)123). (CHICO−BARRIS, GUSTAVO) (Entered: 04/17/2023) |
| 04/24/2023 | | 130 | Monthly Operating Report for the period of March 2023 . Filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC (PRESS, DANIEL) (Entered: 04/24/2023) |

13

| | | | |
|---|---|---|---|
| 04/24/2023 | | 131 | Order Denying Condado 5, LLC's motion requesting to stay pending appeal (docket #121). SEE ORDER FOR ADDITIONAL DETAILS. Signed on 4/24/2023. (RE: related document(s)121, 123, 129).(HERNANDEZ ALEJANDRO, CYBELLE) (Entered: 04/24/2023) |
| 04/24/2023 | | 133 | Receipt of Registry Funds. Receipt Number 00455503, Fee Amount $9,366.59 (COLLAZO, INECITA) (Entered: 05/03/2023) |
| 04/26/2023 | | 132 | Certificate of service (RE: related document(s)131) Notice Date 04/26/2023. (Admin.) (Entered: 04/27/2023) |
| 05/15/2023 | | | Receipt of Registry Funds − 8520.36 by CA. Receipt Number 00455547. (admin) (Entered: 05/15/2023) |
| 05/21/2023 | | 134 | Monthly Operating Report for the period of April 2023 . Filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC (PRESS, DANIEL) (Entered: 05/21/2023) |
| 06/08/2023 | | 135 | Motion requesting extension of time( 2 business days days) TO FILE PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW AND TO POSTPONE START TIME OF JUNE 15 HEARING. filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC [PRESS, DANIEL] (Entered: 06/08/2023) |
| 06/12/2023 | | 136 | ORDER: The motion filed by Debtor requesting extension of two (2) days to file Proposed Findings of Fact and Conclusions of Law (Docket Entry #135) is hereby granted. The hearing scheduled for June 15, 2023 will begin at 11:00 a.m. Signed on 6/12/2023. (RE: related document(s)135).(ZAYAS BOUJOUEN, DARHMA) (Entered: 06/12/2023) |
| 06/12/2023 | | 137 | Statement of *Proposed Findings of Fact and Conclusions of Law* (RE: related document(s)86, 136). Filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC (PRESS, DANIEL) (Entered: 06/12/2023) |
| 06/12/2023 | | 138 | Pretrial Report (RE: related document(s)22, 37, 47, 86, 98). Filed by GUSTAVO A CHICO−BARRIS, TOMAS F. BLANCO−PEREZ on behalf of CONDADO 5 LLC (BLANCO−PEREZ, TOMAS) (Entered: 06/12/2023) |
| 06/13/2023 | | 139 | Pretrial Report *(AMENDED)* (RE: related document(s)22, 37, 47, 86, 98, 138). Filed by GUSTAVO A CHICO−BARRIS, TOMAS F. BLANCO−PEREZ on behalf of CONDADO 5 LLC (BLANCO−PEREZ, TOMAS) (Entered: 06/13/2023) |
| 06/14/2023 | | 140 | Certificate of service (RE: related document(s)136) Notice Date 06/14/2023. (Admin.) (Entered: 06/15/2023) |
| 06/16/2023 | | 141 | PDF with attached Audio File. Court Date & Time [06/15/2023 11:24:43 AM]. File Size [ 25934 KB ]. Run Time [ 01:51:19 ]. (admin). (Entered: 06/16/2023) |
| 06/21/2023 | | 142 | Monthly Operating Report for the period of May 2023 . Filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC (PRESS, DANIEL) (Entered: 06/21/2023) |
| 06/21/2023 | | | |

| | | | |
|---|---|---|---|
| | | | Receipt of Registry Funds − 9066.37 by CA. Receipt Number 00455614. (admin) (Entered: 06/21/2023) |
| 06/23/2023 | | 143 | Minutes of Proceeding Hearing held on June 15, 2023 RE Motion to Dismiss filed by Condado 5, LLC: CONCLUSION & ORDER: The parties submitted the motion to dismiss, and the opposition, based on the documents filed, the exhibit submitted, and the testimony of the witnesses. The court took the matter under advisement. IT IS SO ORDERED. (Please read full minutes for further details). (Re: related document(s)85, 86, , 98, , ).(ZAYAS BOUJOUEN, DARHMA) (Entered: 06/23/2023) |
| 06/25/2023 | | 144 | Certificate of service (RE: related document(s)143) Notice Date 06/25/2023. (Admin.) (Entered: 06/26/2023) |
| 07/17/2023 | | | Receipt of Registry Funds − 12011.39 by CA. Receipt Number 00455658. (admin) (Entered: 07/17/2023) |
| 07/21/2023 | | 145 | Monthly Operating Report for the period of June 2023 . Filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC (PRESS, DANIEL) (Entered: 07/21/2023) |
| 08/11/2023 | | | Receipt of Registry Funds − 12742.19 by CA. Receipt Number 00455716. (admin) (Entered: 08/11/2023) |
| 08/21/2023 | | 146 | Monthly Operating Report for the period of July 2023 . Filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC (PRESS, DANIEL) (Entered: 08/21/2023) |
| 09/12/2023 | | | Receipt of Registry Funds − 13000.00 by CA. Receipt Number 455762. (admin) (Entered: 09/12/2023) |
| 09/26/2023 | | 147 | Monthly Operating Report for the period of August 2023 . Filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC (PRESS, DANIEL) (Entered: 09/26/2023) |
| 09/29/2023 | | 148 | OPINION AND ORDER: CONCLUSION: For the reasons previously discussed, the Court finds that dismissal is appropriate in this case based on a continuing loss to or diminution of the Debtors estate and the absence of reasonable likelihood of rehabilitation pursuant to 11 U.S.C. §1208(c)(9). The Court also finds that the proposed amended plan of reorganization is not feasible and therefore does not comply with section 1225(a)(6). The Courts analysis as to dismissal conclude at this juncture since one ground is sufficient to dismiss a debtors case. See In re Powell, 2022 Bankr. LEXIS 2937, at *1 n.1 (Bankr. M.D. Pa. 2022) (Because the [m]otion to [d]ismiss is decided on the issue of bad faith, it is unnecessary to address the grounds under §1208(c)(9); Vaqueria Las Martas, Inc. v. Condado 5, LLC (In re Vaqueria Las Martas, Inc), 638 B.R. 482, 499 (B.A.P. 1st Cir. 2022) (Because one ground is sufficient for dismissal, our analysis ends here, with the conclusion that the bankruptcy court did not abuse its discretion in dismissing the Debtor's case under § 1208(c)(1) for unreasonable delay that was prejudicial to creditors. We decline to examine the second statutory ground for the Dismissal Order, § 1208(c)(3)). Therefore, the case is hereby dismissed. Signed on 9/29/2023. See order for additional details. **Order due by 10/13/2023.** (RE: related document(s)22, 37, 47, 65, 83, 137, 139, 143).(HERNANDEZ ALEJANDRO, CYBELLE) (Entered: 09/29/2023) |
| 09/29/2023 | | 149 | Motion to withdraw consigned funds in the amount of $ 164,898.46 filed by TOMAS F. BLANCO−PEREZ, SONIA COLON COLON, |

| | | | |
|---|---|---|---|
| | | | GUSTAVO A CHICO−BARRIS on behalf of CONDADO 5 LLC [CHICO−BARRIS, GUSTAVO] (Entered: 09/29/2023) |
| 10/01/2023 | | 150 | Certificate of service (RE: related document(s)148) Notice Date 10/01/2023. (Admin.) (Entered: 10/02/2023) |
| 10/01/2023 | | 151 | Certificate of service (RE: related document(s)148) Notice Date 10/01/2023. (Admin.) (Entered: 10/02/2023) |
| 10/12/2023 | | 153 | Motion requesting reconsideration of dismissal (objection language due by 10/26/2023).(related document(s): 148) filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC [PRESS, DANIEL] (Entered: 10/12/2023) |
| 10/13/2023 | | 154 | Response to *TO MOTION TO WITHDRAW CONSIGNED FUNDS AND CROSS MOTION TO DISBURSE FUNDS TO DEBTOR* Filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC (RE: related document(s)149). (PRESS, DANIEL) (Entered: 10/13/2023) |
| 10/16/2023 | | 155 | Motion for Leave to File *Reply to "Response to Motion to Withdraw Consigned Funds and Cross Motion to Disburse Funds to Debtor" and for Extension of Time* filed by TOMAS F. BLANCO−PEREZ, GUSTAVO A CHICO−BARRIS on behalf of CONDADO 5 LLC [CHICO−BARRIS, GUSTAVO]. Related document(s) 154 Modified on 10/17/2023 (HERNANDEZ ALEJANDRO, CYBELLE). (Entered: 10/16/2023) |
| 10/17/2023 | | 156 | Order Granting Motion Signed on 10/17/2023. **Due by 10/20/2023.** (RE: related document(s)154, 155).(HERNANDEZ ALEJANDRO, CYBELLE) (Entered: 10/17/2023) |
| 10/19/2023 | | 157 | Certificate of service (RE: related document(s)156) Notice Date 10/19/2023. (Admin.) (Entered: 10/20/2023) |
| 10/24/2023 | | 158 | Motion requesting extension of time( 7 days) to File Reply to "Response to Motion to Withdraw Consigned Funds and Cross Motion to Disburse Funds to Debtor" or Otherwise Plead. (related document(s):154) filed by GUSTAVO A CHICO−BARRIS, TOMAS F. BLANCO−PEREZ on behalf of CONDADO 5 LLC [BLANCO−PEREZ, TOMAS] (Entered: 10/24/2023) |
| 10/25/2023 | | 159 | ORDER GRANTING EXTENSION OF TIME for Condado 5, LLC to respond to Debtor's reply over request to withdraw consigned Funds and cross motion to disburse funds to Debtor or otherwise plead. Signed on 10/25/2023. **Order due by 10/31/2023.** (RE: related document(s)149, 154, 158).(HERNANDEZ ALEJANDRO, CYBELLE) (Entered: 10/25/2023) |
| 10/27/2023 | | 160 | Opposition to *Motion for Reconsideration* Filed by TOMAS F. BLANCO−PEREZ, SONIA COLON COLON, GUSTAVO A CHICO−BARRIS on behalf of CONDADO 5 LLC (RE: related document(s)153). (CHICO−BARRIS, GUSTAVO) (Entered: 10/27/2023) |
| 10/27/2023 | | 161 | Certificate of service (RE: related document(s)159) Notice Date 10/27/2023. (Admin.) (Entered: 10/28/2023) |
| 10/30/2023 | | 162 | ORDER DENYING RECONSIDERATION: The Court denies the Debtor's motion for reconsideration based on the reasons provided by Condado 5, LLC (dkt #160). Signed on 10/30/2023. (RE: related |

| | | | |
|---|---|---|---|
| | | | document(s)153, 160).(HERNANDEZ ALEJANDRO, CYBELLE) (Entered: 10/30/2023) |
| 10/31/2023 | | 163 | Motion requesting extension of time( 7 days) file reply to Debtor's Response to Motion to Withdraw Consigned Funds and Cross Motion to Disburse Funds to Debtor. (related document(s):154) filed by TOMAS F. BLANCO−PEREZ, SONIA COLON COLON, GUSTAVO A CHICO−BARRIS on behalf of CONDADO 5 LLC [CHICO−BARRIS, GUSTAVO] (Entered: 10/31/2023) |
| 11/01/2023 | | 164 | ORDER GRANTING EXTENSION OF TIME for Condado 5, LLC to respond to Debtor's reply over request to withdraw consigned Funds and cross motion to disburse funds to Debtor. Signed on 11/1/2023. **Order due by 11/7/2023.** (RE: related document(s)149, 154, 163).(HERNANDEZ ALEJANDRO, CYBELLE) (Entered: 11/01/2023) |
| 11/01/2023 | | 165 | Certificate of service (RE: related document(s)162) Notice Date 11/01/2023. (Admin.) (Entered: 11/02/2023) |
| 11/03/2023 | | 166 | Certificate of service (RE: related document(s)164) Notice Date 11/03/2023. (Admin.) (Entered: 11/04/2023) |
| 11/06/2023 | | 167 | Reply to *Debtor's "Response to Motion to Withdraw Consigned Funds and Cross Motion to Disburse Funds to Debtor"* Filed by TOMAS F. BLANCO−PEREZ, SONIA COLON COLON, GUSTAVO A CHICO−BARRIS on behalf of CONDADO 5 LLC (RE: related document(s)149, 154). (CHICO−BARRIS, GUSTAVO) (Entered: 11/06/2023) |
| 11/09/2023 | | 168 | Notice of Appeal and Statement of Election. Fee Amount $298. Due by 11/27/2023. filed by DANIEL MARK PRESS on behalf of LAS MARTAS INC (RE: related document(s)148, 162). (PRESS, DANIEL) (Entered: 11/09/2023) |
| 11/09/2023 | | 169 | Receipt of Notice of Appeal and Statement of Election( 22−02380−ESL12) [appeal,ntcaplel] ( 298.00) filing fee. Receipt number A16530897, amount $ 298.00. (RE: related document(s) 168) (U.S. Treasury) (Entered: 11/09/2023) |
| 11/13/2023 | | 170 | BNC Notice all creditors (RE: related document(s)168) (HERNANDEZ ALEJANDRO, CYBELLE) (Entered: 11/13/2023) |

17

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          CASE NO. 22-02380 (ESL)

LAS MARTAS, INC.                                CHAPTER 12

         Debtor

OPINION AND ORDER

     On December 5, 2022, the court entered an *Opinion and Order* directing the Debtor to show cause why confirmation should not be denied pursuant to sections 1225(a)(3, 6) of the Bankruptcy Code, and the case dismissed pursuant to section 1208(c)(5) (dkt #65). The Debtor filed its response on December 19, 2022 (dkt #83). Thereafter, on June 12, 2023, the Debtor filed its *Proposed Findings of Fact and Conclusions of Law* (dkt #137) and Condado 5, LLC ("Condado") filed its *Amended Pre-Trial Report* on June 13, 2023 (dkt #139). An evidentiary hearing was held on June 15, 2023, to consider the following: (i) Motion to Dismiss filed by Condado (dkt #22); Debtor's response (dkt #37); Condado's reply (dkt #47); order to show cause regarding dismissal (dkt #65); and Debtor's response to the order to show cause (dkt #83). For the reasons set forth below, Condado's motion to dismiss is hereby granted.

Jurisdiction

     The Court has jurisdiction pursuant to 28 U.S.C. §§1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(A). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

Procedural Background

     Las Martas, Inc. filed its third bankruptcy petition under chapter 12 on August 16, 2022. The Debtor had previously filed two-prior bankruptcy petitions under chapter 12. Debtor's first bankruptcy petition was filed on June 21, 2011, it was substantively consolidated on July 11,

2011, with the related cases of Juan Manuel Barreto Genorio (Case No. 11-05236) and JM Dairy Inc. (Case No. 11-05239) (Case No. 11-05237, dkt #20) and dismissed pursuant to 11 U.S.C. §1208(c)(1) and (6), on January 16, 2018 (Case No. 11-05236, dkt #s 386 & 387). On December 14, 2018, the Debtor filed its second bankruptcy petition and the same was dismissed on April 22, 2021, pursuant to 11 U.S.C. §1208(c)(1) and (3). (Case No. 18-07304, dkt #251). This Court's *Opinion and Order* dismissing the second bankruptcy case was appealed to the First Circuit Bankruptcy Appellate Panel which affirmed this Court's decision on April 21, 2022 (Case No. 18-07304, dkts # 275 & 276).

The Debtor in its Schedule A/B- Assets- Real and Personal Property disclosed that the following farm animals had an aggregate value of $136,700: 61 total milking cows @ $1,500 each for a total of $91,500; 5 unbred cows @$1,500 each for a total of $7500; 8 unbred calves @ $1,400 each for a total of $11,200; 12 heifers toreras @$700 each for a total of $8400; 15 horras cows @$1,100 each for a total of $16,500; 3 bulls @ $400 each for a total of $1,200; and 2 toretes [small bull] @ $200 each for a total of $400. (dkt #18, p. 4., item 29). The Debtor also included its milk quota of 58,700 quarts every two (2) weeks with a current value of the Debtor's interest of $117,400.00 as a personal asset (dkt #18, p. 6, item #62). The Debtor in its Schedule D- Creditors Who Have Claims Secured by Property- disclosed that Condado has a claim in the amount of $1,532,855.78 which is a secured with the milk quota (58,700 quarts every 2 weeks) that has a value of $117,400.00 (dkt #18, p. 9, item #2.1).

On September 1, 2022, Condado filed a *Motion to Dismiss* premised upon 11 U.S.C. §1208(c)(1), (9), alleging that the petition was filed in bad faith and the case constitutes a two-party dispute (dkt #22). On October 3, 2022, the Debtor filed its *Response to the Motion to Dismiss* (dkt #37). On October 17, 2022, Condado filed its *Reply to Debtor's Response to Motion to Dismiss* (dkt #47). On November 14, 2022, the Debtor filed its Chapter 12 Plan of Reorganization (dkt #49).

On December 5, 2022, the Court rendered an *Opinion and Order* in which it summarized the positions of the parties as to the motion to dismiss; held certain facts to be supported by the

record and established the applicable legal standard regarding a motion to dismiss a Chapter 12 case. The court ordered the Debtor to show cause as to why confirmation should not be denied pursuant to sections 1225(a)(3, 6) of the Bankruptcy Code and the case dismissed pursuant to section 1208(c)(5). The Court further stated that the future of this case will depend on the timely response by the Debtor. The court cautioned the Debtor that, after considering the Debtor's history of bankruptcy filings, conclusory allegations will not move the court and that feasibility and changed circumstances require supporting documentation. (dkt #65, pgs. 6-7).  On December 13, 2022, the Chapter 12 Trustee filed an *Unfavorable Recommendation to Chapter 12 Plan Dated November 14, 2022 (Docket 49)* based upon the following: (i) the plan does not comply with 11 U.S.C. §1225(b)(1) because according to the Debtor's repayment plan schedule it is keeping approximately $5,000 monthly which is not necessary for the operation of the business and which could be used to pay unsecured creditors; (ii) the plan does not comply with 11 U.S.C. §1225(a)(5), (6) because it provides for the bifurcation of the secured claim filed by Condado into secured and unsecured portions. Condado has objected to said treatment. The extent of Condado's security interest over Debtor's assets is currently being litigated. However, if Condado's lien extends further than the milk quota, the Debtor will not be able to make payments under the plan; (iii) the plan is contrary to 28 U.S.C. §586(e)(2) regarding the treatment afforded to the Standing Trustee's Chapter 12 fees; and (iv) the plan fails to state which statute is to be applied to provide interest for the payments to the IRS (dkt #70). On December 19, 2022, Condado filed an *Objection to Confirmation of Chapter 12 Plan of Reorganization Dated November 14, 2022* (dkt #81).

On December 19, 2023, the Debtor filed its *Response to Order to Show Cause* (Dkt #65) (dkt #83). On January 10, 2023, the Debtor filed its *Amended Chapter 12 Plan Dated 1/10/23* in which the proposed treatment for Condado's claim is the following:

"3.6 Class E (Condado 5 Secured Claim). Class E consists of the Secured Claim of Condado 5, LLC. The Secured Claim of Condado 5, LLC, shall be bifurcated into 3 components and treated as follows:

-3-

20

E-1 The claim is secured by a prepetition receivable from Suiza Dairy, Inc., in the amount of $3,000. Upon the Effective Date[1] of the Plan, if not paid sooner, Suiza Dairy shall pay $3000 to Condado 5 from the receivables of the Debtor that it is holding. If the funds are paid to the Debtor or into escrow prior to that, then the payment shall be made from that source. Condado shall retain its lien on the prepetition receivable to the extent thereof, until paid.

E-2 The claim is otherwise secured as to the Debtor by Debtor's ORIL milk quota of 58,700 quarts/ 2 weeks. The secured claim as to the Milk Quota shall be valued at $5/quart/ 2 weeks, $293,500. Condado 5 shall be paid by the Debtor directly 8.5% interest only on the $293,500 for 6 months ($2,078.96/ month) from the Effective Date, and then $293,500 amortized at 8.5% p.a. by the Debtor directly in equal monthly installments of $4,224.09 over 8 years (96 months) from 6 months after the Effective Date, and shall retain its lien until paid as provided in this Paragraph E-2. Should Suiza Dairy Inc. and Condado 5 agree, these payments may be made in weekly installments directly from Debtor's receivables due from Suiza Dairy.

E-3 The balance of the claim of Condado 5 is unsecured under 11 U.S.C. [§]506 and shall be treated for all purposes as a general unsecured claim.

As it[s] claim is not secured by post-petition receivables or otherwise by the proceeds of post-petition milk sales, upon confirmation Condado 5 will release its claim to a lien on such proceeds and Suiza Dairy shall turn them over to the Debtor." (dkt #93, pgs. 5-6).

On January 23, 2023, Condado filed its Objection to Confirmation of Amended Chapter 12 Plan of Reorganization Dated January 10, 2023 by which it argues that: (i) the amended plan does not comply with 11 U.S.C. §1225(a)(5)(B); (ii) the amended plan is not feasible and fails to comply with 11 U.S.C. §1225(a)(6) due to the following: (a) the property where the Debtor's dairy farm operates does not belong to the Debtor, but to the Debtor's principal and his ex-spouse. There is a pending foreclosure proceeding as to this property. Once Condado forecloses on the property, the Debtor will not be able to operate its dairy farm and no alternate plan has been provided; (b) the feasibility of the amended plan depends upon the final adjudication of whether Condado's milk quota extends to the milk produced and sold to milk processing plants under Debtor's bi-weekly milk quota and the proceeds generated thereunder; (c) there are no significant changes in circumstances from the prior bankruptcy cases as compared to the instant case. The Debtor is now in a more precarious financial condition given that it has increased its liabilities and the value of its assets have decreased significantly from the filing of the previous case on

---

[1] Pursuant to section 1.27 of the amended plan the "Effective Date" "means the first Business Day after 14 days after entry of the Confirmation Order is then in effect, in which case it shall be the first Business Day after 14 days after the stay terminates." (dkt #93, p. 2).

-4-

December 14, 2018; (d) the monthly operating report for August 2022 discloses a negative cash balance and the monthly operating report for September 2022 shows a net cash balance of $771.32 and the December 2022 monthly operating report reflects a net cash balance of $610.36; (iii) the amended plan does not comply with the contents of the plan requirement under 11 U.S.C. §§1222(c) and 1222(b)(9) and 1225(a)(5)(A), (B) and (C); and (iv) the amended plan fails to comply with the feasibility requirements pursuant to 11 U.S.C. §1225(a)(4) because it fails to include financial projections to establish feasibility and also lacks a liquidation analysis (dkt #95). On January 26, 2023, the Chapter 12 Trustee filed its *Position Regarding the Confirmation of the Amended Chapter 12 Plan Dated January 10. 2023 (dkt #93)* by which it discloses that: (i) it has a plan base of $108,000; (ii) it provides for the payment of attorney's fees; the payment in full of priority claims filed by the Internal Revenue Service and the Department of the Treasury; provides for direct payments to secured debts with the Small Business Administration and Condado. The amended plan provides for a bifurcation of Condado's claim by which $293,500 will be treated as secured and the remaining balance will be considered general unsecured which would be paid pro-rata and would receive approximately $65,660.09 or a five percent distribution; and (iii) the liquidation value has been estimated at $38,660 without deducting priority claims. The Trustee's position is that in principle he has no objection to the confirmation of the amended plan because it complies with 11 U.S.C. §§1222 and 1225. Notwithstanding, a final determination of compliance with the confirmation requirements is subject to the resolution of the following matters: (i) the extent of Condado's security interest over Debtor's assets is currently being litigated. If Condado's lien extends beyond the Debtor's milk quota to post-petition milk production, then the Debtor will not be able to make plan payments; and (ii) the outcome of the investigation regarding the $37,101.00 the Debtor received pre-petition from a USDA grant may affect the plan confirmation. Resolution of these two matters needs to be resolved favorably for the amended plan to be confirmed, if not the amended plan cannot be confirmed (dkt #96). On February 10, 2023, the Chapter 12 Trustee filed his *Report Re Investigation Regarding Condado 5, LLC Concerns Re: Debtor's Misuse of Funds Received From USDA* in which the Trustee

concluded the following: (i) Debtor improperly used funds received in August 2022 from the Natural Resources Conservation Service, U.S. Department of Agriculture ("NRCS-USDA") Program; (ii) seeking to correct the situation, the Debtor in November 2022 was able to obtain funds to replace the misused funds and started the project funded by the NRCS- USDA Program. Completion of the project is expected by March 2023; (iii) the NCRS-USDA Program, under its discretion under the contract decided not to sanction the Debtor for the misuse of funds and to continue with the contract as planned; and (iv) the Debtor's improper use of the funds received under the NRCS-USDA Program would have no adverse impact over Debtor's reorganization under Chapter 12 (dkt #100).

On February 15, 2023, this Court rendered an *Opinion and Order* in which Condado's request to prohibit the Debtor's use of cash collateral resulting from the post-petition sale of milk was denied (dkt #102). Also on February 15, 2023, Condado filed its *Notice of Appeal and Statement of Election to District Court* (dkt #103). Thereafter, on June 12, 2023, the Debtor filed its *Proposed Findings of Fact and Conclusions of Law* (dkt #137). On June 13, 2023, Condado filed its *Amended Pre-Trial Report* (dkt #139).  An evidentiary hearing was held on June 15, 2023, as to Condado's motion to dismiss and the Debtor's opposition and regarding Debtor's response to the order to show cause (dkt #143). The June 15, 2023, Minutes refenced herein, summarize the testimonies of Mr. Francisco de Armas as Condado's witness to Condado and of Mr. Juan M. Barreto, the Debtor's president and owner.

The Court in its December 5, 2022, *Opinion and Order* discussed the Debtor's factual scenario citing in part the minutes of the hearing held on September 16, 2022 (dkt #34) as follows:

> "[t]he factual allegations in Condado's motion to dismiss are substantially supported by the record, irrespective of the ultimate legal consequences. On August 16, 2022, the Debtor filed the instant third Chapter 12 bankruptcy petition. The history related in the motion to dismiss is summarized below.
>
> On or around January 12, 2005, Banco Popular de Puerto Rico ("BPPR"), predecessor in interest of Condado, extended to the Debtor a credit facility in the amount of $1,850,000.00 (the "Loan"). Debtor's principals are guarantors of the loan. The loan matured in 2015.

-6-

On June 21, 2011, the Debtor filed its first Chapter 12 petition, Bankr. Case No. 11-05237-ESL, which was substantively consolidated with Bankr. Case No. 11-05236-ESL, filed by Juan M. Barreto Ginorio, one of the Debtor's guarantors. These previously consolidated cases were dismissed on January 16, 2018, the Debtor filed its second Chapter 12 petition (Case No. 18-073104-ESL). On April 22, 2021, the case was dismissed pursuant to 11 U.S.C. §1208(c)(1) for unreasonable delay prejudicial to creditors, and failure to timely file a confirmable plan under 11 U.S.C. §1208(c)(3). See Opinion and Order, 2021 Bankr. LEXIS 1075, 2021 WL 8200008 (Bankr. D.P.R. Apr. 22, 2021). The Opinion and Order was appealed to the Bankruptcy Appellate Panel for the First Circuit (BAP 1st Cir. No. 22-0017), which affirmed the dismissal through an Opinion and Order issued on April 21, 2022. See Vaqueria Las Martas, Inc. v. Condado 5, LLC (In re Vaqueria Las Martas, Inc.), 638 B.R. 482 (B.A.P. 1st Cir. 2022).

On May 28, 2021, Condado filed a Foreclosure Complaint with the PR Court of First Instance, Superior Court of Arecibo (the "PR Court of First Instance"), Case No. AR2021CV00693 (the "Foreclosure Case") against the Debtor, the Debtor's principal and co-guarantor (Mr. Juan Manuel Barreto Ginorio), his former spouse and co-guarantor (Ms. Maria Elena Hernandez Ruiz) and JM Dairy, Inc.

The Debtor's factual exposition is primarily based on conclusory allegations with no supporting documentation."

"'[t]he Court expressed concern as to pending motion to dismiss in light of the prior history of the debtor, particularly the litigious experience over the cash collateral dispute since the Debtor's first petition in 2011. The loan is fully matured, the scheduled secured claims far exceed the scheduled assets, and the claims filed show substantial indebtedness in spite of the time that has transpired. Therefore, the Debtors appear to face a challenge to show changed conditions and a real possibility of having a confirmed Chapter 12 plan. In the prior Chapter 12 petition (Case number 18-0734), the Court ruled in favor of the Debtor on the cash collateral issue based on the facts at the time; however, the case was dismissed, upon the Chapter 12 Trustee's request, for unreasonable delay and failure to present a confirmable Chapter 12 plan.'"

"The monthly operations report corresponding to the month of August 2022, filed on October 11, 2022 (dkt #42) shows a negative cash flow. The monthly operations report corresponding to the month of September 2022, filed on October 27, 2022 (dkt #48), shows a net cash flow of $771.32.

As of this date, six (6) proof of claims ("POC") have been filed, none of which has been objected. Thus, they are deemed allowed. 11 U.S.C. §502(a). These are: POC 1-1 by Condado 5, LLC, secured in the amount of $1,532,855.[7]8; POC 2-1 by Autoridad de Tierras de Puerto Rico (Puerto Rico Land Authority) in the amount of $18,912.00 for lease payment arrears; POC 3-1 by the Small Business Administration, secured in the amount of [$]106,236.40; POC 4-1 by LUMA Energy in the amount of $39,510.60, for past due electricity payments; POC 5-2 by the Internal Revenue Service (IRS) in the amount of $35,493.69, of which $7,581.78 is secured and $22,148.16 is claimed as a priority

pursuant to 11 U.S.C. §507(a); and POC 6-1 by the Puerto Rico Department of Labor, in the amount of $8,249.43, of which $1,746.28 is claimed as a priority. In its previous case, 18-07304, seven POC's were filed, essentially the same creditors as in the present case." (dkt #65, pgs. 2-4).

## *Issues*

The issues before the Court premised upon Condado's motion to dismiss are the following: (i) whether there is cause to dismiss pursuant to 11 U.S.C. §1208(c)(9) because there is a continuing loss to or diminution of the estate and no reasonable likelihood of reorganization; (ii) whether there is cause to dismiss based upon the Debtor's alleged lack of good faith in the filing of the bankruptcy petition under the totality of the circumstances**.** The last issue which was prompted by the Court in its *Opinion and Order* is whether there is cause to dismiss the case pursuant to section 1208(c)(5) and whether confirmation should be denied pursuant to sections 1225(a)(3, 6).

## **Position of the Parties**

### *Condado*

Condado argues that there is cause to dismiss the instant case because there is no reasonable likelihood of reorganization pursuant to 11 U.S.C. §1208(c)(9) based on the following: (i) both the Bankruptcy Court and the Bankruptcy Appellate Panel for the First Circuit found that "with the passage of time, the Debtor's livestock decreased by 50%, thus evidencing a marked diminution in the Debtor's assets. This in turn, caused raw milk production to decrease dramatically, making the feasibility of any plan even less likely. In re Vaqueria Las Martas, Inc., 638 B.R. at 498." The situation has not changed since the dismissal of the second bankruptcy case and the filing of the Foreclosure Case on May 28, 2021; (ii) the real property where the farming operation takes place is not part of the bankruptcy estate, thus once Condado forecloses on this property, the Debtor will not be able to operate its dairy farm; (iii) the Debtor is now in a more precarious financial condition compared to its previous bankruptcy filed on December 14, 2018

to the filing of the instant petition, since the Debtor has lost $672,333.84 in the value of its

property and has increased its total liabilities in the amount of $370,110.79 (Case No. 18-07304,

dkt #1, p. 9, ¶ 1c & 4; p. 2, ¶ 4); (iv) the Debtor has been generating less in gross revenue on a

consistent basis since the year 2016 according to the Debtor's Statement of Financial Affairs for

both the second and the instant case. Debtor's reported gross revenues are the following: (1)

$316,445 for the year 2016; (2) $146,309 for the year 2017; (3) $123,218 for the year 2020; and

(4) $125,250.00 for the year 2021 (Case No. 18-07304, dkt #26, p. 17, ¶ 1) (dkt #47, p. 8, ¶23;

and (v) the loan matured on January 12, 2015, and has been past due and payable since then. This

third bankruptcy case translates into continuing delay, increasing costs and attorney's fees and no

authorization to use cash collateral which results in Debtor having no source of sustainable

income.

Condado further argues that there is also cause to dismiss the instant case for bad faith and

unusual delay and that the case constitutes a two-party dispute.  In the instant case, Debtor's bad

faith in the third bankruptcy petition is evinced by the following: (i) the Debtor has a history of

prior filings, and there is no significant change in circumstances or legitimate bankruptcy purpose;

(ii) this Court in dismissing the Debtor's second bankruptcy case concluded the following:

> [h]as the Debtor been afforded a reasonable time to have a Chapter 12 plan confirmed?
> Definitely so, over 30 months is a reasonable time. Has the Debtor caused the delay? The
> answer is yes. Condado has asserted its rights. The court denied the prior motion to dismiss
> filed by Condado and declined to find that the milk was part of its collateral. However,
> the Debtor has not taken the necessary actions to present a confirmable Chapter 12 plan.
> Consequently, it has incurred in unreasonable delay prejudicial to creditors." In re
> Vaqueria Las Martas, Inc., 2021 Bankr. LEXIS 1075, at *19, 2021 WL 8200008, at *7
> (Bankr. D.P.R. 2021).

(iii) the Debtor appealed this Court's dismissal order to the Bankruptcy Appellate Panel for the

First Circuit which affirmed this Court's Opinion and Order and concluded that:

> "[t]he Debtor's attempt to blame the bankruptcy court for the subject delay does not alter
> the outcome of our analysis. The Debtor overlooks its own delay in filing the plan beyond
> the period prescribed by §1221, its failure to file an amended plan after the denial of
> confirmation or to seek an extension of time to do so, and the irregular filing of operating
> reports." Vaqueria Las Martas, Inc. v. Condado 5, LLC (In re Vaqueria Las Martas, Inc.),
> 638 B.R. 482, 498 (B.A.P. 1st Cir. 2022).

(iii) given the Debtor's previous bankruptcy patters, it is reasonable to conclude that this third bankruptcy petition is motivated by a desire to continue stalling, delaying and/or circumventing the Foreclosure Case than by a legitimate *bona fide* effort to reorganize; (iii) the loan has been past due and payable since January 12, 2015; (iv) there is a strong public policy against the "revolving door approach to bankruptcy" See In re Mangual, 2010 Bankr. LEXIS 4688, at *6 (Bankr. D.P.R. 2010) (courts "may dismiss with prejudice… to prevent a revolving door approach to bankruptcy"); (v) the passage of time leading up to this third bankruptcy case further elongates the Debtor's default on a loan that has been past due and payable for over [8] years and a half; and (vi) the Debtor's bad faith is targeted solely at Condado. Its pattern of conduct is aimed at thwarting Condado's Foreclosure Case and collection efforts and constitutes both bad faith and a two-party dispute. (dkt #139).

*Debtor*

The Debtor contends that its circumstances have changed significantly since the previous case due mostly to an increase in the number of milking cows which has resulted in an increase in the level of milk production. The Debtor asserts that: (i) it has more cows and thus additional production capacity. It had 45 milking cows at the time of the 2018 bankruptcy petition, and it had 61 milking cows at the time the present case was filed. It also has another 15 milking cows which are not currently producing milk, but which will cycle into production. The additional 34 cows should add approximately 50% more production in 30-60 days; (ii) according to Mr. Barreto's declaration (dkt #83-1), as of December 19, 2022, the Debtor had 59 cows in production, as compared to 39-42 in the year 2018; (ii) in the year 2018 the Debtor's biweekly milk production averaged under 6,000 liters; in the year 2022 it averaged $9,700 liters, an increase of over 50%. "Milk proceeds were under $4000/ 2 weeks in 2018; in 2022, they have averaged over $8000, more than double;" (iii) "[o]nce Debtor receives the milk proceeds, Debtor's revenue will be in excess of $20,000/ month (as shown on the filed MORs). That will increase by about

-10-

50% when the 34 new cows go into production; (iv) after a six month window of interest only payments to Condado, the amended plan provides for payments to Condado of $4,149 per month which may have to increase given that interest rates have risen since the plan was filed; (v) the Debtor has been unable to pay its principal, Mr. Juan Barreto its full salary nor the rent for the farm; and (vi) if it buys more cows and better feed, the Debtor will be able to generate the revenues shown on the budget attached to Exhibit B to Mr. Barreto's Declaration which would increase payments to unsecured creditors; and (vii) the value of the milk quotas has declined significantly, which reduces the value of Condado's security interest and frees up funds to pay other creditors. "This decline in asset value benefits the Debtor because that asset is fully encumbered and thus the value of Condado's secured claim that Debtor has to pay has declined, freeing up revenue (unencumbered by Condado's lien) for operations and to pay other creditors." (dkt #137, p. 4, ¶ 13).

The Debtor avers that there is no cause to dismiss the present bankruptcy case because: (i) there is no "cause" based on loss or diminution of assets since the case was filed, given that the Debtor is operating profitably once the payments to Condado/ the Court's escrow are factored into the Debtor's revenue (dkt a#137, p. 5, ¶ 4); (ii) Chapter 12 has no good faith filing requirement, unlike Chapter 13. There is no counterpart to 11 U.S.C. §1325(a)(7); (iii) Condado cannot show bad faith under any of the factors listed in In re Sullivan, 326 B.R. 204, 12 (B.A.P. 1st Cir. 2005), given the significant changes in circumstances. The Debtor contends that the Debtor's have a legitimate bankruptcy purpose which is to reorganize by using the funds that Condado has taken to pay its creditors. The Debtor avers that it filed for bankruptcy protection to stop diverting all funds to Condado and reorganize by paying Condado the value of its secured claim, and using the remaining funds to repay other creditors.

Regarding Condado's allegation that this is a two-party dispute, the Debtor argues that the claims filed are similar to the prior case, although some claims have been satisfied or reduced (including Condado). The only significant new claim is the COVID EIDL SBA loan, which is

payable over 30 years at 3.75% ($526 per month) by its terms. Moreover, the Debtor's schedules disclose that there are many substantial creditors.

As to the feasibility of the amended plan, the Debtor contends that: (i) it has filed a confirmable plan and there will be no unreasonable delay to the creditors. Any delay in the prior case was caused by Condado which continued to take the Debtor's funds without a valid lien on them as the Court has held in both cases; (ii) the market for milk quotas has declined since the previous bankruptcy which benefits the Debtor and its unsecured creditors. The decline in market value also diminishes Condado's security interest pursuant to 11 U.S.C. §506(a), and thus the Debtor would need to pay less to Condado to satisfy 11 U.S.C. §1225(a)(5); (iii) if Condado does not have a security interest in the milk produced by Debtor's cows or on the post-petition proceeds/ accounts receivables generated as has been previously held, then the plan is feasible and may be confirmed; and (iii) if Condado prevails on the cash collateral issue, the Debtor would not be able to continue operating while paying Condado $12,000 per month. Whether the plan is confirmable depends entirely on the outcome of this issue.

### **Applicable Law & Analysis**

*Dismissal for Cause pursuant to 11 U.S.C. §1208(c)(9), (5) and bad faith*

Section 1208(c) provides ten specific grounds that constitute cause for dismissal of a chapter 12 case. Notwithstanding, this list is not exhaustive, meaning there are other factors that may be considered as a cause for dismissal, such as lack of good faith in the filing of the petition. See Richard Levin & Henry J. Sommer, 8 Collier on Bankruptcy ¶ 1208.03 (16th ed. 2023). "Creditors bear the burden of establishing that cause exists to dismiss a chapter 12 case. 'Ultimately, [t]he decision to dismiss a Chapter 12 petition is within the sound discretion of the bankruptcy court." Vaqueria Las Martas, Inc. v. Condado 5, LLC (In re Vaqueria Las Martas, Inc.), 638 B.R. 482 (B.A.P. 1st Cir. 2022) (citations omitted).

"The provisions of section 1208(c) are similar to sections 1112(b) and 1307(c) which govern dismissal of chapter 11 and chapter 13 cases, respectively. Unlike those two sections, section 1208(c) only authorizes dismissal of the case." Richard Levin & Henry J. Sommer, 8 Collier on Bankruptcy ¶ 1208.03 (16th ed. 2023).

Section 1208(c) provides in pertinent part that, "[o]on request of a party in interest, and after notice and a hearing, the court may dismiss a case under this chapter for cause, including--

"(5) denial of confirmation of a plan under section 1225 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;

(9) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation." 11 U.S.C. §1208(c)(5), (9).

The Court will first address whether there is cause to dismiss pursuant to section 1208(c)(9) and will employ the standard used under section 1112(b)(4)(A), which provides cause for dismissal in a Chapter 11 for "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. §1112(b)(4)(A).  This particular "cause" consists of two (2) requirements which must be satisfied. "First, it tests whether, after the commencement of the case, the debtor has suffered or continued to experience a negative cash flow, or, alternatively, declining asset values. Second, it tests whether there is any reasonable likelihood that the debtor, or some other party, will be able to stem the debtor's losses and place the debtor's enterprise back on a solid financial footing within a reasonable amount of time. Both tests must be satisfied in order for cause to exist under this subparagraph to dismiss or convert the case under section 1112(b)(4)(A)." Richard Levin & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.04[6][a] (16th ed. 2023).  "Negative cash flow means that the estate's current liabilities are increasingly more rapidly than cash is available to pay as due. The result is dwindling liquidity, or illiquidity resulting in unpaid post-petition debts which usually constitute administrative

-13-

expenses that will take priority over prepetition claims" Id. at ¶1112.04[6][a][i]; See also In re Horned Dorset Primavera, 606 B.R. 117, 149 (Bankr. D.P.R. 2019). Likelihood of rehabilitation under section 1112(b)(4)(A) is different from a reorganization, because the focus is on "…whether the debtor's business prospects justify continuance of the reorganization effort" and whether the business operation may be reestablished, taking out the liquidation scenario which is an option under a plan of reorganization. Id. at ¶1112.04[6][a][ii].

*First Bankruptcy Petition*

The Debtor's first bankruptcy petition was administratively consolidated on July 11, 2011, with the bankruptcy petitions of the Debtor's principal, Juan Manuel Barreto Ginorio and JM Dairy, Inc. on (Lead Case No. 11-05236, dkt # 22). Mr. Barreto's Schedule A- Real Property disclosed three real estate properties with a total current value of $1,540,000 and which were listed as follows: (i) the lot of land with a dairy farm in Hatillo with a value of $1,100,000 and the amount of Banco Popular de Puerto Rico's ("BPPR") claim was in the amount of $1,475,461 of which $1,100,000 was listed as secured and the remainder was an unsecured claim in the amount of $375,461; (ii) a residential house in Arecibo with a current value of $140,000; and (iii) a two story residential house located in Arecibo with a listed current value of $300,000 (Lead Case 11-05236, dkt #1, pgs. 12 & 17). On September 29, 2011, BPPR filed proof of claim #7-1 in the amount of $1,760, 240.03 for monies loaned which were secured by real estate, accounts receivables, milk quota and assignment of payments. This claim is for the loan that was originated on January 12, 2005, in the original amount of $1,850,000. On July 30, 2013, a *Transfer of Claim Other Than for Security* was filed informing that BPPR's claim had been transferred to PR Asset Portfolio 2013-1 International, LLC ("PRAPI") (Lead Case 11-05236, dkt #269). Thereafter, on October 11, 2017, a second *Transfer of Claim Other Than for Security* was filed informing PR

-14-

Asset Portfolio 2013-1 International LLC's claim had been transferred to Condado 5, LLC (Lead Case 11-05236, dkt #380). The Debtor did not file an objection to proof of claim number 7-1 in this case.

Vaqueria Las Martas, Inc.'s ("VLM") Schedule B- Personal Property included the milk quota with a current value of $1,232,700 (58,700 @ 21) and farm animals with a current value of $575,800 which were comprised of the following: (i) 173 cows @$2,200 ($380,600); (ii) 76 resting cows @ $2,000 ($167,200), (iii) 4 bulls @$1,000 ($4,000); (iv) 15 calves @ $1,600 ($24,000) (Lead Case 11-05237, dkt #1, p.12). VLM's Schedule D-Creditors Holding Secured Claims disclosed BPPR's secured claim in the amount of $1,475,461 (Lead Case 11-05237, dkt #1, p. 15). As part of the supporting documentation for the motion to use cash collateral, VLM's included an Exhibit of Summary Production from January 5, 2011, until May 11, 2011, which included the bi-weekly amount of production which ranged from 24,642 liters out of 58,700 liters or 41.98% to 29,063 out of 58,700 or 49.51% of the milk quota being produced (Lead Case 11-05237, dkt #6-1, p. 15).

The first monthly operating report for the consolidated Debtor for the short period of June 24, 2011, to July 11, 2011, disclosed that VLM produced as of June 24, 2011, 22,121 liters at 85 cents, which resulted in $18,803 and as of July 8, 2011, produced 22,819 liters at 85 cents which resulted in $19,396 of income, totaling $38,199 in income from the milk production. During this short period VLM received a reimbursement of $19,493 and operational expenses that totaled $40,566. The Debtor reported a net income for VLM of approximately $17,126 for this month. The court notes that the Debtor reports $0 for utilities expenses; $915 for gasoline and diesel expenses; $500 paid on the farm and land lease; $2,601 paid in wages; and $972 for personal salary (Case No. 11-05236, dkt #30, p. 3). The monthly operating report for the period of July 12 to August 15, 2011, disclosed total sales for VLM in the amount of $53,894 and total operating

-15-

costs in the amount of $59,566. The court notes that the Debtor reports $0 for utilities expense; $2,672 for gasoline and diesel expense; $3,500 paid on the farm and land lease; $3,876 paid in wages; and $873 for personal salary (Lead Case 11-05236, dkt #50-1, p. 1).

The monthly operating report for the consolidated Debtor for the month of July 2012, disclosed that VLM had 137 milking cows and it produced 16 liters per cow per day. At the time VLM was utilizing 54% of its milk quota. VLM produced as of July 6, 2012, 16,031 liters at 85 cents, which resulted in $13,626.06; as of July 20, 2012, it produced 30,711 liters at 85 cents which resulted in $26,155.35; and as of July 24, 2012, produced 10,042 liters at 85 cents which generated $8,535.92 of income, totaling $48,317.33 in income from the milk production. During this month VLM received a reimbursement of $6,550 from VTM, Inc. and operational expenses that totaled $61,275.22. The Debtor reported a net income for VLM of $108.11 for this month. The court notes that the Debtor reports $0 for utilities expenses; $1,792 for fuel for expense; $0 paid on the farm and land lease; $3,552 paid in wages; and $400 for personal salary (Case No. 11-05236, dkt #248-1, p. 1)

On August 30, 2012, the Debtor's Third Amended Chapter 12 Plan Dated July 10, 2012, was confirmed (Lead Case 11-05236, dkt #252). On August 3, 2016, the Debtor filed an Amended Post-Conformation Plan Dated July 10, 2016, which was confirmed on September 1, 2016 (Lead Case 11-05236, dkts # 348-1 & 350). The payment plan structure for PR Asset Portfolio 2013-1 International LLC's secured claim at a 4.75% interest rate was the following: (i) a monthly payment of $7,400 for 6 months; a monthly payment of $8,500 for 18 months; (iii) $9,000 monthly payment plan for three years; (iv) pursuant to the Court approved Stipulation (dkt #331), the Debtor shall cure the plan arrears with PRAPI by making consecutive monthly additional payments in the amount of $1,052.45 for ten (10) months commencing on April 2016; (v) a $13,000 monthly payment for 5 years; and (vi) a balloon payment on August 15, 2022 which may

-16-

be approximately $1,231,752.55. (Lead Case 11-05236, dkt #348-1, pgs. 12-13). On November 29, 2017, the Chapter 12 Trustee filed a *Motion to Dismiss* pursuant to 11 U.S.C. §1208(c)(6) because the Debtors were in a material default with the terms of the confirmed plan equal to $80,524.05 and sixty (60) months have already lapsed since the effective date of the plan; hence the plan repayment period can no longer be extended in conformity with 11 U.S.C. §1222(c). The case was dismissed on January 16, 2018 "upon the Chapter 12 Trustee's motion to dismiss for "material default" with respect to the terms of the confirmed plan" (Lead Case 11-05236, dkts #386 & 387).

*Second Bankruptcy Petition*

The Debtor's second bankruptcy petition was filed on December 14, 2018. In the second bankruptcy petition filed by VLM, in its second amended Schedule A/B: Assets – Real and Personal Property disclosed the milk quota with a net book value or recent cost of $704,400 (58,700 @ 12). The Debtor disclosed that the aggregate value of the collateral that secures Condado's claim is $1,017,400. However, VLM has not found existence of a valid and unexpired UCC over the milk quota. If such is the case, then the aggregate value of Condado's collateral would be reduced by $704,400 to $313,000 secured by real properties of third-party guarantors and not this Debtor (Case No. 18-07304, dkt #34, pgs. 3-4). The Debtor in its amended Schedule A/B also disclosed that it had the following farm animals with a current value of $34,600 which included the following: (i) 13 milking cows @$1,200 each ($15,600); (ii) 15 unbred cows @$1,000 each ($15,000); (iii) 13 heifers @ $200 each ($2,600); (iv) 2 bulls @ $500 each ($1,000); (v) 2 toretes @ $200 each ($400) (Case No. 18-07304, dkt #34, p. 4). The Debtor's amended Schedule D-Creditors Holding Secured Claims disclosed Condado's secured claim in the amount of $1,619,500.29 and the value of the collateral that supports this claim is in the amount of $1,017,400 which consists of the milk quota of 58,700 litres @ $12 = $704,400 plus

-17-

27.4842 acres ("cuerdas") of a third party valued at $54,940 in addition to structures and equipment $53,060 plus residence valued at $205,000 (Lead Case 18-07304, dkt #26, p. 8).

On February 19, 2019, Condado filed proof of claim 6-1 in the amount of $1,626,362.59 and it listed the claim in its entirety as secured by mortgage notes, Deed and others. It disclosed that the annual interest rate at the time the petition was filed was 10 1/8 %. The Court notes that the secured creditor's claim in the first bankruptcy petition in the year 2011 was in the amount of $1,760,240.03 and more than seven (7) years thereafter, the secured creditor's claim has decreased by approximately $133,877. The Debtor's December 2018 monthly operating report was filed on April 15, 2019, and the same disclosed that the Debtor had 41 milking cows which averaged 9.06 liters per day per cow and that the Debtor was utilizing 8.86% of its milk quota. As of December 12, 2018, the Debtor produced 5,150 liters at 79.99 cents, which resulted in $4,119.97 and as of December 26, 2018, it produced 5,253 liters at 76.511 cents which resulted in $4,022.32. These monies ($8,142.29) were all received by Condado. During this period the operational expenses were in the amount of $5,468.59. During this period, the Debtor received $5,620 from a family member and $1,800 from JM Dairy, Inc. The Debtor reported a net income of $48.15 for this month. The court notes that the Debtor reports $0 for utilities expenses; $0 paid on the farm lease to Juan Manuel Barreto and $1,120 paid in wages (Lead Case 18-7304, dkt #67). The Debtor's December 2019 monthly operating report was filed on January 22, 2020, disclosed that the Debtor had 26 milking cows which averaged 12.82 liters per day per cow and that the Debtor was utilizing 7.95% of its milk quota. As of December 11, 2019, the Debtor produced 4,392 liters at 82.2 cents, which resulted in $3,610.22 and as of December 25, 2019, 4,940 liters at 82.20 cents were produced which resulted in $4,060.68. These monies ($7,670.88) were all received by Condado. The Debtor also disclosed income from the sale of hay for this month in the amount of $4,540.00. During this period the operational expenses were in the amount of

$5,122.63. The Debtor reported a net income of $49.84 for this month. The court notes that the Debtor reports $0 for utilities expenses; $0 paid on the farm lease to Juan Manuel Barreto and $600 paid in wages (Lead Case 18-7304, dkt #117, p. 1).

The Debtor's December 2020 monthly operating report filed on January 22, 2021, disclosed that the Debtor had 20 milking cows which averaged 11.94 liters per day per cow and that the Debtor was utilizing 5.7% of its milk quota. As of December 11, 2019, the Debtor produced 3,255 liters at 82.11 cents, which resulted in $2,672.71 and as of December 25, 2019, 3,433 liters at 82.09 cents were produced which resulted in $2,818.27. These monies ($5,490.98) were all received by Condado. The Debtor informed that he had been forced to dry cows because he had no use of cash collateral. The Debtor also disclosed income from the sale of hay for this month in the amount of $3700.00. During this period the operational expenses were in the amount of $3,792.21. The Debtor reported a net income of $103.12 for this month. The court notes that the Debtor reports $0 for utilities expenses; $0 paid on the farm lease to Juan Manuel Barreto and $800 paid in wages (Lead Case 18-7304, dkt #207, p. 1).

The Debtor's second bankruptcy petition was dismissed by an *Opinion and Order* rendered on April 22, 2021, in which the court granted Condado's motion to dismiss pursuant to section 1208(c)(1) for unreasonable delay prejudicial to creditors and Debtor's failure to file a timely confirmable plan after thirty (30) months under section 1208(c)(3) (Lead Case 18-07304, dkt #251). This Opinion and Order was appealed to the Bankruptcy Appellate Panel for the First Circuit which affirmed the same on April 21, 2022 (Lead Case 18-07304, dkts # 275 & 276). On July 28, 2022, the Order discharging the Chapter 12 Trustee and closing the estate was entered (Lead Case 18-07304, dkt #284).

-19-

*Third Bankruptcy Petition*

Less than three weeks after the closing of the estate in the previous case, the Debtor filed its third bankruptcy petition on August 16, 2022. On August 23, 2022, Condado filed its proof of claim number 1-1 as fully secured by the milk quota, accounts receivables per UCCs, in the amount of $1,532,855.78. It also disclosed that it had a fixed annual interest rate of 10 1/8 %.

The Debtor in its Schedule A/B: Assets- Real and Personal Property included the milk quota (58,700 liters every 2 weeks) as having a current value of $117,400. (dkt #18, p. 6). The Court notes that the Debtor did not include the value per quota, but by a simple math calculation, it would have to be 58,700 liters @ $2. The Debtor also disclosed that it had the following farm animals with a current value of $136,700 which included the following: (i) 61 milking cows @$1,500 each ($91,500); (ii) 5 unbred cows @$1,500 each ($7,500); (iii) 8 unbred calves @ $1,400 each ($11,200) (iv) 12 heifers Toreras @ $700 each ($8,400); (v) 15 Horras cows @ $1,100 each ($16,500); (vi) 3 bulls @ $400 each ($1,200); (vii) 2 toretes @ $200 each ($400) (dkt #18, p. 4). The Debtor's Schedule D- Creditors Holding Secured Claims listed the following claims: (i) Condado's claim on the Debtor's milk quota, accounts receivables in the amount of $1,532,855.78 which is secured by collateral that has a value of $117,400; (ii) SBA claim in the amount of $104,900 which is secured by personal property, excluding the milk quota and the titled vehicles, which is valued at $200,000 (dkt #18, p. 9).

The Debtor's August 2022 monthly operating report filed on October 11, 2022, disclosed that the Debtor had 59 milking cows which averaged 13 liters per day per cow and that the Debtor was utilizing 18.16% of its milk quota. The Debtor produced for Suiza 17,345 liters at 90.7 cents, which resulted in $15,731.92 and it produced for Indulac, 3,977 liters at 53.395 cents which resulted in $2,123.52 of income. The Debtor also disclosed income from the sale of culled cows and male calves in the amount of $1,380 and $2,025 for the sale of hay. Additional items which

-20-

were reported as income were the following: (i) NRCS roof and cover 50% advanced payment in the amount of $37,101, and (ii) money reimbursed by attorney LA Morales in the amount of $20,000.  During this period the operational expenses were in the amount of $61,104.94 but included $20,000 paid for professional fees. The Debtor reported a net income of $16.57 for this month. The court notes that the Debtor reports $0 for utilities expenses; $0 paid on the farm lease to Juan Manuel Barreto and $2,120 paid in wages; $13,000 was reported as an obligation paid to Condado through milk assignments; and $3,000 was paid to Juan I. Barreto for money loaned for feed (dkt #42, p. 12).

The Debtor's December 2022 monthly operating report filed on January 16, 2023, disclosed that the Debtor had 52 milking cows which averaged 13.99 liters per day per cow and that the Debtor was utilizing 17.35% of its milk quota. The Debtor produced for Suiza as of December 7, 2022, 9,443 liters at 90.7 cents, which resulted in $8,564.80; as of December 21, it produced 9,313 liters at 90.7 cents, which resulted in $8,446.89, as of December 28 it had milk sales which resulted in $4,223.45. The Debtor produced for Indulac as of December 7, 710 liters at 76.5896 cents which resulted in $543.78; and as of December 21, it produced 900 liters at 67.33 cents which generated $605.98 in income. The Debtor also had an income from selling hay in the amount of $6,000. During this period the operational expenses were in the amount of $10,166.53. The Debtor disclosed that the amount of $16,250 was deposited with the U.S. Clerk Bankruptcy for 5 weeks of milk assignments. The Debtor reported a net income of $849.51 for this month. The court notes that the Debtor reports $0 for utilities expenses; $0 paid on the farm lease to Juan Manuel Barreto and $1,610 paid in wages. (dkt #94, p. 16).

The Debtor's June 2023 monthly operating report filed on July 21, 2023, disclosed that the Debtor had 47 milking cows which averaged 12.62 liters per day per cow and that the Debtor was utilizing 14.14% of its milk quota. The Debtor produced for Suiza as of June 7, 2023, 6,616

liters at 90.7 cents, which resulted in $6,000.71; as of June 21, it produced 7,314 liters at 90.7 cents, which resulted in $6,633.80 as of June 28 it had milk sales which resulted in $3,316.90. The Debtor produced for Indulac as June 9, 2023, 986 liters at 84.697 cents which resulted in $835.11; and as of June 23, it produced 1,684 liters at 78.216 cents which generated $1,317.26 in income. The Debtor also had additional income from the following: (i) sale of culled cow, bull and male calf in the amount $1,530; (ii) sale of hay in the amount of $2,300; and (iii) sale of mixer in the amount of $5,000. During this period the operational expenses were in the amount of $23,368.38. The Debtor disclosed that the amount of $15,261.39 was deposited with the U.S. Clerk Bankruptcy for 5 weeks of milk assignments. The Debtor reported a net income of $45,426.49 for this month. It must be noted that in the prior month, the Debtor in its May 2023 Monthly Operating Report, disclosed that it had received $99,900 from Community Development Block Grant Disaster Recovery (CDBG-DR) Incentive funds. The Debtor also during this month purchased 37 heifers for a total cost of $44,770 (dkt # 142, p. 47). The court notes that for the month of June, the Debtor reports $0 for utilities expenses; $0 paid on the farm lease to Juan Manuel Barreto and $3,550 paid in wages. (dkt #145, p. 14).

The Court notes that the July 2023 monthly operating report only has four pages and is incomplete and missing information. (dkt #146).

### *Financial analysis*

In the instant case, the Debtor has filed three (3) bankruptcy petitions. The first petition was filed on June 21, 2011. Approximately, twelve years and three months has elapsed since the Debtor's fist petition. The summation of the time the Debtor has been in bankruptcy during the course of these three petitions has been approximately eleven (11) years and three (3) months. The breakdown is as follows: (i) the first petition was filed on June 21, 2011, and dismissed on January

-22-

16, 2018 (approximately 6 years and 7 months); (ii) eleven months thereafter, the second petition was filed on December 14, 2018, and the same was dismissed on April 22, 2021. However, the Opinion and Order by which the case was dismissed was appealed and the Order Discharging Trustee was entered on July 28, 2022 (approximately 3 years and 7 months); and (iii) and less than three (3) weeks thereafter, the Debtor filed the instant petition on August 16, 2022 (approximately 1 year and 1 month). The Court notes that the secured creditor's claim in the first bankruptcy petition in the year 2011 was in the amount of $1,760,240.03 and eleven years thereafter from the filing date of the third petition, the secured creditor's claim has decreased by approximately $227,384, meaning that on average the claim has decreased yearly by $20,671.27 and a monthly amount of $1,722.61 for this claim which has been fully matured since January 12, 2015.

*Decline in the number of milking cows and utilization percentage of milk quota*

VLM in its first bankruptcy petition reported in its first monthly operating report of July 2011 which covered the period of June 24 to June 21, 2011, that it produced 44,940 liters at 85 cents which generated $38,199 in income. The July 2011 operating report did not disclose how many milking cows were being used by VLM. It provided the information for both VLM and JM Dairy, Inc. disclosing that there were in total 236 milking cows which averaged 15.48 liters per cow per day and that 57% of the milk quota was being used. During this bankruptcy petition the use of cash collateral was approved and the Debtor filed several stipulations with Banco Popular de Puerto Rico which was the secured creditor at the time. (Case No. 11-04236, dkts #19, 37, 39, 42, 61, 62, 67, 68, 91, 92, 93, 96, 123, 145, 146, 227, 231, 251).  A year thereafter, VLM in its July 2012 operating report, disclosed that it had 137 milking cows which produced 16 liters per cow per day. At the time VLM was utilizing 54% of its milk quota. VLM produced 56,784 liters

-23-

at 85 cents for the month of July 2012 which resulted in $48,317.33 in income from the milk production.

During the Debtor's second bankruptcy petition, it reported in its December 2018 monthly operating report that it had 41 milking cows and that it was utilizing 8.86% of its milk quota which produced 10,403 liters that generated $8,142.29 in income. The December 2020 monthly operating report disclosed that it had 20 milking cows and that it was using 5.7% of its milk quota which produced 6,688 liters that generated $5,490.98.

The Debtor in the current bankruptcy petition reported in its August 2022 monthly operating report that it had 59 milking cows and that it was utilizing 18.16% of its milk quota which produced 21,322 liters that resulted in $17,854.52 of income. The Debtor's June 2023 monthly operating report disclosed that it had 47 milking cows and that it was utilizing 14.14% of its milk quota which produced 16,600 liters that generated $18,103.68 in income.

The Court notes that the Debtor's number of milking cows has decreased significantly (approximately 70%) from its first bankruptcy petition in which it had 137 milking cows in July 2012 to 41 milking cows in December 2018. This marked decrease in the number of milking cows resulted in the utilization of the milk quota to decrease from 54% to 8.86% and profits to dwindle from $48,317.33 to $8,142.29. In the current petition, the Debtor's number of milking cows has increased from its second bankruptcy petition from 20 milking cows to 47 milking cows. However, the number of milking cows and the milk quota utilization percentage is still well below the Debtor's first bankruptcy petition, even with the addition of the 37 heifers that were recently bought. Pursuant to the June 2023 monthly operating report, the Debtor had 47 milking cows and the milk quota utilization rate was 14.14%.

After a thorough analysis of the Debtor's dairy farm operations throughout a span of eleven (11) years and three bankruptcy proceedings, the Debtor has not been able to sustain its dairy

farm operations even in the best-case scenario which occurred during the first bankruptcy petition when it had 137 milking cows and a 54% milk quota utilization rate and the use of cash collateral from the secured creditor. The Debtor's farming operation does not generate enough income to pay for necessary operational expenses such as utilities, the rent for the use of the farmland to the Debtor's principal and a fixed salary for Debtor's principal. Therefore, if a plan is confirmed like in the first bankruptcy petition, the Debtor will not generate enough operational income to pay its operating expenses plus the monthly payments under the plan of reorganization. Moreover, in the instant case, Luma Energy/ Puerto Electric Power Authority ("PREPA") filed proof of claim number 4-1 in the amount of $39,510.61. In the second bankruptcy petition, PREPA filed proof of claim number 1-1 in the amount of $22,294.89 and in the first bankruptcy petition it filed proof of claim number 4-1 in the amount of $21,030.19. Most importantly, the Debtor's principal has been unable to pay its commercial loan to Condado which has been fully matured since July 12, 2015, given that there is a pending and on-going foreclosure proceeding in state court in which the Debtor's principal's farmland where the Debtor runs its dairy farm business may be foreclosed in the near future. The Court is cognizant that at this juncture, the Debtor has almost no source of funding, given that almost all the monies generated from the milk assignments have been consigned with the Court until the legal issue which is currently on appeal of whether Condado's security interest milk quota extends to the milk produced and sold to milk processing plants and to the post-petition proceeds. Notwithstanding, there is enough data over a span of eleven (11) years that evinces that in the first petition when the Debtor had access to the use of post-petition cash collateral and reached various stipulations with the secured creditor, had approximately 137 milking cows and a 54% milk quota utilization rate, the income it generated was insufficient to sustain both the farming operations and the payments under the plan. The Court is also aware that during the first bankruptcy petition, the repayment of the mortgage notes against the real

-25-

property were also being paid under the plan. Unfortunately, back then, the consolidated Debtor was unable to generate sufficient income to pay these expenses and currently there is a foreclosure proceeding against the Debtor's principal's farmland in which the Debtor carries its dairy farm business. "Most family farm reorganizations, to be successful, will involve the sale of unnecessary property, thereby scaling down their farm operations." In re Pretzer, 96 B.R. 790, 794 (Bankr. N.D. Ohio 1989). Such is not the case in the instant petition.

Decrease in the value of personal assets and increase in the liabilities

In addition, the Debtor's personal assets have consistently decreased from bankruptcy to bankruptcy proceeding. In the year 2011, the Debtor's assets pursuant to Schedule B: Personal Property totaled $1,994,100 and were comprised mostly of the following: (i) the milk quota of 58,700 @ $21 which resulted in a value of $1,232,700; (ii) the farm animals, which at the time the Debtor listed that it had 173 cows plus 76 resting cows amongst other farm animals with a value of $575,800; and (iii) farm equipment/machinery which was valued at $158,500 (Case No. 11-05237, dkt #1, pgs. 12-13). For the year 2018, the Debtor reported in its amended Schedule A/B: Assets- Real and Personal Property disclosed that the value of the summation of its assets was in the amount of $829,212.06 and constituted mostly of the following assets: (i) the milk quota of 58,700 @ $12 which resulted in a value of $704,400; (ii) the Debtor's farm animals, which at the time it listed that it had a total of 45 milking cows, (but 32 cows had a USDA lien), amongst other farm animals with a value of $34,600; and (iii) farm equipment/machinery valued at $86,000 (Lead Case 18-07304, dkt #34, pgs. 3-4). In the year 2022, the Debtor's assets pursuant to Schedule B: Personal Property totaled $275,986.22 and were comprised mostly of the following: (i) the milk quota of 58,700/ every 2 weeks valued at $117,400; (ii) the farm animals, which at the time the Debtor listed that it had 61 milking cows amongst other farm animals with

a value of $136,700; and (iii) farm equipment/machinery which was valued at $13,950 (Case No. 22-02380, dkt #18, pgs. 4-6).

On the other side of the balance sheet, the Debtor's liabilities increased with each bankruptcy petition. In the year 2011, the total liabilities were in the amount of $1,600,033 and comprised mostly of the secured claim with BPPR in the amount of $1,475,461 which originated from the 2004 commercial loan. It listed the same as being fully secured. However, the Debtor also listed the 2004 loan in the bankruptcy of Mr. Juan Manuel Barreto as being a secured debt for the same amount ($1,475,461) and the real estate property subject to the lien was listed with a value in the amount of $1,100,000 which left $375,461 as unsecured. The Debtor reported in schedules E and F total unsecured claims in the amount of $69,911 (Case No. 11-05237, dkt #1, pgs. 15, 17-18). For the year 2018, the Debtor's total liabilities were in the amount of $2,108,855 and were comprised mostly of the secured debt owed to Condado which was in the amount of $1,619,500.29 of which the Debtor disclosed that it was secured in the amount of $1,017,400 by the value of the milk quota at the time which was $1,017,400 (58,700 @ $12) plus the value of some acres and equipment with the remainder amount of $602,100 as the unsecured portion. The Debtor also reported $475,845 in Schedule E/F: Creditors Who Have Unsecured Claims (Case No.18-07304, dkt #26, p.8 & 13). In the year 2022, the Debtor reported total liabilities in the amount of $2,179,355.92 which were constituted mostly of Condado's debt in the amount of $1,532,855.78 of which the amount of $117,400 was listed as secured by the milk quota and accounts receivables and the remainder portion in the amount of $1,415,455.78. The Debtor also disclosed SBA PR District Office having a secured claim of $104,900. The Debtor also reported $541,600.14 in Schedule E/F: Creditors Who Have Unsecured Claims (dkt #18, pgs. 9 & 14).

The Court concludes that with each bankruptcy proceeding, the value of the milk quota has decreased substantially as disclosed in the Debtor's schedules due to the decline in the

-27-

price/value of the milk quotas throughout the years. It is also important to consider that Debtor's

reported gross income has decreased since its first bankruptcy petition, except for the year 2016.

The gross revenues reported by the Debtor are as follows: Year 2009: $640,297; Year 2010:

$674,578; Year 2011: $259,861.02 (Lead Case 11-05237, dkt #1, p. 22); Year 2016: $316,445;

Year 2017: $146,309; Year 2018: Unknown (Lead Case 18-07304, dkt #26, p. 17); Year 2020:

$123,218; Year 2021: $125,250; Year 2022: 01/01/22- 08/16/22: $112,589.01 (dkt #18, p. 17).

Feasibility pursuant to 11 U.S.C. §1225(a)(6)

As part of determining if there is cause to dismiss under §1208(c)(9), the court examines

the Debtor's amended plan to decide whether the same is feasible pursuant to section 1225(a)(6).

See In re Victorious, LLC, 545 B.R. 815, 825 (Bankr. D. Vt. 2016).  Pursuant to section

1225(a)(6), the court must find that, "the debtor will be able to make plan payments under the

plan and to comply with the plan" as a prerequisite for plan confirmation. 11 U.S.C. §1225(a)(6).

The debtor has the burden of proving feasibility of a Chapter 12 plan. See In re Las Martas, 2022

Bankr. LEXIS 3427, *10 (Bankr. D.P.R. 2022). To determine plan feasibility, "'… the court must

ascertain the 'probability of actual performance of the provisions of the plan.' Under section

1225(a)(6), the feasibility of a debtor's plan is a factual determination." Mosbrucker v. United

States (In re Mosbrucker), 227 N.R. 434, 437 (B.A.P. 8th Cir. 1998) (Citations omitted). "To find

that a plan is feasible, "the court must be persuaded that 'it is probable, not merely possible or

hopeful, that the Debtors can actually pay the restructured debt and perform all obligations of the

plan.'" Keith's Tree Farms v. Grayson Nat'l Bank, 535 B.R. 647, 652 (W.D. Va. 2015); see In re

Honeyman, 201 B.R. 533, 537 (Bankr. D.N.D. 1996) (stating that a plan must be "based on

realistic and objective facts as opposed to visionary or overly optimistic projections."). "The court

must also consider the farm's earning power, capital structure, managerial efficiency, past

-28-

performance, and whether the same management will continue to operate the farm." <u>In re Hughes</u>, 2006 Bankr. LEXIS 2288, 2006 WL 2620438, *3 (Bankr. M.D.N.C. 2006).

As part of the feasibility test, the court needs to analyze the debtor's proposed plan payments based upon the debtor's projections of income and expenses and determine whether the debtor is likely to be able to make all the payments required by the plan. However, before reaching this step in the analysis, the court must first examine the debtor's projections to ensure that the same are based on the debtor's financial history. "The evidence relevant to a showing of feasibility will usually take the form of income and expense projections for the term of the plan. For most farming operations this will entail a monthly cash flow showing the timing of receipts and expenditures and indicating the debtor's ability to service the debtor's anticipated operating expenses and to make the required plan payments. The projections and expenses should be based on the debtor's past experience as supplemented by current market information. In analyzing the debtor's income projections, the court should examine whether they are consistent with the debtor's prepetition performance." Richard Levin & Henry J. Sommer 8 <u>Collier on Bankruptcy</u> ¶1225.02[5] (16th ed. 2023).

The Debtor's amended plan proposes to pay Condado's security in the milk quota based on the price of $5 per quart every two weeks which results in a value of $293,500 at an interest rate of 8.5%. The Court notes that pursuant to ORIL's Certification the sales price of the milk quota from the period of January 4, 2023, to May 24, 2023, ranged from $4 to $8. The Debtor's opted to value the quart at $5, which is near the low end of the price range (dkt #143, Exhibit 14). Moreover, pursuant to the Debtor's amended Chapter 12 plan dated January 10, 2023, it proposed to pay Condado $2078.96 for the first 6 months after the Effective Date and thereafter, a monthly payment of $4,224.09 for the next 96 months (dkt #93). This equates to a first yearly payment of $37,818.30 and then yearly payments thereafter in the amount of $50,869.08. These monthly

payments are just for the security interest of the milk quota, these monthly payments do not take into account the monthly payments that would be necessary to pay the mortgage note component of the commercial loan which is secured by the real estate where the business operation takes place, and which is currently undergoing foreclosure proceedings in state court. The Court understands that the real estate is owned by the Debtor's principal, but the reality is that the dairy farm operation cannot exist without the farmland, meaning that if the dairy farm operation will continue the mortgage note component of the real estate will need to be factored in. It is the Court's understanding that the monies that would pay for this secured debt would be from the Debtor's dairy farm operations and those of JM Dairy, Inc. as was the case in the first bankruptcy case. Moreover, Condado's commercial loan claim during the past 11 years has decreased by approximately $227,384, meaning that on average the debt has decreased on a yearly basis in the amount of $20,671.27 and monthly in the amount of $1,722.61 for this claim which has been fully matured since January 12, 2015. Based on Debtor's income history and the payments made towards Condado's debt, the Court finds that the amended plan is optimistic and not grounded in Debtor's financial reality for the past four years and nine months.

The Debtor's projections for the year 2023-2024 predict that there will be 88 milking cows and that the milk quota utilization rate will be 29.38% and for the year 2024-2025 it is forecasted that the Debtor will have 106 milking cows with a 35.39% milk quota utilization rate. The projected yearly income solely from milk sales for the year 2023-2024 is $376,696 ($31,391 average monthly) and a total annual income of $414,978.40 and for the year 2024-2025 the annual income solely from milk sales is estimated at $453,748 ($37,812 average monthly) and total income $499,718.40. The Court finds that these income projections are optimistic and are not based on the Debtor's past performance. For example, in the Debtor's first bankruptcy case filed on June 21, 2011, it disclosed that it initially had 173 milking cows and 76 resting cows and that

its gross income as of June 21, 2011, was in the amount of $250,861.02 (which would equate to approximately $44,269.59 gross monthly income with a total of 249 cows. The Debtor in its December 2011 operating report disclosed that VLM had 110 milking cows which averaged 12.4 liters per cow per day and that it was producing on average 19,097 liters biweekly at 85 cents with a 32.53% utilization rate for the milk quota. The income derived from the milk sales was in the amount of $24,348. If the Debtor had produced 38,194 liters for the four weeks, at the milk quota utilization rate of 32.53%, its income from milk sales would have been $32,464.90 (38,194 liters x .85) (Case No. 11-05236, dkt #101, pgs. 2-3). The Debtor in its 2023-2024 projections has 88 milking cows that average 14 liters per cow and a milk quota utilization rate of 29.38% with an average monthly milk sales income of $31,391.33. Basically, the Debtor has the same income in the December 2011 with 22 less milking cows and using 3.14% less of the milk quota utilization rate. A difference of 22 cows less would amount to approximately $7,244.16 (14 liters/cow x 84 cents x 22 cows x 28 days) less in income. The Court notes that it has used the year 2011 in which the Debtor reported the highest income (average monthly income) while in bankruptcy. Notwithstanding, the Debtor's most recent gross income numbers are far below this number. Gross income for the year 2020 was $123,218; gross income for the year 2021 was in the amount of $125,250 and for the year 2022 gross income from 01/01/22-08/16/22 was in the amount of $112,589.01. The Debtor's actual August 2023 monthly operating report discloses that it has 46 milking cows and 63 dry cows (for a total of 109 cows) and that it is utilizing 15.10% of the milk quota which produces 8,866 liters biweekly that generated $15,229.37 for this month in milk sales income. The court notes that the August monthly income is below by half the amount of the average monthly projection of $31,391.

These projections also fail to consider an important component which is the monthly payment it would have to pay Condado for its secured mortgage lien on the farmland. The

Debtor's proposed solution is that, "[i]n the event a foreclosure is in fact ordered, Mr. Barreto or Ms. Hernandez could file their own bankruptcy cases, and retain possession of the real property at issue, so that would not in any way render a plan unfeasible" (dkt #137, p. 4, ¶14). Given the Debtor's extensive history in bankruptcy, its plan to have the principals file for bankruptcy lacks foresight, since the Debtor's principals would have to formulate a plan of reorganization to repay Condado's mortgage note which they have been unable to do for the past twelve years, even at their peak when the milk quota utilization rate was at 54% and VLM had 137 milking cows. The Court concludes that the inability to repay Condado's mortgage note where the dairy farm operations take place forecloses any realistic probability of having a feasible plan of reorganization.

This is the Debtor's third bankruptcy petition, which was filed less than three weeks after the second bankruptcy case was closed, meaning that the Debtor has been almost continuously in bankruptcy for the past four (4) years and nine (9) months. The Debtor was unable to propose a timely confirmable plan pursuant to 11 U.S.C. §1208(c)(3) in its second bankruptcy proceeding and the case was dismissed. During these past four years and nine months that the Debtor has been in bankruptcy, its farming operations, despite recent optimistic projections, have barely improved. In fact, the data which this Court has thoroughly discussed evince that since the first bankruptcy petition the Debtor has been unable to sustain the dairy farm operations profitably or at least at a break-even point before consideration of debt service. The milk quota utilization rate has decreased significantly from the first bankruptcy (54%) which is the result of Debtor not having sufficient milking cows and enough cash flow to pay for the direct costs and operational expenses necessary to sustain the dairy farm operations. In the previous case, the Debtor was unable to use Condado's cash collateral because there was a legal issue as to whether Condado had a lien over Debtor's cash collateral. In the instant case, there is also a key legal issue as to

-32-

49

whether Condado's security interest milk quota extends to the milk produced and sold to milk processing plants and to the post-petition proceeds which was appealed and a decision on the same is pending. As discussed previously, the Debtor's financial situation has only worsened since the first bankruptcy petition and second bankruptcy petition, not only because there has been a decrease in the assets and an increase in liabilities, but most importantly because there are on-going foreclosure proceedings against the farmland which the Debtor utilizes to run its dairy farm operation. If the foreclosure proceedings are successful, there will be no farming operation. The Court finds that there has been no substantial change in circumstances from the previous case aside from increasing debts and decreasing collateral and the probability that the farmland will be foreclosed by Condado. Moreover, there is no evidence in the historical financial performance of the Debtor in which this court may rely on to determine that there is any reasonable likelihood that this Debtor may be rehabilitated. The estate has continued to diminish for the past four (4) years and nine (9) months and there is no hope of rehabilitation. The Debtors have consistently demonstrated for the past eleven years (in bankruptcy) that they do not have a viable farming operation sufficient to pay expenses and fund a plan and the value of the estate continues to diminish with the passage of time (VLM personal assets) and its liabilities continue to increase. There is also a consistent lack of payment to creditors. The Court concludes that in the instant case, the Debtor does not operate a sustainable milk producing operation which can generate enough monies to pay its operational expenses in addition to the plan payments that will need to commence upon the effective date of the plan. The court finds that the Debtor failed to meet its burden with respect to feasibility.

The Court is mindful that the Debtor's principal has been in the milk industry since 1988. However, the Debtor's financial condition has only worsened throughout the years. Condado's debt has been fully matured since January 12, 2015. The Debtor may not continue to speculate

with Condado's money. Moreover, the courts in the administration of Chapter 12 cases "… should strive to preserve [sic] this equity balance between creditors' and debtor's rights." In re Pretzer, 96 B.R. at 794 (citing 132 Cong. Rec. §10575 supra, remarks of Sen. Thurmond).

Conclusion

For the reasons previously discussed, the Court finds that dismissal is appropriate in this case based on a continuing loss to or diminution of the Debtor's estate and the absence of reasonable likelihood of rehabilitation pursuant to 11 U.S.C. §1208(c)(9). The Court also finds that the proposed amended plan of reorganization is not feasible and therefore does not comply with section 1225(a)(6). The Court's analysis as to dismissal conclude at this juncture since one ground is sufficient to dismiss a debtor's case. See In re Powell, 2022 Bankr. LEXIS 2937, at *1 n.1 (Bankr. M.D. Pa. 2022) ("Because the [m]otion to [d]ismiss is decided on the issue of bad faith, it is unnecessary to address the grounds under §1208(c)(9); Vaqueria Las Martas, Inc. v. Condado 5, LLC (In re Vaqueria Las Martas, Inc), 638 B.R. 482, 499 (B.A.P. 1st Cir. 2022) ("Because one ground is sufficient for dismissal, our analysis ends here, with the conclusion that the bankruptcy court did not abuse its discretion in dismissing the Debtor's case under § 1208(c)(1) for unreasonable delay that was prejudicial to creditors. We decline to examine the second statutory ground for the Dismissal Order, § 1208(c)(3)").

Therefore, the case is hereby dismissed.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 29th day of September 2023.

Enrique S. Lamoutte
United States Bankruptcy Judge

-34-

UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO RICO

-------------------------------------------------------------X

In re:                                    :        **Chapter 12**

                                          :

LAS MARTAS, INC.                          :        **Case No.** 22-02380 (ESL)

                                          :

                     **Debtor.**          :

                                          :

-------------------------------------------------------------X


## DEBTOR'S MOTION TO RECONSIDER, ALTER OR AMEND JUDGMENT/ORDER OF DISMISSAL, OR FOR NEW TRIAL, INCORPORATING MEMORANDUM IN SUPPORT THEREOF


TO THE HONORABLE COURT:

COMES NOW the Debtor, Las Martas, Inc., through the undersigned counsel, and respectfully moves pursuant to Bankr. R. 9023 and Fed. R. Civ. P. 59, incorporated therein, to reconsider, alter or amend the Court's Judgment/Order entered on September 29, 2023, dismissing the above-captioned Bankruptcy Case, or for a new trial.   In support thereof, Debtor states as follows:

1.    A Motion to Reconsider (alter or amend, in the parlance of the Rules) is proper in several situations, including where there is a manifest error of fact.   "Rule 59(e) may properly be invoked to request a [trial] court to reconsider, vacate, or even reverse its prior holding. *See, e.g., Kort v. Western Surety Co.,* 705 F.2d 278, 280-81 (8th Cir.1983) (upholding trial court's power, under Rule 59(e), to rescind prior grant of summary judgment); *Huff v. Metropolitan Life Ins. Co.,* 675 F.2d 119, 122 (6th Cir.1982) ("Rule 59(e) may be utilized in timely attempts to vacate judgment."); *Smith v. Hudson,* 600 F.2d 60, 62 (6th Cir.) (stating that Rule 59(e)

encompasses motions that ask a court "to vacate and reconsider, or even to reverse its prior

holding"), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979); *Greengrass*

*Enterprises, Inc. v. Rotfeld,* 83 F.R.D. 159, 161 (E.D.Pa.1979) (holding that Rule 59(e)

encompasses motions to vacate and effectively reverse a judgment entirely); *see also Binkley*

*Company v. Eastern Tank, Inc.,* 831 F.2d 333, 336 n. 4 (1st Cir.1987) ("A party may ... properly

invoke Rule 59(e) to request a District Court to reconsider or correct errors of law."). *But*

*see Brooks Bros. v. Brooks Clothing of California, Ltd.,* 5 F.R.D. 14, 15-16 (S.D.Cal.1945). For

much the same reasons as we stated regarding Rule 52(b), we now explicitly join those courts

that have found Rule 59(e) to encompass motions to amend that require reversal of the prior

judgment. Thus, under either Rule 52(b) or Rule 59(e), the district court below had the power to

amend its findings of fact and conclusions of law even when doing so resulted in the reversal of

its initial judgment. *Cf. United States Gypsum Co.,* 668 F.2d at 176-80 (upholding a successor

trial judge's power to reverse an initial judgment and impose liability pursuant to a motion for

reconsideration)." *National Metal Finishing Co., Inc. v. BarclaysAmerican/ Commercial, Inc*.,

899 F. 2d 119, 123-24 (1st Cir. 1990).  "The commission by the trial court of some manifest

error of law or fact is one of the grounds that justifies a trial court's grant of a Rule 52(b) or 59(e)

motion."  *Id.* at 124.

2.    The basis for the Court's Order was "For the reasons previously discussed, the Court

finds that dismissal is appropriate in this case based on a ***continuing loss to or diminution of the***

***Debtor's estate*** and the absence of reasonable likelihood of rehabilitation pursuant to 11 U.S.C.

§1208(c)(9). The Court also finds that the proposed amended plan of reorganization is not

feasible and therefore does not comply with section 1225(a)(6). The Court's analysis as to

dismissal conclude at this juncture since one ground is sufficient to dismiss a debtor's case."

-- 2

(Emphasis added).

3.    Section 1208(c)(9) provides the legal standard under which the Court acted.  That requires a "continuing loss to or diminution of *the estate*."  (emphasis added).   Not the estate in prior cases.  That is not the same estate.   The proper analysis is the present case, not prior cas.

4.    In this case, it is a manifest error of fact to find a "continuing loss to or diminution of the Debtor's estate."   The Debtor's tangible personal property at a minimum has stayed about the same since filing.   The Debtor's testimony was that it received a grant for an additional mulcher (and cows), and the facility's roof was replaced.   It had no cash at the petition date, but $18,091 as of the August MOR.  **But most significantly, there is $164,898 paid into the Court's escrow as receivables from Suiza Dairy on which Condado 5 claims a lien.**   On February 15, 2023, this Court ruled that "Condado's perfected pre-petition security agreement over debtor's milk quota is limited to the milk quota, it does not extend to its proceeds or products; Condado's collateral is limited to the milk quota but does not include proceeds, products, or profits of the milk quota; and, Condado's perfected pre-petition security agreement over debtor's account receivables does not extend to post-petition account receivables as the same became ineffective by the effect of § 552(a)." (Opinion and Order, Docket No. 102).   As such, those funds are property of the Debtor's estate, free and clear of the lien of Condado 5.

5.    Accordingly, it is manifest that the Debtor's estate has been *enhanced,* not diminished, during this case.   Enhanced by over $200,000.   And the Debtor continues to operate *profitably* each month.   The only thing hindering it is the continued (and illegal) diversion of its funds into escrow despite the Court's February ruling that Condado has no lien on the funds.   As such, the finding of "continuing loss to or diminution of the Debtor's estate" is manifestly in error.

6.    As for feasibility of the plan, the Court assumes that the Debtor will not be able to make

-                                                              3

the "mortgage payments" on the farmland, although acknowledging that Debtor does not own the

land.  The Debtor's principal (who does) testified that if Condado is allowed to foreclose (which

is far from certain – as established at the hearing, summary judgment in the state court case was

denied), he will file a personal bankruptcy case.  That will allow him to pay the *value* of the land

(far less than the loan amount – appraised at $108,000) over the term of a plan. The Court

assumes that he will need to pay Condado in full, but that is not the case, and is also a manifest

error of law or fact. The proposed plan is feasible and can be confirmed, particularly if Debtor

has access to the funds deposited with the Court. Those funds will be used not only to fund the

operation and the plan, but also to pay reasonable wages and rent to the principal, who will then

be in a position to make payments to Condado.  The Court should note that it already passed a

judgment stating that Condado has no lien over the funds and, therefore, the same should be

released to the debtor.

    WHEREFORE, Debtor respectfully requests that the Court reconsider, alter and amend the

Opinion and Order/Judgment of Dismissal entered on September 29, 2023, and deny the Motion

to Dismiss, or in the alternative grant Debtor a new trial on the matters in issue.

<u>Objection Notice- PR LBR 9013-1(c)(1)</u>

Within fourteen (14) days after service as evidenced by the certification, and an additional three
(3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against
whom this paper has been served, or any other party to the action who objects to the relief sought
herein, shall serve and file an objection or other appropriate response to this paper with the
clerk's office of the United States Bankruptcy Court for the District of Puerto Rico. If no
objection or other response is filed within the time allowed herein, the paper will be deemed
unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the
requested relief is against public policy; or (iii) in the opinion of the court, the interest of justice
requires otherwise.

Dated: October 12, 2023.

Respectfully submitted,

/s/ Daniel M. Press
Daniel M. Press, #204704
CHUNG & PRESS, P.C.
6718 Whittier Ave., Suite 200
McLean, VA 22101
(703) 734-3800
dpress@chung-press.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2023, I electronically filed the foregoing with the Clerk of the Court using the Next Gen CM/ECF system, which will send notification of such filing to all Next Gen CM/ECF participants in this case, including counsel for Condado 5, the Chapter 12 Trustee, and the U.S. Trustee for Region 21.

/s/ Daniel M. Press
Daniel M. Press, #204704

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

IN RE:                                          LEAD CASE NO. 22-02380 (ESL)

LAS MARTAS, INC.
dba VAQUERÍA LAS MARTAS, INC.                   CHAPTER 12

        Debtor.

**OPPOSITION TO *MOTION FOR RECONSIDERATION***
(Related ECF No. 153)

TO THE HONORABLE COURT:

        COMES NOW Condado 5, LLC ("Condado") through the undersigned counsel, and respectfully states and prays as follows:

Procedural Background

        1.      On August 16, 2022, the Debtor filed its <u>third</u> Chapter 12 bankruptcy petition (Lead Case, ECF No. 1).

        2.      On August 23, 2022, Condado filed Proof of Claim No. 1 in the secured amount of $1,532,855.78 secured, *inter alia*, 58,700 quarts of Debtor's bi-weekly milk quota.  Condado's lien also extends over the interests, rents and proceeds arising from the milk quotas and the continuing production of milk under the quotas every 14 days, as well as the existing accounts receivable related to the processing plant Suiza Dairy, Corp., and those that may be acquired subsequently or in the future by the Debtor.  Proof Claim No. 1 was never objected and thus deemed allowed under 11 U.S.C. § 502(a).

        3.      On September 29, 2023, this Court entered an *Opinion and Order* (ECF No. 148) dismissing the instant case.

        4.      On October 12, 2023, the Debtor filed a *Motion to Reconsider, Alter or Amend Judgment/Order of Dismissal, or for New Trial, Incorporating Memorandum in Support Thereof* (the "*Motion for Reconsideration*", ECF No. 153) alleging that this Court erred: (a) in considering the diminution of the bankruptcy estate in its previous two bankruptcy cases when applying

Section 1208(c)(9) of the Bankruptcy Code; and (b) in determining that the Debtor's proposed *Chapter 12 Plan of Reorganization* (ECF No. 49) was not feasible.

Applicable Law and Analysis

*(A)    Standard for motions for reconsideration.*

5.    Because the *Motion for Reconsideration* was filed within the 14 days after entry of the *Opinion and Order*, we will discuss it under the scope of Fed. R. Civ. P. 59(e), applicable to bankruptcy proceedings under Fed. R. Bankr. P. 9023.  See Torres v. Banco Popular de P.R. (In re Torres), No. 10-10228 (ESL), 2018 Bankr. LEXIS 3317, at *5, 2018 WL 5294847 (Bankr. D.P.R. Oct. 23, 2018) ("[i]f a motion is served within fourteen (14) days of the rendition of judgment, the motion ordinarily will fall under Rule 59(e).  If the motion is served after that time, it falls under Rule 60(b)"), quoting from In re Lozada Rivera, 470 B.R. 109,113 (Bankr. D.P.R. 2012).

6.    In our First Circuit, motions for reconsideration under Fed. R. Civ. P. 59(e) may only be granted if the movant establishes: (1) manifest errors of law and/or fact; (2) newly discovered or previously unavailable evidence; (3) manifest injustice; and, (4) an intervening change in controlling law.  See Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 7 (1st Cir. 2005).

7.    Courts have considerable discretion in deciding whether to grant or deny a motion under Fed. R. Civ. P. 59(e).  See ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008) ("[Trial] courts enjoy considerable discretion in deciding [Fed. R. Civ. P.] 59(e) motions, subject to circumstances developed in the case law").

8.    "The granting of a motion for reconsideration is an extraordinary remedy which should be used sparingly."  Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (citations omitted).  Also see Ramirez Rosado v. Banco Popular de P.R. (In re Ramirez Rosado), 561 B.R. 598, 607 (B.A.P. 1st Cir. 2017) ("reconsideration of a previous order is an extraordinary remedy that must be used sparingly because of interest in finality and conservation of scarce judicial resources").

9.      "To meet the threshold requirements of a successful Rule 59(e) motion, the motion 'must demonstrate the reason why the court should reconsider its prior decision and must set forth facts or law of a strongly convincing nature to induce the court to reverse its earlier decision.'" Garcia Matos v. Oliveras Rivera (In re Garcia Matos), 478 B.R. 506, 516 (B.A.P. 1st Cir. 2012) (citations omitted).

10.      "[M]otions for reconsideration should not give parties a 'second bite at the apple' or 'another roll of the dice'". In re Redondo Constr. Corp., 2019 Bankr. LEXIS 3560, at *5, 2019 WL 6130938 (Bankr. D.P.R. 2019) (Lamoutte, B.J.).  In other words, "[t]he system does not permit a party a second 'bite at the apple' when an issue has been decided against that party.  If it did, litigation would be endless."  Ultra-Temp Corp. v. Advanced Vacuum Sys., 194 F.R.D. 378, 383 (D. Mass. 2000).

*(B)      The Court did not err or abuse its discretion in considering the Debtor's previous two bankruptcy cases when applying Section 1208(c)(9) of the Bankruptcy Code.*

11.      The Debtor alleges that the Court erred in considering the Debtor's two previous bankruptcy cases in its Section 1208(c)(9) analysis and submits instead that this Court must *only* look to this third bankruptcy case.  See *Motion for Reconsideration*, ECF No. 153, p. 3, ¶¶ 3-5.  In other words, the Debtor moves for reconsideration because the Court made a *wholistic* analysis considering the totality of the circumstances, rather than engaging in secluded, isolated view of this third bankruptcy case.

12.      Tellingly, the Debtor does not cite to any controlling authority whatsoever to support its bald allegations *in direct contravention of PR LBR 9013-2(a)* (motions "must be accompanied by a supporting memorandum that contains the points *and authorities* in support of the party's position" and the memorandum "must also include specific reference to the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, these LBRs, and/or *other controlling authorities*").

13.      Hence, the Debtor has not placed the Court in a position to reconsider this issue.

That is, the Debtor has not "demonstrate[d] the reason why the court should reconsider its prior decision" nor has it "set forth facts or law of *a strongly convincing nature* to induce the court to reverse its earlier decision.'" In re Garcia Matos, 478 B.R. at 516 (italics added). Also see Albarran v. Rivera (In re Rivera), 627 B.R. 765, 771 (B.A.P. 1st Cir. 2021) ("[i]t is well settled in the First Circuit that to meet the threshold requirements of Rule 59(e), the motion must demonstrate the reason why the court should reconsider its prior decision and must set forth facts or law of a strongly convincing nature to induce the court to reverse its earlier decision").

14.     In addition, courts are encouraged to "use a non-exhaustive list of factors to assess the totality of the circumstances" upon considering dismissals of Chapter 12 cases. Sternitzky v. State Bank Fin., 2022 U.S. Dist. LEXIS 205895, at *9, 2022 WL 16919240 (W.D. Wis. Nov. 14, 2022).

*(C)     The Bankruptcy Code did not err or abuse its discretion in determining that the Debtor's Chapter 12 Plan of Reorganization (ECF No. 49) was not feasible.*

15.     During the evidentiary hearing held on June 15, 2023, the Debtor (through Mr. Juan Manuel Barreto Ginorio) testified (upon questions by its counsel) that if Condado foreclosed on the real estate property where the dairy farm operates, which belongs to Mr. Barreto and is currently being foreclosed with the PR Court of First Instance, Superior Court of Arecibo, Case No. AR2021CV00693, then Mr. Barreto would file for bankruptcy once again "to stop the foreclosure". *Minute Entry*, ECF No. 143, p. 3, lines 4-5.

16.     This Court already considered such argument but discarded it ruling instead that "the reality is that the dairy farm operation cannot exist without the farmland, meaning that if the dairy farm operation will continue the mortgage note component of the real estate will need to be factored in". *Opinion and Order*, ECF No. 148, p. 30, lines 5-7.

17.     As stated, "motions for reconsideration should not give parties a 'second bite at the apple' or 'another roll of the dice'". In re Redondo Constr. Corp., 2019 Bankr. LEXIS 3560, at *5, 2019 WL 6130938.

Prayer for Relief

WHEREFORE, Condado moves the Court to deny the Debtor's *Motion for Reconsideration* (ECF No. 153) and grant any further relief that is fair and equitable.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 27th day of October 2023.

Certificate of Service

We hereby certify that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to CM/ECF participants.

**Ferraiuoli** LLC

Attorneys for Condado
PO Box 195168
San Juan, PR 00919-5168
Telephone: (787) 766-7000
Facsimile: (787) 766-7001

*/s/ Gustavo A. Chico-Barris*
GUSTAVO A. CHICO-BARRIS
USDC-PR No. 224205
gchico@ferraiuoli.com

*/s/Tomás F. Blanco-Pérez*
TOMAS F. BLANCO-PEREZ
USDC-PR No. 304910
tblanco@ferraiuoli.com

-5-

IN THE UNITED STATES BANKRUPTCY COURT FOR

THE DISTRICT OF PUERTO RICO

IN RE:                                    CASE NO. 22-02380-ESL12

LAS MARTAS INC                            Chapter 12




                Debtor                    FILED & ENTERED ON OCT/30/2023

ORDER DENYING RECONSIDERATION

Debtor's request for reconsideration of the order dismissing the instant

case (Docket #153) is hereby denied for lack of good cause. The Court denies

the Debtor's motion for reconsideration based on the reasons provided by Condado

5, LLC (docket #160).

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30 day of October, 2023.


Enrique S. Lamoutte
United States Bankruptcy Judge

62

UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO RICO

-------------------------------------------------------------X
In re:                                     :        **Chapter 12**
                                           :
LAS MARTAS, INC.                           :        **Case No.** 22-02380 (ESL)
                                           :
          **Debtor.**                      :
                                           :
-------------------------------------------------------------X

NOTICE OF APPEAL AND STATEMENT OF ELECTION

**LAS MARTAS, INC.,** the **Debtor** herein, hereby appeals under 28 U.S.C. § 158(a) from

the final Order (Docket #148) dismissing the above-captioned Bankruptcy case, and the Order

(Docket #162) denying Debtor's Motion to Reconsider, Alter or Amend Judgment/Order

of Dismissal, or for New Trial, which Orders were entered by U.S. Bankruptcy Judge Lamoutte

on September 29, 2023, and October 30, 2023, respectively, copies of which are attached.

Part 1: Identify the appellant(s)

1.        Name(s) of appellant(s):

          Las Martas, Inc.

2.        Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject

of this appeal:  For appeals in a bankruptcy case and not in an adversary proceeding. **x Debtor**

     Creditor     Trustee     Other (describe) _____


Part 2:  Identify the subject of this appeal

1. Describe the judgment, order, or decree appealed from:  The final Order (Docket #148)

dismissing the above-captioned Bankruptcy case, and the Order (Docket #162) denying Debtor's

--                                          1

Motion to Reconsider, Alter or Amend Judgment/Order of Dismissal, or for New Trial.

2. State the date on which the judgment, order, or decree was entered:  September 29, 2023, and

October 30, 2023, respectively.

Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment, order, or decree appealed from and the names,

addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

Las Martas, Inc., Debtor:                  Daniel M. Press
                                           CHUNG & PRESS, P.C.
                                           6718 Whittier Avenue, Suite 200
                                           McLean, Virginia 22101
                                           (703) 734-3800
                                           dpress@chung-press.com


Condado 5, LLC                             Gustavo A. Chico-Barris, Esq.
                                           Ferraiuoli LLC
                                           PO Box 195168
                                           San Juan, PR 00919-5168
                                           787-766-7000
                                           gchico@ferraiuoli.com


Jose Carrion, Trustee                      JOSE R. CARRION
                                           CHAPTER 12 STANDING TRUSTEE
                                           P.O. Box 9023884
                                           Old San Juan Station,
                                           San Juan, P.R. 00902-3884
                                           Tel (787) 977-3535
                                           jcarrion@ch13-pr.com

Part 4: Optional election to have appeal heard by District Court

 If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate

Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the

appeal heard by the United States District Court.  If an appellant filing this notice wishes to have

the appeal heard by the United States District Court, check below.  Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

Dated: November 9, 2023.

Respectfully submitted,

/s/ Daniel M. Press
Daniel M. Press, #204704
CHUNG & PRESS, P.C.
6718 Whittier Ave., Suite 200
McLean, VA 22101
(703) 734-3800
dpress@chung-press.com

3

CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2023, I electronically filed the foregoing with the Clerk of the Court using the Next Gen CM/ECF system, which will send notification of such filing to all Next Gen CM/ECF participants in this case, including counsel for Condado 5, the Chapter 12 Trustee, and the U.S. Trustee for Region 21.


/s/ Daniel M. Press
Daniel M. Press, #204704

4

1
2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

3
4    IN RE:                                      CASE NO. 22-02380 (ESL)

5    LAS MARTAS, INC.                            CHAPTER 12

6        Debtor

7

8                              OPINION AND ORDER

9        On December 5, 2022, the court entered an *Opinion and Order* directing the Debtor to

10   show cause why confirmation should not be denied pursuant to sections 1225(a)(3, 6) of the

11   Bankruptcy Code, and the case dismissed pursuant to section 1208(c)(5) (dkt #65). The Debtor

12   filed its response on December 19, 2022 (dkt #83). Thereafter, on June 12, 2023, the Debtor filed

13   its *Proposed Findings of Fact and Conclusions of Law* (dkt #137) and Condado 5, LLC

14   ("Condado") filed its *Amended Pre-Trial Report* on June 13, 2023 (dkt #139). An evidentiary

15   hearing was held on June 15, 2023, to consider the following: (i) Motion to Dismiss filed by

16   Condado (dkt #22); Debtor's response (dkt #37); Condado's reply (dkt #47); order to show cause

17   regarding dismissal (dkt #65); and Debtor's response to the order to show cause (dkt #83). For

18   the reasons set forth below, Condado's motion to dismiss is hereby granted.

19                                  Jurisdiction

20       The Court has jurisdiction pursuant to 28 U.S.C. §§1334(b) and 157(a). This is a core

21   proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(A). Venue of this proceeding is proper

22   under 28 U.S.C. §§1408 and 1409.

23

24                              Procedural Background

25       Las Martas, Inc. filed its third bankruptcy petition under chapter 12 on August 16, 2022.

26   The Debtor had previously filed two-prior bankruptcy petitions under chapter 12. Debtor's first

27   bankruptcy petition was filed on June 21, 2011, it was substantively consolidated on July 11,

                                        -1-

2011, with the related cases of Juan Manuel Barreto Genorio (Case No. 11-05236) and JM Dairy Inc. (Case No. 11-05239) (Case No. 11-05237, dkt #20) and dismissed pursuant to 11 U.S.C. §1208(c)(1) and (6), on January 16, 2018 (Case No. 11-05236, dkt #s 386 & 387). On December 14, 2018, the Debtor filed its second bankruptcy petition and the same was dismissed on April 22, 2021, pursuant to 11 U.S.C. §1208(c)(1) and (3). (Case No. 18-07304, dkt #251). This Court's *Opinion and Order* dismissing the second bankruptcy case was appealed to the First Circuit Bankruptcy Appellate Panel which affirmed this Court's decision on April 21, 2022 (Case No. 18-07304, dkts # 275 & 276).

The Debtor in its Schedule A/B- Assets- Real and Personal Property disclosed that the following farm animals had an aggregate value of $136,700: 61 total milking cows @ $1,500 each for a total of $91,500; 5 unbred cows @$1,500 each for a total of $7500; 8 unbred calves @ $1,400 each for a total of $11,200; 12 heifers toreras @$700 each for a total of $8400; 15 horras cows @$1,100 each for a total of $16,500; 3 bulls @ $400 each for a total of $1,200; and 2 toretes [small bull] @ $200 each for a total of $400. (dkt #18, p. 4., item 29). The Debtor also included its milk quota of 58,700 quarts every two (2) weeks with a current value of the Debtor's interest of $117,400.00 as a personal asset (dkt #18, p. 6, item #62). The Debtor in its Schedule D- Creditors Who Have Claims Secured by Property- disclosed that Condado has a claim in the amount of $1,532,855.78 which is a secured with the milk quota (58,700 quarts every 2 weeks) that has a value of $117,400.00 (dkt #18, p. 9, item #2.1).

On September 1, 2022, Condado filed a *Motion to Dismiss* premised upon 11 U.S.C. §1208(c)(1), (9), alleging that the petition was filed in bad faith and the case constitutes a two-party dispute (dkt #22). On October 3, 2022, the Debtor filed its *Response to the Motion to Dismiss* (dkt #37). On October 17, 2022, Condado filed its *Reply to Debtor's Response to Motion to Dismiss* (dkt #47). On November 14, 2022, the Debtor filed its Chapter 12 Plan of Reorganization (dkt #49).

On December 5, 2022, the Court rendered an *Opinion and Order* in which it summarized the positions of the parties as to the motion to dismiss; held certain facts to be supported by the

-2-

record and established the applicable legal standard regarding a motion to dismiss a Chapter 12 case. The court ordered the Debtor to show cause as to why confirmation should not be denied pursuant to sections 1225(a)(3, 6) of the Bankruptcy Code and the case dismissed pursuant to section 1208(c)(5). The Court further stated that the future of this case will depend on the timely response by the Debtor. The court cautioned the Debtor that, after considering the Debtor's history of bankruptcy filings, conclusory allegations will not move the court and that feasibility and changed circumstances require supporting documentation. (dkt #65, pgs. 6-7).  On December 13, 2022, the Chapter 12 Trustee filed an *Unfavorable Recommendation to Chapter 12 Plan Dated November 14, 2022 (Docket 49)* based upon the following: (i) the plan does not comply with 11 U.S.C. §1225(b)(1) because according to the Debtor's repayment plan schedule it is keeping approximately $5,000 monthly which is not necessary for the operation of the business and which could be used to pay unsecured creditors; (ii) the plan does not comply with 11 U.S.C. §1225(a)(5), (6) because it provides for the bifurcation of the secured claim filed by Condado into secured and unsecured portions. Condado has objected to said treatment. The extent of Condado's security interest over Debtor's assets is currently being litigated. However, if Condado's lien extends further than the milk quota, the Debtor will not be able to make payments under the plan; (iii) the plan is contrary to 28 U.S.C. §586(e)(2) regarding the treatment afforded to the Standing Trustee's Chapter 12 fees; and (iv) the plan fails to state which statute is to be applied to provide interest for the payments to the IRS (dkt #70). On December 19, 2022, Condado filed an *Objection to Confirmation of Chapter 12 Plan of Reorganization Dated November 14, 2022* (dkt #81).

On December 19, 2023, the Debtor filed its *Response to Order to Show Cause* (Dkt #65) (dkt #83). On January 10, 2023, the Debtor filed its *Amended Chapter 12 Plan Dated 1/10/23* in which the proposed treatment for Condado's claim is the following:

"3.6 Class E (Condado 5 Secured Claim). Class E consists of the Secured Claim of Condado 5, LLC. The Secured Claim of Condado 5, LLC, shall be bifurcated into 3 components and treated as follows:

-3-

69

E-1 The claim is secured by a prepetition receivable from Suiza Dairy, Inc., in the amount of $3,000. Upon the Effective Date[1] of the Plan, if not paid sooner, Suiza Dairy shall pay $3000 to Condado 5 from the receivables of the Debtor that it is holding. If the funds are paid to the Debtor or into escrow prior to that, then the payment shall be made from that source. Condado shall retain its lien on the prepetition receivable to the extent thereof, until paid.

E-2 The claim is otherwise secured as to the Debtor by Debtor's ORIL milk quota of 58,700 quarts/ 2 weeks. The secured claim as to the Milk Quota shall be valued at $5/quart/ 2 weeks, $293,500. Condado 5 shall be paid by the Debtor directly 8.5% interest only on the $293,500 for 6 months ($2,078.96/ month) from the Effective Date, and then $293,500 amortized at 8.5% p.a. by the Debtor directly in equal monthly installments of $4,224.09 over 8 years (96 months) from 6 months after the Effective Date, and shall retain its lien until paid as provided in this Paragraph E-2. Should Suiza Dairy Inc. and Condado 5 agree, these payments may be made in weekly installments directly from Debtor's receivables due from Suiza Dairy.

E-3 The balance of the claim of Condado 5 is unsecured under 11 U.S.C. [§]506 and shall be treated for all purposes as a general unsecured claim.

As it[s] claim is not secured by post-petition receivables or otherwise by the proceeds of post-petition milk sales, upon confirmation Condado 5 will release its claim to a lien on such proceeds and Suiza Dairy shall turn them over to the Debtor." (dkt #93, pgs. 5-6).

On January 23, 2023, Condado filed its Objection to Confirmation of Amended Chapter 12 Plan of Reorganization Dated January 10, 2023 by which it argues that: (i) the amended plan does not comply with 11 U.S.C. §1225(a)(5)(B); (ii) the amended plan is not feasible and fails to comply with 11 U.S.C. §1225(a)(6) due to the following: (a) the property where the Debtor's dairy farm operates does not belong to the Debtor, but to the Debtor's principal and his ex-spouse. There is a pending foreclosure proceeding as to this property. Once Condado forecloses on the property, the Debtor will not be able to operate its dairy farm and no alternate plan has been provided; (b) the feasibility of the amended plan depends upon the final adjudication of whether Condado's milk quota extends to the milk produced and sold to milk processing plants under Debtor's bi-weekly milk quota and the proceeds generated thereunder; (c) there are no significant changes in circumstances from the prior bankruptcy cases as compared to the instant case. The Debtor is now in a more precarious financial condition given that it has increased its liabilities and the value of its assets have decreased significantly from the filing of the previous case on

---

[1] Pursuant to section 1.27 of the amended plan the "Effective Date" "means the first Business Day after 14 days after entry of the Confirmation Order is then in effect, in which case it shall be the first Business Day after 14 days after the stay terminates." (dkt #93, p. 2).

-4-

December 14, 2018; (d) the monthly operating report for August 2022 discloses a negative cash balance and the monthly operating report for September 2022 shows a net cash balance of $771.32 and the December 2022 monthly operating report reflects a net cash balance of $610.36; (iii) the amended plan does not comply with the contents of the plan requirement under 11 U.S.C. §§1222(c) and 1222(b)(9) and 1225(a)(5)(A), (B) and (C); and (iv) the amended plan fails to comply with the feasibility requirements pursuant to 11 U.S.C. §1225(a)(4) because it fails to include financial projections to establish feasibility and also lacks a liquidation analysis (dkt #95). On January 26, 2023, the Chapter 12 Trustee filed its *Position Regarding the Confirmation of the Amended Chapter 12 Plan Dated January 10. 2023 (dkt #93)* by which it discloses that: (i) it has a plan base of $108,000; (ii) it provides for the payment of attorney's fees; the payment in full of priority claims filed by the Internal Revenue Service and the Department of the Treasury; provides for direct payments to secured debts with the Small Business Administration and Condado. The amended plan provides for a bifurcation of Condado's claim by which $293,500 will be treated as secured and the remaining balance will be considered general unsecured which would be paid pro-rata and would receive approximately $65,660.09 or a five percent distribution; and (iii) the liquidation value has been estimated at $38,660 without deducting priority claims. The Trustee's position is that in principle he has no objection to the confirmation of the amended plan because it complies with 11 U.S.C. §§1222 and 1225. Notwithstanding, a final determination of compliance with the confirmation requirements is subject to the resolution of the following matters: (i) the extent of Condado's security interest over Debtor's assets is currently being litigated. If Condado's lien extends beyond the Debtor's milk quota to post-petition milk production, then the Debtor will not be able to make plan payments; and (ii) the outcome of the investigation regarding the $37,101.00 the Debtor received pre-petition from a USDA grant may affect the plan confirmation. Resolution of these two matters needs to be resolved favorably for the amended plan to be confirmed, if not the amended plan cannot be confirmed (dkt #96). On February 10, 2023, the Chapter 12 Trustee filed his *Report Re Investigation Regarding Condado 5, LLC Concerns Re: Debtor's Misuse of Funds Received From USDA* in which the Trustee

-5-

concluded the following: (i) Debtor improperly used funds received in August 2022 from the Natural Resources Conservation Service, U.S. Department of Agriculture ("NRCS-USDA") Program; (ii) seeking to correct the situation, the Debtor in November 2022 was able to obtain funds to replace the misused funds and started the project funded by the NRCS- USDA Program. Completion of the project is expected by March 2023; (iii) the NCRS-USDA Program, under its discretion under the contract decided not to sanction the Debtor for the misuse of funds and to continue with the contract as planned; and (iv) the Debtor's improper use of the funds received under the NRCS-USDA Program would have no adverse impact over Debtor's reorganization under Chapter 12 (dkt #100).

On February 15, 2023, this Court rendered an *Opinion and Order* in which Condado's request to prohibit the Debtor's use of cash collateral resulting from the post-petition sale of milk was denied (dkt #102). Also on February 15, 2023, Condado filed its *Notice of Appeal and Statement of Election to District Court* (dkt #103). Thereafter, on June 12, 2023, the Debtor filed its *Proposed Findings of Fact and Conclusions of Law* (dkt #137). On June 13, 2023, Condado filed its *Amended Pre-Trial Report* (dkt #139). An evidentiary hearing was held on June 15, 2023, as to Condado's motion to dismiss and the Debtor's opposition and regarding Debtor's response to the order to show cause (dkt #143). The June 15, 2023, Minutes refenced herein, summarize the testimonies of Mr. Francisco de Armas as Condado's witness to Condado and of Mr. Juan M. Barreto, the Debtor's president and owner.

The Court in its December 5, 2022, *Opinion and Order* discussed the Debtor's factual scenario citing in part the minutes of the hearing held on September 16, 2022 (dkt #34) as follows:

"[t]he factual allegations in Condado's motion to dismiss are substantially supported by the record, irrespective of the ultimate legal consequences. On August 16, 2022, the Debtor filed the instant third Chapter 12 bankruptcy petition. The history related in the motion to dismiss is summarized below.

On or around January 12, 2005, Banco Popular de Puerto Rico ("BPPR"), predecessor in interest of Condado, extended to the Debtor a credit facility in the amount of $1,850,000.00 (the "Loan"). Debtor's principals are guarantors of the loan. The loan matured in 2015.

On June 21, 2011, the Debtor filed its first Chapter 12 petition, Bankr. Case No. 11-05237-ESL, which was substantively consolidated with Bankr. Case No. 11-05236-ESL, filed by Juan M. Barreto Ginorio, one of the Debtor's guarantors. These previously consolidated cases were dismissed on January 16, 2018, the Debtor filed its second Chapter 12 petition (Case No. 18-073104-ESL). On April 22, 2021, the case was dismissed pursuant to 11 U.S.C. §1208(c)(1) for unreasonable delay prejudicial to creditors, and failure to timely file a confirmable plan under 11 U.S.C. §1208(c)(3). See Opinion and Order, 2021 Bankr. LEXIS 1075, 2021 WL 8200008 (Bankr. D.P.R. Apr. 22, 2021). The Opinion and Order was appealed to the Bankruptcy Appellate Panel for the First Circuit (BAP 1st Cir. No. 22-0017), which affirmed the dismissal through an Opinion and Order issued on April 21, 2022. See Vaqueria Las Martas, Inc. v. Condado 5, LLC (In re Vaqueria Las Martas, Inc.), 638 B.R. 482 (B.A.P. 1st Cir. 2022).

On May 28, 2021, Condado filed a Foreclosure Complaint with the PR Court of First Instance, Superior Court of Arecibo (the "PR Court of First Instance"), Case No. AR2021CV00693 (the "Foreclosure Case") against the Debtor, the Debtor's principal and co-guarantor (Mr. Juan Manuel Barreto Ginorio), his former spouse and co-guarantor (Ms. Maria Elena Hernandez Ruiz) and JM Dairy, Inc.

The Debtor's factual exposition is primarily based on conclusory allegations with no supporting documentation."

"'[t]he Court expressed concern as to pending motion to dismiss in light of the prior history of the debtor, particularly the litigious experience over the cash collateral dispute since the Debtor's first petition in 2011. The loan is fully matured, the scheduled secured claims far exceed the scheduled assets, and the claims filed show substantial indebtedness in spite of the time that has transpired. Therefore, the Debtors appear to face a challenge to show changed conditions and a real possibility of having a confirmed Chapter 12 plan. In the prior Chapter 12 petition (Case number 18-0734), the Court ruled in favor of the Debtor on the cash collateral issue based on the facts at the time; however, the case was dismissed, upon the Chapter 12 Trustee's request, for unreasonable delay and failure to present a confirmable Chapter 12 plan.'"

"The monthly operations report corresponding to the month of August 2022, filed on October 11, 2022 (dkt #42) shows a negative cash flow. The monthly operations report corresponding to the month of September 2022, filed on October 27, 2022 (dkt #48), shows a net cash flow of $771.32.

As of this date, six (6) proof of claims ("POC") have been filed, none of which has been objected. Thus, they are deemed allowed. 11 U.S.C. §502(a). These are: POC 1-1 by Condado 5, LLC, secured in the amount of $1,532,855.[7]8; POC 2-1 by Autoridad de Tierras de Puerto Rico (Puerto Rico Land Authority) in the amount of $18,912.00 for lease payment arrears; POC 3-1 by the Small Business Administration, secured in the amount of [$]106,236.40; POC 4-1 by LUMA Energy in the amount of $39,510.60, for past due electricity payments; POC 5-2 by the Internal Revenue Service (IRS) in the amount of $35,493.69, of which $7,581.78 is secured and $22,148.16 is claimed as a priority

pursuant to 11 U.S.C. §507(a); and POC 6-1 by the Puerto Rico Department of Labor, in the amount of $8,249.43, of which $1,746.28 is claimed as a priority. In its previous case, 18-07304, seven POC's were filed, essentially the same creditors as in the present case." (dkt #65, pgs. 2-4).

## *Issues*

The issues before the Court premised upon Condado's motion to dismiss are the following: (i) whether there is cause to dismiss pursuant to 11 U.S.C. §1208(c)(9) because there is a continuing loss to or diminution of the estate and no reasonable likelihood of reorganization; (ii) whether there is cause to dismiss based upon the Debtor's alleged lack of good faith in the filing of the bankruptcy petition under the totality of the circumstances**.** The last issue which was prompted by the Court in its *Opinion and Order* is whether there is cause to dismiss the case pursuant to section 1208(c)(5) and whether confirmation should be denied pursuant to sections 1225(a)(3, 6).

## **Position of the Parties**

### *Condado*

Condado argues that there is cause to dismiss the instant case because there is no reasonable likelihood of reorganization pursuant to 11 U.S.C. §1208(c)(9) based on the following: (i) both the Bankruptcy Court and the Bankruptcy Appellate Panel for the First Circuit found that "with the passage of time, the Debtor's livestock decreased by 50%, thus evidencing a marked diminution in the Debtor's assets. This in turn, caused raw milk production to decrease dramatically, making the feasibility of any plan even less likely. In re Vaqueria Las Martas, Inc., 638 B.R. at 498." The situation has not changed since the dismissal of the second bankruptcy case and the filing of the Foreclosure Case on May 28, 2021; (ii) the real property where the farming operation takes place is not part of the bankruptcy estate, thus once Condado forecloses on this property, the Debtor will not be able to operate its dairy farm; (iii) the Debtor is now in a more precarious financial condition compared to its previous bankruptcy filed on December 14, 2018

-8-

to the filing of the instant petition, since the Debtor has lost $672,333.84 in the value of its property and has increased its total liabilities in the amount of $370,110.79 (Case No. 18-07304, dkt #1, p. 9, ¶ 1c & 4; p. 2, ¶ 4); (iv) the Debtor has been generating less in gross revenue on a consistent basis since the year 2016 according to the Debtor's Statement of Financial Affairs for both the second and the instant case. Debtor's reported gross revenues are the following: (1) $316,445 for the year 2016; (2) $146,309 for the year 2017; (3) $123,218 for the year 2020; and (4) $125,250.00 for the year 2021 (Case No. 18-07304, dkt #26, p. 17, ¶ 1) (dkt #47, p. 8, ¶23; and (v) the loan matured on January 12, 2015, and has been past due and payable since then. This third bankruptcy case translates into continuing delay, increasing costs and attorney's fees and no authorization to use cash collateral which results in Debtor having no source of sustainable income.

Condado further argues that there is also cause to dismiss the instant case for bad faith and unusual delay and that the case constitutes a two-party dispute.  In the instant case, Debtor's bad faith in the third bankruptcy petition is evinced by the following: (i) the Debtor has a history of prior filings, and there is no significant change in circumstances or legitimate bankruptcy purpose; (ii) this Court in dismissing the Debtor's second bankruptcy case concluded the following:

> [h]as the Debtor been afforded a reasonable time to have a Chapter 12 plan confirmed? Definitely so, over 30 months is a reasonable time. Has the Debtor caused the delay? The answer is yes. Condado has asserted its rights. The court denied the prior motion to dismiss filed by Condado and declined to find that the milk was part of its collateral. However, the Debtor has not taken the necessary actions to present a confirmable Chapter 12 plan. Consequently, it has incurred in unreasonable delay prejudicial to creditors." In re Vaqueria Las Martas, Inc., 2021 Bankr. LEXIS 1075, at *19, 2021 WL 8200008, at *7 (Bankr. D.P.R. 2021).

(iii) the Debtor appealed this Court's dismissal order to the Bankruptcy Appellate Panel for the First Circuit which affirmed this Court's Opinion and Order and concluded that:

> "[t]he Debtor's attempt to blame the bankruptcy court for the subject delay does not alter the outcome of our analysis. The Debtor overlooks its own delay in filing the plan beyond the period prescribed by §1221, its failure to file an amended plan after the denial of confirmation or to seek an extension of time to do so, and the irregular filing of operating reports." Vaqueria Las Martas, Inc. v. Condado 5, LLC (In re Vaqueria Las Martas, Inc.), 638 B.R. 482, 498 (B.A.P. 1st Cir. 2022).

-9-

(iii) given the Debtor's previous bankruptcy patters, it is reasonable to conclude that this third bankruptcy petition is motivated by a desire to continue stalling, delaying and/or circumventing the Foreclosure Case than by a legitimate *bona fide* effort to reorganize; (iii) the loan has been past due and payable since January 12, 2015; (iv) there is a strong public policy against the "revolving door approach to bankruptcy" See <u>In re Mangual</u>, 2010 Bankr. LEXIS 4688, at *6 (Bankr. D.P.R. 2010) (courts "may dismiss with prejudice… to prevent a revolving door approach to bankruptcy"); (v) the passage of time leading up to this third bankruptcy case further elongates the Debtor's default on a loan that has been past due and payable for over [8] years and a half; and (vi) the Debtor's bad faith is targeted solely at Condado. Its pattern of conduct is aimed at thwarting Condado's Foreclosure Case and collection efforts and constitutes both bad faith and a two-party dispute. (dkt #139).

*Debtor*

The Debtor contends that its circumstances have changed significantly since the previous case due mostly to an increase in the number of milking cows which has resulted in an increase in the level of milk production. The Debtor asserts that: (i) it has more cows and thus additional production capacity. It had 45 milking cows at the time of the 2018 bankruptcy petition, and it had 61 milking cows at the time the present case was filed. It also has another 15 milking cows which are not currently producing milk, but which will cycle into production. The additional 34 cows should add approximately 50% more production in 30-60 days; (ii) according to Mr. Barreto's declaration (dkt #83-1), as of December 19, 2022, the Debtor had 59 cows in production, as compared to 39-42 in the year 2018; (ii) in the year 2018 the Debtor's biweekly milk production averaged under 6,000 liters; in the year 2022 it averaged $9,700 liters, an increase of over 50%. "Milk proceeds were under $4000/ 2 weeks in 2018; in 2022, they have averaged over $8000, more than double;" (iii) "[o]nce Debtor receives the milk proceeds, Debtor's revenue will be in excess of $20,000/ month (as shown on the filed MORs). That will increase by about

-10-

50% when the 34 new cows go into production; (iv) after a six month window of interest only payments to Condado, the amended plan provides for payments to Condado of $4,149 per month which may have to increase given that interest rates have risen since the plan was filed; (v) the Debtor has been unable to pay its principal, Mr. Juan Barreto its full salary nor the rent for the farm; and (vi) if it buys more cows and better feed, the Debtor will be able to generate the revenues shown on the budget attached to Exhibit B to Mr. Barreto's Declaration which would increase payments to unsecured creditors; and (vii) the value of the milk quotas has declined significantly, which reduces the value of Condado's security interest and frees up funds to pay other creditors. "This decline in asset value benefits the Debtor because that asset is fully encumbered and thus the value of Condado's secured claim that Debtor has to pay has declined, freeing up revenue (unencumbered by Condado's lien) for operations and to pay other creditors." (dkt #137, p. 4, ¶ 13).

The Debtor avers that there is no cause to dismiss the present bankruptcy case because: (i) there is no "cause" based on loss or diminution of assets since the case was filed, given that the Debtor is operating profitably once the payments to Condado/ the Court's escrow are factored into the Debtor's revenue (dkt a#137, p. 5, ¶ 4); (ii) Chapter 12 has no good faith filing requirement, unlike Chapter 13. There is no counterpart to 11 U.S.C. §1325(a)(7); (iii) Condado cannot show bad faith under any of the factors listed in In re Sullivan, 326 B.R. 204, 12 (B.A.P. 1st Cir. 2005), given the significant changes in circumstances. The Debtor contends that the Debtor's have a legitimate bankruptcy purpose which is to reorganize by using the funds that Condado has taken to pay its creditors. The Debtor avers that it filed for bankruptcy protection to stop diverting all funds to Condado and reorganize by paying Condado the value of its secured claim, and using the remaining funds to repay other creditors.

Regarding Condado's allegation that this is a two-party dispute, the Debtor argues that the claims filed are similar to the prior case, although some claims have been satisfied or reduced (including Condado). The only significant new claim is the COVID EIDL SBA loan, which is

payable over 30 years at 3.75% ($526 per month) by its terms. Moreover, the Debtor's schedules disclose that there are many substantial creditors.

As to the feasibility of the amended plan, the Debtor contends that: (i) it has filed a confirmable plan and there will be no unreasonable delay to the creditors. Any delay in the prior case was caused by Condado which continued to take the Debtor's funds without a valid lien on them as the Court has held in both cases; (ii) the market for milk quotas has declined since the previous bankruptcy which benefits the Debtor and its unsecured creditors. The decline in market value also diminishes Condado's security interest pursuant to 11 U.S.C. §506(a), and thus the Debtor would need to pay less to Condado to satisfy 11 U.S.C. §1225(a)(5); (iii) if Condado does not have a security interest in the milk produced by Debtor's cows or on the post-petition proceeds/ accounts receivables generated as has been previously held, then the plan is feasible and may be confirmed; and (iii) if Condado prevails on the cash collateral issue, the Debtor would not be able to continue operating while paying Condado $12,000 per month. Whether the plan is confirmable depends entirely on the outcome of this issue.

### Applicable Law & Analysis

*Dismissal for Cause pursuant to 11 U.S.C. §1208(c)(9), (5) and bad faith*

Section 1208(c) provides ten specific grounds that constitute cause for dismissal of a chapter 12 case. Notwithstanding, this list is not exhaustive, meaning there are other factors that may be considered as a cause for dismissal, such as lack of good faith in the filing of the petition. See Richard Levin & Henry J. Sommer, 8 Collier on Bankruptcy ¶ 1208.03 (16th ed. 2023). "Creditors bear the burden of establishing that cause exists to dismiss a chapter 12 case. 'Ultimately, [t]he decision to dismiss a Chapter 12 petition is within the sound discretion of the bankruptcy court." Vaqueria Las Martas, Inc. v. Condado 5, LLC (In re Vaqueria Las Martas, Inc.), 638 B.R. 482 (B.A.P. 1st Cir. 2022) (citations omitted).

-12-

"The provisions of section 1208(c) are similar to sections 1112(b) and 1307(c) which govern dismissal of chapter 11 and chapter 13 cases, respectively. Unlike those two sections, section 1208(c) only authorizes dismissal of the case." Richard Levin & Henry J. Sommer, 8 Collier on Bankruptcy ¶ 1208.03 (16th ed. 2023).

Section 1208(c) provides in pertinent part that, "[o]on request of a party in interest, and after notice and a hearing, the court may dismiss a case under this chapter for cause, including--

"(5) denial of confirmation of a plan under section 1225 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;

(9) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation." 11 U.S.C. §1208(c)(5), (9).

The Court will first address whether there is cause to dismiss pursuant to section 1208(c)(9) and will employ the standard used under section 1112(b)(4)(A), which provides cause for dismissal in a Chapter 11 for "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. §1112(b)(4)(A). This particular "cause" consists of two (2) requirements which must be satisfied. "First, it tests whether, after the commencement of the case, the debtor has suffered or continued to experience a negative cash flow, or, alternatively, declining asset values. Second, it tests whether there is any reasonable likelihood that the debtor, or some other party, will be able to stem the debtor's losses and place the debtor's enterprise back on a solid financial footing within a reasonable amount of time. Both tests must be satisfied in order for cause to exist under this subparagraph to dismiss or convert the case under section 1112(b)(4)(A)." Richard Levin & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.04[6][a] (16th ed. 2023). "Negative cash flow means that the estate's current liabilities are increasingly more rapidly than cash is available to pay as due. The result is dwindling liquidity, or illiquidity resulting in unpaid post-petition debts which usually constitute administrative

-13-

expenses that will take priority over prepetition claims" Id. at ¶1112.04[6][a][i]; See also In re Horned Dorset Primavera, 606 B.R. 117, 149 (Bankr. D.P.R. 2019). Likelihood of rehabilitation under section 1112(b)(4)(A) is different from a reorganization, because the focus is on "…whether the debtor's business prospects justify continuance of the reorganization effort" and whether the business operation may be reestablished, taking out the liquidation scenario which is an option under a plan of reorganization. Id. at ¶1112.04[6][a][ii].

*First Bankruptcy Petition*

The Debtor's first bankruptcy petition was administratively consolidated on July 11, 2011, with the bankruptcy petitions of the Debtor's principal, Juan Manuel Barreto Ginorio and JM Dairy, Inc. on (Lead Case No. 11-05236, dkt # 22).  Mr. Barreto's Schedule A- Real Property disclosed three real estate properties with a total current value of $1,540,000 and which were listed as follows: (i) the lot of land with a dairy farm in Hatillo with a value of $1,100,000 and the amount of Banco Popular de Puerto Rico's ("BPPR") claim was in the amount of $1,475,461 of which $1,100,000 was listed as secured and the remainder was an unsecured claim in the amount of $375,461; (ii) a residential house in Arecibo with a current value of $140,000; and (iii) a two story residential house located in Arecibo with a listed current value of $300,000 (Lead Case 11-05236, dkt #1, pgs. 12 & 17). On September 29, 2011, BPPR filed proof of claim #7-1 in the amount of $1,760, 240.03 for monies loaned which were secured by real estate, accounts receivables, milk quota and assignment of payments. This claim is for the loan that was originated on January 12, 2005, in the original amount of $1,850,000. On July 30, 2013, a *Transfer of Claim Other Than for Security* was filed informing that BPPR's claim had been transferred to PR Asset Portfolio 2013-1 International, LLC ("PRAPI") (Lead Case 11-05236, dkt #269). Thereafter, on October 11, 2017, a second *Transfer of Claim Other Than for Security* was filed informing PR

-14-

Asset Portfolio 2013-1 International LLC's claim had been transferred to Condado 5, LLC (Lead Case 11-05236, dkt #380). The Debtor did not file an objection to proof of claim number 7-1 in this case.

Vaqueria Las Martas, Inc.'s ("VLM") Schedule B- Personal Property included the milk quota with a current value of $1,232,700 (58,700 @ 21) and farm animals with a current value of $575,800 which were comprised of the following: (i) 173 cows @$2,200 ($380,600); (ii) 76 resting cows @ $2,000 ($167,200), (iii) 4 bulls @$1,000 ($4,000); (iv) 15 calves @ $1,600 ($24,000) (Lead Case 11-05237, dkt #1, p.12). VLM's Schedule D-Creditors Holding Secured Claims disclosed BPPR's secured claim in the amount of $1,475,461 (Lead Case 11-05237, dkt #1, p. 15). As part of the supporting documentation for the motion to use cash collateral, VLM's included an Exhibit of Summary Production from January 5, 2011, until May 11, 2011, which included the bi-weekly amount of production which ranged from 24,642 liters out of 58,700 liters or 41.98% to 29,063 out of 58,700 or 49.51% of the milk quota being produced (Lead Case 11-05237, dkt #6-1, p. 15).

The first monthly operating report for the consolidated Debtor for the short period of June 24, 2011, to July 11, 2011, disclosed that VLM produced as of June 24, 2011, 22,121 liters at 85 cents, which resulted in $18,803 and as of July 8, 2011, produced 22,819 liters at 85 cents which resulted in $19,396 of income, totaling $38,199 in income from the milk production. During this short period VLM received a reimbursement of $19,493 and operational expenses that totaled $40,566. The Debtor reported a net income for VLM of approximately $17,126 for this month. The court notes that the Debtor reports $0 for utilities expenses; $915 for gasoline and diesel expenses; $500 paid on the farm and land lease; $2,601 paid in wages; and $972 for personal salary (Case No. 11-05236, dkt #30, p. 3). The monthly operating report for the period of July 12 to August 15, 2011, disclosed total sales for VLM in the amount of $53,894 and total operating

-15-

costs in the amount of $59,566. The court notes that the Debtor reports $0 for utilities expense; $2,672 for gasoline and diesel expense; $3,500 paid on the farm and land lease; $3,876 paid in wages; and $873 for personal salary (Lead Case 11-05236, dkt #50-1, p. 1).

The monthly operating report for the consolidated Debtor for the month of July 2012, disclosed that VLM had 137 milking cows and it produced 16 liters per cow per day. At the time VLM was utilizing 54% of its milk quota. VLM produced as of July 6, 2012, 16,031 liters at 85 cents, which resulted in $13,626.06; as of July 20, 2012, it produced 30,711 liters at 85 cents which resulted in $26,155.35; and as of July 24, 2012, produced 10,042 liters at 85 cents which generated $8,535.92 of income, totaling $48,317.33 in income from the milk production. During this month VLM received a reimbursement of $6,550 from VTM, Inc. and operational expenses that totaled $61,275.22. The Debtor reported a net income for VLM of $108.11 for this month. The court notes that the Debtor reports $0 for utilities expenses; $1,792 for fuel for expense; $0 paid on the farm and land lease; $3,552 paid in wages; and $400 for personal salary (Case No. 11-05236, dkt #248-1, p. 1)

On August 30, 2012, the Debtor's Third Amended Chapter 12 Plan Dated July 10, 2012, was confirmed (Lead Case 11-05236, dkt #252). On August 3, 2016, the Debtor filed an Amended Post-Conformation Plan Dated July 10, 2016, which was confirmed on September 1, 2016 (Lead Case 11-05236, dkts # 348-1 & 350). The payment plan structure for PR Asset Portfolio 2013-1 International LLC's secured claim at a 4.75% interest rate was the following: (i) a monthly payment of $7,400 for 6 months; a monthly payment of $8,500 for 18 months; (iii) $9,000 monthly payment plan for three years; (iv) pursuant to the Court approved Stipulation (dkt #331), the Debtor shall cure the plan arrears with PRAPI by making consecutive monthly additional payments in the amount of $1,052.45 for ten (10) months commencing on April 2016; (v) a $13,000 monthly payment for 5 years; and (vi) a balloon payment on August 15, 2022 which may

-16-

1  be approximately $1,231,752.55. (Lead Case 11-05236, dkt #348-1, pgs. 12-13). On November

2  29, 2017, the Chapter 12 Trustee filed a *Motion to Dismiss* pursuant to 11 U.S.C. §1208(c)(6)

3  because the Debtors were in a material default with the terms of the confirmed plan equal to

4  $80,524.05 and sixty (60) months have already lapsed since the effective date of the plan; hence

5  the plan repayment period can no longer be extended in conformity with 11 U.S.C. §1222(c). The

6  case was dismissed on January 16, 2018 "upon the Chapter 12 Trustee's motion to dismiss for

7  "material default" with respect to the terms of the confirmed plan" (Lead Case 11-05236, dkts

8  #386 & 387).

9

10  *Second Bankruptcy Petition*

11  The Debtor's second bankruptcy petition was filed on December 14, 2018. In the second

12  bankruptcy petition filed by VLM, in its second amended Schedule A/B: Assets – Real and

13  Personal Property disclosed the milk quota with a net book value or recent cost of $704,400

14  (58,700 @ 12). The Debtor disclosed that the aggregate value of the collateral that secures

15  Condado's claim is $1,017,400. However, VLM has not found existence of a valid and unexpired

16  UCC over the milk quota. If such is the case, then the aggregate value of Condado's collateral

17  would be reduced by $704,400 to $313,000 secured by real properties of third-party guarantors

18  and not this Debtor (Case No. 18-07304, dkt #34, pgs. 3-4). The Debtor in its amended Schedule

19  A/B also disclosed that it had the following farm animals with a current value of $34,600 which

20  included the following: (i) 13 milking cows @$1,200 each ($15,600); (ii) 15 unbred cows

21  @$1,000 each ($15,000); (iii) 13 heifers @ $200 each ($2,600); (iv) 2 bulls @ $500 each

22  ($1,000); (v) 2 toretes @ $200 each ($400) (Case No. 18-07304, dkt #34, p. 4). The Debtor's

23  amended Schedule D-Creditors Holding Secured Claims disclosed Condado's secured claim in

24  the amount of $1,619,500.29 and the value of the collateral that supports this claim is in the

25  amount of $1,017,400 which consists of the milk quota of 58,700 litres @ $12 = $704,400 plus

26

27

-17-

27.4842 acres ("cuerdas") of a third party valued at $54,940 in addition to structures and equipment $53,060 plus residence valued at $205,000 (Lead Case 18-07304, dkt #26, p. 8).

On February 19, 2019, Condado filed proof of claim 6-1 in the amount of $1,626,362.59 and it listed the claim in its entirety as secured by mortgage notes, Deed and others. It disclosed that the annual interest rate at the time the petition was filed was 10 1/8 %. The Court notes that the secured creditor's claim in the first bankruptcy petition in the year 2011 was in the amount of $1,760,240.03 and more than seven (7) years thereafter, the secured creditor's claim has decreased by approximately $133,877. The Debtor's December 2018 monthly operating report was filed on April 15, 2019, and the same disclosed that the Debtor had 41 milking cows which averaged 9.06 liters per day per cow and that the Debtor was utilizing 8.86% of its milk quota. As of December 12, 2018, the Debtor produced 5,150 liters at 79.99 cents, which resulted in $4,119.97 and as of December 26, 2018, it produced 5,253 liters at 76.511 cents which resulted in $4,022.32. These monies ($8,142.29) were all received by Condado. During this period the operational expenses were in the amount of $5,468.59. During this period, the Debtor received $5,620 from a family member and $1,800 from JM Dairy, Inc. The Debtor reported a net income of $48.15 for this month. The court notes that the Debtor reports $0 for utilities expenses; $0 paid on the farm lease to Juan Manuel Barreto and $1,120 paid in wages (Lead Case 18-7304, dkt #67). The Debtor's December 2019 monthly operating report was filed on January 22, 2020, disclosed that the Debtor had 26 milking cows which averaged 12.82 liters per day per cow and that the Debtor was utilizing 7.95% of its milk quota. As of December 11, 2019, the Debtor produced 4,392 liters at 82.2 cents, which resulted in $3,610.22 and as of December 25, 2019, 4,940 liters at 82.20 cents were produced which resulted in $4,060.68. These monies ($7,670.88) were all received by Condado. The Debtor also disclosed income from the sale of hay for this month in the amount of $4,540.00. During this period the operational expenses were in the amount of

-18-

$5,122.63. The Debtor reported a net income of $49.84 for this month. The court notes that the Debtor reports $0 for utilities expenses; $0 paid on the farm lease to Juan Manuel Barreto and $600 paid in wages (Lead Case 18-7304, dkt #117, p. 1).

The Debtor's December 2020 monthly operating report filed on January 22, 2021, disclosed that the Debtor had 20 milking cows which averaged 11.94 liters per day per cow and that the Debtor was utilizing 5.7% of its milk quota. As of December 11, 2019, the Debtor produced 3,255 liters at 82.11 cents, which resulted in $2,672.71 and as of December 25, 2019, 3,433 liters at 82.09 cents were produced which resulted in $2,818.27. These monies ($5,490.98) were all received by Condado. The Debtor informed that he had been forced to dry cows because he had no use of cash collateral. The Debtor also disclosed income from the sale of hay for this month in the amount of $3700.00. During this period the operational expenses were in the amount of $3,792.21. The Debtor reported a net income of $103.12 for this month. The court notes that the Debtor reports $0 for utilities expenses; $0 paid on the farm lease to Juan Manuel Barreto and $800 paid in wages (Lead Case 18-7304, dkt #207, p. 1).

The Debtor's second bankruptcy petition was dismissed by an *Opinion and Order* rendered on April 22, 2021, in which the court granted Condado's motion to dismiss pursuant to section 1208(c)(1) for unreasonable delay prejudicial to creditors and Debtor's failure to file a timely confirmable plan after thirty (30) months under section 1208(c)(3) (Lead Case 18-07304, dkt #251). This Opinion and Order was appealed to the Bankruptcy Appellate Panel for the First Circuit which affirmed the same on April 21, 2022 (Lead Case 18-07304, dkts # 275 & 276). On July 28, 2022, the Order discharging the Chapter 12 Trustee and closing the estate was entered (Lead Case 18-07304, dkt #284).

-19-

*Third Bankruptcy Petition*

Less than three weeks after the closing of the estate in the previous case, the Debtor filed its third bankruptcy petition on August 16, 2022. On August 23, 2022, Condado filed its proof of claim number 1-1 as fully secured by the milk quota, accounts receivables per UCCs, in the amount of $1,532,855.78. It also disclosed that it had a fixed annual interest rate of 10 1/8 %.

The Debtor in its Schedule A/B: Assets- Real and Personal Property included the milk quota (58,700 liters every 2 weeks) as having a current value of $117,400. (dkt #18, p. 6). The Court notes that the Debtor did not include the value per quota, but by a simple math calculation, it would have to be 58,700 liters @ $2. The Debtor also disclosed that it had the following farm animals with a current value of $136,700 which included the following: (i) 61 milking cows @$1,500 each ($91,500); (ii) 5 unbred cows @$1,500 each ($7,500); (iii) 8 unbred calves @ $1,400 each ($11,200) (iv) 12 heifers Toreras @ $700 each ($8,400); (v) 15 Horras cows @ $1,100 each ($16,500); (vi) 3 bulls @ $400 each ($1,200); (vii) 2 toretes @ $200 each ($400) (dkt #18, p. 4). The Debtor's Schedule D- Creditors Holding Secured Claims listed the following claims: (i) Condado's claim on the Debtor's milk quota, accounts receivables in the amount of $1,532,855.78 which is secured by collateral that has a value of $117,400; (ii) SBA claim in the amount of $104,900 which is secured by personal property, excluding the milk quota and the titled vehicles, which is valued at $200,000 (dkt #18, p. 9).

The Debtor's August 2022 monthly operating report filed on October 11, 2022, disclosed that the Debtor had 59 milking cows which averaged 13 liters per day per cow and that the Debtor was utilizing 18.16% of its milk quota. The Debtor produced for Suiza 17,345 liters at 90.7 cents, which resulted in $15,731.92 and it produced for Indulac, 3,977 liters at 53.395 cents which resulted in $2,123.52 of income. The Debtor also disclosed income from the sale of culled cows and male calves in the amount of $1,380 and $2,025 for the sale of hay. Additional items which

-20-

were reported as income were the following: (i) NRCS roof and cover 50% advanced payment in the amount of $37,101, and (ii) money reimbursed by attorney LA Morales in the amount of $20,000.  During this period the operational expenses were in the amount of $61,104.94 but included $20,000 paid for professional fees. The Debtor reported a net income of $16.57 for this month. The court notes that the Debtor reports $0 for utilities expenses; $0 paid on the farm lease to Juan Manuel Barreto and $2,120 paid in wages; $13,000 was reported as an obligation paid to Condado through milk assignments; and $3,000 was paid to Juan I. Barreto for money loaned for feed (dkt #42, p. 12).

The Debtor's December 2022 monthly operating report filed on January 16, 2023, disclosed that the Debtor had 52 milking cows which averaged 13.99 liters per day per cow and that the Debtor was utilizing 17.35% of its milk quota. The Debtor produced for Suiza as of December 7, 2022, 9,443 liters at 90.7 cents, which resulted in $8,564.80; as of December 21, it produced 9,313 liters at 90.7 cents, which resulted in $8,446.89, as of December 28 it had milk sales which resulted in $4,223.45. The Debtor produced for Indulac as of December 7, 710 liters at 76.5896 cents which resulted in $543.78; and as of December 21, it produced 900 liters at 67.33 cents which generated $605.98 in income. The Debtor also had an income from selling hay in the amount of $6,000. During this period the operational expenses were in the amount of $10,166.53. The Debtor disclosed that the amount of $16,250 was deposited with the U.S. Clerk Bankruptcy for 5 weeks of milk assignments. The Debtor reported a net income of $849.51 for this month. The court notes that the Debtor reports $0 for utilities expenses; $0 paid on the farm lease to Juan Manuel Barreto and $1,610 paid in wages. (dkt #94, p. 16).

The Debtor's June 2023 monthly operating report filed on July 21, 2023, disclosed that the Debtor had 47 milking cows which averaged 12.62 liters per day per cow and that the Debtor was utilizing 14.14% of its milk quota. The Debtor produced for Suiza as of June 7, 2023, 6,616

liters at 90.7 cents, which resulted in $6,000.71; as of June 21, it produced 7,314 liters at 90.7 cents, which resulted in $6,633.80 as of June 28 it had milk sales which resulted in $3,316.90. The Debtor produced for Indulac as June 9, 2023, 986 liters at 84.697 cents which resulted in $835.11; and as of June 23, it produced 1,684 liters at 78.216 cents which generated $1,317.26 in income. The Debtor also had additional income from the following: (i) sale of culled cow, bull and male calf in the amount $1,530; (ii) sale of hay in the amount of $2,300; and (iii) sale of mixer in the amount of $5,000. During this period the operational expenses were in the amount of $23,368.38. The Debtor disclosed that the amount of $15,261.39 was deposited with the U.S. Clerk Bankruptcy for 5 weeks of milk assignments. The Debtor reported a net income of $45,426.49 for this month. It must be noted that in the prior month, the Debtor in its May 2023 Monthly Operating Report, disclosed that it had received $99,900 from Community Development Block Grant Disaster Recovery (CDBG-DR) Incentive funds. The Debtor also during this month purchased 37 heifers for a total cost of $44,770 (dkt # 142, p. 47). The court notes that for the month of June, the Debtor reports $0 for utilities expenses; $0 paid on the farm lease to Juan Manuel Barreto and $3,550 paid in wages. (dkt #145, p. 14).

The Court notes that the July 2023 monthly operating report only has four pages and is incomplete and missing information. (dkt #146).

### ***Financial analysis***

In the instant case, the Debtor has filed three (3) bankruptcy petitions. The first petition was filed on June 21, 2011. Approximately, twelve years and three months has elapsed since the Debtor's fist petition. The summation of the time the Debtor has been in bankruptcy during the course of these three petitions has been approximately eleven (11) years and three (3) months. The breakdown is as follows: (i) the first petition was filed on June 21, 2011, and dismissed on January

-22-

16, 2018 (approximately 6 years and 7 months); (ii) eleven months thereafter, the second petition was filed on December 14, 2018, and the same was dismissed on April 22, 2021. However, the Opinion and Order by which the case was dismissed was appealed and the Order Discharging Trustee was entered on July 28, 2022 (approximately 3 years and 7 months); and (iii) and less than three (3) weeks thereafter, the Debtor filed the instant petition on August 16, 2022 (approximately 1 year and 1 month). The Court notes that the secured creditor's claim in the first bankruptcy petition in the year 2011 was in the amount of $1,760,240.03 and eleven years thereafter from the filing date of the third petition, the secured creditor's claim has decreased by approximately $227,384, meaning that on average the claim has decreased yearly by $20,671.27 and a monthly amount of $1,722.61 for this claim which has been fully matured since January 12, 2015.

*Decline in the number of milking cows and utilization percentage of milk quota*

VLM in its first bankruptcy petition reported in its first monthly operating report of July 2011 which covered the period of June 24 to June 21, 2011, that it produced 44,940 liters at 85 cents which generated $38,199 in income. The July 2011 operating report did not disclose how many milking cows were being used by VLM. It provided the information for both VLM and JM Dairy, Inc. disclosing that there were in total 236 milking cows which averaged 15.48 liters per cow per day and that 57% of the milk quota was being used. During this bankruptcy petition the use of cash collateral was approved and the Debtor filed several stipulations with Banco Popular de Puerto Rico which was the secured creditor at the time. (Case No. 11-04236, dkts #19, 37, 39, 42, 61, 62, 67, 68, 91, 92, 93, 96, 123, 145, 146, 227, 231, 251). A year thereafter, VLM in its July 2012 operating report, disclosed that it had 137 milking cows which produced 16 liters per cow per day. At the time VLM was utilizing 54% of its milk quota. VLM produced 56,784 liters

-23-

at 85 cents for the month of July 2012 which resulted in $48,317.33 in income from the milk production.

During the Debtor's second bankruptcy petition, it reported in its December 2018 monthly operating report that it had 41 milking cows and that it was utilizing 8.86% of its milk quota which produced 10,403 liters that generated $8,142.29 in income. The December 2020 monthly operating report disclosed that it had 20 milking cows and that it was using 5.7% of its milk quota which produced 6,688 liters that generated $5,490.98.

The Debtor in the current bankruptcy petition reported in its August 2022 monthly operating report that it had 59 milking cows and that it was utilizing 18.16% of its milk quota which produced 21,322 liters that resulted in $17,854.52 of income. The Debtor's June 2023 monthly operating report disclosed that it had 47 milking cows and that it was utilizing 14.14% of its milk quota which produced 16,600 liters that generated $18,103.68 in income.

The Court notes that the Debtor's number of milking cows has decreased significantly (approximately 70%) from its first bankruptcy petition in which it had 137 milking cows in July 2012 to 41 milking cows in December 2018. This marked decrease in the number of milking cows resulted in the utilization of the milk quota to decrease from 54% to 8.86% and profits to dwindle from $48,317.33 to $8,142.29. In the current petition, the Debtor's number of milking cows has increased from its second bankruptcy petition from 20 milking cows to 47 milking cows. However, the number of milking cows and the milk quota utilization percentage is still well below the Debtor's first bankruptcy petition, even with the addition of the 37 heifers that were recently bought. Pursuant to the June 2023 monthly operating report, the Debtor had 47 milking cows and the milk quota utilization rate was 14.14%.

After a thorough analysis of the Debtor's dairy farm operations throughout a span of eleven (11) years and three bankruptcy proceedings, the Debtor has not been able to sustain its dairy

-24-

farm operations even in the best-case scenario which occurred during the first bankruptcy petition when it had 137 milking cows and a 54% milk quota utilization rate and the use of cash collateral from the secured creditor. The Debtor's farming operation does not generate enough income to pay for necessary operational expenses such as utilities, the rent for the use of the farmland to the Debtor's principal and a fixed salary for Debtor's principal. Therefore, if a plan is confirmed like in the first bankruptcy petition, the Debtor will not generate enough operational income to pay its operating expenses plus the monthly payments under the plan of reorganization. Moreover, in the instant case, Luma Energy/ Puerto Electric Power Authority ("PREPA") filed proof of claim number 4-1 in the amount of $39,510.61. In the second bankruptcy petition, PREPA filed proof of claim number 1-1 in the amount of $22,294.89 and in the first bankruptcy petition it filed proof of claim number 4-1 in the amount of $21,030.19. Most importantly, the Debtor's principal has been unable to pay its commercial loan to Condado which has been fully matured since July 12, 2015, given that there is a pending and on-going foreclosure proceeding in state court in which the Debtor's principal's farmland where the Debtor runs its dairy farm business may be foreclosed in the near future. The Court is cognizant that at this juncture, the Debtor has almost no source of funding, given that almost all the monies generated from the milk assignments have been consigned with the Court until the legal issue which is currently on appeal of whether Condado's security interest milk quota extends to the milk produced and sold to milk processing plants and to the post-petition proceeds. Notwithstanding, there is enough data over a span of eleven (11) years that evinces that in the first petition when the Debtor had access to the use of post-petition cash collateral and reached various stipulations with the secured creditor, had approximately 137 milking cows and a 54% milk quota utilization rate, the income it generated was insufficient to sustain both the farming operations and the payments under the plan. The Court is also aware that during the first bankruptcy petition, the repayment of the mortgage notes against the real

-25-

property were also being paid under the plan. Unfortunately, back then, the consolidated Debtor was unable to generate sufficient income to pay these expenses and currently there is a foreclosure proceeding against the Debtor's principal's farmland in which the Debtor carries its dairy farm business. "Most family farm reorganizations, to be successful, will involve the sale of unnecessary property, thereby scaling down their farm operations." In re Pretzer, 96 B.R. 790, 794 (Bankr. N.D. Ohio 1989). Such is not the case in the instant petition.

Decrease in the value of personal assets and increase in the liabilities

In addition, the Debtor's personal assets have consistently decreased from bankruptcy to bankruptcy proceeding. In the year 2011, the Debtor's assets pursuant to Schedule B: Personal Property totaled $1,994,100 and were comprised mostly of the following: (i) the milk quota of 58,700 @ $21 which resulted in a value of $1,232,700; (ii) the farm animals, which at the time the Debtor listed that it had 173 cows plus 76 resting cows amongst other farm animals with a value of $575,800; and (iii) farm equipment/machinery which was valued at $158,500 (Case No. 11-05237, dkt #1, pgs. 12-13). For the year 2018, the Debtor reported in its amended Schedule A/B: Assets- Real and Personal Property disclosed that the value of the summation of its assets was in the amount of $829,212.06 and constituted mostly of the following assets: (i) the milk quota of 58,700 @ $12 which resulted in a value of $704,400; (ii) the Debtor's farm animals, which at the time it listed that it had a total of 45 milking cows, (but 32 cows had a USDA lien), amongst other farm animals with a value of $34,600; and (iii) farm equipment/machinery valued at $86,000 (Lead Case 18-07304, dkt #34, pgs. 3-4). In the year 2022, the Debtor's assets pursuant to Schedule B: Personal Property totaled $275,986.22 and were comprised mostly of the following: (i) the milk quota of 58,700/ every 2 weeks valued at $117,400; (ii) the farm animals, which at the time the Debtor listed that it had 61 milking cows amongst other farm animals with

-26-

a value of $136,700; and (iii) farm equipment/machinery which was valued at $13,950 (Case No. 22-02380, dkt #18, pgs. 4-6).

On the other side of the balance sheet, the Debtor's liabilities increased with each bankruptcy petition. In the year 2011, the total liabilities were in the amount of $1,600,033 and comprised mostly of the secured claim with BPPR in the amount of $1,475,461 which originated from the 2004 commercial loan. It listed the same as being fully secured. However, the Debtor also listed the 2004 loan in the bankruptcy of Mr. Juan Manuel Barreto as being a secured debt for the same amount ($1,475,461) and the real estate property subject to the lien was listed with a value in the amount of $1,100,000 which left $375,461 as unsecured. The Debtor reported in schedules E and F total unsecured claims in the amount of $69,911 (Case No. 11-05237, dkt #1, pgs. 15, 17-18). For the year 2018, the Debtor's total liabilities were in the amount of $2,108,855 and were comprised mostly of the secured debt owed to Condado which was in the amount of $1,619,500.29 of which the Debtor disclosed that it was secured in the amount of $1,017,400 by the value of the milk quota at the time which was $1,017,400 (58,700 @ $12) plus the value of some acres and equipment with the remainder amount of $602,100 as the unsecured portion. The Debtor also reported $475,845 in Schedule E/F: Creditors Who Have Unsecured Claims (Case No.18-07304, dkt #26, p.8 & 13). In the year 2022, the Debtor reported total liabilities in the amount of $2,179,355.92 which were constituted mostly of Condado's debt in the amount of $1,532,855.78 of which the amount of $117,400 was listed as secured by the milk quota and accounts receivables and the remainder portion in the amount of $1,415,455.78. The Debtor also disclosed SBA PR District Office having a secured claim of $104,900. The Debtor also reported $541,600.14 in Schedule E/F: Creditors Who Have Unsecured Claims (dkt #18, pgs. 9 & 14).

The Court concludes that with each bankruptcy proceeding, the value of the milk quota has decreased substantially as disclosed in the Debtor's schedules due to the decline in the

-27-

price/value of the milk quotas throughout the years. It is also important to consider that Debtor's

reported gross income has decreased since its first bankruptcy petition, except for the year 2016.

The gross revenues reported by the Debtor are as follows: Year 2009: $640,297; Year 2010:

$674,578; Year 2011: $259,861.02 (Lead Case 11-05237, dkt #1, p. 22); Year 2016: $316,445;

Year 2017: $146,309; Year 2018: Unknown (Lead Case 18-07304, dkt #26, p. 17); Year 2020:

$123,218; Year 2021: $125,250; Year 2022: 01/01/22- 08/16/22: $112,589.01 (dkt #18, p. 17).

Feasibility pursuant to 11 U.S.C. §1225(a)(6)

As part of determining if there is cause to dismiss under §1208(c)(9), the court examines

the Debtor's amended plan to decide whether the same is feasible pursuant to section 1225(a)(6).

See In re Victorious, LLC, 545 B.R. 815, 825 (Bankr. D. Vt. 2016). Pursuant to section

1225(a)(6), the court must find that, "the debtor will be able to make plan payments under the

plan and to comply with the plan" as a prerequisite for plan confirmation. 11 U.S.C. §1225(a)(6).

The debtor has the burden of proving feasibility of a Chapter 12 plan. See In re Las Martas, 2022

Bankr. LEXIS 3427, *10 (Bankr. D.P.R. 2022). To determine plan feasibility, "'… the court must

ascertain the 'probability of actual performance of the provisions of the plan.' Under section

1225(a)(6), the feasibility of a debtor's plan is a factual determination." Mosbrucker v. United

States (In re Mosbrucker), 227 N.R. 434, 437 (B.A.P. 8th Cir. 1998) (Citations omitted). "To find

that a plan is feasible, "the court must be persuaded that 'it is probable, not merely possible or

hopeful, that the Debtors can actually pay the restructured debt and perform all obligations of the

plan.'" Keith's Tree Farms v. Grayson Nat'l Bank, 535 B.R. 647, 652 (W.D. Va. 2015); see In re

Honeyman, 201 B.R. 533, 537 (Bankr. D.N.D. 1996) (stating that a plan must be "based on

realistic and objective facts as opposed to visionary or overly optimistic projections."). "The court

must also consider the farm's earning power, capital structure, managerial efficiency, past

-28-

performance, and whether the same management will continue to operate the farm." In re Hughes, 2006 Bankr. LEXIS 2288, 2006 WL 2620438, *3 (Bankr. M.D.N.C. 2006).

As part of the feasibility test, the court needs to analyze the debtor's proposed plan payments based upon the debtor's projections of income and expenses and determine whether the debtor is likely to be able to make all the payments required by the plan. However, before reaching this step in the analysis, the court must first examine the debtor's projections to ensure that the same are based on the debtor's financial history. "The evidence relevant to a showing of feasibility will usually take the form of income and expense projections for the term of the plan. For most farming operations this will entail a monthly cash flow showing the timing of receipts and expenditures and indicating the debtor's ability to service the debtor's anticipated operating expenses and to make the required plan payments. The projections and expenses should be based on the debtor's past experience as supplemented by current market information. In analyzing the debtor's income projections, the court should examine whether they are consistent with the debtor's prepetition performance." Richard Levin & Henry J. Sommer 8 Collier on Bankruptcy ¶1225.02[5] (16th ed. 2023).

The Debtor's amended plan proposes to pay Condado's security in the milk quota based on the price of $5 per quart every two weeks which results in a value of $293,500 at an interest rate of 8.5%. The Court notes that pursuant to ORIL's Certification the sales price of the milk quota from the period of January 4, 2023, to May 24, 2023, ranged from $4 to $8. The Debtor's opted to value the quart at $5, which is near the low end of the price range (dkt #143, Exhibit 14). Moreover, pursuant to the Debtor's amended Chapter 12 plan dated January 10, 2023, it proposed to pay Condado $2078.96 for the first 6 months after the Effective Date and thereafter, a monthly payment of $4,224.09 for the next 96 months (dkt #93). This equates to a first yearly payment of $37,818.30 and then yearly payments thereafter in the amount of $50,869.08. These monthly

payments are just for the security interest of the milk quota, these monthly payments do not take into account the monthly payments that would be necessary to pay the mortgage note component of the commercial loan which is secured by the real estate where the business operation takes place, and which is currently undergoing foreclosure proceedings in state court. The Court understands that the real estate is owned by the Debtor's principal, but the reality is that the dairy farm operation cannot exist without the farmland, meaning that if the dairy farm operation will continue the mortgage note component of the real estate will need to be factored in. It is the Court's understanding that the monies that would pay for this secured debt would be from the Debtor's dairy farm operations and those of JM Dairy, Inc. as was the case in the first bankruptcy case. Moreover, Condado's commercial loan claim during the past 11 years has decreased by approximately $227,384, meaning that on average the debt has decreased on a yearly basis in the amount of $20,671.27 and monthly in the amount of $1,722.61 for this claim which has been fully matured since January 12, 2015. Based on Debtor's income history and the payments made towards Condado's debt, the Court finds that the amended plan is optimistic and not grounded in Debtor's financial reality for the past four years and nine months.

The Debtor's projections for the year 2023-2024 predict that there will be 88 milking cows and that the milk quota utilization rate will be 29.38% and for the year 2024-2025 it is forecasted that the Debtor will have 106 milking cows with a 35.39% milk quota utilization rate. The projected yearly income solely from milk sales for the year 2023-2024 is $376,696 ($31,391 average monthly) and a total annual income of $414,978.40 and for the year 2024-2025 the annual income solely from milk sales is estimated at $453,748 ($37,812 average monthly) and total income $499,718.40.  The Court finds that these income projections are optimistic and are not based on the Debtor's past performance. For example, in the Debtor's first bankruptcy case filed on June 21, 2011, it disclosed that it initially had 173 milking cows and 76 resting cows and that

-30-

its gross income as of June 21, 2011, was in the amount of $250,861.02 (which would equate to approximately $44,269.59 gross monthly income with a total of 249 cows. The Debtor in its December 2011 operating report disclosed that VLM had 110 milking cows which averaged 12.4 liters per cow per day and that it was producing on average 19,097 liters biweekly at 85 cents with a 32.53% utilization rate for the milk quota. The income derived from the milk sales was in the amount of $24,348. If the Debtor had produced 38,194 liters for the four weeks, at the milk quota utilization rate of 32.53%, its income from milk sales would have been $32,464.90 (38,194 liters x .85) (Case No. 11-05236, dkt #101, pgs. 2-3). The Debtor in its 2023-2024 projections has 88 milking cows that average 14 liters per cow and a milk quota utilization rate of 29.38% with an average monthly milk sales income of $31,391.33. Basically, the Debtor has the same income in the December 2011 with 22 less milking cows and using 3.14% less of the milk quota utilization rate. A difference of 22 cows less would amount to approximately $7,244.16 (14 liters/cow x 84 cents x 22 cows x 28 days) less in income. The Court notes that it has used the year 2011 in which the Debtor reported the highest income (average monthly income) while in bankruptcy. Notwithstanding, the Debtor's most recent gross income numbers are far below this number. Gross income for the year 2020 was $123,218; gross income for the year 2021 was in the amount of $125,250 and for the year 2022 gross income from 01/01/22-08/16/22 was in the amount of $112,589.01. The Debtor's actual August 2023 monthly operating report discloses that it has 46 milking cows and 63 dry cows (for a total of 109 cows) and that it is utilizing 15.10% of the milk quota which produces 8,866 liters biweekly that generated $15,229.37 for this month in milk sales income. The court notes that the August monthly income is below by half the amount of the average monthly projection of $31,391.

These projections also fail to consider an important component which is the monthly payment it would have to pay Condado for its secured mortgage lien on the farmland. The

-31-

Debtor's proposed solution is that, "[i]n the event a foreclosure is in fact ordered, Mr. Barreto or Ms. Hernandez could file their own bankruptcy cases, and retain possession of the real property at issue, so that would not in any way render a plan unfeasible" (dkt #137, p. 4, ¶14).  Given the Debtor's extensive history in bankruptcy, its plan to have the principals file for bankruptcy lacks foresight, since the Debtor's principals would have to formulate a plan of reorganization to repay Condado's mortgage note which they have been unable to do for the past twelve years, even at their peak when the milk quota utilization rate was at 54% and VLM had 137 milking cows. The Court concludes that the inability to repay Condado's mortgage note where the dairy farm operations take place forecloses any realistic probability of having a feasible plan of reorganization.

This is the Debtor's third bankruptcy petition, which was filed less than three weeks after the second bankruptcy case was closed, meaning that the Debtor has been almost continuously in bankruptcy for the past four (4) years and nine (9) months. The Debtor was unable to propose a timely confirmable plan pursuant to 11 U.S.C. §1208(c)(3) in its second bankruptcy proceeding and the case was dismissed. During these past four years and nine months that the Debtor has been in bankruptcy, its farming operations, despite recent optimistic projections, have barely improved. In fact, the data which this Court has thoroughly discussed evince that since the first bankruptcy petition the Debtor has been unable to sustain the dairy farm operations profitably or at least at a break-even point before consideration of debt service. The milk quota utilization rate has decreased significantly from the first bankruptcy (54%) which is the result of Debtor not having sufficient milking cows and enough cash flow to pay for the direct costs and operational expenses necessary to sustain the dairy farm operations. In the previous case, the Debtor was unable to use Condado's cash collateral because there was a legal issue as to whether Condado had a lien over Debtor's cash collateral. In the instant case, there is also a key legal issue as to

-32-

whether Condado's security interest milk quota extends to the milk produced and sold to milk

processing plants and to the post-petition proceeds which was appealed and a decision on the

same is pending. As discussed previously, the Debtor's financial situation has only worsened

since the first bankruptcy petition and second bankruptcy petition, not only because there has

been a decrease in the assets and an increase in liabilities, but most importantly because there are

on-going foreclosure proceedings against the farmland which the Debtor utilizes to run its dairy

farm operation. If the foreclosure proceedings are successful, there will be no farming operation.

The Court finds that there has been no substantial change in circumstances from the previous case

aside from increasing debts and decreasing collateral and the probability that the farmland will be

foreclosed by Condado. Moreover, there is no evidence in the historical financial performance of

the Debtor in which this court may rely on to determine that there is any reasonable likelihood

that this Debtor may be rehabilitated. The estate has continued to diminish for the past four (4)

years and nine (9) months and there is no hope of rehabilitation. The Debtors have consistently

demonstrated for the past eleven years (in bankruptcy) that they do not have a viable farming

operation sufficient to pay expenses and fund a plan and the value of the estate continues to

diminish with the passage of time (VLM personal assets) and its liabilities continue to increase.

There is also a consistent lack of payment to creditors. The Court concludes that in the instant

case, the Debtor does not operate a sustainable milk producing operation which can generate

enough monies to pay its operational expenses in addition to the plan payments that will need to

commence upon the effective date of the plan. The court finds that the Debtor failed to meet its

burden with respect to feasibility.

       The Court is mindful that the Debtor's principal has been in the milk industry since 1988.

However, the Debtor's financial condition has only worsened throughout the years. Condado's

debt has been fully matured since January 12, 2015. The Debtor may not continue to speculate

-33-

with Condado's money. Moreover, the courts in the administration of Chapter 12 cases "… should strive to preserve [sic] this equity balance between creditors' and debtor's rights." In re Pretzer, 96 B.R. at 794 (citing 132 Cong. Rec. §10575 supra, remarks of Sen. Thurmond).

Conclusion

For the reasons previously discussed, the Court finds that dismissal is appropriate in this case based on a continuing loss to or diminution of the Debtor's estate and the absence of reasonable likelihood of rehabilitation pursuant to 11 U.S.C. §1208(c)(9). The Court also finds that the proposed amended plan of reorganization is not feasible and therefore does not comply with section 1225(a)(6). The Court's analysis as to dismissal conclude at this juncture since one ground is sufficient to dismiss a debtor's case. See In re Powell, 2022 Bankr. LEXIS 2937, at *1 n.1 (Bankr. M.D. Pa. 2022) ("Because the [m]otion to [d]ismiss is decided on the issue of bad faith, it is unnecessary to address the grounds under §1208(c)(9); Vaqueria Las Martas, Inc. v. Condado 5, LLC (In re Vaqueria Las Martas, Inc), 638 B.R. 482, 499 (B.A.P. 1st Cir. 2022) ("Because one ground is sufficient for dismissal, our analysis ends here, with the conclusion that the bankruptcy court did not abuse its discretion in dismissing the Debtor's case under § 1208(c)(1) for unreasonable delay that was prejudicial to creditors. We decline to examine the second statutory ground for the Dismissal Order, § 1208(c)(3)").

Therefore, the case is hereby dismissed.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 29th day of September 2023.

Enrique S. Lamoutte
United States Bankruptcy Judge

-34-

IN THE UNITED STATES BANKRUPTCY COURT FOR

THE DISTRICT OF PUERTO RICO

IN RE:                                    CASE NO. 22-02380-ESL12

LAS MARTAS INC                            Chapter 12




                    Debtor                    FILED & ENTERED ON OCT/30/2023


ORDER DENYING RECONSIDERATION

        Debtor's request for reconsideration of the order dismissing the instant case (Docket #153) is hereby denied for lack of good cause.  The Court denies the Debtor's motion for reconsideration based on the reasons provided by Condado 5, LLC (docket #160).

        IT IS SO ORDERED.

        In San Juan, Puerto Rico, this 30 day of October, 2023.


                                          Enrique S. Lamoutte
                                          United States Bankruptcy Judge

101