**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE:<br><br>LAS MARTAS, INC.<br><br>Debtor. | CASE NO. 22-02380 (ESL)<br><br>CHAPTER 12 |

**REPLY TO RESPONSE TO MOTION FOR ENTRY OF ORDER TO STAY ANY PENDING MATTER CURRENTLY ON APPEAL UNDER THE DIVESTITURE RULE**
(Related ECF Nos. 197 and 203)

TO THE HONORABLE COURT:

COMES NOW Condado 5, LLC ("Condado") through the undersigned counsel, and respectfully states and prays as follows:

Factual and Procedural Background

1. On August 16, 2022, the Debtor filed the instant **third** Chapter 12 bankruptcy petition (ECF No. 1).

2. On August 17, 2022, Condado filed a *Motion to Prohibit Use of Cash Collateral and for Entry of Order Authorizing Condado to Seek and Collect Proceeds* (the "*Motion to Prohibit Use of Cash Collateral*") (ECF No. 9).

3. On August 29, 2022, the Debtor filed a *Response to Motion to Prohibit Use of Cash Collateral and for Entry of Order Authorizing Condado 5, LLC, to Seek and Collect Proceeds* (the "*Response*") (ECF No. 15), and on September 6, 2022, Condado filed a *Reply* thereto (ECF No. 25).

4. On September 1, 2022, Suiza Dairy, Inc. ("Suiza Dairy") filed *Complaint* (Adv. Proc. 22-00062, ECF No. 1) alleging that there is a competing interest between the Debtor and Condado over the funds generated from the Debtor's sale of raw milk to Suiza.  See *Complaint*, ECF No. 1, pp. 6-11, ¶¶ 1-21.

5. On September 16, 2022, the Court held a hearing to consider the *Motion to Prohibit Use of Cash Collateral*, the Debtor's *Opposition* and Condado's *Reply*.  At the end of the hearing, the Court ordered the Chapter 12 Trustee (the "Trustee") to file his position to the *Motion to Prohibit Use of Cash Collateral*.  See *Minutes of Proceeding*, (ECF No. 34, p. 7).

6. On September 23, 2022, the Trustee filed his *Position and Memorandum of Law in Support Thereof* to the *Motion to Prohibit Use of Cash Collateral* (the "*Trustee's Position*", ECF No. 35), and on October 14, 2022, Condado filed a *Response* thereto (ECF No. 46).

7. On February 15, 2023, the Court issued an *Opinion and Order* (ECF No. 102) that states as follows:

> The record clearly shows that in the Debtor's first bankruptcy case the critical factor was the repayment terms of the secured loan with Banco Popular de Puerto Rico, Condado's predecessor in interest. The travel of the first case shows the numerous joint stipulations filed by and between the Debtor and Banco Popular de Puerto Rico over the use of cash collateral, which were ultimately incorporated into the plan confirmed in August 2012 and the postconfirmation amended plan dated August 3, 2016, confirmed in September 2016. However, the debtor's first case, 11-05237, filed under the name of Vaquería Las Martas, Inc., was consolidated in July 2011, with case number 11-05236 filed by Juan Manuel Barreto Ginorio, and case number 11-05239 filed by JM Dairy, Inc., all chapter 12 cases with docket entries made in case 11-05236 for being the first filed case of the three. The confirmed plan was a consolidated plan of all three debtors. The secured debt with Banco Popular de Puerto Rico, now Condado, was guaranteed by collateral of each of the three consolidated Chapter 12 debtors. Thus, the facts are different from the instant case, wherein only Las Martas, Inc. (Vaquería Las Martas, Inc.) is the only debtor, and the collateral is only the milk quota. This difference is of critical importance as the court is conscious that court approved stipulations must be observed.
>
> The court has thoroughly considered the position and argument of the debtor, Condado and the Chapter 13 trustee. The court agrees with the position and legal basis espoused by the Chapter 13 trustee. Since the same has been detailed above, a repetition is not necessary and is incorporated as the court's own, in the following conclusions: considering the facts leading to the stipulations and the confirmed plans in the first case and that the court's decision in the second case is the later, the court finds that the doctrine of res judicata is not applicable; Condado's perfected pre-petition security agreement over debtor's milk quota is limited to the milk quota, it does not extend to its proceeds or products; Condado's collateral is limited to the milk quota but does not include proceeds, products, or profits of the milk quota; and, Condado's perfected pre-petition security agreement over debtor's account receivables does not extend to post-petition account receivables as the same became ineffective by the effect of § 552(a).
>
> […]
>
> In view of the foregoing, the court denies Condado's motion for prohibition to use cash collateral resulting from the post-petition sale of milk.

*Opinion and Order*, ECF No. 102, pp. 15-16, lines 9-11.

8. That same day, February 15, 2023, Condado filed a *Notice of Appeal* (ECF No. 103) from such *Opinion and Order*. The appeal is currently pending with the U.S. District Court

for the District of Puerto Rico in the case styled Condado 5 LLC v. Las Martas, Inc. *et al.*, Civil Case No. 23-01074 (RAM) (the "Appeal" or "Condado's Appeal").

9. On September 29, 2023, the Bankruptcy Court entered an *Opinion and Order* dismissing the instant case (ECF No. 148), which the Debtor appealed to the BAP on 11/9/23 (ECF No. 168).

10. Following the dismissal of the case, on September 29, 2023, Condado filed a *Motion to Withdraw Consigned Funds* (ECF No. 149).

11. On October 13, 2023, the Debtor filed a *Response to Motion to Withdraw Consigned Funds and Cross Motion to Disburse Funds to Debtor* (the "Opposition to Motion to Withdraw Consigned Funds", ECF No. 154).

12. On November 6, 2023, Condado filed a *Reply to Opposition to Motion to Withdraw Consigned Funds* (ECF No. 167).

13. On April 5, 2024, the Court entered an *Order* "declin[ing] to exercise jurisdiction over the pending matters until the same are decided by the appellate courts" (ECF No. 188).

14. On March 5, 2025, the BAP entered an *Opinion and Order* (ECF No. 190) reversing vacating the *Opinion and Order Dismissing Case* "[b]ecause § 1208(c)(9) is phrased in the conjunctive and the court's order expressly granted Condado's motion to dismiss based on that provision, we conclude here. Our determination of this narrow issue does not reach the court's assessment of the second prong of § 1208(c)(9) or any other basis for dismissal."

15. On June 9, 2025, this Court held a Status Conference wherein the Court ordered as follows:

> 1. Condado shall immediately cease collecting the Debtor's proceeds from the sale of milk.
> 2. Condado shall submit to the Debtor and the Trustee a detail of all funds received from milk proceeds of the Debtor since the filing of the petition within thirty (30) days.
> 3. The Debtor shall file a summary of its monthly operations since the dismissal of the case through May 2025 within thirty (30) days. Monthly reports of operations shall be filed thereafter in the ordinary course.
> 4. The Debtor and Condado shall file a Joint Report on the distribution of the consigned funds within thirty (30) days.
> 5. The Debtor shall file an amended Chapter 12 plan within ninety (90) days from the filing of the Joint Report.

*Minutes of Proceeding*, ECF No. 196, pp. 2-3.

16. On June 11, 2025, Condado filed a *Motion for Entry of Order to Stay Any Pending Matter Currently on Appeal Under the Divestiture Rule* (the "*Motion to Stay*", ECF No. 197) because any adjudication or distribution of the consigned funds would directly interfere with the jurisdiction of the Appellate Court (i.e., the District Court) by effectively deciding matters on the very issue on appeal. To avoid repetition, the *Motion to Stay* is hereby incorporated by reference as if fully transcribed herein.

17. On June 25, 2025, the Debtor filed a *Response* to the *Motion to Stay* (the "*Response*", ECF No. 203).

Applicable Law and Discussion

A. *Condado does not seek a stay under Fed. R. Bankr. P. 8007.*

18. The Debtor contends that Condado's *Motion to Stay* is "procedurally defective" because it does not cite Federal Rule of Bankruptcy Procedure 8007 or discuss the four-factor test for a stay pending appeal. The Debtor also asserts that Condado's *Motion to Stay* must be denied because Condado "makes no effort to show any likelihood of success on the merits" of its appeal, and did not address the other stay factors such as harm to others or the public interest (*Response*, ECF No. 203, p. 2-3, ¶¶ 3-5).

19. This argument misses the mark. Condado's *Motion to Stay* is not a traditional motion for a stay pending appeal under Fed. R. Bankr. P. 8007, but rather a request for enforcement of the well-established divestiture rule as a *jurisdictional limitation*, consistent with the type of orders this Court has previously issued in cases where an appeal is pending.

20. By its terms, Fed. R. Bankr. P. 8007 governs motions to stay a judgment or order of the bankruptcy court pending appeal (among other relief), and requires the court to consider equitable factors similar to a preliminary injunction. Here, however, Condado is not asking the Bankruptcy Court to stay the instant case. Instead, Condado moves the Court to recognize that it *lacks jurisdiction* under the divestiture rule to proceed with distribution of the very asset in dispute while that dispute is on appeal.

21. The divestiture rule operates as an *independent limitation* on lower court action. See Mission Prod. Holdings, Inc. v. Schleicher & Stebbins Hotels, L.L.C. (In re Old Cold, LLC), 602 B.R. 798, 822 (B.A.P. 1st Cir. 2019) aff'd 976 F.3d 107, 116–17 (1st Cir. 2020). Condado is invoking such jurisdictional rule by way of a proper motion alerting the Court to the jurisdictional issue. The absence of a citation to Rule 8007 is not a defect where the relief requested does not depend on Rule 8007's discretionary stay standard but on a jurisdictional mandate of appellate divestiture.

22. The fundamental principle of divestiture is *jurisdictional in nature*, not an equitable remedy subject to balancing tests. Thus, where it applies, the lower court simply cannot act, regardless of whether a likelihood of success or irreparable harm is shown. See *e.g.* Instituto Medico del Norte Inc. v. Condado 7, LLC *et* al., Adv. Proc. No. 21-00046(ESL), ECF No. 235. The considerations relevant under Rule 8007 do not govern a divestiture rule analysis.

23. The Debtor cites cases describing a stay pending appeal as an "extraordinary remedy" requiring all four prongs to be satisfied (*Response*, ECF No. 203, p. 2, ¶ 4). However, those cases (and Rule 8007 itself) assume that the court has jurisdiction to grant or deny a stay, and thus may exercise its discretion based on the merits and equities. Here, by contrast, Condado's position is that the Court has no jurisdiction to order distribution of the funds in the first place because that same issue is currently under the review of the Appellate Court in the Appeal.

24. Importantly, Condado is not asking this Court to enjoin unrelated aspects of the Chapter 12 case or to pause the Debtor's reorganization efforts beyond what directly affects the consigned funds (and any further milk sale proceeds) at issue. The *Motion to Stay* makes clear that the relief requested is narrowly tailored to the matters involved in the appeal (*Motion to Stay*, ECF No. 197, p. 8, ¶ 36).

25. Condado does not seek to halt the case in its entirety or interfere with case administration, except to the minimum extent necessary to protect the Appellate Court's jurisdiction over the matters on appeal, including the disputed funds. By invoking the divestiture rule, Condado asks the Court to refrain only from taking actions that would effectively allocate or

assume an outcome regarding the consigned funds and any further milk sale proceeds before the appeal is decided.

26. Granting Condado's *Motion* would support the Appellate Process by ensuring that the issue on Appeal (the validity of Condado's lien and entitlement to the funds) remains intact for adjudication, without any party gaining an improper advantage from interim lower court action.

27. In short, Condado's *Motion to Stay* is procedurally proper as a mechanism to enforce the jurisdictional limitation imposed by the pending appeal. The Court should reject the Debtor's invitation to treat the Motion as a defective Rule 8007 request, and instead address the substantive question of whether the divestiture rule applies.

B. *Distributing the Consigned Funds would be an irreversible allocation of the very property and issue in controversy on Appeal.*

28. The Debtor argues that the divestiture rule "does not divest the district court of all authority", and that this Court may still enforce its judgment despite the Appeal. To support this, the Debtor invokes the distinction some courts draw between acts that "enforce" the judgment versus those that "expand upon or alter" it. *Response*, ECF No. 203, p. 3-4, ¶¶ 6-7.

29. That general principle is not in dispute. What it means, however, is that a lower court may carry out the *ministerial or implementational aspects of a* decision that are not themselves at issue on appeal, *but it may not make new decisions or take actions that effectively decide the appealed issue in a different way*. See In re G-I Holdings, Inc., 568 B.R. 731, 764 (Bankr. D.N.J. 2017) (divestiture rule prevents lower courts from interfering with the appellate process by taking actions that tamper with the appealed order or decide contested issues identical to those on appeal); In re Sabine Oil & Gas Corp., 548 B.R. 674, 679 (Bankr. S.D.N.Y. 2016) (the divestiture rule applies to bankruptcy court orders but allows the lower court to enforce or implement the appealed order *without disrupting the appellate process*); In re Prudential Lines, Inc., 170 B.R. 222, 243-44 (S.D.N.Y. 1994); In re Fletcher, 176 B.R. 445, 446 n.1 (Bankr. W.D. Mich. 1995) (rendering a written opinion after a party filed a notice of appeal is permissible as an aid to the appellate courts review).

30. The Debtor's reliance on this distinction is misplaced in the context of our case. Distributing the Consigned Funds to the Debtor is not a simple, ministerial enforcement of an unstayed judgment, *it is an irreversible allocation of the very property in controversy*.

31. Here the act of distribution would resolve who gets the funds before the appellate court resolves the question of who is entitled to the funds. Far from being a mere "enforcement" step, such distribution would "expand upon or alter" the effect of the Court's prior order by prematurely cementing its outcome.

32. Indeed, if the District Court ultimately reverses or modifies this Court's ruling regarding Condado's lien, undoing a distribution made in the interim could prove complex and/or impossible. The funds may be spent or disbursed to various parties, and the estate's resources could be depleted. This scenario exemplifies why the divestiture rule exists: to prevent a lower court from taking actions that might give rise to "confusion or inefficiency" or that could "effectively circumvent the appeal process" by nullifying the appellate court's ability to grant meaningful relief. See Instituto Medico del Norte Inc. v. Condado 7, LLC *et* al., Case No. 21-ap-00046(ESL), ECF No. 235; citing In re Old Cold, LLC, 602 at 822.

## Prayer for Relief

WHEREFORE, Condado respectfully requests that the Court enter granting the *Motion to Stay* (ECF No. 197), deny the Debtor's *Response* (ECF No. 203), and enter an order: (1) applying the divestiture rule, stay the distribution of the Consigned Funds and/or any matter predicated and/or related to the issues on Condado's Appeal; (2) requiring Vaquería Tres Monjitas, Inc. to immediately deposit (consign) all milk sale proceeds currently withheld or redirected into the registry of the Bankruptcy Court; (3) ordering Vaquería Tres Monjitas, Inc to continue depositing any further milk sale proceeds with the Court until further order; and (4) granting such other relief as is just and proper under the circumstances.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 1st day of July 2025.

<u>Certificate of Service</u>

We hereby certify that on this same date, we electronically filed the foregoing with the Clerk of the Court using the Next Gen CM/ECF system which will send notification of such filing to all Next Gen CM/ECF participants in this case, including the Debtor's counsel, the Chapter 12 Trustee, the U.S. Trustee for Region 21, and all parties that requested notice.  Motions and orders processed through CM/ECF are "presumed to be served on the same date of the electronic filing". <u>P.R. Elec. Power Auth. v. Vitol, Inc.</u>, 298 F.R.D. 23, 26 (D.P.R.2014).

San Juan, PR
July 1, 2025

**Ferraiuoli** LLC

Attorneys for Condado
American International Plaza
250 Muñoz Rivera Avenue
6th Floor
San Juan, PR 00918
PO Box 195168
San Juan, PR 00919-5168
Telephone: 787.766.7000
Facsimile: 787.766.7001

*/s/Gustavo A. Chico-Barris*
GUSTAVO A. CHICO-BARRIS
USDC-PR No. 224205
gchico@ferraiuoli.com

*/s/Tomás F. Blanco-Pérez*
TOMAS F. BLANCO-PEREZ
USDC-PR No. 304910
tblanco@ferraiuoli.com