EXHIBIT V

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**CENTRO JUDICIAL DE ARECIBO**
**SALA SUPERIOR DE ARECIBO**

| | |
|---|---|
| CONDADO 5 LLC<br>**Demandante**<br>**v.**<br><br>LAS MARTAS INC., JUAN MANUEL BARRERO GINORIO t/c/c JUAN M. BARRETO GINORIO, MARIA ELENA HERNANDEZ RUIZ t/c/c MARIA E. HERNANDEZ RUIZ Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA ENTRE ELLOS Y LOS ESTADOS UNIDOS DE AMERICA<br>**Demandados** | **CIVIL NUM.:AR2021CV00693**<br>**SALA 403**<br><br>**SOBRE: COBRO DE DINERO Y EJECUCION DE HIPOTECAS** |

**MOCION DE DESESTIMACION**

AL HONORABLE TRIBUNAL:

Comparece la Parte Demandada, María Elena Hernández Ruiz, (en adelante "Sra. María Hernández") y sin someterse a la jurisdicción de Honorable Tribunal, ante la inexistencia de una causa de acción legal en su contra presenta esta Moción de Desestimación por los fundamentos que se exponen y se alegan a continuación:

## I. Introducción

El presente caso envuelve un cobro de dinero y una ejecución de hipotecas por un préstamo (con numero 219062) que realizó el agricultor y empresario, el Sr. Juan Manuel Barreto Ginorio, (en adelante "Sr. Juan Barreto") y como parte de las operaciones de su empresa, Las Martas Inc., (en adelante "Las Martas"). El 12 de enero de 2005, Las Martas como deudora, el Sr. Juan Barreto y nuestra representada la Sra. María Hernández, por tener constituida una Sociedad Legal de Gananciales entre sí, suscribieron un Contrato de Préstamo, como garantizadores

solidarios, autenticado bajo afidávit número 28,491 del Notario Público Francisco J. Arraiza Donate. Mediante dicho Contrato de Préstamo se le concedió un préstamo a término por la suma principal de $1,850,000.00. Copia fiel y exacta del Préstamo I se hace formar parte de este escrito como **Anejo I.**

El Sr. Juan Barreto y la Sra. María Hernández contrajeron matrimonio el 14 de julio de 1989, bajo el régimen de Sociedad Legal de Gananciales. El 6 de abril de 2016, Tribunal de Primera Instancia Sala Superior de Arecibo, disolvió el matrimonio mediante una Sentencia.[1] Asimismo, mediante dicha Sentencia, el Sr. Juan Barreto y la Sra. María Hernández acordaron que la segunda cedió a favor del Sr. Manuel Barreto todos los activos, partes del caudal de la Sociedad Legal de Gananciales. De igual modo, el Sr. Juan Barreto asumió las obligaciones adquiridas en matrimonio y reconoció que este era el único responsable de las deudas y obligaciones que fueron adquiridas durante el matrimonio. Cabe destacar, que el Sr. Juan Barreto liberó a nuestra representada, la Sra. María Hernández de toda responsabilidad, incluyendo en este acuerdo el Contrato de Préstamo, objeto del caso de epígrafe. Esta Sentencia, se notificó al Banco Popular de Puerto Rico, (en adelante, "Banco Popular". Copia fiel y exacta de la sentencia se hace formar parte de este escrito como **Anejo II.**

El mencionado préstamo esta evidenciado por un pagaré que se emitió el 12 de enero de 2005, y se suscribió por el Sr. Juan Barreto y la Sra. María Hernández a favor de Banco Popular, o su orden endosado a favor de PR Asset Portfolio 2013-1 International LLC, posteriormente endosado a favor de Condado, por la suma principal de $1,850,000.00.

[1] El matrimonio fue disuelto por la causal de consentimiento mutuo.

El Sr. Juan Barreto y nuestra representada la Sra. María Hernández otorgaron como colateral y para asegurar el pago y cumplimiento puntual de sus obligaciones para el Préstamo en cuestión, y toda obligación presente y futura de las Martas, para con el Banco Popular, ahora Condado 5 LLC (en adelante, "Condado"), en carácter prendario unos pagares hipotecarios. Es necesario hacer constar que supuestamente Condado está en posesión de dichos pagares, en virtud de un Acuerdo de Gravamen Mobiliario, suscrito el 12 de enero de 2005 y autenticado mediante afidávit 28,484, por el Notario Público Francisco J. Arraiza Donate. Copia de Prenda y los pagarés antes mencionados se hacen formar parte de este escrito como **Anejo III.**

Así las cosas, Condado alegó que las partes incumplieron sus obligaciones de pago, del Préstamo en controversia. Además, alegó que estas obligaciones están vencidas, son líquidas y exigibles. Por lo cual, sostuvo que la deuda asciende a una suma no menor de $1,215,536.60, lo cual se compone de: (i) $1,202,818.82 por concepto de principal; (ii) $12,744.78 por concepto de intereses acumulados y no pagados, y afirmó que los intereses siguen acumulándose a razón de $142.00 por día.

## II. La Moción de Desestimación

Una persona contra quien se haya presentado una reclamación judicial puede solicitar su desestimación cuando de la faz de las alegaciones de la demanda surja que alguna defensa afirmativa puede derrotar la pretensión del demandante. Véase: Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2; Trans-Oceanic Life Ins. v. Oracle Corp., 184 DPR 689, 701 (2012). La Regla 10.2 de Procedimiento Civil, *supra*, establece seis fundamentos que una

parte puede utilizar para solicitar que se desestime la reclamación presentada en su contra. R. Hernández Colón, Derecho Procesal Civil, 5ta ed. Puerto Rico, Ed. Lexis Nexis, 2010, pág. 256.

La Regla 10.2, en su parte pertinente a esta moción, reza como sigue:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:
> 1) Falta de jurisdicción sobre la materia.
> 2) Falta de jurisdicción sobre la persona.
> 3) Insuficiencia del emplazamiento.
> 4) Insuficiencia del diligenciamiento del emplazamiento.
> **5) Dejar de exponer una reclamación que justifique la concesión de un remedio.**
> 6) Dejar de acumular una parte indispensable. [....]
> Regla 10.2 de Procedimiento Civil, *supra*. (Énfasis Nuestro).

Como es de notar, uno de los fundamentos para solicitar que se desestime una demanda es cuando la misma deja de "exponer una reclamación que justifique la concesión de un remedio". Procede la desestimación de la reclamación judicial cuando surja de los hechos bien alegados en la demanda que la parte demandante no tiene derecho a remedio alguno por cualquiera de los motivos en ella expuestos. *Asoc. De Periodistas v. Rivera Schatz*, 180 DPR 920, 935 (2011); *El Día Inc. vs. Municipio de Bayamón*, 187 DPR 811, 820-821 (2013); y *Torres, Torres v. Torres et al.*, 179 DPR 481, 510 (2010). Así también, nuestra más alta curia decidió que la demanda debe ser desestimada cuando se desprende con toda certeza que el demandante no tiene derecho alguno bajo cualquier estado de hechos que puedan ser probados en apoyo a su reclamación. *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497, 505 (1994).

Así las cosas, la norma reiterada al presente es que la procedencia de una moción de desestimación se da cuando de forma certera el demandante no tiene derecho a remedio alguno bajo

cualquier estado de derecho que se pudiese probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor. *Rivera San Feliz v. Junta de Directores*, 193 DPR 38, 49 (2015). De modo que, tienen que presumirse como aceptados los hechos bien alegados en la demanda. J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, T. II, 2da ed., Publicaciones JTS, 2011, pág. 530; *Unisys v. Ramallo Brothers*, 128 D.P.R. 842, 858 (1991); *Granados v. Rodríguez Estrada I*, 124 D.P.R. 1 1989); Romero Arroyo v. E.L.A., 127 D.P.R. 724 (1991). Es decir, a los efectos de considerar esta moción "no se ponen en duda los hechos aseverados porque se ataca por un vicio intrínseco de la demanda o del proceso seguido". R. Hernández Colón, Manual de Derecho Procesal Civil, supra a la pág. 179.

El Tribunal Supremo de Puerto Rico, además, ha acentuado que las alegaciones de la demanda se examinarán liberalmente y de la manera más favorable al demandante. Únicamente se desestimará la acción si el promovente no tiene derecho a remedio alguno bajo cualesquiera hechos que pueda probar en juicio. Roldán v. Lutrón, 2000 TSPR 121. Granados v. Rodríguez Estrada I, supra; González Camacho v. Santos Cruz, 124 D.P.R. 396 (1989).

Por otra parte, nuestro ordenamiento jurídico establece en el artículo 398 del Nuevo Código Civil de PR que los cónyuges tienen los mismos derechos y obligaciones en el matrimonio Art. 398 del Código Civil de Puerto Rico, 31 L.P.R.A. § 665. Además, el artículo 400 del Nuevo Código Civil de PR nos menciona que los cónyuges "deben actuar siempre en interés de la familia y mantenerse mutuamente informados del estado de los asuntos que pueden afectar el bienestar y la estabilidad personal y económica de la pareja y del grupo familiar" Art. 400 del Código Civil de Puerto Rico, 31 L.P.R.A. § 6653.

Es de conocimiento general que la disolución del matrimonio puede realizarse mediante el divorcio. Nuestro Nuevo Código Civil, en su artículo 423 establece que la disolución del matrimonio por divorcio puede declararse mediante sentencia judicial o por escritura pública Art. 423 del Código Civil de Puerto 31 L.P.R.A. § 6761. El artículo 425 del Nuevo Código Civil nos menciona que el divorcio puede solicitarse al tribunal mediante la presentación de una petición conjunta de divorcio por consentimiento Art. 425 del Código Civil de Puerto Rico, 31 L.P.R.A. § 6772. De manera que, para que el tribunal admita la petición conjunta, se exige que esta se presente acompañada del modo en que han de adjudicarse los activos y pasivos gananciales o regular las relaciones económicas de los excónyuges, entre otras Art. 429 del Código Civil de Puerto Rico,31 L.P.R.A. § 6776.

El artículo 455 del Nuevo Código Penal establece que "desde el día en que se presente la petición o demanda de divorcio, ningún cónyuge puede, sin el consentimiento del otro o sin la autorización judicial previa, gravar, enajenar o disponer de los bienes comunes. Además, indica que "la obligación asumida por un cónyuge en contravención de lo dispuesto en este artículo no obliga al otro cónyuge ni puede hacerse efectiva contra los bienes comunes del matrimonio" Art. 455, Código Civil de Puerto Rico,31 L.P.R.A. § 6802.

El artículo 527 del Código Civil de PR establece;

> Las adquisiciones hechas en efectivo o a crédito por cualquiera de los cónyuges con fondos gananciales, son válidas si se destinan al uso de los cónyuges o de la familia, de acuerdo con la posición social y económica de esta. Para realizar actos de disposición a título oneroso sobre bienes gananciales se requiere el consentimiento escrito de ambos cónyuges. Tal consentimiento es indispensable, pero el cónyuge que no

> ha consentido puede ratificarlo posteriormente. En este caso, la validez y la eficacia del acto comienzan a partir de la ratificación, salvo acuerdo en contrario. A falta de ratificación oportuna, el acto es nulo y sus consecuencias son de la exclusiva responsabilidad del cónyuge que consiente unilateralmente.

La sociedad de gananciales no es responsable del pago de las deudas contraídas por cualquiera de los cónyuges antes de su vigencia, ni de las multas y las condenas pecuniarias que se les impongan por actos personales que no benefician ni aprovechan el caudal común. El artículo 528 del Nuevo Código civil de PR establece que;

> El cónyuge que se dedica al comercio, la industria o al ejercicio de una profesión u oficio puede adquirir o disponer de los bienes muebles dedicados a esos fines, por justa causa, sin el consentimiento del otro cónyuge. No obstante, es responsable por los daños y perjuicios que ocasione por dichos actos a la sociedad de gananciales y al otro cónyuge. Esta acción se ejercitará exclusivamente en el momento de la disolución de la sociedad.

El articulo 531 de nuestro Código Civil nos dice que;

> Si como consecuencia de un acto de administración o de disposición llevado a cabo por uno solo de los cónyuges, este obtiene un beneficio o lucro exclusivo para él y ocasiona dolosamente un daño a la sociedad, es deudor de esta por su importe, aunque el otro cónyuge no impugne el acto. Si el tercero adquirente actúa de mala fe, el acto es rescindible.

Por otra parte, el Código Civil establece, en el artículo 359 que "los derechos y las obligaciones que nacen del negocio jurídico son transmisibles salvo que sean personalísimos o inherentes a la persona; o cuando su transmisión esté prohibida por la ley o por la voluntad de las partes". De igual forma, mencionado articulo nos indica que "la transmisión de una obligación solo libera al deudor transmitente cuando lo autoriza el acreedor" Art. 359 del Código Civil de Puerto Rico,31 L.P.R.A. § 6361.

De igual forma, nuestro ordenamiento establece que "en virtud de lo dispuesto expresamente en la obligación o en la ley puede exigirse a cada uno de los deudores, o por cada uno de los acreedores, el total de la prestación" Art. 1096 del Código Civil de Puerto Rico. Así mismo nos explica que la solidaridad puede existir, aunque los acreedores y los deudores no estén ligados del mismo modo ni por unos mismos plazos y condiciones Art. 1097 del Código Civil de Puerto Rico. El deudor puede efectuar el pago a cualquiera de los acreedores solidarios, aun cuando haya sido demandado solo por alguno Art. 1097 del Código Civil de Puerto Rico.

El nuevo Código Civil de PR nos dice que "Cada uno de los acreedores solidarios puede hacer lo que sea útil a los demás, pero no lo que les sea perjudicial. La solidaridad no implica, por sí misma, que un codeudor solidario o que un coacreedor solidario representa a los demás" Art. 1099 del Código Civil de Puerto Rico.

Es necesario reconocer que "la novación, la compensación, la condonación o la transacción de la deuda con cualquiera de los acreedores solidarios, o con cualquiera de los deudores de la misma clase, extingue total o parcialmente la obligación con respecto a los demás" Art. 1100 del Código Civil de Puerto Rico.

Por otra parte, la solidaridad puede ser renunciada. "El acreedor puede renunciar a la solidaridad, expresa o tácitamente, respecto a uno de los deudores solidarios o respecto a todos" Art. 1105 del Nuevo Código Civil de Puerto Rico. Mencionado artículo nos dice, además, que "la renuncia en favor de uno de los deudores es tácita cuando el acreedor exige o reconoce el pago de su parte en la deuda sin reserva. La renuncia respecto a uno, sea expresa

o tácita, no extingue la acción solidaria del acreedor contra los demás deudores por el pago restante".

En el asunto que se discute en este escrito, es necesario definir la novación. Y nuestro Código Civil de Puerto Rico la define como "la sustitución de una obligación previa por una nueva, la cual extingue la primera" Art. 1182 del Código Civil de Puerto Rico. Donde a su vez establece las formas de novar las obligaciones e indica que las obligaciones pueden novarse mediante:

(a) la variación de su objeto o sus condiciones;

(b) la sustitución del antiguo deudor por otro, de modo que el primero queda liberado por el acreedor; o

(c) la sustitución del antiguo acreedor por otro, de manera que el deudor queda vinculado a él por una nueva obligación y liberado respecto al antiguo Art. 1183 del Código Civil de Puerto Rico. Además, nuestro ordenamiento jurídico nos dice que "para que una obligación quede extinguida por otra que la sustituya, es preciso que así se declare terminantemente o que ambas sean totalmente incompatibles" Art. 1184 del Código Civil de Puerto Rico.

El artículo 1185 del Código Civil de Puerto Rico menciona que "la novación que consiste en la sustitución de un nuevo deudor en lugar del primitivo puede hacerse sin conocimiento de este, pero no sin el consentimiento del acreedor" Art. 1185 del Código Civil de Puerto Rico. Así mismo en su artículo 1186 del mencionado código, se establece que;

> Cuando con el consentimiento del acreedor se sustituye al deudor por otro nuevo, el segundo es delegado del primero quien, en consecuencia, queda libre. La insolvencia del nuevo deudor, que ha sido aceptado por el acreedor, no hace revivir la acción del acreedor contra el deudor primitivo, salvo que dicha insolvencia haya sido anterior y pública o conocida del deudor al delegar su deuda.

Es necesario en el presente asunto, establecer que las Reglas de Procedimiento Civil de PR en su Regla 10.3. Moción para que se dicte sentencia por las alegaciones, discute que;

> Después que se hayan presentado todas las alegaciones, cualquier parte podrá solicitar al tribunal que dicte sentencia parcial o total por las alegaciones, sujeto a las disposiciones de la Regla 42.3. Si en una moción en la que se solicite sentencia por las alegaciones se exponen materias no contenidas en dichas alegaciones y éstas no son excluidas por el tribunal, la moción deberá considerarse como una solicitud de sentencia sumaria y estará sujeta hasta su resolución final a todos los trámites ulteriores dispuestos en la Regla 36, y todas las partes tendrán una oportunidad razonable de presentar todo asunto pertinente a dicha moción conforme a lo provisto en la citada regla.

De igual forma la Regla 36.2. de las Reglas de Procedimiento Civil de PR indican que cuando;

> [U]na parte contra la cual se haya formulado una reclamación podrá presentar, a partir de la fecha en que fue emplazado pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.

## III. Integración del Derecho a los hechos en el caso

En virtud del marco doctrinal antes discutido, procedemos ahora a integrar el derecho a los hechos de este caso. El 12 de enero de 2005, el Sr. Juan Barreto como parte de las operaciones de su empresa, Las Martas y nuestra representada la Sra. María Hernández, está ultima por ser esposa del Sr. Juan Barreto, como garantizadores solidarios, suscribieron un Contrato de Préstamo. Nuestro ordenamiento jurídico establece que los cónyuges tienen los mismos derechos y obligaciones en el matrimonio según el

artículo 398 del Código Civil de Puerto Rico. Además, resalta en el artículo 400 que los cónyuges "deben actuar siempre en interés de la familia y mantenerse mutuamente informados del estado de los asuntos que pueden afectar el bienestar y la estabilidad personal y económica de la pareja y del grupo familiar". Por otra parte, el cónyuge que se dedique al comercio, en este caso, entiéndase el Sr. Juan Barreto, puede adquirir o disponer de los bienes muebles dedicados a esos fines, por justa causa, sin el consentimiento del otro cónyuge. No obstante, es responsable por los daños y perjuicios que ocasione por dichos actos a la sociedad de gananciales y al otro cónyuge. Esta acción se ejercitará exclusivamente en el momento de la disolución de la sociedad.

De los hechos y alegaciones presentada, desprende que la intención del préstamo antes mencionado fue para los fines de las operaciones de la empresa del Sr. Juan Barreto, quien era la persona dedicada al negocio de la agricultura bajo la empresa Las Martas. De igual forma, se requirió la participación y consentimiento de su esposa, la Sra. María Hernández para que compareciera como deudora solidaria ya que fue requisito para la aprobación del préstamo mencionado, tal como establece nuestro ordenamiento jurídico en el artículo 527 del Código Civil de PR. Por su parte, la Sra. María Hernández, quien era ama de casa, no formaba parte ni tenía conocimiento de las operaciones de las Martas, ni de las ejecutorias que realizaba diariamente su entonces esposo el Sr. Juan Barreto.

El matrimonio entre el Sr. Juan Barreto y la Sra. María Hernández se llevó a cabo el día 14 de julio de 1989, bajo el régimen económico de Sociedad Legal de Gananciales. De igual manera, dicho matrimonio llego a su fin, disolviendo el mencionado vinculo por consentimiento mutuo el día 6 de abril de 2006. De la

sentencia emitida por el Tribunal de Primera Instancia en la sala superior de Arecibo, se desprende que la Sra. María Hernández, como parte de la liquidación de los bienes del caudal matrimonial, cedió a favor del Sr. Juan Barreto todos los activos que formaban parte del caudal de la sociedad legal de gananciales al momento de la disolución del matrimonio. A su vez, el Sr. Juan Barreto, asumió todas las obligaciones, reconociendo que sería el único responsable de las deudas y obligaciones adquiridas durante la duración del matrimonio, incluyendo la deuda del préstamo antes mencionado, liberando de responsabilidad a nuestra representada la Sra. María Hernández, quien notificó a la sucursal del BPPR, lo antes expuesto para que se tuviera conocimiento de la decisión del Tribunal.

De los hechos presentados podemos establecer claramente que la Sra. María Hernández transmitió su obligación como deudora exclusivamente al Sr. Juan Barreto, una vez de disolvió el matrimonio de ambos. De igual manera, el BPPR liberó de toda responsabilidad como deudora a la Sra. María Hernández ya que estuvo debidamente notificado de la sentencia de divorcio emitida por el Tribunal de Primera Instancia de Arecibo, y continuó su relación comercial con el Sr. Juan Barreto sin ninguna problemática, ni queja al respecto. A su vez, las alegaciones presentadas por la Parte Demandante, entiéndase Condado, así como la documentación presentada adjunta en la Demanda, confirman una vez más que el BPPR consintió tácitamente la liberación de toda responsabilidad como deudora a la Sra. María Hernández, ya que, aun cuando pudo resolver el contrato de préstamo y solicitar la cancelación total del mismo, decidió continuar sus relaciones comerciales y financieras con el Sr. Juan Barreto.

De la documentación presentada con la demanda, también podemos confirmar todas las enmiendas realizadas a los pagarés en relación con el préstamo en mención. Podemos encontrar que en cada uno de ellos el único deudor es el Sr. Juan Barreto, en calidad de persona y en calidad de presidente de la compañía Las Martas, empresa de la cual la Sra. María Hernández, no forma parte, ya que cedió toda participación y todos sus activos al momento de la disolución del matrimonio y separación de bienes con el Sr. Juan Barreto. Lo que confirma, aún más, que el BPPR solo reconoce al Sr. Juan Barreto como único deudor del préstamo en mención. Al enmendar el pagare original, para establecer al Sr. Juan Barreto como deudor solidario junta con la empresa Las Martas, se extinguió la obligación original, creando una nueva obligación, dando vida a lo que conocemos en el campo judicial como la figura de la novación. Nuestro Ordenamiento jurídico establece, en el articulo 1183 del Código Civil de Puerto Rico, que una de las formas de novar las obligaciones es la sustitución del antiguo deudor por otro, de modo que el primero queda liberado por el Acreedor.

## IV. Conclusión

Este caso envuelve un cobro de dinero y una ejecución de hipoteca debido al incumplimiento en las obligaciones de un contrato de préstamo. Consecuentemente, reconocemos que el ordenamiento jurídico vigente ofrece el derecho al acreedor a llevar a cabo el cobro y la ejecución de este ya que la deuda esta vencida es liquida y exigible. Mas, sin embargo, dicho derecho solo puede ser reclamado a las personas directamente responsables de la obligación antes mencionada. Según hemos presentado y demostrado nuestra representada la Sra. María Hernández, no tiene obligación alguna con la parte demandante, según lo antes expresado en el presente escrito. La Sra. María Hernández no es parte de la

empresa Las Martas, dejo de formar una Sociedad Legal de Gananciales con el Sr. Juan Barreto a partir del 6 de abril de 2006, donde por sentencia del tribunal de Primera Instancia de Arecibo, PR, donde por estipulación cedió todos los activos que conformaban el caudal de la Sociedad Legal de Gananciales, y de igual manera, el Sr. Juan Barreto se responsabilizaba de todas las deudas del caudal matrimonial, incluyendo determinado préstamo. Por su parte, el BPPR con pleno conocimiento de la determinación del Tribunal, decidió continuar con las relaciones comerciales y financieras con el Sr. Juan Barreto, sin resolver el contrato de préstamo de la presente controversia. Y más aun, decidieron enmendar el pagaré que garantizaba dicho pago modificando quienes serían los nuevos deudores, de los cuales se excluye la Sra. María Hernández.

POR TODO LO CUAL, la Sra. María Hernández solicita del Honorable Tribunal que desestime con perjuicio la presente Demanda con cualquier pronunciamiento procedente en derecho o en su defecto se emita una sentencia sumaria con respecto a las alegaciones presentadas según establece la Regla 36.2. de las Reglas de Procedimiento Civil de PR.

RESPETUOSAMENTE SOMETIDO.

En Arecibo, Puerto Rico hoy 9 de septiembre de 2021.

F/Rafael R. Pinzón Santiago
pinzon8888@gmail.com
RUA 22506
Cond. Escorial Altos 404
42 Calle Modesta
San Juan, PR 00924
CEL.;787-527-6822

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**CENTRO JUDICIAL DE ARECIBO**
**SALA SUPERIOR DE ARECIBO**

CONDADO 5 LLC
**Demandante**
**v.**

LAS MARTAS INC., JUAN MANUEL BARRERO GINORIO t/c/c JUAN M. BARRETO GINORIO, MARIA ELENA HERNANDEZ RUIZ t/c/c MARIA E. HERNANDEZ RUIZ Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA ENTRE ELLOS Y LOS ESTADOS UNIDOS DE AMERICA
**Demandados**

**CIVIL NUM.:AR2021CV00693**
**SALA 403**

**SOBRE: COBRO DE DINERO Y EJECUCION DE HIPOTECAS**

# ANEJOS

**Anejo I**
**Contrato de Préstamo - 2190621**

***ANEJO 1***

**CONTRATO DE PRÉSTAMO**

Este contrato de préstamo (en adelante el "Contrato"), con fecha 12 de enero de 2005, se lleva a cabo entre **LAS MARTAS, INC.**, corporación creada y organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, con seguro social patronal número [redacted], representada por su Presidente **DON JUAN MANUEL BARRETO GINORIO**, seguro social [redacted], mayor de edad, casado con María Elena Hernández Ruiz, agricultor y vecino de Arecibo, Puerto Rico, cuyo carácter representativo se hará constar mediante Certificación de Resolución debidamente firmada por el Secretario de la Corporación en igual fecha del presente otorgamiento mediante testimonio de autenticidad número 28,482 ante el notario público Francisco J. Arraiza Donate, (en adelante "el Deudor"); **DON JUAN MANUEL BARRETO GINORIO**, seguro social [redacted] y **DOÑA MARIA ELENA HERNANDEZ RUIZ**, seguro social [redacted], mayores de edad, casados entre sí, agricultor él, ama de casa ella y vecinos de Arecibo, Puerto Rico (en adelante "Garantizadores Solidarios") y **BANCO POPULAR DE PUERTO RICO**, una corporación bancaria organizada y existente bajo las leyes del Estado Libre Asociado de Puerto Rico, con oficinas principales en Hato Rey, San Juan, Puerto Rico con número de identificación patronal [redacted] (en adelante el "Banco"), representada en este acto por su oficial **DON JOSE ALBERTO PÉREZ LÓPEZ**, seguro social [redacted], mayor de edad, casado con Julia Ivette Batista González, banquero y vecino de Arecibo, Puerto Rico, cuyo carácter representativo se acredita mediante Certificación de Resolución de la Junta de Directores del Banco Popular de Puerto Rico en sesión ordinaria celebrada el día quince (15) de julio de dos mil cuatro (2004) jurada y suscrita por Brunilda Santos de Alvarez, Secretaria Auxiliar de la Junta de Directores del Banco Popular de Puerto Rico, mediante affidavit número 4080 en San Juan, Puerto Rico el día quince (15) de julio de dos mil cuatro (2004) ante la notario público Paulette Lavergne Cuyar, cuyo Certificado de Resolución Yo, el Notario doy fe de haberlo tenido ante mí.

El Banco y el Deudor acuerdan contratar la facilidad de crédito que se describe más adelante, sujeto a, y de acuerdo con, los términos y condiciones que aquí se establecen.

**ARTÍCULO I**
**TÉRMINOS Y CONDICIONES FINANCIERAS**

**Sección 1.01. Definiciones**: Los términos no definidos en el texto del Contrato tendrán los respectivos significados que se indican en el Anejo 1.01(a) "Definiciones".

**Sección 1.02.** (a) El Banco acuerda conceder y el Deudor acuerda pagar el siguiente préstamo bajo los siguientes términos y condiciones financieras (en adelante, el "Préstamo"):

1. Tipo de préstamo y cantidad:

Préstamo a Término por la cantidad de UN MILLON OCHOCIENTOS CINCUENTA MIL DOLARES ($1,850,000.00) de principal.

2. Propósito del préstamo:

El Deudor ha solicitado del Banco un préstamo a término para consolidar deudas de la corporación y personales en un solo préstamo, cuyo propósito fue la compra de fincas, cuota, vacas y mejoras a las fincas y las facilidades, además de la compra de maquinaria y equipo para un total de $1,538,000.00 y un sobrante de los cuales $150,000.00 son para la compra de 5,000 cuartillos de cuota de leche, $72,000.00 para la compra de 36 novillas y $90,000.00 para capital de trabajo permanente y cubrir gastos inherentes en la transacción.

3. Tasa de interés aplicable:

El balance insoluto del principal devengará intereses diariamente a una tasa anual fluctuante igual a uno por ciento (1.00%) por debajo de la Tasa de Interés Preferencial ("Prime Rate").

4. Cantidad, frecuencia y número total de pagos de principal y de intereses y amortización de préstamo:

El desembolso será bajo un "Master Promissory Note" por ciento ochenta (180) días, no obstante el plan de pago comenzará treinta (30) días después del desembolso del Banco. El principal e intereses se pagarán en 59 plazos consecutivos de $14,900.00 cada uno, pagaderos mensuales, comenzando el 12 de febrero de 2005, y así sucesivamente hasta e incluyendo el 12 de diciembre de 2009, y un pago final del balance insoluto de principal e intereses a la fecha de vencimiento del Pagaré el 12 de enero de 2010 o cualquier extensión a esta fecha que autorice el Banco (la "Fecha de Vencimiento").

El último pago podrá incluir además del principal e interés insolutos cualquier otro cargo contemplado en este contrato que el Banco haya impuesto y que quedó sin pagar.

(b) **Cálculo de Intereses:** Los intereses se calcularán sobre una base de interés simple utilizando una fórmula cuyo numerador es el número exacto de días naturales transcurridos y el denominador 365 días.

(c) **Cargos Aplicables:**

**Cargo Por Financiamiento**: El Deudor se obliga a pagar al Banco cargos por financiamiento a razón de $7,000.00 del Préstamo al momento del desembolso inicial del mismo. A opción del Banco, se aplicará este cargo por financiamiento en la fecha de cada renovación o extensión, si alguna, del Préstamo.

**Cargos Por Mora**: Por cada pago que esté en mora por más de un día, el Deudor se obliga a pagar un cargo igual al tres por ciento (3%) del monto del pago

moroso sujeto, al artículo 3 Sección 3.02 inciso (g).

Cargo por Pago Por Adelantado:

En la eventualidad de que otra institución bancaria y/o financiera, durante el término de este contrato, hiciera una oferta cuyo efecto pueda ser el de cancelar este contrato antes de su vencimiento, los deudores se comprometen a someter la oferta de la otra institución, por escrito, al Banco quien determinará si puede igualar la misma. Si esta gestión no es realizada por los deudores, entonces el pago anticipado o adelantado que resulte eventualmente en el saldo del préstamo antes de la fecha convenida estará sujeto al cobro de un cargo por concepto de penalidad del cinco por ciento (5%). Si el Banco no igualara la oferta sometida, entonces no se impondrá penalidad por pago anticipado.

(d) **Intereses por razón de Incumplimiento (*Default Rate*):** De ocurrir cualquier Causa de Incumplimiento (según se dispone más adelante en este contrato), el balance insoluto de principal devengará, inmediatamente y sin necesidad de notificación previa, intereses a razón de una tasa de interés dos por ciento (2%) sobre la tasa de interés pactada en la sección 1.02.3 (la "Tasa de Interés por Incumplimiento). Esta Tasa de aplicará desde el momento en que ocurra la Causa de Incumplimiento hasta que la misma sea subsanada en forma y sustancia a la entera satisfacción y discreción del Banco.

La obligación del Deudor de repagar el Préstamo está evidenciada por un pagaré (el "Pagaré") a la orden del Banco, copia del cual forma parte de este contrato como Anejo 1.01(b).

**Sección 1.03 Partidas en Reserva**

El Deudor incluirá junto con el pago periódico al Banco de principal y/o intereses bajo el (los) Pagarés en el día en que venza dicho pago, hasta que el (los) Préstamo(s) sea(n) pagado(s) en su totalidad, una suma (los "Fondos de Plica") para el pago de: (1) contribuciones sobre la propiedad inmueble que sirve como Colateral del Préstamo y (2) primas por cualquier seguro requerido por el Banco. Los Fondos de Plica serán depositados con el Banco a menos que el Deudor sea relevado de esta obligación. En caso de tal relevo, el Deudor estará obligado a pagar directamente las cantidades debidas por los conceptos antes mencionados y, proveerá al Banco recibos que evidencien tal pago dentro del tiempo que el Banco le requiera. El Banco aplicará los Fondos de Plica para pagar las partidas mencionadas. Si el Deudor deja de pagar alguna cantidad debida, el Banco podrá a su opción pagar la misma y el Deudor entonces vendrá obligado a repagar al Banco tal cantidad inmediatamente. De no pagarla dentro de los diez (10) días subsiguientes, la cantidad pagada por el Banco se

añadirá al principal que adeuda el Deudor y estará sujeta al pago de intereses.

**ARTICULO II**
**CONDICIONES PRECEDENTES AL DESEMBOLSO DEL PRÉSTAMO**

**Sección 2.01** **Condiciones Precedentes al Desembolso del Préstamo.** La obligación del Banco de hacer desembolsos bajo el Préstamo queda sujeta a las siguientes condiciones al momento de cada desembolso:

(a) Que no exista una Causa de Incumplimiento bajo este Contrato o con respecto a cualquier otra Deuda del Deudor con el Banco o sus afiliadas, o una condición que, de no ser por el requisito de dar notificación y/o del transcurso del tiempo, constituya una Causa de Incumplimiento;

(b) Que el Deudor haya cumplido con los convenios afirmativos y negativos en este Contrato;

(c) Que las representaciones y garantías hechas por el Deudor en este Contrato sean correctas y ciertas al momento de realizarse cada desembolso bajo el Préstamo;

(d) Que el Deudor haya entregado al momento del cierre o del desembolso particular los documentos que requiera el Banco en la forma y con el contenido que sea satisfactorio para éste.

**ARTICULO III**
**LOS PRÉSTAMOS**

**3.01 Términos y Condiciones del Préstamo a Término**

(a) Desembolso. En la Fecha de Cierre, el Banco depositará los fondos producto del Préstamo mediante transferencia electrónica a la cuenta especificada por el Deudor.

(b) Los fondos desembolsados y depositados producto del préstamo serán utilizados para el propósito establecido en la sección 1.02.2

(c) Fecha de Pago. El Banco cobrará el principal y los intereses y otros cargos aplicables mediante un débito a la Cuenta Corriente los días correspondientes que se estipulan en el Pagaré (en adelante, la "Fecha de Pago").

**3.02 Términos Generales**

**(a) Forma de Pago.** El Deudor autoriza al Banco a hacer los débitos

correspondientes directamente contra la Cuenta Corriente que se designe para estos propósitos o de cualquiera otra manera que el Banco especifique o autorice por escrito.

**(b) Servicio de la Deuda.** El Deudor se obliga a tener en la Cuenta Corriente en la Fecha de Pago cantidades suficientes para cumplir con el pago de las facilidades de crédito concedidas, y cualquier otro gasto o cargo que el Banco tenga derecho a cobrar bajo este Contrato. Si en la Cuenta Corriente no hubiera fondos suficientes en dicha fecha, el Banco podrá cobrar al Deudor el balance adeudado a través de cualquier otro medio, incluyendo débitos en otras cuentas en el Banco o en alguna de sus afiliadas. El Deudor pagará todas las cantidades adeudadas, sin derecho de compensación o reclamación contra el Banco, y sin deducciones por contribuciones o gastos de ningún tipo.

**(c) Fecha de Vencimiento.** Sujeto a que el Deudor cumpla con los términos y condiciones de este Contrato, el Préstamo estará vigente hasta la Fecha de Vencimiento que se estipula en la Sección 1.02.

**(d) Aplicación de los Pagos.** Los pagos, se aplicarán primero a cualquier interés acumulado y no pagado en orden del más antiguo al más reciente, luego a los cargos contemplados en el contrato (incluyendo cualquier pago que haya tenido que hacer el Banco a nombre del Deudor bajo las disposiciones de este contrato) que no hayan sido pagados, y luego al principal vencido o próximo a vencer del Préstamo, también del más antiguo al más reciente. Esto incluye los pagos realizados por el Banco en el ejercicio de su derecho bajo este contrato de cargar o debitar dichas sumas en cualquier cuenta o depósito que el Deudor y/o los Garantizadores mantengan en el Banco o sus afiliadas.

**(e) Abonos al principal antes de la Fecha de Vencimiento.** Luego de aplicar un pago de la forma en que se establece en el inciso (d) de esta sección, si hubiera algún sobrante, el mismo se aplicará a la amortización del principal no vencido (sujeto a la aplicación de cualquier cargo o penalidad por prepago que pueda imponer el Banco según las disposiciones de este contrato) en orden inverso de vencimiento. En caso de que el Banco imponga el cargo o penalidad por prepago, el sobrante se aplicaría primero contra dicho cargo.

**(f) Pago en la Fecha de Vencimiento.** En la Fecha de Vencimiento el Deudor deberá pagar al Banco el principal pendiente de pago del Préstamo y los intereses acumulados y no pagados sobre los mismos y cualquier otro cargo pactado en el contrato.

**(g) Pagos en Días No-Laborales.** Siempre que cualquier pago bajo este Contrato o bajo cualquiera de los Pagarés deba de hacerse en una fecha que no sea un Día Laborable, dicho pago deberá hacerse el próximo Día Laborable.

**Sección 3.03** <u>Garantías y Colateral</u>.

(a) Las obligaciones del Deudor bajo este Contrato, el Pagaré y los otros Documentos de Préstamo estarán garantizados mediante la Colateral que se detalla en el **Anejo A.**

(b) Los Contratos de Colateral se mantendrán íntegros y vigentes durante la existencia de este Contrato y hasta que el Deudor satisfaga en su totalidad las Obligaciones asumidas bajo los Documentos de Préstamo y durante cualquier extensión o renovación o conversión de los mismos.

**ARTICULO IV**
**REPRESENTACIONES Y GARANTÍAS**

**Sección 4.01** Representaciones y Garantías del Deudor. El Deudor por la presente le representa y garantiza al Banco que:

(a) El otorgar este Contrato y los Documentos de Préstamo y cumplir con sus respectivos términos: (i) no causará que viole ninguna ley, reglamento, orden judicial, interdicto o sentencia aplicable; (ii) no causará que viole o incumpla los términos de cualquier contrato o acuerdo del cual sea parte y/o que afecte sus propiedades; (iii) no violará, ni será incompatible con, las cláusulas de su Certificado de Incorporación o de sus estatutos (de ser el Deudor una corporación) o de su acuerdo de constitución de sociedad o fideicomiso (de ser el Deudor una sociedad o fideicomiso); (iv) redundará en su beneficio; y (v) no resultará en su insolvencia;

(b) No existe requisito de autorización, consentimiento, licencia, permiso, registro o presentación de tribunal o Entidad Gubernamental alguna, ni de ninguna junta o foro, para proceder al otorgar y cumplir con este Contrato y los otros Documentos de Préstamo;

(c) No existe acción, demanda, procedimiento o reclamación ante ningún tribunal o Entidad Gubernamental, ni ante ningún otro foro, ni, de acuerdo con su mejor conocimiento, la posibilidad de tal, que pudiera afectar la condición financiera del Deudor o sus propiedades, negocios, operaciones o activos;

(d) Ninguna información, anejo o informe ofrecida al Banco en relación con la preparación, otorgamiento, y negociación de este Contrato y los otros Documentos de Préstamo, contiene declaraciones falsas u omite declarar algún hecho que pueda afectar la veracidad de dicha información, y no existen hechos que, individualmente o tomados junto con otros factores, puedan afectar adversamente la condición financiera del Deudor o sus propiedades, negocios, operaciones o activos;

(e) Es una entidad debidamente constituida, válidamente existente y autorizada a operar bajo las leyes de la jurisdicción de su organización y posee todos los permisos, licencias y franquicias necesarias para operar sus negocios en Puerto Rico;

(f) Posee todas las facultades, poderes y autorizaciones necesarias para otorgar este Contrato y los otros Documentos de Préstamo, para incurrir en las obligaciones estipuladas en este Contrato y en los otros Documentos de Préstamo, para tomar prestada la cantidad del Préstamo que se establece en este Contrato, para emitir el (los) Pagaré(s) que evidencia(n) dichas obligaciones, para utilizar los fondos obtenidos bajo el Préstamo para los usos aquí especificados, y para cumplir con los términos y condiciones contenidos en este Contrato, en el (los) Pagaré(s) y en los otros Documentos de Préstamo;

(g) Este Contrato y los demás Documentos de Préstamo han sido debidamente autorizados por el Deudor y constituyen obligaciones válidas y legales del mismo, exigibles contra éste de conformidad con sus respectivos términos;

(h) No ha, y/o no tiene conocimiento de que ninguno de sus predecesores en interés hubiera, almacenado, generado, manufacturado, refinado, transportado, producido o tratado desperdicios tóxicos, desperdicios sólidos, desperdicios peligrosos o sustancias peligrosas en las propiedades del Deudor, en violación de cualquier disposición de ley, ordenanza, regla, reglamentación, orden, sentencia, decreto o permiso que fuera aplicable y/o que requiera alguna actuación para corregir alguna situación que conlleve un costo o gasto sustancial bajo las disposiciones de cualquier ley, ordenanza, regla, reglamentación, orden, sentencia, decreto o permiso que fuera aplicable. No han ocurrido, y/o no tiene conocimiento de que existan, derrames, descargas, filtraciones, emisiones, inyecciones, escapes, o liberaciones sustanciales o materiales de desperdicios tóxicos, desperdicios sólidos, desperdicios peligrosos o sustancias peligrosas, en las propiedades del Deudor o en el ambiente que rodea dichas propiedades. Los términos "desperdicios tóxicos", "desperdicios sólidos", "desperdicios peligrosos" y "sustancias peligrosas" tendrán el significado dispuesto en cualquier disposición de ley o reglamentación aplicable del Estado Libre Asociado de Puerto Rico, del Gobierno Federal o estatal o de un país extranjero, relacionadas con la protección del ambiente;

(i) De ser aplicables o necesarias, posee todas las patentes, derechos sobre patentes, marcas, licencias, franquicias, autorizaciones, permisos y otros derechos necesarios para conducir sus negocios tal y como los conduce al presente, y como se propone conducirlos en el futuro, sin menoscabar o violar los derechos de terceros;

(j) Ha cumplido con todas las leyes y reglamentos de las Entidades Gubernamentales con jurisdicción sobre sus negocios y no está incumpliendo ninguna orden, mandamiento, orden de entredicho ni decreto de algún tribunal, Entidad Gubernamental o de cualquier otro foro;

(k) Ha cumplido y cumple con todas sus obligaciones bajo todo contrato, hipoteca, arrendamiento, fideicomiso u otro acuerdo del cual el Deudor es parte o bajo el cual cualquiera de sus propiedades o activos puedan verse afectadas;

(l) Su estado de situación y el estado de ganancias y pérdidas que ha entregado al Banco, (i) son correctos y representan objetivamente su condición financiera y los resultados de sus operaciones; (ii) el Deudor no ha contraído obligaciones directas o contingentes, después de la fecha del estado de situación, que no hayan sido divulgadas al Banco por escrito o reflejadas a través de un estado de situación interino o anejo; (iii) tanto los estados como los estados interinos han sido preparados de acuerdo a los principios de contabilidad generalmente aceptados ("GAAP" por sus siglas en inglés) aplicados consistentemente durante todos los periodos que comprenden los mismos;
(iv) no ha ocurrido un cambio sustancial adverso en los activos, pasivos, propiedades, negocios, condición financiera o cualesquier otra, o prospectos del Deudor desde la fecha de cierre de los estados de situación y de ganancias y pérdidas;

(m) Posee título de dominio sobre todos los bienes sobre los cuales ha constituido una hipoteca o que ha dado en Colateral al Banco, y tiene derecho a enajenarlos y gravarlos; y

(n) Ha radicado todas las planillas de contribuciones que requieren las leyes y reglamentos aplicables, y ha pagado (o tiene un plan de pagos debidamente aprobado por las Entidades Gubernamentales correspondientes) todas las contribuciones sobre ingresos, contribuciones y retenciones patronales, contribuciones sobre la propiedad, patentes, arbitrios y cualquier otro cargo o penalidad atribuibles a las mismas que deba pagar o que hayan sido impuestos contra el Deudor o sobre sus propiedades por las Entidades Gubernamentales correspondientes.

## ARTICULO V
## CONVENIOS

**Sección 5.01** **Convenios Afirmativos.** Mientras se mantengan vigentes las obligaciones del Deudor bajo este Contrato y/o los otros Documentos de Préstamo, y mientras quede pendiente de pago cualquier balance del Préstamo u otras obligaciones del Deudor bajo los términos de este Contrato o los demás Documentos de Préstamo, o mientras quede vigente cualquier obligación del Banco bajo este Contrato o el Pagaré de desembolsar cualquier adelanto bajo el Préstamo, el Deudor se compromete a lo siguiente:

(a) Pagar puntualmente el principal, los intereses y cualquier otro cargo del Préstamo;

(b) Llevar a cabo o gestionar, por su cuenta y a su cargo, todos los actos o cosas necesarias, presentes o futuras, requeridas bajo las leyes o reglamentos aplicables con relación al cumplimiento de sus obligaciones bajo los Documentos de Préstamo;

(c) Pagar todas las contribuciones e impuestos que le sean aplicables a sus ingresos o ganancias, o sobre cualquiera de sus propiedades, o relacionadas con cualquiera de sus actividades o negocios (incluyendo retenciones y contribuciones sobre nómina), antes de la fecha en que dichas contribuciones e impuestos comiencen a devengar intereses, recargos o penalidades y se impongan multas, embargos, cargas y/o gravámenes similares por falta de pago. No obstante, el Deudor no vendrá obligado a pagar ninguna contribución o impuesto cuyo pago esté impugnando de buena fe y mediante el procedimiento correcto. Si el Deudor incumple esta obligación, el Banco podrá, a su entera opción, pagar tales contribuciones e impuestos sin necesidad de notificarle al Deudor y sin más consentimiento del Deudor que el presente consentimiento, en cuyo caso el Deudor reembolsará al Banco el monto de dicho desembolso tan pronto le sea requerido. El Banco podrá, además, y sin el previo aviso a o consentimiento de, el Deudor, cargar o debitar dichas sumas en cualquier cuenta o depósito que el Deudor y/o lo(s) Garantizador(es) mantengan en el Banco o con sus afiliadas;

(d) Permitir que el Banco o cualquiera de sus agentes o representantes examinen, resuman y copien sus récords, registros y libros de contabilidad, y que visiten las propiedades del Deudor y que discutan con terceras personas los asuntos, finanzas y cuentas del Deudor de tiempo en tiempo y según sea razonable;

(e) Notificar inmediatamente al Banco en caso de que surja cualquier reclamación, demanda o procedimiento llevado en su contra o, del cual el Deudor tenga conocimiento, que pudiera tener un Efecto Materialmente Adverso sobre las propiedades, negocios, operaciones y activos del Deudor, o sobre su condición financiera;

(f) Mantener vigentes, renovar y proteger todos los derechos, poderes, privilegios, licencias, permisos y franquicias requeridas para continuar operando sus negocios incluyendo aquellas que emanen por contrato o aquellas requeridas por Entidades Gubernamentales;

(g) Cumplir y observar todas las leyes y reglamentos aplicables, tanto federales como locales, incluyendo, pero sin limitarse a, las leyes y reglamentos aplicables en cuanto a asuntos laborales y ambientales, así como con cualquier ordenanza, regla o reglamento promulgado bajo dichas leyes y reglamentos;

(h) Mantener la Cuenta corriente principal con el Banco;

(i) Entregar al Banco dentro de ciento veinte (120) días a partir del cierre de su año fiscal, su estado de situación y su estado de ganancias y pérdidas y superávit compilados, revisados o auditados, (según especifique o autorice el Banco a su absoluta discreción) por contadores públicos autorizados reconocidos y aceptables al Banco;

(j) De ser aplicable, entregar al Banco dentro de los ciento veinte (120) días siguientes al cierre de cada año fiscal, estados financieros personales, o de la entidad jurídica, según sea el caso, de cada Garantizador;

(k) Entregar, en la forma y en las fechas en que así se lo requiera el Banco, un certificado o informe sobre envejecimiento de las cuentas a cobrar y de las cuentas a pagar, debidamente certificado como correcto por un oficial autorizado del Deudor;

(l) Otorgar todos aquellos documentos, contratos, instrumentos o acuerdos que sean necesarios, a juicio del Banco, para llevar a cabo las transacciones contempladas en los Documentos de Préstamo;

(m) Pagar o rembolsar al Banco tan pronto le sea requerido, los gastos relacionados con los honorarios de consultores ambientales y de abogados, estudios ambientales, acciones de remoción de contaminantes, restauración, mitigación y/o remediación ambiental y cualquier otro gasto que el Banco razonablemente entienda se tenga que incurrir como resultado de cualquiera de las situaciones mencionadas en el párrafo 4.01(i). El Banco podrá, además, y sin el previo consentimiento del Deudor, cargar o debitar dichas sumas en cualquier cuenta o depósito que el Deudor y/o los Garantizadores mantengan en el Banco o sus afiliadas;

(n) Solicitar, mantener, conservar y renovar las pólizas de seguro requeridas, a saber:____Inundación,__x__Fuego,__x____Terremoto,_______robo __x__huracán, ____ Interrupción de Negocios, ____ Lucro Cesante, ____ Key Man, ____, Otras: ________________ ; y aquellas que de conformidad con los Documentos de Préstamo el Banco le requiera de tiempo en tiempo para cubrir otros riesgos, que provean cobertura suficiente (a juicio del Banco) y que sean las que acostumbran mantener compañías del tamaño y naturaleza similares a las del Deudor y que sean aceptables al Banco. Tales pólizas deberán contener un endoso o cesión a favor del Banco que sea aceptable a éste. Si el Deudor incumple esta obligación, el Banco podrá, a su entera opción, obtener y pagar tales pólizas y endosos sin necesidad de notificarle al Deudor y sin más consentimiento del Deudor que el presente consentimiento, en cuyo caso el Deudor reembolsará el monto total pagado por el Banco tan pronto le sea requerido. El Banco podrá, además, sin el previo consentimiento del Deudor, cargar o debitar dichas sumas en cualquier cuenta o depósito que el Deudor y/o los Garantizadores mantengan en el Banco o sus afiliadas;

(o) Mantener en buen estado todas las propiedades que le pertenecen, incluyendo pero sin limitarse a, aquellas que forman parte de la Colateral, y realizar todas aquellas mejoras necesarias para conservarlas;

(p) De aplicarle al Deudor las disposiciones de la ley federal conocida como ERISA ("Employee Retirement Income Security Act of 1974") según enmendada, el Deudor representa y garantiza que ha cumplido cabalmente con todas las disposiciones de la misma y que no ha ocurrido ni existe ningún evento reportable

("Reportable Event" según se define en ERISA) con respecto a cualquier plan de retiro o pensiones del Deudor que esté reglamentado por ERISA.

(q) Utilizar los fondos provenientes del financiamiento aquí otorgado para los usos y propósitos que se mencionan en la sección 1.02 del Contrato.

**Sección 5.02** **Convenios Negativos.** Mientras se mantengan vigentes las obligaciones del Deudor bajo este Contrato y/o los otros Documentos de Préstamo, y mientras quede pendiente de pago cualquier balance del Préstamo u otras obligaciones del Deudor bajo los términos de este Contrato o los otros Documentos de Préstamo, o mientras quede vigente cualquier obligación del Banco bajo este Contrato o el Pagaré de desembolsar cualquier adelanto bajo el Préstamo, el Deudor se compromete a no hacer lo siguiente sin el previo consentimiento escrito del Banco, cuyo consentimiento no será denegado irrazonablemente:

(a) Constituir, asumir o permitir que exista cualquier hipoteca, gravamen y/o carga sobre todo o cualquier porción de su propiedad, bienes o capital, existentes a la fecha de, o adquiridos con posterioridad a, la Fecha de Cierre y que sirvan como Colateral;

(b) Asumir, garantizar, endosar o de cualquier manera responsabilizarse por las obligaciones de cualquier otra persona, entidad o corporación, existente o creada con posterioridad a la Fecha de Cierre, excepto por los endosos de instrumentos negociables para depósito o cobro o transacciones similares en el curso ordinario de su negocio;

(c) Cambiar su actual personalidad jurídica, cambiar o permitir cambios en la composición de sus accionistas o socios o personal gerencial, enmendar sus artículos de incorporación o sus estatutos (de ser el Deudor una corporación) o su acuerdo de sociedad (de ser el Deudor una sociedad), o fusionarse, liquidarse o vender una parte sustancial o la totalidad de sus activos;

(d) Invertir sus fondos en o adquirir, otras corporaciones, sociedades o entidades;

(e) Prestar o adelantar fondos a cualquier empleado, oficial y/o director del Deudor o a cualquier otra persona o entidad;

(f) Cambiar la naturaleza de sus negocios;

(g) Incurrir en Deuda adicional que no sea Deuda que normalmente se incurre en el curso ordinario de los negocios; y

(h) Declarar o pagar [**dividendos**] ya sea en efectivo, en especie o en acciones, [**distribuciones**] a [**accionistas, socios, miembros o beneficiarios**] del Deudor, hacer cualquier distribución sobre sus [**acciones o participaciones**], o reservar fondos o activos para ese propósito o adquirir de cualquier manera sus [**acciones o participaciones**], o algún interés en el Deudor o reservar fondos o activos para ese propósito y

(i) Vender, ceder, arrendar, permutar, transferir o de cualquier otra forma disponer de sus activos existentes a la fecha de, o adquiridos con posterioridad, a la Fecha de Cierre.

**ARTICULO VI**
**INCUMPLIMIENTO**

**Sección 6.01** Causas de Incumplimiento. En caso de que ocurra, o continúe ocurriendo, cualquier situación de las descritas en esta Sección 6.01, las obligaciones del Banco bajo este Contrato terminarán automáticamente y las sumas de principal, intereses y cargos acumulados sobre el Pagaré y todas las demás obligaciones del Deudor bajo este Contrato y los otros Documentos del Préstamo serán inmediatamente líquidas y exigibles, sin que se requiera acción, notificación, protesto, presentación, demanda o aviso de parte del Banco al Deudor o a ninguna otra persona natural o jurídica, todos los cuales se renuncian expresamente. Cada uno de los siguientes eventos constituirá una "Causa de Incumplimiento":

(a) Que el Deudor incumpla con el pago de principal, intereses o cargos bajo el (los) Pagaré(s), o con el pago de cualquier otra suma adeudada al Banco bajo este Contrato o bajo cualquier otro Documento de Préstamo, en la fecha en que dicho pago venza;

(b) Que la validez, legalidad u otorgamiento de este Contrato, de(l) (los) Pagaré(s) o de cualquiera de los otros Documentos de Préstamo sea cuestionado por el Deudor y/o el(los) Garantizador(es),o el Deudor y/o el(los) Garantizador(es) niegue(n) que tiene(n) responsabilidades u obligaciones bajo este Contrato, el Pagaré o cualquiera de los otros Documentos de Préstamo;

(c) Que el Deudor o cualquier Garantizador sea declarado insolvente o en quiebra, o admita por escrito su incapacidad para pagar sus deudas según éstas venzan, o haga una cesión de sus bienes para beneficio de sus acreedores; o el Deudor o cualquier Garantizador solicite o consienta a, el nombramiento de un custodio, síndico u oficial similar para administrar o custodiar o tomar posesión de la totalidad o una parte sustancial de sus bienes; o el Deudor o cualquier Garantizador instituya (por petición, solicitud, contestación, consentimiento, o de otra forma) cualquier procedimiento de quiebra, insolvencia, composición, reorganización, arreglo, reajuste de deudas o cualquier otro procedimiento similar bajo las leyes o reglamentos de cualquier jurisdicción; o que cualquier sentencia, orden, embargo, providencia

judicial o administrativa, o remedio similar sea emitido contra cualquier propiedad o bien del Deudor o de cualquier Garantizador, y el mismo no sea dejado sin efecto, cancelado o sustituido por una fianza dentro de los treinta (30) días calendarios siguientes a su emisión;

(d) Que el Deudor y/o cualquier Garantizador incumpla o viole cualquiera de sus obligaciones con el Banco o cualquiera de los términos, acuerdos, cláusulas, declaraciones, garantías o condiciones de su parte incluidos en este Contrato (pero sin incluir las violaciones cubiertas por el inciso (a) de esta sección 6.01), en los otros Documentos de Préstamo y/o en cualquier otro acuerdo o contrato con el Banco o instrumento entregado al Banco, y dicho incumplimiento o violación no se remediare dentro de los treinta (30) días calendarios siguientes a la notificación de dicho incumplimiento o violación; o

(e) Que cualquier declaración o garantía que haya hecho el Deudor o cualquier Garantizador en este Contrato, en cualquiera de los otros Documentos de Préstamo o en cualquier certificado, instrumento, contrato o declaración hecha u otorgada en relación con este Contrato o cualquiera de los otros Documentos de Préstamo, sea sustancialmente incorrecta;

(f) Que exista un gravamen o carga sobre la Colateral que no sea de las permitidas a la fecha de este contrato o de las creadas en beneficio del Banco para garantizar las obligaciones del Deudor bajo los Documentos de Préstamo;

(g) Que ocurra cualquier evento que cause que se acelere la fecha de vencimiento de cualquier otra Deuda (excluyendo el Préstamo) del Deudor; o

(h) Que ocurra un Efecto Materialmente Adverso.

(i) Que el Deudor no utilice los fondos provenientes de este financiamiento, o parte de ellos, en los usos y propósitos que se mencionan en la Sección 1.02 del Contrato;

(j) La radicación de cargos contra el Deudor o contra cualquiera de los Garantizadores o el recibo de alguna notificación por el Banco de alguna investigación gubernamental en relación con cualquier asunto que pueda resultar en la confiscación o incautación ("forfeiture") de bienes del Deudor o de cualquiera de los Garantizadores.

**ARTICULO VII**
**REMEDIOS**

**Sección 7.01** **Remedios en General.** En el caso que ocurra o continúe ocurriendo una o más de las Causas de Incumplimiento especificadas en la Sección 6.01, el Banco podrá tomar cualquier acción en ley o equidad para cobrar las cantidades vencidas o por vencer bajo el Pagaré o para hacer cumplir las obligaciones,

acuerdos o compromisos del Deudor bajo este Contrato o bajo cualquiera de los otros Documentos de Préstamo o bajo cualquier otro documento relacionado a este Contrato o dichos documentos.

**Sección 7.02** __Remedios Acumulativos.__ Los remedios y derechos aquí concedidos al Banco no se considerarán exclusivos de cualquier otro remedio o remedios disponibles; todos y cada uno de dichos remedios serán acumulativos y concurrentes y serán adicionales a cualquier otro remedio especificado en este Contrato o existente en ley o equidad. Cualquier demora u omisión en el ejercicio de cualquier derecho o acción basada en el incumplimiento del Deudor, o la omisión del Banco de insistir en el cumplimiento estricto de cualquiera de los acuerdos y compromisos del Deudor que se detallan en este Contrato o en los otros Documentos de Préstamo o de ejercitar cualquier derecho y/o remedio en caso de incumplimiento por el Deudor, no afectará ninguno de los antedichos derechos o acciones del Banco, ni se considerará o se tendrá por relevo o renuncia de los derechos a insistir, hacer cumplir, ejercitar o solicitar, mediante interdicto o cualquier otro remedio apropiado, en ley o equidad, el cumplimiento estricto por el Deudor con todos los compromisos, acuerdos y condiciones contenidos en este Contrato y en los otros Documentos de Préstamo, o del derecho del Banco a ejercitar cualquiera de dichos derechos o remedios si se repitiera el incumplimiento por parte del Deudor.

**Sección 7.03** __Renuncias.__ En caso de que el Deudor incumpla cualquier compromiso o acuerdo incluido en este Contrato o en cualquiera de los otros Documentos de Préstamo y sea relevado de tal obligación o acuerdo (cuyo relevo será efectivo solamente si se hace por escrito y está firmado por el Banco), dicho relevo se limitará a esa violación o evento en particular y no se considerará, bajo ninguna circunstancia, como un relevo del cumplimiento en cualquier otra situación.

## ARTICULO VIII
## __INDEMNIZACIÓN__

**Sección 8.01.** El Deudor acuerda defender, indemnizar, librar de toda responsabilidad y proteger al Banco de toda reclamación, daño, sentencia, penalidad, costo y gasto (incluyendo aquellos gastos y honorarios de abogado que resulten por razón de haber ejercido el Banco sus derechos bajo esta cláusula) que surja, directa o indirectamente, de las actividades del Deudor, sus predecesores y sucesores en interés, o de aquellas terceras personas, naturales o jurídicas, con las que el Deudor sostenga una relación contractual, o que surjan, directa o indirectamente, de la violación por parte del Deudor, sus predecesores y sucesores en interés, o de aquellas terceras personas, naturales o jurídicas, con las que el Deudor sostenga una relación contractual, de cualquier ley o reglamento, incluyendo, pero sin limitarse a, cualquier ley o reglamento sobre protección ambiental, independientemente de que dichas reclamaciones fueren presentadas por una Entidad Gubernamental o cualquier otra persona, natural o jurídica. No obstante lo dispuesto en cualquier otro apartado de este

Contrato, las obligaciones del Deudor bajo esta cláusula de indemnización sobrevivirán la terminación de este Contrato.

**Sección 8.02.** El Deudor acuerda defender, indemnizar, librar de toda responsabilidad y proteger al Banco de toda demanda, litigación, acción, procedimiento administrativo, sentencia, reclamación, daños, costos o penalidades (incluyendo, sin limitación, honorarios de abogados y costas razonablemente incurridas) que se inste o se imponga en contra de o se incurra por el Deudor por cualquier motivo, debido a la presencia de sustancias tóxicas o peligrosas, así como de hidrocarburos, petróleo, aceites y sus derivados, según estos términos son definidos por las Leyes Ambientales, que afecten las propiedades del Deudor o que se originen o emanen de las propiedades del Deudor. El Deudor se compromete a cumplir fielmente con las Leyes Ambientales y a no depositar o causar que se deposite en sus propiedades sustancias tóxicas o peligrosas según éstas son definidas en dichas Leyes Ambientales, durante el término del presente Contrato. No obstante lo dispuesto en cualquier otro apartado de este Contrato, las obligaciones del Deudor bajo esta cláusula de indemnización sobrevivirán la terminación de este Contrato.

**ARTICULO IX**
**<u>OTROS TÉRMINOS MISCELÁNEOS</u>**

**Sección 9.01 <u>Terminación</u>.** De no existir más crédito disponible al Deudor bajo este Contrato o durante cualquier extensión o renovación del mismo, si el Deudor ha pagado al Banco la totalidad del principal e intereses bajo el Pagaré y todas las demás cantidades adeudadas al Banco bajo los Documentos de Préstamo, y si el Deudor está cumpliendo con sus deudas y obligaciones con las demás afiliadas del Banco, entonces todos los compromisos, acuerdos y otras obligaciones del Deudor se extinguirán y, en consecuencia, las propiedades del Deudor que hayan sido gravadas en virtud de este Contrato y los otros Documentos de Préstamo se entregarán al Deudor y/o los Contratos de Colateral serán entregados al Deudor para ser cancelados a su costo.

**Sección 9.02 <u>Aviso de las Notificaciones</u>.** Todas las notificaciones, requerimientos, instrucciones y otras comunicaciones requeridos bajo este Contrato se harán por escrito (incluyendo comunicaciones por facsímile) y serán enviados por correo o facsímile o entregadas a la mano a la parte a las siguientes direcciones:

**DEUDOR:**
**LAS MARTAS, INC.**
Atención: Sr. Juan Manuel Barreto Ginorio
HC 05 Box 91635
Arecibo, Puerto Rico 00612
Tel. (787) 640-4972 (787) 878-7277

15

BANCO:

BANCO POPULAR DE PUERTO RICO
Atención: CBC Arecibo-Manatí
Clave de envío: 411
Sra. Nilsa Iris Cruz Capetillo
PO Box 362708
San Juan, Puerto Rico 00936-2708
Tel. (787) 854-1550
Fax: (787) 854-4955

o a cualquier otra dirección que de tiempo en tiempo sea notificada por escrito a la otra parte, cumpliendo con los requisitos para notificación especificados en esta sección. Todas las antes mencionadas notificaciones, requerimientos, instrucciones y otras comunicaciones se considerarán efectivas en el momento en que se depositen en el correo, o se entreguen por máquina de facsímile, según sea el caso, dirigidos de la manera antes especificada.

**Sección 9.03** __Pago de Gastos__. El Deudor acuerda pagar a la presentación los gastos y honorarios de abogado, tasadores, peritos, consultores, y auditores con relación a la preparación, otorgamiento y entrega de este Contrato, el Pagaré, los otros Documentos de Préstamo, y cualquier otro instrumento o documento al cual se hace referencia o se relaciona con este Contrato, el Pagaré y los otros Documentos de Préstamo, o cualquier enmienda a éstos.

**Sección 9.04** __Cesión; Enmienda__. El Deudor no podrá ceder sus derechos y obligaciones bajo este Contrato. No obstante, el Banco podrá ceder sus derechos y obligaciones bajo este Contrato, total o parcialmente, sin el consentimiento del Deudor y todos los términos y disposiciones del mismo beneficiarán de la misma forma a sus sucesores y cesionarios. Este Contrato no podrá ser alterado o enmendado a menos que sea a través de otro documento o acuerdo escrito otorgado por ambas partes.

**Sección 9.05** __Ley que Rige__. Este Contrato, el Pagaré y todos los otros Documentos de Préstamo se regirán e interpretarán de acuerdo con las leyes del Estado Libre Asociado de Puerto Rico.

**Sección 9.06** __Separación de las Cláusulas__. Si alguna cláusula de este Contrato resultare inválida, ilegal o no pudiera hacerse valer en Puerto Rico, no se afectará por ello la validez y efectividad de las demás cláusulas y condiciones del Contrato ni se afectará la validez y efectividad de dicha cláusula y las demás cláusulas en cualquier otra jurisdicción en que la cláusula se considere válida.

**Sección 9.07** __Encabezamientos__. Los encabezamientos de las secciones y cláusulas en este documento se incluyen para referencia y conveniencia y no

constituirán parte alguna de este Contrato. Las palabras utilizadas en este Contrato se interpretarán en el género o número que las circunstancias ameriten.

**Sección 9.08** __Derecho de Compensación__. Nada de lo dispuesto en este Contrato se considerará como una renuncia al derecho de compensación ("set-off") que pueda tener el Banco conforme a las leyes aplicables.

**Sección 9.09** __Renuncia a Juicio por Jurado__. El Banco y el Deudor renuncian a cualquier derecho que tengan a la celebración de un juicio por jurado en cualquier acción o procedimiento que se inste para ejercer o defender sus respectivos derechos bajo, o que de alguna manera se relacionen con, este Contrato, el Pagaré y los otros Documentos de Préstamo.

**Sección 9.10** __Jurisdicción__. El Deudor acuerda someterse a la jurisdicción de los tribunales estatales de Puerto Rico o el Tribunal de Distrito Federal para el Distrito de Puerto Rico.

**POR TODO LO CUAL,** las partes otorgan este Contrato, en Hatillo, Puerto Rico en la fecha indicada al principio del mismo.

| | |
|---|---|
| **LAS MARTAS, INC.**<br>Por: Juan Manuel Barreto Ginorio<br>Presidente | **BANCO POPULAR DE PUERTO RICO**<br>Por: José Alberto Pérez López<br>Oficial |
| **JUAN MANUEL BARRETO GINORIO** | **MARIA ELENA HERNANDEZ RUIZ** |

Affidávit Núm. 28,491

Reconocido y suscrito ante mí por **DON JUAN MANUEL BARRETO GINORIO**, seguro social [redacted], mayor de edad, casado con María Elena Hernández Ruiz, en su carácter de Presidente de Las Martas, Inc., agricultor y vecino de Arecibo, Puerto Rico; **DON JUAN MANUEL BARRETO GINORIO** , seguro social [redacted] y

constituirán parte alguna de este Contrato. Las palabras utilizadas en este Contrato se interpretarán en el género o número que las circunstancias ameriten.

**Sección 9.08** **Derecho de Compensación**. Nada de lo dispuesto en este Contrato se considerará como una renuncia al derecho de compensación ("set-off") que pueda tener el Banco conforme a las leyes aplicables.

**Sección 9.09** **Renuncia a Juicio por Jurado**. El Banco y el Deudor renuncian a cualquier derecho que tengan a la celebración de un juicio por jurado en cualquier acción o procedimiento que se inste para ejercer o defender sus respectivos derechos bajo, o que de alguna manera se relacionen con, este Contrato, el Pagaré y los otros Documentos de Préstamo.

**Sección 9.10** **Jurisdicción**. El Deudor acuerda someterse a la jurisdicción de los tribunales estatales de Puerto Rico o el Tribunal de Distrito Federal para el Distrito de Puerto Rico.

**POR TODO LO CUAL,** las partes otorgan este Contrato, en Hatillo, Puerto Rico en la fecha indicada al principio del mismo.

| | |
|---|---|
| **LAS MARTAS, INC.**<br>Por: Juan Manuel Barreto Ginorio<br>Presidente | **BANCO POPULAR DE PUERTO RICO**<br>Por: José Alberto Pérez López<br>Oficial |
| **JUAN MANUEL BARRETO GINORIO** | **MARIA ELENA HERNANDEZ RUIZ** |

Affidávit Núm. 28,491

Reconocido y suscrito ante mí por **DON JUAN MANUEL BARRETO GINORIO**, seguro social [redacted], mayor de edad, casado con María Elena Hernández Ruiz, en su carácter de Presidente de Las Martas, Inc., agricultor y vecino de Arecibo, Puerto Rico; **DON JUAN MANUEL BARRETO GINORIO** , seguro social [redacted] y

**DOÑA MARIA ELENA HERNANDEZ RUIZ** , seguro social [REDACTED], mayores de edad, casados entre sí, agricultor él, ama de casa ella y vecinos de Arecibo, Puerto Rico y por **DON JOSÉ ALBERTO PÉREZ LÓPEZ**, seguro social [REDACTED], mayor de edad, casado con Julia Ivette Batista González, en su carácter de Oficial del Banco Popular de Puerto Rico, banquero y vecino de Arecibo, Puerto Rico; a quienes doy fe de conocer personalmente.

En Hatillo, Puerto Rico a 12 de enero de 2005.

FRANCISCO J. ARRAIZA DONATE
ISLA DE PUERTO RICO
Abogado - Notario

Francisco J. Arraiza Donate
NOTARIO PÚBLICO

18

**Anejo II**
**Sentencia de Divorcio**

PAG. 1

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA DE ARECIBO

Atención A: Vanessa Cuevas De: Maria E. Hernandez Ruiz

BARRETO GINORIO, JUAN MANUEL Y HERNANDEZ RUIZ, MARIA
DEMANDANTE
VS.
EX PARTE
DEMANDADO

CASO:C DI2006-0283
SALON:0201

DIVORCIOS

CAUSAL/DELITO

HERNANDEZ RUIZ, MARIA ELENA
PO BOX 143586
ARECIBO PR
00614

NOTIFICACION DE SENTENCIA

EL SECRETARIO QUE SUSCRIBE NOTIFICA A USTED QUE ESTE TRIBUNAL HA DICTADO SENTENCIA EN EL CASO DE EPIGRAFE CON FECHA 06 DE ABRIL DE 2006, QUE HA SIDO DEBIDAMENTE REGISTRADA Y ARCHIVADA EN LOS AUTOS DE ESTE CASO, DONDE PODRA USTED ENTERARSE DETALLADAMENTE DE LOS TERMINOS DE LA MISMA.

Y, SIENDO O REPRESENTANDO USTED LA PARTE PERJUDICADA POR LA SENTENCIA, DE LA CUAL PUEDE ESTABLECERSE RECURSO DE APELACION, DIRIJO A USTED ESTA NOTIFICACION, HABIENDO ARCHIVADO EN LOS AUTOS DE ESTE CASO COPIA DE ELLA CON FECHA DE 11 DE ABRIL DE 2006.

CARRION DE JESUS SYLVIA E
PO BOX 140856
ARECIBO PR
00614

DEPARTAMENTO DE SALUD
REGISTRO DEMOGRAFICO
SAN JUAN PR
PO BOX 11854
00910

ARECIBO, PUERTO RICO, A 11 DE ABRIL DE 2006

MARILUZ DIAZ RODRIGUEZ
SECRETARIO
POR: I.VIONETTE MEDINA RODRIGUEZ
SECRETARIO AUXILIAR

O.A.T.704-NOTIFICACION DE SENTENCIA
TELETRIBUNALES:(787)759-1888/ISLA, LIBRE DE COSTO(787)1-877-759-1888

ESTADO LIBRE ASOCIADO DE PUERTO RICO
**TRIBUNAL DE PRIMERA INSTANCIA**
SALA SUPERIOR DE ARECIBO

| | |
|---|---|
| JUAN M. BARRETO GINORIO<br>MARIA E. HERNANDEZ RUIZ<br>PETICIONARIOS | CIVIL NUM: **CDI 2006-0283** |
| | SOBRE: |
| EX PARTE | DIVORCIO (C.M.) |

**SENTENCIA**

A la vista de una petición jurada solicitando el divorcio por mutuo consentimiento compareció el peticionario personalmente y representado por la Lic. Sylvia E. Carrión De Jesús. La peticionaria compareció personalmente y por derecho propio y luego de ser orientada sobre su derecho a estar representada legalmente informó que renuncia a ese derecho. Se le explicaron las consecuencias.

Previa la juramentación de las partes, se desfiló la prueba en apoyo de las alegaciones de la petición. El Tribunal examinó, bajo juramento, a ambos peticionarios y se convenció de que la decisión de solicitar conjuntamente la disolución del vínculo matrimonial existente entre ellos no es producto de la irreflexión ni de la coacción.

Surge de la prueba que los peticionarios contrajeron matrimonio el 14 de julio de 1989, en Hatillo, Puerto Rico. Inscrito con el certificado núm. 152-1989-00151-014922-136056-00117362.

A base del análisis de la prueba desfilada, de las disposiciones del **artículo 97** del Código Civil de Puerto Rico (31 LPRA sec. 331) y la decisión del Honorable Tribunal Supremo en el caso **Figueroa Ferrer y Morales Morales vs. E.L.A.**, 107 DPR 250 (1978), este Tribunal declara **CON LUGAR** la petición de divorcio por mutuo consentimiento y, en su consecuencia, decreta roto y disuelto el vínculo matrimonial existente entre los peticionarios. El Tribunal aprueba las estipulaciones sometidas bajo juramento por los peticionarios y las hace formar parte integral de esta Sentencia.

Se otorga la patria potestad a ambos peticionarios. La custodia de los tres hijos menores de edad, Juan-Manuel, Julianna-Marie y Queenie-Keilee, se le otorga a la peticionaria, Sra. Hernández.

Se fija la cantidad de $300.00 semanales en concepto de pensión alimentaria, la cual pagará el peticionario directamente a la peticionaria, todos los lunes. Además, el padre pagará $500.00 en julio y diciembre de cada año para gastos escolares y navideños y pagará los gastos de matrícula, libros uniformes y mensualidades de la escuela privada de los menores y mantendrá un plan médico para los menores, aunque será responsable de cualquier gasto extraordinario que pudiera surgir relacionado a la salud de los menores, esto es, el pago de cirugías, hospitalizaciones o tratamientos médicos no cubiertos por el plan médico.

Las relaciones paterno filiales serán libres.

El peticionario pagará en concepto de pensión ex cónyuge, la cantidad de $300.00 semanales, de manerá vitalicia.

La peticionaria cede a favor del peticionario su participación en las siguientes propiedades:

"RUSTICA: Finca radicada en el barrio Naranjito del término municipal de Hatillo, compuesta de 27.4842 cuerdas, equivalentes a 108,023.5 metros cuadrados. En lindes, por el NORTE, con Luis F. Peraza, Gregorio Toledo y servidumbre de paso existente; por el SUR, con Gregorio Toledo; por el ESTE, con Iván Amador y Sucesión de Iván Amador y; por el OESTE, con Gregorio Toledo." Inscrita al Folio 256 vuelto del Tomo 289, Finca número 2333 de Hatillo, Registro de la Propiedad de Arecibo, sección segunda.

Se le asigna un valor de $250,000.00.

Afecta a los siguientes gravámenes: Hipoteca en garantía de un pagaré a favor del portador por $250,000.00; hipoteca en garantía de pagaré por $1[illegible]400.00 a favor o a la orden de Banco Central Hispano; e hipoteca en garantía de pagaré por $125,600.00 a favor o a la orden del Banco Popular de Puerto Rico.

"RUSTICA: Solar número 18 radicado en el barrio Hato Abajo del término municipal de Arecibo, con una cabida de 951.881 metros cuadrados. En lindes, por el NORTE, con solar número 19 a segregarse, según plano de inscripción; por el SUR, con solar número 17 a segregarse, según plano de inscripción; por el ESTE, con calle dedicada a uso público y; por el OESTE, con Esteban Mena" Inscrita a favor de Juan Manuel Barreto Ginorio quien la adquirió mediante escritura de Donación Número 51, el 19 de marzo de 2002, ante el notario Francisco Arraiza Donate. Es segregación de la finca 15,930 inscrita al Folio 37 vuelto del Tomo 402 de Arecibo, según continúa al Folio 40 del Tomo 793 de Arecibo, según continúa al Folio 50 del Tomo de hoja movil 1,128. Registro de la Propiedad de Arecibo, Sección Primera. Catástro número 029-029-242-70-000.

En el solar 18, descrito anteriormente, se construyó una estructura residencial con bienes de la sociedad de gananciales compuesta por los peticionarios, por lo que la peticionaria renuncia a cualquier participación en dicho bien.

Afecta a hipoteca en garantía de pagaré por $80,000.00 a favor del Banco Popular de Puerto Rico

Se le asigna un valor de $80,000.00.

El peticionario permuta la propiedad que se describe a continuación con la peticionaria, por las participaciones gananciales de ésta en los otros bienes adquiridos, como parte de la liquidación de la sociedad legal de gananciales:

RUSTICIA: Solar radicado en el barrio Hato Abajo del término municipal de Arecibo, Puerto Rico, con una cabida superficial de 998.820 metros cuadrados, equivalentes a 0.254 cuerdas. En lindes por el NORTE, con faja de terreno a dedicarse a uso público; por el SUR, con finca principal de la cual se segrega; por el ESTE, con camino municipal y; por el OESTE, con finca principal." Enclava casa construida toda en concreto de una sola planta. Inscrita al Folio 128 del Tomo 1287, Finca número 48,408 de Arecibo, Registro de la Propiedad de Arecibo, Sección Primera.

Fue adquirida por donación graciosa que se hiciera a favor de Juan M. Barreto Ginorio por su padre, mediante Escritura 184 de Donación, con fecha del 30 de septiembre de 2005, ante el notario Francisco J. Arraiza Donate.

La peticionaria retendrá para sí los muebles y enseres del hogar y el vehículo de motor Mitsubishi Montero del 2001, tablilla ENX 458. Una vez se salde la cuenta de este vehículo se traspasará el título a favor de la peticionaria.

El peticionario retendrá para sí el equipo y maquinaría de vaquería, el ganado vacuno de 500 cabezas, las acciones en Las Martas Dairy, Inc., y el vehículo de motor Nissan Nismo del 2005, tablilla 801675.

El peticionario asume el pago de las siguientes deudas: Visa BPPR, cuenta 4549540000503651; Sears; First Bank (auto) cuenta 00738670738174; GMAC (auto) cuenta 599030846135; BPPR (préstamo comercial), cuenta 2190621-0001 y BPPR (préstamo comercial), cuenta 2190621-9002.

Se apercibe a las partes al fiel cumplimiento de lo estipulado y aprobado por el Tribunal.

**REGISTRESE Y NOTIFIQUESE.**

En Arecibo, Puerto Rico, a 6 de abril de 2006.

(FDO) **JAIME R. BANUCHI HERNANDEZ**
JUEZ DEL TRIBUNAL DE PRIMERA INSTANCIA

CERTIFICO:
MARILUZ DIAZ RODRIGUEZ
SECRETARIA REGIONAL

**Anejo III**
**Desglose de los Pagarés del Préstamo**

60
**ANEJO 2**

**BANCO POPULAR.**

Master Promissory Note

[redacted]
Account Number
07/11/05

FOR VALUE RECEIVED, the undersigned jointly, severally and in solido promise to pay on [redacted] to the order of BANCO POPULAR DE PUERTO RICO (hereinafter called the "Bank") at its main office or at such other place as the Bank may designate the principal amount then outstanding hereunder, shown on the reverse hereof or on attachments hereto, not exceeding ONE MILLION EIGHT HUNDRED FIFTY THOUSAND ———————— Dollars ($1,850,000.00 ), lawful money of the United States of America together with interest on all unpaid principal amounts from time to time outstanding, computed on a (*check one*) [ ] 365-day [X] 360-day simple interest basis and actual days elapsed, payable monthly on the twenty-fifth (25th) day of each month and on the date of payment in full, at the Fixed Rate or at the Index Rate or at the Cash Collateral Rate as designated below (*check and complete one*)

[ ] **Fixed Rate** The unpaid principal shall bear interest at the rate of ______________ % per annum, provided however that in case of any event of default under this note, the unpaid principal shall thereafter until paid, bear interest at the rate of ______________ % per annum

[X] **Index Rate** Floating with the interest rate referred to as the "prime rate" as (*check one*)

[X] published in general-circulation newspapers such as *The Wall Street Journal*, provided that in the event of more than one such published rate on any given date the highest of such rates shall apply

[ ] defined by the Interest Rates and Finance Charges Regulation Board of Puerto Rico

The designated reference checked above is hereinafter called the "Index Rate" The unpaid principal shall bear interest at a floating rate per annum equal to the sum of the Index Rate plus minus 1.00 %, provided, however that in case of any event of default under the note, the unpaid principal shall thereafter until paid, bear interest at floating rate per annum equal to the sum of the Index Rate plus 2.00 %. Changes in the interest rate shall be effective upon the effective date of any change in the Index Rate, provided however, that the rate of interest shall not be less than ______________ % per annum at all times, nor more than ______________ % per annum absent any event of default. We recognize and fully understand that the rate of interest herein provided is not necessarily the lowest rate of interest charged by the Bank and that credits may be granted by the Bank at rates above, at, and below the Index Rate

[ ] **Cash Collateral Rate** The unpaid principal amounts from time to time outstanding under this note shall bear interest at the rate per annum equal to the sum of (a) the interest rate paid by the Bank from time to time on the time deposit pledged as security for the payment of all unpaid amounts under this note including all renewals of said deposit plus (b) ______________ %. Upon the effective date of any change in the interest rate paid by the Bank on the pledged time deposit and all renewals thereof corresponding changes shall be effective simultaneously in the interest rate on the unpaid principal balance of this note

The Bank shall record on the reverse hereof or on attachments hereto all advances and repayments of principal and the principal balance from time to time outstanding. Each such record of any advance hereunder shall be conclusive evidence that the advance was made to the undersigned. Advances hereunder may be made at any time and from time to time, notwithstanding that from time to time there may be no principal balance outstanding hereunder. The Bank in accepting this note incurs no obligation to make any advance

In the event of commencement of legal action to enforce payment of this note, we agree to pay jointly, severally and in solido all costs expenses and disbursements arising from such process plus attorney's fees of ten percent (10%) of the total indebtedness outstanding hereunder

We agree that the Bank may at its option, at any time and from time to time, reduce or cancel the amount owing under this note by setting off and charging the indebtedness or any part thereof, against any obligation of the Bank with the undersigned, or any of them for deposits or otherwise. We waive notice of nonpayment, presentment, demand for payment and protest

In support of any "due diligence" requirement under regulations of the Treasury Department of Puerto Rico that may be applicable to us or to our use of the funds advanced hereunder we agree affirm and warrant that we will use said funds only for "eligible activities" as defined in such regulations and as represented by us to the Bank

The use of the plural in this note shall be understood as singular if the same is signed by only one person

Hatillo, Puerto Rico, the 12 day of January 2005

Las Marías, Inc.

Juan M. Barreto Gonorio, Presidente

Juan M. Barreto Gonorio

María Hernández Ruiz

60
**ANEJO 3**

# PAGARE

| PRINCIPAL | NUM DE IDENT CLIENTE | PAGARE NUM | INICIAL DEL OFICIAL | OFICIAL NUM |
|---|---|---|---|---|
| $ 1,850,000.00 | 21 – 90 – 62 – 1 | – 0001 – | | 1320 |

POR VALOR RECIBIDO, nos obligamos mancomunada y solidariamente a pagar a la orden del BANCO POPULAR DE PUERTO RICO (en adelante denominado el "Banco") en su oficina principal o en el lugar que el Banco designe, la suma de UN MILLON OCHOCIENTOS CINCUENTA MIL ———————— Dólares (en adelante denominada la "Suma Principal") con intereses, computados sobre una base de interés simple de (marque uno) ☐ 365 días, ☒ 360 días y el numero de días transcurridos, a la tasa, en las fechas, y en la manera que más adelante se dispone

**FECHA Y FORMA DE PAGO (Marque y complete uno)**

☐ A – **Préstamo Pagadero en un Solo Pago – Suma Principal Pagadera en Fecha Fija.**
Nos obligamos a pagar la Suma Principal el ____ de ____ de ____, y a pagar intereses mensualmente sobre el balance insoluto a la tasa que más adelante se dispone en la fecha mensual cuyo día es el mismo que el día contenido en la fecha de vencimiento antes indicada, y en todo caso en la fecha en que la Suma Principal sea pagada total y completamente

☐ B – **Préstamo Pagadero en un Solo Pago – Suma Principal Pagadera a la Demanda.**
Nos obligamos a pagar la Suma Principal a la demanda, y a pagar intereses mensualmente sobre el balance insoluto a la tasa que más adelante se dispone, los días 25 de cada mes, y en todo caso en la fecha en que la Suma Principal sea pagada total y completamente

☒ C – **Préstamo Pagadero en Pagos Múltiples – Suma Principal Pagadera Periódicamente**
Nos obligamos a pagar la Suma Principal en 59 pagos consecutivos (marque uno) ☐ semanales, ☒ mensuales, ☐ bi-mensuales, ☐ trimestrales, ☐ semi anuales, ☐ anuales, (en adelante denominada la "Frecuencia de Pago") El primer pago, por la cantidad de $ 14,900.00 vencerá el 12 de febrero de 2005, y los pagos subsiguientes, por la cantidad de $ 14,900.00 cada uno, vencerán en las fechas correspondientes a la Frecuencia de Pago hasta el total pago y solvento de la Suma Principal El balance insoluto de la Suma Principal devengará intereses a la tasa que más adelante se dispone, y en el caso de que la Frecuencia de Pago sea mensual, tales intereses (marque uno) ☐ son en adición al pago mensual antes indicado o ☒ están incluidos en el pago mensual antes indicado Los intereses vencerán (a) cuando la Frecuencia de Pago sea mensual en las mismas fechas en que venzan los pagos de la Suma Principal, y (b) cuando la Frecuencia de Pago no sea mensual, en la fecha mensual cuyo día es el mismo que el día contenido en las fechas correspondientes a la Frecuencia de Pago, y en todo caso en la fecha en que la Suma Principal sea pagada total y completamente
Habrá un pago final a renegociarse.

**TASA DE INTERES (Marque y complete uno)**

☐ 1 – **Tasa Fija.** El balance insoluto de la Suma Principal devengará intereses a la tasa de ____ % anual, disponiéndose que de ocurrir cualquiera de los eventos de incumplimiento especificados más adelante, el balance insoluto de la Suma Principal devengará intereses a la tasa de ____ % anual

☒ 2 – **Tasa Indice.** Fluctuante con la tasa de interés conocida como la tasa preferencial ("prime rate") según (marque uno)
☒ publicada en periódicos de circulación general tal como *The Wall Street Journal*, disponiéndose, que de publicarse más de una de dichas tasas en la misma fecha, prevalecerá la más alta
☐ definida por la Junta Reguladora de Tasas de Interés y Cargos por Financiamiento de Puerto Rico
La referencia designada, marcada arriba, es en adelante denominada la "Tasa Indice" El balance insoluto de la Suma Principal devengará intereses a razón de una tasa anual fluctuante equivalente a la suma de la Tasa Indice más ~~menos~~ 1.00 %, disponiéndose, que de ocurrir cualquiera de los eventos de incumplimiento especificados más adelante, el balance insoluto de la Suma Principal devengará intereses a razón de una tasa anual fluctuante equivalente a la suma de la Tasa Indice más 2.00 % Los cambios en la tasa de interés serán efectivos en la fecha de efectividad de cualquier cambio en la Tasa Indice, disponiéndose, sin embargo, que en ningun momento la tasa de interés será menor del ____ % anual, ni mayor del ____ % anual de no haber ocurrido ningun evento de incumplimiento Reconocemos y entendemos claramente que la tasa de interés provista en este pagaré no es necesariamente la tasa de interés más baja cobrada por el Banco, el cual podrá conceder créditos con tasas sobre, igual a, o por debajo de, la Tasa Indice

☐ 3 – **Tasa con Colateral de Efectivo** El balance insoluto de la Suma Principal devengara intereses a razón de una tasa anual equivalente a la suma de (a) la tasa de interés pagada por el Banco de tiempo en tiempo sobre el depósito a plazo fijo pignorado como colateral para el pago de todas las cantidades insolutas de este pagaré incluyendo todas las renovaciones de dicho depósito y/o de este pagaré, más (b) ____ % En la fecha efectiva de cualquier cambio en la tasa de interés pagada por el banco sobre el depósito pignorado y todas las renovaciones del mismo, los correspondientes cambios en la tasa de interés sobre el balance insoluto de la Suma Principal serán efectivos simultáneamente

**TERMINOS Y CONDICIONES ADICIONALES**

Los términos y condiciones contenidos al dorso de este pagaré se incorporan aquí por referencia, constituyendo parte de este documento, y los mismos nos obligan como si estuviesen impresos íntegramente en este lugar

El uso del plural en este pagaré se entenderá singular cuando haya sido firmado por una sola persona

Hatillo, Puerto Rico, el 12 de enero de 2005

Las Martas Inc.

Juan M. Barreto Ginorio, Presidente

Juan M. Barreto Ginorio

María E. Hernández Ruiz

GEN-083 / 2-98

B ANEJO 4

## Enmienda al Pagaré o Contrato de Préstamo

| Nombre del Cliente | Región | Núm. de Id. | Núm. de Prést. | Principal |
|---|---|---|---|---|
| LAS MARTAS, INC. | 60 | 2190621 | 0001 | $ 1,850,000.00 |

Los términos y condiciones del Pagaré por la cantidad de principal de UN MILLON OCHOCIENTOS CINCUENTA MIL ****************************************************** debidamente emitido por LAS MARTAS, INC. (el Deudor) a la orden de Banco Popular de Puerto Rico (el Banco) el 12 de enero de 2005, balance hoy de $ 1,653,777.47 se enmiendan como sigue:

☒ **Moratoria**

El Deudor ha solicitado y el Banco ha accedido concederle una moratoria de 120 días en cuanto al pago de principal del Pagaré comenzando el 12 de julio de 2007 hasta el 12 de octubre de 2007. El pago de principal se reanudará el 12 de noviembre de 2007.

☒ La moratoria no conlleva una extensión del vencimiento del Pagaré. El pago diferido bajo la moratoria será pagadero al vencimiento del Pagaré en un pago final (balloon payment) junto con el balance insoluto del préstamo al vencimiento.

☐ La moratoria conlleva una extensión del vencimiento del Pagaré hasta el _____ de __________ de _______ para cubrir el pago diferido de principal de _______ días y el balance insoluto del préstamo al vencimiento.

☒ **Cargo por Financiamiento**

El Deudor ha solicitado y el Banco ha accedido concederle un cambio en el cargo por financiamiento por desembolso de _____ % a _____ %.

El Deudor pagará al Banco en esta misma fecha un cargo por financiamiento de $ 500.00.

Este documento tiene el único propósito de conceder los cambios aquí descritos y no se entenderá que enmienda ningún otro término o condición del Pagaré o Contrato de Préstamo. Tampoco deberá interpretarse que este documento constituye una novación de la obligación del Deudor evidenciada por el referido Pagaré.

COM-383-1 / 7-05 (PDF)

| Nombre del Cliente | Región | Núm. de Id. | Núm. de Prés. | Principal |
|---|---|---|---|---|
| LAS MARTAS, INC. | 60 | 2190621 | 1 | $ 1,850,000.00 |

En Hatillo, Puerto Rico, el 2 de julio de 2007.

BANCO POPULAR DE PUERTO RICO

**Deudor (es)**

Juan M Barreto Ginorio-Presidente
Nombre — Firma

Nombre — Firma

**Co-Deudor(es) / Garantizador(es)**

Juan M Barreto Ginorio
Nombre — Firma

JM Dairy Inc.
Nombre — Firma

**Oficial (es) BPPR**

Jose Perez #1320
Nombre y Número Autoridad Prestataria — Firma

Nombre y Número Autoridad Prestataria — Firma

Deuda agregada por $ 1,936,715.05

COM-080-1 / 7-06 (PDF)

**From:** noreply@ramajudicial.pr
**To:** Eduardo Gonzalez
**Subject:** NOTIFICACIÓN AUTOMÁTICA AR2021CV00693
**Date:** Thursday, September 9, 2021 7:31:30 PM

WARNING: External Sender.

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL GENERAL DE JUSTICIA**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE ARECIBO**

**NOTIFICACIÓN ELECTRÓNICA**

La siguiente transacción se registró y archivó en autos el 09 DE SEPTIEMBRE DE 2021

Nombre de las partes: Número del caso: AR2021CV00693

CONDADO 5 LLC
V.
LAS MARTAS, INC. Y OTROS

Presentante RAFAEL RENÉ PINZÓN SANTIAGO
Número de entrada en el expediente electrónico: 31
Presione aquí para acceder al documento electrónico objeto de esta notificación.

MOCIÓN DESESTIMACIóN presentada por MARÍA ELENA HERNÁNDEZ RUIZ T/C/C MARÍA E. HERNÁNDEZ RUIZ POR SÍ Y COMO MIEMBRO DE LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA CON SU ESPOSO, JUAN BARRETO GINORIO (RAFAEL RENÉ PINZÓN SANTIAGO) con relación a MOCIÓN ASUMIR REPRESENTACIóN LEGAL presentada por MARÍA ELENA HERNÁNDEZ RUIZ T/C/C MARÍA E. HERNÁNDEZ RUIZ POR SÍ Y COMO MIEMBRO DE LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA CON SU ESPOSO, JUAN BARRETO GINORIO (RAFAEL RENÉ PINZÓN SANTIAGO) con relación a NOTIFICACIÓN DE SECRETARÍA emitida y firmada por JEANNETTE BATISTA RODRIGUEZ el 09 de septiembre de 2021 en relacion a FIRMA ELECTRÓNICA.[29].[30].

Esta notificación electrónica se envió a:

| Nombre | Correo Electrónico |
|---|---|
| CARLOS J RUIZ GONZALEZ | bufeteruiz.varela@gmail.com |
| EDUARDO MANUEL GONZÁLEZ LÓPEZ | emgonzalez@ferraiuoli.com |
| GUSTAVO A. CHICO BARRIS | gchico@ferraiuoli.com |
| LUIS G PARRILLA HERNANDEZ | lparrilla@ferraiuoli.com |
| LUIS M. MORELL MORELL | lcdomorell@gmail.com |
| RAFAEL RENÉ PINZÓN | |

| SANTIAGO | pinzon8888@gmail.com |
| --- | --- |
| Nombre | Correo Electrónico |

Esta notificación ha sido enviada automáticamente desde el Sistema Unificado de Manejo y Administración de Casos (SUMAC). Favor de no responder a este mensaje.*

OAT 1720 NOTIFICACIÓN ELECTRÓNICA - Notificación entre Partes (SUMAC)
(Noviembre 2013)
www.poderjudicial.pr