**EXHIBIT XLI**

---

**Fill in this information to identify the case:**

Debtor 1    LAS MARTAS, INC.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  District of Puerto Rico

Case number   22-02380 (ESL)

---

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

---

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Condado 5 LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☐ No
☑ Yes.   From whom?  Banco Popular de Puerto Rico & PR Asset Portfolio 2013-1 International, LLC

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Condado 5 LLC
Name

PO Box 190085
Number          Street

San Juan          PR          00919
City               State          ZIP Code

Contact phone  (787) 919-7305

Contact email  fdearmas@ciacpr.com

**Where should payments to the creditor be sent?** (if different)

`
Name

Number          Street

City               State          ZIP Code

Contact phone

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.   Claim number on court claims registry (if known) _____

Filed on _____
              MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.   Who made the earlier filing? _____

---

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 0 6 0 0 , 0 4 5 8

**7. How much is the claim?**   $ _____ 1,532,855.78 . **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money loaned.

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.   The claim is secured by a lien on property.

Nature of property:

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☑ Other. Describe:   Milk Quota, Accounts Receivables per UCCs.

Basis for perfection:   Note(s), Deed(s), and Other(s) (See attachments).

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:   $ _____

Amount of the claim that is secured:   $ ___ 1,532,855.78

Amount of the claim that is unsecured:   $ _____ 0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:   $ ___ 1,532,855.78

Annual Interest Rate (when case was filed) 10 1/8 %

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $ _____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*                                                  **Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$_____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$_____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.

$_____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   08/23/2022
                 MM / DD / YYYY

/s/Francisco De Armas Cubas
Signature

Print the name of the person who is completing and signing this claim:

Name        Francisco De Armas Cubas, Esq., CPA
            First name          Middle name          Last name

Title       Authorized Representative

Company     Condado 5 LLC
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address     PO Box 190085
            Number        Street

            San Juan                              PR        00919
            City                                  State     ZIP Code

Contact phone   (787) 919-7305              Email  fdearmas@ciacpr.com

---

AmeriNat
217 S. Newton Ave.
Albert Lea, MN 56007



August 16, 2022

Las Martas Inc
C/O Caribbean Investment and Acquisition
PO Box 190085
San Juan PR  00919
Your Reference:  emailed Gabi

Payoff figures have been requested on the loan for the borrower and property described below.

Loan ID: ███0600
Las Martas Inc
Refer to CIAC for Collateral Detail
San Juan, PR  00919
Loan Type: Commercial

When remitting funds, please use our loan number to insure proper posting and provide us with the borrower's forwarding address.  Funds received in this office after 12:00 noon will be processed on the next business day, with interest charged to that date.

All payoff figures are subject to clearance of funds in transit.  The payoff is subject to final audit when presented.  Any overpayment or refunds will be mailed directly to the borrower.  We will prepare the release of our interest in the property after all funds have cleared.

| **Projected Payoff Date** | **8/16/2022** |
|---|---|
| Principal Balance | $1,129,061.74 |
| Interest Thru 8/16/2022 | $3,669.45 |
| Fees | $0.00 |
| Prepayment Penalty | $0.00 |
| Release Fees | $0.00 |
| Funds owed by borrower | $0.00 |
| Funds owed to borrower | $0.00 |
| **Total Payoff** | **$1,132,731.19** |
| Per diem | $203.86 |

**PLEASE CALL THE NUMBER LISTED BELOW TO UPDATE FIGURES PRIOR TO REMITTING FUNDS AS THEY ARE SUBJECT TO CHANGE WITHOUT NOTICE.**

AmeriNat

217 South Newton Avenue
Albert Lea, MN  56007
(888) 263-7628
(888) 263-7628
(562) 745-1281   Fax

AmeriNat
217 S. Newton Ave.
Albert Lea, MN 56007



August 16, 2022

Barreto Ginorio
C/O Caribbean Investment and Acquisition
PO Box 190085
San Juan PR  00919
Your Reference:  emailed Gabi

Payoff figures have been requested on the loan for the borrower and property described below.

Loan ID: ▮0458
Barreto Ginorio
Refer to CIAC for Collateral Detail
San Juan, PR   00919
Loan Type: Commercial

When remitting funds, please use our loan number to insure proper posting and provide us with the borrower's forwarding address.  Funds received in this office after 12:00 noon will be processed on the next business day, with interest charged to that date.

All payoff figures are subject to clearance of funds in transit.  The payoff is subject to final audit when presented.  Any overpayment or refunds will be mailed directly to the borrower.  We will prepare the release of our interest in the property after all funds have cleared.

| **Projected Payoff Date** | **8/16/2022** |
|---|---|
| Principal Balance | $267,728.59 |
| Interest Thru 8/16/2022 | $132,396.00 |
| Fees | $0.00 |
| Prepayment Penalty | $0.00 |
| Release Fees | $0.00 |
| Funds owed by borrower | $0.00 |
| Funds owed to borrower | $0.00 |
| **Total Payoff** | **$400,124.59** |
| Per diem | $48.34 |

**PLEASE CALL THE NUMBER LISTED BELOW TO UPDATE FIGURES PRIOR TO REMITTING FUNDS AS THEY ARE SUBJECT TO CHANGE WITHOUT NOTICE.**

AmeriNat

217 South Newton Avenue
Albert Lea, MN  56007
(888) 263-7628
(888) 263-7628
(562) 745-1281   Fax

AR2021CV00693 28/05/2021 05:26:21 pm Entrada Núm. 1 Página 1 de 18
Case: 22-02380-ESL12   Doc#: 111-41 Filed: 07/02/23 Entered: 07/02/23 15:20:01   Desc:
Exhibit XLI - Proof of Claim Page 1 of 18 by Condado   Page 6 of 202

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**CENTRO JUDICIAL DE ARECIBO**
**SALA SUPERIOR**

| | |
|---|---|
| **CONDADO 5 LLC,** | **CIVIL NÚM.:** |
| Demandante; | |
| v. | **SOBRE: COBRO DE DINERO Y EJECUCIÓN DE HIPOTECAS** |
| **LAS MARTAS, INC., JUAN MANUEL BARRETO GINORIO t/c/c JUAN M. BARRETO GINORIO, MARÍA ELENA HERNÁNDEZ RUIZ t/c/c MARÍA E. HERNÁNDEZ RUIZ, Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA ENTRE ELLOS, Y LOS ESTADOS UNIDOS DE AMÉRICA.** | |
| Demandados. | |

## DEMANDA

AL HONORABLE TRIBUNAL:

COMPARECE la parte demandante, Condado 5 LLC (en adelante, "Condado" y/o la "Demandante" y/o la "Parte Demandante"), por conducto de su representación legal que suscribe, y muy respetuosamente **EXPONE**, **ALEGA** y **SOLICITA**:

### I.       INTRODUCCIÓN

Condado, es el acreedor de las facilidades de crédito que se describen en esta Demanda extendidas y/o garantizadas solidariamente a favor de Las Martas, Inc. (en adelante, "Las Martas"), JM Dairy, Inc.[1], Juan Manuel Barreto Ginorio t/c/c Juan M. Barreto Ginorio (en adelante "Barreto-Ginorio"), María Elena Hernández Ruiz t/c/c María E. Hernández Ruiz (en adelante "Hernández-Ruiz"), y la Sociedad Legal de Gananciales Compuesta entre Ellos (en adelante, la "SLG" y junto a Barreto-Ginorio y Hernández-Ruiz, los "Barreto-Hernández") (Las Martas y los Barreto-Hernandez en adelante los "Demandados" y/o la "Parte Demandada").

1.       A la fecha de hoy, las facilidades de crédito están vencidas, son líquidas y exigibles y los Demandados están en incumplimiento con sus obligaciones de pago bajo las mismas.

2.       Por las razones expuestas anteriormente y las que figuran a continuación, Condado solicita respetuosamente a este Honorable Tribunal que conceda el remedio solicitado en esta Demanda y, en su consecuencia, ordene (i) el pago de las sumas adeudadas, incluyendo, pero sin

---

[1] Aunque se mencionan documentos suscritos por JM Dairy, Inc., ésta **NO se incluye como parte demandada** en la presente acción por cobro de dinero y ejecución de hipotecas debido a que actualmente existe una quiebra activa que se ventila ante el Tribunal de Quiebras de los Estados Unidos Para el Distrito de Puerto Rico bajo el caso número 19-02168 (ESL11).

AR2021CV00693 28/05/2021 05:26:21 pm Entrada Núm. 1 Página 2 de 18

Case: 22-02380-ESL12 Claim 2-1 Part 5 Filed 07/07/22 23 Entered 07/07/22 23:20:20 Desc Main Document Exhibit XLI - Proof of Claim Page 2 of 18 by Condado Page 7 of 202

**Demanda**
Condado 5 LLC v. Las Martas, Inc., *et al.*
Página 2 de 18

---

limitarse al principal adeudado, más intereses, cargos por mora, costas, gastos y honorarios de abogado y, (ii) en ausencia de pago, ordene la ejecución de la colateral del préstamo garantizado, entre otros, por hipotecas, según se describen en esta Demanda.

## II.  JURISDICCIÓN Y COMPETENCIA

3.      Este Honorable Tribunal tiene jurisdicción y competencia sobre la acción civil de epígrafe en virtud de los Artículos 5.001, 5.003 y 5.005 de la Ley Núm. 1 de 28 de julio de 1994 y de la Ley Núm. 21 de 22 de agosto de 2003, según enmendada, conocida como la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, 4 L.P.R.A. §§ 25a y 25c y del Artículo 95 de la Ley Número 210 del 8 de diciembre de 2015, también conocida como la Ley del Registro de la Propiedad Inmobiliaria, 30 L.P.R.A. § 6132.

4.      Además, el Tribunal de Primera Instancia, Sala Superior de Arecibo adquiere jurisdicción en virtud de la Regla 3.3 de las de Procedimiento Civil vigentes que dispone que los pleitos con relación a algún derecho o interés en bienes inmuebles se presentarán en la sección o sala correspondiente en que radique el bien inmueble objeto de la acción. Véase, 32 L.P.R.A. Ap. V, R. 3.3.

5.      Se radica la presente Demanda ante este Honorable Tribunal en vista de que uno de los inmuebles que forman parte de la colateral que se describirá más adelante está localizado en el Municipio de Arecibo, Puerto Rico. Véase, 30 L.P.R.A. § 6132

## III.  LAS PARTES

6.      Condado 5 es una compañía de responsabilidad limitada foránea organizada y existente conforme a las leyes del Estado de Delaware, y debidamente autorizada hacer negocios en el Estado Libre Asociado de Puerto Rico, con oficina registrada en: 1519 Ave. Ponce de León, Suite 311, San Juan, PR 00908.

7.      Por información y creencia Las Martas es una corporación organizada y existente bajo las leyes del Estado Libre Asociado de Puerto Rico. Por información y creencia, sus últimas direcciones postales y físicas conocidas son: HC 05 Box 91635, Arecibo, Puerto Rico 00612; 372 Ave. Rotarios, Buzón 209-B, Arecibo Puerto Rico 00612; y Carr. 653 Km. 3 Hm 3, Bo. Hato Abajo Norte, Arecibo, Puerto Rico 00612.

AR2021CV00693 28/05/2021 05:26:21 pm Entrada Núm. 1 Página 3 de 18

Case: 22-02380-ESL12   Doc#: 111-41 Filed: 07/02/23 Entered: 07/02/23 15:26:20   Desc
Exhibit XLI - Proof of Claim Page 3 filed by Condado   Page 8 of 202

8.   Por información y creencia los Barreto-Hernández, son mayores de edad, casados entre sí y vecinos de Arecibo, Puerto Rico. Por información y creencia, sus últimas direcciones conocidas son: HC 05 Box 91635, Arecibo, Puerto Rico 00612; 372 Ave. Rotarios, Buzón 209-B, Arecibo Puerto Rico 00612; y Carr. 653 Km. 3 Hm 3, Bo. Hato Abajo Norte, Arecibo, Puerto Rico 00612.

9.   Conforme a lo dispuesto en 28 U.S.C. § 2410[2], se incluye a los Estados Unidos de América, como parte demandada de epígrafe, por tener interés en las Propiedades I y II (según se definen más adelante) de Hatillo y Arecibo, las cuales son objeto de ejecución en el pleito de marras, por virtud de varios embargos federales que gravan las referidas propiedades como siguen:

a.   **Propiedad I** (Finca 2,333)

  i.   Embargo Federal contra Barreto-Ginorio, por la suma de $13,915.74, notificación número 279650817, presentado y anotado el 7 de diciembre de 2017.

  ii.   Embargo Federal contra Barreto-Ginorio, por la suma de $3,003.39, notificación número 382389719, presentado y anotado el 3 de octubre de 2019.

  iii.   Embargo Federal contra Barreto-Ginorio, por la suma de $9,307.39, notificación número 382390019, presentado y anotado el 7 de octubre de 2019.

  iv.   Embargo Federal contra Barreto-Ginorio, por la suma de $1,402.46, notificación número 387643219, presentado y anotado el 11 de diciembre de 2019.

b.   **Propiedad II** (Finca 47,349)

  i.   Embargo Federal contra Barreto-Ginorio, por la suma de $13,915.74, notificación número 279650817, presentado y anotado el 7 de diciembre de 2017.

  ii.   Embargo Federal contra Barreto-Ginorio, por la suma de $3,003.39, notificación número 382389719, presentado y anotado el 3 de octubre de 2019.

  iii.   Embargo Federal contra Barreto-Ginorio, por la suma de $9,307.39, notificación número 382390019, presentado y anotado el 7 de octubre de 2019.

---

2 (a) Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—
[…] (2) to foreclose a mortgage or other lien upon […] real or personal property on which the United States has or claims a mortgage or other lien.
(b) The complaint or pleading shall set forth with particularity the nature of the interest or lien of the United States…

AR2021CV00693 28/05/2021 05:26:21 pm Entrada Núm. 1 Página 4 de 18

Case: 22-02380-ESL12 Claim 21-1 Part 3 Filed 07/02/23 Desc Main Document Page 9 of 202
Exhibit XLI - Proof of Claim filed by Condado Page 4 of 18

iv. Embargo Federal contra Barreto-Ginorio, por la suma de $1,402.46, notificación número 387643219, presentado y anotado el 11 de diciembre de 2019.

## IV. HECHOS

### A. Los Préstamos

#### i. El Contrato de Préstamo I

10. El 12 de enero de 2005, el acreedor en ese momento Banco Popular de Puerto Rico (en adelante, "BPPR"), Las Martas como deudora y los Barreto-Hernández como garantizadores solidarios, suscribieron un *Contrato de Préstamo*, autenticado bajo el afidávit número 28,491 del Notario Público Francisco J. Arraiza Donate, mediante el cual se le concedió un préstamo a término por la suma principal de **$1,850,000.00**, devengando intereses diariamente a una tasa anual fluctuante igual al 1.0% por debajo de la Tasa de Interés Preferencial ("Prime Rate"), más una tasa de interés al 2% por encima de la tasa pactada en caso de incumplimiento (en adelante, el "Préstamo I"). Copia fiel y exacta del Préstamo I se hace formar parte de esta Demanda como **Anejo 1**.

11. El Préstamo I está evidenciado por un *Master Promissory Note* emitido el 12 de enero de 2005, suscrito por los Demandados a favor de BPPR, o su orden, endosado a favor de PR Asset Portfolio 2013-1 International, LLC (en adelante, "PRAP"), posteriormente endosado a favor de Condado, por la suma principal de **$1,850,000.00** (en adelante, el "Pagaré Operacional I"). Copia del Pagaré Operacional I se hace formar parte de esta Demanda como **Anejo 2**.

12. El Préstamo I está evidenciado por un *Pagaré* emitido el 12 de enero de 2005, suscrito por los Demandados a favor de BPPR, o su orden, endosado a favor de PRAP posteriormente endosado a favor de Condado, por la suma principal de **$1,850,000.00** (en adelante, el "Pagaré Operacional II"). Copia del Pagaré Operacional II se hace formar parte de esta Demanda como **Anejo 3.**

13. El Pagaré Operacional II fue enmendado el 2 de julio de 2007 mediante una *Enmienda al Pagaré o Contrato de Préstamo* suscrita por BPPR, por Las Martas como deudora y por Barreto-Ginorio y JM Dairy Inc. como garantizadores solidarios, mediante la cual, se le concedió una moratoria (en lo sucesivo, la "Enmienda I al Pagaré Operacional II"). Copia de la Enmienda I al Pagaré Operacional II se hace formar parte de esta Demanda como **Anejo 4.**

AR2021CV00693 28/05/2021 05:26:21 pm Entrada Núm. 1 Página 5 de 18

Case: 22-02380-ESL12 Doc#: 114-41 Filed: 07/02/25 Entered: 07/02/25 15:20:01 Desc:
Exhibit XLI - Proof of Claim No. 5 filed by Condado Page 10 of 202

14.     El Pagaré Operacional II fue enmendado el 19 de marzo de 2008 mediante una *Enmienda al Pagaré o Contrato de Préstamo* suscrita por BPPR, por Las Martas como deudora y por Barreto-Ginorio y JM Dairy Inc. como garantizadores solidarios, mediante la cual, se le concedió una moratoria (en lo sucesivo, la "<u>Enmienda II al Pagaré Operacional II</u>"). Copia de la Enmienda II al Pagaré Operacional II se hace formar parte de esta Demanda como **Anejo 5.**

15.     El Pagaré Operacional II fue enmendado el 12 de agosto de 2008 mediante una *Enmienda al Pagaré o Contrato de Préstamo* suscrita por BPPR y Las Martas, mediante la cual, se le concedió una moratoria (en lo sucesivo, la "<u>Enmienda III al Pagaré Operacional II</u>"). Copia de la Enmienda III al Pagaré Operacional II se hace formar parte de esta Demanda como **Anejo 6.**

16.     El Pagaré Operacional II fue enmendado el 15 de octubre de 2008 mediante una *Enmienda al Pagaré o Contrato de Préstamo* suscrita por BPPR y Las Martas, mediante la cual, se le concedió una moratoria (en lo sucesivo, la "<u>Enmienda IV al Pagaré Operacional II</u>"). Copia de la Enmienda IV al Pagaré Operacional II se hace formar parte de esta Demanda como **Anejo 7.**

17.     El Pagaré Operacional II fue enmendado el 31 de diciembre de 2008 mediante una *Enmienda al Pagaré o Contrato de Préstamo* suscrita por BPPR y Las Martas, mediante la cual, se le concedió una moratoria (en lo sucesivo, la "<u>Enmienda V al Pagaré Operacional II</u>"). Copia de la Enmienda V al Pagaré Operacional II se hace formar parte de esta Demanda como **Anejo 8.**

18.     El Pagaré Operacional II fue enmendado el 18 de febrero de 2009 mediante una *Enmienda al Pagaré o Contrato de Préstamo* suscrita por BPPR, por Las Martas como deudora y por Barreto-Ginorio como garantizador solidario, mediante la cual, se le concedió una moratoria (en lo sucesivo, la "<u>Enmienda VI al Pagaré Operacional II</u>"). Copia de la Enmienda VI al Pagaré Operacional II se hace formar parte de esta Demanda como **Anejo 9.**

19.     El Pagaré Operacional II fue enmendado el 2 de noviembre de 2009 mediante una *Enmienda al Pagaré o Contrato de Préstamo* suscrita por BPPR, por Las Martas como deudora y por Barreto-Ginorio como garantizador solidario, mediante la cual, entre otras cosas, se reestructuró el Préstamo, se enmendó la tasa de interés a la Tasa de Interés Preferencial ("Prime Rate"), más una tasa de interés al 3% por encima de la Tasa de Interés Preferencial, se extendió el vencimiento al 12 de enero de 2015 (en lo sucesivo, la "<u>Enmienda VII al Pagaré Operacional II</u>").

AR2021CV00693 28/05/2021 05:26:21 pm Entrada Núm. 1 Página 6 de 18

Case: 22-02380-ESL12  Claim 21-1 Part 3 Filed 07/02/23 Entered 07/02/23 15:20:00 Desc Exhibit XLI - Proof of Claim Nrae 16 fuel 18y Condado  Page 11 of 202

Copia de la Enmienda VII al Pagaré Operacional II se hace formar parte de esta Demanda como **Anejo 10.**

20.     El Pagaré Operacional II fue enmendado el 15 de octubre de 2010 mediante una *Enmienda al Pagaré o Contrato de Préstamo* suscrita por BPPR, por Las Martas como deudora y por Barreto-Ginorio como garantizador solidario, mediante la cual, entre otras cosas, se enmendó la tasa de interés a una tasa de 0.25% por encima de la Tasa de Interés Preferencial ("Prime Rate"), más una tasa de interés al 3.25% por encima de la Tasa de Interés Preferencial (en lo sucesivo, la "Enmienda VIII al Pagaré Operacional II"). Copia de la Enmienda VIII al Pagaré Operacional II se hace formar parte de esta Demanda como **Anejo 11.**

21.     El Pagaré Operacional II fue enmendado el 26 de enero de 2011 mediante una *Enmienda al Pagaré o Contrato de Préstamo* suscrita por BPPR, por Las Martas como deudora y por Barreto-Ginorio como garantizador solidario, mediante la cual, se le concedió una moratoria (en lo sucesivo, la "Enmienda IX al Pagaré Operacional II"). Copia de la Enmienda IX al Pagaré Operacional II se hace formar parte de esta Demanda como **Anejo 12.**

22.     El Pagaré Operacional II fue enmendado el 2 de mayo de 2011 mediante una *Enmienda al Pagaré o Contrato de Préstamo* suscrita por BPPR, por Las Martas como deudora y por Barreto-Ginorio como garantizador solidario, mediante la cual, se le concedió una moratoria (en lo sucesivo, la "Enmienda X al Pagaré Operacional II"). Copia de la Enmienda X al Pagaré Operacional II se hace formar parte de esta Demanda como **Anejo 13.**

23.     Condado es el tenedor físico y por endoso del Pagaré Operacional I y el Pagaré Operacional II, según enmendados.

**ii.     El Contrato de Préstamo II**

24.     El 8 de octubre de 2007, el acreedor en ese momento Banco Popular de Puerto Rico (en adelante, "BPPR"), Barreto-Ginorio como deudor, y Las Martas y J.M. Dairy, Inc. como garantizadores solidarios, suscribieron un *Contrato de Préstamo*, autenticado bajo el afidávit número 30,720 del Notario Público Francisco J. Arraiza Donate, mediante el cual se le concedió un préstamo a término por la suma principal de **$375,000.00**, devengando intereses diariamente a una tasa anual igual al 0.5% por encima de la Tasa de Interés Preferencial ("Prime Rate"), más una

AR2021CV00693 28/05/2021 05:26:21 pm Entrada Núm. 1 Página 7 de 18

Case: 22-02380-ESL12 Doc#: 114-41 Filed: 07/02/23 Entered: 07/02/23 15:16:20 Desc: Exhibit XLI - Proof of Claim No. 17 filed by Condado Page 12 of 202

tasa de interés al 3.50% por encima de la tasa pactada en caso de incumplimiento (en adelante, el "Préstamo II"). Copia fiel y exacta del Préstamo II se hace formar parte de esta Demanda como **Anejo 14**.

25.     El Préstamo II está evidenciado por un *Pagaré* emitido el 8 de octubre de 2007, suscrito por Barreto-Ginorio a favor de BPPR, o su orden, endosado a favor de PRAP, posteriormente endosado a favor de Condado, por la suma principal de **$375,000.00** (en adelante, el "Pagaré Operacional III"). Copia del Pagaré Operacional III se hace formar parte de esta Demanda como **Anejo 15.**

26.     El Pagaré Operacional III fue enmendado el 19 de marzo de 2008 mediante una *Enmienda al Pagaré o Contrato de Préstamo* suscrita por BPPR, por Barreto-Ginorio como deudor y por Las Martas y J.M. Dairy, Inc. como garantizadores solidarios, mediante la cual, se le concedió una moratoria (en lo sucesivo, la "Enmienda I al Pagaré Operacional III"). Copia de la Enmienda I al Pagaré Operacional III se hace formar parte de esta Demanda como **Anejo 16.**

27.     El Pagaré Operacional III fue enmendado el 15 de octubre de 2008 mediante una *Enmienda al Pagaré o Contrato de Préstamo* suscrita por BPPR, por Barreto-Ginorio, mediante la cual, se le concedió una moratoria (en lo sucesivo, la "Enmienda II al Pagaré Operacional III"). Copia de la Enmienda II al Pagaré Operacional III se hace formar parte de esta Demanda como **Anejo 17.**

28.     El Pagaré Operacional III fue enmendado el 18 de febrero de 2009 mediante una *Enmienda al Pagaré o Contrato de Préstamo* suscrita por BPPR, por Barreto-Ginorio como deudor y por Las Martas y J.M. Dairy, Inc. como garantizadores solidarios, mediante la cual, se le concedió una moratoria (en lo sucesivo, la "Enmienda III al Pagaré Operacional III"). Copia de la Enmienda III al Pagaré Operacional III se hace formar parte de esta Demanda como **Anejo 18.**

29.     El Pagaré Operacional III fue enmendado el 2 de noviembre de 2009 mediante una *Enmienda al Pagaré o Contrato de Préstamo* suscrita por BPPR, por Barreto-Ginorio como deudor y por Las Martas y J.M. Dairy, Inc. como garantizadores solidarios, mediante la cual, se le concedió una moratoria (en lo sucesivo, la "Enmienda IV al Pagaré Operacional III"). Copia de la Enmienda IV al Pagaré Operacional III se hace formar parte de esta Demanda como **Anejo 19.**

**Demanda**
Condado 5 LLC v. Las Martas, Inc., *et al.*
Página 8 de 18

30.  El Pagaré Operacional III fue enmendado el 14 de octubre de 2010 mediante una *Enmienda al Pagaré o Contrato de Préstamo* suscrita por BPPR, por Barreto-Ginorio como deudor y por Las Martas y J.M. Dairy, Inc. como garantizadores solidarios, mediante la cual, se le concedió una moratoria (en lo sucesivo, la "Enmienda V al Pagaré Operacional III"). Copia de la Enmienda V al Pagaré Operacional III se hace formar parte de esta Demanda como **Anejo 20.**

31.  El Pagaré Operacional III fue enmendado el 26 de enero de 2011 mediante una *Enmienda al Pagaré o Contrato de Préstamo* suscrita por BPPR, por Barreto-Ginorio como deudor y por Las Martas y J.M. Dairy, Inc. como garantizadores solidarios, mediante la cual, se le concedió una moratoria y se extendió el vencimiento al 8 de abril de 2011 (en lo sucesivo, la "Enmienda VI al Pagaré Operacional III"). Copia de la Enmienda VI al Pagaré Operacional III se hace formar parte de esta Demanda como **Anejo 21.**

32.  El Pagaré Operacional III fue enmendado el 20 de abril de 2011 mediante una *Enmienda al Pagaré o Contrato de Préstamo* suscrita por BPPR, por Barreto-Ginorio como deudor y por Las Martas y J.M. Dairy, Inc. como garantizadores solidarios, mediante la cual, se le concedió una moratoria y se extendió el vencimiento al 8 de julio de 2011 (en lo sucesivo, la "Enmienda VII al Pagaré Operacional III"). Copia de la Enmienda VII al Pagaré Operacional III se hace formar parte de esta Demanda como **Anejo 22.**

33.  Condado es el tenedor físico y por endoso del Pagaré Operacional III, según enmendado.

**B.  Colateral Hipotecaria**

34.  Como colateral para asegurar el pago y cumplimiento puntual de sus obligaciones bajo el Préstamo I y toda obligación presente y futura de Las Martas para con BPPR, ahora Condado, los Demandados le entregaron a BPPR, ahora Condado, en carácter prendario los siguientes pagarés hipotecario, los cuales actualmente están en posesión de Condado, en virtud de un *Acuerdo de Gravamen Mobiliario*, suscrito el 12 de enero de 2005 y autenticado mediante el afidávit número 28,484, del Notario Público Francisco J. Arraiza Donate (en adelante, el "Contrato de Prenda I"). Copia del Contrato de Prenda I se hace formar parte de esta Demanda como **Anejo 23**:

AR2021CV00693 28/05/2021 05:26:21 pm Entrada Núm. 1 Página 9 de 18

Case: 22-02380-ESL12   Doc#: 111-41 Filed: 07/02/23 Entered: 07/02/25 15:20:20  Desc:
Exhibit XLI - Proof of Claim Mtge Filed by Condado   Page 14 of 202

a. Pagaré hipotecario emitido por los Barreto-Hernández, el 13 de mayo de 1994, a la orden del Portador, debidamente endosado a favor de PRAP, posteriormente endosado a favor de Condado, por la suma principal de **$250,000.00**, autenticado mediante afidávit número 16,117 del Notario Público Francisco J. Arraiza Donate (en adelante, el "Pagaré Hipotecario I"). Copia del Pagaré Hipotecario I se acompaña y se hace formar parte de esta Demanda como **Anejo 24**. El Pagaré Hipotecario I está garantizado por hipoteca constituida mediante la Escritura Número 89 de Hipoteca en Garantía de Pagaré al Portador otorgada en Hatillo, Puerto Rico, el 13 de mayo de 1994, ante el Notario Público Francisco J. Arraiza Donate, la cual se encuentra inscrita al folio 255 del tomo 289 de Hatillo, finca **2,333**, Registro de la Propiedad, Sección II de Arecibo (en adelante, la "Hipoteca I"), modificada mediante Escritura Número 62 de Enmienda a Pagaré e Hipoteca, otorgada en Manatí, Puerto Rico, el 10 de octubre de 1995 ante el Notario Público William A. Power, la cual se encuentra inscrita al folio 255 vuelto del tomo 289 de Hatillo, finca número 2,333, Registro de la Propiedad, Sección II de Arecibo (en adelante, la "Modificación I"), modificada mediante Escritura Número 2 de interrupción de Prescripción Liberatoria, otorgada en Hatillo, Puerto Rico, el 12 de enero de 2005 ante el Notario Público Francisco J. Arraiza Donate, la cual se encuentra inscrita al folio 79 del tomo 451 de Hatillo, finca número 2,333, Registro de la Propiedad, Sección II de Arecibo (en adelante, la "Modificación II"). Copia de la Hipoteca I, la Modificación I y la Modificación II, se acompañan y se hacen formar parte de esta Demanda como **Anejos 25, 26 y 27**.

b. Pagaré hipotecario emitido por los Barreto-Hernández, el 10 de octubre de 1995, a favor de Banco Central Hispano-Puerto Rico, o a su orden, debidamente endosado a favor de PRAP, posteriormente endosado a favor de Condado, por la suma principal de **$174,400.00**, autenticado mediante afidávit número 8,368 del Notario Público William A. Power (en adelante, el "Pagaré Hipotecario II"). Copia del Pagaré Hipotecario II se acompaña y se hace formar parte de esta Demanda como **Anejo 28**. El Pagaré Hipotecario I está garantizado por hipoteca constituida mediante la Escritura Número 63 de Hipoteca otorgada en Manatí, Puerto Rico, el 10 de octubre de 1995, ante el Notario Público William A. Power, la cual se encuentra inscrita al folio 255 vuelto del tomo 289 de Hatillo, finca **2,333**, Registro de la Propiedad, Sección II de Arecibo (en adelante, la "Hipoteca II"), modificada mediante Escritura Número 3 de Interrupción de Prescripción Liberatoria, otorgada en Hatillo, Puerto Rico, el 12 de enero de 2005 ante el Notario Público Francisco J. Arraiza Donate, la cual se encuentra inscrita al folio 80 del tomo 451 de Hatillo, finca número 2,333, Registro de la Propiedad, Sección II de Arecibo (en adelante, la "Modificación III"). Copia de la Hipoteca II y la Modificación III se acompañan y se hacen formar parte de esta Demanda como **Anejos 29 y 30.**

c. Pagaré hipotecario emitido por los Barreto-Hernández, el 6 de marzo de 1998, a favor de BPPR, o a su orden, debidamente endosado a favor de PRAP, posteriormente endosado a favor de Condado, por la suma principal de **$125,600.00**, autenticado mediante afidávit número 21,060 del Notario Público Francisco J. Arraiza Donate (en adelante, el "Pagaré Hipotecario III"). Copia del Pagaré Hipotecario III se acompaña y se hace formar parte de esta Demanda como **Anejo 31**. El Pagaré Hipotecario III está garantizado por hipoteca constituida mediante la Escritura Número 31 de Hipoteca en Garantía de Pagaré otorgada en

AR2021CV00693 28/05/2021 05:26:21 pm Entrada Núm. 1 Página 10 de 18

Case: 22-02380-ESL12 Doc#: 111-41 Filed: 07/02/23 Entered: 07/02/23 15:18:10 Desc: Exhibit XLI - Proof of Claim Page 1 of 16 Filed by Condado Page 15 of 202

Hatillo, Puerto Rico, el 6 de marzo de 1998, ante el Notario Público Francisco J. Arraiza Donate, la cual se encuentra inscrita al folio 257 del tomo 289 de Hatillo, finca **2,333**, Registro de la Propiedad, Sección II de Arecibo (en adelante, la "Hipoteca III"), modificada mediante Escritura Número 4 de Interrupción de Prescripción Liberatoria, otorgada en Hatillo, Puerto Rico, el 12 de enero de 2005 ante el Notario Público Francisco J. Arraiza Donate, la cual se encuentra inscrita al folio 81 del tomo 451 de Hatillo, finca número 2,333, Registro de la Propiedad, Sección II de Arecibo (en adelante, la "Modificación IV"). Copia de la Hipoteca III y la Modificación IV se acompañan y se hacen formar parte de esta Demanda como **Anejos 32 y 33.**

d. Pagaré hipotecario emitido por los Barreto-Hernández, el 11 de abril de 2002, a favor de BPPR, o a su orden, debidamente endosado a favor de PRAP, posteriormente endosado a favor de Condado, por la suma principal de **$165,000.00**, autenticado mediante afidávit número 26,004 del Notario Público Francisco J. Arraiza Donate (en adelante, el "Pagaré Hipotecario IV"). Copia del Pagaré Hipotecario IV se acompaña y se hace formar parte de esta Demanda como **Anejo 34**. El Pagaré Hipotecario IV está garantizado por hipoteca constituida mediante la Escritura Número 59 de Hipoteca en Garantía de Pagaré otorgada en Hatillo, Puerto Rico, el 11 de abril de 2002, ante el Notario Público Francisco J. Arraiza Donate, la cual se encuentra inscrita al folio 257 del tomo 289 de Hatillo, finca **2,333**, Registro de la Propiedad, Sección II de Arecibo (en adelante, la "Hipoteca IV"). Copia de la Hipoteca IV se acompaña y se hace formar parte de esta Demanda como **Anejo 35**.

e. Pagaré hipotecario emitido por los Barreto-Hernández, el 11 de marzo de 2003, a favor de BPPR, o a su orden, debidamente endosado a favor de PRAP, posteriormente endosado a favor de Condado, por la suma principal de **$180,500.00**, autenticado mediante afidávit número 26,850 del Notario Público Francisco J. Arraiza Donate (en adelante, el "Pagaré Hipotecario V"). Copia del Pagaré Hipotecario V se acompaña y se hace formar parte de esta Demanda como **Anejo 36**. El Pagaré Hipotecario V está garantizado por hipoteca constituida mediante la Escritura Número 23 de Hipoteca en Garantía de Pagaré otorgada en Hatillo, Puerto Rico, el 11 de marzo de 2003, ante el Notario Público Francisco J. Arraiza Donate, la cual se encuentra inscrita al folio 258 del tomo 289 de Hatillo, finca **2,333**, Registro de la Propiedad, Sección II de Arecibo (en adelante, la "Hipoteca V"). Copia de la Hipoteca V se acompaña y se hace formar parte de esta Demanda como **Anejo 37**.

35. Las Hipotecas I, II, III, IV, y V que garantizan los Pagarés Hipotecarios I, II, III, IV, y V gravan la siguiente propiedad, cuyos titulares, por información y creencia son los Barreto-Hernández:

a. "**RÚSTICA:** Finca radicada en el Barrio Naranjito del término municipal de Hatillo, Puerto Rico, compuesta de 27.4842 cuerdas, equivalentes a 108,023.50 metros cuadrados. En lindes por el NORTE, con Luis F. Peraza, Gregorio Toledo y servidumbre de paso existente; por el SUR, con Gregorio Toledo; por el ESTE, con Ivan Amador y Sucesión Iván Amador, y por el OESTE, con Gregorio Toledo."

AR2021CV00693 28/05/2021 05:26:21 pm Entrada Núm. 1 Página 11 de 18
Case: 22-02380-ESL12 Doc#: 114-1 Part 3 Filed: 07/02/23 Entered: 07/02/23 18:12:20 Desc:
Exhibit XLI - Proof of Claim Filed by Condado   Page 16 of 202

Finca número 2,333 inscrita al folio 256 vuelto del tomo 289 de Hatillo, Registro de la Propiedad de Arecibo, Segunda Sección (la "Propiedad I"). Copia de un estudio de título de la Finca 2,333 se acompaña y se hace formar parte de esta Demanda como **Anejo 38.**

36.    Los gravámenes sobre los Pagarés Hipotecarios I, II, III, IV y V quedaron debidamente perfeccionados al haberse entregado al acreedor hipotecario la posesión de los mencionados pagarés mismos, cuyo tenedor al presente lo es Condado.

37.    Como colateral para asegurar el pago y cumplimiento puntual de sus obligaciones bajo el Préstamo II y toda obligación presente y futura de Barreto-Ginorio para con BPPR, ahora Condado, Barreto-Ginorio le entregó a BPPR, ahora Condado, en carácter prendario los siguientes pagarés hipotecario, los cuales actualmente están en posesión de Condado, en virtud de un *Acuerdo de Gravamen Mobiliario*, suscrito el 8 de octubre de 2007 y autenticado mediante el afidávit número 30,710, del Notario Público Francisco J. Arraiza Donate (en adelante, el "Contrato de Prenda II"). Copia del Contrato de Prenda II se hace formar parte de esta Demanda como **Anejo 39:**

a.    Pagaré hipotecario emitido por Barreto-Ginorio, el 21 de julio de 2006, a favor de BPPR, o su orden, debidamente endosado a favor de PRAP, posteriormente endosado a favor de Condado, por la suma principal de **$150,000.00**, autenticado mediante afidávit número 29,764 del Notario Público Francisco J. Arraiza Donate (en adelante, el "Pagaré Hipotecario VI"). Copia del Pagaré Hipotecario VI se acompaña y se hace formar parte de esta Demanda como **Anejo 40**. El Pagaré Hipotecario VI está garantizado por hipoteca constituida mediante la Escritura Número 100 de Hipoteca en Garantía de Pagaré otorgada en Hatillo, Puerto Rico, el 21 de julio de 2006, ante el Notario Público Francisco J. Arraiza Donate, la cual se encuentra inscrita al folio 71 del tomo 1,240 de Arecibo, finca **47,349**, Registro de la Propiedad, Sección I de Arecibo (en adelante, la "Hipoteca VI"). Copia de la Hipoteca VI se acompaña y se hace formar parte de esta Demanda como **Anejo 41.**

b.    Pagaré hipotecario emitido por Barreto-Ginorio, el 1 de septiembre de 2006, a favor de BPPR, o su orden, debidamente endosado a favor de PRAP, posteriormente endosado a favor de Condado, por la suma principal de **$50,000.00**, autenticado mediante afidávit número 29,811 del Notario Público Francisco J. Arraiza Donate (en adelante, el "Pagaré Hipotecario VII"). Copia del Pagaré Hipotecario VII se acompaña y se hace formar parte de esta Demanda como **Anejo 42**. El Pagaré Hipotecario VII está garantizado por hipoteca constituida mediante la Escritura Número 114 de Hipoteca en Garantía de Pagaré otorgada en Hatillo, Puerto Rico, el 1 de septiembre de 2006, ante el Notario Público Francisco J. Arraiza Donate, la cual se encuentra inscrita al folio 71 del tomo 1,240 de Arecibo, finca **47,349**, Registro de la Propiedad, Sección I de Arecibo (en adelante, la "Hipoteca VII"). Copia de la Hipoteca VII se acompaña y se hace formar parte de esta Demanda como **Anejo 43**.

AR2021CV00693 28/05/2021 05:26:21 pm Entrada Núm. 1 Página 12 de 18

Case: 22-02380-ESL12   Doc#: 111-1   Filed: 07/02/23   Entered: 07/02/23 15:20:10   Desc:
Exhibit XLI - Proof of Claim Page 17 of 16 by Condado   Page 17 of 202

c.  Pagaré hipotecario emitido por Barreto-Ginorio, el 8 de octubre de 2007, a favor de BPPR, o a su orden, debidamente endosado a favor de PRAP, posteriormente endosado a favor de Condado, por la suma principal de **$175,000.00**, autenticado mediante afidávit número 30,708 del Notario Público Francisco J. Arraiza Donate (en adelante, el "Pagaré Hipotecario VIII"). Copia del Pagaré Hipotecario VIII se acompaña y se hace formar parte de esta Demanda como **Anejo 44**. El Pagaré Hipotecario VIII está garantizado por hipoteca constituida mediante la Escritura Número 105 de Hipoteca en Garantía de Pagaré otorgada en Hatillo, Puerto Rico, el 8 de octubre de 2007, ante el Notario Público Francisco J. Arraiza Donate, la cual se encuentra inscrita al folio 72 del tomo 1,240 de Arecibo, finca **47,349**, Registro de la Propiedad, Sección I de Arecibo (en adelante, la "Hipoteca VIII"). Copia de la Hipoteca VIII se acompaña y se hace formar parte de esta Demanda como **Anejo 45.**

38.  Las Hipotecas VI, VII y VIII que garantizan los Pagarés Hipotecarios VI, VII y VIII gravan la siguiente propiedad, cuyo titular, por información y creencia, es Barreto-Ginorio:

a.  "**RÚSTICA**: Solar radicado Radicada en el Barrio Hato Abajo del término municipal de Arecibo, con una cabida de 1,427.702 metros cuadrados 1,427.702 metros cuadrados, equivalentes a 0.3632 cuerdas. En lindes por el NORTE, son el solar #19 agregado al solar 20 propiedad de Alejandro Rivera de Léon; por el SUR, con el solar #17 propiedad del Dr. William Pérez Cruz; por el ESTE, con calle de uso público hoy calle municipal que conduce a la carretera estatal PR-653; y por el OESTE, con Esteban Mena."

Finca número 47,349 inscrita al folio 70 del tomo 1,240 de Arecibo, Registro de la Propiedad, Primera Sección de Arecibo (la "Propiedad II"). Copia de un estudio de título de la Propiedad II se acompaña y se hace formar parte de esta Demanda como **Anejo 46.**

39.  Los gravámenes sobre los Pagarés Hipotecarios VI, VII y VIII quedaron debidamente perfeccionados al haberse entregado al acreedor hipotecario la posesión de los mencionados pagarés hipotecarios, cuyo tenedor al presente lo es Condado.

40.  Al presente, Condado se encuentra en posesión de los originales de los Pagarés Hipotecarios I, II, III, IV, V, VI, VII y VIII que garantizan los Préstamos I y II los cuales son todos instrumentos negociables bajo las disposiciones de la Ley de Transacciones Comerciales de Puerto Rico (19 LPRA § 401 et seq.).

41.  Estando los Pagarés Hipotecarios I, II, III, IV, V, VI, VII y VIII endosados a la orden de Condado y estando este en posesión de los mismos, Condado es su tenedor y por lo tanto, es una persona con derecho a exigir su pago y cumplimiento.

AR2021CV00693 28/05/2021 05:26:21 pm Entrada Núm. 1 Página 13 de 18

Case: 22-02380-ESL12   Doc#: 111-41   Filed: 07/07/23   Entered: 07/07/23 15:15:20   Desc:
Exhibit XLI - Proof of Claim Part 3 filed by Condado   Page 18 of 202

**Demanda**
Condado 5 LLC v. Las Martas, Inc., *et al.*
Página 13 de 18

---

### C.     Colateral Adicional y Garantías

42.     Como colateral para asegurar el pago y cumplimiento puntual de sus obligaciones bajo el Préstamo I, y toda obligación presente y futura, los Barreto-Hernández entregaron a BPPR, ahora Condado, en carácter prendario los Pagarés Hipotecarios I, II, II, IV y V, en virtud de un Documento de Prenda, suscrito y juramentado ante el Notario Público Francisco J. Arraiza Donate mediante el afidávit número 28,483 del 12 de enero de 2005 (en adelante, el "Contrato de Prenda III"). Copia del Contrato de Prenda III se hace formar parte de esta Demanda como **Anejo 47.**

43.     Como colateral para asegurar el pago y cumplimiento puntual de sus obligaciones bajo el Préstamo II, y toda obligación presente y futura, Barreto-Ginorio entregó a BPPR, ahora Condado, en carácter prendario los Pagarés Hipotecarios VI, VII, y VIII, en virtud de un Documento de Prenda, suscrito y juramentado ante el Notario Público Francisco J. Arraiza Donate mediante el afidávit número 30,709 del 8 de octubre de 2007 (en adelante, el "Contrato de Prenda IV"). Copia del Contrato de Prenda IV se hace formar parte de esta Demanda como **Anejo 48.**

44.     Como colateral para asegurar el pago y cumplimiento puntual de sus obligaciones bajo el Préstamo I y toda obligación presente y futura de Las Martas para con BPPR, ahora Condado, el 12 de enero de 2005, BPPR, ahora Condado, y Las Martas, suscribieron un *Acuerdo de Gravamen Mobiliario*, autenticado bajo el afidávit número 28,485 del Notario Público Francisco J. Arraiza Donate, mediante el cual, entre otras cosas, Las Martas, concedió y otorgó, a favor de BPPR, ahora Condado, un gravamen mobiliario en primer rango continuo y un interés asegurado sobre la cantidad de 58,700 cuartillos de cuota para producir leche cruda cada catorce (14) días (en adelante, el "Gravamen Mobiliario I"). Copia del Gravamen Mobiliario I se hace formar parte de esta Demanda como **Anejo 49.**

45.     El Gravamen Mobiliario I quedó debidamente perfeccionado mediante la radicación de una declaración de financiamiento en el Departamento de Estado de Puerto Rico (en lo sucesivo, la "Declaración de Financiamiento I") y al haberse registrado en la Oficina Para la Reglamentación de la Industria Lechera (ORIL). Copia de la Declaración de Financiamiento I y de la Certificación de ORIL se hacen formar parte de esta Demanda como **Anejos 50 y 51.**

AR2021CV00693 28/05/2021 05:26:21 pm Entrada Núm. 1 Página 14 de 18

Case: 22-02380-ESL12 Doc#: 111-41 Filed: 07/07/23 Entered: 07/07/23 15:26:00 Desc: Exhibit XLI - Proof of Claim Page 14 of 16 Filed by Condado   Page 19 of 202

46.      Como colateral para asegurar el pago y cumplimiento puntual de sus obligaciones bajo el Préstamo I y toda obligación presente y futura de Las Martas para con BPPR, ahora Condado, el 12 de enero de 2005, BPPR, ahora Condado, y Las Martas, suscribieron un *Acuerdo de Gravamen Mobiliario*, autenticado bajo el afidávit número 28,487 del Notario Público Francisco J. Arraiza Donate, mediante el cual, entre otras cosas, Las Martas, concedió y otorgó, a favor de BPPR, ahora Condado, un gravamen mobiliario continuo y un interés asegurado sobre las cuentas por cobrar con la planta elaboradora Suiza Dairy, Corp. adquiridas actualmente y a ser adquiridas posteriormente, o en el futuro, por Las Martas, en el pago de la venta de leche cruda a la referida planta elaboradora, según liquidación cada catorce (14) días, el pago preferente de la cantidad de $7,450.00 quincenales, por 118 quincenas (en adelante, el "Gravamen Mobiliario II"). Copia del Gravamen Mobiliario II se hace formar parte de esta Demanda como **Anejo 52.**

47.      El Gravamen Mobiliario II quedó debidamente perfeccionado mediante la radicación de una declaración de financiamiento en el Departamento de Estado de Puerto Rico (en lo sucesivo, la "Declaración de Financiamiento II"). Copia de la Declaración de Financiamiento II se hace formar parte de esta Demanda como **Anejo 53.**

48.      Como colateral para asegurar el pago y cumplimiento puntual de sus obligaciones bajo el Préstamo II y toda obligación presente y futura de Barreto-Ginorio para con BPPR, ahora Condado, el 8 de octubre de 2007, BPPR, ahora Condado, y Las Martas, suscribieron un *Acuerdo de Gravamen Mobiliario*, autenticado bajo el afidávit número 30,712 del Notario Público Francisco J. Arraiza Donate, mediante el cual, entre otras cosas, Las Martas, concedió y otorgó, a favor de BPPR, ahora Condado, un gravamen mobiliario continuo y un interés asegurado sobre las cuentas por cobrar con la planta elaboradora Vaquería Tres Monjitas, Inc., adquiridas actualmente y a ser adquiridas posteriormente, o en el futuro, por Las Martas, en el pago de la venta de leche cruda a la referida planta elaboradora, según liquidación cada catorce (14) días, el pago preferente de la cantidad de $800.00 quincenales, cuya cantidad tendrá prioridad preferente sobre cualquiera otros pagos hasta que el acreedor notifique a la mencionada planta elaboradora, la terminación de los mismos (en adelante, el "Gravamen Mobiliario III"). Copia del Gravamen Mobiliario III se hace formar parte de esta Demanda como **Anejo 54.**

AR2021CV00693 28/05/2021 05:26:21 pm Entrada Núm. 1 Página 15 de 18

Case: 22-02380-ESL12 Doc#: 111-41 Filed: 07/02/25 Entered: 07/02/25 13:20:10 Desc: Exhibit XLI - Proof of Claim Page 15 of 16 Page 20 of 202

49.     El Gravamen Mobiliario III quedó debidamente perfeccionado mediante la radicación de una declaración de financiamiento en el Departamento de Estado de Puerto Rico (en lo sucesivo, la "<u>Declaración de Financiamiento III</u>"). Copia de la Declaración de Financiamiento III se hace formar parte de esta Demanda como **Anejo 55.**

50.     El 12 de enero de 2005, los Barreto-Hernández otorgaron una Garantía Ilimitada y Continua, autenticada bajo el afidávit número 28,490 del Notario Público Francisco J. Arraiza Donate (en lo sucesivo, la "<u>Garantía I</u>"), mediante la cual garantizaron solidariamente el pago de todas las obligaciones presentes y futuras de Las Martas. Copia de la Garantía I se hace formar parte de esta Demanda como **Anejo 56**.

51.     El 8 de octubre de 2007, Las Martas otorgaron una Garantía Ilimitada y Continua, autenticada bajo el afidávit número 30,718 del Notario Público Francisco J. Arraiza Donate (en lo sucesivo, la "<u>Garantía II</u>"), mediante la cual garantizó solidariamente el pago de todas las obligaciones presentes y futuras de Barreto-Ginorio. Copia de la Garantía II se hace formar parte de esta Demanda como **Anejo 57**.

### V.     CAUSAS DE ACCIÓN
### PRIMERA CAUSA DE ACCIÓN: COBRO DE DINERO

52.     Condado incorpora por referencia las alegaciones vertidas en los párrafos anteriores.

53.     Los Demandados incumplieron sus obligaciones de pago bajo el Préstamo I y demás documentos de colateral relacionados y antes señalados.

54.     Los Demandados adeudan a Condado al **19 de mayo de 2021,** en virtud del Préstamo I, una suma no menor de **$1,215,536.60**, la cual se compone de: (i) **$1,202,818.82** por concepto de principal; más (ii) **$12,744.78** por concepto de intereses acumulados y no pagados, los cuales continúan acumulándose a razón de **$142.00 diarios**.

55.     Barreto-Ginorio y Las Martas incumplieron sus obligaciones de pago bajo el Préstamo II y demás documentos de colateral relacionados y antes señalados.

56.     Barreto-Ginorio y Las Martas adeudan a Condado al **19 de mayo de 2021,** en virtud del Préstamo II, una suma no menor de **$385,317.71**, la cual se compone de: (i) **$267,728.59** por concepto de principal; más (ii) **$117,589.12** por concepto de intereses acumulados y no pagados,

AR2021CV00693 28/05/2021 05:26:21 pm Entrada Núm. 1 Página 16 de 18

Case: 22-02380-ESL12   Claim 1-1 Part 3 ed 07/02/23 Enter Desc 07/02/25 16:20:00 Desc
Exhibit XLI - Proof of Claim Part 1 filed by Condado   Page 21 of 202

**Demanda**
Condado 5 LLC v. Las Martas, Inc., *et al.*
Página 16 de 18

los cuales continúan acumulándose a razón de **$31.61 diarios**.

57.     Además, los Demandados adeudan a Condado una suma agregada no menor a **$127,050.00** por concepto de costas, gastos y honorarios de abogado, según dispuesto en los Pagares Hipotecarios I, II, III, IV, V, VI, VII y VIII.

58.     Al presente, las respectivas obligaciones de pago de los Demandados se encuentran vencidas, son líquidas e inmediatamente exigibles.

59.     A pesar de ello, al presente los Demandados están en incumplimiento de sus obligaciones de pago asumidas bajo el préstamo y los demás documentos relacionados, y no han saldado dicha deuda en su totalidad.

## SEGUNDA CAUSA DE ACCIÓN:
## EJECUCIÓN DE HIPOTECA

60.     Condado incorpora por referencia las alegaciones vertidas en los párrafos anteriores.

61.     Al momento, los Demandados le adeudan a Condado las cantidades reseñadas anteriormente, las cuales están vencidas, son líquidas y exigibles.

62.     En ausencia de pago por los Demandados, Condado solicita respetuosamente a este Honorable Tribunal que ordene la ejecución de las Hipotecas que garantizan las obligaciones de pago de los Demandados reseñadas en esta Demanda. Lo anterior se solicita de modo que el importe obtenido por medio de la venta judicial de las propiedades gravadas pueda ser utilizado para satisfacer las obligaciones reclamadas por Condado en la presente Demanda hasta donde sea posible.

63.     En ausencia del pago total, Condado solicita respetuosamente a este Honorable Tribunal que ordene el embargo de bienes muebles e inmuebles de los Demandados.

## SÚPLICA

POR TODO LO CUAL, Condado muy respetuosamente solicita a este Honorable Tribunal que declare HA LUGAR a la presente Demanda y, en su consecuencia, dicte Sentencia contra la parte demandada, con los siguientes pronunciamientos:

i.      Condene a los Demandados a satisfacer las sumas detalladas en la Primera Causa de Acción.

AR2021CV00693 28/05/2021 05:26:21 pm Entrada Núm. 1 Página 17 de 18

Case: 22-02380-ESL12 Doc#: 111-41 Filed: 07/02/23 Entered: 07/02/23 15:20:16 Desc: Exhibit XLI - Proof of Claim Page 17 of 16 by Condado   Page 22 of 202

**Demanda**
Condado 5 LLC v. Las Martas, Inc., *et al.*
Página 17 de 18

ii. Disponga que Condado es tenedora y poseedora por causa onerosa de las facilidades de crédito descrita, y que tiene unas garantías válidamente constituidas sobre los aludidos Pagarés Hipotecarios I, II, III, IV, V, VI, VII y VIII a su vez garantizados con las Hipotecas I, II, III, IV, V, VI, VII y VIII que gravan las propiedades inmuebles descritas en esta Demanda.

iii. Disponga que, de no efectuarse el pago de las sumas adeudadas, las hipotecas en primer rango sean ejecutadas mediante venta en pública subasta de las propiedades inmuebles descritas en la presente Demanda.

iv. Disponga que, una vez celebrada la subasta y efectuada la venta judicial, el Alguacil proceda a poner al licitador victorioso en posesión física de las propiedades inmuebles así ejecutadas dentro del término de **veinte (20) días** desde la fecha de la venta en pública subasta, sin que sea necesaria orden ulterior por parte del Honorable Tribunal.

v. Que, una vez vendidas y adjudicadas las propiedades inmuebles antes descritas en la subasta, y previo a los trámites de ley correspondientes, se cancelen los pagarés hipotecarios objeto de esta Demanda.

vi. Que se ordene, además, que una vez celebradas las subastas y adjudicadas las propiedades inmuebles, y previo a los trámites de ley, se ordene al Registrador de la Propiedad correspondiente para que proceda a cancelar los gravámenes posteriores que surjan del Registro de la Propiedad.

vii. Condene a los Demandados para que, en el caso de que el producto de la venta de las propiedades inmuebles ofrecidas en garantía no fuere suficiente para cubrir en su totalidad las deudas relacionadas y que dan lugar a la Sentencia, a pagar cualquier remanente insoluto que resulte, ordenando el embargo y eventual venta y ejecución de cualesquiera otros bienes muebles e inmuebles de los Demandados hasta dejar pagada cualquier deficiencia o parte insoluta de la Sentencia.

viii. Que se dicte cualquier otra providencia que en justicia y en equidad favorezcan a Condado y a la cual esta tenga derecho.

AR2021CV00693 28/05/2021 05:26:21 pm Entrada Núm. 1 Página 18 de 18
Case: 22-02380-ESL12 Doc#: 114 Part 3 Filed: 07/02/23 Entered: 07/02/25 Doc#: 20 Complaint
Exhibit XLI - Proof of Claim Page 18 of 16 by Condado Page 23 of 202

**Demanda**
Condado 5 LLC v. Las Martas, Inc., *et al.*
Página 18 de 18

RESPETUOSAMENTE SOMETIDA.

En San Juan, Puerto Rico, hoy 28 de mayo de 2021.



P.O Box 195168
San Juan, PR 00919-5168
221 Plaza Building, 5th Floor
Ponce de León Avenue
San Juan, PR 00917
Tel.: (787) 766-7000
Fax: (787) 766-7001

*/f/ Luis G. Parrilla Hernández*
Luis G. Parrilla Hernández
RUA Núm. 16,736
Email: lparrilla@ferraiuoli.com

*/f/ Gustavo A. Chico-Barris*
Gustavo A. Chico-Barris
RUA Núm. 14,538
Email: gchico@ferraiuoli.com

*/f/Eduardo M. González López*
Eduardo M. González López
RUA 22,208
Email: emgonzalez@ferraiuoli.com

Case 22-02380-ESL12   Claim 3-1 Part 1 Filed 07/02/23   Desc Main Document   Page 5 of 140
Case 18-02380-ESL12   Claim 3-1 Part 1 Filed 07/02/23   Desc Main Document   Page 5 of 140
Exhibit XLI - Proof of Claim No. 1 filed by Condado   Page 24 of 202

# CONTRATO DE PRÉSTAMO

Este contrato de préstamo (en adelante el "Contrato"), con fecha 12 de enero de 2005, se lleva a cabo entre **LAS MARTAS, INC.**, corporación creada y organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, con seguro social patronal número ██████ representada por su Presidente **DON JUAN MANUEL BARRETO GINORIO**, seguro social ██████ mayor de edad, casado con María Elena Hernández Ruiz, agricultor y vecino de Arecibo, Puerto Rico, cuyo carácter representativo se hará constar mediante Certificación de Resolución debidamente firmada por el Secretario de la Corporación en igual fecha del presente otorgamiento mediante testimonio de autenticidad número 28,482 ante el notario público Francisco J. Arraiza Donate, (en adelante "el Deudor"); **DON JUAN MANUEL BARRETO GINORIO**, seguro social ██████ y **DOÑA MARIA ELENA HERNANDEZ RUIZ**, seguro social ██████ mayores de edad, casados entre sí, agricultor él, ama de casa ella y vecinos de Arecibo, Puerto Rico (en adelante "Garantizadores Solidarios") y **BANCO POPULAR DE PUERTO RICO**, una corporación bancaria organizada y existente bajo las leyes del Estado Libre Asociado de Puerto Rico, con oficinas principales en Hato Rey, San Juan, Puerto Rico con número de identificación patronal ██████ (en adelante el "Banco"), representada en este acto por su oficial **DON JOSÉ ALBERTO PÉREZ LÓPEZ**, seguro social ██████ mayor de edad, casado con Julia Ivette Batista González, banquero y vecino de Arecibo, Puerto Rico, cuyo carácter representativo se acredita mediante Certificación de Resolución de la Junta de Directores del Banco Popular de Puerto Rico en sesión ordinaria celebrada el día quince (15) de julio de dos mil cuatro (2004) jurada y suscrita por Brunilda Santos de Alvarez, Secretaria Auxiliar de la Junta de Directores del Banco Popular de Puerto Rico, mediante affidavit número 4080 en San Juan, Puerto Rico el día quince (15) de julio de dos mil cuatro (2004) ante la notario público Paulette Lavergne Cuyar, cuyo Certificado de Resolución Yo, el Notario doy fe de haberlo tenido ante mí.

El Banco y el Deudor acuerdan contratar la facilidad de crédito que se describe más adelante, sujeto a, y de acuerdo con, los términos y condiciones que aquí se establecen.

## ARTÍCULO I
## TÉRMINOS Y CONDICIONES FINANCIERAS

**Sección 1.01. Definiciones:** Los términos no definidos en el texto del Contrato tendrán los respectivos significados que se indican en el Anejo 1.01(a) "Definiciones".

**Sección 1.02. (a)** El Banco acuerda conceder y el Deudor acuerda pagar el siguiente préstamo bajo los siguientes términos y condiciones financieras (en adelante, el "Préstamo"):

1. Tipo de préstamo y cantidad:

Préstamo a Término por la cantidad de UN MILLON OCHOCIENTOS CINCUENTA MIL DOLARES ($1,850,000.00) de principal.

2. Propósito del préstamo:

El Deudor ha solicitado del Banco un préstamo a término para consolidar deudas de la corporación y personales en un solo préstamo, cuyo propósito fue la compra de fincas, cuota, vacas y mejoras a las fincas y las facilidades, además de la compra de maquinaria y equipo para un total de $1,538,000.00 y un sobrante de los cuales $150,000.00 son para la compra de 5,000 cuartillos de cuota de leche, $72,000.00 para la compra de 36 novillas y $90,000.00 para capital de trabajo permanente y cubrir gastos inherentes en la transacción.

3. Tasa de interés aplicable:

El balance insoluto del principal devengará intereses diariamente a una tasa anual fluctuante igual a uno por ciento (1.00%) por debajo de la Tasa de Interés Preferencial ("Prime Rate").

4. Cantidad, frecuencia y número total de pagos de principal y de intereses y amortización de préstamo:

El desembolso será bajo un "Master Promissory Note" por ciento ochenta (180) días, no obstante el plan de pago comenzará treinta (30) días después del desembolso del Banco. El principal e intereses se pagarán en 59 plazos consecutivos de $14,900.00 cada uno, pagaderos mensuales, comenzando el 12 de febrero de 2005, y así sucesivamente hasta e incluyendo el 12 de diciembre de 2009, y un pago final del balance insoluto de principal e intereses a la fecha de vencimiento del Pagaré el 12 de enero de 2010 o cualquier extensión a esta fecha que autorice el Banco (la "Fecha de Vencimiento").

El último pago podrá incluir además del principal e interés insolutos cualquier otro cargo contemplado en este contrato que el Banco haya impuesto y que quedó sin pagar.

(b) Cálculo de Intereses: Los intereses se calcularán sobre una base de interés simple utilizando una fórmula cuyo numerador es el número exacto de días naturales transcurridos y el denominador 365 días.

(c) Cargos Aplicables:

Cargo Por Financiamiento: El Deudor se obliga a pagar al Banco cargos por financiamiento a razón de $7,000.00 del Préstamo al momento del desembolso inicial del mismo. A opción del Banco, se aplicará este cargo por financiamiento en la fecha de cada renovación o extensión, si alguna, del Préstamo.

Cargos Por Mora: Por cada pago que esté en mora por más de un día, el Deudor se obliga a pagar un cargo igual al tres por ciento (3%) del monto del pago

Exhibit XLI - Proof of Claim No. 3 filed by Condado    Page 26 of 202

moroso sujeto, al artículo 3 Sección 3.02 inciso (g).

<u>Cargo por PAGO POR ADELANTADO</u>:

En la eventualidad de que otra institución bancaria y/o financiera, durante el término de este contrato, hiciera una oferta cuyo efecto pueda ser el de cancelar este contrato antes de su vencimiento, los deudores se comprometen a someter la oferta de la otra institución, por escrito, al Banco quien determinará si puede igualar la misma. Si esta gestión no es realizada por los deudores, entonces el pago anticipado o adelantado que resulte eventualmente en el saldo del préstamo antes de la fecha convenida estará sujeto al cobro de un cargo por concepto de penalidad del cinco por ciento (5%). Si el Banco no igualara la oferta sometida, entonces no se impondrá penalidad por pago anticipado.

(d) Intereses por razón de incumplimiento (*Default Rate*): De ocurrir cualquier Causa de Incumplimiento (según se dispone más adelante en este contrato), el balance insoluto de principal devengará, inmediatamente y sin necesidad de notificación previa, intereses a razón de una tasa de interés dos por ciento (2%) sobre la tasa de interés pactada en la sección 1.02.3 (la "Tasa de Interés por Incumplimiento). Esta Tasa de aplicará desde el momento en que ocurra la Causa de Incumplimiento hasta que la misma sea subsanada en forma y sustancia a la entera satisfacción y discreción del Banco.

La obligación del Deudor de repagar el Préstamo está evidenciada por un pagaré (el "Pagaré") a la orden del Banco, copia del cual forma parte de este contrato como Anejo 1.01(b).

Sección 1.03 <u>Partidas en Reserva</u>

El Deudor incluirá junto con el pago periódico al Banco de principal y/o intereses bajo el (los) Pagarés en el día en que venza dicho pago, hasta que el (los) Préstamo(s) sea(n) pagado(s) en su totalidad, una suma (los "Fondos de Plica") para el pago de: (1) contribuciones sobre la propiedad inmueble que sirve como Colateral del Préstamo y (2) primas por cualquier seguro requerido por el Banco. Los Fondos de Plica serán depositados con el Banco a menos que el Deudor sea relevado de esta obligación. En caso de tal relevo, el Deudor estará obligado a pagar directamente las cantidades debidas por los conceptos antes mencionados y, proveerá al Banco recibos que evidencien tal pago dentro del tiempo que el Banco le requiera. El Banco aplicará los Fondos de Plica para pagar las partidas mencionadas. Si el Deudor deja de pagar alguna cantidad debida, el Banco podrá a su opción pagar la misma y el Deudor entonces vendrá obligado a repagar al Banco tal cantidad inmediatamente. De no pagarla dentro de los diez (10) días subsiguientes, la cantidad pagada por el Banco se

3

añadirá al principal que adeuda el Deudor y estará sujeta al pago de intereses.

## ARTICULO II
## CONDICIONES PRECEDENTES AL DESEMBOLSO DEL PRÉSTAMO

**Sección 2.01** **Condiciones Precedentes al Desembolso del Préstamo.** La obligación del Banco de hacer desembolsos bajo el Préstamo queda sujeta a las siguientes condiciones al momento de cada desembolso:

(a)     Que no exista una Causa de Incumplimiento bajo este Contrato o con respecto a cualquier otra Deuda del Deudor con el Banco o sus afiliadas, o una condición que, de no ser por el requisito de dar notificación y/o del transcurso del tiempo, constituya una Causa de Incumplimiento;

(b)     Que el Deudor haya cumplido con los convenios afirmativos y negativos en este Contrato;

(c)   · Que las representaciones y garantías hechas por el Deudor en este Contrato sean correctas y ciertas al momento de realizarse cada desembolso bajo el Préstamo;

(d)     Que el Deudor haya entregado al momento del cierre o del desembolso particular los documentos que requiera el Banco en la forma y con el contenido que sea satisfactorio para éste.

## ARTICULO III
## LOS PRÉSTAMOS

### 3.01  Términos y Condiciones del Préstamo a Término

(a) Desembolso. En la Fecha de Cierre, el Banco depositará los fondos producto del Préstamo mediante transferencia electrónica a la cuenta especificada por el Deudor.

(b) Los fondos desembolsados y depositados producto del préstamo serán utilizados para el propósito establecido en la sección 1.02.2

(c) Fecha de Pago. El Banco cobrará el principal y los intereses y otros cargos aplicables mediante un débito a la Cuenta Corriente los días correspondientes que se estipulan en el Pagaré (en adelante, la "Fecha de Pago").

### 3.02  Términos Generales

(a) Forma de Pago.  El Deudor autoriza al Banco a hacer los débitos

4

correspondientes directamente contra la Cuenta Corriente que se designe para estos propósitos o de cualquiera otra manera que el Banco especifique o autorice por escrito.

(b) **Servicio de la Deuda.** El Deudor se obliga a tener en la Cuenta Corriente en la Fecha de Pago cantidades suficientes para cumplir con el pago de las facilidades de crédito concedidas, y cualquier otro gasto o cargo que el Banco tenga derecho a cobrar bajo este Contrato. Si en la Cuenta Corriente no hubiera fondos suficientes en dicha fecha, el Banco podrá cobrar al Deudor el balance adeudado a través de cualquier otro medio, incluyendo débitos en otras cuentas en el Banco o en alguna de sus afiliadas. El Deudor pagará todas las cantidades adeudadas, sin derecho de compensación o reclamación contra el Banco, y sin deducciones por contribuciones o gastos de ningún tipo.

(c) **Fecha de Vencimiento.** Sujeto a que el Deudor cumpla con los términos y condiciones de este Contrato, el Préstamo estará vigente hasta la Fecha de Vencimiento que se estipula en la Sección 1.02.

(d) **Aplicación de los Pagos.** Los pagos, se aplicarán primero a cualquier interés acumulado y no pagado en orden del más antiguo al más reciente, luego a los cargos contemplados en el contrato (incluyendo cualquier pago que haya tenido que hacer el Banco a nombre del Deudor bajo las disposiciones de este contrato) que no hayan sido pagados, y luego al principal vencido o próximo a vencer del Préstamo, también del más antiguo al más reciente. Esto incluye los pagos realizados por el Banco en el ejercicio de su derecho bajo este contrato de cargar o debitar dichas sumas en cualquier cuenta o depósito que el Deudor y/o los Garantizadores mantengan en el Banco o sus afiliadas.

(e) **Abonos al principal antes de la Fecha de Vencimiento.** Luego de aplicar un pago de la forma en que se establece en el inciso (d) de esta sección, si hubiera algún sobrante, el mismo se aplicará a la amortización del principal no vencido (sujeto a la aplicación de cualquier cargo o penalidad por prepago que pueda imponer el Banco según las disposiciones de este contrato) en orden inverso de vencimiento. En caso de que el Banco imponga el cargo o penalidad por prepago, el sobrante se aplicaría primero contra dicho cargo.

(f) **Pago en la Fecha de Vencimiento.** En la Fecha de Vencimiento el Deudor deberá pagar al Banco el principal pendiente de pago del Préstamo y los intereses acumulados y no pagados sobre los mismos y cualquier otro cargo pactado en el contrato.

(g) **Pagos en Días No-Laborales.** Siempre que cualquier pago bajo este Contrato o bajo cualquiera de los Pagarés deba de hacerse en una fecha que no sea un Día Laborable, dicho pago deberá hacerse el próximo Día Laborable.

**Sección 3.03 Garantías y Colateral.**

Exhibit XLI - Proof of Claim No. 6 filed by Condado    Page 29 of 202

(a)    Las obligaciones del Deudor bajo este Contrato, el Pagaré y los otros Documentos de Préstamo estarán garantizados mediante la Colateral que se detalla en el **Anejo A.**

(b)    Los Contratos de Colateral se mantendrán íntegros y vigentes durante la existencia de este Contrato y hasta que el Deudor satisfaga en su totalidad las Obligaciones asumidas bajo los Documentos de Préstamo y durante cualquier extensión o renovación o conversión de los mismos.

## ARTICULO IV
## REPRESENTACIONES Y GARANTÍAS

**Sección 4.01**    <u>Representaciones y Garantías del Deudor</u>. El Deudor por la presente le representa y garantiza al Banco que:

(a)    El otorgar este Contrato y los Documentos de Préstamo y cumplir con sus respectivos términos: (i) no causará que viole ninguna ley, reglamento, orden judicial, interdicto o sentencia aplicable; (ii) no causará que viole o incumpla los términos de cualquier contrato o acuerdo del cual sea parte y/o que afecte sus propiedades; (iii) no violará, ni será incompatible con, las cláusulas de su Certificado de Incorporación o de sus estatutos (de ser el Deudor una corporación) o de su acuerdo de constitución de sociedad o fideicomiso (de ser el Deudor una sociedad o fideicomiso); (iv) redundará en su beneficio; y (v) no resultará en su insolvencia;

(b)    No existe requisito de  autorización, consentimiento, licencia, permiso, registro o presentación de tribunal o Entidad Gubernamental alguna, ni de ninguna junta o foro, para proceder al otorgar y cumplir con este Contrato y los otros Documentos de Préstamo;

(c)    No existe acción, demanda, procedimiento o reclamación ante ningún tribunal o Entidad Gubernamental, ni ante ningún otro foro, ni, de acuerdo con su mejor conocimiento, la posibilidad de tal, que pudiera afectar la condición financiera del Deudor o sus propiedades, negocios, operaciones o activos;

(d)    Ninguna información, anejo o informe ofrecida al Banco en relación con la preparación, otorgamiento, y negociación de este Contrato y los otros Documentos de Préstamo, contiene declaraciones falsas u omite declarar algún hecho que pueda afectar la veracidad de dicha información, y no existen hechos que, individualmente o tomados junto con otros factores, puedan afectar adversamente la condición financiera del Deudor o sus propiedades, negocios, operaciones o activos;

(e)    Es una entidad debidamente constituida, válidamente existente y autorizada a operar bajo las leyes de la jurisdicción  de su organización y posee todos los permisos, licencias y franquicias necesarias para operar sus negocios en Puerto Rico;

(f)     Posee todas las facultades, poderes y autorizaciones necesarias para otorgar este Contrato y los otros Documentos de Préstamo, para incurrir en las obligaciones estipuladas en este Contrato y en los otros Documentos de Préstamo, para tomar prestada la cantidad del Préstamo que se establece en este Contrato, para emitir el (los) Pagaré(s) que evidencia(n) dichas obligaciones, para utilizar los fondos obtenidos bajo el Préstamo para los usos aquí especificados, y para cumplir con los términos y condiciones contenidos en este Contrato, en el (los) Pagaré(s) y en los otros Documentos de Préstamo;

(g)     Este Contrato y los demás Documentos de Préstamo han sido debidamente autorizados por el Deudor y constituyen obligaciones válidas y legales del mismo, exigibles contra éste de conformidad con sus respectivos términos;

(h)     No ha, y/o no tiene conocimiento de que ninguno de sus predecesores en interés hubiera, almacenado, generado, manufacturado, refinado, transportado, producido o tratado desperdicios tóxicos, desperdicios sólidos, desperdicios peligrosos o sustancias peligrosas en las propiedades del Deudor, en violación de cualquier disposición de ley, ordenanza, regla, reglamentación, orden, sentencia, decreto o permiso que fuera aplicable y/o que requiera alguna actuación para corregir alguna situación  que conlleve un costo o gasto sustancial bajo las disposiciones de cualquier ley, ordenanza, regla, reglamentación, orden, sentencia, decreto o permiso que fuera aplicable. No han ocurrido, y/o no tiene conocimiento de que existan, derrames, descargas, filtraciones, emisiones, inyecciones, escapes, o liberaciones sustanciales o materiales de desperdicios tóxicos, desperdicios sólidos, desperdicios peligrosos o sustancias peligrosas, en las propiedades del Deudor o en el ambiente que rodea  dichas propiedades.  Los términos "desperdicios tóxicos", "desperdicios sólidos", "desperdicios peligrosos" y "sustancias peligrosas" tendrán el significado dispuesto en cualquier disposición de ley o reglamentación aplicable del Estado Libre Asociado de Puerto Rico, del Gobierno Federal o estatal o de un país extranjero, relacionadas con la protección del ambiente;

(i)     De ser aplicables o necesarias, posee todas las patentes, derechos sobre patentes, marcas, licencias, franquicias, autorizaciones, permisos y otros derechos necesarios para conducir sus negocios tal y como los conduce al presente, y como se propone conducirlos en el futuro, sin menoscabar o violar los derechos de terceros;

(j)     Ha cumplido con todas las leyes y reglamentos de las Entidades Gubernamentales con jurisdicción sobre sus negocios y no está incumpliendo ninguna orden, mandamiento, orden de entredicho ni decreto de algún tribunal, Entidad Gubernamental o de cualquier otro foro;

(k)     Ha cumplido y cumple con todas sus obligaciones bajo todo contrato, hipoteca, arrendamiento, fideicomiso u otro acuerdo del cual el Deudor es parte o bajo el cual cualquiera de sus propiedades o activos puedan verse afectadas;

7

(l)     Su estado de situación y el estado de ganancias y pérdidas que ha entregado al Banco, (i) son correctos y representan objetivamente su condición financiera y los resultados de sus operaciones; (ii) el Deudor no ha contraído obligaciones directas o contingentes, después de la fecha del estado de situación, que no hayan sido divulgadas al Banco por escrito o reflejadas a través de un estado de situación interino o anejo; (iii) tanto los estados como los estados interinos han sido preparados de acuerdo a los principios de contabilidad generalmente aceptados ("GAAP" por sus siglas en inglés) aplicados consistentemente durante todos los períodos que comprenden los mismos;

(iv) no ha ocurrido un cambio sustancial adverso en los activos, pasivos, propiedades, negocios, condición financiera o cualesquier otra, o prospectos del Deudor desde la fecha de cierre de los estados de situación y de ganancias y pérdidas;

(m)     Posee título de dominio sobre todos los bienes sobre los cuales ha constituido una hipoteca o que ha dado en Colateral al Banco, y tiene derecho a enajenarlos y gravarlos; y

(n)     Ha radicado todas las planillas de contribuciones que requieren las leyes y reglamentos aplicables, y ha pagado (o tiene un plan de pagos debidamente aprobado por las Entidades Gubernamentales correspondientes) todas las contribuciones sobre ingresos, contribuciones y retenciones patronales, contribuciones sobre la propiedad, patentes, arbitrios y cualquier otro cargo o penalidad atribuibles a las mismas que deba pagar o que hayan sido impuestos contra el Deudor o sobre sus propiedades por las Entidades Gubernamentales correspondientes.

## ARTICULO V
## CONVENIOS

Sección 5.01     Convenios Afirmativos. Mientras se mantengan vigentes las obligaciones del Deudor bajo este Contrato y/o los otros Documentos de Préstamo, y mientras quede pendiente de pago cualquier balance del Préstamo u otras obligaciones del Deudor bajo los términos de este Contrato o los demás Documentos de Préstamo, o mientras quede vigente cualquier obligación del Banco bajo este Contrato o el Pagaré de desembolsar cualquier adelanto bajo el Préstamo, el Deudor se compromete a lo siguiente:

(a)     Pagar puntualmente el principal, los intereses y cualquier otro cargo del Préstamo;

(b)     Llevar a cabo o gestionar, por su cuenta y a su cargo, todos los actos o cosas necesarias, presentes o futuras, requeridas bajo las leyes o reglamentos aplicables con relación al cumplimiento de sus obligaciones bajo los Documentos de Préstamo;

8

(c)    Pagar todas las contribuciones e impuestos que le sean aplicables a sus ingresos o ganancias, o sobre cualquiera de sus propiedades, o relacionadas con cualquiera de sus actividades o negocios (incluyendo retenciones y contribuciones sobre nómina), antes de la fecha en que dichas contribuciones e impuestos comiencen a devengar intereses, recargos o penalidades y se impongan multas, embargos, cargas y/o gravámenes similares por falta de pago.  No obstante, el Deudor no vendrá obligado a pagar ninguna contribución o impuesto cuyo pago esté impugnando de buena fe y mediante el procedimiento correcto. Si el Deudor incumple esta obligación, el Banco podrá, a su entera opción, pagar tales contribuciones e impuestos sin necesidad de notificarle al Deudor y sin más consentimiento del Deudor que el presente consentimiento, en cuyo caso el Deudor reembolsará al Banco el monto de dicho desembolso tan pronto le sea requerido. El Banco podrá, además, y sin el previo aviso a o consentimiento de, el Deudor, cargar o debitar dichas sumas en cualquier cuenta o depósito que el Deudor y/o lo(s) Garantizador(es) mantengan en el Banco o con sus afiliadas;

(d)    Permitir que el Banco o cualquiera de sus agentes o representantes examinen, resuman y copien sus récords, registros y libros de contabilidad, y que visiten las propiedades del Deudor y que discutan con terceras personas los asuntos, finanzas y cuentas del Deudor de tiempo en tiempo y según sea razonable;

(e)    Notificar inmediatamente al Banco en caso de que surja cualquier reclamación, demanda o procedimiento llevado en su contra o, del cual el Deudor tenga conocimiento, que pudiera tener un Efecto Materialmente Adverso sobre las propiedades, negocios, operaciones y activos del Deudor, o sobre su condición financiera;

(f)    Mantener vigentes, renovar y proteger todos los derechos, poderes, privilegios, licencias, permisos y franquicias requeridas para continuar operando sus negocios incluyendo aquellas que emanen por contrato o aquellas requeridas por Entidades Gubernamentales;

(g)    Cumplir y observar todas las leyes y reglamentos aplicables, tanto federales como locales, incluyendo, pero sin limitarse a, las leyes y reglamentos aplicables en cuanto a asuntos laborales y ambientales, así como con cualquier ordenanza, regla o reglamento promulgado bajo dichas leyes y reglamentos;

(h)    Mantener la Cuenta corriente principal con el Banco;

(i)    Entregar al Banco dentro de ciento veinte (120) días a partir del cierre de su año fiscal, su estado de situación y su estado de ganancias y pérdidas y superávit compilados, revisados o auditados, (según especifique o autorice el Banco a su absoluta discreción) por contadores públicos autorizados reconocidos y aceptables al Banco;

9

Exhibit XLI - Proof of Claim No.10 filed by Condado    Page 33 of 202

(j)    De ser aplicable, entregar al Banco dentro de los ciento veinte (120) días siguientes al cierre de cada año fiscal, estados financieros personales, o de la entidad jurídica, según sea el caso, de cada Garantizador;

(k)    Entregar, en la forma y en las fechas en que así se lo requiera el Banco, un certificado o informe sobre envejecimiento de las cuentas a cobrar y de las cuentas a pagar, debidamente certificado como correcto por un oficial autorizado del Deudor;

(l)    Otorgar todos aquellos documentos, contratos, instrumentos o acuerdos que sean necesarios, a juicio del Banco, para llevar a cabo las transacciones contempladas en los Documentos de Préstamo;

(m)    Pagar o rembolsar al Banco tan pronto le sea requerido, los gastos relacionados con los honorarios de consultores ambientales y de abogados, estudios ambientales, acciones de remoción de contaminantes, restauración, mitigación y/o remediación ambiental y cualquier otro gasto que el Banco razonablemente entienda se tenga que incurrir como resultado de cualquiera de las situaciones mencionadas en el párrafo 4.01(i). El Banco podrá, además, y sin el previo consentimiento del Deudor, cargar o debitar dichas sumas en cualquier cuenta o depósito que el Deudor y/o los Garantizadores mantengan en el Banco o sus afiliadas;

(n)    Solicitar, mantener, conservar y renovar las pólizas de seguro requeridas, a saber:_____Inundación,___x___Fuego,___x___Terremoto,_____robo ___x___huracán, _____ Interrupción de Negocios, _____ Lucro Cesante, _____ Key Man, _____, Otras: _____ ; y aquellas que de conformidad con los Documentos de Préstamo el Banco le requiera de tiempo en tiempo para cubrir otros riesgos, que provean cobertura suficiente (a juicio del Banco) y que sean las que acostumbran mantener compañías del tamaño y naturaleza similares a las del Deudor y que sean aceptables al Banco. Tales pólizas deberán contener un endoso o cesión a favor del Banco que sea aceptable a éste. Si el Deudor incumple esta obligación, el Banco podrá, a su entera opción, obtener y pagar tales pólizas y endosos sin necesidad de notificarle al Deudor y sin más consentimiento del Deudor que el presente consentimiento, en cuyo caso el Deudor reembolsará el monto total pagado por el Banco tan pronto le sea requerido.    El Banco podrá, además, sin el previo consentimiento del Deudor, cargar o debitar dichas sumas en cualquier cuenta o depósito que el Deudor y/o los Garantizadores mantengan en el Banco o sus afiliadas;

(o)    Mantener en buen estado todas las propiedades que le pertenecen, incluyendo pero sin limitarse a, aquellas que forman parte de la Colateral, y realizar todas aquellas mejoras necesarias para conservarlas;

(p)    De aplicarle al Deudor las disposiciones de la ley federal conocida como ERISA ("Employee Retirement Income Security Act of 1974") según enmendada, el Deudor representa y garantiza que ha cumplido cabalmente con todas las disposiciones de la misma y que no ha ocurrido ni existe ningún evento reportable

10

("Reportable Event" según se define en ERISA) con respecto a cualquier plan de retiro o pensiones del Deudor que esté reglamentado por ERISA.

(q)    Utilizar los fondos provenientes del financiamiento aquí otorgado para los usos y propósitos que se mencionan en la sección 1.02 del Contrato.

Sección 5.02   **Convenios Negativos.**   Mientras se mantengan vigentes las obligaciones del Deudor bajo este Contrato y/o los otros Documentos de Préstamo, y mientras quede pendiente de pago cualquier balance del Préstamo u otras obligaciones del Deudor bajo los términos de este Contrato o los otros Documentos de Préstamo, o mientras quede vigente cualquier obligación del Banco bajo este Contrato o el Pagaré de desembolsar cualquier adelanto bajo el Préstamo, el Deudor se compromete a no hacer lo siguiente sin el previo consentimiento escrito del Banco, cuyo consentimiento no será denegado irrazonablemente:

(a)    Constituir, asumir o permitir que exista cualquier hipoteca, gravamen y/o carga sobre todo o cualquier porción de su propiedad, bienes o capital, existentes a la fecha de, o adquiridos con posterioridad a, la Fecha de Cierre y que sirvan como Colateral;

(b)    Asumir,   garantizar,   endosar   o   de   cualquier   manera responsabilizarse por las obligaciones de cualquier otra persona, entidad o corporación, existente o creada con posterioridad a la Fecha de Cierre, excepto por los endosos de instrumentos negociables para depósito o cobro o transacciones similares en el curso ordinario de su negocio;

(c)    Cambiar su actual personalidad jurídica,   cambiar o permitir cambios en la composición de sus accionistas o socios o personal gerencial, enmendar sus artículos de incorporación o sus estatutos (de ser el Deudor una corporación) o su acuerdo de sociedad (de ser el Deudor una sociedad), o fusionarse, liquidarse o vender una parte sustancial o la totalidad de sus activos;

(d)    Invertir sus fondos en o adquirir, otras corporaciones, sociedades o entidades;

(e)    Prestar o adelantar fondos a cualquier empleado, oficial y/o director del Deudor o a cualquier otra persona o entidad;

(f)    Cambiar la naturaleza de sus negocios;

(g)    Incurrir en Deuda adicional que no sea Deuda que normalmente se incurre en el curso ordinario de los negocios; y

11

Exhibit XLI - Proof of Claim No.12 filed by Condado    Page 35 of 202

(h)    Declarar o pagar [dividendos] ya sea en efectivo, en especie o en acciones, [distribuciones] a [accionistas, socios, miembros o beneficiarios] del Deudor, hacer cualquier distribución sobre sus [acciones o participaciones], o reservar fondos o activos para ese propósito o adquirir de cualquier manera sus [acciones o participaciones], o algún interés en el Deudor o reservar fondos o activos para ese propósito y

(i)    Vender, ceder, arrendar, permutar, transferir o de cualquier otra forma disponer de sus activos existentes a la fecha de, o adquiridos con posterioridad, a la Fecha de Cierre.

## ARTICULO VI
## INCUMPLIMIENTO

Sección 6.01    Causas de Incumplimiento. En caso de que ocurra, o continúe ocurriendo, cualquier situación de las descritas en esta Sección 6.01, las obligaciones del Banco bajo este Contrato terminarán automáticamente y las sumas de principal, intereses y cargos acumulados sobre el Pagaré y todas las demás obligaciones del Deudor bajo este Contrato y los otros Documentos del Préstamo serán inmediatamente líquidas y exigibles, sin que se requiera acción, notificación, protesto, presentación, demanda o aviso de parte del Banco al Deudor o a ninguna otra persona natural o jurídica, todos los cuales se renuncian expresamente.  Cada uno de los siguientes eventos constituirá una "Causa de Incumplimiento":

(a)    Que el Deudor incumpla con el pago de principal, intereses o cargos bajo el (los) Pagaré(s), o con el pago de cualquier otra suma adeudada al Banco bajo este Contrato o bajo cualquier otro Documento de Préstamo, en la fecha en que dicho pago venza;

(b)    Que la validez, legalidad u otorgamiento de este Contrato, de(l) (los) Pagaré(s) o de cualquiera de los otros Documentos de Préstamo sea cuestionado por el Deudor y/o el(los) Garantizador(es),o el Deudor y/o el(los) Garantizador(es) niegue(n) que tiene(n) responsabilidades u obligaciones bajo este Contrato, el Pagaré o cualquiera de los otros Documentos de Préstamo;

(c)    Que el Deudor o cualquier Garantizador sea declarado insolvente o en quiebra, o admita por escrito su incapacidad para pagar sus deudas según éstas venzan, o haga una cesión de sus bienes para beneficio de sus acreedores; o el Deudor o cualquier Garantizador solicite o consienta a, el nombramiento de un custodio, síndico u oficial similar para administrar o custodiar o tomar posesión de la totalidad o una parte sustancial de sus bienes; o el Deudor o cualquier Garantizador instituya (por petición, solicitud, contestación, consentimiento, o de otra forma) cualquier procedimiento de quiebra, insolvencia, composición, reorganización, arreglo, reajuste de deudas o cualquier otro procedimiento similar bajo las leyes o reglamentos de cualquier jurisdicción; o que cualquier sentencia, orden, embargo, providencia

12

Exhibit XLI - Proof of Claim No.18 filed by Condado    Page 36 of 202

judicial o administrativa, o remedio similar sea emitido contra cualquier propiedad o bien del Deudor o de cualquier Garantizador, y el mismo no sea dejado sin efecto, cancelado o sustituido por una fianza dentro de los treinta (30) días calendarios siguientes a su emisión;

(d)    Que el Deudor y/o cualquier Garantizador incumpla o viole cualquiera de sus obligaciones con el Banco o cualquiera de los términos, acuerdos, cláusulas, declaraciones, garantías o condiciones de su parte incluidos en este Contrato (pero sin incluir las violaciones cubiertas por el inciso (a) de esta sección 6.01), en los otros Documentos de Préstamo y/o en cualquier otro acuerdo o contrato con el Banco o instrumento entregado al Banco, y dicho incumplimiento o violación no se remediare dentro de los treinta (30) días calendarios siguientes a la notificación de dicho incumplimiento o violación; o

(e)    Que cualquier declaración o garantía que haya hecho el Deudor o cualquier Garantizador en este Contrato, en cualquiera de los otros Documentos de Préstamo o en cualquier certificado, instrumento, contrato o declaración hecha u otorgada en relación con este Contrato o cualquiera de los otros Documentos de Préstamo, sea sustancialmente incorrecta;

(f)    Que exista un gravamen o carga sobre la Colateral que no sea de las permitidas a la fecha de este contrato o de las creadas en beneficio del Banco para garantizar las obligaciones del Deudor bajo los Documentos de Préstamo;

(g)    Que ocurra cualquier evento que cause que se acelere la fecha de vencimiento de cualquier otra Deuda (excluyendo el Préstamo) del Deudor; o

(h)    Que ocurra un Efecto Materialmente Adverso.

(i)    Que el Deudor no utilice los fondos provenientes de este financiamiento, o parte de ellos, en los usos y propósitos que se mencionan en la Sección 1.02 del Contrato;

(j) La radicación de cargos contra el Deudor o contra cualquiera de los Garantizadores o el recibo de alguna notificación por el Banco de alguna investigación gubernamental en relación con cualquier asunto que pueda resultar en la confiscación o incautación ("forfeiture") de bienes del Deudor o de cualquiera de los Garantizadores.

## ARTICULO VII
## REMEDIOS

Sección 7.01   **Remedios en General.**   En el caso que ocurra o continúe ocurriendo una o más de las Causas de Incumplimiento especificadas en la Sección 6.01, el Banco podrá tomar cualquier acción en ley o equidad para cobrar las cantidades vencidas o por vencer bajo el Pagaré o para hacer cumplir las obligaciones,

13

acuerdos o compromisos del Deudor bajo este Contrato o bajo cualquiera de los otros Documentos de Préstamo o bajo cualquier otro documento relacionado a este Contrato o dichos documentos.

**Sección 7.02   Remedios Acumulativos.** Los remedios y derechos aquí concedidos al Banco no se considerarán exclusivos de cualquier otro remedio o remedios disponibles; todos y cada uno de dichos remedios serán acumulativos y concurrentes y serán adicionales a cualquier otro remedio especificado en este Contrato o existente en ley o equidad. Cualquier demora u omisión en el ejercicio de cualquier derecho o acción basada en el incumplimiento del Deudor, o la omisión del Banco de insistir en el cumplimiento estricto de cualquiera de los acuerdos y compromisos del Deudor que se detallan en este Contrato o en los otros Documentos de Préstamo o de ejercitar cualquier derecho y/o remedio en caso de incumplimiento por el Deudor, no afectará ninguno de los antedichos derechos o acciones del Banco, ni se considerará o se tendrá por relevo o renuncia de los derechos a insistir, hacer cumplir, ejercitar o solicitar, mediante interdicto o cualquier otro remedio apropiado, en ley o equidad, el cumplimiento estricto por el Deudor con todos los compromisos, acuerdos y condiciones contenidos en este Contrato o en los otros Documentos de Préstamo, o del derecho del Banco a ejercitar cualquiera de dichos derechos o remedios si se repitiera el incumplimiento por parte del Deudor.

**Sección 7.03   Renuncias.** En caso de que el Deudor incumpla cualquier compromiso o acuerdo incluido en este Contrato o en cualquiera de los otros Documentos de Préstamo y sea relevado de tal obligación o acuerdo (cuyo relevo será efectivo solamente si se hace por escrito y está firmado por el Banco), dicho relevo se limitará a esa violación o evento en particular y no se considerará, bajo ninguna circunstancia, como un relevo del cumplimiento en cualquier otra situación..

## ARTICULO VIII
### INDEMNIZACIÓN

**Sección 8.01.** El Deudor acuerda defender, indemnizar, librar de toda responsabilidad y proteger al Banco de toda reclamación, daño, sentencia, penalidad, costo y gasto (incluyendo aquellos gastos y honorarios de abogado que resulten por razón de haber ejercido el Banco sus derechos bajo esta cláusula) que surja, directa o indirectamente, de las actividades del Deudor, sus predecesores y sucesores en interés, o de aquellas terceras personas, naturales o jurídicas, con las que el Deudor sostenga una relación contractual, o que surjan, directa o indirectamente, de la violación por parte del Deudor, sus predecesores y sucesores en interés, o de aquellas terceras personas, naturales o jurídicas, con las que el Deudor sostenga una relación contractual, de cualquier ley o reglamento, incluyendo, pero sin limitarse a, cualquier ley o reglamento sobre protección ambiental, independientemente de que dichas reclamaciones fueren presentadas por una Entidad Gubernamental o cualquier otra persona, natural o jurídica. No obstante lo dispuesto en cualquier otro apartado de este

14

Exhibit XLI - Proof of Claim No.15 filed by Condado    Page 38 of 202

Contrato, las obligaciones del Deudor bajo esta cláusula de indemnización sobrevivirán la terminación de este Contrato.

Sección 8.02. El Deudor acuerda defender, indemnizar, librar de toda responsabilidad y proteger al Banco de toda demanda, litigación, acción, procedimiento administrativo, sentencia, reclamación, daños, costos o penalidades (incluyendo, sin limitación, honorarios de abogados y costas razonablemente incurridas) que se inste o se imponga en contra de o se incurra por el Deudor por cualquier motivo, debido a la presencia de sustancias tóxicas o peligrosas, así como de hidrocarburos, petróleo, aceites y sus derivados, según estos términos son definidos por las Leyes Ambientales, que afecten las propiedades del Deudor o que se originen o emanen de las propiedades del Deudor. El Deudor se compromete a cumplir fielmente con las Leyes Ambientales y a no depositar o causar que se deposite en sus propiedades sustancias tóxicas o peligrosas según éstas son definidas en dichas Leyes Ambientales, durante el término del presente Contrato. No obstante lo dispuesto en cualquier otro apartado de este Contrato, las obligaciones del Deudor bajo esta cláusula de indemnización sobrevivirán la terminación de este Contrato.

## ARTICULO IX
## OTROS TÉRMINOS MISCELÁNEOS

Sección 9.01 **Terminación**. De no existir más crédito disponible al Deudor bajo este Contrato o durante cualquier extensión o renovación del mismo, si el Deudor ha pagado al Banco la totalidad del principal e intereses bajo el Pagaré y todas las demás cantidades adeudadas al Banco bajo los Documentos de Préstamo, y si el Deudor está cumpliendo con sus deudas y obligaciones con las demás afiliadas del Banco, entonces todos los compromisos, acuerdos y otras obligaciones del Deudor se extinguirán y, en consecuencia, las propiedades del Deudor que hayan sido gravadas en virtud de este Contrato y los otros Documentos de Préstamo se entregarán al Deudor y/o los Contratos de Colateral serán entregados al Deudor para ser cancelados a su costo.

Sección 9.02 **Aviso de las Notificaciones**. Todas las notificaciones, requerimientos, instrucciones y otras comunicaciones requeridos bajo este Contrato se harán por escrito (incluyendo comunicaciones por facsímile) y serán enviados por correo o facsímile o entregadas a la mano a la parte a las siguientes direcciones:

DEUDOR:
    LAS MARTAS, INC.
    Atención: Sr. Juan Manuel Barreto Ginorio
    HC 05 Box 91635
    Arecibo, Puerto Rico 00612
    Tel. (787) 640-4972 (787) 878-7277

15

**BANCO:**

**BANCO POPULAR DE PUERTO RICO**
Atención: CBC Arecibo-Manatí
Clave de envío: 411
Sra. Nilsa Iris Cruz Capetillo
PO Box 362708
San Juan, Puerto Rico 00936-2708
Tel. (787) 854-1550
Fax: (787) 854-4955

o a cualquier otra dirección que de tiempo en tiempo sea notificada por escrito a la otra parte, cumpliendo con los requisitos para notificación especificados en esta sección. Todas las antes mencionadas notificaciones, requerimientos, instrucciones y otras comunicaciones se considerarán efectivas en el momento en que se depositen en el correo, o se entreguen por máquina de facsímile, según sea el caso, dirigidos de la manera antes especificada.

**Sección 9.03** **Pago de Gastos.** El Deudor acuerda pagar a la presentación los gastos y honorarios de abogado, tasadores, peritos, consultores, y auditores con relación a la preparación, otorgamiento y entrega de este Contrato, el Pagaré, los otros Documentos de Préstamo, y cualquier otro instrumento o documento al cual se hace referencia o se relaciona con este Contrato, el Pagaré y los otros Documentos de Préstamo, o cualquier enmienda a éstos.

**Sección 9.04** **Cesión; Enmienda.** El Deudor no podrá ceder sus derechos y obligaciones bajo este Contrato. No obstante, el Banco podrá ceder sus derechos y obligaciones bajo este Contrato, total o parcialmente, sin el consentimiento del Deudor y todos los términos y disposiciones del mismo beneficiarán de la misma forma a sus sucesores y cesionarios. Este Contrato no podrá ser alterado o enmendado a menos que sea a través de otro documento o acuerdo escrito otorgado por ambas partes.

**Sección 9.05** **Ley que Rige.** Este Contrato, el Pagaré y todos los otros Documentos de Préstamo se regirán e interpretarán de acuerdo con las leyes del Estado Libre Asociado de Puerto Rico.

**Sección 9.06** **Separación de las Cláusulas.** Si alguna cláusula de este Contrato resultare inválida, ilegal o no pudiera hacerse valer en Puerto Rico, no se afectará por ello la validez y efectividad de las demás cláusulas y condiciones del Contrato ni se afectará la validez y efectividad de dicha cláusula y las demás cláusulas en cualquier otra jurisdicción en que la cláusula se considere válida.

**Sección 9.07** **Encabezamientos.** Los encabezamientos de las secciones y cláusulas en este documento se incluyen para referencia y conveniencia y no

16

Exhibit XLI - Proof of Claim No.17 filed by Condado    Page 40 of 202

constituirán parte alguna de este Contrato. Las palabras utilizadas en este Contrato se interpretarán en el género o número que las circunstancias ameriten.

**Sección 9.08   Derecho de Compensación**. Nada de lo dispuesto en este Contrato se considerará como una renuncia al derecho de compensación ("set-off") que pueda tener el Banco conforme a las leyes aplicables.

**Sección 9.09 Renuncia a Juicio por Jurado**. El Banco y el Deudor renuncian a cualquier derecho que tengan a la celebración de un juicio por jurado en cualquier acción o procedimiento que se inste para ejercer o defender sus respectivos derechos bajo, o que de alguna manera se relacionen con, este Contrato, el Pagaré y los otros Documentos de Préstamo.

**Sección 9.10 Jurisdicción**. El Deudor acuerda someterse a la jurisdicción de los tribunales estatales de Puerto Rico o el Tribunal de Distrito Federal para el Distrito de Puerto Rico.

**POR TODO LO CUAL**, las partes otorgan este Contrato, en Hatillo, Puerto Rico en la fecha indicada al principio del mismo.

LAS MARTAS, INC.
Por: Juan Manuel Barreto Ginorio
Presidente

BANCO POPULAR DE PUERTO RICO
Por: José Alberto Pérez López
Oficial

JUAN MANUEL BARRETO GINORIO

MARIA ELENA HERNANDEZ RUIZ

Affidávit Núm. 28,491

Reconocido y suscrito ante mí por **DON JUAN MANUEL BARRETO GINORIO**, seguro social [redacted] mayor de edad, casado con María Elena Hernández Ruiz, en su carácter de Presidente de Las Martas, Inc., agricultor y vecino de Arecibo, Puerto Rico; **DON JUAN MANUEL BARRETO GINORIO**    , seguro social [redacted] y

17

Exhibit XLI - Proof of Claim No.18 filed by Condado    Page 41 of 202

**DOÑA MARIA ELENA HERNANDEZ RUIZ** , seguro social ▮▮▮▮▮ mayores de edad, casados entre sí, agricultor él, ama de casa ella y vecinos de Arecibo, Puerto Rico y por **DON JOSÉ ALBERTO PÉREZ LÓPEZ**, seguro social ▮▮▮▮▮ mayor de edad, casado con Julia Ivette Batista González, en su carácter de Oficial del Banco Popular de Puerto Rico, banquero y vecino de Arecibo, Puerto Rico; a quienes doy fe de conocer personalmente.

En Hatillo, Puerto Rico a 12 de enero de 2005.

NOTARIO PÚBLICO

FRANCISCO J. ARRAIZA DONATE
ISLA DE
PUERTO RICO
Abogado - Notario

18

## COLATERAL

COLATERAL

_____ **Bienes Incorporales**: Todos los bienes incorporales según dicho término está definido en la Ley de Transacciones Comerciales, que posea a la Fecha de Cierre o adquiridos en el futuro por el Deudor y, si aplicable, por el Garantizador.

__X__ **Bienes Inmuebles**: La(s) propiedad(es) descrita(s) en la(s) hipoteca(s) que se identifica(n) bajo el Apartado B de este Anejo A y todos los edificios, estructuras, bienes inmuebles por su destino, adiciones, extensiones, modificaciones, reparaciones, reemplazos y mejoras ahora o que en el futuro sean erigidas o localizadas en dicha(s) propiedad(es).

__X__ **Contratos**: Todos los contratos, según dicho término está definido en la Ley de Transacciones Comerciales, que estén en vigor a la Fecha de Cierre, o que en el futuro sean pactados por el Deudor, y si aplicable, por el Garantizador, y según los mismos puedan ser enmendados, completados o de otra forma modificados de tiempo en tiempo.

__X__ **Cuentas**: Todas las Cuentas, según dicho término se define en la Ley de Transacciones Comerciales, existentes, o en el futuro adquiridas por el Deudor, y si fuera aplicable, por el Garantizador, que constituyan un derecho a recibir un pago de dinero. Incluye, pero no está limitado, a todas las sumas a recibirse con relación a (1) cualquier préstamo o adelanto (2) por la venta o disposición de Inventario o Equipo u otros bienes vendidos o arrendados o por servicios prestados, (3) todas las sumas vencidas o por vencer bajo cualquier garantía (incluyendo una carta de crédito) del precio de compraventa del Inventario o Equipo vendido y (4) todos los reintegros por contribuciones. En todo caso significará e incluirá, pero no se limitará a, (i) todas las cuentas por cobrar, inversiones con certificado, inversiones sin certificado, instrumentos, documentos y papel financiero, (ii) todos los derechos a recibir un pago por bienes vendidos o arrendados o por servicios prestados, (iii) todos los derechos, títulos e intereses en y sobre cualquier bien, cuya venta origine una cuenta, (iv) todas las garantías, endosos, e indemnizaciones sobre o por cualquier cuenta, (v) todos los poderes para otorgar o firmar cualquier evidencia de récords, tarjetas, y facturas relacionadas con cualquier cuenta, (vi) toda evidencia de radicación de declaraciones de financiamiento y cualquier otro documento y la radicación de cualquier instrumento en relación con cualquier cuenta y enmiendas a los mismos, notificaciones a otros acreedores o acreedores garantizadores, y certificados de los oficiales encargados de las radicaciones u otras inscripciones, (vii) toda la información de crédito, reporte y memoranda relacionada con cualquier cuenta, (viii) todos aquellos escritos relacionados con cualquier cuenta, (ix) todas las pólizas de seguros o derechos

23

Exhibit XLI - Proof of Claim No.20 filed by Condado   Page 43 of 202

similares relacionados con cualquier cuenta, y (x) todo el producto de cualquier cuenta. En verdad que esto no está claro.

_____.     **Derechos Contractuales**: Todos los derechos del Deudor, y si fuera aplicable, del Garantizador, bajo cualquier Contrato, incluyendo, sin limitación, (a) todos los derechos a recibir sumas vencidas o por vencer en cuanto a los mismos, (b) todos los derechos a recibir sumas por concepto de daños que surjan como resultado de o por incumplimiento de los mismos, y (c) todos los derechos a ejercer todos los remedios bajo los mismos.

_____     **Dinero en Efectivo**: Toda moneda de curso legal en los Estados Unidos de América, u otros países del mundo.

_____     **Equipo**:     Todo equipo, según se define dicho término en la Ley de Transacciones Comerciales, perteneciente a, o sobre los cuales tenga un interés el Deudor y, si fuera aplicable, el Garantizador, a la fecha de este Contrato o en el futuro. Incluye todas las accesiones, adiciones, sustituciones o reemplazos y el producto de ellos, incluyendo, pero no limitado a toda aquella propiedad adherida a o adherirse al equipo (incluyendo todas las accesiones, productos de, reemplazos de y sustituciones de cualquiera de los bienes anteriormente mencionados.

_____     **Instrumentos**:     Todos los instrumentos, papel financiero o cartas de crédito según dichos términos se definen en la Ley de Transacciones Comerciales, incluyendo, pero no limitado a, pagarés, cheques, letras de cambio, y documento cambiario aceptado).

_____     **Inventario**:  Todo inventario según dicho término se define en la Ley de Transacciones Comerciales.     Incluye aquella propiedad retenida para arrendamiento (incluyendo arrendamientos a subsidiarias), todos los bienes obtenidos en permuta del Inventario, y cualquier producto final o en proceso derivado de tal Inventario, todas las sustancias, si alguna, que se mezclen con o añadan al mismo. Incluye también todo el inventario que se encuentre en el lugar de operaciones (o en cualquier otra localización en la que haga negocios), o que de otra forma sea utilizada en la operación de cualquiera de los negocios.  Además incluye,  todas las adiciones, accesiones y reemplazos a los mismos, los productos del inventario y documentos de los mismos, y los bienes que son devueltos o reposeídos.

_____     **Inversión**: Toda inversión según dicho término se define en la Ley de Transacciones Comerciales que adquiera ahora o en el futuro el Deudor y, si fuera aplicable, el Garantizador.

_____     **Producto**: Todo producto según dicho término se define en la Ley de Transacciones Comerciales con respecto a la Colateral.  Incluirá, pero no se limitará a, (i) los pagos parciales o totales de una póliza de seguro, sentencia, indemnización, garantía pagada respecto a cualquier parte de la Colateral; (ii) todos los pagos hechos

24

de cualquier forma en relación con cualquier readquisición, confiscación, expropiación forzosa, embargo, incautación, o confiscación de todo o parte de la Colateral por cualquier Entidad Gubernamental; y (iii) cualquier cantidad pagada o a pagarse bajo o en conexión con cualquier parte de la Colateral.

_____ __ **Productos Agrícolas**: Todos los productos agrícolas según dicho término se define en la Ley de Transacciones Comerciales, perteneciente a o sobre los cuales tenga un interés el Deudor, y según sea aplicable, el Garantizador, a la fecha de este Contrato, o en el futuro.

B. Contratos de Colateral:

1. **Acuerdo de Gravamen Mobiliario ("Security Agreement" sobre bienes muebles)**: En la Industria Lechera de Puerto Rico a nombre de Las Martas, Inc., está registrada la licencia número 3064 que opera en el Municipio de Hatillo, la cual posee la cantidad de 58,700 cuartillos de cuota para producir leche cruda cada 14 días; el gravamen continuo e interés asegurado (security interest) a favor del Acreedor Garantizado se constituye sobre 58,700 cuartillos de la referida cuota para producir leche cruda cada 14 días; en virtud de Acuerdo de Gravamen Mobiliario otorgado en Hatillo, Puerto Rico el día 12 de enero de 2005, mediante testimonio número 28,485 ante el notario público Francisco J. Arraiza Donate.

2. **Acuerdo de Gravamen Mobiliario ("Security Agreement" sobre bienes muebles)**: Sobre las cuentas por cobrar con la planta elaboradora Suiza Dairy, Corp., adquiridas actualmente o a ser adquiridas posteriormente que surgen o surjan de la venta de leche cruda a la referida planta elaboradora, un gravamen mobiliario continuo e interés asegurado (security interest), sobre las mismas para garantizar el pago preferente de la cantidad de $7,450.00 quincenales por 118 quincenas; en virtud de Acuerdo de Gravamen Mobiliario otorgado en Hatillo, Puerto Rico el día 12 de enero de 2005, mediante testimonio número 28,487 ante el notario público Francisco J. Arraiza Donate.

3. **Declaración de Financiamiento (UCC-1)**- Declaración de Financiamiento sobre Cuota de Leche otorgada en Hatillo, Puerto Rico el día 12 de enero de 2005 mediante testimonio número 28,486 ante el notario público Francisco J. Arraiza Donate.

4. **Declaración de Financiamiento (UCC-1)**- Declaración de Financiamiento sobre Cesión de Cuentas por Cobrar otorgada en Hatillo, Puerto Rico el día 12 de enero de 2005 mediante testimonio número 28,489 ante el notario público Francisco J. Arraiza Donate.

5. **Hipoteca(s) de Bien(es) Inmueble(s)**: (a) hipoteca en garantía del Pagaré Hipotecario constituida mediante la Escritura Número 89 otorgada en Hatillo, Puerto Rico el día 13 de mayo de 1994 ante el Notario Público Francisco J. Arraiza Donate. La escritura fue enmendada mediante la escritura número 62 otorgada en Manatí, Puerto Rico el 10 de octubre de 1995 ante el notario William A. Power ; **(b)**

25

hipoteca en garantía del Pagaré Hipotecario constituida mediante la Escritura Número 63 otorgada en Manatí, Puerto Rico el día 10 de octubre de 1995 ante el Notario Público William A. Power; (c) hipoteca en garantía del Pagaré Hipotecario constituida mediante la Escritura Número 31 otorgada en Hatillo, Puerto Rico el día 6 de marzo de 1998 ante el Notario Público Francisco J. Arraiza Donate; (d) hipoteca en garantía del Pagaré Hipotecario constituida mediante la Escritura Número 59 otorgada en Hatillo, Puerto Rico el día 11 de abril de 2002 ante el Notario Público Francisco J. Arraiza Donate; (e) hipoteca en garantía del Pagaré Hipotecario constituida mediante la Escritura Número 23 otorgada en Hatillo, Puerto Rico el día 11 de marzo de 2003 ante el Notario Público Francisco J. Arraiza Donate; y (f) hipoteca en garantía del Pagaré Hipotecario constituida mediante la Escritura Número 158 otorgada en Arecibo, Puerto Rico el día 7 de noviembre de 2003 ante el Notario Público Francisco J. Arraiza Donate.

6.    **Pagaré Hipotecario:** significa (a) el pagaré hipotecario pagadero a la orden del Portador por la suma principal de **DOSCIENTOS CINCUENTA MIL DOLARES ($250,000.00)** con interés a uno por ciento (1%) sobre la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York para préstamos comerciales a corto plazo ("New York Prime Rate") y vencedero a la presentación suscrito por el Garantizador Solidario DON JUAN MANUEL BARRETO GINORIO y DOÑA MARIA ELENA HERNANDEZ RUIZ bajo el Affidávit Número 16,117 del Notario Público Francisco J. Arraiza Donate, significa (b) el pagaré hipotecario pagadero a la orden del Banco Central Hispano de Puerto Rico, según endosado a favor del Banco Popular de Puerto Rico o a su orden, por la suma principal de **CIENTO SETENTA Y CUATRO MIL CUATROCIENTOS DOLARES ($174,400.00)** con intereses sobre el balance insoluto a razón del 10 1/8% anual y vencedero a la presentación suscrito por el Garantizador Solidario DON JUAN MANUEL BARRETO GINORIO y DOÑA MARIA ELENA HERNANDEZ RUIZ, bajo el Affidávit Número 8,368 del Notario Público William A. Power, significa (c) el pagaré hipotecario pagadero a la orden del Banco por la suma principal de CIENTO VEINTICINCO MIL SEISCIENTOS DOLARES ($125,600.00) con interés a la tasa de interés preferencial ("prime rate") fluctuante y vencedero a la presentación suscrito por el Garantizador Solidario DON JUAN MANUEL BARRETO GINORIO y DOÑA MARIA ELENA HERNANDEZ RUIZ, bajo el Affidávit Número 21,060 del Notario Público Francisco J. Arraiza Donate, significa (d) el pagaré hipotecario pagadero a la orden del Banco por la suma principal de **CIENTO SESENTA Y CINCO MIL DOLARES ($165,000.00)** con intereses a la tasa de interés preferencial ("prime rate") fluctuante y vencedero a la presentación suscrito por el Garantizador Solidario DON JUAN MANUEL BARRETO GINORIO y DOÑA MARIA ELENA HERNANDEZ RUIZ, bajo el Affidávit Número 26,004 del Notario Público Francisco J. Arraiza Donate (e) el pagaré hipotecario pagadero a la orden del Banco por la suma principal de CIENTO OCHENTA MIL QUINIENTOS DOLARES ($180,500.00) con interés a la tasa de interés preferencial ("prime rate") fluctuante y vencedero a la presentación suscrito por el Garantizador Solidario DON JUAN MANUEL BARRETO GINORIO y DOÑA

Exhibit XLI - Proof of Claim No. 23 filed by Condado    Page 46 of 202

MARIA ELENA HERNANDEZ RUIZ, bajo el Affidávit Número 26,850 del Notario Público Francisco J. Arraiza Donate y significa (f) el pagaré hipotecario pagadero a la orden del Banco por la suma principal de **OCHENTA MIL DOLARES ($80,000.00)** con interés a dos por ciento (2%) sobre la tasa de interés preferencial ("prime rate") fluctuante y vencedero a la presentación suscrito por el Garantizador Solidario DON JUAN MANUEL BARRETO GINORIO y DOÑA MARIA ELENA HERNANDEZ RUIZ, bajo el Affidávit Número 27,441 del Notario Público Francisco J. Arraiza Donate.

7.    **Acuerdo de Gravamen Mobiliario y Contrato de Prenda :** Acuerdo de Gravamen Mobiliario y Documento de Prenda mediante los cuales el Deudor y el Garantizador Solidario · pignoran, ceden, entregan y traspasan al Banco los Pagarés Hipotecarios por la suma de $250,000.00, $174,400.00, $125,600.00, $165,000.00, $180,500.00 y $80,000.00.

8.    **Garantía Ilimitada y Contínua:**    otorgada por don Juan Manuel Barreto Ginorio y doña María Elena Hernández Ruiz, en igual fecha del presente otorgamiento para garantizar solidariamente el préstamo otorgado.

 **BANCO POPULAR®**

**Master Promissory Note**

Account Number
07/12/05

FOR VALUE RECEIVED, the undersigned, jointly, severally and in solido, promise to pay on demand to the order of BANCO POPULAR DE PUERTO RICO (hereinafter called the "Bank") at its main office or at such other place as the Bank may designate, the principal amount then outstanding hereunder, shown on the reverse hereof or on attachments hereto, not exceeding  ONE MILLION EIGHT HUNDRED FIFTY THOUSAND ------------  Dollars ($ 1,850,000.00  ), lawful money of the United States of America, together with interest on all unpaid principal amounts from time to time outstanding, computed on a *(check one)* ☐ 365-day, ☒ 360-day, simple interest basis and actual days elapsed, payable monthly on the twenty-fifth (25th) day of each month and on the date of payment in full, at the Fixed Rate or at the Index Rate or at the Cash Collateral Rate as designated below *(check and complete one):*

☐ **Fixed Rate.** The unpaid principal shall bear interest at the rate of _____ % per annum; provided, however, that in case of any event of default under this note, the unpaid principal shall, thereafter until paid, bear interest at the rate of _____ % per annum.

☒ **Index Rate.** Floating with the interest rate referred to as the "prime rate" as *(check one):*

    ☒   published in general-circulation newspapers such as *The Wall Street Journal*, provided that in the event of more than one such published rate on any given date, the highest of such rates shall apply.

    ☐   defined by the Interest Rates and Finance Charges Regulation Board of Puerto Rico.

The designated reference checked above is hereinafter called the "Index Rate". The unpaid principal shall bear interest at a floating rate per annum equal to the sum of the Index Rate plus  minus  1.00 %, provided, however, that in case of any event of default under this note, the unpaid principal shall thereafter until paid, bear interest at floating rate per annum equal to the sum of the Index Rate plus  2.00 %. Changes in the interest rate shall be effective upon the effective date of any change in the Index Rate; provided, however, that the rate of interest shall not be less than _____ % per annum at all times, nor more than _____ % per annum absent any event of default. We recognize and fully understand that the rate of interest herein provided is not necessarily the lowest rate of interest charged by the Bank and that credits may be granted by the Bank at rates above, at, and below, the Index Rate.

☐ **Cash Collateral Rate.** The unpaid principal amounts from time to time outstanding under this note shall bear interest at the rate per annum equal to the sum of (a) the interest rate paid by the Bank from time to time on the time deposit pledged as security for the payment of all unpaid amounts under this note, including all renewals of said deposit, plus (b) _____ %. Upon the effective date of any change in the interest rate paid by the Bank on the pledged time deposit and all renewals thereof, corresponding changes shall be effective simultaneously in the interest rate on the unpaid principal balance of this note.

The Bank shall record on the reverse hereof or on attachments hereto all advances and repayments of principal and the principal balance from time to time outstanding. Each such record of any advance hereunder shall be conclusive evidence that the advance was made to the undersigned. Advances hereunder may be made at any time and from time to time, notwithstanding that from time to time there may be no principal balance outstanding hereunder. The Bank in accepting this note incurs no obligation to make any advance.

In the event of commencement of legal action to enforce payment of this note, we agree to pay, jointly, severally and in solido, all costs, expenses and disbursements arising from such process plus attorney's fees of ten percent (10%) of the total indebtedness outstanding hereunder.

We agree that the Bank may, at its option, at any time and from time to time, reduce or cancel the amount owing under this note by setting off and charging the indebtedness, or any part thereof, against any obligation of the Bank with the undersigned, or any of them, for deposits or otherwise. We waive notice of nonpayment, presentment, demand for payment, and protest.

In support of any "due diligence" requirement under regulations of the Treasury Department of Puerto Rico that may be applicable to us or to our use of the funds advanced hereunder, we agree, affirm and warrant that we will use said funds only for "elegible activities" as defined in such regulations and as represented by us to the Bank.

The use of the plural in this note shall be understood as singular if the same is signed by only one person.

Hatillo _____ , Puerto Rico _____ , this  12  day of _____ January _____ , 2005 _____.

Las Martas, Inc.

_____
Juan M. Barreto Ginorio, Presidente

_____
Juan M. Barreto Ginorio

_____
María Hernández Ruiz

COM-19 / 2-03 (PDF)

## ENDORSEMENT OF PROMISSORY NOTE

Banco Popular de Puerto Rico, as legal owner and holder of this Note, hereby endorses assigns, delivers and transfers this Note to, and makes this Note payable to the order of, PR Asset Portfolio 2013-1 International, LLC, without recourse.

BANCO POPULAR DE PUERTO RICO

By:_____

Name: Yara R. Figueroa Marrero

Title: Authorized Representative

315840

## ENDORSEMENT OF PROMISSORY NOTE

PR Asset Portfolio 2013-1 International, LLC, as the legal owner and holder of this Note, hereby endorses, assigns, delivers and transfers this Note to, and makes this Note payable to the order of, CONDADO 5, LLC, a Delaware Limited Liability Company ("Assignee"), without recourse, representation or warranty, express or implied, except as provided in certain Loan Sale Agreement executed by PR ASSET PORTFOLIO 2013-1 INTERNATIONAL, LLC ("Assignor") and Assignee dated July 17, 2017.

Dated as of July 17, 2017.

PR ASSET PORTFOLIO 2013-1 INTERNATIONAL, LLC

By: _____

Name: Oneida Perez-Acosta
Title: Authorized Signatory

# PAGARE

| PRINCIPAL | NUM. DE IDENT. CLIENTE | PAGARE NUM. | INICIAL DEL OFICIAL | OFICIAL NUM. |
|---|---|---|---|---|
| $ 1,850,000.00 | | | | 1320 |

POR VALOR RECIBIDO, nos obligamos mancomunada y solidariamente a pagar a la orden del BANCO POPULAR DE PUERTO RICO (en adelante denominado el "Banco") en su oficina principal o en el lugar que el Banco designe, la suma de  UN MILLON OCHOCIENTOS CINCUENTA MIL ------------------------------ Dólares (en adelante denominada la "Suma Principal") con intereses, computados sobre una base de interés simple de *(marque uno)* ☐ 365 días, ☒ 360 días, y el número de días transcurridos, a la tasa, en las fechas, y en la manera que más adelante se dispone.

## FECHA Y FORMA DE PAGO *(Marque y complete uno)*

☐ **A – Préstamo Pagadero en un Solo Pago – Suma Principal Pagadera en Fecha Fija.**
Nos obligamos a pagar la Suma Principal el _____ de _____ de _____ , y a pagar intereses mensualmente sobre el balance insoluto a la tasa que más adelante se dispone, en la fecha mensual cuyo día es el mismo que el día contenido en la fecha de vencimiento antes indicada, y en todo caso en la fecha en que la Suma Principal sea pagada total y completamente.

☐ **B – Préstamo Pagadero en un Solo Pago – Suma Principal Pagadera a la Demanda.**
Nos obligamos a pagar la Suma Principal a la demanda, y a pagar intereses mensualmente sobre el balance insoluto a la tasa que más adelante se dispone, los días 25 de cada mes, y en todo caso en la fecha en que la Suma Principal sea pagada total y completamente.

☒ **C – Préstamo Pagadero en Pagos Múltiples – Suma Principal Pagadera Periódicamente.**
Nos obligamos a pagar la Suma Principal en  59  pagos consecutivos *(marque uno)* ☐ semanales, ☒ mensuales, ☐ bi-mensuales, ☐ trimestrales, ☐ semi-anuales, ☐ anuales, (en adelante denominada la "Frecuencia de Pago"). El primer pago, por la cantidad de $ 14,900.00  vencerá el  12  de  febrero  de 2005 , y los pagos subsiguientes, por la cantidad de $ 14,900.00  cada uno, vencerán en las fechas correspondientes a la Frecuencia de Pago hasta el total pago y solvento de la Suma Principal. El balance insoluto de la Suma Principal devengará intereses a la tasa que más adelante se dispone, y en el caso de que la Frecuencia de Pago sea mensual, tales intereses *(marque uno)* ☐ son en adición al pago mensual arriba indicado o ☒ están incluidos en el pago mensual arriba indicado. Los intereses vencerán: (a) cuando la Frecuencia de Pago sea mensual, en las mismas fechas en que venzan los pagos de la Suma Principal; y (b) cuando la Frecuencia de Pago no sea mensual, en la fecha mensual cuyo día es el mismo que el día contenido en las fechas correspondientes a la Frecuencia de Pago; y en todo caso en la fecha en que la Suma Principal sea pagada total y completamente. Habrá un pago final a renegociarse.

## TASA DE INTERES *(Marque y complete uno)*

☐ **1 – Tasa Fija.** El balance insoluto de la Suma Principal devengará intereses a la tasa de _____ % anual; disponiéndose que de ocurrir cualquiera de los eventos de incumplimiento especificados más adelante, el balance insoluto de la Suma Principal devengará intereses a la tasa de _____ % anual.

☒ **2 – Tasa Indice.** Fluctuante con la tasa de interés conocida como la tasa preferencial ("prime rate") según: *(marque uno)*

  ☒ publicada en periódicos de circulación general tal como *The Wall Street Journal*; disponiéndose, que de publicarse más de una de dichas tasas en la misma fecha, prevalecerá la más alta.

  ☐ definida por la Junta Reguladora de Tasas de Interés y Cargos por Financiamiento de Puerto Rico.

La referencia designada, marcada arriba, es en adelante denominada la "Tasa Indice". El balance insoluto de la Suma Principal devengará intereses a razón de una tasa anual fluctuante equivalente a la suma de la Tasa Indice ~~más~~  menos  1.00 %; disponiéndose, que de ocurrir cualquiera de los eventos de incumplimiento especificados más adelante, el balance insoluto de la Suma Principal devengará intereses a razón de una tasa anual fluctuante equivalente a la suma de la Tasa Indice más  2.00  %. Los cambios en la tasa de interés serán efectivos en la fecha de efectividad de cualquier cambio en la Tasa Indice; disponiéndose, sin embargo, que en ningún momento la tasa de interés será menor del _____ % anual, ni mayor del _____ % anual de no haber ocurrido ningún evento de incumplimiento. Reconocemos y entendemos claramente que la tasa de interés provisto en este pagaré no es necesariamente la tasa de interés más baja cobrada por el Banco, el cual podrá conceder créditos con tasas sobre, igual a, o por debajo de, la Tasa Indice.

☐ **3 – Tasa con Colateral de Efectivo.** El balance insoluto de la Suma Principal devengará intereses a razón de una tasa anual equivalente a la suma de (a) la tasa de interés pagada por el Banco de tiempo en tiempo sobre el depósito a plazo fijo pignorado como colateral para el pago de todas las cantidades insolutas de este pagaré, incluyendo todas las renovaciones de dicho depósito y/o de este pagaré, más (b) _____ %. En la fecha efectiva de cualquier cambio en la tasa de interés pagada por el banco sobre el depósito pignorado y todas las renovaciones del mismo, los correspondientes cambios en la tasa de interés sobre el balance insoluto de la Suma Principal serán efectivos simultáneamente.

## TERMINOS Y CONDICIONES ADICIONALES

Los términos y condiciones contenidos al dorso de este pagaré se incorporan aquí por referencia, constituyendo parte de este documento, y los mismos nos obligan como si estuviesen impresos íntegramente en este lugar.

El uso del plural en este pagaré se entenderá singular cuando haya sido firmado por una sola persona.

Hatillo _____ , Puerto Rico _____ , el  12  de  enero  de  2005 .

Las Mattas, Inc.

Juan M. Barreto Ginorio, Presidente

Juan M. Barreto Ginorio

María E. Hernández Ruiz

GEN-383 / 2-98

**BANCO POPULAR**

# ANEJO AL PAGARE

| PRINCIPAL $1,850,000 | NUM. DE IDENT. CLIENTE | PAGARE NUM. | INICIAL DEL OFICIAL | NUM. OFICIAL 1320 |
|---|---|---|---|---|

## CARGOS POR FINANCIAMIENTO:

a) Nos obligamos a pagar al Banco cargos por financiamiento a razón de _____ por ciento (_____ %) de la cantidad total del crédito concedido equivalente a $_____ al momento del primer desembolso.

b) Nos obligamos a pagar al Banco cargos por financiamiento por la cantidad fija de $ 7,000.00 _____ .

## CARGOS POR INCUMPLIMIENTO (DEFAULT RATE)

Préstamo colateral efectivo con interés fluctuante basado en el interés del depósito.

De ocurrir cualquier incumplimiento especificado en el pagaré y documentos del préstamo, el balance insoluto de la Suma Principal devengará intereses a razón de una tasa anual fluctuante equivalente a la suma de la Tasa Indice más _____ %.

## PAGO POR ADELANTADO:

Préstamo o facilidades de crédito de $250,000 o menos.

a) El pago anticipado o adelantado de principal que resulte eventualmente en el saldo del préstamo antes de la fecha convenida estará sujeto al cobro de un cargo equivalente al cinco por ciento (5%).

Pagos por adelantado préstamo o facilidades de crédito mayores a $250,000.

b) El pago anticipado o adelantado de principal que resulte eventualmente en el saldo del préstamo antes de la fecha convenida estará sujeto al cobro de un cargo equivalente al  cinco  por ciento (  5  %).

c) El pago anticipado o adelantado que resulte eventualmente en el saldo del préstamo antes de la fecha convenida estará sujeto al cobro de un cargo equivalente al por ciento que se indica a continuación del balance de principal pagado por adelantado, según el término transcurrido desde la otorgación del préstamo hasta la fecha de pre-pago: durante el primer año: _____ %, durante el segundo y tercer año: _____ % y durante el cuarto y quinto año: _____ %.

En   Hatillo   Puerto Rico el   12   de   enero   de   2005

Aceptado y conforme:

Las Martas, Inc.

_____
Deudor
Juan M. Barreto Ginorio, Presidente

_____
Codeudor/Garantizado
Juan M. Barreto Ginorio

X _____
María E. Hernández Ruiz

## ENDORSEMENT OF PROMISSORY NOTE

Banco Popular de Puerto Rico, as legal owner and holder of this Note, hereby endorses assigns, delivers and transfers this Note to, and makes this Note payable to the order of, PR Asset Portfolio 2013-1 International, LLC, without recourse.

BANCO POPULAR DE PUERTO RICO

By:_____

Name: Yara R. Figueroa Marrero

Title: Authorized Representative

## ENDORSEMENT OF PROMISSORY NOTE

PR Asset Portfolio 2013-1 International, LLC, as the legal owner and holder of this Note, hereby endorses, assigns, delivers and transfers this Note to, and makes this Note payable to the order of, CONDADO 5, LLC, a Delaware Limited Liability Company ("Assignee"), without recourse, representation or warranty, express or implied, except as provided in certain Loan Sale Agreement executed by PR ASSET PORTFOLIO 2013-1 INTERNATIONAL, LLC ("Assignor") and Assignee dated July 17, 2017.

Dated as of July 17, 2017.

PR ASSET PORTFOLIO 2013-1 INTERNATIONAL, LLC

By: _____

Name: Oneida Perez-Acosta
Title: Authorized Signatory

Exhibit XLI - Proof of Claim No. 1-1 filed by Condado   Page 54 of 202

## Enmienda al Pagaré o Contrato de Préstamo

| Nombre del Cliente | Región | Núm. de Id. | Núm. de Prést. | Principal |
|---|---|---|---|---|
| LAS MARTAS, INC. | 60 | | | $ 1,850,000.00 |

Los términos y condiciones del Pagaré por la cantidad de principal de UN MILLON OCHOCIENTOS CINCUENTA MIL***************
*********************************** dólares emitido por LAS MARTAS, INC. _____ (el Deudor) a la orden de Banco
Popular de Puerto Rico (el Banco) el 12 de enero de 2005 , balance hoy de $ 1,683,777.47 _____ se enmiendan
como sigue:

[X] **Moratoria**

El Deudor ha solicitado y el Banco ha accedido concederle una moratoria de _120_ días en cuanto al pago de principal del Pagaré comenzando
el 12 de julio de 2007 hasta el 12 de octubre de 2007 . El pago de principal se reanudará el
12 de noviembre de 2007 .

   [X] La moratoria **no** conlleva una extensión del vencimiento del Pagaré. El pago diferido bajo la moratoria será pagadero al vencimiento
   del Pagaré en un pago final (balloon payment) junto con el balance insoluto del préstamo al vencimiento.

   [ ] La moratoria conlleva una extensión del vencimiento del Pagaré hasta el _____ de _____ de _____ para cubrir el
   pago diferido de principal de _____ días y el balance insoluto del préstamo al vencimiento.

[X] **Cargo por Financiamiento**

El Deudor ha solicitado y el Banco ha accedido concederle un cambio en el cargo por financiamiento por desembolso de _____ % a _____ %.

El Deudor pagará al Banco en esta misma fecha un cargo por financiamiento de $ 500.00 _____ .

Este documento tiene el único propósito de conceder los cambios aquí descritos y no se entenderá que enmienda ningún otro término o condición
del Pagaré o Contrato de Préstamo. Tampoco deberá interpretarse que este documento constituye una novación de la obligación del Deudor
evidenciada por el referido Pagaré.

COM-383-1 / 7-05  (PDF)

| Nombre del Cliente | Región | Núm. de Id. | Núm. de Prést. | Principal |
|---|---|---|---|---|
| LAS MARTAS, INC. | 60 | | | $ 1,850,000.00 |

En _Hatillo_____, Puerto Rico, el _2___ de _julio_____ de _2007___ .

BANCO POPULAR DE PUERTO RICO

**Deudor (es)**

_Juan  M Barreto Ginorio-Presidente_
Nombre                                          Firma

_____
Nombre                                          Firma

**Co-Deudor(es) / Garantizador(es)**

_Juan  M Barreto Ginorio_
Nombre                                          Firma

_JM  Dairy Inc._
Nombre                                          Firma

**Oficial (es) BPPR**

_Jose Perez #1320_
Nombre y Número Autoridad Prestataria           Firma

_____
Nombre y Número Autoridad Prestataria           Firma

Deuda agregada por $ _1,936,715.05_____

COM-383-1 / 7-05  (PDF)

## Enmienda al Pagaré o Contrato de Préstamo

| Nombre del Cliente | Región | Núm. de Id. | Núm. de Prést. | Principal |
|---|---|---|---|---|
| LAS MARTAS, INC. | 60 | ▮▮▮▮▮ | | $ 1,850,000.00 |

Los términos y condiciones del Pagaré por la cantidad de principal de <u>UN MILLON OCHOCIENTOS CINCUENTA MIL</u> *************
****************************** dólares emitido por <u>LAS MARTAS, INC.</u> (el Deudor) a la orden de Banco
Popular de Puerto Rico (el Banco) el <u>12</u> de <u>enero</u> de <u>2005</u> , con balance de $ <u>1,652,634.42</u> se enmiendan
como sigue:

La última enmienda, contrato o acuerdo fue el <u>2</u> de <u>julio</u> de <u>2007</u> .

[X]  **Moratoria**

El Deudor ha solicitado y el Banco ha accedido concederle una moratoria de <u>90</u> días en cuanto al pago de principal del Pagaré comenzando
el <u>12</u> de <u>abril</u> de <u>2008</u> hasta el <u>12</u> de <u>junio</u> de <u>2008</u> . El pago de principal se reanudará el
<u>12</u> de <u>julio</u> de <u>2008</u> .

> [X]  La moratoria **no** conlleva una extensión del vencimiento del Pagaré. El pago diferido bajo la moratoria será pagadero al vencimiento
> del Pagaré en un pago final (balloon payment) junto con el balance insoluto del préstamo al vencimiento.

> [ ]  La moratoria conlleva una extensión del vencimiento del Pagaré hasta el _____ de _____ de _____ para cubrir el
> pago diferido de principal de _____ días y el balance insoluto del préstamo al vencimiento.

[X]  **Cargo por Financiamiento**

El Deudor ha solicitado y el Banco ha accedido concederle un cambio en el cargo por financiamiento por desembolso de _____ % a _____ %.

El Deudor pagará al Banco en esta misma fecha un cargo por financiamiento de $ <u>1,250.00</u> .

Este documento tiene el único propósito de conceder los cambios aquí descritos y no se entenderá que enmienda ningún otro término o condición
del Pagaré o Contrato de Préstamo. Tampoco deberá interpretarse que este documento constituye una novación de la obligación del Deudor
evidenciada por el referido Pagaré.

COM-383-1 / 8-07

| Nombre del Cliente | | Región | Núm. de Id. | Núm. de Prést. | Principal |
|---|---|---|---|---|---|
| LAS MARTAS, INC. | | 60 | | | $ 1,850,000.00 |

En Hatillo _____, Puerto Rico, el 19 de marzo de 2008 .

BANCO POPULAR DE PUERTO RICO

**Deudor (es)**

Juan  M. Barreto Ginorio-Presidente
Nombre                                              Firma

_____                    _____
Nombre                                              Firma

**Co-Deudor(es) / Garantizador(es)**

Juan  M. Barreto Ginorio-Garantizador
Nombre                                              Firma

JM  Dairy Inc. -Garantizador
Nombre                                              Firma

**Oficial (es) BPPR**

Jose Perez #1320
Nombre y Número Autoridad Prestataria        Firma

_____                    _____
Nombre y Número Autoridad Prestataria        Firma

Deuda agregada por $ 2,005,511.32

COM-383-1 / 8-07

## Enmienda al Pagaré o Contrato de Préstamo

| Nombre del Cliente | Región | Núm. de Id. | Núm. de Prést. | Principal |
|---|---|---|---|---|
| LAS MARTAS INC | 30 | | | $ 1,850,000.00 |

Los términos y condiciones del Pagaré por la cantidad de principal de UN MILLON OCHOCIENTOS CINCUENTA MIL ------- ------------------------------ dólares emitido por LAS MARTAS INC (el Deudor) a la orden de Banco Popular de Puerto Rico (el Banco) el 12 de enero de 2005 , con balance de $ 1,643,243.20 se enmiendan como sigue:

La última enmienda, contrato o acuerdo fue el 19 de marzo de 2008 .

[X] **Moratoria**

El Deudor ha solicitado y el Banco ha accedido concederle una moratoria de 90 días en cuanto al pago de principal del Pagaré comenzando el 12 de agosto de 2008 hasta el 12 de octubre de 2008 . El pago de principal se reanudará el 12 de noviembre de 2008 .

   [X] La moratoria no conlleva una extensión del vencimiento del Pagaré. El pago diferido bajo la moratoria será pagadero al vencimiento del Pagaré en un pago final (balloon payment) junto con el balance insoluto del préstamo al vencimiento.

   [ ] La moratoria conlleva una extensión del vencimiento del Pagaré hasta el _____ de _____ de _____ para cubrir el pago diferido de principal de _____ días y el balance insoluto del préstamo al vencimiento.

[X] **Cargo por Financiamiento**

El Deudor ha solicitado y el Banco ha accedido concederle un cambio en el cargo por financiamiento por desembolso de _____ % a _____ %.

El Deudor pagará al Banco en esta misma fecha un cargo por financiamiento de $ 250.00 _____ .

Este documento tiene el único propósito de conceder los cambios aquí descritos y no se entenderá que enmienda ningún otro término o condición del Pagaré o Contrato de Préstamo. Tampoco deberá interpretarse que este documento constituye una novación de la obligación del Deudor evidenciada por el referido Pagaré.

COM-383-1 / R-07

| Nombre del Cliente | Región | Núm. de Id. | Núm. de Prést. | Principal |
|---|---|---|---|---|
| LAS MARTAS INC | 30 | | | $ 1,850,000.00 |

En Hatillo _____, Puerto Rico, el 12 de agosto de 2008.

BANCO POPULAR DE PUERTO RICO

**Deudor (es)**

Juan M Barreto Ginorio- Presidente
_____
Nombre                                  Firma

_____
Nombre                                  Firma

**Co-Deudor(es) / Garantizador(es)**

UCLG
_____
Nombre                                  Firma

_____
Nombre                                  Firma

**Oficial (es) BPPR**

JOSE A PEREZ LOPEZ # 1320
_____
Nombre y Número Autoridad Prestataria   Firma

_____
Nombre y Número Autoridad Prestataria   Firma

Deuda agregada por $ 1.983.808.33 _____

COM-383-1 / 8-07

## Enmienda al Pagaré o Contrato de Préstamo

| Nombre del Cliente | Región | Núm. de Id. | Núm. de Prést. | Principal |
|---|---|---|---|---|
| LAS MARTAS INC | 30 | | | $ 1,850,000.00 |

Los términos y condiciones del Pagaré por la cantidad de principal de UN MILLON OCHOCIENTOS CINCUENTA MIL -------------- ------------------------------------------ dólares emitido por LAS MARTAS INC (el Deudor) a la orden de Banco Popular de Puerto Rico (el Banco) el 12 de enero de 2005 , con balance de $ 1,643,243.20 se enmiendan como sigue:

La última enmienda, contrato o acuerdo fue el 12 de agosto de 2008 .

[X] **Moratoria**

El Deudor ha solicitado y el Banco ha accedido concederle una moratoria de 60 días en cuanto al pago de principal del Pagaré comenzando el 12 de noviembre de 2008 hasta el 12 de diciembre de 2008 . El pago de principal se reanudará el 12 de enero de 2009 .

  [X] La moratoria no conlleva una extensión del vencimiento del Pagaré. El pago diferido bajo la moratoria será pagadero al vencimiento del Pagaré en un pago final (balloon payment) junto con el balance insoluto del préstamo al vencimiento.

  [ ] La moratoria conlleva una extensión del vencimiento del Pagaré hasta el _____ de _____ de _____ para cubrir el pago diferido de principal de _____ días y el balance insoluto del préstamo al vencimiento.

[X] **Cargo por Financiamiento**

El Deudor ha solicitado y el Banco ha accedido concederle un cambio en el cargo por financiamiento por desembolso de _____ % a _____ %.

El Deudor pagará al Banco en esta misma fecha un cargo por financiamiento de $ 300.00 _____ .

Este documento tiene el único propósito de conceder los cambios aquí descritos y no se entenderá que enmienda ningún otro término o condición del Pagaré o Contrato de Préstamo. Tampoco deberá interpretarse que este documento constituye una novación de la obligación del Deudor evidenciada por el referido Pagaré.

COM-383-1 / 8-07

| Nombre del Cliente | Región | Núm. de Id. | Núm. de Prést. | Principal |
|---|---|---|---|---|
| LAS MARTAS INC | 30 | | | $ 1,850,000.00 |

En Hatillo _____, Puerto Rico, el 15 de octubre de 2008.

BANCO POPULAR DE PUERTO RICO

**Deudor (es)**

Juan M Barreto Ginorio- Presidente
Nombre                                          Firma

_____                       _____
Nombre                                          Firma

**Co-Deudor(es) / Garantizador(es)**

UCLG
Nombre                                          Firma

_____                       _____
Nombre                                          Firma

**Oficial (es) BPPR**

JOSE A PEREZ LOPEZ # 1320
Nombre y Número Autoridad Prestataria            Firma

_____                       _____
Nombre y Número Autoridad Prestataria            Firma

Deuda agregada por $ 1,979,784.05

COM-383-1 / 8-07

# Enmienda al Pagaré o Contrato de Préstamo

| Nombre del Cliente | Región | Núm. de Id. | Núm. de Prést. | Principal |
|---|---|---|---|---|
| LAS MARTAS INC | 30 | | | $ 1,850,000.00 |

Los términos y condiciones del Pagaré por la cantidad de principal de UN MILLON OCHOCIENTOS CINCUENTA MIL ----------------------------- dólares emitido por LAS MARTAS INC

Popular de Puerto Rico (el Banco) el 12 de enero de 2005 , con balance de $ 1,643,243.20 (el Deudor) a la orden de Banco se enmiendan como sigue:

La última enmienda, contrato o acuerdo fue el 15 de octubre de 2008 .

☒ **Moratoria**

El Deudor ha solicitado y el Banco ha accedido concederle una moratoria de 30 días en cuanto al pago de principal del Pagaré comenzando el 12 de enero de 2009 hasta el 12 de enero de 2009 . El pago de principal se reanudará el 12 de febrero de 2009 .

☒ La moratoria **no** conlleva una extensión del vencimiento del Pagaré. El pago diferido bajo la moratoria será pagadero al vencimiento del Pagaré en un pago final (balloon payment) junto con el balance insoluto del préstamo al vencimiento.

☐ La moratoria conlleva una extensión del vencimiento del Pagaré hasta el _____ de _____ de _____ para cubrir el pago diferido de principal de _____ días y el balance insoluto del préstamo al vencimiento.

☒ **Cargo por Financiamiento**

El Deudor ha solicitado y el Banco ha accedido concederle un cambio en el cargo por financiamiento por desembolso de _____ % a _____ %.

El Deudor pagará al Banco en esta misma fecha un cargo por financiamiento de $ 500.00 _____ .

Este documento tiene el único propósito de conceder los cambios aquí descritos y no se entenderá que enmienda ningún otro término o condición del Pagaré o Contrato de Préstamo. Tampoco deberá interpretarse que este documento constituye una novación de la obligación del Deudor evidenciada por el referido Pagaré.

COM-383-1 / 8-07

| Nombre del Cliente | Región | Núm. de Id. | Núm. de Prést. | Principal |
|---|---|---|---|---|
| LAS MARTAS INC | 30 | | | $ 1,850,000.00 |

En Hatillo _____, Puerto Rico, el 31 de diciembre de 2008 .

BANCO POPULAR DE PUERTO RICO

**Deudor (es)**

Juan M Barreto Ginorio- Presidente
Nombre                                         Firma

Nombre                                         Firma

**Co-Deudor(es) / Garantizador(es)**

UCLG
Nombre                                         Firma

Nombre                                         Firma

**Oficial (es) BPPR**

JOSE A PEREZ LOPEZ # 1320
Nombre y Número Autoridad Prestataria           Firma

Nombre y Número Autoridad Prestataria           Firma

Deuda agregada por $ 1,979,784.05

COM-383-1 / 8-07

## Enmienda al Pagaré o Contrato de Préstamo

| Nombre del Cliente | Región | Núm. de Id. | Núm. de Prést. | Principal |
|---|---|---|---|---|
| LAS MARTAS INC | 30 | | | $ 1,850,000.00 |

Los términos y condiciones del Pagaré por la cantidad de principal de UN MILLON OCHOCIENTOS CINCUENTA MIL---------
------------------------------------------- dólares emitido por LAS MARTAS INC _____ (el Deudor) a la orden de Banco
Popular de Puerto Rico (el Banco) el 12 de enero de 2005, con balance de $ 1,631,526.99 _____ se enmiendan
como sigue:

La última enmienda, contrato o acuerdo fue el 31 de diciembre de 2008.

X   Moratoria

El Deudor ha solicitado y el Banco ha accedido concederle una moratoria de 60 días en cuanto al pago de principal del Pagaré comenzando
el 12 de marzo de 2009 hasta el 12 de abril de 2009. El pago de principal se reanudará el
12 de mayo de 2009.

  X   La moratoria no conlleva una extensión del vencimiento del Pagaré. El pago diferido bajo la moratoria será pagadero al vencimiento
      del Pagaré en un pago final (balloon payment) junto con el balance insoluto del préstamo al vencimiento.

  ☐   La moratoria conlleva una extensión del vencimiento del Pagaré hasta el _____ de _____ de _____ para cubrir el
      pago diferido de principal de _____ días y el balance insoluto del préstamo al vencimiento.

X   Cargo por Financiamiento

El Deudor ha solicitado y el Banco ha accedido concederle un cambio en el cargo por financiamiento por desembolso de _____ % a _____ %.

El Deudor pagará al Banco en esta misma fecha un cargo por financiamiento de $ 1,500.00 _____.

Este documento tiene el único propósito de conceder los cambios aquí descritos y no se entenderá que enmienda ningún otro término o condición
del Pagaré o Contrato de Préstamo. Tampoco deberá interpretarse que este documento constituye una novación de la obligación del Deudor
evidenciada por el referido Pagaré.

COM-383-1 / 8-07

| Nombre del Cliente | Región | Núm. de Id. | Núm. de Prést. | Principal |
|---|---|---|---|---|
| LAS MARTAS INC | 30 | | | $ 1,850,000.00 |

En _Hatillo_____ , Puerto Rico, el _18___ de _febrero_____ de _2009____ .

BANCO POPULAR DE PUERTO RICO

**Deudor (es)**

Juan M Barreto Ginorio- Presidente
Nombre                                    Firma

_____                   _____
Nombre                                    Firma

**Co-Deudor(es) / Garantizador(es)**

Juan M Barreto Ginorio
Nombre                                    Firma

_____                   _____
Nombre                                    Firma

**Oficial (es) BPPR**

José A. Pérez López # 1320
Nombre y Número Autoridad Prestataria      Firma

_____                   _____
Nombre y Número Autoridad Prestataria      Firma

Deuda agregada por $ 1.965.502.80 _____

## Enmienda al Pagaré o Contrato de Préstamo

| Nombre del Cliente | Región | Núm. de Id. | Núm. de Prést. | Principal |
|---|---|---|---|---|
| LAS MARTAS INC. | 30 | ▮▮▮▮ | | $ 1,850,000.00 |

Los términos y condiciones del Pagaré por la cantidad de principal de <u>Un Millón Ochocientos Cincuenta Mil ***************************</u> <u>*******************************</u> dólares emitido por <u>LAS MARTAS INC.</u> (el Deudor) a la orden de Banco Popular de Puerto Rico (el Banco) el <u>12</u> de <u>enero</u> de <u>2005</u> , con balance de $ <u>1,560,449.13</u> se enmiendan como sigue:

La última enmienda, contrato o acuerdo fue el <u>18</u> de <u>febrero</u> de <u>2009</u> .

[X] **Reestructuración Plan de Pago**

Se reestructura el plan de pago <u>mensual</u> original de $ <u>14,900.00</u> de <u>principal incluyendo intereses</u> a un nuevo plan de pago de <u>59</u> pagos <u>mensuales</u> de $ <u>14,800.00</u> y un último pago de $ <u>*</u> todos que incluyen intereses , comenzando el <u>12</u> de <u>febrero</u> de <u>2010</u> hasta el <u>12</u> de <u>enero</u> de <u>2015</u> .

[ ] La reestructuración no conlleva una extensión del vencimiento del Pagaré, siendo el último pago el resultante del balance insoluto del préstamo al vencimiento (balloon payment).

[X] La reestructuración conlleva una <u>extensión</u> del vencimiento del Pagaré hasta el <u>12</u> de <u>enero</u> de <u>2015</u> .

*Tendrá un pago final global el cual puede variar dependiendo de las fluctuaciones en la tasa de interés primario.*

[X] **Tasa de Interés**

Se cambia la tasa de interés del Pagaré comenzando el <u>12</u> de <u>enero</u> de <u>2010</u> hasta la fecha de vencimiento del Pagaré de <u>1.000</u> % <u>bajo la Tasa de Interés Primario</u> a <u>0.000</u> % <u>sobre la Tasa de Interés Primario</u> .

Se cambia la tasa máxima de interés (ceiling) del Pagaré de _____ % a _____ % y en la tasa mínima de interés (floor) de _____ % a _____ %.

[X] **Tasa de Interés de Incumplimiento**

La tasa de interés de incumplimiento del Pagaré cambia de <u>2.000</u> % <u>sobre la Tasa de Interés Primario</u> a <u>3.000</u> % <u>sobre la Tasa de Interés Primario</u> con un mínimo (floor) de _____ % a _____ %.

[X] **Cargo por Financiamiento**

El cargo por financiamiento por desembolso cambia de _____ % a _____ %

Se establece un cargo por financiamiento pagadero en la misma fecha de $ <u>2,000.00</u> .

Este documento tiene el único propósito de conceder los cambios aquí descritos y no se entenderá que enmienda ningún otro término o condición del Pagaré o Contrato de Préstamo. Tampoco deberá interpretarse que este documento constituye una novación de la obligación del Deudor evidenciada por el referido Pagaré.

COM-383-1 / 9-09   (PDF)

| Nombre del Cliente | Región | Núm. de Id. | Núm. de Prést. | Principal |
|---|---|---|---|---|
| LAS MARTAS INC. | 60 | | | $ 1,850,000.00 |

En Hatillo _____ , Puerto Rico, el  2  de  noviembre  de  2009  .

BANCO POPULAR DE PUERTO RICO

**Deudor (es)**

Juan M. Barreto Ginorio-Presidente
_____          _____
Nombre                                                              Firma

_____          _____
Nombre                                                              Firma

**Co-Deudor(es)**

_____          _____
Nombre                                                              Firma

_____          _____
Nombre                                                              Firma

_____          _____
Nombre                                                              Firma

**Garantizador(es)**

Juan M. Barreto Ginorio
_____          _____
Nombre                                                              Firma

_____          _____
Nombre                                                              Firma

_____          _____
Nombre                                                              Firma

_____          _____
Nombre                                                              Firma

_____          _____
Nombre                                                              Firma

_____          _____
Nombre                                                              Firma

_____          _____
Nombre                                                              Firma

_____          _____
Nombre                                                              Firma

**Oficial (es) BPPR**

José A. Pérez López # 1320
_____          _____
Nombre y Número Autoridad Prestataria             Firma

_____          _____
Nombre y Número Autoridad Prestataria             Firma

COM-383-1 / 9-09   (PDF)

## Enmienda al Pagaré o Contrato de Préstamo

| Nombre del Cliente | Región | Núm de Id | Núm de Prést | Principal |
|---|---|---|---|---|
| LAS MARTAS INC | 30 | | | $1 850 000 00 |

Los términos y condiciones del Pagaré por la cantidad de principal de UN MILLON OCHOCIENTOS CINCUENTA MIL----------------------
----------------- dólares emitido por LAS MARTAS INC. _____ (el Deudor) a la orden de Banco Popular de Puerto Rico (el Banco) el
12 ___ de enero _____ de 2005 ____ con balance de $ 1,484,656 47 _____ se enmiendan como sigue:

La última enmienda contrato o acuerdo fue el 2 ____ de noviembre ___ de 2009 _____

[X]  Reestructuración Plan de Pago

Se reestructura el plan de pago mensual _____ original de $ 14,800,00 _____ de principal incluyendo intereses ____ a un nuevo plan de pago de
47 ___ pagos mensuales _____ de $ 14,800.00 _____ y un último pago de $ 940,481,95 _____ todos que incluyen intereses
comenzando el 12 ___ de febrero ____ de 2011 ___ hasta el 12 ___ de enero _____ de 2015 ____
LA CANTIDAD DEL ULTIMO PAGO PUEDE VARIAR SEGUN LAS FLUCTUACIONES EN LA TASA DE INTERES

[X]  La reestructuración no conlleva una extensión del vencimiento del Pagaré, siendo el último pago el resultante del balance insoluto del
préstamo al vencimiento (balloon payment)

[ ]  La reestructuración conlleva una _____ del vencimiento del Pagaré hasta el _____ de _____ de _____

[X]  Tasa de Interés

Se cambia la tasa de interés del Pagaré comenzando el 12 ___ de septiembre ___ de 2010 ___ hasta la fecha de vencimiento del Pagaré de 0.000 %
sobre la Tasa de Interés Primario _____ a 0.250 % sobre la Tasa de Interés Primario

Se cambia la tasa máxima de interés (ceiling) del Pagaré de _____ % a _____ % y en la tasa mínima de interés (floor) de _____ % a _____ %

[X]  Tasa de Interés de Incumplimiento

La tasa de interés de incumplimiento del Pagaré cambia de 3.000 % sobre la Tasa de Interés Primario _____ a 3 250 %
sobre la Tasa de Interés Primario _____ con un mínimo (floor) de _____ % a _____ %

[X]  Cargo por Financiamiento

El cargo por financiamiento por desembolso cambia de _____ % a _____ %

Se establece un cargo por financiamiento pagadero en la misma fecha de $ 500.00 _____

Este documento tiene el único propósito de conceder los cambios aquí descritos y no se entenderá que enmienda ningún otro término o condición del Pagaré
o Contrato de Préstamo. Tampoco deberá interpretarse que este documento constituye una novación de la obligación del Deudor evidenciada por el referido
Pagaré

| Nombre del Cliente | Región | Núm de Id | Núm de Prést | Principal |
|---|---|---|---|---|
| LAS MARTAS INC | 30 | | | $1,850,000 00 |

En Hatillo _____ Puerto Rico, el 15 de octubre de 2010 _____

BANCO POPULAR DE PUERTO RICO

Deudor (es)

BARRETO GINORIO, JUAN M - PRESIDENTE
Nombre                                                    Firma

Nombre                                                    Firma

Co-Deudor (es)

Nombre                                                    Firma

Nombre                                                    Firma

Nombre                                                    Firma

Garantizador (es)

BARRETO GINORIO, JUAN M
Nombre                                                    Firma

Nombre                                                    Firma

Nombre                                                    Firma

Nombre                                                    Firma

Nombre                                                    Firma

Nombre                                                    Firma

Nombre                                                    Firma

Oficial (es) BPPR

JOSE A PEREZ 1320
Nombre y Número Autoridad Prestataria                     Firma

Nombre y Número Autoridad Prestataria                     Firma

COM-283 1/3-10   (7DB)

## Enmienda al Pagaré o Contrato de Préstamo

| Nombre del Cliente | | Región | Núm. de Id. | Núm. de Prést. | Principal |
|---|---|---|---|---|---|
| LAS MARTAS INC. | | 30 | ▮▮▮▮▮ | | $1,850,000.00 |

Los términos y condiciones del Pagaré por la cantidad de principal de UN MILLON OCHOCIENTOS CINCUENTA MIL------------------------------------ dólares emitido por LAS MARTAS INC. (el Deudor) a la orden de Banco Popular de Puerto Rico (el Banco) el 12 de enero de 2005 , con balance de $ 1,475,460.43 se enmiendan como sigue:

La última enmienda, contrato o acuerdo fue el 15 de octubre de 2010 .

X   Moratoria

Se concede al Deudor una moratoria de 60 días en cuanto al pago de principal del Pagaré comenzando el 12 de febrero de 2011 hasta el 12 de marzo de 2011 . El pago de principal se reanudará el 12 de abril de 2011 .

X   La moratoria no conlleva una extensión del vencimiento del Pagaré. El pago diferido bajo la moratoria será pagadero al vencimiento del Pagaré en un pago final (balloon payment) junto con el balance insoluto del préstamo al vencimiento.

   La moratoria conlleva una extensión del vencimiento del Pagaré hasta el _____ de _____ de _____ para cubrir el pago diferido de principal de _____ días y el balance insoluto del préstamo al vencimiento.

X   Cargo por Financiamiento

El cargo por financiamiento por desembolso cambia de _____ % a _____ %.

Se establece un cargo por financiamiento pagadero en la misma fecha de $ 250.00 _____.

Este documento tiene el único propósito de conceder los cambios aquí descritos y no se entenderá que enmienda ningún otro término o condición del Pagaré o Contrato de Préstamo. Tampoco deberá interpretarse que este documento constituye una novación de la obligación del Deudor evidenciada por el referido Pagaré.

| Nombre del Cliente | Región | Núm. de Id. | Núm. de Prést. | Principal |
|---|---|---|---|---|
| LAS MARIAS INC. | 30 | | | $1,850,000.00 |

En Hatillo _____ , Puerto Rico, el 26 ____ de enero _____ de 2011 _____ .

BANCO POPULAR DE PUERTO RICO

Deudor (es)

JUAN M BARRETO GINORIO - PRESIDENTE
Nombre                                                         Firma

Nombre                                                         Firma

Co-Deudor(es)

Nombre                                                         Firma

Nombre                                                         Firma

Nombre                                                         Firma

Garantizador(es)

JUAN M BARRETO GINORIO
Nombre                                                         Firma

Nombre                                                         Firma

Nombre                                                         Firma

Nombre                                                         Firma

Nombre                                                         Firma

Nombre                                                         Firma

Nombre                                                         Firma

Nombre                                                         Firma

Oficial (es) BPPR

JOSE A PEREZ - 01320
Nombre y Número Autoridad Prestataria                          Firma

Nombre y Número Autoridad Prestataria                          Firma

COM 200 1/110  (PDF)

## Enmienda al Pagaré o Contrato de Préstamo

| Nombre del Cliente | Región | Núm. de Id. | Núm. de Prést. | Principal |
|---|---|---|---|---|
| LAS MARTAS INC. | 30 | | | $1,850,000.00 |

Los términos y condiciones del Pagaré por la cantidad de principal de UN MILLON OCHOCIENTOS CINCUENTA MIL - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - dólares emitido por LAS MARTAS INC. _____ (el Deudor) a la orden de Banco Popular de Puerto Rico (el Banco) el 12 de enero de 2005 , con balance de $ 1,465,107.30 se enmiendan como sigue:

La última enmienda, contrato o acuerdo fue el 26 de enero de 2011 .

### ☒ Moratoria

Se concede al Deudor una moratoria de 60 días en cuanto al pago de principal del Pagaré comenzando el 12 de mayo de 2011 hasta el 12 de junio de 2011 . El pago de principal se reanudará el 12 de julio de 2011 .

☒ La moratoria no conlleva una extensión del vencimiento del Pagaré. El pago diferido bajo la moratoria será pagadero al vencimiento del Pagaré en un pago final (balloon payment) junto con el balance insoluto del préstamo al vencimiento.

☐ La moratoria conlleva una extensión del vencimiento del Pagaré hasta el _____ de _____ de _____ para cubrir el pago diferido de principal de _____ días y el balance insoluto del préstamo al vencimiento.



### ☒ Cargo por Financiamiento

El cargo por financiamiento por desembolso cambia de _____ % a _____ %.

Se establece un cargo por financiamiento pagadero en la misma fecha de $ 300.00 _____.

Este documento tiene el único propósito de conceder los cambios aquí descritos y no se entenderá que enmienda ningún otro término o condición del Pagaré o Contrato de Préstamo. Tampoco deberá interpretarse que este documento constituye una novación de la obligación del Deudor evidenciada por el referido Pagaré.

COM-383-1 / 3-11   (PDF)

| Nombre del Cliente | Región | Núm. de Id. | Núm. de Prést. | Principal |
|---|---|---|---|---|
| LAS MARTAS INC. | 30 | | | $1,850,000.00 |

En Hatillo _____, Puerto Rico, el 2 ____ de mayo _____ de 2011 ____ .

BANCO POPULAR DE PUERTO RICO

**Deudor (es)**

JUAN M BARRETO GINORIO - PRESIDENTE
Nombre                                        Firma

Nombre                                        Firma

**Co-Deudor(es)**

Nombre                                        Firma

Nombre                                        Firma

Nombre                                        Firma

**Garantizador(es)**

JUAN M BARRETO GINORIO
Nombre                                        Firma

Nombre                                        Firma

Nombre                                        Firma

Nombre                                        Firma

Nombre                                        Firma

Nombre                                        Firma

Nombre                                        Firma

Nombre                                        Firma

**Oficial (es) BPPR**

JOSE A. PEREZ LOPEZ - 1320
Nombre y Número Autoridad Prestataria          Firma

Nombre y Número Autoridad Prestataria          Firma

COM-383-1 / 5-11   (PDF)

*PAGARE*

VALOR: $180,500.00                              VENCIMIENTO: A la presentación

POR VALOR RECIBIDO, los suscribientes se obligan a pagar solidariamente e incondicionalmente al Banco Popular de Puerto Rico, o a su orden, a la presentación, la suma de CIENTO OCHENTA MIL QUINIENTOS DOLARES ($180,500.00) en moneda del curso legal de los Estados Unidos de América, más intereses desde esta fecha y hasta su total pago y solvento a una tasa equivalente a la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York, para préstamos comerciales a corto plazo ("New York Prime Rate"). Los cambios en la tasa de interés serán efectivos a partir de la fecha de efectividad de cualquier cambio en la tasa preferencial ("prime rate") antes indicada.

Los suscribientes renunciamos todo derecho de aviso, presentación, requerimiento de pago y protesto y para el caso de reclamación judicial o de ejecución de la hipoteca constituída en garantía del pago de esta obligación nos obligamos al pago de las costas, gastos y honorarios de abogados del tenedor en la cantidad líquida y exigible equivalente al diez por ciento (10%) del principal original de esta obligación, es decir, la suma de DIECIOCHO MIL CINCUENTA DOLARES ($18,050.00).

El pago de esta obligación ha sido garantizado con hipoteca sobre la propiedad inmueble que se relaciona en el documento de hipoteca en garantía de pagaré otorgado en esta misma fecha, bajo la escritura número 23— del notario público Francisco J. Arraiza Donate.

En Hatillo, Puerto Rico a 11 de marzo de 2003.

JUAN MANUEL BARRETO GINORIO                    MARIA ELENA HERNANDEZ RUIZ

TESTIMONIO NUM: 26,850

Jurado y suscrito ante mí por DON JUAN MANUEL BARRETO GINORIO, seguro social ▮▮▮ y DOÑA MARIA ELENA HERNANDEZ RUIZ, seguro social ▮▮▮ mayores de edad, casados entre sí, propietarios y vecinos de Arecibo, Puerto Rico; a quienes doy fe de conocer personalmente.

En Hatillo, Puerto Rico a 11 de marzo de 2003.

NOTARIO PUBLICO

## ENDORSEMENT OF MORTGAGE NOTE

Pay to the order of PR Asset Portfolio 2013-1 International, LLC, without recourse.

BANCO POPULAR DE PUERTO RICO

By: _____

Name: Yadira I. Guevara

Title:   Authorized Representative

315872v1

## ENDORSEMENT OF MORTGAGE NOTE

PR Asset Portfolio 2013-1 International, LLC, as the legal owner and holder of this Mortgage Note, hereby endorses, assigns, delivers and transfers this Mortgage Note to, and makes this Note payable to the order of, CONDADO 5, LLC, a Delaware Limited Liability Company ("Assignee"), without recourse, representation or warranty, express or implied, except as provided in certain Loan Sale Agreement executed by PR ASSET PORTFOLIO 2013-1 INTERNATIONAL, LLC ("Assignor") and Assignee dated July 17, 2017.

Dated as of July 17, 2017.


PR ASSET PORTFOLIO 2013-1 INTERNATIONAL, LLC

By:

Name: Oneida Perez-Acosta
Title: Authorized Signatory

*PAGARE*

VALOR: $165,000.00                    VENCIMIENTO:  A la presentación

POR VALOR RECIBIDO, los suscribientes se obligan a pagar solidariamente e incondicionalmente al Banco Popular de Puerto Rico, o a su orden, a la presentación, la suma de CIENTO SESENTA Y CINCO MIL DOLARES ($165,000.00) en moneda del curso legal de los Estados Unidos de América, más intereses desde esta fecha y hasta su total pago y solvento a una tasa equivalente a la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York, para préstamos comerciales a corto plazo ("New York Prime Rate"). Los cambios en la tasa de interés serán efectivos a partir de la fecha de efectividad de cualquier cambio en la tasa preferencial ("prime rate") antes indicada.

Los suscribientes renunciamos todo derecho de aviso, presentación, requerimiento de pago y protesto y para el caso de reclamación judicial o de ejecución de la hipoteca constituida en garantía del pago de esta obligación nos obligamos al pago de las costas, gastos y honorarios de abogados del tenedor en la cantidad líquida y exigible equivalente al diez por ciento (10%) del principal original de esta obligación, es decir, la suma de DIECISEIS MIL QUINIENTOS DOLARES ($16,500.00).

El pago de esta obligación ha sido garantizado con hipoteca sobre la propiedad inmueble que se relaciona en el documento de hipoteca en garantía de pagaré otorgado en esta misma fecha, bajo la escritura número  59  del notario público Francisco J. Arraiza Donate.

En Hatillo, Puerto Rico a 11 de abril de 2002.

JUAN MANUEL BARRETO GINORIO

MARIA ELENA HERNANDEZ RUIZ

TESTIMONIO NUM: 26,004

Jurado y suscrito ante mí por DON JUAN MANUEL BARRETO GINORIO, seguro social ▆▆▆▆ y DOÑA MARIA ELENA HERNANDEZ RUIZ, seguro social ▆▆▆▆ mayores de edad, casados entre sí, propietarios y vecinos de Arecibo, Puerto Rico; a quienes doy fe de conocer personalmente.

En Hatillo, Puerto Rico a 11 de abril de 2002.

## ENDORSEMENT OF MORTGAGE NOTE

Pay to the order of PR Asset Portfolio 2013-1 International, LLC, without recourse.

BANCO POPULAR DE PUERTO RICO

By: _____

Name: Yadira I. Guevara

Title:   Authorized Representative

315872v1

## ENDORSEMENT OF MORTGAGE NOTE

PR Asset Portfolio 2013-1 International, LLC, as the legal owner and holder of this Mortgage Note, hereby endorses, assigns, delivers and transfers this Mortgage Note to, and makes this Note payable to the order of, CONDADO 5, LLC, a Delaware Limited Liability Company ("Assignee"), without recourse, representation or warranty, express or implied, except as provided in certain Loan Sale Agreement executed by PR ASSET PORTFOLIO 2013-1 INTERNATIONAL, LLC ("Assignor") and Assignee dated July 17, 2017.

Dated as of July 17, 2017.

PR ASSET PORTFOLIO 2013-1 INTERNATIONAL, LLC

By:

Name: Oneida Perez-Acosta
Title: Authorized Signatory

*PAGARE*

2333

VALOR: $125,600.00                                  VENCIMIENTO: A la presentación

POR VALOR RECIBIDO, los suscribientes se obliga a pagar incondicionalmente al Banco Popular de Puerto Rico, o a su orden, a la presentación, la suma de CIENTO VEINTICINCO MIL SEISCIENTOS DOLARES ($125,600.00) en moneda del curso legal de los Estados Unidos de América más intereses desde ésta fecha y hasta su total pago y solvento a una tasa equivalente a la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York para préstamos comerciales a corto plazo ("New York Prime Rate"). Los cambios en la tasa de interés serán efectivos a partir de la fecha de efectividad de cualquier cambio en la tasa preferencial ("prime rate") antes indicada.

Los suscribientes renunciamos todo derecho de aviso, presentación, requerimiento de pago y protesto y para el caso de reclamación judicial o de ejecución de la hipoteca constituída en garantía del pago de esta obligación nos obligamos al pago de las costas, gastos y honorarios de abogados del tenedor en la cantidad líquida y exigible equivalente al diez por ciento (10%) del principal original de esta obligación, es decir, la suma de DOCE MIL QUINIENTOS SESENTA DOLARES ($12,560.00).

El pago de esta obligación ha sido garantizado con hipoteca sobre la propiedad inmueble que se relaciona en el documento de hipoteca en garantía de pagaré otorgado en esta misma fecha, bajo la escritura número 31--- del notario público Francisco J. Arraiza Donate.

En Hatillo, Puerto Rico a 6 de marzo de 1998.

JUAN MANUEL BARRETO GINORIO                      MARIA ELENA HERNANDEZ RUIZ

TESTIMONIO NUM: 21,060

Jurado y suscrito ante mí por don Juan Manuel Barreto Ginorio, Seguro Social ▆▆▆▆ y doña María Elena Hernández Ruiz, Seguro Social ▆▆▆▆ mayores de edad, casados entre sí, propietarios y vecinos de Arecibo, Puerto Rico; a quienes doy fe de conocer personalmente.

En Hatillo, Puerto Rico a 6 de marzo de 1998.

## ENDORSEMENT OF MORTGAGE NOTE

Pay to the order of PR Asset Portfolio 2013-1 International, LLC, without recourse.

**BANCO POPULAR DE PUERTO RICO**

By:_____

Name: Yadira I. Guevara

Title:   Authorized Representative

# ENDORSEMENT OF MORTGAGE NOTE

PR Asset Portfolio 2013-1 International, LLC, as the legal owner and holder of this Mortgage Note, hereby endorses, assigns, delivers and transfers this Mortgage Note to, and makes this Note payable to the order of, CONDADO 5, LLC, a Delaware Limited Liability Company ("Assignee"), without recourse, representation or warranty, express or implied, except as provided in certain Loan Sale Agreement executed by PR ASSET PORTFOLIO 2013-1 INTERNATIONAL, LLC ("Assignor") and Assignee dated July 17, 2017.

Dated as of July 17, 2017.

PR ASSET PORTFOLIO 2013-1 INTERNATIONAL, LLC

By: _____
Name: Oneida Perez-Acosta
Title: Authorized Signatory

**PAGARE**

2333

VALOR:  $174,400.00

VENCIMIENTO:  A LA PRESENTACION

POR VALOR RECIBIDO, a su vencimiento, pagaré(mos) a la orden de BANCO CENTRAL HISPANO-Puerto Rico, la suma principal de CIENTO SETENTA Y CUATRO MIL CUATROCIENTOS DOLARES ($174,400), con intereses sobre el balance insoluto a razón del diez y un octavo por ciento (10 ⅛%) anual desde la fecha de este Pagaré hasta su total y completo pago.  Los intereses sobre esta obligación se pagarán por mensualidades vencidas, debiendo efectuarse el pago de intereses y de principal en el domicilio del tenedor de esta obligación.

Me(nos) Obligo(obligamos) Igualmente a pagar las costas y honorarios de abogado de que se valga el tenedor de este Pagaré en caso de cobro por la vía judicial, fijando con tal fin como suma líquida la de DIECISIETE MIL CUATROCIENTOS CUARENTA DOLARES ($17,440), la cual suma será exigible por el sólo hecho de la radicación de una demanda, o de una reclamación de quiebra.

Se renuncia por la presente a los derechos de presentación, protesto, demanda y aviso.

Si esta obligación es suscrita por más de una persona, natural o jurídica, se entenderá que todas ellas se obligan solidariamente al pago de la misma.

Esta obligación está garantizada por hipoteca constituida según escritura número   63   , otorgada el día 10 de octubre de 1995, ante el Notario William A. Power, en   Manatí   , Puerto Rico.

En Manatí   , Puerto Rico, a 10 de octubre de 1995.

_____            _____
JUAN MANUEL BARRETO GINORIO            MARIA ELENA HERNANDEZ RUIZ

Afidávit Núm.  8368

Reconocido y suscrito ante mí en  Manatí   , Puerto Rico, hoy día  10   de octubre de 1995, por la(s) siguiente(s) persona(s) a quien(es) doy fe de conocer personalmente: Juan Manuel Barreto Ginorio y su esposa María Elena Hernández Ruíz, ambos mayores de edad, propietarios y vecinos de Arecibo, Puerto Rico.

_____
NOTARIO PUBLICO

# ENDORSEMENT OF MORTGAGE NOTE

Pay to the order of PR Asset Portfolio 2013-1 International, LLC, without recourse.

BANCO POPULAR DE PUERTO RICO

By: _____

Name: Yadira I. Guevara
Title:   Authorized Representative

315872v1

## ENDORSEMENT OF MORTGAGE NOTE

PR Asset Portfolio 2013-1 International, LLC, as the legal owner and holder of this Mortgage Note, hereby endorses, assigns, delivers and transfers this Mortgage Note to, and makes this Note payable to the order of, CONDADO 5, LLC, a Delaware Limited Liability Company ("Assignee"), without recourse, representation or warranty, express or implied, except as provided in certain Loan Sale Agreement executed by PR ASSET PORTFOLIO 2013-1 INTERNATIONAL, LLC ("Assignor") and Assignee dated July 17, 2017.

Dated as of July 17, 2017.

PR ASSET PORTFOLIO 2013-1 INTERNATIONAL, LLC

By: _____

Name: Oneida Perez Acosta
Title: Authorized Signatory

PAGARE

VALOR $250,000.00                              VENCE: A la presentación.

Debemos y pagaremos al portador o tenedor por endoso o a su orden de esta obligación la suma de DOSCIENTOS CINCUENTA MIL DOLARES ($250,000.00) valor recibido a la presentación de este documento en el domicilio del portador o tenedor por endoso del mismo en Puerto Rico. Esta obligación devengará intereses a razón de una tasa equivalente a uno por ciento (1%) sobre la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York, para préstamos comerciales a corto plazo ("New York Prime Rate"), desde la fecha de su emisión hasta la fecha de su presentación. Nos obligamos a pagar una suma equivalente al diez por ciento del principal adeudado, para cubrir las costas, gastos y honorarios de abogado en la eventualidad de una reclamación judicial, es decir, la suma de $25,000.00.

Autorizamos expresamente al tenedor o portador de esta obligación para aplicar al pago de este pagaré cualquier suma de dinero en depósito o cualquier otro concepto en poder de dicho portador o tenedor perteneciente a todos o a cualquiera de los obligados en este pagaré, entendiéndose que esta autorización o su falta de ejercicio no alterará o modificará la obligación a que fue contraída. Renunciamos a la presentación, protesto o aviso de no haber sido honrado este pagaré. Asímismo renunciamos a las leyes de prescripción que puedan favorecernos. Esta obligación será garantizada con primera hipoteca en garantía de pagaré que se otorgará en el día de hoy ante el notario público Francisco J. Arraiza Donate, con la escritura número 89.

En   Hatillo------ Puerto Rico a   13   de mayo de 1994.

_____
JUAN MANUEL BARRETO GINORIO

_____
MARIA ELENA HERNANDEZ RUIZ

TESTIMONIO NUM:   16,117

Jurado y suscrito ante mí por Don Juan Manuel Barreto Ginorio, seguro social ████████ y Doña María Elena Hernández Ruiz, seguro social ████████ mayores de edad, casados entre sí, propietarios y vecinos de Arecibo, Puerto Rico; a quienes doy fe de conocer personalmente.

En   Hatillo,   Puerto Rico, a  13  de mayo de 1994.

_____
NOTARIO PUBLICO

# ENDORSEMENT OF MORTGAGE NOTE

Pay to the order of PR Asset Portfolio 2013-1 International, LLC, without recourse.

**BANCO POPULAR DE PUERTO RICO**

By:_____

Name: Yadira I. Guevara

Title:   Authorized Representative

## ENDORSEMENT OF MORTGAGE NOTE

PR Asset Portfolio 2013-1 International, LLC, as the legal owner and holder of this Mortgage Note, hereby endorses, assigns, delivers and transfers this Mortgage Note to, and makes this Note payable to the order of, CONDADO 5, LLC, a Delaware Limited Liability Company ("Assignee"), without recourse, representation or warranty, express or implied, except as provided in certain Loan Sale Agreement executed by PR ASSET PORTFOLIO 2013-1 INTERNATIONAL, LLC ("Assignor") and Assignee dated July 17, 2017.

Dated as of July 17, 2017.

PR ASSET PORTFOLIO 2013-1 INTERNATIONAL, LLC

By: _____
Name: Oneida Perez-Acosta
Title: Authorized Signatory

Exhibit XLI - Proof of Claim No. 1-1 filed by Condado   Page 89 of 202

---------------NUMERO OCHENTA Y NUEVE--------------

------HIPOTECA EN GARANTIA DE PAGARE AL PORTADOR---

En   Hatillo,   Puerto Rico, a   trece----------------------

de   mayo   de mil novecientos noventa y cuatro.--------------

---------------------------ANTE   MI---------------------

FRANCISCO J. ARRAIZA DONATE: Abogado y Notario Público de

Puerto Rico con residencia en Vega Baja, Puerto Rico y estudio abierto en

Arecibo, Puerto Rico.----------------------------------------

---------------------------COMPARECEN---------------------

DE UNA SOLA PARTE: I

, mayores de edad, casados entre sí, propietarios

y vecinos de Arecibo, Puerto Rico (en adelante denominados Deudores

Hipotecarios).----------------------------------------

---------------------------DOY   FE----------------------

De conocer personalmente a los comparecientes y por sus dichos de sus

circunstancias personales antes expuestas.  Me aseguran tener y a mi juicio

tienen la capacidad legal necesaria para este otorgamiento y en tal virtud

libremente:----------------------------------------

---------------------------EXPONEN----------------------

PRIMERO:  Manifiestan los Deudores Hipotecarios ser dueños en pleno

dominio de las propiedad  que se describe a continuación:------------------

RUSTICA: Finca radicada en el barrio Naranjito del término municipal de
Hatillo, compuesta de  VEINTITRES  CUERDAS, un cuadro de terreno,
llano a pastos, equivalentes a nueve hectáreas, trece áreas, ochenta centiáreas
con casa de habitación de altos y bajos de madera y zinc y un ranchón de
madera con cobija de paja.  En lindes al Norte, con Sucesión de Francisco
García y Laureano García, Sur, Pedro González Jorge, antes Ramón Torrado;
Este, Guillermo Rodríguez y por el Oeste, Sucesión Francisco García.---------

----------------------------------------------------------------
----------------------------------------------------------------

1

Inscrita al folio veintiuno y veintitres vuelto del tomo cuarenta y cinco (45) de Hatillo, finca número dos mil trescientos treinta y tres (2,333), Registro de la Propiedad Sección II de Arecibo.------

Adquirida por compra en virtud de la escritura número   88.--------

otorgada en igual fecha del presente otorgamiento, ante el notario fedante.

SEGUNDO: Que los Deudores Hipotecarios, con el propósito de levantar fondos, han expedido en esta fecha un Pagaré al Portador, trasmisible por la simple entrega, el cual copiado literalmente lee como sigue:------

PAGARE.  VALOR $250,000.00.------

VENCE: A la presentación.------

Debemos y pagaremos al portador o tenedor por endoso o a su orden de esta obligación la suma de DOSCIENTOS CINCUENTA MIL DOLARES ($250,000.00) valor recibido a la presentación de este documento en el domicilio del portador o tenedor por endoso del mismo en Puerto Rico. Esta obligación devengará intereses a razón de una tasa equivalente a uno por ciento (1%) sobre la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York, para préstamos comerciales a corto plazo ("New York Prime Rate"), desde la fecha de su emisión hasta la fecha de su presentación. Nos obligamos a pagar una suma equivalente al diez por ciento del principal adeudado, para cubrir las costas, gastos y honorarios de abogado en la eventualidad de una reclamación judicial, es decir, la suma de $25,000.00.  Autorizamos expresamente al tenedor o portador de esta obligación para aplicar al pago de este pagaré cualquier suma de dinero en depósito o cualquier otro concepto en poder de dicho portador o tenedor perteneciente a todos o a cualquiera de los obligados en este pagaré, entendiéndose que esta autorización o su falta de ejercicio no alterará o modificará la obligación a que fue contraída. Renunciamos a la presentación, protesto o aviso de no haber sido honrado este pagaré.  Asimismo renunciamos a las leyes de prescripción que puedan favorecernos. Esta obligación será garantizada con primera hipoteca en garantía de pagaré que se otorgará en el día de hoy ante el notario público Francisco J. Arraiza Donate, con la escritura número  89.------

En  Hatillo, Puerto Rico a  13 de  mayo    de 1994.------
FIRMADOS:  JUAN MANUEL BARRETO GINORIO. MARIA ELENA HERNANDEZ RUIZ.------

TESTIMONIO NUM: 16,117------

2

Exhibit XLI - Proof of Claim No. 1-1 filed by Condado   Page 91 of 202

Jurado y suscrito ante mí por [

mayores de edad, casados entre sí, propietarios y vecinos de Arecibo, Puerto Rico; a quienes doy fe de conocer personalmente. En---- Hatillo, Puerto Rico, a 13 de mayo de 1994.---------- FIRMADO: FRANCISCO J. ARRAIZA DONATE. NOTARIO PUBLICO. (Aparece impreso el sello del Notario).---------- Concuerda bien y fielmente con el original al que me remito y el que he tenido a la vista.----------

TERCERO: Manifiestan los Deudores Hipotecarios que la propiedad descrita en el hecho PRIMERO anterior se encuentra libre de cargas y/o gravámenes.----------

CUARTO: Que para garantizar al portador de la obligación emitida y transcrita en el hecho SEGUNDO anterior, el pago de las cantidades relacionadas en la referida obligación, los Deudores Hipotecarios han resuelto constituir PRIMERA HIPOTECA sobre la propiedad descrita en el hecho PRIMERO anterior, a favor del portador del pagaré, así como sobre cuantas mejoras, elevaciones, equipo de carácter permanente o nuevas edificaciones se le incorporen al inmueble en el futuro, por la suma de DOSCIENTOS CINCUENTA MIL DOLARES ($250,000.00) devengando intereses a razón de una tasa equivalente a uno por ciento (1%) sobre la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York, para préstamos comerciales a corto plazo ("New York Prime Rate"), con vencimiento a la presentación y un crédito adicional de una suma equivalente a diez por ciento del principal adeudado, para cubrir las costas, gastos y honorarios de abogados, es decir, la cantidad de VEINTICINCO MIL DOLARES ($25,000.00) en la eventualidad de una reclamación judicial.----------

QUINTO: Que los deudores hipotecarios se reservan expresamente el derecho de recoger y pagar en cualquier momento antes de su presentación al cobro la obligación garantizada, sin perjuicio de cualquier pago adicional

3

Exhibit X-1: Proof of Claim No. 1-1 filed by Condado   Page 92 of 202

por concepto de penalidad acordado.----------------------------------------------

SEXTO: Que la propiedad inmueble descrita en el hecho PRIMERO anterior se tasa en la suma de DOSCIENTOS CINCUENTA MIL DOLARES ($250,000.00), para que sirva de tipo a la primera subasta en caso de ejecución de la hipoteca.--------------------------------------------------------

SEPTIMO: Son condiciones expresas de este contrato y el incumplimiento de cualquiera de una de ellas dará derecho al tenedor por endoso de la obligación garantizada a exigir su pago inmediato y a proceder a su reclamación, o a la ejecución de la hipoteca constituida en garantía de la misma, sin necesidad de presentación o requerimiento de pago de la obligación garantizada que (I) los deudores hipotecarios mantendrán los inmuebles hipotecados al corriente en el pago de las contribuciones territoriales y acreditarán semestralmente con el correspondiente recibo, el pago de las mismas, (II) los deudores hipotecarios mantendrán las edificaciones hipotecadas y aquellas otras que se construyan en los inmuebles hipotecados aseguradas contra los riesgos de incendio, huracán y terremoto,-- por su valor razonable en el mercado, bajo pólizas que contendrán los endosos y condiciones que se requieran para que en caso de siniestro o pérdida, la indemnización sea pagadera al tenedor del pagaré garantizado, (III) los seguros se mantendrán con compañías aseguradoras aceptables al tenedor del pagaré garantizado (IV) los Deudores Hipotecarios pagarán puntualmente las primas de los seguros y mantendrán las edificaciones hipotecadas y aquellas que construya en los inmuebles hipotecados en buenas condiciones de uso y reparación para su buena conservación que el tenedor de la obligación garantizada razonablemente requiera.-------------------------------

OCTAVO: Los Deudores Hipotecarios convienen expresamente en que toda compensación o sentencia, por daños a la propiedad hipotecada, toda compensación concedida a virtud de procedimiento de expropiación o de----- cualquier otra clase y toda indemnización bajo las pólizas de seguro en caso



4

Exhibit 1 - Proof of Claim No. 1-1 filed by Condado   Page 93 of 202

de siniestro o pérdida queda concedida de manera irrevocable por la presente al tenedor de la obligación garantizada, quien la aplicará al pago o reducción de lo que se adeude por concepto de dicha obligación, quedando el portador o el tenedor de la obligación garantizada autorizado y facultado por la presente para recibir cualquier compensación por los conceptos indicados, así como el importe de cualquier sentencia y otorgar los recibos y cartas de pago y documentos de relevo que fueren necesarios.------------------------------------

NOVENO: Queda estipulado que el crédito adicional estipulado para costas, gastos y honorarios de abogado, para el caso de reclamación judicial de la obligación garantizada o ejecución de la hipoteca que se constituye por este instrumento, será exigible en su totalidad por la sola radicación de la demanda en cobro de dinero de la obligación garantizada o radicación del escrito inicial de ejecución de hipoteca aún cuando los procedimientos no sean llevados hasta su terminación definitiva o sean llevados en rebeldía de los deudores hipotecarios.---------------------------------------------------------------

DECIMO: Los Deudores Hipotecarios convienen expresamente que de no poderse inscribir esta hipoteca por cualquier causa o motivo a ellos atribuible como un gravamen hipotecario sin defecto de clase alguna dentro de un ------ término que no excederá de sesenta días contados de la fecha de hoy, la obligación  garantizada con hipoteca a que se contrae este instrumento se considerá vencida y el tenedor de la obligación garantizada podrá a su opción, proceder a su cobro por la vía judicial, sin necesidad de presentación  o demanda de pago.------------------------------------------------------------------------

UNDECIMO: Son de cuenta y cargo de los deudores hipotecarios los gastos y honorarios notariales correspondientes a esta escritura, los gastos y honorarios correspondientes a una copia certificada de la misma, los gastos necesarios para la inscripción de la copia certificada en el Registro de la ------ Propiedad y los gastos y honorarios correspondientes a la cancelación de la



5

hipoteca en su día.------------------------------------------------

DUODECIMO: Es condición indispensable de la presente hipoteca que los deudores hipotecarios no podrán arrendar, segregar, vender, ceder o de ninguna forma, enajenar el inmueble descrito en el hecho PRIMERO anterior, o parte del mismo a terceras personas sin el consentimiento expreso y escrito del Acreedor y/o tenedor del pagaré, disponiéndose, que el Acreedor y/o tenedor del pagaré garantizado con hipoteca que mediante el presente otorgamiento se constituye podrá declarar vencido el crédito y/o préstamo garantizado y proceder al cobro inmediato del mismo.------------------------

DECIMOTERCERA: La hipoteca que por la presente se constituye se hace extensiva a los frutos de la propiedad hipotecada cualquiera que sea la situación en que se encuentre los objetos muebles que pudieren separarse sin quebranto de la materia o deterioro del objeto y que se hallen actualmente o en adelante permanentemente en la propiedad hipotecada bien para su adorno, comodidad o explotación o bien para el servicio de alguna industria, las rentas vencidas y no satisfechas al tiempo de exigirse el cumplimiento de la obligación representada por el Pagaré y garantizada por esta hipoteca; la agregación de terrenos por voluntad del dueño de la propiedad hipotecada; y a toda mejora, nuevas construcciones o nuevas edificaciones que se introduzca en las propiedad hipotecada, aunque dichas mejoras, nuevas edificaciones o nuevas construcciones fueren hechas por un tercer poseedor de la propiedad hipotecada, ya que es condición esencial de esta hipoteca que esas posibles mejoras, nuevas construcciones y nuevas edificaciones queden automaticamente gravadas con la hipoteca aquí constituida, como si las mismas hubiesen sido hechas por los deudores hipotecarios o existieran mientras los dueños de la propiedad hipotecada eran los deudores hipotecarios, debiendo constituir esta cláusula un claro y formal aviso al ----- tercer poseedor, o a cualquiera otra persona que causahubiere su título o derecho de los deudores hipotecarios.------------------------------------

6

Exhibit XII - Proof of Claim No. 1-1 filed by Condado   Page 95 of 202

-------------------ACEPTACION Y ADVERTENCIAS-------------------

Los comparecientes aceptan esta escritura en la forma redactada por estar

conforme a lo convenido y yo, el Notario, en cumplimiento a lo dispuesto en

la ley le hice las advertencias legales pertinentes a este otorgamiento.--------

Así lo dicen y otorgan los comparecientes ante mí, luego de haber renunciado

al derecho que les hice saber tenían para requerir la presencia de testigos

instrumentales.------------------------------------------------------------------

Leída esta escritura por los comparecientes, en la misma se ratifican y fijan

sus iniciales en todos y cada uno de los folios de este documento y firman

ante mí, el notario, que de todo lo consignado en este instrumento público,

DOY FE.------------------------------------------------------------------

FIRMADO:  JUAN MANUEL BARRETO GINORIO Y MARIA ELENA
HERNANDEZ RUIZ.------------------------------------------------

FIRMADO, SIGNADO, SELLADO Y RUBRICADO: FRANCISCO J.
ARRAIZA DONATE.------------------------------------------------



Hay los correspondientes sellos de Rentas
Internas y del Impuesto Notarial cancelados y
el sello del Notario debidamente estampado y
las iniciales de los otorgantes al margen de
todos y cada uno de los folios del original
Certifico: que la que precede es FRIMERA
copia fiel exacta de la escritura que bajo
el núm. 29  obra en el protocolo del año
19?---- de esta notaría a mi cargo y al
cual me remito y para entregar a Ju-
anel Barreto Ginorio e ido la presente
que contiene siete (7) pliegos bajo
mi firma, signo, sello y rúbrica, hoy día 3
de  mayo  de  198?
dejando nota de esta al margen de la escritura
matriz.  DOY FE.





Inscrito al folio 255 del tomo
289 de Hatillo, finca #9333 Insc. 14ta.
hipoteca que se constituye por el título.
Arecibo a 11 de agosto de 1994.
Der $960.50
Los ael.

Registado.



PO BOX 364225, SAN JUAN, PUERTO RICO 00939-4225

Exhibit XL - Proof of Claim No. 1-1 filed by Condado    Page 97 of 202

10/95



---------------NUMERO SESENTA Y TRES (63)------------------

----------------------HIPOTECA----------------------

---En la ciudad de Manatí------------ , Estado Libre

Asociado de Puerto Rico, a los diez ------------ (10)

días del mes de octubre de mil novecientos noventa

y cinco (1995). ---------------------------------

----------------------ANTE MI----------------------

-----------------WILLIAM A. POWER------------------

---Abogado y Notario Público de Puerto Rico, con

residencia en el Municipio de San Juan, Puerto

Rico y estudio abierto en la Avenida Muñoz Rivera

número Doscientos Setenta (270), Hato Rey, San

Juan, Puerto Rico. ------------------------------

--------------------COMPARECEN--------------------

---DE   UNA   SOLA   PARTE:

esposa   |

                        mayores de edad, pro-

pietarios y vecinos de Arecibo, Puerto Rico, ambas

personas   en   adelante   denominadas   el   "deudor

hipotecario". ------------------------------------

---Asegúrame los comparecientes hallarse en el

completo goce de sus derechos civiles y teniendo,

a mi juicio, la capacidad legal suficiente para

este otorgamiento, libremente -------------------

----------------------EXPONEN---------------------

---PRIMERO: El deudor hipotecario es dueño en

pleno dominio del inmueble que se describe en el

párrafo SEXTO de esta escritura. ---------------

---SEGUNDO: El deudor hipotecario en esta misma

fecha ha otorgado un pagaré cuya transcripción

literal es la que aparece en el párrafo QUINTO de

esta escritura, en adelante identificado como el

"Pagaré". ------------------------------------

---TERCERO: Con el propósito de garantizar el



1

pago total y completo de la deuda que evidencia el
Pagaré, el principal de la misma por la suma de
CIENTO SETENTA Y CUATRO MIL CUATROCIENTOS DOLARES
($174,400), sus intereses y el cumplimiento de
todas y cada una de las condiciones que el mismo
contiene y para garantizar además (i) un crédito
adicional equivalente al monto de cinco (5) años
de intereses, (ii) otro crédito equivalente a un
diez por ciento (10%) de la suma principal antes
señalada para cubrir las costas, gastos y honora-
rios de abogado que el deudor hipotecario viene
obligado a pagar en caso de reclamación judicial o
en quiebra de conformidad con los términos del
Pagaré; y (iii) otro crédito adicional por igual
cantidad que el anterior para cubrir aquellos
adelantos que pueda hacer el tenedor del Pagaré,
según éstos se señalan en el párrafo CUARTO de
esta escritura, el deudor hipotecario por la
presente constituye a favor del tenedor o tenedo-
res presentes o futuros del Pagaré (el "acreedor
hipotecario") HIPOTECA VOLUNTARIA sobre la propie-
dad que se describe en el párrafo SEXTO de esta
escritura en adelante identificada como la
"Propiedad Hipotecada", quedando la misma sujeta a
las siguientes ----------------------------------
-------------CLAUSULAS Y CONDICIONES:-------------
---Una: La hipoteca que por la presente se
constituye se hace extensiva: a los frutos de la
Propiedad Hipotecada cualquiera que sea la situa-
ción en que se encuentren; los objetos muebles que
pudieren separarse sin quebranto de la materia o
deterioro del objeto y que se hallen actualmente o
en adelante permanentemente en la Propiedad Hipo-
tecada, bien para su adorno, comodidad o explota-
ción o bien para el servicio de alguna industria;

2

las rentas vencidas y no satisfechas al tiempo de exigirse el cumplimiento de la obligación representada por el Pagaré y garantizada por esta hipoteca; la agregación de terrenos por voluntad del dueño de la Propiedad Hipotecada; y a toda mejora, nueva construcción o nueva edificación que se introduzca en la Propiedad Hipotecada, aunque dichas mejoras, nuevas construcciones o nuevas edificaciones fueren hechas por un tercer poseedor de la Propiedad Hipotecada ya que es condición esencial de esta hipoteca que esas posibles mejoras, nuevas construcciones y nuevas edificaciones queden automáticamente gravadas con la hipoteca aquí constituida, como si las mismas hubiesen sido hechas o construidas por el deudor hipotecario o existieran mientras el dueño de la Propiedad Hipotecada era el deudor hipotecario, debiendo constituir esta cláusula un claro y formal aviso al tercer poseedor, o a cualquiera otra persona que causahubiere su título o derecho del deudor hipotecario. ----------------------------------------

---Dos: El deudor hipotecario se obliga a mantener asegurada la Propiedad Hipotecada durante el período de vigencia de la hipoteca con compañías aseguradoras satisfactorias al acreedor hipotecario por las sumas y contra los riesgos que éste indique de tiempo en tiempo, debiendo endosarse dichas pólizas de seguro a favor del acreedor hipotecario de suerte que toda pérdida cubierta se pague directamente a éste. ----------------------

---Tres: La obligación que queda evidenciada por el Pagaré vencerá y será exigible de inmediato, sin necesidad de requerimiento previo al deudor hipotecario en todos o cualesquiera de los siguientes casos: ------------------------------

3

-----A) Si el deudor hipotecario faltare al pago de todas o cualesquiera de sus obligaciones bajo el Pagaré en la forma y manera en que aparecen allí fijadas. -----------------------------------
-----B) Si el deudor hipotecario dejare de pagar a su vencimiento las contribuciones impuestas sobre la Propiedad Hipotecada, o las que puedan imponerse sobre la misma. -----------------------
-----C) Si se registrare una "orden de remedio" en cuanto al deudor hipotecario en un caso involuntario bajo la Ley Federal de Quiebra o bajo cualquiera otra ley federal o estatal sobre insolvencia, o se nombrare un síndico, depositario, custodio (u oficial similar) del deudor hipotecario, o de una parte sustancial de su patrimonio, o si el deudor hipotecario iniciare un caso voluntario bajo la Ley Federal de Quiebra o bajo cualquiera otra ley federal o estatal sobre insolvencia, o si el deudor hipotecario accediere al nombramiento de, o a la toma de posesión por, un síndico, depositario, custodio (u oficial similar) del deudor hipotecario o de una parte sustancial de su patrimonio o si el deudor hipotecario hiciere una cesión de sus bienes para beneficio de sus acreedores. --------------------------------
-----D) Si el deudor hipotecario dejare que la Propiedad Hipotecada fuere embargada por otro acreedor y dicho embargo no fuere levantado dentro de un período de treinta (30) días. -------------
-----E) Si el deudor hipotecario incumpliese cualquier obligación garantizada con hipoteca sobre la Propiedad Hipotecada con rango superior a la hipoteca aquí constituida y por razón de tal incumplimiento el acreedor garantizado por dicha hipoteca procediere a ejecutar la misma ya bien

4

por el procedimiento ordinario o el sumario. -----
-----F) Si el deudor hipotecario concediere sobre
la Propiedad Hipotecada derecho de superficie o
usufructo o concediere a un tercero derecho a
construir o edificar en la Propiedad Hipotecada. -
-----G) Si el deudor hipotecario segregare y ven-
diere parte alguna de la Propiedad Hipotecada. --
-----H) Si el deudor hipotecario fuere una per-
sona jurídica y se disolviere o liquidare. ------
-----I) Si el deudor hipotecario vendiere,
cediere, o transfiriere cualquier participación en
común pro indiviso en la Propiedad Hipotecada,
excepto cuando dicha transferencia ocurriese por
herencia o mortis causa. -----------------------
-----J) Si la Propiedad Hipotecada estuviere
afecta a gravámenes hipotecarios o contributivos
preferentes distintos o adicionales a los que se
señalan en el párrafo SEXTO de esta escritura. --
-----K) Si el deudor hipotecario faltare al
cumplimiento de cualquiera de los términos y
condiciones contenidos en la presente escritura. -
---Cuatro: En el caso de que el Pagaré fuese
cedido, entregado en prenda o negociado en cual-
quiera otra forma, para garantizar préstamos del
deudor hipotecario o de cualquiera otra persona
natural o jurídica relacionada con éste o no, se
entenderá que todas las cantidades prestadas,
adelantadas o desembolsadas por el acreedor hipo-
tecario a favor del deudor hipotecario o de esa
otra persona natural o jurídica, y que se adelan-
taran en virtud y como consecuencia, directa o
indirecta, de la cesión, entrega, prenda o nego-
ciación del pagaré, quedarán automáticamente
garantizadas con la hipoteca constituida en esta
escritura, no importa quién fuere o resultare en

5

definitiva la persona (natural o jurídica) que recibiere el préstamo, el adelanto o el desembolso, aunque no se hubiese obtenido para ello el consentimiento del deudor hipotecario. En el caso a que se refiere este párrafo, las cantidades adelantadas por el acreedor hipotecario devengarán intereses a la tasa convenida para el principal desde el momento en que fueren adelantadas hasta su total pago. ---------------------------------
---Cinco: Para los efectos dispuestos en la Ley Hipotecaria vigente se tasa la Propiedad Hipotecada a los fines de la primera subasta en caso de ejecución, en la cantidad del principal original del Pagaré. ---------------------------------
---CUARTO: Los adelantos que quedarán garantizados por esta hipoteca hasta el límite señalado en el párrafo TERCERO de esta escritura, en caso de ser éstos efectuados por el acreedor hipotecario, son los siguientes: ---------------------------
-----(a) Contribuciones y cargas que pesen, o en el futuro se impongan sobre la Propiedad Hipotecada. ---------------------------------------
-----(b) Adelantos hechos para conservar la Propiedad Hipotecada en el mejor estado de conservación y reparación. ---------------------------
-----(c) Las primas de aquellos seguros que el deudor hipotecario venga obligado a obtener de conformidad con los términos de esta escritura. -
-----(d) Cualquier otro adelanto que el acreedor hipotecario pueda a su solo juicio efectuar a los fines de proteger la eficacia del gravamen hipotecario constituido sobre la Propiedad Hipotecada.
---QUINTO: La transcripción literal del pagaré es la siguiente: ---------------------------------
-------------------------------------------------

6

----------------------"PAGARE----------------------

VALOR:  $174,400.00 ------------------------------
VENCIMIENTO:  A LA PRESENTACION ------------------

-----POR VALOR RECIBIDO, a su vencimiento, paga-
ré(mos) a la orden de BANCO CENTRAL HISPANO-Puerto
Rico, la suma principal de CIENTO SETENTA Y CUATRO
MIL CUATROCIENTOS DOLARES ($174,400), con intere-
ses sobre el balance insoluto a razón del diez y
un octavo por ciento (10 ⅛%) anual desde la fecha
de este Pagaré hasta su total y completo pago.
Los intereses sobre esta obligación se pagarán por
mensualidades vencidas, debiendo efectuarse  el
pago de intereses y de principal en el domicilio
del tenedor de esta obligación. -------------------

-----Me(Nos) obligo(obligamos) igualmente a pagar
las costas y honorarios de abogado de que se valga
el tenedor de este Pagaré en caso de cobro por la
vía  judicial,  fijando  con  tal fin como suma
líquida  la de DIECISIETE  MIL  CUATROCIENTOS
CUARENTA DOLARES ($17,440), la cual suma será
exigible por el solo hecho de la radicación de una
demanda, o de una reclamación de quiebra.  -------

-----Se renuncia por la presente a los derechos de
presentación, protesto, demanda y aviso. --------

-----Si esta obligación es suscrita por más de una
persona, natural o jurídica, se entenderá que
todas ellas se obligan solidariamente al pago de
la misma. ----------------------------------------

-----Esta obligación está garantizada por hipoteca
constituida según escritura número 63--------------,
otorgada el día 10  de octubre de 1995, ante el
Notario Público William A. Power, en Manatí ------,
Puerto Rico. -------------------------------------

-----En Manatí ---------- , Puerto Rico, a 10   de
octubre de 1995. ---------------------------------

-----(firmado): Juan Manuel Barreto Ginorio -----
------------------JUAN MANUEL BARRETO GINORIO -----

-----(firmado): María Elena Hernández Ruíz ------
------------------MARIA ELENA HERNANDEZ RUIZ ------

Afidávit Núm.  8368  ----------------------------

-----Reconocido y suscrito ante mí en Manatí ------,
Puerto Rico, hoy día 10  de octubre de 1995, por
la(s) siguiente(s) persona(s) a quien(es) doy fe
de conocer personalmente: Juan Manuel Barreto
Ginorio y su esposa María Elena Hernández Ruíz,
ambos mayores de edad, propietarios y vecinos de
Arecibo, Puerto Rico.  ---------------------------

---(Firmado): William A. Power ------------------
-------------------Notario Público"---------------

-----(Sello Notarial)----------------------------

---SEXTO: La descripción de la Propiedad Hipo-

tecada y de los gravámenes a que se halla afecta

es la siguiente: --------------------------------

7

---RUSTICA: Finca radicada en el Barrio Naranjito del término municipal de Hatillo, Puerto Rico, compuesta de VEINTITRES (23) CUERDAS y un cuadro de terreno llano, a pastos, equivalente a nueve (9) hectáreas, trece (13) áreas y ochenta (80) centiáreas. Contiene una casa habitación de altos y bajos, de madera y zinc. En lindes por el NORTE, con la Sucesión de Francisco García y Laureano García; SUR, con Pedro González Jorge, antes Ramón Torrado; ESTE, con Guillermo Rodríguez; y OESTE, con Sucesión Francisco García.

---Inscrita en el Registro de la Propiedad de Puerto Rico, Sección Segunda de Arecibo, al folio número veintiuno (21) del tomo número cuarenta y cinco (45) de Hatillo, finca número dos mil trescientos treinta y tres (2,333), inscripción primera. ----------------------------------------

---El deudor hipotecario adquirió la antes descrita propiedad por compra a las "Sucesiones Toledo Boneta, Toledo Delgado y Toledo Toledo", según consta de la escritura número ochenta y ocho (88), otorgada en Hatillo, Puerto Rico, el día trece (13) de mayo de mil novecientos noventa y cuatro (1994), ante el Notario Público Francisco J. Arraiza Donate. --------------------

---Por su procedencia dicha propiedad se encuentra libre de cargas o gravámenes. --------------------

---Por sí, dicha propiedad se halla afecta a una hipoteca en garantía de un pagaré a favor del "Portador por endoso, o a su orden", por la suma principal de DOSCIENTOS CINCUENTA MIL DOLARES ($250,000), con intereses al uno por ciento (1%) anual sobre el interés preferencial de los principales bancos de New York, y cuyo vencimiento no se expresa, según consta de la escritura número ochenta y nueve (89), otorgada en Hatillo, Puerto Rico, el día trece (13) de mayo de mil novecientos noventa y cuatro (1994), ante el Notario Público Francisco J. Arraiza Donate, inscrita en el antes mencionado Registro al folio número doscientos

8

cincuenta y cinco (255) del tomo número doscientos ochenta y nueve (289) de Hatillo, inscripción décimocuarta. ------------------------------------

---SEPTIMO: Es condición esencial de la presente hipoteca que todo sucesor en título o interés del deudor hipotecario respecto a la totalidad o cualquier parte de la Propiedad Hipotecada, asuma solidariamente con el deudor hipotecario aquí compareciente, la obligación real de la hipoteca aquí constituida, y la obligación personal evidenciada por el Pagaré, en la misma forma, manera y extensión que si se tratase de uno de los otorgantes de esta escritura. Esta disposición deberá considerarse como parte de la consideración del traspaso o cesión de cualquier título o interés en los bienes hipotecados. -------------------------

---OCTAVO: El tenedor o tenedores del Pagaré transcrito en el párrafo QUINTO anterior tendrá el beneficio de todas las disposiciones y condiciones de esta escritura y podrá valerse de las mismas, incluyendo, sin que esto se interprete como una limitación, las disposiciones de esta escritura referentes al vencimiento anticipado de la deuda evidenciada por el Pagaré. ----------------------

--------------------ACEPTACION--------------------

---Los comparecientes aceptan esta escritura en la forma que está redactada por ajustarse a sus manifestaciones y deseos. ---------------------------

---Así lo dicen y otorgan los comparecientes ante mí, el Notario, luego de haber renunciado al derecho que les hice saber tenían para requerir la presencia de los testigos instrumentales. -------

---Hechas por mí, el Notario las advertencias legales pertinentes y, leída esta escritura por los otorgantes, la firman conmigo habiendo puesto

sus iniciales en todos los folios de este

documento. -------------------------------------

---Y de mi conocimiento personal de los otorgantes

y por sus dichos, de sus circunstancias personales

y vecindad, así como de todo lo demás consignado

en este instrumento público, yo, el Notario, DOY

FE. ----------------------------------

—————NUMERO TREINTA Y UNO—————

—————HIPOTECA EN GARANTIA DE PAGARE —————

En Hatillo, Puerto Rico, a seis————————————————

de marzo de mil novecientos noventa y ocho.—————————

—————————————ANTE MI—————

FRANCISCO J. ARRAIZA DONATE: Abogado y Notario Público de

Puerto Rico con residencia en Vega Baja, Puerto Rico y estudio abierto en

Arecibo, Puerto Rico.—————————————————————

—————————COMPARECEN—————

DE UNA PRIMERA PARTE: ———————————————

————————————————— mayores de edad, casados

entre sí, propietarios y vecinos de Arecibo, Puerto Rico, (en adelante

denominados "Deudores Hipotecarios")—————————————

DE LA SEGUNDA PARTE: EL BANCO POPULAR DE PUERTO RICO,

(en adelante denominado el "Banco"), seguro social patronal número ███

██████████████████████████████████

corporación bancaria doméstica con oficina principal en Hato Rey, Puerto

Rico y organizada y existente de acuerdo con las leyes del Estado Libre

Asociado de Puerto Rico, representada en este acto por su oficial ———

———————————————————————— mayor de

edad, casado con ———————————— y vecino de Arecibo, Puerto

Rico, cuyo carácter representativo se hará constar cuando y donde fuere

necesario.—————————————————————————

—————————DOY FE—————

De conocer personalmente a los comparecientes, así como por sus dichos de

sus circunstancias personales antes expresadas. Me aseguran tener y a mi

juicio tienen la capacidad legal necesaria para este otorgamiento y en tal



1

virtud libremente:------

------EXPONEN------

PRIMERO: Que los deudores hipotecarios son dueños a título de dominio del inmueble que se describe en la cláusula OCTAVA de esta escritura, la cual se encuentra afecta a los gravámenes que se mencionan en la referida cláusula.------

SEGUNDO: Que los Deudores Hipotecarios han expedido en esta fecha un Pagaré a la orden del Banco, el cual copiado literalmente lee como sigue:------

------PAGARE------

VALOR $125,600.00

VENCIMIENTO: A la presentación------

POR VALOR RECIBIDO, los suscribientes se obligan a pagar incondicionalmente al Banco Popular de Puerto Rico, o a su orden, a la presentación la suma de CIENTO VEINTICINCO MIL SEISCIENTOS DOLARES ($125,600.00) en moneda del curso legal de los Estados Unidos de América, más intereses desde esta fecha y hasta su total pago y solvento a una tasa equivalente a la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York, para préstamos comerciales a corto plazo ("New York Prime Rate"). Los cambios en la tasa de interés serán efectivos a partir de la fecha de efectividad de cualquier cambio en la tasa preferencial ("prime rate") antes indicada.------

Los suscribientes renunciamos todo derecho de aviso, presentación, requerimiento de pago y protesto y para el caso de reclamación judicial o de ejecución de la hipoteca constituida en garantía del pago de esta obligación nos obligamos al pago de las costas, gastos y honorarios de abogados del tenedor en la cantidad líquida y exigible equivalente al diez por ciento (10%) del principal original de esta obligación, es decir, la suma de DOCE MIL QUINIENTOS SESENTA DOLARES ($12,560.00). El pago de esta



2

obligación ha sido garantizado con hipoteca sobre la propiedad inmueble que se relaciona en el documento de hipoteca en garantía de pagaré otorgado en esta misma fecha, bajo la Escritura Número 31——— del Notario Público Francisco J. Arraiza Donate.———

En Hatillo, Puerto Rico a  6  de  marzo  de 1998.———

FIRMADOS: JUAN MANUEL BARRETO GINORIO———

MARIA ELENA HERNANDEZ RUIZ———

TESTIMONIO NUM:  21,060———

Jurado y suscrito ante mí por ———

——— ———nayores de edad, casados entre sí, propietarios y vecinos de Arecibo, Puerto Rico; a quienes doy fe de conocer personalmente.———

En Hatillo, Puerto Rico a  6  de marzo  de 1998.———

Firmado: Francisco J. Arraiza Donate NOTARIO PÚBLICO (Aparece impreso el sello del Notario Público).  Concuerda bien y fielmente con su original al que me remito y al que he tenido a la vista.———

TERCERO: Que con el propósito de garantizar al Banco Popular de Puerto Rico el pago de la obligación emitida y transcrita en el hecho SEGUNDO anterior, los Deudores Hipotecarios han convenido constituir HIPOTECA sobre el inmueble de su propiedad que se describe en la cláusula OCTAVA de esta escritura, llevándolo a efecto en las siguientes cláusulas que:———

———OTORGAN———

PRIMERO: Los Deudores Hipotecarios constituyen HIPOTECA a favor del Banco Popular de Puerto Rico o  a su orden y del tenedor por endoso en garantía de la obligación transcrita en el precedente SEGUNDO expositivo de esta escritura y sobre el inmueble de su propiedad descrito en la cláusula OCTAVA, así como sobre cuantas mejoras, elevaciones, equipo de carácter permanente o nuevas edificaciones se le incorporen al inmueble en el futuro, por las cantidades relacionadas  en la referida obligación, o sea, la suma de



3

CIENTO VEINTICINCO MIL SEISCIENTOS DOLARES ($125,600.00) de
principal, los intereses sobre dicho principal a la tasa de interés preferencial
("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales
bancos comerciales de la ciudad de New York, para préstamos comerciales
a corto plazo ("New York Prime Rate"), y un crédito adicional equivalente
al diez por ciento del principal adeudado, para cubrir las costas, gastos y
honorarios de abogados pactados, para el caso de reclamación judicial o
ejecución de la hipoteca, es decir, la suma de DOCE MIL QUINIENTOS
SESENTA DOLARES ($12,560.00), quedando el inmueble tasado en la
cantidad de CIENTO VEINTICINCO MIL SEISCIENTOS DOLARES
($125,600.00) a los efectos de la primera subasta en caso de ejecución de
hipoteca.-------------------------------------------------------------------

SEGUNDO: Son condiciones expresas de este contrato y el incumplimiento
de cualquiera de una de ellas dará derecho al Banco o al tenedor por endoso
de la obligación garantizada a exigir su pago inmediato y a proceder a su
reclamación, o a la ejecución de la hipoteca constituida en garantía de la
misma, sin necesidad de presentación o requerimiento de pago de la
obligación garantizada, que (I) los Deudores Hipotecarios mantendrán el
inmueble hipotecado al corriente en el pago de las contribuciones territoriales
y acreditarán semestralmente con el correspondiente recibo, el pago de las
mismas, (II) los deudores hipotecarios mantendrán las edificaciones
hipotecadas y aquellas otras que se construyan en el inmueble hipotecado
aseguradas contra los riesgos de incendio, huracán y terremoto, por su valor
razonable en el mercado, bajo pólizas que contendrán los endosos y
condiciones que se requieran para que en caso de siniestro o pérdida la
indemnización sea pagadera al Banco o al tenedor por endoso del pagaré
garantizado, (III) los seguros se mantendrán con compañías aseguradoras
aceptables al Banco o al tenedor por endoso de la obligación garantizada,
(IV) los deudores hipotecarios pagarán puntualmente las primas de los



4

seguros y (V) los deudores hipotecarios mantendrán las edificaciones
hipotecadas y aquellas otras que construyan en el inmueble hipotecado en
buenas condiciones de uso y reparación, para su buena conservación que el
Banco o el tenedor de la obligación garantizada requieran.----------------------

TERCERO: Los Deudores Hipotecarios se reservan expresamente el derecho
de recoger y pagar en cualquier momento antes de su presentación al cobro
la obligación garantizada, sin perjuicio de cualquier pago adicional por
concepto de penalidad acordado.-------------------------------------------------

CUARTO: Los Deudores Hipotecarios convienen expresamente en que toda
compensación o sentencia por daños a la propiedad hipotecada toda
compensación concedida a virtud de procedimiento de expropiación o de
cualquier otra clase y toda indemnización bajo las pólizas de seguro en caso
de siniestro o pérdida queda cedida de manera irrevocable por la presente al
Banco o al tenedor de la obligación garantizada, quien la aplicará al pago o
reducción de lo que se adeude por concepto de dicha obligación, quedando
el Banco o el tenedor de la obligación garantizada autorizado y facultado por
la presente para recibir cualquier compensación por los conceptos indicados,
así como recibir el importe de cualquier sentencia y otorgar los recibos y
cartas de pago y documentos de relevo que fueren necesarios.------------------

QUINTO: Queda convenido que el crédito adicional estipulado para costas,
gastos y honorarios de abogados, para el caso de reclamación judicial de la
obligación garantizada o ejecución de la hipoteca que se constituye por este
instrumento, será exigible en su totalidad por la sola radicación de la
demanda en cobro de dinero de la obligación garantizada o radicación del
escrito inicial de ejecución de hipoteca aún cuando los procedimientos no
sean llevados hasta su terminación definitiva o sean llevados en rebeldía de
los Deudores Hipotecarios.-----------------------------------------------------

SEXTO: Los Deudores Hipotecarios convienen expresamente que de no
poderse inscribir esta hipoteca por cualquier causa o motivo a ellos atribuible



5

como un gravamen hipotecario sin defecto de clase alguna dentro de un término que no excederá de sesenta días contados de la fecha de hoy, la obligación garantizada con hipoteca a que se contrae este instrumento se considerará vencida y el Banco o el tenedor de la obligación garantizada podrá a su opción, proceder a su cobro por la vía judicial, sin necesidad de presentación o demanda de pago.------

SEPTIMO: Son de cuenta y cargo de los deudores hipotecarios los gastos y honorarios notariales correspondientes a esta escritura, los gastos y honorarios correspondientes a una copia certificada de la misma, los gastos necesarios para la inscripción de la copia certificada en el Registro de la Propiedad y los gastos y honorarios correspondientes a la cancelación de la hipoteca en su día.------

OCTAVO: El inmueble a que se refiere el precedente PRIMERO expositivo, se describe como sigue:------

RUSTICA: Finca radicada en el Bo. Naranjito del término municipal de Hatillo, compuesta de VEINTISIETE PUNTO CUATRO MIL OCHOCIENTOS CUARENTA Y DOS (27.4842) CUERDAS, equivalentes a CIENTO OCHO MIL VEINTITRES PUNTO CINCO (108,023.5) METROS CUADRADOS. En lindes por Norte, con Luis F. Peraza, Gregorio Toledo y servidumbre de paso existente; por el Sur, con Gregorio Toledo; por el Este, con Iván Amador y Sucesión de Iván Amador y por el Oeste, con Gregorio Toledo.------
FINCA número 2333, inscrita al Folio 256 vuelto del Tomo 289 de Hatillo, Registro de la Propiedad Sección II de Arecibo.------

La referida propiedad se forma mediante Rectificación de Cabida en virtud de la Escritura número 150, otorgada en Arecibo, Puerto Rico el día 15 de octubre de 1997 ante notario Francisco J. Arraiza Donate.------

La referida propiedad se encuentra afecta a los siguiente gravámenes:------

A) En virtud de la escritura número 89 otorgada en Hatillo, Puerto Rico el día 13 de mayo de 1994 ante notario Francisco J. Arraiza Donate, constituyen hipoteca en garantía de un pagaré en igual fecha de la escritura, suscrito bajo affidavit 16,117 a favor del Portador por endoso o a su orden por la suma de $250,000.00 devengando intereses a una tasa equivalente al uno por ciento



6

sobre la tasa de interés preferencial (Prime Rate) fluctuante. En su inscripción quince al folio 255 vuelto del tomo 289 de Hatillo y en virtud de la Escritura número 62 otorgada en Manatí, Puerto Rico el 10 de octubre de 1995 ante notario William A. Power se enmienda la hipoteca antes mencionada enmendando el pagaré y la hipoteca que lo garantiza, a los efectos de que a partir de la fecha de la escritura el pagaré generará intereses al tipo anual fluctuante equivalente a la tasa preferencial (Prime Rate) fluctuante vigente de tiempo en tiempo en sus oficinas principales en el Citibank, N.A. en New York, New York. Además incluye dos créditos hipotecarios adicionales, el primero equivalente a un monto de cinco años e intereses al nuevo tipo pactado y el segundo equivalente a un diez por ciento de la suma principal de pagarés para cubrir aquellos adelantos que pueda hacer el tenedor del mismo y quedarán garantizados por la hipoteca en caso de ser estos efectuados por el Acreedor Hipotecario o tenedor del pagaré.------

B) Hipoteca en garantía de un pagaré suscrito bajo affidavit 8,368 a favor o a la orden del Banco Central Hispano de Puerto Rico, por la suma de $124,400.00, vencedero a la presentación, devengando intereses sobre el balance insoluto a razón del 10 1/8% anual. Así surge de la escritura número 63 otorgada en Manatí, Puerto Rico el día 10 de octubre de 1995 ante notario William A. Power.-------------------------------------------------

NOVENO: Es condición indispensable de la presente hipoteca que los Deudores Hipotecarios no podrán arrendar, segregar, vender, ceder o de ninguna forma, enajenar el inmueble descrito en el hecho OCTAVO anterior, o parte de los mismos a terceras personas sin el consentimiento expreso y escrito del Acreedor y/o tenedor del pagaré, disponiéndose, que el Acreedor y/o tenedor del pagaré garantizado con hipoteca que mediante el presente otorgamiento se constituye podrá declarar vencido el crédito y/o préstamo garantizado y proceder al cobro inmediato del mismo.-------------------------

DECIMO: La hipoteca que por la presente se constituye se hace extensiva



7

a los frutos de la propiedad hipotecada cualquiera que sea la situación en que se encuentren los objetos muebles que pudieren separarse sin quebranto de la materia o deterioro del objeto y que se hallen actualmente o en adelante permanentemente en la propiedad hipotecada bien sea para su adorno, comodidad o explotación o bien para el servicio de alguna industria, las rentas vencidas y no satisfechas al tiempo de exigirse el cumplimiento de la obligación representada por el Pagaré y garantizada por esta hipoteca; la agregación de terrenos por voluntad del dueño de la propiedad hipotecada; y a toda mejora, nuevas construcciones o nuevas edificaciones que se introduzcan en la propiedad hipotecada, aunque dichas mejoras, nuevas edificaciones o nuevas construcciones fueren hechas por un tercer poseedor de la propiedad hipotecada, ya que es condición esencial de esta hipoteca que esas posibles mejoras, nuevas construcciones y nuevas edificaciones queden automáticamente gravadas con la hipoteca aquí constituída, como si las mismas hubiesen sido hechas por los deudores hipotecarios o existieran mientras los dueños de la propiedad hipotecada eran los deudores hipotecarios, debiendo constituir esta claúsula un claro y formal aviso al tercer poseedor, o a cualquiera otra persona que causahubiere su título o derecho de los deudores hipotecarios.------------------------------------

DECIMOPRIMERO: En este estado del otorgamiento por la presente los Deudores Hipotecarios se comprometen ante el Banco y le aseguran y garantizan a éste que: (1) La propiedad ofrecida en garantía (la propiedad) no se encuentra contaminada con ninguna sustancia peligrosa; (2) los Deudores Hipotecarios no han provocado la emanación de ninguna sustancia peligrosa en la propiedad; además, tras una investigación y pesquisas minuciosas, los Deudores Hipotecarios aseguran que según los datos de los que disponen nunca ha habido emanación alguna de sustancias peligrosas en la propiedad; (3) la propiedad no está sujeta a ningún gravamen, trámite, reclamación, responsabilidad ni demanda de carácter federal, estatal o local



8

que esté relacionado con el "superfund" y que tenga por finalidad la limpieza,

eliminación o sustracción de cualquier sustancia peligrosa que se pudiera

encontrar en la propiedad ni en ninguna otra propiedad inmobiliaria,

propiedad de los Deudores Hipotecarios o dominada por ella, ni en ninguna

propiedad inmobiliaria en la que los Deudores Hipotecarios tengan un interés

de carácter jurídico o patrimonial, ni tampoco existe la amenaza ni una

probabilidad de que esta situación surgiera; (4)  no hay asbesto en la

propiedad; (5)  no existe ningún tanque subterráneo de almacenaje en la

propiedad; (6)  la propiedad no está sujeta a ninguna responsabilidad

conforme  el "superfund" por concepto de la limpieza, eliminación o

subsanación de sustancias peligrosas o de responsabilidad, costo o gasto

alguno resultante de la eliminación de la propiedad de tanque subterráneo de

almacenamiento o de asbesto; (7)  los Deudores Hipotecarios indemnizarán,

defenderán y compensarán al Banco por cualquier reclamación, exigencia,

responsabilidad, daños y perjuicios, sentencias, multas, penas, pérdidas,

costos y gastos (entre ellos sin limitación alguna, honorarios de abogados)

que surjan o resulten como consecuencia (directa o indirecta) de la

incorrección o inexactitud de cualquiera de los asuntos mencionados con

anterioridad que los Deudores Hipotecarios les ha asegurado y garantizado

al Banco, ni la violación de cualquiera de los mencionados acuerdos y

garantías de los Deudores Hipotecarios; tal indemnización subsistirá tras el

otorgamiento de este contrato, los términos "sustancia peligrosa",

"emanación" y "eliminación" tales como se usan aquí, tienen  el mismo

significado y definiciones expuestos en los incisos (14, 22, y 23)

respectivamente del título 42 USC 9601 y siguientes sin las leyes del Estado

Libre Asociado de Puerto Rico, a condición de que el término "sustancia

peligrosa", tal como se usa en este texto abarca los desperdicios tóxicos

"Hasardous Waste" definidos en 42 USC 6903 y el "petroleo" ("petroleum"),

definido en 42 USC 691. El término "superfund" tal como se utiliza en este



9

texto significa la ley amplia de solución, compensación y responsabilidades ambientales ("comprehensive environmental response", "compensation and liability act") con sus modificaciones y cualquier ley, parecida promulgada por el Estado Libre Asociado que sea aplicable a la propiedad, incluida sin limitación alguna a las leyes del Estado Libre Asociado de Puerto Rico, y todas las reglas y reglamentos promulgadas, administradas y aplicadas por cualquier dependencia u organismo gubernamental con arreglo a aquellos. El término "tanque subterráneo de almacenaje" ("underground storage tanks") tal como se usa aquí, tiene el mismo significado y la misma definición que los expuestos en 42 USC 6991.------------------------------

------------------------ACEPTACION Y ADVERTENCIAS-------------

Los comparecientes aceptan esta escritura en la forma redactada por estar conforme a lo convenido y yo, el Notario, en cumplimiento a lo dispuesto en la ley les hice las advertencias legales pertinentes a este otorgamiento.--------

Así lo dicen y otorgan los comparecientes ante mí, luego de haber renunciado al derecho que les hice saber tenían para requerir la presencia de testigos instrumentales.--------

Leída esta escritura por los comparecientes, en la misma se ratifican y fijan sus iniciales en todos y cada uno de los folios de este documento y firman ante mí, el notario, que de todo lo consignado en este instrumento público, DOY FE.-----

FIRMADOS:   JUAN MANUEL BARRETO GIORRIO. MARIA ELENA------------
HERNANDEZ RUIZ.   JOSE ALBERTO PEREZ LOPEZ.------------------

FIRMADO, SIGNADO, SELLADO Y RUBRICADO FRANCISCO J. ARRAIZA-
DONATE.------------------------------------------------------

--------------------------------------------------------------
--------------------------------------------------------------
--------------------------------------------------------------
--------------------------------------------------------------
--------------------------------------------------------------
--------------------------------------------------------------
--------------------------------------------------------------

10





------------ NUMERO CINCUENTA Y NUEVE ------------

------------ HIPOTECA EN GARANTIA DE PAGARE ------------

En Hatillo, Puerto Rico, a once de abril del año dos mil dos (2002).------------

------------ ANTE MI ------------

FRANCISCO J. ARRAIZA DONATE: Abogado y Notario Público de Puerto

Rico con residencia en Vega Baja, Puerto Rico y estudio abierto en Arecibo,

Puerto Rico y con el número notarial tres mil ochocientos noventa y cuatro

(3894).------------

------------ COMPARECEN ------------

DE UNA PRIMERA PARTE:

mayores de edad, casados

sí, propietarios y vecinos de Arecibo, Puerto Rico (en adelante

minados "Deudores Hipotecarios").------------

LA SEGUNDA PARTE: EL BANCO POPULAR DE PUERTO RICO, (en

adelante denominado el "Banco"),.

corporación bancaria doméstica con



oficina principal en Hato Rey, Puerto Rico, organizada y existente de acuerdo

con las leyes del Estado Libre Asociado de Puerto Rico, representada en este

acto por

mayor de edad, soltera, propietaria, en su carácter de Oficial de Cierre y vecina

de Arecibo, Puerto Rico, cuyo carácter representativo se acredita mediante

Certificación de Resolución de la Junta de Directores del Banco Popular de

Puerto Rico en cesión ordinaria celebrada el día dieciocho (18) de julio del año

dos mil uno (2001) jurada y suscrita por Brunilda Santos de Alvarez,

Subsecretaria de la Junta de Directores del Banco Popular de Puerto Rico,

mediante affidavit 3152 en San Juan, Puerto Rico el día veintiseis (26) de julio

de dos mil uno (2001) ante el notario público Paulette Lavergne Cuyar, cuyo

Certificado de Resolución Yo, el Notario doy fe de haberlo tenido ante mi.----

------DOY FE------

De conocer personalmente a los comparecientes, así como por sus dichos de sus circunstancias personales antes expresadas. Me aseguran tener y a mi juicio tienen la capacidad legal necesaria para este otorgamiento y en tal virtud libremente:------

------EXPONEN------

PRIMERO: Que los deudores hipotecarios son dueños a título de dominio del inmueble que se describe en la cláusula OCTAVA de esta escritura, la cual se encuentra afecta a los gravámenes que se mencionan en la referida cláusula.------

SEGUNDO: Que los Deudores Hipotecarios han expedido en esta fecha un Pagaré a la orden del Banco, el cual copiado literalmente lee como sigue:------

------PAGARE------

VALOR $165,000.00------

VENCIMIENTO: A la presentación------

POR VALOR RECIBIDO, los suscribientes se obligan a pagar solidariamente e incondicionalmente al Banco Popular de Puerto Rico, o a su orden, a la presentación la suma de CIENTO SESENTA Y CINCO MIL DOLARES ($165,000.00) en moneda del curso legal de los Estados Unidos de América, más intereses desde esta fecha y hasta su total pago y solvento a una tasa equivalente a la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York, para préstamos comerciales a corto plazo ("New York Prime Rate"). Los cambios en la tasa de interés serán efectivos a partir de la fecha de efectividad de cualquier cambio en la tasa preferencial ("prime rate") antes indicada.------

Los suscribientes renunciamos todo derecho de aviso, presentación, requerimiento de pago y protesto y para el caso de reclamación judicial o de ejecución de la hipoteca constituida en garantía del pago de esta obligación nos obligamos al pago de las costas, gastos y honorarios de abogados del tenedor en la cantidad líquida y exigible equivalente al diez por ciento (10%) del principal



original de esta obligación, es decir, la suma de DIECISEIS MIL

QUINIENTOS DOLARES ($16,500.00).------------------------------------

El pago de esta obligación ha sido garantizado con hipoteca sobre la propiedad

inmueble que se relaciona en el documento de hipoteca en garantía de pagaré

otorgado en esta misma fecha, bajo la Escritura Número----59----del Notario

Público Francisco J. Arraiza Donate.--------------------------------------

En Hatillo, Puerto Rico a 11 de abril de 2002.--------------------------

FIRMADOS: JUAN MANUEL BARRETO GINORIO------------------

MARIA ELENA HERNANDEZ RUIZ------------------------------

TESTIMONIO NUM: 26,004----------------------------------

Jurado y suscrito ante mí por



mayores de edad, casados entre sí, propietarios y

...inos de Arecibo, Puerto Rico; a quienes doy fe de conocer personalmente.--

...atillo, Puerto Rico a 11 de abril de 2002. -----------------------------

...rmado: Francisco J. Arraiza Donate NOTARIO PÚBLICO (Aparece impreso

...sello del Notario Público). Concuerda bien y fielmente con su original al que

me remito y al que he tenido a la vista.--------------------------------

TERCERO: Que con el propósito de garantizar al Banco Popular de Puerto

Rico el pago de la obligación emitida y transcrita en el hecho SEGUNDO

anterior, los Deudores Hipotecarios han convenido constituir HIPOTECA sobre

el inmueble de su propiedad que se describe en la cláusula OCTAVA de esta

escritura, llevándolo a efecto en las siguientes cláusulas que:------------------

------------------------------OTORGAN-----------------------------

PRIMERA: Los Deudores Hipotecarios constituyen HIPOTECA a favor del

Banco Popular de Puerto Rico o a su orden y del tenedor por endoso en garantía

de la obligación transcrita en el precedente SEGUNDO expositivo de esta

escritura y sobre el inmueble de su propiedad descrito en la cláusula OCTAVA,

así como sobre cuantas mejoras, elevaciones, edificaciones, equipo de carácter

permanente o nuevas edificaciones se le incorporen al inmueble en el futuro, por

3

las cantidades relacionadas en la referida obligación, o sea, la suma de CIENTO

SESENTA Y CINCO MIL DOLARES ($165,000.00) de principal, los intereses

sobre dicho principal a razón de una tasa equivalente a la tasa de interés

preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los

principales bancos comerciales de la ciudad de New York, para préstamos

comerciales a corto plazo ("New York Prime Rate"), y un crédito adicional

equivalente al diez por ciento del principal adeudado, para cubrir las costas,

gastos y honorarios de abogados pactados, para el caso de reclamación judicial

o ejecución de la hipoteca, es decir, la suma de DIECISEIS MIL QUINIENTOS

DOLARES ($16,500.00), quedando el inmueble tasado en la cantidad de

CIENTO SESENTA Y CINCO MIL DOLARES ($165,000.00) a los efectos de

la primera subasta en caso de ejecución de hipoteca.-----------------------------



SEGUNDA: Son condiciones expresas de este contrato y el incumplimiento de

cualquiera de una de ellas dará derecho al Banco o al tenedor por endoso de la

obligación garantizada a exigir su pago inmediato y a proceder a su reclamación,

a ejecución de la hipoteca constituida en garantía de la misma, sin necesidad

de presentación o requerimiento de pago de la obligación garantizada, que (I)

los Deudores Hipotecarios mantendrán el inmueble hipotecado al corriente en

el pago de las contribuciones territoriales y acreditarán semestralmente con el

correspondiente recibo, el pago de las mismas, (II) los deudores hipotecarios

mantendrán las edificaciones hipotecadas y aquellas otras que se construyan en

el inmueble hipotecado aseguradas contra los riesgos de incendio, huracán y

terremoto, por su valor razonable en el mercado, bajo pólizas que contendrán los

endosos y condiciones que se requieran para que en caso de siniestro o pérdida

la indemnización sea pagadera al Banco o al tenedor por endoso del pagaré

garantizado, (III) los seguros se mantendrán con compañías aseguradoras

aceptables al Banco o al tenedor por endoso de la obligación garantizada, (IV)

los deudores hipotecarios pagarán puntualmente las primas de los seguros y (V)

los deudores hipotecarios mantendrán las edificaciones hipotecadas y aquellas

otras que construyan en el inmueble hipotecado en buenas condiciones de uso

4

y reparación, para su buena conservación que el Banco o el tenedor de la obligación garantizada requieran.------------------------------------------------------

TERCERA: Los Deudores Hipotecarios se reservan expresamente el derecho de recoger y pagar en cualquier momento antes de su presentación al cobro la obligación garantizada, sin perjuicio de cualquier pago adicional por concepto de penalidad acordado.------------------------------------------------------

CUARTA: Los Deudores Hipotecarios convienen expresamente en que toda compensación o sentencia por daños a la propiedad hipotecada toda compensación concedida a virtud de procedimiento de expropiación o de cualquier otra clase y toda indemnización bajo las pólizas de seguro en caso de siniestro o pérdida queda cedida de manera irrevocable por la presente al Banco o al tenedor de la obligación garantizada, quien la aplicará al pago o reducción de lo que se adeude por concepto de dicha obligación, quedando el Banco o el tenedor de la obligación garantizada autorizado y facultado por la presente para recibir cualquier compensación por los conceptos indicados, así como recibir el importe de cualquier sentencia y otorgar los recibos y cartas de pago y documentos de relevo que fueren necesarios.------------------------------------------------------

QUINTA: Queda convenido que el crédito adicional estipulado para costas, gastos y honorarios de abogados, para el caso de reclamación judicial de la obligación garantizada o ejecución de la hipoteca que se constituye por este instrumento, será exigible en su totalidad por la sola radicación de la demanda en cobro de dinero de la obligación garantizada o radicación del escrito inicial de ejecución de hipoteca aún cuando los procedimientos no sean llevados hasta su terminación definitiva o sean llevados en rebeldía de los Deudores Hipotecarios.------------------------------------------------------



SEXTA: Los Deudores Hipotecarios convienen expresamente que de no poderse inscribir esta hipoteca por cualquier causa o motivo a ellos atribuible como un gravamen hipotecario sin defecto de clase alguna dentro de un término que no excederá de sesenta días contados de la fecha de hoy, la obligación garantizada con hipoteca a que se contrae este instrumento se considerará vencida y el Banco

o el tenedor de la obligación garantizada podrá a su opción, proceder a su cobro por la vía judicial, sin necesidad de presentación o demanda de pago.----------

SÉPTIMA: Son de cuenta y cargo de los deudores hipotecarios los gastos y honorarios notariales correspondientes a esta escritura, los gastos y honorarios correspondientes a una copia certificada de la misma, los gastos necesarios para la inscripción de la copia certificada en el Registro de la Propiedad y los gastos y honorarios correspondientes a la cancelación de la hipoteca en su día.----------

OCTAVA: El inmueble a que se refiere el precedente PRIMERO expositivo, se describe como sigue:----------

RÚSTICA: Finca radicada en el barrio Naranjito del término municipal de Hatillo, Puerto Rico, compuesta de VEINTISIETE PUNTO CUATRO MIL OCHOCIENTOS CUARENTA Y DOS (27.4842) CUERDAS, equivalentes a ciento ocho mil veintitres punto cinco (108,023.5) METROS CUADRADOS. En lindes por elNorte, con Luis F. Peraza, Gregorio Toledo y servidumbre de paso existente; por el Sur, con Gregorio Toledo; por el Este, con Iván Amador y Sucesión de Iván Amador y por el Oeste, con Gregorio Toledo.----------
Finca 2542, inscrita al Folio 256 vuelto del Tomo 289 de Hatillo, Registro de la Propiedad Sección de II de Arecibo.----------

Catastro número 029-000-007-05-901----------



La referida propiedad se adquiere mediante la escritura 88 otorgada en Hatillo, Puerto Rico el 13 de mayo de 1994 ante el notario Francisco J. Arraiza Donate.

La referida propiedad se encuentra afecta a los siguientesgravámenes:----------

A) Hipoteca en garantía de Pagaré a la orden del Banco Popular de Puerto Rico por la suma principal de $125,600.00, devengando intereses a la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York para préstamos comerciales a corto plazo ("New York Prime Rate"), vencimiento a la presentación, suscrito en Hatillo, Puerto Rico el 6 de marzo de 1998 mediante Testimonio número 21,060 ante el notario Francisco J. Arraiza Donate constituida mediante la escritura 31 en la misma fecha y ante el referido notario.----------

2. Hipoteca en garantía de Pagaré hipotecario a favor del Portador por la suma principal de $250,000.00, devengando intereses a uno por ciento (1%) sobre la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en

6

tiempo en los principales bancos comerciales de la ciudad de New York para préstamos comerciales a corto plazo ("New York Prime Rate"), vencimiento a la presentación, suscrito en Hatillo, Puerto Rico el 13 de mayo de 1994 mediante Testimonio número 16,117 ante el notario Francisco J. Arraiza Donate, constituida mediante la escritura 89 en la misma fecha y ante el referido notario. --------------------------------------------------------------

3. Hipoteca en garantía de Pagaré a favor o a la orden del Banco Central Hispano de Puerto Rico, según endosado a favor del Banco Popular de Puerto Rico o a su orden, por la suma principal de $174,400.00, devengando intereses sobre el balance insoluto a razón del 10 1/8% anual, vencimiento a la presentación, suscrito en Manatí, Puerto Rico el 10 de octubre de 1995 mediante Testimonio número 8,368 ante notario William A. Power, constituida mediante la escritura 63 en la misma fecha y ante el referido notario.-----------

 Hipoteca a favor de Estados Unidos de América por la suma de $300,000.00, devengando intereses al 3.75% anual, vencedero a los 20 años de la fecha del pagaré, constituida en virtud de la escritura número 29 otorgada en Arecibo, Puerto Rico el día 11 de octubre de 1999 ante el notario Efrén T. Irizarry Colón. La referida hipoteca ha sido cancelada en su totalidad en virtud de la escritura 32 de Cancelación de Hipoteca otorgada en Arecibo, Puerto Rico el primero de marzo de 2002 ante el notario público Francisco J. Arraiza Donate, cuya escritura se encuentra pendiente de inscripción.----------------------------------

NOVENA: Es condición indispensable de la presente hipoteca que los Deudores Hipotecarios no podrán arrendar, segregar, vender, ceder o de ninguna forma, enajenar el inmueble descrito en el hecho OCTAVO anterior, o parte de los mismos a terceras personas sin el consentimiento expreso y escrito del Banco y/o tenedor del pagaré, disponiéndose, que el Banco y/o tenedor del pagaré garantizado con hipoteca que mediante el presente otorgamiento se constituye podrá declarar vencido el crédito y/o préstamo garantizado y proceder al cobro inmediato del mismo.----------------------------------------------------------------

DECIMA: La hipoteca que por la presente se constituye se hace extensiva a los

7

frutos de la propiedad hipotecada cualquiera que sea la situación en que se encuentren los objetos muebles que pudieren separarse sin quebranto de la materia o deterioro del objeto y que se hallen actualmente o en adelante permanentemente en la propiedad hipotecada bien sea para su adorno, comodidad o explotación o bien para el servicio de alguna industria, las rentas vencidas y no satisfechas al tiempo de exigirse el cumplimiento de la obligación representada por el Pagaré y garantizada por esta hipoteca; la agregación de terrenos por voluntad del dueño de la propiedad hipotecada; y a toda mejora, nuevas construcciones o nuevas edificaciones que se introduzcan en la propiedad hipotecada, aunque dichas mejoras, nuevas edificaciones o nuevas construcciones fueren hechas por un tercer poseedor de la propiedad hipotecada, ya que es condición esencial de esta hipoteca que esas posibles mejoras, nuevas construcciones y nuevas edificaciones queden automáticamente gravadas con la hipoteca aquí constituida, como si las mismas hubiesen sido hechas por los deudores hipotecarios o existieran mientras los dueños de la propiedad hipotecada eran los deudores hipotecarios, debiendo constituir esta cláusula un claro y formal aviso al tercer poseedor, o a cualquiera otra persona que causahubiere su título o derecho de los deudores hipotecarios.-------------



DECIMOPRIMERA: Cualquier incumplimiento del Deudor Hipotecario a los términos y condiciones de cualquier obligación o contrato con el Banco o tenedor de la obligación garantizada o cualquier incumplimiento con cualquier obligación garantizada con hipoteca o gravamen sobre la Propiedad Hipotecada se considerará ipso facto como un incumplimiento simultáneo y concurrente de la hipoteca que se constituye mediante la presente escritura.------------------------

DECIMOSEGUNDA: En este estado del otorgamiento por la presente los Deudores Hipotecarios se comprometen ante el Banco y le aseguran y garantizan a éste que: (1) La propiedad ofrecida en garantía (la propiedad) no se encuentra contaminada con ninguna sustancia peligrosa; (2) los Deudores Hipotecarios no han provocado la emanación de ninguna sustancia peligrosa en la propiedad; además, tras una investigación y pesquisas minuciosas, los Deudores,

8

Hipotecarios aseguran que según los datos de los que disponen nunca ha habido emanación alguna de sustancias peligrosas en la propiedad; (3) la propiedad no está sujeta a ningún gravamen, trámite, reclamación, responsabilidad ni demanda de carácter federal, estatal o local que esté relacionado con el "superfund" y que tenga por finalidad la limpieza, eliminación o sustracción de cualquier sustancia peligrosa que se pudiera encontrar en la propiedad ni en ninguna otra propiedad inmobiliaria, propiedad de los Deudores Hipotecarios o dominada por ella, ni en ninguna propiedad inmobiliaria en la que los Deudores Hipotecarios tengan un interés de carácter jurídico o patrimonial, ni tampoco existe la amenaza ni una probabilidad de que esta situación surgiera; (4) no hay asbesto en la propiedad; (5) no existe ningún tanque subterráneo de almacenaje en la propiedad; (6) la propiedad no está sujeta a ninguna responsabilidad conforme el "superfund" por concepto de la limpieza, eliminación o subsanación de sustancias peligrosas o de responsabilidad, costo o gasto alguno, resultante de la eliminación de la propiedad de tanque subterráneo de almacenaje o de asbesto; (7) los Deudores Hipotecarios indemnizarán, defenderán y compensarán al Banco por cualquier reclamación, exigencia, responsabilidad, daños y perjuicios, sentencias, multas, penas, pérdidas, costos y gastos (entre ellos sin limitación alguna, honorarios de abogados) que surjan o resulten como consecuencia (directa o indirecta) de la incorrección o inexactitud de cualquiera de los asuntos mencionados con anterioridad que los Deudores Hipotecarios les ha asegurado y garantizado al Banco, ni la violación de cualquiera de los mencionados acuerdos y garantías de los Deudores Hipotecarios; tal indemnización subsistirá tras el otorgamiento de este contrato, los términos "sustancia peligrosa", "emanación" y "eliminación" tales como se usan aquí, tienen el mismo significado y definiciones expuestos en los incisos (14, 22, y 23) respectivamente del título 42 USC 9601 y siguientes sin las leyes del Estado Libre Asociado de Puerto Rico, a condición de que el término "sustancia peligrosa", tal como se usa en este texto abarca los desperdicios tóxicos "Hasardous Waste" definidos en 42 USC 6903 y el "petroleo" ("petroleum"), definido en 42 USC 691. El término "superfund" tal



9

como se utiliza en este texto significa la ley amplia de solución, compensación
y responsabilidades ambientales ("comprehensive environmental response",
"compensation and liability act") con sus modificaciones y cualquier ley
parecida promulgada por el Estado Libre Asociado que sea aplicable a la
propiedad, incluida sin limitación alguna a las leyes del Estado Libre Asociado
de Puerto Rico, y todas las reglas y reglamentos promulgadas, administradas y
aplicadas por cualquier dependencia u organismo gubernamental con arreglo a
aquellos. El término "tanque subterráneo de almacenaje" ("underground storage
tanks") tal como se usa aquí, tiene el mismo significado y la misma definición
que los expuestos en 42 USC 6991.----------------------------------------------

--------------------------ACEPTACION Y ADVERTENCIAS---------------

Los comparecientes aceptan esta escritura en la forma redactada por estar
conforme a lo convenido y yo, el Notario, en cumplimiento a lo dispuesto en la
ley les hice las advertencias legales pertinentes a este otorgamiento.-----------

Así se dicen y otorgan los comparecientes ante mí, luego de haber renunciado
al derecho que les hice saber tenían para requerir la presencia de testigos
instrumentales------------------------------------------------------------

En esta escritura por los comparecientes, en la misma se ratifican y fijan sus
iniciales en todos y cada uno de los folios de este documento y firman ante mí,
el notario, que de todo lo consignado en este instrumento público, DOY FE.------

FIRMADOS: JUAN MANUEL BARRETO GINORIO.   MARIA ELENA
HERNANDEZ RUIZ. NILSA IRIS CRUZ CAPETILLO-------------------------

FIRMADO, SIGNADO, SELLADO Y RUBRICADO  FRANCISCO J.
ARRAIZA DONATE.-------------------------------------------------

Hay los correspondientes sellos de Rentas internas y del Impuesto Notarial
cancelados y el sello del Notario debidamente estampado y las iniciales de los
otorgantes al margen de todos y cada uno de los folios del original. Certifico:
que la que precede es PRIMERA copia certificada fiel y exacta de la escritura
que bajo el núm. 59 obra en el protocolo del año 2002, de esta notaria a mi cargo
y al cual me remito y para entregar a JUAN MANUEL BARRETO GINORIO
expido la presente que contiene DIEZ pliegos, bajo mi firma, signo, sello y
rúbrica, hoy día 11 de ABRIL de 2002, dejando nota de ser al margen de la
escritura matriz. DOY FE.---------



10



Inscrito al folio 257ª del como 289
de Hatillo, inscripción 19ª finca #
2333. Afecta a hip. por $250,000.00
a favor del Portador, a hip. por $174,400.00
a favor del Banco Central Hispano-P.R., a
hip. por $125,000.00 a favor del Banco
Popular de P.R. y a la hip que se constituye
por el presente documento.
Arecibo, a 6/noviembre/2001

Dcto.: $620.50
Ns: 14 sarcl.           1 N Registrador

--------------------NUMERO VEINTITRES--------------------

--------------HIPOTECA EN GARANTIA DE PAGARE--------------

En Hatillo, Puerto Rico, a  once  (11)--------------------

de marzo del año dos mil tres (2003).--------------------

--------------------ANTE MI--------------------

FRANCISCO J. ARRAIZA DONATE: Abogado y Notario Público de Puerto

Rico con residencia en Vega Baja, Puerto Rico y estudio abierto en Arecibo,

Puerto Rico y con el número notarial tres mil ochocientos noventa y cuatro

(3894).--------------------

--------------------COMPARECEN--------------------

DE UNA PRIMERA PARTE: DON  JUAN  MANUEL  BARRETO

GINORIO, — — — — — — — y  DOÑA  MARIA  ELENA

HERNANDEZ RUIZ, __   __   __   __   __ mayores de edad, casados

entre sí, propietarios y vecinos de Arecibo, Puerto Rico (en adelante

denominados "Deudores Hipotecarios").--------------------

DE LA SEGUNDA PARTE: EL BANCO POPULAR DE PUERTO RICO, (en

adelante denominado el "Banco"), seguro social patronal número ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮corporación bancaria doméstica con

oficina principal en Hato Rey, Puerto Rico, organizada y existente de acuerdo

con las leyes del Estado Libre Asociado de Puerto Rico, representada en este

acto por DOÑA NILSA IRIS CRUZ CAPETILLO, __   __   __   __   — —

mayor de edad, soltera, propietaria, en su carácter de Oficial de Cierre y vecina

de Arecibo, Puerto Rico, cuyo carácter representativo se acredita mediante

Certificación de Resolución de la Junta de Directores del Banco Popular de

Puerto Rico en sesión ordinaria celebrada el día once (11) de julio de dos mil

dos (2002) jurada y suscrita por Brunilda Santos de Alvarez, Secretaria Auxiliar

de la Junta de Directores del Banco Popular de Puerto Rico, mediante affidavit

número 353  en San Juan, Puerto Rico el día seis (6) de agosto de dos mil dos

(2002) ante la notario público Marta M. Kury Latorre, cuyo Certificado de



1

Resolución Yo, el Notario doy fe de haberlo tenido ante mí.

-------------------------DOY FÉ-------------------------

De conocer personalmente a los comparecientes, así como por sus dichos de sus circunstancias personales antes expresadas. Me aseguran tener y a mi juicio tienen la capacidad legal necesaria para este otorgamiento y en tal virtud libremente:

-------------------------EXPONEN-------------------------

PRIMERO: Que los deudores hipotecarios son dueños a título de dominio del inmueble que se describe en la cláusula OCTAVA de esta escritura, la cual se encuentra afecta a los gravámenes que se mencionan en la referida cláusula.

SEGUNDO: Que los Deudores Hipotecarios han expedido en esta fecha un Pagaré a la orden del Banco, el cual copiado literalmente lee como sigue:

-------------------------PAGARE-------------------------

VALOR $180,500.00

VENCIMIENTO: A la presentación

POR VALOR RECIBIDO, los suscribientes se obligan a pagar solidariamente e incondicionalmente al Banco Popular de Puerto Rico, o a su orden, a la presentación la suma de CIENTO OCHENTA MIL QUINIENTOS DOLARES ($180,500.00) en moneda del curso legal de los Estados Unidos de América, más intereses desde esta fecha y hasta su total pago y solvento a una tasa equivalente a la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York, para préstamos comerciales a corto plazo ("New York Prime Rate"). Los cambios en la tasa de interés serán efectivos a partir de la fecha de efectividad de cualquier cambio en la tasa preferencial ("prime rate") antes indicada.

Los suscribientes renunciamos todo derecho de aviso, presentación, requerimiento de pago y protesto y para el caso de reclamación judicial o de ejecución de la hipoteca constituida en garantía del pago de esta obligación nos obligamos al pago de las costas, gastos y honorarios de abogados del tenedor en



2

la cantidad líquida y exigible equivalente al diez por ciento (10%) del principal original de esta obligación, es decir, la suma de DIECIOCHO MIL CINCUENTA DOLARES ($18,050.00).

El pago de esta obligación ha sido garantizado con hipoteca sobre la propiedad inmueble que se relaciona en el documento de hipoteca en garantía de pagaré otorgado en esta misma fecha, bajo la Escritura Número -23---- del Notario Público Francisco J. Arraiza Donate.

En Hatillo, Puerto Rico a 11 de marzo de 2003.

FIRMADOS: JUAN MANUEL BARRETO GINORIO.

MARIA ELENA HERNANDEZ RUIZ.

TESTIMONIO NUM: 26,850.

Jurado y suscrito ante mí por DON JUAN MANUEL BARRETO GINORIO, DOÑA MARIA ELENA HERNANDEZ RUIZ, mayores de edad, casados entre sí, propietarios y vecinos de Arecibo, Puerto Rico; a quienes doy fe de conocer personalmente.

En Hatillo, Puerto Rico a -11-de marzo de 2003.

Firmado: Francisco J. Arraiza Donate NOTARIO PÚBLICO (Aparece impreso el sello del Notario Público). Concuerda bien y fielmente con su original al que me remito y al que he tenido a la vista.

TERCERO: Que con el propósito de garantizar al Banco Popular de Puerto Rico el pago de la obligación emitida y transcrita en el hecho SEGUNDO anterior, los Deudores Hipotecarios han convenido constituir HIPOTECA sobre el inmueble de su propiedad que se describe en la cláusula OCTAVA de esta escritura, llevándolo a efecto en las siguientes cláusulas que:

————————OTORGAN————————

PRIMERA: Los Deudores Hipotecarios constituyen HIPOTECA a favor del Banco Popular de Puerto Rico o a su orden y del tenedor por endoso en garantía de la obligación transcrita en el precedente SEGUNDO expositivo de esta escritura y sobre el inmueble de su propiedad descrito en la cláusula OCTAVA, así como sobre cuantas mejoras, elevaciones, edificaciones, equipo de carácter

3

permanente o nuevas edificaciones se le incorporen al inmueble en el futuro, por las cantidades relacionadas en la referida obligación, o sea, la suma de CIENTO OCHENTA MIL QUINIENTOS DOLARES ($180,500.00) de principal, los intereses sobre dicho principal a razón de una tasa equivalente a la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York, para préstamos comerciales a corto plazo ("New York Prime Rate"), y un crédito adicional equivalente al diez por ciento del principal adeudado, para cubrir las costas, gastos y honorarios de abogados pactados, para el caso de reclamación judicial o ejecución de la hipoteca, es decir, la suma de DIECIOCHO MIL CINCUENTA DOLARES ($18,050.00) quedando el inmueble tasado en la cantidad de CIENTO OCHENTA MIL QUINIENTOS DOLARES ($180,500.00) a los efectos de la primera subasta en caso de ejecución de hipoteca.------------------------------------------------------

SEGUNDA: Son condiciones expresas de este contrato y el incumplimiento de cualquiera de una de ellas dará derecho al Banco o al tenedor por endoso de la obligación garantizada a exigir su pago inmediato y a proceder a su reclamación, o a la ejecución de la hipoteca constituida en garantía de la misma, sin necesidad de presentación o requerimiento de pago de la obligación garantizada, que (1) los Deudores Hipotecarios mantendrán el inmueble hipotecado al corriente en el pago de las contribuciones territoriales y acreditarán semestralmente con el correspondiente recibo, el pago de las mismas, (II) los deudores hipotecarios mantendrán las edificaciones hipotecadas y aquellas otras que se construyan en el inmueble hipotecado aseguradas contra los riesgos de incendio, huracán, terremoto e inundación, por su valor razonable en el mercado, bajo pólizas que contendrán los endosos y condiciones que se requieran para que en caso de siniestro o pérdida la indemnización sea pagadera al Banco o al tenedor por endoso del pagaré garantizado, (III) los seguros se mantendrán con compañías aseguradoras aceptables al Banco o al tenedor por endoso de la obligación garantizada, (IV) los deudores hipotecarios pagarán puntualmente las primas de



4

los seguros y (V) los deudores hipotecarios mantendrán las edificaciones hipotecadas y aquellas otras que construyan en el inmueble hipotecado en buenas condiciones de uso y reparación, para su buena conservación que el Banco o el tenedor de la obligación garantizada requieran.------------------------------

TERCERA: Los Deudores Hipotecarios se reservan expresamente el derecho de recoger y pagar en cualquier momento antes de su presentación al cobro la obligación garantizada, sin perjuicio de cualquier pago adicional por concepto de penalidad acordado.------------------------------

CUARTA: Los Deudores Hipotecarios convienen expresamente en que toda compensación o sentencia por daños a la propiedad hipotecada toda compensación concedida a virtud de procedimiento de expropiación o de cualquier otra clase y toda indemnización bajo las pólizas de seguro en caso de siniestro o pérdida queda cedida de manera irrevocable por la presente al Banco o al tenedor de la obligación garantizada, quien la aplicará al pago o reducción de lo que se adeude por concepto de dicha obligación, quedando el Banco o el tenedor de la obligación garantizada autorizado y facultado por la presente para recibir cualquier compensación por los conceptos indicados, así como recibir el importe de cualquier sentencia y otorgar los recibos y cartas de pago y documentos de relevo que fueren necesarios.------------------------------

QUINTA: Queda convenido que el crédito adicional estipulado para costas, gastos y honorarios de abogados, para el caso de reclamación judicial de la obligación garantizada o ejecución de la hipoteca que se constituye por este instrumento, será exigible en su totalidad por la sola radicación de la demanda en cobro de dinero de la obligación garantizada o radicación del escrito inicial de ejecución de hipoteca aún cuando los procedimientos no sean llevados hasta su terminación definitiva o sean llevados en rebeldía de los Deudores Hipotecarios.------------------------------

SEXTA: Los Deudores Hipotecarios convienen expresamente que de no poderse inscribir esta hipoteca por cualquier causa o motivo a ellos atribuible como un gravamen hipotecario sin defecto de clase alguna dentro de un término que no



5

excederá de sesenta días contados de la fecha de hoy, la obligación garantizada

con hipoteca a que se contrae este instrumento se considerará vencida y el Banco

o el tenedor de la obligación garantizada podrá a su opción, proceder a su cobro

por la vía judicial, sin necesidad de presentación o demanda de pago.—

SEPTIMA: Son de cuenta y cargo de los deudores hipotecarios los gastos y

honorarios notariales correspondientes a esta escritura, los gastos y honorarios

correspondientes a una copia certificada de la misma, los gastos necesarios para

la inscripción de la copia certificada en el Registro de la Propiedad y los gastos

y honorarios correspondientes a la cancelación de la hipoteca en su día.————

OCTAVA: El inmueble a que se refiere el precedente PRIMERO expositivo,

se describe como sigue:————————————————————————

RÚSTICA: Finca radicada en el barrio Naranjito del término municipal de
Hatillo, Puerto Rico, compuesta de VEINTISIETE PUNTO CUATRO MIL
OCHOCIENTOS CUARENTA Y DOS (27.4842) CUERDAS, equivalentes a
ciento ocho mil veintitrés punto cinco (108,023.5) METROS CUADRADOS.
En lindes por elNorte, con Luis F. Peraza, Gregorio Toledo y servidumbre de
paso existente; por el Sur, con Gregorio Toledo; por el Este, con Iván Amador
y Sucesión de Iván Amador y por el Oeste, con Gregorio Toledo.————————

Finca 2333, inscrita al Folio 256 vuelto del Tomo 289 de Hatillo, Registro de la
Propiedad Sección de II de Arecibo.————————————————————

Catastro número: 029-000-007-05-901———— — —— —— —

La referida propiedad se adquiere mediante la escritura 88 otorgada en Hatillo,

Puerto Rico el día trece (13) de mayo del año mil novecientos noventa y cuatro

(1994) ante el notario Francisco J. Arraíza Donate.————————————————

La referida propiedad se encuentra afecta a los siguientesgravámenes:————

A) Hipoteca en garantía de Pagaré hipotecario a favor del Portador por la suma

principal de $250,000.00, devengando intereses a uno por ciento (1%) sobre la

tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en

tiempo en los principales bancos comerciales de la ciudad de New York para

préstamos comerciales a corto plazo ("New York Prime Rate"), vencimiento a

la presentación, suscrito en Hatillo, Puerto Rico el 13 de mayo de 1994

mediante Testimonio número 16,117 ante el notario Francisco J. Arraiza

Donate, constituida mediante la escritura 89 en la misma fecha y ante el

referido notario. La escritura fue enmendada mediante la escritura número 62



6

otorgada en Manatí, Puerto Rico el 10 de octubre de 1995 ante el notario William A. Power.----------------------------------------------------------------

B) Hipoteca en garantía de Pagaré a favor o a la orden del Banco Central Hispano de Puerto Rico, según endosado a favor del Banco Popular de Puerto Rico o a su orden, por la suma principal de $174,400.00, devengando intereses sobre el balance insoluto a razón del 10 1/8% anual, vencimiento a la presentación, suscrito en Manatí, Puerto Rico el 10 de octubre de 1995 mediante Testimonio número 8,368 ante notario William A. Power, constituida mediante la escritura 63 en la misma fecha y ante el referido notario,-----------

C) Hipoteca en garantía de Pagaré a la orden del Banco Popular de Puerto Rico por la suma principal de $125,600.00, devengando intereses a la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York para préstamos comerciales a corto plazo ("New York Prime Rate"), vencimiento a la presentación, suscrito en Hatillo, Puerto Rico el 6 de marzo de 1998 mediante Testimonio número 21,060 ante el notario Francisco J. Arraiza Donate constituida mediante la escritura 31 en la misma fecha y ante el referido notario.----------------------------------------------------------------

D). Hipoteca en garantía de Pagaré a la orden del Banco Popular de Puerto Rico por la suma principal de $165,000.00, devengando intereses a la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York para préstamos comerciales a corto plazo ("New York Prime Rate"), vencimiento a la presentación, suscrito en Hatillo, Puerto Rico el 11 de abril de 2002 mediante Testimonio número 26,004 ante el notario Francisco J. Arraiza Donate constituida mediante la escritura 59 en la misma fecha y ante el referido notario.----------------------------------------------------------------

NOVENA: Es condición indispensable de la presente hipoteca que los Deudores Hipotecarios no podrán arrendar, segregar, vender, ceder o de ninguna forma, enajenar el inmueble descrito en el hecho OCTAVO anterior, o parte de los



7

mismos a terceras personas sin el consentimiento expreso y escrito del Banco y/o tenedor del pagaré, disponiéndose, que el Banco y/o tenedor del pagaré garantizado con hipoteca que mediante el presente otorgamiento se constituye podrá declarar vencido el crédito y/o préstamo garantizado y proceder al cobro inmediato del mismo.------------------------------------------------------------------

DECIMA: La hipoteca que por la presente se constituye se hace extensiva a los frutos de la propiedad hipotecada cualquiera que sea la situación en que se encuentren los objetos muebles que pudieren separarse sin quebranto de la materia o deterioro del objeto y que se hallen actualmente o en adelante permanentemente en la propiedad hipotecada bien sea para su adorno, comodidad o explotación o bien para el servicio de alguna industria, las rentas vencidas y no satisfechas al tiempo de exigirse el cumplimiento de la obligación representada por el Pagaré y garantizada por esta hipoteca; la agregación de terrenos por voluntad del dueño de la propiedad hipotecada; y a toda mejora, nuevas construcciones o nuevas edificaciones que se introduzcan en la propiedad hipotecada, aunque dichas mejoras, nuevas edificaciones o nuevas construcciones fueren hechas por un tercer poseedor de la propiedad hipotecada, ya que es condición esencial de esta hipoteca que esas posibles mejoras, nuevas construcciones y nuevas edificaciones queden automáticamente gravadas con la hipoteca aquí constituida, como si las mismas hubiesen sido hechas por los deudores hipotecarios o existieran mientras los dueños de la propiedad hipotecada eran los deudores hipotecarios, debiendo constituir esta cláusula un claro y formal aviso al tercer poseedor, o a cualquiera otra persona que causa hubiere su título o derecho de los deudores hipotecarios.------------------------

DECIMOPRIMERA: Cualquier incumplimiento del Deudor Hipotecario a los términos y condiciones de cualquier obligación o contrato con el Banco o tenedor de la obligación garantizada o cualquier incumplimiento con cualquier obligación garantizada con hipoteca o gravamen sobre la Propiedad Hipotecada se considerará ipso facto como un incumplimiento simultáneo y concurrente de la hipoteca que se constituye mediante la presente escritura.--------------------



8

DECIMOSEGUNDA: En este estado del otorgamiento por la presente los Deudores Hipotecarios se comprometen ante el Banco y le aseguran y garantizan a éste que: (1) La propiedad ofrecida en garantía (la propiedad) no se encuentra contaminada con ninguna sustancia peligrosa; (2) los Deudores Hipotecarios no han provocado la emanación de ninguna sustancia peligrosa en la propiedad; además, tras una investigación y pesquisas minuciosas, los Deudores Hipotecarios aseguran que según los datos de los que disponen nunca ha habido emanación alguna de sustancias peligrosas en la propiedad; (3) la propiedad no está sujeta a ningún gravamen, trámite, reclamación, responsabilidad ni demanda de carácter federal, estatal o local que esté relacionado con el "superfund" y que tenga por finalidad la limpieza, eliminación o sustracción de cualquier sustancia peligrosa que se pudiera encontrar en la propiedad ni en ninguna otra propiedad inmobiliaria, propiedad de los Deudores Hipotecarios o dominada por ella, ni en ninguna propiedad inmobiliaria en la que los Deudores Hipotecarios tengan un interés de carácter jurídico o patrimonial, ni tampoco existe la amenaza ni una probabilidad de que esta situación surgiera; (4) no hay asbesto en la propiedad; (5) no existe ningún tanque subterráneo de almacenaje en la propiedad; (6) la propiedad no está sujeta a ninguna responsabilidad conforme el "superfund" por concepto de la limpieza, eliminación o subsanación de sustancias peligrosas o de responsabilidad, costo o gasto alguno, resultante de la eliminación de la propiedad de tanque subterráneo de almacenaje o de asbesto; (7) los Deudores Hipotecarios indemnizarán, defenderán y compensarán al Banco por cualquier reclamación, exigencia, responsabilidad, daños y perjuicios, sentencias, multas, penas, pérdidas, costos y gastos (entre ellos sin limitación alguna, honorarios de abogados) que surjan o resulten como consecuencia (directa o indirecta) de la incorrección o inexactitud de cualquiera de los asuntos mencionados con anterioridad que los Deudores Hipotecarios les ha asegurado y garantizado al Banco, ni la violación de cualquiera de los mencionados acuerdos y garantías de los Deudores Hipotecarios; tal indemnización subsistirá tras el otorgamiento de este contrato, los términos "sustancia peligrosa", "emanación" y "eliminación"



9

tales como se usan aquí, tienen  el mismo significado y definiciones expuestos

en los incisos (14, 22, y 23) respectivamente del título 42 USC 9601 y siguientes

sin las leyes del Estado Libre Asociado de Puerto Rico, a condición de que el

término "sustancia peligrosa", tal como se usa en este texto abarca los

desperdicios tóxicos "Hazardous Waste" definidos en 42 USC 6903 y el

"petroleo" ("petroleum"), definido en 42 USC 691. El término "superfund" tal

como se utiliza en este texto significa la ley amplia de solución, compensación

y responsabilidades ambientales ("comprehensive environmental response",

"compensation and liability act") con sus modificaciones y cualquier ley

parecida promulgada por el Estado Libre Asociado que sea aplicable a la

propiedad, incluida sin limitación alguna a las leyes del Estado Libre Asociado

de Puerto Rico, y todas las reglas y reglamentos promulgadas, administradas y

aplicadas por cualquier dependencia u organismo gubernamental con arreglo a

aquellos. El término "tanque subterráneo de almacenaje" ("underground storage

tanks") tal como se usa aquí, tiene el mismo significado y la misma definición

que los expuestos en 42 USC 6991.-----------------------------------------------

-------------------ACEPTACION Y ADVERTENCIAS--------------------

Los comparecientes aceptan esta escritura en la forma redactada por estar

conforme a lo convenido y yo, el Notario, en cumplimiento a lo dispuesto en la

ley les hice las advertencias legales pertinentes  a este otorgamiento.------------

Así lo dicen y otorgan los comparecientes ante mí, luego de haber renunciado

al derecho que les hice saber tenían para requerir la presencia de testigos

instrumentales----------------------------------------------------------------------



Leída esta escritura por los comparecientes, en la misma se ratifican y fijan sus

iniciales en todos y cada uno de los folios de este documento y firman ante mí,

el notario, que de todo lo consignado en este instrumento público, DOY FE.-----

FIRMADOS: JUAN MANUEL BARRETO GINORIO. MAIA ELENA
HERNANDEZ RUIZ. NILSA IRIS CRUZ CAPETILLO.------------------------

FIRMADO, SIGNADO, SELLADO Y RUBRICADO FRANCISCO J.
ARRAIZA DONATE.----------------------------------------------------------

10

Hay los correspondientes sellos de Rentas internas y del Impuesto Notarial
cancelados y el sello del Notario debidamente estampado y las iniciales de los
otorgantes al margen de todos y cada uno de los folios del original. Certifico:
que la que precede es PRIMERA copia certificada fiel y exacta de la escritura
que bajo el número _23_ obra en el protocolo del año 2003, de esta notaría a mi
cargo y al cual me remito y para entregar JUAN MANUEL BARRETO
GINORIO, expido la presente que contiene DIEZ pliegos, bajo mi firma, signo,
sello y rúbrica, hoy día 11 de MARZO de 2003, dejando nota de saca al margen
de la escritura matriz. DOY FE.————————————————————————



Case 3:17-03283-LTS Doc 5141-41 Filed 02/15/20 Entered 02/15/20 20:05:00 Desc
Exhibit XLI - Proof of Claim Nos. 11 Page 140 of 202
Case 17-03283-LTS Claim 11-1 Filed 05/09/18 Desc Main Document Page 139 of

**BPPR** BANCO POPULAR DE PUERTO RICO          DOCUMENTO DE PRENDA

En consideración a todos y cualesquiera préstamos hasta ahora concedidos o que se concedan o continúen concediéndose y a las facilidades de crédito o financiamiento concedidas en el pasado o que se concedan o continúen concediéndose en el futuro por el Banco Popular de Puerto Rico (de ahora en adelante denominado el "Banco") a **LAS MARTAS, INC.** los Suscribientes, por virtud de este documento pignoran, ceden, entregan y traspasan al Banco los siguientes valores y cualquier otro valor o instrumento emitido para la renovación, extensión de la fecha de vencimiento, o conversión o sustitución de dichos valores:

1. Pagaré hipotecario a favor del Portador por la suma principal de DOSCIENTOS CINCUENTA MIL DOLARES ($250,000.00), devengando intereses a uno por ciento (1%) sobre la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York para préstamos comerciales a corto plazo ("New York Prime Rate"), vencimiento a la presentación, suscrito en Hatillo, Puerto Rico el 13 de mayo de 1994 mediante Testimonio número 16,117 ante notario Francisco J. Arraiza Donate, garantizado con hipoteca de bienes inmuebles mediante la escritura 89 constituida en la misma fecha y ante el referido notario. La escritura fue enmendada mediante la escritura número 62 otorgada en Manatí, Puerto Rico el 10 de octubre de 1995 ante el notario William A. Power.

2. Pagaré hipotecario a favor o a la orden del Banco Central Hispano de Puerto Rico, según endosado a favor del Banco Popular de Puerto Rico o a su orden, por la suma principal de CIENTO SETENTA Y CUATRO MIL CUATROCIENTOS DOLARES ($174,400.00), devengando intereses sobre el balance insoluto a razón del 10 1/8% anual, vencimiento a la presentación, suscrito en Manatí, Puerto Rico el 10 de octubre de 1995 mediante Testimonio número 8,368 ante notario William A. Power, garantizado con hipoteca de bienes inmuebles mediante la escritura 63 constituida en la misma fecha y ante el referido notario.

3. Pagaré hipotecario a la orden del Banco Popular de Puerto Rico por la suma principal de CIENTO VEINTICINCO MIL SEISCIENTOS DOLARES ($125,600.00), devengando intereses a la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York para préstamos comerciales a corto plazo ("New York Prime Rate"), vencimiento a la presentación, suscrito en Hatillo, Puerto Rico el 6 de marzo de 1998 mediante Testimonio número 21,060 ante notario Francisco J. Arraiza Donate, garantizado con hipoteca de bienes inmuebles mediante la escritura 31 constituida en la misma fecha y ante el referido notario.

4. Pagaré a la orden del Banco Popular de Puerto Rico por la suma principal de CIENTO SESENTA Y CINCO MIL DOLARES ($165,000.00), devengando intereses a la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York para préstamos comerciales a corto plazo ("New York Prime Rate"), vencimiento a la presentación, suscrito en Hatillo, Puerto Rico el 11 de abril de 2002 mediante Testimonio número 26,004 ante el notario Francisco J. Arraiza Donate, garantizado con hipoteca sobre la propiedad inmueble, constituida mediante la escritura 59 otorgada en la misma fecha y ante el referido notario.

5. Pagaré a la orden del Banco Popular de Puerto Rico por la suma principal de CIENTO OCHENTA MIL QUINIENTOS DOLARES ($180,500.00), devengando intereses a la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York para préstamos comerciales a corto plazo ("New York Prime Rate"), vencimiento a la presentación, suscrito en Hatillo, Puerto Rico el 11 de marzo de 2003 mediante Testimonio número 26,850 ante el notario Francisco J. Arraiza Donate, garantizado con hipoteca sobre la propiedad inmueble, constituida mediante la escritura 23 otorgada en la misma fecha y ante el referido notario.

6. Pagaré a la orden del Banco Popular de Puerto Rico por la suma principal de OCHENTA MIL DOLARES ($80,000.00), devengando intereses a dos por ciento (2%) sobre la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York para préstamos comerciales a corto plazo ("New York Prime Rate"), vencimiento a la presentación, suscrito en Arecibo, Puerto Rico el 7 de noviembre de 2003 mediante Testimonio número 27,441 ante el notario Francisco J. Arraiza Donate, garantizado con hipoteca sobre la propiedad inmueble, constituida mediante la escritura 158 otorgada en la misma fecha y ante el referido notario.

Los valores antes identificados han de garantizar y asegurar:

. el pago de todas o cualesquiera deudas y obligaciones de los Suscribientes, independientes de la clase o naturaleza de éstas, que estén vencidas o sean exigibles en la actualidad o que venzan y sean exigibles en el futuro; y

. los intereses, cargos por demora, penalidades, costas, gastos, desembolsos y honorarios de abogados aplicables.

Los suscribientes aceptan que todas las deudas y obligaciones cuyo pago está garantizado por la prenda que se constituye mediante este documento vencerán inmediatamente, sin presentación, requerimiento de pago, protesto o aviso de clase alguna; todo lo cual se renuncia expresamente en cualquiera de los casos en los que los Suscribientes:

. incumplan en el pago de cualquier deuda u obligación para con el Banco, independientemente de su origen o la forma en que surgió la misma.

. avengan insolventes o efectúen cesión general de sus bienes para beneficio de acreedores o a un agente autorizado para liquidar una parte sustancial de sus bienes o activos;

. admitan por escrito su inhabilidad para pagar sus deudas a su vencimiento, o se les adjudique en quiebra, o radiquen petición de quiebra voluntaria o de reorganización o para llevar a cabo un plan de pago con acreedores bajo las leyes federales de quiebra o cualquier otra ley similar aplicable a los Estados Unidos de América o del Estado Libre Asociado de Puerto

2

Case 3:12-cv-04339-ESB-SCC Document 1-41 Filed 07/05/05/25/20 Page 143 of 202
Case 3:12-cv-04339-ESB-SCC Document 1-41 Filed 07/05/05/25/20 Page 143 of 202
Exhibit XLI - Proof of Claim Hernandez Ruiz by Condado   Page 142 of 202

Rico; o radiquen contestación a una petición de acreedores que admite las alegaciones de consecuencia en la que se solicite la adjudicación en quiebra, reorganización, plan de pago o arreglo con acreedores bajo cualquiera de las leyes antes mencionadas (cualquiera de los anteriores procedimientos continúe sin desestimar por treinta (30) días); o

soliciten o permitan el nombramiento, en cualquier procedimento de quiebra, sindicatura u otro procedimiento, de un síndico o fiduciario para los Suscribientes o para todos o una parte sustancial de los bienes y activos de cualquiera de los Suscribientes, y el nombramiento de tal síndico o fiduciario así nombrado no es dejado  sin efecto dentro de treinta (30) días.

En Hatillo, Puerto Rico a 12 de enero de 2005.

**JUAN MANUEL BARRETO GINORIO**

**MARIA ELENA HERNANDEZ RUIZ**

TESTIMONIO NUM:  28,483

Jurado y suscrito ante mí por **DON  JUAN  MANUEL  BARRETO GINORIO**, seguro social ▮▮▮▮ y **DOÑA MARIA ELENA HERNANDEZ RUIZ**, seguro social ▮▮▮▮ mayores de edad, casados entre sí,  agricultor él, ama de casa ella y vecinos de Arecibo, Puerto Rico; a quienes doy fe de conocer personalmente.

En Hatillo, Puerto Rico a 12 de enero de 2005.

Aviso: El uso del plural en este documento se entenderá en singular cuando se firmado por una sola persona.
GEN-50/ 6-94 ZT

3

Case 3:23-cv-02123-ESC Document 1-41 Filed 05/09/23 Page 143 of 202
Exhibit XLI - Proof of Claim Nuestro Pueblo y Condado    Page 143 of 202

## ACUERDO DE GRAVAMEN MOBILIARIO

ESTE ACUERDO, hecho el día 12 de enero de 2005, por las siguientes PARTES:----------

DE UNA PRIMERA PARTE: LAS MARTAS, INC., corporación creada y organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, con seguro social patronal número ███████ representada por su Presidente DON JUAN MANUEL BARRETO GINORIO seguro social ████

████ mayor de edad, casado con María Elena Hernández Ruiz, agricultor y vecino de Arecibo, Puerto Rico, cuyo carácter representativo se hará constar mediante Certificación de Resolución debidamente firmada por el Secretario de la Corporación en igual fecha del presente otorgamiento mediante testimonio de autenticidad número  28,482 ante el notario público Francisco J. Arraiza Donate (de ahora en adelante conocido como el DEUDOR), cuya dirección actual es la siguiente: HC 05 Box 91635, Arecibo, Puerto Rico 00612.-----------------------------------------------------

DE UNA SEGUNDA PARTE: DON JUAN MANUEL BARRETO GINORIO seguro social ████ ██████ y DOÑA MARIA ELENA HERNANDEZ RUIZ, seguro social ████████ mayores de edad, casados entre sí, agricultor él, ama de casa ella y vecinos de Arecibo, Puerto Rico (de ahora en adelante conocido como el GARANTIZADOR SOLIDARIO), cuya dirección actual es la siguiente: HC 05 Box 91635, Arecibo, Puerto Rico 00612.-----------------------

DE UNA TERCERA PARTE: EL BANCO POPULAR DE PUERTO RICO , corporación bancaria doméstica con seguro social patronal número ██████ ████████ corporación bancaria doméstica con oficina principal en Hato Rey, Puerto Rico y organizada y existente de acuerdo con las leyes del Estado Libre Asociado de Puerto Rico, representada en este acto por  su Oficial DON JOSÉ ALBERTO PÉREZ LÓPEZ, seguro social ████████ mayor de edad, casado con Julia Ivette  Batista  González, banquero y vecino de Arecibo, Puerto Rico, cuyo carácter representativo se acredita mediante Certificación de Resolución de la Junta de Directores del Banco Popular de Puerto Rico en sesión ordinaria celebrada el día quince (15) de julio de dos mil cuatro (2004) jurada y suscrita por Brunilda Santos de Alvarez, Secretaria Auxiliar de la Junta de Directores del Banco Popular de Puerto Rico, mediante affidavit número 4080 en San Juan, Puerto Rico el día quince (15) de julio de dos mil cuatro (2004) ante la notario público Paulette Lavergne Cuyar, cuyo Certificado de Resolución Yo, el Notario  doy fe de haberlo tenido ante mí (de ahora en adelante conocido como el ACREEDOR GARANTIZADO), cuya dirección actual es la siguiente: BANCO POPULAR DE PUERTO RICO, SUCURSAL DE HATILLO, CARRETERA #2, KILOMETRO 86.6 BARRIO PUEBLO, HATILLO, PUERTO RICO

00659.-------------------------------------------------------------------------------------------------

Encontrándose los comparecientes en el libre disfrute de sus derechos civiles, mediante el presente

otorgamiento libre y voluntariamente exponen:-------------------------------------------------------------

----------------------------------------EXPOSICIÓN----------------

Que el Acreedor Garantizado ha concedido al Deudor un préstamo por la cantidad de UN

MILLON OCHOCIENTOS CINCUENTA MIL DOLARES ($1,850,000.00), bajo las cláusulas y

condiciones que constan en un contrato de préstamo reconocido y suscrito por el Deudor, el

Garantizador Solidario y el Acreedor Garantizado, y/o pagaré a la orden del Acreedor Garantizado,

en igual fecha del presente otorgamiento.-------------------------------------------------------------------

Es la intención del Deudor y del Garantizador Solidario solidariamente y de manera

continua dar, conceder y otorgar al Acreedor Garantizado y el Acreedor Garantizado desea definir,

sus intereses asegurados (security interests) y obtener, gravamen mobiliario sobre garantía y

colateral, así como sobre colateral adicional, para el préstamo antes mencionado, según enmendado

y para cualquier aumento, prórroga, extensión, novación y/o renovación del mismo. El Deudor y

el Acreedor Garantizado entienden y acuerdan que los términos y disposiciones aquí expuestas

habrán de reconfirmar, al igual que aumentar, suplementar y expandir los derechos, los intereses

asegurados (security interests) del Acreedor Garantizado, al igual que sus privilegios y remedios,

según aparecen dispuestos en este acuerdo de gravamen mobiliario otorgado por el Deudor, el

Garantizador Solidario y el Acreedor Garantizado.-------------------------------------------------------

-----------------------------------OBLIGACIONES ASEGURADAS-----------------------------------

El Deudor, el Garantizador Solidario y el Acreedor Garantizado en este otorgamiento

teniendo la intención de estar legal y mutuamente comprometidos por medio del mismo, acuerdan,

que los intereses asegurados (security interests) y gravamen mobiliario son los otorgados en la

colateral descrita más adelante para asegurar y garantizar el desempeño y cumplimiento por el

deudor del préstamo antes mencionado y para cualquier aumento, prórroga, extensión, novación

y/o renovación del mismo según se ha expuesto en la EXPOSICIÓN.---------------------------------

--- -------------------------------------COLATERAL------------------------------------

Por medio de este Acuerdo, el Garantizador Solidario solidariamente y de manera continua

DA, CONCEDE Y OTORGA al Acreedor Garantizado un gravamen mobiliario continuo y un

interés asegurado (security interest) sobre los instrumentos que se describen a continuación

2

(conocida por las partes como la "COLATERAL"):-----------------------------------------

1. Pagaré hipotecario a favor del Portador  por la suma principal de DOSCIENTOS CINCUENTA MIL DOLARES ($250,000.00), devengando intereses a uno por ciento (1%) sobre la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York para préstamos comerciales a corto plazo ("New York Prime Rate"), vencimiento a la presentación, suscrito en Hatillo, Puerto Rico el 13 de mayo de 1994 mediante Testimonio número 16,117 ante notario Francisco J. Arraiza Donate, garantizado con hipoteca de bienes inmuebles  mediante la escritura 89 constituida en la misma fecha y ante el referido notario. La escritura fue enmendada mediante la escritura número 62 otorgada en Manatí, Puerto Rico el 10 de octubre de 1995 ante el notario William A. Power.-----------------------------------

2. Pagaré hipotecario a favor o  a la orden del Banco Central Hispano de Puerto Rico, según endosado a favor del Banco Popular de Puerto Rico o a su orden, por la suma principal de CIENTO SETENTA Y CUATRO MIL CUATROCIENTOS DOLARES ($174,400.00), devengando intereses sobre el balance insoluto a razón del 10 1/8% anual, vencimiento a la presentación, suscrito en Manatí, Puerto Rico el 10 de octubre de 1995 mediante Testimonio número 8,368 ante notario William A. Power, garantizado con hipoteca de bienes inmuebles  mediante la escritura 63 constituida en la misma fecha y ante el referido notario.-----------------------------------------------

3. Pagaré hipotecario a la orden del Banco Popular de Puerto Rico por la suma principal de CIENTO VEINTICINCO MIL SEISCIENTOS DOLARES ($125,600.00), devengando intereses a la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York para préstamos comerciales a corto plazo ("New York Prime Rate"), vencimiento a la presentación, suscrito en Hatillo, Puerto Rico el 6 de marzo de 1998 mediante Testimonio número 21,060 ante notario Francisco J. Arraiza Donate, garantizado con hipoteca de bienes inmuebles  mediante la escritura 31 constituida en la misma fecha y ante el referido notario.------------------------------------

4. Pagaré a la orden del Banco Popular de Puerto Rico por la suma principal de CIENTO SESENTA Y CINCO MIL DOLARES ($165,000.00), devengando intereses a la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York para préstamos comerciales a corto plazo ("New York Prime Rate"), vencimiento a la presentación, suscrito en Hatillo, Puerto Rico el 11 de abril de 2002 mediante

3

Testimonio número 26,004 ante el notario Francisco J. Arraiza Donate, garantizado con hipoteca sobre la propiedad inmueble, constituida mediante la escritura 59 otorgada en la misma fecha y ante el referido notario.------------------------------------------------------------------------------------------------

5. Pagaré a la orden del Banco Popular de Puerto Rico por la suma principal de CIENTO OCHENTA MIL QUINIENTOS DOLARES ($180,500.00), devengando intereses a la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York para préstamos comerciales a corto plazo ("New York Prime Rate"), vencimiento a la presentación, suscrito en Hatillo, Puerto Rico el 11 de marzo de 2003 mediante Testimonio número 26,850 ante el notario Francisco J. Arraiza Donate, garantizado con hipoteca sobre la propiedad inmueble, constituida mediante la escritura 23 otorgada en la misma fecha y ante el referido notario.-----------------------------------------------------

6. Pagaré a la orden del Banco Popular de Puerto Rico por la suma principal de OCHENTA MIL DOLARES ($80,000.00), devengando intereses a dos por ciento (2%) sobre la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York para préstamos comerciales a corto plazo ("New York Prime Rate"), vencimiento a la presentación, suscrito en Arecibo, Puerto Rico el 7 de noviembre de 2003 mediante Testimonio número 27,441 ante el notario Francisco J. Arraiza Donate, garantizado con hipoteca sobre la propiedad inmueble, constituida mediante la escritura 158 otorgada en la misma fecha y ante el referido notario.------------------------------------------------------------------

El Garantizador Solidario en o después de la fecha de efectividad, entregará en prenda al Acreedor todos y cada uno de los instrumentos endosados y/o acompañadas por aquellos instrumentos de cesión y transferencia, en la forma solicitada por el Acreedor; siempre y cuando, una Causa de Incumplimiento no haya ocurrido y continúe ocurriendo.---------------------------------------------

El Garantizador Solidario en o después de la fecha de efectividad, dará, otorgará, entregará, radicará y/o inscribirá cualquier declaración de financiamiento, notificación, instrumento, documentos, acuerdo, u otro contrato que pueda ser necesario y pertinente (a discreción del Acreedor) para crear, preservar, perfeccionar o validar el gravamen mobiliario constituido de acuerdo a este Acuerdo o para permitirle al Acreedor ejercer y poner en vigor sus derechos bajo este Acuerdo en relación al gravamen mobiliario.---------------------------------------------------------------------------------------

--------------------------------CLÁUSULAS----------------------------------------

4

Case:22-02024-ESL12 Doc#:31-41 Filed:05/26/22 Entered:05/26/22 20:06 Desc: Exhibit XLI - Proof of Claim Nos. 10 Page 8 Contado Page 147 of 202

1. El Deudor y el Garantizador Solidario manifiestan y garantizan que tienen interés y/o derecho sobre la colateral antes mencionada y que no existe ningún interés, controversia ni reclamación de terceras personas sobre la misma y que la misma no tiene otros gravámenes que no sean los perfeccionados en el presente otorgamiento y así lo reafirma el Deudor y el Garantizador Solidario.-

2. El Deudor y el Garantizador Solidario manifiestan y prometen que no habrán de ofrecer la colateral objeto de este acuerdo en el presente otortamiento como garantía y/o gravamen a terceras personas.-----------------------------------------------------------------------------------

3. El Deudor y el Garantizador Solidario se comprometen a pagar las contribuciones puntualmente y cualquiera otras cargas relacionadas con la colateral objeto del presente acuerdo.-----------------------

4. En la eventualidad que el Deudor y/o el Garantizador Solidario no realizaran las gestiones necesarias a los fines de cumplir con este acuerdo de gravamen mobiliario, entonces el ACREEDOR GARANTIZADO podrá realizar las mismas, y el Deudor y el reembolsará al ACREEDOR GARANTIZADO todos los gastos incurridos con sus intereses; se conviene expresamente que el Acreedor Garantizado podrá cargar o debitar, a cualquier cuenta de depósito que el Deudor y/o Garantizador Solidario tuviera con el Acreedor Garantizado, aquella cantidad que fuera necesaria para satisfacer los intereses devengados, plazos de principal concedido y de cualquier aumento, prórroga, extensión, novación y/o renovación del mismo, según se ha expresado antes, (véase EXPOSICIÓN), así como los gastos, costas y honorarios de ésta deuda, que no fueran pagados al Acreedor Garantizado dentro del término de diez (10) días de la fecha en que los mismos sean pagaderos y exigibles.----------------------------------------------------------------------------

5. El Deudor y/o el Garantizador Solidario se comprometen a realizar las gestiones razonables y necesarias que el ACREEDOR GARANTIZADO le requiera a los fines de darle eficacia legal a este acuerdo de garantía mobiliaria entre ellos y respecto a terceras personas.------------------------

6. El Deudor y el Garantizador Solidario mantendrán, renovarán y conservarán en vigencia todos los derechos, poderes, licencias, privilegios y franquicias que en la actualidad posean.------------------

7. El Deudor pagará puntualmente el principal y los intereses devengados de acuerdo con los términos pactados; de lo contrario, el Garantizador Solidario será solidariamente responsable a tales efectos.-----------------------------------------------------------------------------------

8. El Deudor y el Garantizador Solidario pagarán oportunamente todas las contribuciones, patentes, arbitrios y derramas que el Gobierno de Puerto Rico imponga sobre sus propiedades e ingresos;

5

Exhibit XLI - Proof of Claim Agreements and Collateral    Page 148 of 202

disponiéndose, que el Deudor y el Garantizador Solidario podrán cuestionar la validez de cualquier contribución, arbitrio o derrama o su cuantia, pudiendo litigar de buena fe su responsabilidad, siempre que establezca las correspondientes y adecuadas reservas.------------------------------------

9. El ACREEDOR GARANTIZADO tendrá la facultad de ceder el presente acuerdo de Gravamen Mobiliario, según lo estime conveniente. Conforme a lo antes expuesto, todos los derechos del Acreedor Garantizado bajo este Acuerdo de Garantía habrán de tener efecto para el beneficio de sus sucesores y cesionarios, y todas las obligaciones de el (los) Deudor (es) habrán de comprometer a los sucesores del Deudor y sus cesionarios.------------------------------------

10. El ACREEDOR GARANTIZADO podrá declarar vencida la obligación que garantiza el Acuerdo de ocurrir cualquiera de los siguientes eventos:------------------------------------

a) Falta de pago del principal e intereses de una mensualidad vencida del préstamo y cualquier aumento, prórroga, extensión, novación y/o renovación del mismo, según se ha expresado antes (véase EXPOSICIÓN);------------------------------------

b) la falta de cumplimiento de cualquiera de las cláusulas y condiciones del presente acuerdo de garantía mobiliaria;------------------------------------

c) que cualquier manifestación o representación realizada por el deudor y/o el Garantizador Solidario no fuera cierta;------------------------------------

d) incumplimiento de cualquiera de las obligaciones, según se ha expresado antes extensamente (véase EXPOSICIÓN) que mediante el presente acuerdo se garantiza con gravamen mobiliario, ahora y en el futuro, estén o no incluidas en el presente Acuerdo;------------------------------------

e) incumplimiento de cualquiera de las cláusulas y/o condiciones del préstamo y del aumento, prórroga, extensión, novación y/o renovación del mismo, según se ha expresado antes, extensamente (véase EXPOSICIÓN) con el Acreedor Garantizado.------------------------------------

------------------------------DERECHOS Y REMEDIOS PARA INCUMPLIMIENTO----------------------

1. Si el Deudor incumpliera con algunas de las cláusulas y condiciones del presente Acuerdo o incumpliera con cualquiera de las cláusulas y condiciones del préstamo antes mencionado o de cualquier de aumento, prórroga, extensión, novación y/o renovación del mismo, entonces el Acreedor Garantizado habrá de tener la opción de declarar vencida la deuda garantizada y proceder a ejecutar el gravamen mobiliario e interés de garantía (security interest) sobre la Colateral descrita en el presente Acuerdo de Gravamen Mobiliario, utilizando los poderes, derechos y remedios a

6

tales efectos que dispone la Ley 241 del 19 de septiembre de 1996, según enmendada, conocida como Ley de "Transacciones Garantizadas"; disponiéndose, además, que ningún atraso u omisión del Acreedor Garantizado en ejecutar cualquier derecho habrá de operar como una renuncia de tal derecho o de algún otro derecho.------------------------------------------------------------------

2. En la eventualidad de incumplimiento el Deudor será responsable de pagar las costas, gastos y honorarios de abogado que su incumplimiento ocasione.------------------------------------------------

-------------------------------------DISPOSICIONES MISCELANEAS-------------------------------------

1. Si más de un Deudor firma este Acuerdo o si un subsidiario, Co-Deudor y Garantizador Solidario del Deudor se une a este Acuerdo, se entenderá que es Deudor bajo este Acuerdo, y deberá cumplir con todas las cláusulas de este Acuerdo, y la responsabilidad de todos los dichos deudores habrá de ser solidaria, y el término deudor según es usado aquí habrá de significar todos los deudores, subsidiarios y garantizadores solidarios colectivamente y solidariamente por lo que estos responderán de forma solidaria, y está expresamente entendido y acordado que el Acreedor Garantizado ante un incumplimiento bajo este Acuerdo, podrá a opción suya, proceder en contra de cualquier deudor o cualquiera de los deudores mencionados aquí sin afectar y menoscabar el derecho del Acreedor Garantizado de proceder en contra de todos los deudores, mencionados aquí, colectivamente. El derecho del Acreedor Garantizado de actuar en contra de uno o más deudores no habrá, en forma alguna, de operar para liberar o afectar las responsabilidades, los convenios, las garantías, representaciones y compromisos de cualquier otro deudor mencionado en este Acuerdo.----

2. Este Acuerdo de Gravamen Mobiliario habrá de ser considerado como un acuerdo continuo, y todos los derechos, poderes y remedios en el mismo aplicarán al préstamo concedido y cualquier aumento, prórroga, extensión, novación y/o renovación de la misma que tenga el Deudor con el Acreedor Asegurado, según se ha expresado antes extensamente (véase EXPOSICIÓN) a pesar del deceso, disolución, incapacidad o insolvencia del Deudor y/o del Garantizador Solidario, por lo que continuará con toda su fuerza y vigor hasta que toda la deuda y obligacion concedida, según ha sido mencionada (véase EXPOSICIÓN), haya sido pagada en su totalidad.---------------------------------------

Manifiesta el Deudor y el garantizador solidario haber entregado en la misma fecha de este otorgamiento el (los) pagaré (s) descrito (s) anteriormente. Manifiesta el Acreedor Garantizado estar en posesión inmediata del (los) mismo (s).--------------------------------------------------------------

EN TESTIMONIO DE LO CUAL: Este Acuerdo de Garantía Mobiliaria es otorgado en

7

Case 3:07-cv-01504-ESL Document 1-4 Filed 05/09/25 Page 150 of 202
Exhibit XLI - Proof of Agreements - Bajo y Condado    Page 150 of 202

Hatillo, Puerto Rico a 12 de enero de 2005.

LAS MARTAS, INC.

JUAN MANUEL BARRETO GINORIO          MARIA ELENA HERNANDEZ RUIZ

BANCO POPULAR DE PUERTO RICO

TESTIMONIO NUMERO: 28,484

Reconocido y suscrito ante mi por DON JUAN MANUEL BARRETO GINORIO, en su carácter personal y en su carácter de Presidente de LAS MARTAS, INC., por DOÑA MARIA ELENA HERNANDEZ RUIZ, en su carácter personal y por DON JOSE ALBERTO PEREZ LOPEZ, en su carácter de Oficial del Banco Popular de Puerto Rico; de las circunstancias personales antes expuestas; a quienes doy fe de conocer personalmente.

En Hatillo, Puerto Rico a 12 de enero de 2005.

8

Case 2:22-cv-02380-ESL12 Document 11-41 Filed 07/06/23 Page 135 of 202 Desc:
Exhibit XLI - Proof of Agreements 1 Page 12 of 86 Colorado Page 151 of 202

Case 18-03304-ESL12 Claim 6-1 Filed 02/19/1909 Desc Main Document Page 132 of
167

### PROPERTY LIEN AGREEMENT

#### I. THE PARTIES

THIS AGREEMENT dated as of January 12th, 2005, and entered into between the following PARTIES: ---

BY AND BETWEEN: **LAS MARTAS, INC.,** a company created and organized under the laws of the Commonwealth of Puerto Rico, with employer's Social Security Number _____, represented by its President **MR. JUAN MANUEL BARRETO GINORIO,** Social Security Number _____, of legal age, married to María Elena Hernández Ruiz, farmer and resident of Arecibo, Puerto Rico, whose representative character shall be evidenced by means of a Certificate of Resolution duly signed by the Secretary of the Company on the same date of this grant by means of certificate of authenticity number 28,482 before the Notary Public, Francisco J. Arraiza Donate, (hereinafter known as the DEBTOR), whose current address is as follows: HC 05 Box 91635, Arecibo, Puerto Rico 00612.-----

AND: **BANCO POPULAR DE PUERTO RICO,** domestic banking corporation with employer's Security Number _____ _____, with main office in Hato Rey, Puerto Rico, organized and existing in accordance with the laws of the Commonwealth of Puerto Rico, as represented herein by its Officer **MR. JOSÉ ALBERTO PÉREZ LÓPEZ,** Social Security Number _____ of legal age, married to Julia Ivette Batista González, banker and resident of Arecibo, Puerto Rico, whose representative status is evidenced by a Certificate of Resolution of the Board of Directors of Banco Popular de Puerto Rico in an ordinary session held on the fifteenth (15th) day of July of the year two thousand and four (2004), sworn and signed by Brunilda Santos de Alvarez, Assistant Secretary of the Board of Directors of Banco Popular de Puerto Rico, by affidavit number 4080 in San Juan, Puerto Rico on the fifteenth (15th) day of July of the year two thousand and four (2004) before the Notary Public Paulette Lavergne Cuyar, whose Certificate of Resolution I, the Notary, attest to have had before me (hereinafter known as the SECURED CREDITOR), whose current address is as follows: BANCO POPULAR DE PUERTO RICO, HATILLO BRANCH, CARRETERA #2, KILOMETER 86.6 BARRIO PUEBLO, HATILLO, PUERTO RICO 00659. ----------------------------------------------------------------------------------------------

Being the appearing parties under the free enjoyment of their civil rights, by means of the present authorization, they freely and voluntarily state:----------------------------------------------------------------

#### II STATEMENT

That the Secured Creditor has granted the Debtor a loan for an amount of ONE MILLION EIGHT

REGULATIONS OFFICE
DAIRY INDUSTRY

05 JAN 21   10:53 AM

REGULATIONS OFFICE
DAIRY INDUSTRY

05 JAN 21   10:53 AM

HUNDRED AND FIFTY THOUSAND DOLLARS (USD 1,850,000.00), accruing interest at one percent (1%) below the prevailing fluctuating prime rate from time to time in New York City's major commercial banks for short-term commercial loans ("New York Prime Rate"); under the terms and conditions contained in a loan agreement recognized and signed by the Debtor and Secured Creditor on the same date of the present authorization, certificate of authenticity number 28,491, whose loan has been granted to consolidate debts with Banco Popular de Puerto Rico, the purchase of 5,000 quarts of milk quota, and the purchase of 36 heifers, for permanent working capital and for expenses inherent to the transaction. It is the intention of the Debtor to give, grant and deliver to the Secured Creditor and the Secured Creditor wishes to define, its security interests and obtain lien on collateral and security, as well as additional collateral, for the aforementioned loan and for any increase, deferral, extension, novation or renewal thereof and any other current, present and future loans, credits, debts, financing and obligations of the Debtor in relation to the Secured Creditor of any nature, direct, indirect, absolute, contingent, or comprising the same class of debt as the original obligation mentioned or any other class, or classes of obligations, as well as the payment of any and all amounts due, now and hereafter, to the Secured Creditor by the Debtor, whether or not evidenced by any promissory note or other instrument, whether or not for the payment of money, direct, indirect, absolute or contingent, owed or to be owed by the Debtor, existing now or hereafter, as well as all obligations, any other agreements and/or contracts, loans and financing with the Secured Creditor, now and in the future. The Debtor and the Secured Creditor understand and agree that the terms and provisions set forth herein shall reconfirm, as well as increase, supplement and expand the rights, the security interests of the Secured Creditor, as well as their privileges and remedies, as set forth in this lien agreement granted by the Debtor and the Secured Creditor. --------------------------

### III SECURED LIABILITIES

The Debtor and the Secured Creditor in this authorization, intending to be legally and mutually committed through it, agree that the security interests and liens are those granted in the collateral described below to secure and guarantee the performance and compliance by the debtor of the aforementioned loan and the obligations, debts, credits, other loans and financings and payments as they have been extensively related above, in Section II of STATEMENT with the Secured Creditor, now and in the future. -----------

IV COLLATERAL

By means of this Agreement, the Debtor GIVES, GRANTS AND AWARDS to the Secured Creditor a continuous lien and a security interest on the general intangible described below (known by the parties as the "COLLATERAL"): ------------------------------------------------------------------------------

1) In the Puerto Rico Dairy Industry, the Debtor has the license No. 3064 to operate in the Hatillo municipality, the amount of 58,700 quarts of quota to produce raw milk every 14 days. The continuous lien and security interest in favor of the Secured Creditor is constituted on 58,700 quarts of the referred quota to produce raw milk every 14 days. The secured lien that by means of the present concession is constituted has a priority of preferential ranking and/or first ranking in favor of Banco Popular de Puerto Rico. The entire taxed quota guarantees the amount of ONE MILLION SIXTY THOUSAND TWO HUNDRED DOLLARS (USD 1,060,200.00) of the aforementioned loan for the amount of ONE MILLION EIGHT HUNDRED FIFTY THOUSAND DOLLARS (USD 1,850,000.00) with the quota being assessed to EIGHTEEN DOLLARS WITH SEVEN CENTS (USD 18.07) for every quart. --------

GUARANTEES, AGREEMENTS AND ASSERTIONS

By this Agreement, the Debtor claims, warrants and agrees to the following: ----------------------

1. The assertions in the Debtor's loan application(s) and/or financings are true and correct and the proceeds of the loans, financings, obligations, or credits secured by this Agreement, as they have been extensively related (see STATEMENT) shall be used exclusively for the purposes stated and set forth in such application(s) and in the event that any of the Collateral is purchased with the proceeds of any loan or advance secured by this Agreement, the Debtor hereby authorizes the Secured Creditor, at its option, to pay the sale price to the seller of such Collateral.-------------------------------------------------------------

REGULATIONS OFFICE
DAIRY INDUSTRY

05 JAN 21   10:53 AM

3

2. The Debtor is the owner and/or has interest and/or right in the Collateral described herein which manifests is free and clear of liens and interests and of prior warranties, EXCEPT for the following: NONE. ----------------------------------------------------------------------------------------------------

3. The Debtor shall pay, when due and/or payable, all debts secured by means of this agreement as mentioned in Section II of STATEMENT with their respective interests, together with any rent, taxes, seizures, products or other claims that are or may be converted into liens with respect to such Collateral.

4. The Debtor shall take care of and maintain the Collateral as a good parent would and may not encumber, cancel, remove, additionally sell or otherwise dispose of it without the written consent of the Secured Creditor and, upon request, must provide additional Collateral that is acceptable to the Secured Creditor. ----------------------------------------------------------------------------------------------------

5. The Debtor shall secure the Collateral for such amounts and in such form as required by the Secured Creditor, and shall pay the premiums, as required. ---------------------------------------------

6. The Debtor shall perform those acts, obtain, formalize and deliver those things, documents, deeds, insurance and additional instruments, as the Secured Creditor requires from time to time to invest and assure the Secured Creditor of its rights under this Agreement and/or offered Collateral and products thereof, including, but not limited to, landlord and mortgage lender waivers. --------------------------------

7. The Debtor shall swear and record before a Notary the corresponding Financing Statement, and any other document required by the Secured Creditor to upgrade the security interest granted by this Agreement. ----------------------------------------------------------------------------------------------

8. The Debtor shall submit and notify, to the satisfaction of the Secured Creditor, such information as the Secured Creditor may require in connection with the Collateral. The Collateral, as well as the Debtor's books and records, shall be kept on the Debtor's premises (if any), and the Debtor shall notify the Secured Creditor in a timely manner of any change in the location of the Collateral and the Debtor shall not remove the Collateral from such location (except in relation to motor vehicles and for inventory sold in the ordinary course of business), without the written consent of the Secured Creditor. The Debtor shall notify the Secured Creditor immediately, in writing, of any addition, change, or discontinuance of its place of business. ----------------------------------------------------------------------------------------------------

REGULATIONS OFFICE
DAIRY INDUSTRY    05 JAN 21   10:53 AM

4

9. The Debtor shall, at all times during normal business hours, give the Secured Creditor or its agents full access and the right to audit, check, inspect and make summaries and copies of the Debtor's books, records, audits, correspondence and all other papers relating to the Collateral. The Secured Creditor or else its agents may enter the Debtor's premises at any reasonable time during working hours and from time to time for the purpose of inspecting the Collateral and any records related thereto, which may also be performed at the Puerto Rico Dairy Industry (if such was the case).---------------------------------------

10. The Debtor shall, at the request of the Secured Creditor, and without notice to the Debtor, the Secured Creditor itself, may in the name of the Secured Creditor or the Debtor, at any time (whether the Debtor is in default hereunder or not), notify debtors of accounts and contracts and other liable party on the Secured Creditor's security interest and lien, for the purpose of ordering, implementing and administering payments to be made to the Secured Creditor; the Secured Creditor may demand, sue to collect or receive any money or property payable or receivable on any accounts, contract rights and general intangibles, and settle, release, compromise, adjust, sue in connection with, execute, perform or otherwise enforce, assert or execute any account, contract right or general intangible rights as determined by the Secured Creditor (regardless of whether the Debtor is in default hereunder), and for purposes of enforcing the rights of the Secured Creditor under this Lien Agreement document, the Secured Creditor may receive any open correspondence addressed to the Debtor and may retain and endorse promissory notes, checks, drafts, money orders, title documents or other forms of payment in the name of and on behalf of the Debtor. ------------------------------------------------------------------

11. The Debtor shall notify the Secured Creditor immediately of any event causing a material loss or impairment in the value of the Collateral and the amount of such loss or depreciation. ------------------

12. The Debtor shall maintain, renew and keep in force all the rights, powers, licenses, privileges and franchises that it currently holds and may not assign or transfer them without the consent of the secured creditor. ------------------------------------------------------------------

13. It is expressly agreed that the Secured Creditor may charge or debit such amount, to any deposit account the Debtor has with the Secured Creditor, as may be necessary to satisfy accrued interest, principal terms or notes due on loans, current, present or future debts, as referred to extensively in Section II of STATEMENT of this Agreement, or any other debts, which are not paid to the Secured Creditor within ten (10) days of the date they become due and payable. ------------------------------------------

REGULATIONS OFFICE
DAIRY INDUSTRY
05 JAN 21   10:53 AM

5

14. As a precondition for any disbursement under this Agreement, the Debtor shall submit to the Secured Creditor a Balance Sheet covering the Debtor's last fiscal year. -------------------------------------

15. The Debtor shall pay the principal and accrued interest in accordance with the agreed terms in a timely manner. --------------------------------------------------------------------------------------

16. The Debtor shall pay in a timely manner all the contributions, patents, excise duties and charges that the Government of Puerto Rico imposes on its properties and income; provided that the Debtor may question the validity of any contribution, arbitration or spill or its amount, being able to litigate in good faith its responsibility, provided that it establishes the corresponding and adequate reserves for the breach of this agreement. --------------------------------------------------------------------------------------

### VI GROUNDS OF BREACH

Upon the occurrence of any of the events described herein, the Debtor will be in default: -------

1. Any failure of the Debtor to observe or enforce any condition, agreement or commitment under this Lien Agreement, or any breach by the Debtor of any warranty, representation and/or assertion in this Lien Agreement. --------------------------------------------------------------------------------------

2. If the Debtor commits an infringement or default under any promissory note, agreement, assignment, loan(s), line of credit, lien agreement, mortgage, deed or trust or related agreement or document between the parties for these purposes, whether previously granted or to be granted in the future. ------------

3. If there is any material loss, impairment or reduction in the value of the Collateral that is not covered by insurance (if such was the case). --------------------------------------------------------------------

4. If the Debtor defaults on an agreement or commitment with any creditor of the Debtor, if the effect of such default is to permit the holder of such obligation or any representative of the holder, to have the obligation or any obligation declared due before its due date or before its regularly scheduled payment dates or to permit a trustee or holder of any debt to elect a majority on the Debtor's Board of Directors (if such was the case).----------------------------------------------------------------------------

REGULATIONS OFFICE
DAIRY INDUSTRY

05 JAN 21   10:53 AM

Case 22-12790-ESL12 Doc 211-41 Filed 07/08/25 Entered 07/07/25 17:30:05 Desc:
Exhibit XLI - Proof of Claim No. 5-1 filed by 18 Colorado Page 157 of 202

Case 18-07304-ESL12 Claim 5-1 Filed 02/19/19 Desc Main Document Page 138 of 167

5. If the Debtor fails to make any payment of principal or interest to the Secured Creditor related to any promissory note, loan, financing, line of credit, now or in the future as extensively set forth in Section II of STATEMENT or under any agreement on or before the date such payment is due; or if the promissory note is a demand instrument, and the payment is not made in full when requested.------------

6. If the Debtor fails to pay any other payments from the Secured Creditor within five (5) days after being billed or required by the Secured Creditor. --------------------------------------------------

7. In requesting the appointment of an interim receiver, liquidator, custodian, trustee or similar officer or fiduciary for the Debtor or the Debtor's property, but if such request is made against the Debtor, then the breach under this clause shall not occur if such request is dismissed within thirty (30) days of being issued.--------------------------------------------------------------------------------------------

8. Upon the issuance of any liquidation, seizure or preventing of enforcement against the Debtor or its property, which is not removed, dismissed or satisfied within thirty (30) days of its promotion. ----

9. If any final judgment for the payment of money is issued by a court of record against the Debtor and the Debtor fails to pay it within thirty (30) days from the date of its notice. -----------------------------

10. If the Debtor becomes insolvent, makes an assignment for the benefit of creditors, or offers an adjustment or extension to creditors.--------------------------------------------------------------------

11. Upon commencement of bankruptcy proceedings or proceedings for dissolution, liquidation or a settlement, reorganization or adjustment of any of the Debtor's debts, whether instituted by or against the Debtor, but if such proceedings are instituted against the Debtor then default shall not occur if such proceedings are reversed or dismissed within thirty (30) days after such commencement.------------------

VII RIGHTS AND REMEDIES FOR BREACH

Upon the occurrence of any of the foregoing events of breach, the Secured Creditor shall have the option of declaring all of the Debtor's liabilities or obligations under this Lien Agreement as referred to extensively in Section II of STATEMENT and any other agreement, promissory note or commitment on the part of the Debtor, including, without limitation, all liabilities under any agreements assigned or transferred to the Secured Creditor, with recourse, together with interest thereon, to become immediately due and payable without further notice or demand by the Secured Creditor. Notwithstanding any provision in this Agreement to the contrary, the Secured Creditor reserves the right to require payment in full in connection with any obligation of the Debtor payable to the claim without the occurrence of any of the foregoing events of default, which in addition to any rights the Secured Creditor may have under Act

7

No. 241 of September 19, 1996, as amended in Chapter 9 on "Secured Transactions," or any other law, the Secured Creditor shall also have the following rights and remedies.----------------------------------------

    1. To the extent permitted by law, the right to take possession of the Collateral with or without judicial Proceedings. ---------------------------------------------------------------------------------------

    2. The Secured Creditor may peacefully by its own means or with judicial assistance enter the premises of the Debtor and take possession of the Collateral, or give an account of not being able to be used, or dispose of the Collateral on the premises of the Debtor without any obligation or responsibility for rent, storage, profits or other sums, and the Debtor shall not resist or interfere with such action. ------

    3. The Secured Creditor may require the Debtor to assemble all or part of the Collateral and make it available to the Secured Creditor at any location to be designated by the Secured Creditor that is reasonably convenient to the Debtor and the Secured Creditor.-----------------------------------------------

    4. Pursuant to this Agreement, the Debtor agrees that a notice sent to it at least five (5) days prior to the date of any public sale, or of the time, after which any private sale or other disposition of the Collateral is to be made, reasonable notice of such sales or other disposition shall be considered; provided, however, that if the inventory or goods are considered perishable, the Debtor agrees that twenty-four (24) hours of prior written notice (including mail or similar communication) shall be considered as reasonable notice of sale disposal of such perishable inventory. ------------------------------

    5. If permitted by law, the Secured Creditor shall also be entitled to request and have an interim receiver, custodian, or similar fiduciary appointed by the court of competent jurisdiction to administer, protect and maintain the Collateral and to continue the operation of the Debtor's business and to collect all income and earnings thereof and to apply them to the payment of all expenses and other charges of such trusteeship, including the compensation of the interim receiver, and to the payment of the Debtor's liabilities and debts secured by this Agreement. -------------------------------------------------------------------

REGULATIONS OFFICE
DAIRY INDUSTRY

05 JAN 21  10:53 AM

6. If the Debtor defaults or fails to perform any agreement, guarantee or commitment under this Lien Agreement, the Secured Creditor may, at its option, make payments or incur expenses to relieve the effect of the default or restore performance, provided, however, that the Secured Creditor shall not be under any obligation to do so, and provided further, that any such action by the Secured Creditor shall not constitute a waiver of the Debtor's default. Any payments made or expenses incurred by the Secured Creditor to relieve the effect of any default or restore compliance, including expenses and attorney's fees, shall be secured by the Collateral and shall constitute part of the obligations and liabilities of this Agreement, from the Debtor to the Secured Creditor, together with its interest at the highest interest rate provided for in any agreement or the notes from the Debtor to the Secured Creditor. ----------------------

7. The Debtor shall, if not prohibited by applicable law, reimburse the Secured Creditor for all costs, expenses, charges and attorney fees incurred by the Secured Creditor to enforce the provisions of this Lien Agreement or to collect any current, present or future liability owed by the Debtor to the Secured Creditor together with interest at the highest rate provided for in any agreement or promissory note from the Debtor to the Secured Creditor.-------------------------------------------------------------------------

## VII MISCELLANEOUS PROVISIONS

1. The Secured Creditor's disclaimer of any warranty and/or commitment contained herein, or of any breach thereof, or the failure of the Secured Creditor at any particular time to exercise any right, remedy, privilege, or option contained herein shall not be construed as or constitute a waiver of such, or any warranty, lien, compromise, right, privilege, remedy, or option in the future, or from any subsequent violation, and shall not in any way affect or prejudice in any way the rights of the Secured Creditor or its interests or liens as provided herein, or the liability and collateralized obligations of the Debtor under this Lien Agreement. No delay or omission by the Secured Creditor to exercise any right shall operate as a waiver of such right or any other right. All rights and remedies of the Secured Creditor, whether evidenced by this Lien Agreement or by any other agreement or contract, instrument or credit facility, shall be cumulative and may be exercised simply or concurrently. The Secured Creditor may proceed against all or any part of the Collateral, or any other Collateral, in any order. ----------------------------------------------

REGULATIONS OFFICE
DAIRY INDUSTRY
05 JAN 21   10:53 AM

2. The Secured Creditor shall not be required to post any bond or provide any security or guarantee before asserting any right, claim, possession, dominion or control over, in or to the Collateral. ----------

3. All arrangements, agreements, representations and warranties made herein shall be deemed material and reliable to the Secured Creditor and shall survive the performance and delivery of this Guarantee Agreement.-----------------------------------------------------------------------------------------

4. The Secured Creditor shall have the power to assign this Property Lien Agreement, as it deems appropriate. As set forth above, all rights of the Secured Creditor under this Property Lien Agreement shall take effect to the benefit of its successors and assignees, and all obligations of the Debtor(s) shall bind the Debtor's successors and assignees. -------------------------------------------------------------------

5. It is the intention of the parties that this Lien Agreement shall secure existing and future outstanding debts as listed extensively in Section II of STATEMENT to this Agreement, and, notwithstanding the amount(s) secured and/or guaranteed at any time being reduced to zero, this agreement shall remain in full force and effect continuously so long as a properly completed Termination Statement is filed terminating the security interest of the Secured Creditor in the Collateral described in this Agreement. ---------------------------------------------------------------------------------------------

6. If more than one debtor signs this Agreement, or if a joint subsidiary or guarantor of the Debtor joins this Agreement and becomes a Debtor under this Agreement, the liability of all debtors shall be joint, and the term Debtor as used herein shall mean all debtors, collectively and jointly, and it is expressly understood and agreed that the Secured Creditor upon a default under this Agreement may, at its option, proceed against any debtor or any of the debtors mentioned herein without affecting and undermining the Secured Creditor's right to proceed against all debtors, mentioned herein, collectively. The right of the Secured Creditor against one or more Debtors shall not, in any way, operate to discharge or affect the liabilities, covenants, guarantees, representations and commitments of any other debtor mentioned in this Agreement. -------------------------------------------------------------------------------------------

REGULATIONS OFFICE
DAIRY INDUSTRY

05 JAN 21 10:53 AM

10

7. All parties to this Lien Agreement, including guarantors, sureties, endorsers, co-debtors, consent and agree without further notice to any of them, and without affecting the liability and obligations of any of them, the following: (1) the default of any party may be extended, or accelerated by the Secured Creditor; (2) any credit agreement may be renewed, extended or redeemed in whole or in part; (3) any collateral may be replaced, delivered, released or handled in such manner as the Secured Creditor may determine in its discretion; (4) any party may be released in whole or in part from its obligation and/or liability and (5) any defense that may be available if the Secured Creditor fails to improve a security interest in a property or chattel in accordance with applicable law are waived. The Debtors jointly waive notice, submission, protest and notice of protest and waive the benefit of all exemption laws currently in existence or subsequently legislated as to any notes, investments, assignments, loan financings, lines of credit and instrument secured by this Agreement, in short, as they have been extensively set forth in Section II of STATEMENT in this Agreement and in any event on the property described herein, and in addition they waive any and all defenses, compensation right, claims or rights of subrogation that they or any of them may or might have against the Secured Creditor, its successors or assigns and by this Lien Agreement waive any and all defenses that they or any of them may or might have in connection with the exchange, sale, delivery or other handling or disposition of any Collateral.---------------------------------

8. This Property Lien Agreement shall be deemed a continuing Agreement, and all rights, powers and remedies hereunder shall apply to all debts, current, present and future as specifically mentioned in Section II of this Agreement (STATEMENT), owed by the Debtor to the Secured Creditor despite the death, dissolution, incapacity or insolvency of the Debtor, and shall continue in full force and effect until all debts have been paid in full. ----------------------------------------------------------------

IN WITNESS WHEREOF: This Warranty Agreement is granted in Hatillo, Puerto Rico, on January 12, 2005.

LAS MARTAS, INC.                          **BANCO POPULAR DE PUERTO RICO**

REGULATIONS OFFICE
DAIRY INDUSTRY

05 JAN 21   10:53 AM

11

CERTIFIED COPY NUMBER: 28,485

Acknowledged and signed before me by **MR. JUAN MANUEL BARRETO GINORIO**, in his

role as President of LAS MARTAS, INC. and by **MR. JOSE ALBERTO PEREZ LOPEZ**, in his role

as Officer of Banco Popular de Puerto Rico; as explained by the previously exposed circumstances, who

I hereby certify are personally known to me.

In Hatillo, Puerto Rico, on January 12th, 2005.



[SIGNATURE]
NOTARY PUBLIC


[SEAL: FRANCISCO J. ARRAIZA DONATE
ISLAND OF PUERTO RICO
Lawyer – Notary]

REGULATIONS OFFICE
DAIRY INDUSTRY

05 JAN 21   10:53 AM

12



## CERTIFICATE OF TRANSLATION

**Date:**      09/21/2020

This is to certify that, to the best of our knowledge and belief, the
translation of the following

Document(s) –C5 Las Martas Certificación ORIL MAR 2019 4822-9396-16092_EN/PR
Asset Portfolio –2013-1 Intern LLC v Tropical Heifers Inc_EN.docx/Security Agreement –
Acuerdo de Gravamen Mobiliario Aff 28,485_EN

Project:      200910

Client:      Ferraiuoli, LLC

is a true, accurate and complete representation of the above-mentioned
Spanish document into English.

Alejandro Sánchez de los Reyes

**General Manager/Founder**

## SPLENDOR TRANSLATIONS

879 Enclair St, Orlando, Florida 32828 USA
Direct: 407-492-1916
asanchez@splendortr.com I www.splendortr.com

## ACUERDO DE GRAVAMEN MOBILIARIO

### LAS PARTES

ESTE ACUERDO, hecho el día 12 de enero de 2005, por las siguientes PARTES:----------

DE UNA PARTE: **LAS MARTAS, INC.**, corporación creada y organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, con seguro social patronal número ███████ representada por su Presidente DON JUAN MANUEL BARRETO GINORIO, seguro social ███████ mayor de edad, casado con María Elena Hernández Ruiz, agricultor y vecino de Arecibo, Puerto Rico, cuyo carácter representativo se hará constar mediante Certificación de Resolución debidamente firmada por el Secretario de la Corporación en igual fecha del presente otorgamiento mediante testimonio de autenticidad número 28,482 ante el notario público Francisco J. Arraiza Donate (de ahora en adelante conocido como el DEUDOR), cuya dirección actual es la siguiente: HC 05 Box 91635, Arecibo, Puerto Rico 00612.----------

DE LA OTRA PARTE: **EL BANCO POPULAR DE PUERTO RICO**, corporación bancaria doméstica con seguro social patronal número ████████ con oficina principal en Hato Rey, Puerto Rico y organizada y existente de acuerdo con las leyes del Estado Libre Asociado de Puerto Rico, representada en este acto por su Oficial **DON JOSÉ ALBERTO PÉREZ LÓPEZ**, seguro social ███████ mayor de edad, casado con Julia Ivette Batista González, banquero y vecino de Arecibo, Puerto Rico, cuyo carácter representativo se acredita mediante Certificación de Resolución de la Junta de Directores del Banco Popular de Puerto Rico en sesión ordinaria celebrada el día quince (15) de julio de dos mil cuatro (2004) jurada y suscrita por Brunilda Santos de Alvarez, Secretaria Auxiliar de la Junta de Directores del Banco Popular de Puerto Rico, mediante affidavit número 4080 en San Juan, Puerto Rico el día quince (15) de julio de dos mil cuatro (2004) ante la notario público Paulette Lavergne Cuyar, cuyo Certificado de Resolución Yo, el Notario doy fe de haberlo tenido ante mí (de ahora en adelante conocido como el ACREEDOR GARANTIZADO), cuya dirección actual es la siguiente: BANCO POPULAR DE PUERTO RICO, SUCURSAL DE HATILLO, CARRETERA #2, KILOMETRO 86.6 BARRIO PUEBLO, HATILLO, PUERTO RICO 00659.----------

Encontrándose los comparecientes en el libre disfrute de sus derechos civiles, mediante el presente otorgamiento libre y voluntariamente exponen:----------

----------EXPOSICIÓN----------

Que el Acreedor Garantizado ha concedido al Deudor el préstamo número 2190621---------0001----- por la cantidad de UN MILLON OCHOCIENTOS CINCUENTA MIL DOLARES ($1,850,000.00), devengando intereses a uno por ciento (1%) por debajo de la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York, para préstamos comerciales a corto plazo ("New York Prime Rate"), cuyo préstamo ha sido concedido para consolidar deudas con el Banco Popular de Puerto Rico, compra de 5,000 cuartillos de cuota de leche, compra de 36 novillas, para capital de trabajo permanente y para gastos inherentes en la transacción, bajo las cláusulas y condiciones que constan en un contrato de préstamo reconocido y suscrito por el Deudor y el Acreedor Garantizado, en igual fecha del presente otorgamiento, mediante testimonio número 28,491 ante el notario público Francisco J. Arraiza Donate.---------------------------------------------------------------------------------

Es la intención del Deudor dar, conceder y otorgar al Acreedor Garantizado y el Acreedor Garantizado desea definir, sus intereses asegurados (security interests) y obtener gravamen mobiliario sobre garantía y colateral, así como sobre colateral adicional, para garantizar el desempeño y cumplimiento por el Deudor del préstamo antes mencionado y para cualquier aumento, prórroga, extensión, novación y o renovación del mismo y cualesquiera otros préstamos, créditos, deudas, financiamientos y obligaciones vigentes, presentes y en lo sucesivo futuras del Deudor con relación al Acreedor Garantizado de cualquier naturaleza, directa, indirecta, absoluta, contingente, o comprendiendo la misma clase de deuda de la obligación original mencionada o de cualquier otra clase, o clases de obligaciones, al igual que el pago de cualquier y toda suma adeudadas, ahora y en adelante, adeudadas al Acreedor Garantizado por el Deudor, estén o no evidenciadas por cualquier pagaré u otro instrumento ya sean o no para el pago de dinero, directo, indirecto, absoluto o contingente, adeudado o a ser adeudado por el Deudor, existiendo actualmente, o de ahora en adelante, al igual que todas las obligaciones, cualesquiera otros acuerdos y/o contratos, préstamos y financiamientos con el Acreedor Garantizado, ahora y en el futuro. El Deudor y el Acreedor Garantizado entienden y acuerdan que los términos y disposiciones aquí expuestas habrán de reconfirmar, al igual que aumentar, suplementar y expandir los derechos, los intereses asegurados (security interests) del Acreedor Garantizado, al igual que sus privilegios y remedios, según aparecen dispuestos en este acuerdo de gravamen mobiliario otorgado por el Deudor y el Acreedor Garantizado.---------------------------------------------------------------------------------

2

------------------------------------OBLIGACIONES ASEGURADAS--------------------------------

El Deudor y el Acreedor Garantizado en este otorgamiento, teniendo la intención de estar legal y mutuamente comprometidos por medio del mismo, acuerdan, que los intereses asegurados (security interests) y gravamen mobiliario son los otorgados en la colateral descrita más adelante para asegurar y garantizar el desempeño y cumplimiento por el Deudor del préstamo antes mencionado y de cualquier otro préstamo, financiamiento u obligaciones, según han sido extensamente relacionadas (véase EXPOSICIÓN) con el Acreedor Garantizado, ahora y en el futuro.--------------------------------------------------------------------------------------------------

------------------------------------COLATERAL Y CLÁUSULAS--------------------------------

PRIMERO: El Acreedor Garantizado ha concedido al Deudor el préstamo antes mencionado en la EXPOSICIÓN.----

SEGUNDO: Que el Deudor se dedica al negocio de ganadería y otras actividades agrícolas relacionadas.----

TERCERO: Que a tales efectos, el Deudor tiene aprobado por el Departamento de Agricultura, Oficina de la Reglamentación de la Industria Lechera licencia para operar vaquería número 3064 y asignada una cuota para producir 58,700 cuartillos de leche fresca cruda cada catorce días y entregarla para la venta a la planta elaboradora de leche Suiza Dairy, Corp.---------------------

CUARTO: Que la referida planta de elaboración liquida al Deudor el dinero a que tenga derecho recibir, por la leche entregada previamente, todo de acuerdo con el Reglamento de la Industria Lechera, quincenalmente.----

QUINTO: Con el propósito de asegurar y garantizar las obligaciones mencionadas en el hecho PRIMERO anterior, y cualesquiera otras presentes, vigentes o futuras según se han expresado antes, extensamente (véase EXPOSICIÓN), el Deudor DA, CONCEDE Y OTORGA al Acreedor Garantizado un gravamen mobiliario e interés asegurado (security interest) sobre las cuentas por cobrar actuales del Deudor o a ser adquiridas posteriormente o en el futuro que se describen a continuación (conocida por las partes como la "COLATERAL"):-----------------------------------

1. Sobre las cuentas por cobrar con la planta elaboradora Suiza Dairy, Corp., adquiridas actualmente y a ser adquiridas posteriormente, o en el futuro, por el Deudor, en el pago de la venta de leche cruda a la referida planta elaboradora, según liquidación cada 14 días, el pago preferente de la cantidad de $7,450.00 quincenales, por 118 quincenas.-----------------------------------------

3

Las partes acuerdan enviar notificación por correo certificado a la referida planta para implementar el pago directo correspondiente, según establecido, al Acreedor Garantizado, disponiéndose, que en la eventualidad de que el Acreedor Garantizado concediera cualquier aumento, prórroga, extensión, novación y/o renovación de los mismos y cualesquiera otros préstamos, créditos, deudas, financiamientos y obligaciones en lo sucesivo o futuras al Deudor con relación al Acreedor Garantizado, según se han expresado antes, extensamente (véase EXPOSICIÓN), entonces, por mutuo acuerdo entre las partes, la cantidad señalada podrá variarse y/o aumentarse y/o extenderse, notificando la variación, aumento y/o extensión del pago a la planta elaboradora mencionada.---------

SEXTO: El Deudor se compromete a notificar al Acreedor Garantizado cualquier cambio o variación, que surja en la producción y entrega de leche.----------------------------------------------

SÉPTIMO: El Deudor se compromete a no ceder, transferir o de alguna forma alterar o afectar la referida licencia y el montante de la cuota que en la actualidad posee, así como a no ceder, transferir, enmendar ni modificar el Contrato de Entrega y Recogido de Producción de Leche perfeccionado con la planta elaboradora antes mencionada, sin el previo consentimiento del Acreedor Garantizado; y reconoce que dicha licencia, contrato y el montante actual de la cuota han sido tomados en consideración como un hecho básico para la obtención del gravamen asegurado del Acreedor Garantizado.-----------------------------------------

OCTAVO: El cedente no podrá realizar ni hacer valer contra el cesionario ni perjudicarle con cualquier reclamación y/o defensa que pudiera tener contra el deudor de la cuenta (account deptor).

NOVENO: Mediante la presente se autoriza al Acreedor Garantizado a recibir, percibir y cobrar en nombre del Deudor los pagos antes mencionados que para beneficio de éste deberá realizar la planta elaboradora, autorizando además al Acreedor Garantizado a endosar y a cambiar cualquier cheque, letra de cambio o instrumento negociable que utilice la planta eleboradora para pagar.---------------

DECIMO: El Deudor por la presente autoriza a la planta elaboradora, para que, en virtud de los términos de este acuerdo, pague directamente al Acreedor Garantizado la cantidad antes mencionada y por el término antes estipulado enviando el pago a la siguiente dirección:-----------------------------

BANCO POPULAR DE PUERTO RICO, SUCURSAL DE HATILLO, CARRETERA #2, KILOMETRO 86.6 BARRIO PUEBLO, HATILLO, PUERTO RICO 00659.------------------------------------

4

DÉCIMO PRIMERO: El Acreedor Garantizado recibirá todo pago que realice la planta elaboradora

y aplicará el monto total del mismo a la cuenta a pagar que tiene el Deudor con el Acreedor

Garantizado; si el pago recibido fuere mayor que el balance a cobrar, el Acreedor Garantizado

pagará dicho exceso al Deudor dentro de un periodo de tiempo no mayor de quince (15) días a partir

del recibo del pago.----------------------------------------------------------------------------------------------------

DÉCIMO SEGUNDO: En caso de que la deuda del Deudor con el Acreedor Garantizado devengue

intereses o le sean aplicados a la misma cargos por gastos incurridos o por demora, o que surjan de

la administración de dichas cuota, cualquier pago recibido será aplicado primero al balance de los

intereses, luego al balance de gastos o cargos y el sobrante, si alguno, será aplicado al principal

adeudado por el Deudor.-------------------------------------------------------------------------------------------------

DÉCIMO TERCERO: El Deudor se compromete a notificar al Acreedor Garantizado de la

ocurrencia de cualquier evento o suceso que pueda afectar su licencia para operar, producción,

administración o capacidad económica.------------------------------------------------------------------------------

DÉCIMO CUARTO: La tenencia de esta Garantía Mobiliario no limita en forma alguna el derecho

del Acreedor Garantizado a exigir al Deudor, de así creerlo pertinente otras garantías que puedan

servir de garantía o colateral del préstamo antes mencionado del Deudor y de cualquier otro

préstamo, financiamiento y obligaciones, según han sido extensamente relacionadas (véase

EXPOSICIÓN).----------------------------------------------------------------------------------------------------------

DÉCIMO QUINTO: El Deudor no podrá constituir posteriormente otro acuerdo de gravamen

mobiliario sobre cesión de cuentas por cobrar a beneficio de otro acreedor y con la planta

elaboradora Suiza Dairy, Corp., sin el consentimiento previo y escrito del Acreedor Garantizado.-----

DÉCIMO SEXTO: Si la planta elaboradora Suiza Dairy, Corp., durante el término de este Acuerdo

descontinuara el pago por cualquier circunstancia o se acogiera a las leyes de quiebra y

descontinuara el pago que se comience mediante el presente otorgamiento, el Deudor será

responsable directamente al Acreedor Garantizado del pago de la cantidad mencionada, es decir, 118

pagos quincenales por la cantidad de $7,450.00, hasta la total liquidación del préstamo otorgado;

o de la variación, aumento y/o extensión del mismo, si fuera el caso, disponiéndose, que la falta de

pago de la planta elaboradora no impedirá que sigan acumulando los correspondientes intereses del

préstamo otorgado por el Acreedor Garantizado, intereses y principal que deberá pagar directamente

el Deudor; se dispone además, que el incumplimiento por el Deudor de la presente cláusula dará

5

facultad al Acreedor Garantizado para declarar vencido el préstamo otorgado y proceder conforme a la ley.---

DÉCIMO SÉPTIMO: El Deudor manifiesta y garantiza que es dueño y/o tiene interés y/o derecho sobre la colateral antes mencionada y que no existe ningún interés, controversia ni reclamación de terceras personas sobre la misma y que la misma no tiene otros gravámenes que no sean los perfeccionados en el presente otorgamiento.---

DÉCIMO OCTAVO: El Deudor manifiesta y promete que no habrá de ofrecer la colateral objeto de este acuerdo en el presente otorgamiento como garantía y/o gravamen a terceras personas.---

DÉCIMO NOVENO: El Acreedor Garantizado por conducto de sus agentes y/o empleados autorizados, podrá inspeccionar las cuentas por cobrar objeto del presente acuerdo, cuando lo crea necesario, previa notificación al deudor en un plazo de veinticuatro (24) horas; bien en el lugar principal de negocios del deudor o en la planta elaboradora mencionada, para lo cual estará autorizado.---

VIGESIMO: En la eventualidad que el Deudor no realizara las gestiones necesarias a los fines de cumplir con este acuerdo de gravamen mobiliario, entonces el Acreedor Garantizado podrá realizar las mismas, y el Deudor reembolsará al Acreedor Garantizado todos los gastos incurridos con sus intereses. Se conviene expresamente que el Acreedor Garantizado podrá cargar o debitar a cualquier cuenta que el Deudor tuviera con el Acreedor Garantizado, aquella cantidad que fuera necesaria para satisfacer los intereses devengados, plazos de principal del préstamo concedido y de cualquier aumento, prórroga, extensión o renovación de los mismos y de cualesquiera otros préstamos, deudas, financiamientos y obligaciones vigentes, presentes y en lo sucesivo futuras según se han expresado antes, extensamente (véase EXPOSICIÓN), así como los gastos, costas y honorarios de estas o cualquier otra deuda, que no fueran pagados al banco dentro del término de diez (10) días de la fecha en que los mismos sean pagaderos y exigibles.---

VIGÉSIMO PRIMERO: El Deudor se compromete a realizar las gestiones razonables y necesarias que el Acreedor Garantizado le requiera a los fines de darle eficacia legal a este acuerdo de garantía mobiliaria entre ellos y respecto a terceras personas.---

VIGÉSIMO SEGUNDO: El Deudor mantendrá, renovará y conservará en vigencia todos los derechos, poderes, licencias, privilegios y franquicias que en la actualidad posea.---

6

VIGÉSIMO TERCERO: El Deudor pagará puntualmente el principal y los intereses devengados de acuerdo con los términos pactados.------------------------------------------------------------------------

VIGÉSIMO CUARTO: El Deudor pagará oportunamente todas las contribuciones, patentes, arbitrios y derramas que el Gobierno de Puerto Rico le imponga sobre sus propiedades e ingresos; disponiéndose, que el Deudor podrá cuestionar la validez de cualquier contribución, arbitrio o derrama o su cuantía, pudiedo litigar de buena fe su responsabilidad, siempre que establezca las correspondientes y adecuadas reservas.------------------------------------------------------------------

VIGÉSIMO QUINTO: El Deudor deberá jurar y suscribir ante Notario la Declaración de Financiamiento correspondiente y cualquier otro documento requerido por el Acreedor Garantizado para perfeccionar el interés asegurado (security interest) otorgado mediante el presente Acuerdo.---

VIGÉSIMO SEXTO: El Acreedor Garantizado tendrá la facultad de ceder el presente Acuerdo de Gravamen Mobiliario, según lo estime conveniente. Conforme a lo antes expuesto, todos los derechos del Acreedor Garantizado bajo este Acuerdo de Garantía habrán de tener efecto para el beneficio de sus sucesores y cesionarios, y todas las obligaciones de el (los) Deudor (es) habrán de comprometer a los sucesores del Deudor y sus cesionarios.-------------------------------------------------

VIGÉSIMO SEPTIMO: Este Acuerdo de Gravamen Mobiliario habrá de ser considerado como un acuerdo continuo, y todos los derechos, poderes y remedios en el mismo aplicarán a todas las deudas, vigentes, presentes y futuras según mencionadas anteriormente (véase EXPOSICIÓN) que tenga el Deudor con Acreedor Garantizado a pesar del deceso, disolución incapacidad o insolvencia del Deudor, por lo que continuará en toda su fuerza y vigor hasta que todas las deudas, hayan sido pagadas en su totalidad.---------------------------------------------------------------------------------

-----------------------------CAUSAS DE INCUMPLIMIENTO-----------------------------

PRIMERO: El Acreedor Garantizado podrá dar por vencida la obligación que garantiza el acuerdo de ocurrir cualquiera de los siguientes eventos:-----------------------------------------------------

a) Que el Deudor fuese llevado a quiebra, se declarase en quiebra voluntariamente o estuviese envuelto en cualquier procedimiento, ya sea en las cortes estatales, insulares o federales, tendente a la quita o espera o conducente a la obtención de un arreglo con los acreedores;--------------

b) falta de pago del principal e intereses de una mensualidad vencida de la obligación garantizada;------------------------------------------------------------------------------------------

c) la falta de cumplimiento de cualquiera de las cláusulas y condiciones del presente Acuerdo de Garantía Mobiliaria, lo que dará opción al Acreedor Garantizado a dar por terminado este acuerdo, declarar vencida la totalidad adeudada por el Deudor y proceder a ejecutar esta y cualquier otra colateral que hubiere entregado el Deudor al Acreedor Garantizado como parte de la garantía del préstamo concedido;--------------------------------------------------------------------------------

d) que cualquier manifestación o representación realizada por el Deudor no fuera cierta;-----

e) incumplimiento de cualquiera de las cláusulas y/o condiciones del aumento, prórroga, extensión, novación y/o renovación del préstamo antes mencionado y de cualesquiera otras deudas, préstamos, financiamientos y obligaciones vigentes, presentes y en lo sucesivo futuras del Deudor, según se ha expresado antes, extensamente (véase EXPOSICIÓN), con el Acreedor Garantizado, estén o no incluidos en el presente acuerdo.--------------------------------------------------------------

f) Que Suiza Dairy, Corp., no envíase conforme pactado el pago autorizado mediante el presente otorgamiento y el deudor no cumpla personalmente con el pago adeudado.--------------------

-----------------------------DERECHOS Y REMEDIOS PARA INCUMPLIMIENTO--------------------

PRIMERO: Si el Deudor incumpliera con alguna de las cláusulas y condiciones del presente acuerdo o incumpliera con cualquiera de las cláusulas y condiciones del préstamo antes mencionado o de cualquier aumento, prórroga, extensión o renovación de las mismas y de cualesquiera otros préstamos, créditos, deudas, financiamientos y obligaciones vigentes, presentes y en lo sucesivo futuras según han sido extensamente relacionadas (véase EXPOSICIÓN), entonces el Acreedor Garantizado habrá de tener la opción de declarar vencida la deuda garantizada y proceder a ejecutar el Gravamen Mobiliario e interés de garantía (security interest) sobre la colateral descrita en el presente Acuerdo de Gravamen Mobiliario, según mencionadas en la Sección de Garantías Aseguradas utilizando los poderes, derechos y remedios a tales efectos que dispone la Ley número 241 del 19 de septiembre de 1996, según enmendada, conocida como La Ley de "Transacciones Garantizadas"; disponiéndose, además, que ningún atraso u omisión del Acreedor Garantizado en ejercitar cualquier derecho habrá de operar como una renuncia de tal derecho o de algún otro derecho.--------------------------------------------------------------------------------------------------

SEGUNDO: En la eventualidad de incumplimiento el Deudor será responsable de pagar las costas, gastos y honorarios de abogado que su incumplimiento ocasione.-------------------------------------

8

TERCERO: El Acreedor Garantizado podrá ejercer cualesquiera de los derechos otorgádoles, pero la no utilización o ejercicio de los mismos, no se entenderá como renuncia a éstos y, por el contrario, se entenderá como una mera liberalidad.----------------------------------------------------------------------------------

CUARTO: El Deudor se compromete a cumplir con todas las cláusulas y condiciones del contrato de entrega y recogido de producción de leche, perfeccionado con la planta elaboradora Suiza Dairy, Corp.------------------------------------------------------------------------------------------------------------------------------

En la eventualidad de que el Deudor incumpliera las cláusulas y condiciones del Contrato de Entrega y Recogido de Producción de Leche y con el Reglamento Sanitario #138 que rige la producción de leche en Puerto Rico, o su sustituto, debidamente aprobado por el Secretario de Salud y/o incumpliera con alguna de las disposiciones de la Ley #34 del 11 de junio de 1957, según enmendada, y con todos los reglamentos promulgados de la Industria Lechera de Puerto Rico, o con cualquier otra ley o reglamento, de manera que se interrumpa o se suspenda el recogido de la leche, según notificación emitida por la Planta Elaboradora, la Oficina de Reglamentación de la Industria Lechera o el Departamento de Salud y no sea reanudado el recogido en o antes de diez (10) días de la interrupción y/o suspensión, entonces, el Acreedor Garantizado podrá declarar vencido este acuerdo, el préstamo, así como todas las deudas vigentes, presentes y futuras, según han sido mencionadas antes extensamente (véase EXPOSICIÓN) y ejercer los poderes, derechos o remedios que dispone la Ley #241 del 19 de septiembre de 1996, según enmendada, conocida como la Ley de "Transacciones Garantizadas".------------------------------------------------------------------------------------------

QUINTO: Hasta el punto que la ley lo permita, en caso de incumplimiento y declarar vencida y exigible la obligación u obligaciones, el Acreedor Garantizado tendrá derecho a tomar posesión de la Colateral con o sin procedimiento judicial.----------------------------------------------------------------------------

EN TESTIMONIO DE LO CUAL: Este Acuerdo de Garantía Mobiliaria es otorgado en Hatillo, Puerto Rico, hoy día 12 de enero de 2005.

LAS MARTAS, INC.

BANCO POPULAR DE PUERTO RICO

9

TESTIMONIO NÚMERO: 28,487

Reconocido y suscrito ante mí por **DON JUAN MANUEL BARRETO GINORIO**, en su

carácter de Presidente de **LAS MARTAS, INC.** y por **DON JOSE ALBERTO PEREZ LOPEZ**,

en su carácter de Oficial del Banco Popular de Puerto Rico; de las circunstancias personales antes

expresadas; a quienes doy fe de conocer personalmente.

En Hatillo, Puerto Rico, a 12 de enero de 2005.



NOTARIO PÚBLICO

10

Case 3:12-cv-01533-JAF-BJM Document 1-41 Filed 07/05/12 Page 1 of 2
Case 3:09-cv-01477... Document 1... Page 35 of 80
BPPR BANCO POPULAR    Exhibit XLI - Proof of Agreements ... Page 174 of 202

En consideración a que el Banco Popular de Puerto Rico (en adelante llamado el "Banco"), libre y voluntariamente, de tiempo en tiempo, conceda a solicitud a por cuenta de las JUAN MANUEL BARRETO GINORIO ———————————————————— (en adelante llamado los "Prestatarios"): préstamos, verifique anticipos en cualquier otra forma, descuente papeles, cuentas a cobrar, giros, aceptaciones, cheques o cualquier otra clase de instrumento negociable o que evidencie deuda (todos los cuales se denominarán en adelante "Instrumentos"), a instrumentos sobre los cuales los Prestatarios sean o puedan ser responsables como otorgantes, endosantes, cesionarios, o en cualquier otra forma verifique préstamos o anticipos a cuentas o mediante la garantía de dichos Instrumentos o en cualquier otra forma y manera conceda o extienda créditos a los Prestatarios con o sin garantía; por lo presente, los Firmantes solidariamente con los Prestatarios garantizan:

* El pago puntual a su vencimiento al Banco o a sus sucesores o cesionarios de todos y cada uno de los Instrumentos y cualquier otra obligación antes referida; así como cualquier otra clase de cualquier índole que en la actualidad o en adelante venza o se adeude al Banco por los Prestatarios, incluyendo todos o cualquiera de los Instrumentos expedidos con anterioridad o posterioridad a este documento y sobre los cuales el Banco tiene o pueda en lo sucesivo tener cualesquiera clase de derecho, participación o interés como dueño o garantizador, o en cualquier otra forma; y

* El pago de todos los gastos que pueda incurrir el Banco en el cobro de toda o cualquier parte de dicha deuda, o al ejercitar cualquier derecho bajo los términos de este documento.

Los Firmantes consienten y convienen que el Banco, de tiempo en tiempo, en cualquier momento, a su libre criterio y discreción puede:

* Prorrogar o cambiar la fecha, forma, lugar o condiciones de pago de todos o cualesquiera de tales Instrumentos, créditos y cualesquiera otras obligaciones, o cualquier parte de los mismos, o el ser éstas renovadas o prorrogadas;

* Cambiar o permutar, relevar o entregar toda o cualquier garantía colateral o cualesquiera parte de la misma (sea quien fuera el depositario de ella) que actualmente esté o pueda en lo sucesivo venir a poder del Banco, en relación con esta garantía o en relación con todos o cualesquiera de los Instrumentos, créditos y otras obligaciones antes referidas;

* Enajenar o adquirir por compra toda o cualquier parte de la colateral en venta pública o privada y después de deducir todos los gastos y desembolsos por concepto de cobro, venta o entrega, el saldo resultante de dicha venta podrá ser acreditado por el Banco a la cuenta de cualesquiera obligación de los Prestatarios, cuyo pago queda garantizado por los Firmantes o a la cuenta de cualquier obligación o responsabilidad de los Firmantes con el Banco, sin que se pueda entender que la adjudicación al Banco de dicha colateral extingue la deuda representada por las obligaciones garantizadas, ya que queda expresamente convenido que cualquier remanente que se adeude, una vez aplicado el saldo resultante de la venta o adjudicación, será exigible y constituirá una obligación solidaria de los Firmantes con el Banco; y

* Transigir, hacer arreglos con los Prestatarios o con cualquier persona responsable a los mismos sobre todos o cualesquiera Instrumentos, créditos u otras obligaciones garantizadas por virtud de este documento, posponer o subrogar el pago de las mismas o de cualquier parte de ellas al pago de cualquier otra deuda o reclamación que en cualquier momento pueda ser adeudada al Banco o cualquier otra persona o corporación. Todo lo anterior lo podrá realizar el Banco en la forma y manera y bajo los términos y condiciones que estime más conveniente, sin necesidad de aviso al ulterior aprobación por parte de los Firmantes, que quedarán obligados por los términos de esta garantía, sin tener en cuenta la existencia, valor o condiciones de cualquier garantía o colateral; no obstante, cualquier cambio, permuta, transacción, arreglo, entrega, relevo, aplicación de cualquier venta, renovación o extensión.

Los Firmantes autorizan al Banco, a su libre criterio y opción, a acreditar a la cuenta cualquier deuda o responsabilidad existente o que pueda surgir en el futuro de los Firmantes de todo o cualquier parte de los fondos en dinero, valores o cualquier propiedad, sus intereses o productos de la misma en que esté acumulando o pueda estar en lo sucesivo depositada bajo la custodia del Banco por los Firmantes o por una cuenta de los Firmantes o en los cuales los Firmantes tengan o puedan tener cualquier derecho, título o interés. Todas las remesas de valores y otras propiedades se entenderán dejadas bajo la custodia del Banco tan pronto las mismas sean puestas en tránsito dirigidas al Banco por correo, mensajero u otro modo de entrega.

Los Firmantes renuncian a: toda notificación o aviso sobre la aceptación de esta garantía, que se entenderá aceptada por el Banco cuando los Prestatarios realicen cualquier transacción de las especificadas en la misma; todo derecho de presentación, requerimiento, protesto, aviso de falta de aceptación de todos o cualesquiera préstamos, anticipos, créditos u otras obligaciones antes referidas; cualquier término de prescripción que pueda favorecernos o de cualquier dilación en comenzar acción judicial contra cualquier parte en este Instrumento o contra cualquier persona obligada bajo los términos del mismo; y todo derecho de aviso, reclamación o demanda bajo los términos de este Instrumento de los mismos.

En caso de insolvencia, quiebra o suspensión de pago por Prestatarios o los Firmantes, o que una petición de quiebra o cualquier procedimiento de extensión, o petición de nombramiento de síndico se refleje en cualquier Tribunal por o en contra de los Prestatarios o los Firmantes, o cuando se radique una solicitud de embargo o secuestro contra cualquier propiedad o bienes de todos o cualesquiera de las personas mencionadas en este párrafo, o cualesquiera de estos casos, todas los Instrumentos, créditos o cualquier otra obligación de las mencionadas o referidas en este documento, se considerarán, para los propósitos de hacer exigible la garantía otorgada por este documento, vencidos inmediatamente y adeudadas y pagaderas; surgiendo, sin necesidad de aviso o requerimiento, la obligación de pago de los Firmantes.

Esta garantía será considerada como una garantía continua que cubrirá cualquier cantidad que estuviere adeudada por los Prestatarios, aun cuando bajo esta garantía haya sido concedida en préstamos o en cualquier otra forma ésta o más veces. Esta garantía estará en todo su fuerza y vigor hasta tanto el Banco reciba notificación por escrito de haber sido revocada la misma. Sin embargo, tal revocación no se considerará retroactiva y no relevará a los Firmantes de responsabilidad en cuanto a cualquier Instrumento, créditos o cualquier otra obligación antes referida que esté en poder del Banco o la cual el Banco tenga algún derecho, título o interés en el momento de recibir el aviso de revocación. Ningún acto u omisión de clase alguna por parte del Banco efectuará en forma alguna esta garantía ni tampoco quedará ella afectada por ningún cambio que pueda sobrevenir por razón de la muerte de cualquier socio de los Firmantes o de los Prestatarios o por el ingreso a cualquiera de tales sociedades de uno o más nuevos socios.

La presente garantía será obligatoria para los Firmantes solidariamente, así como para sus albaceas, administradores, herederos, sucesores, cesionarios y causahabientes; surgiendo las obligaciones de la misma en el momento de verificarse cualquier descuento, préstamo, anticipo o de extenderse crédito por el Banco bajo esta garantía o en consideración a la misma. Los Firmantes consienten en que todos los préstamos y anticipos que el Banco realice, todos los Instrumentos que el Banco descuente y todo crédito que en lo sucesivo el Banco extienda a los Prestatarios, o por cuenta de los Prestatarios durante la vigencia de esta garantía, se entiende que ha sido hecho expresamente a solicitud de los Firmantes y en consideración y descansando en la suficiencia y aptitud de esta garantía.

Si esta garantía se otorga por una o más personas se considerará la obligación solidaria por todas dichas personas, entre ellas y conjuntamente con los Prestatarios, sin que pueda ser revocada o extinguida por la muerte de todos o cualesquiera de dichas personas o por la revocación o relevo de cualquier obligación por o en cuenta de cualesquiera de tales personas.

En Hatillo, Puerto Rico, hoy día ocho (8) de octubre de dos mil siete (2007).

LAS MARTAS, INC.
Por: Juan Manuel Barreto Ginorio

Affidávit Núm. 30,718

Jurado y suscrito ante mí por DON JUAN MANUEL BARRETO GINORIO, mayor de edad, soltero, en su carácter de Presidente de Las Martas, Inc., agricultor y vecino de Arecibo, Puerto Rico; a quien doy fe de conocer personalmente.

En Hatillo, Puerto Rico, hoy día ocho (8) de octubre de dos mil siete (2007).

AVISO: El uso del plural en este documento se entenderá en singular cuando sea firmado por una sola persona.
GEN-35 (3-00) (L)

Case:23-07020-ESL22 Doc#:11-41 Filed:05/25/23 Entered:05/25/23 20:55 Desc: Exhibit XLI - Proof of Agreement Page 96 of 202 Page 175 of 202

BPPR BANCO POPULAR

En consideración a que el Banco Popular de Puerto Rico (en adelante llamado el "Banco"), libre y voluntariamente, de tiempo en tiempo, conceda a solicitud o por cuenta de las

JUAN MANUEL BARRETO GINORIO ————————————— (en adelante llamado los "Prestatarios") préstamos, verifique anticipos en cualquier otra forma, descuente pagarés, cuentas a recibir, giros, aceptaciones, cheques o cualquier otra clase de instrumento negociable o que evidencie deuda (todos los cuales se denominarán en adelante "instrumentos"), o lleve/verifique sobre los cuales los Prestatarios sean o puedan ser responsables como surgentes, endosantes, otorgantes, o en cualquier otra forma verifique préstamos o anticipos a cuentas o mediante la garantía de dichos instrumentos o en cualquier otra forma o manera conceda o tienda crédito a los Prestatarios con o sin garantía, por la presente, los Firmantes solidariamente con los Prestatarios garantizan:

- El pago puntual a su vencimiento al Banco o a sus sucesores o cesionarios de todos y cada uno de los instrumentos y cualquier otra obligación antes referida; así como cualquier otra deuda de cualquier índole que en la actualidad o en adelante venza o se adeude al Banco por los Prestatarios, incluyendo todos o cualquiera de los instrumentos expedidos con anterioridad o posterioridad a este documento y sobre los cuales el Banco tiene o pueda en lo sucesivo tener cualesquiera clase de derecho, participación o interés como dueño o garantizador, o en cualquier otra forma; y

- El pago de todos los gastos que pueda incurrir el Banco en el cobro de toda o cualquier parte de dicha deuda, o al ejercitar cualquier derecho bajo los términos de este documento.

Los Firmantes consienten y convienen que el Banco, de tiempo en tiempo, en cualquier momento, a su libre arbitrio y discreción puede:

- Prorrogar o cambiar la fecha, forma, lugar o condiciones de pago de todos o cualesquiera de tales instrumentos, créditos y cualesquiera otras obligaciones, o cualquier parte de las mismas, o del ser éstas renovadas o prorrogadas;

- Cambiar o permutar, relevar o entregar toda o cualquier garantía colateral o cualesquiera parte de la misma (sea quien fuere el depositario de ella) que actualmente esté o pueda en lo sucesivo venir a poder del Banco, en relación con esta garantía o en relación con todas o cualesquiera de los instrumentos, créditos y otras obligaciones antes referidas;

- Enajenar o adquirir por compra toda o cualquier parte de la colateral en venta pública o privada y después de deducir todos los gastos y desembolsos por concepto de cobro, venta o entrega, el saldo resultante de dicha venta podrá ser acreditado por el Banco a la cuenta de cualesquiera obligación de los Prestatarios, cuyo pago quedó garantizado por los Firmantes o a la cuenta de cualquier obligación o responsabilidad de los Firmantes con el Banco, sin que se pueda entender que la adjudicación al Banco de dicha colateral extingue la deuda representada por las obligaciones garantizadas, ya que cuando expresamente convenido que cualquier remanente que se adeude, una vez aplicado el saldo resultante de la venta o adjudicación, será exigible y constituirá una obligación solidaria de los Firmantes con el Banco; y

- Transigir, hacer arreglos con los Prestatarios o con cualquier persona responsable a las mismas sobre todos o cualesquiera instrumentos, créditos u otras obligaciones garantizados por virtud de este documento, posponer o sobrogar el pago de las mismas o de cualquier parte de ellas al pago de cualquier otra deuda o reclamación que en cualquier momento puede ser adeudada al Banco o cualquier otra persona o corporación. Todo lo anterior lo podrá realizar el Banco en la forma y manera y bajo los términos y condiciones que estime más conveniente, sin necesidad de aviso al ulterior aprobación por parte de los Firmantes, que quedan obligados por los términos de esta garantía, sin tener en cuenta la existencia, valor o condiciones de cualquier garantía o colateral, no obstante, cualquier cambio, permuta, transacción, arreglo, entrega, relevo, aplicación de cualquier venta, renovación o extensión.

Los Firmantes autorizan al Banco, a su libre criterio y opción, a acreditar a la cuenta cualquier deuda o responsabilidad existente o que pueda surgir en el futuro de los Firmantes de todo o cualquier parte de los fondos en dinero, valores o cualquier propiedad, que interesen o productos de la misma en que esté actualmente o pueda estar en lo sucesivo depositada bajo la custodia del Banco por los Firmantes o por una cuenta de los Firmantes o en los cuales los Firmantes tengan o puedan tener cualquier derecho, título o interés. Todas las reservas de valores y otras propiedades se entenderán dejadas bajo la custodia del Banco tan pronto las mismas sean puestas en tránsito dirigidas al Banco por correo, mensajero u otro medio de entrega.

Los Firmantes renuncian a: toda notificación o aviso sobre la aceptación de esta garantía, que se entenderá aceptada por el Banco cuando los Prestatarios realicen cualquier transacción de las especificadas en la misma; todo derecho de presentación, requerimiento, protesto, aviso de falta de aceptación de todos o cualesquiera préstamos, anticipos, créditos u otras obligaciones antes referidas; cualquier término de prescripción que pueda favorecernos o de cualquier elección en comenzar acción judicial contra cualquier parte en este instrumento o contra cualquier persona obligada bajo los términos del mismo, y todo derecho de aviso, reclamación o demanda bajo los términos de este instrumento de los mismos.

...n caso de insolvencia, quiebra o suspensión de pagos por Prestatarios o los Firmantes, o que una petición de quiebra o cualquier procedimiento de extensión, o petición de nombramiento de síndico se radique en cualquier Tribunal por o por cuenta de los Prestatarios o los Firmantes, o cuando se radique una solicitud de embargo o secuestro contra cualquier propiedad o bienes de todos o cualesquiera de las personas mencionadas en este párrafo, en cualesquiera de estos casos, todos los instrumentos, créditos o cualquier otra obligación de las mencionadas o referidas en este documento, se considerarán, para los propósitos de hacer exigible la garantía escrigada por este documento, vencidas inmediatamente y adeudadas y pagaderas, surgiendo, sin necesidad de aviso o requerimiento, la obligación de pago de los Firmantes.

Esta garantía será considerada como una garantía continua que cubrirá cualquier cantidad que estuviere adeudada por los Prestatarios, aun cuando bajo esta garantía haya sido concedida en préstamos o en cualquier otra forma una o más veces. Esta garantía estará en todo su fuerza y vigor hasta tanto el Banco reciba notificación por escrito de haber sido revocada la misma. Sin embargo, tal revocación no se considerará revocativa y no relevará a los Firmantes de responsabilidad en cuanto a cualquier instrumento, crédito o cualquier otra obligación antes referida que esté en poder del Banco o en la cual el Banco tenga algún derecho, título o interés en el momento de recibir tal aviso de revocación. Ningún acto u omisión de clase alguna por parte del Banco afectará en forma alguna esta garantía ni tampoco quedará ella afectada por ningún cambio que pueda sobrevenir por razón de la muerte de cualquier socio de los Firmantes o de los Prestatarios o por el ingreso a cualquiera de tales sociedades de uno o más socios nuevos.

La presente garantía será obligatoria para los Firmantes solidariamente, así como para sus albaceas, administradores, herederos, sucesores, cesionarios y causahabientes, surgiendo las obligaciones de la misma en el momento de verificarse cualquier descuento, préstamo, anticipo o de extenderse crédito por el Banco bajo esta garantía o en consideración a la misma. Los Firmantes convienen en que todos los préstamos y anticipos que el Banco realice, todos los instrumentos que el Banco descuente y todo crédito que en lo sucesivo el Banco otienda a los Prestatarios, o por cuenta de los Prestatarios durante la vigencia de esta garantía, se entenderá que ha sido hecho expresamente a solicitud de los Firmantes y en consideración o descansando en la suficiencia y aptitud de esta garantía.

Si esta garantía se otorga por una o más personas se considerará la obligación solitaria por todas dichas personas, entre ellas y conjuntamente con los Prestatarios, sin que pueda ser revocada o renoncitada por la muerte de todos o cualesquiera de dichas personas o por la revocación o relevo de cualquier obligación por o en contra de cualesquiera de tales personas.

En Hatillo, Puerto Rico, hoy día ocho (8) de octubre de dos mil siete (2007).

LAS MARTAS, INC.
Por: Juan Manuel Barreto Ginorio

Affidávit Núm. 30.718

Jurado y suscrito ante mí por DON JUAN MANUEL BARRETO GINORIO, mayor de edad, soltero, en su carácter de Presidente de Las Martas, Inc., agricultor y vecino de Arecibo, Puerto Rico; a quien doy fe de conocer personalmente.

En Hatillo, Puerto Rico, hoy día ocho (8) de octubre de dos mil siete (2007).

iO El uso del plural en este documento se entenderá en singular cuando sea firmado por una sola persona.
ULN-56 (3-00) (L)

| From: | noreply |
|---|---|
| To: | Yanmarie Rotger de la Portilla |
| Subject: | APPROVED - UCC Financing Statement. |
| Date: | Wednesday, May 5, 2021 3:18:55 PM |
| Attachments: | UCC1 – UCC Financing Statement.pdf |

WARNING: External Sender.

Dear Yanmarie Rotger,

Please be informed that your application for a UCC Financing Statement, filed on 05/05/2021, has been approved by the Puerto Rico Department of State. The filing number of the above referenced document is 20210005226.

DO NOT REPLY to this e-mail. If you have questions, please send an e-mail message to ucc@estado.pr.gov

Best Regards,

Puerto Rico Department of State
San José St. corner San Francisco St.
San Juan, PR 00901
Tel. (787) 722-2121 ext. 4401
estado.pr.gov

**Disclaimer:**
This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the ucc@estado.pr.gov immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secured or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version.

This request was initiated from user at 184.105.122.220



Government of Puerto Rico
Department of State
Transaction Date: 04/23/2021 7:48 AM AST
Filing Number: 20210005226
Lapse Date: 04/23/2026 7:48 AM AST
Filed Electronically

Government of Puerto Rico

## UCC1 – UCC Financing Statement

---

**DEBTOR'S NAME**

Name:  LAS MARTAS, INC.

Address:  Hc 05 Box 91635, Arecibo, PR, 00612, United States

---

**SECURED PARTY'S NAME**

Name:  CONDADO 5 LLC

Address:  Po Box 190085, San Juan, PR, 00919, United States

Email:  gdehoyos@ciacpr.com

---

**COLLATERAL**

Collateral Description     REFER TO ATTACHMENT.

---

**Filer Information**

Name:  Yanmarie Rotger

Address:  United States, Po Box 195168, San Juan, Puerto Rico, 00919

Email:  yrotger@ferraiuoli.com



ESTADO LIBRE ASOCIADO DE

# PUERTO RICO

DEPARTAMENTO DE ESTADO
Registro de Transacciones Comerciales

## DECLARACIÓN DE FINANCIAMIENTO / *FINANCING STATEMENT*
### SIGA INSTRUCCIONES / FOLLOW INSTRUCTIONS

A. NOMBRE Y NÚMERO DE CONTACTO (opcional) / *NAME & PHONE OF CONTACT AT FILER (optional)*
Josean Díaz Brugueras, Esq.    (787) 766-7000

B. CORREO ELECTRÓNICO DE CONTACTO (opcional) / *E-MAIL CONTACT AT FILER (optional)*
jdiaz@ferraiuoli.com

C. ENVIAR CONFIRMACIÓN A (Nombre y Dirección): / *SEND ACKNOWLEDGMENT TO: (Name and Address)*

Att: Josean Díaz Brugueras, Esq.
Ferraiuoli LLC
221 Plaza, Fifth Floor
221 Ponce de León Avenue
San Juan, Puerto Rico 00917

EL ESPACIO ARRIBA ES PARA USO DEL OFICIAL DE REGISTRO
THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. NOMBRE DEL DEUDOR / *DEBTOR'S NAME*: Provea sólo un nombre de Deudor (1a o 1b) (use el nombre completo y exacto, no omita, modifique o abrevie ningún componente del nombre); si algún aparte del nombre del Deudor no cabe en la línea 1b, déjela en blanco, marque aquí ☐ y provea la información del Deudor individual en el renglón 10 del Anejo a la Declaración de Financiamiento (Forma UCC1AdPR) / *Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1AdPR)*

1a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME*

**LAS MARTAS, INC.**

| 1b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | SUFIJO / *SUFFIX* | | |
|---|---|---|---|---|---|
| 1c. DIRECCIÓN POSTAL / *MAILING ADDRESS* **HC 05 BOX 91635** | CIUDAD / *CITY* **Arecibo** | ESTADO / *STATE* **PR** | CÓDIGO POSTAL / *POSTAL CODE* **00612** | PAÍS / *COUNTRY* **USA** | |

NOMBRE DEL DEUDOR / *DEBTOR'S NAME*: Provea sólo un Deudor adicional (2a o 2b) (Use el nombre completo y exacto; no omita, modifique o abrevie ninguna parte del nombre). Si cualquier parte de un nombre no cupiera en el espacio provisto en la 2b, deje toda la sección 2 en blanco, marque aquí ☐ y provea el nombre completo en el renglón 10 en el Anejo de la Declaración de Financiamiento (Forma UCC1AdPR) / *Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1AdPR)*

2a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME*

OR

| 2b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | SUFIJO / *SUFFIX* | | |
|---|---|---|---|---|---|
| 2c. DIRECCIÓN POSTAL / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO / *STATE* | CÓDIGO POSTAL / *POSTAL CODE* | PAÍS / *COUNTRY* | |

3. NOMBRE DEL ACREEDOR GARANTIZADO (o NOMBRE DE CESIONARIO): Provea solo un nombre de Acreedor Garantizado (3a o 3b) / *SECURED PARTY'S NAME (or NAME OF ASSIGNEE): Provide only one Secured Party name (3a or 3b)*

3a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME*

OR

**CONDADO 5 LLC**

| 3b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | SUFIJO / *SUFFIX* | | |
|---|---|---|---|---|---|
| 3c. DIRECCIÓN POSTAL / *MAILING ADDRESS* **PO BOX 190085** | CIUDAD / *CITY* **San Juan** | ESTADO / *STATE* **PR** | CÓDIGO POSTAL / *POSTAL CODE* **00919** | PAÍS / *COUNTRY* **USA** | |

4. COLATERAL: Esta declaración de financiamiento cubre la siguiente colateral: / *COLATERAL: This financing statement covers the following collateral:*

### See <u>Exhibit A</u> attached hereto and make it a part of this Financing Statement.

5. Marque solo si aplica y solo una opción: Colateral está ☐ en posesión de un Fideicomiso (véase UCC1AdPR, renglón 7 e instrucciones) ☐ administrado por Representante de un difunto / Check *only* if applicable and check *only* one box: Collateral is ☐ held in a Trust (See UCC1AdPR, Item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

6a. Marque solo si aplica y una sola alternativa / *Check only if applicable and check only one box:*

☐ Transacción de Financiamiento Público / *Public-Finance Transaction*
☐ Transacción de Casa Prefabricada / *Manufactured-Home Transaction*
☐ Un Deudor es una entidad transmisora / *A Debtor is a Transmitting Utility*

6b. Marque solo si aplica y solo una alternativa / *Check only if applicable and check only one box:*

☐ Gravamen Agrícola / *Agricultural Lien*
☐ Inscripción extraregistral Non - UCC Filing

7. ☐ DESIGNACIÓN ALTERNA (si aplica) *ALTERNATIVE DESIGNATION (if applicable)*

☐ Arrendador/Arrendatario *Lessee/Lessor*
☐ Consignatario/ Consignador *Consignee/Consignor*
☐ Vendedor/ Comprador *Seller/Buyer*
☐ Depositario/ Fiador *Bailee/Bailor*
☐ Concesionario/Concedente *Licensee/Licensor*

8. DATOS OPCIONALES DE REFERENCIA PARA EL SOLICITANTE / *OPTIONAL FILER REFERENCE DATA:*

COPY FOR THE FILING OFFICE—FINANCING STATEMENT (Form UCC1PR) (Rev. 09/05/14)

## EXHIBIT A OF THE FINANCING STATEMENT

| DEBTOR: | SECURED PARTY: |
|---|---|
| LAS MARTAS, INC.<br>HC 05 Box 91635<br>Arecibo, Puerto Rico 00612 | CONDADO 5 LLC<br>PO Box 190085<br>San Juan, Puerto Rico 00919 |

Pursuant to a Property Lien Agreement dated January 12th, 2005 (the "Lien Agreement") entered into by Las Martas, Inc. (the "Debtor") and Banco Popular de Puerto Rico ("BPPR"), predecessor in interest of Condado 5 LLC (the "Secured Party"), the Debtor granted to BPPR, as predecessor in interest of the Secured Party, a property lien and a first-ranking security interest in all current and future Debtor's rights, titles and interests:

(i) On the existing accounts receivable related to the processing plant Suiza Dairy, Corp., and those that may be acquired subsequently or in the future by the Debtor due to the payment for the sale of raw milk to the aforementioned processing plant, in accordance with payment settlement every 14 days, the preferred payment will be of USD 7,450.00 fortnightly, over 118 fortnights.

All capitalized terms used herein that are not otherwise defined herein have the meanings set forth in the Lien Agreement.

TENAGUILLO
CICCONI
MICAELA

Firmado digitalmente
por TENAGUILLO
CICCONI MICAELA
Fecha: 2021.05.17
15:35:41 -03'00'

# SPLENDOR TRANSLATIONS

**CERTIFICATE OF TRANSLATION**

**Date: 05/18/2021**

This is to certify that, to the best of our knowledge and belief, the translation of the following:

Document: APPROVED - UCC Financing Statement 20210005226 and APPROVED - UCC Financing Statement 20210005227

Project: 210513

Client: Ferraiuolli, LLC

is a true, accurate and complete representation of the above-mentioned Spanish document into the English language.

Alejandro Sánchez de los Reyes

**General Manager/Founder**

# SPLENDOR TRANSLATIONS

879 Enclair St, Orlando, Florida 32828 USA
Direct: 407-492-1916
asanchez@splendortr.com I www.splendortr.com

**EXHIBIT V**

| | |
|---|---|
| **From:** | noreply |
| **To:** | Yanmarie Rotger de la Portilla |
| **Subject:** | APPROVED - UCC Financing Statement. |
| **Date:** | Wednesday, May 5, 2021 3:20:08 PM |
| **Attachments:** | UCC1 – UCC Financing Statement.pdf |

WARNING: External Sender.

Dear Yanmarie Rotger,

Please be informed that your application for a UCC Financing Statement, filed on 05/05/2021, has been approved by the Puerto Rico Department of State. The filing number of the above referenced document is 20210005227.

DO NOT REPLY to this e-mail. If you have questions, please send an e-mail message to ucc@estado.pr.gov

Best Regards,

Puerto Rico Department of State
San José St. corner San Francisco St.
San Juan, PR 00901
Tel. (787) 722-2121 ext. 4401
estado.pr.gov

**Disclaimer:**
This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the ucc@estado.pr.gov immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secured or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version.

This request was initiated from user at 184.105.122.220



Government of Puerto Rico
Department of State
Transaction Date: 04/23/2021 7:55 AM AST
Filing Number: 20210005227
Lapse Date: 04/23/2026 7:55 AM AST
Filed Electronically

Government of Puerto Rico

## UCC1 – UCC Financing Statement

---

**DEBTOR'S NAME**

Name:  LAS MARTAS, INC.
Address:  Hc 05 Box 91635, Arecibo, PR, 00612, United States

---

**SECURED PARTY'S NAME**

Name:  CONDADO 5 LLC
Address:  Po Box 190085, San Juan, PR, 00919, United States
Email:  gdehoyos@ciacpr.com

---

**COLLATERAL**

Collateral Description    REFER TO ATTACHMENT.

---

**Filer Information**

Name:  Yanmarie Rotger
Address:  United States, Po Box 195168, San Juan, Puerto Rico, 00919
Email:  yrotger@ferraiuoli.com



ESTADO LIBRE ASOCIADO DE
# PUERTO RICO
DEPARTAMENTO DE ESTADO
Registro de Transacciones Comerciales

## DECLARACIÓN DE FINANCIAMIENTO / *FINANCING STATEMENT*
SIGA INSTRUCCIONES / FOLLOW INSTRUCTIONS

A. NOMBRE Y NÚMERO DE CONTACTO (opcional) / *NAME & PHONE OF CONTACT AT FILER (optional)*
Josean Díaz Brugueras, Esq.    (787) 766-7000

B. CORREO ELECTRÓNICO DE CONTACTO (opcional) / *E-MAIL CONTACT AT FILER (optional)*
jdiaz@ferraiuoli.com

C. ENVIAR CONFIRMACIÓN A (Nombre y Dirección): / *SEND ACKNOWLEDGMENT TO: (Name and Address)*

Att: Josean Díaz Brugueras, Esq.
Ferraiuoli LLC
221 Plaza, Fifth Floor
221 Ponce de León Avenue
San Juan, Puerto Rico 00917

EL ESPACIO ARRIBA ES PARA USO DEL OFICIAL DE REGISTRO
THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. NOMBRE DEL DEUDOR / *DEBTOR'S NAME*: Provea sólo un nombre de Deudor (1a o 1b) (use el nombre completo y exacto, no omita, modifique o abrevie ningún componente del nombre); si algún aparte del nombre del Deudor no cabe en la línea 1b, déjela en blanco, marque aquí ☐ y provea la información del Deudor individual en el renglón 10 del Anejo a la Declaración de Financiamiento (Forma UCC1AdPR) / *Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1AdPR)*

1a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME*
**LAS MARTAS, INC.**

| 1b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | | SEGUNDO NOMBRE / *ADDITIONAL NAME* | | SUFIJO / *SUFFIX* |
|---|---|---|---|---|---|
| 1c. DIRECCIÓN POSTAL / *MAILING ADDRESS* **HC 05 BOX 91635** | CIUDAD / *CITY* Arecibo | ESTADO / *STATE* **PR** | CÓDIGO POSTAL / *POSTAL CODE* **00612** | | PAÍS / *COUNTRY* **USA** |

NOMBRE DEL DEUDOR / *DEBTOR'S NAME*: Provea sólo un Deudor adicional (2a o 2b) (Use el nombre completo y exacto; no omita, modifique o abrevie ninguna parte del nombre). Si cualquier parte de un nombre no cupiera en el espacio provisto en la 2b, deje toda la sección 2 en blanco, marque aquí ☐ y provea el nombre completo en al renglón 10 en el Anejo de la Declaración de Financiamiento (Forma UCC1AdPR) / *Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1AdPR)*

2a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME*

OR

| 2b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | | SEGUNDO NOMBRE / *ADDITIONAL NAME* | | SUFIJO / *SUFFIX* |
|---|---|---|---|---|---|
| 2c. DIRECCIÓN POSTAL / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO / *STATE* | CÓDIGO POSTAL / *POSTAL CODE* | | PAÍS / *COUNTRY* |

3. NOMBRE DEL ACREEDOR GARANTIZADO (o NOMBRE DE CESIONARIO): Provea solo un nombre de Acreedor Garantizado (3a o 3b)
*SECURED PARTY'S NAME (or NAME OF ASSIGNEE): Provide only one Secured Party name (3a or 3b)*

3a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME*
**CONDADO 5 LLC**

OR

| 3b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | | SEGUNDO NOMBRE / *ADDITIONAL NAME* | | SUFIJO / *SUFFIX* |
|---|---|---|---|---|---|
| 3c. DIRECCIÓN POSTAL / *MAILING ADDRESS* **PO BOX 190085** | CIUDAD / *CITY* San Juan | ESTADO / *STATE* **PR** | CÓDIGO POSTAL / *POSTAL CODE* **00919** | | PAÍS / *COUNTRY* **USA** |

4. COLATERAL: Esta declaración de financiamiento cubre la siguiente colateral: / *COLLATERAL: This financing statement covers the following collateral:*

**See <u>Exhibit A</u> attached hereto and make it a part of this Financing Statement.**

| 5. Marque solo si aplica y solo una opción: Colateral está ☐ en posesión de un Fideicomiso (véase UCC1AdPR, renglón 7 e instrucciones) ☐ administrado por Representante de un difunto | Check *only* if applicable and check *only* one box: Collateral is ☐ held in a Trust (See UCC1AdPR, Item 17 and instructions) ☐ being administered by a Decedent's Personal Representative |
|---|---|

| 6a. Marque solo si aplica y una sola alternativa / *Check only if applicable and check only one box:* | 6b. Marque solo si aplica y solo una alternativa / *Check only if applicable and check only one box:* |
|---|---|
| ☐ Transacción de Financiamiento Público / *Public-Finance Transaction*   ☐ Transacción de Casa Prefabricada / *Manufactured-Home Transaction*   ☐ Un Deudor es una entidad transmisora / *A Debtor is a Transmitting Utility* | ☐ Gravamen Agrícola / *Agricultural Lien*   ☐ Inscripción extraregistral Non - UCC Filing |

| 7. ☐ DESIGNACIÓN ALTERNA (si aplica) *ALTERNATIVE DESIGNATION (if applicable):* | ☐ Arrendador/Arrendatario *Lessee/Lessor* | ☐ Consignatario/ Consignador *Consignee/Consignor* | ☐ Vendedor/ Comprador *Seller/Buyer* | ☐ Depositario/ Fiador *Bailee/Bailor* | ☐ Concesionario/Concedente *Licensee/Licensor* |
|---|---|---|---|---|---|

8. DATOS OPCIONALES DE REFERENCIA PARA EL SOLICITANTE / *OPTIONAL FILER REFERENCE DATA:*

COPY FOR THE FILING OFFICE—FINANCING STATEMENT (Form UCC1PR) (Rev. 09/05/14)

## EXHIBIT A OF THE FINANCING STATEMENT

| DEBTOR: | SECURED PARTY: |
|---|---|
| LAS MARTAS, INC.<br>HC 05 Box 91635<br>Arecibo, Puerto Rico 00612 | CONDADO 5 LLC<br>PO Box 190085<br>San Juan, Puerto Rico 00919 |

Pursuant to a Property Lien Agreement dated January 12th, 2005 (the "Lien Agreement") entered into by Las Martas, Inc. (the "Debtor") and Banco Popular de Puerto Rico ("BPPR"), predecessor in interest of Condado 5 LLC (the "Secured Party"), the Debtor granted to BPPR, as predecessor in interest of the Secured Party, a property lien and a first-ranking security interest in all current and future Debtor's rights, titles and interests:

(i)     The amount of 58,700 quarts of quota to produce raw milk every 14 days under license number 3064 issued by the Puerto Rico Dairy Industry to operate in the Municipality of Hatillo. The entire taxed quota guarantees the amount of one million sixty thousand two hundred dollars (USD 1,060,200.00) of a loan granted to the Debtor by BPPR for the principal amount of one million eight hundred fifty thousand dollars (USD 1,850,000.00) with the quota being assessed to eighteen dollars with seven cents (USD 18.07) for every quart.

All capitalized terms used herein that are not otherwise defined herein have the meanings set forth in the Lien Agreement.

TENAGUILL
O CICCONI
MICAELA

Firmado digitalmente
por TENAGUILLO
CICCONI MICAELA
Fecha: 2021.05.17
15:36:51 -03'00'



**CERTIFICATE OF TRANSLATION**

**Date: 05/18/2021**

This is to certify that, to the best of our knowledge and belief, the translation of the following:

Document: APPROVED - UCC Financing Statement 20210005226 and APPROVED - UCC Financing Statement 20210005227

Project: 210513

Client: Ferraiuolli, LLC

is a true, accurate and complete representation of the above-mentioned Spanish document into the English language.

Alejandro Sánchez de los Reyes

**General Manager/Founder**

SPLENDOR TRANSLATIONS

879 Enclair St, Orlando, Florida 32828 USA
Direct: 407-492-1916
asanchez@splendortr.com I www.splendortr.com

**EXHIBIT VI**

| | |
|---|---|
| From: | noreply |
| To: | Yanmarie Rotger de la Portilla |
| Subject: | APPROVED - UCC Financing Statement. |
| Date: | Tuesday, May 4, 2021 2:36:17 PM |
| Attachments: | UCC1 – UCC Financing Statement.pdf |

WARNING: External Sender.

Dear Yanmarie Rotger,

Please be informed that your application for a UCC Financing Statement, filed on 05/04/2021, has been approved by the Puerto Rico Department of State. The filing number of the above referenced document is 20210005228.

DO NOT REPLY to this e-mail. If you have questions, please send an e-mail message to ucc@estado.pr.gov

Best Regards,

Puerto Rico Department of State
San José St. corner San Francisco St.
San Juan, PR 00901
Tel. (787) 722-2121 ext. 4401
estado.pr.gov

**Disclaimer:**
This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the ucc@estado.pr.gov immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secured or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version.

This request was initiated from user at 184.105.122.220

Government of Puerto Rico
Department of State
Transaction Date: 04/23/2021 7:58 AM AST
Filing Number: 20210005228
Lapse Date: 04/23/2026 7:58 AM AST
Filed Electronically

Government of Puerto Rico

## UCC1 – UCC Financing Statement

**DEBTOR'S NAME**
Name: LAS MARTAS, INC.
Address: Hc 05 Box 91635, Arecibo, PR, 00612,United States

**ADDITIONAL DEBTOR'S NAME**
Name: BARRETO GINORIO, JUAN MANUEL
Address: Hc 05 Box 91635, Arecibo, PR, 00612,United States

**ADDITIONAL DEBTOR'S NAME**
Name: HERNANDEZ RUIZ, MARIA ELENA
Address: Hc 05 Box 91635, Arecibo, PR, 00612,United States

**SECURED PARTY'S NAME**
Name: CONDADO 5 LLC
Address: Po Box 190085, San Juan, PR, 00919,United States
Email: gdehoyos@ciacpr.com

**COLLATERAL**
Collateral Description     REFER TO ATTACHMENT.

**Filer Information**
Name: Yanmarie Rotger
Address: United States, Po Box 195168, San Juan, Puerto Rico, 00919
Email: yrotger@ferraiuoli.com



ESTADO LIBRE ASOCIADO DE
# PUERTO RICO
DEPARTAMENTO DE ESTADO
Registro de Transacciones Comerciales

## DECLARACIÓN DE FINANCIAMIENTO / *FINANCING STATEMENT*
SIGA INSTRUCCIONES / FOLLOW INSTRUCTIONS

A. NOMBRE Y NÚMERO DE CONTACTO (opcional) / *NAME & PHONE OF CONTACT AT FILER (optional)*
Josean Diaz Brugueras, Esq.   (787) 766-7000

B. CORREO ELECTRÓNICO DE CONTACTO (opcional) / *E-MAIL CONTACT AT FILER (optional)*
jdiaz@ferraiuoli.com

C. ENVIAR CONFIRMACIÓN A (Nombre y Dirección): / *SEND ACKNOWLEDGMENT TO: (Name and Address)*

Att: Josean Díaz Brugueras, Esq.
Ferraiuoli LLC
221 Plaza, Fifth Floor
221 Ponce de León Avenue
San Juan, Puerto Rico 00917

EL ESPACIO ARRIBA ES PARA USO DEL OFICIAL DE REGISTRO
THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. NOMBRE DEL DEUDOR / *DEBTOR'S NAME*: Provea sólo un nombre de Deudor (1a o 1b) (use el nombre completo y exacto, no omita, modifique o abrevie ningún componente del nombre): si algún aparte del nombre del Deudor no cabe en la línea 1b, déjela en blanco, marque aquí ☐ y provea la información del Deudor individual en el renglón 10 del Anejo a la Declaración de Financiamiento (Forma UCC1AdPR) / *Provide only one Debtor name (1a or 1b) (use exact, full name: do not omit, modify, or abbreviate any part of the Debtor's name): if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1AdPR)*

1a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME*
**LAS MARTAS, INC.**

| 1b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | SUFIJO / *SUFFIX* |
|---|---|---|---|
| 1c. DIRECCIÓN POSTAL / *MAILING ADDRESS* **HC 05 BOX 91635** | CIUDAD / *CITY* **Arecibo** | ESTADO / *STATE* **PR** / CÓDIGO POSTAL / *POSTAL CODE* **00612** | PAÍS / *COUNTRY* **USA** |

NOMBRE DEL DEUDOR/ *DEBTOR'S NAME*: Provea sólo un Deudor adicional (2a o 2b) (Use el nombre completo y exacto: no omita, modifique o abrevie ninguna parte del nombre). Si cualquier parte de un nombre no cupiera en el espacio provisto en la 2b, deje toda la sección 2 en blanco, marque aquí ☐ y provea el nombre completo en el renglón 10 en el Anejo de la Declaración de Financiamiento (Forma UCC1AdPR) / *Provide only one Debtor name (2a or 2b) (use exact, full name: do not omit, modify, or abbreviate any part of the Debtor's name): if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1AdPR)*

2a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME*

OR

| 2b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | SUFIJO / *SUFFIX* |
|---|---|---|---|
| 1c. DIRECCIÓN POSTAL / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO / *STATE* / CÓDIGO POSTAL / *POSTAL CODE* | PAÍS / *COUNTRY* |

3. NOMBRE DEL ACREEDOR GARANTIZADO (o NOMBRE DE CESIONARIO): Provea solo un nombre de Acreedor Garantizado (3a o 3b)
*SECURED PARTY'S NAME (or NAME OF ASSIGNEE): Provide only one Secured Party name (3a or 3b)*

3a. NOMBRE DE LA ENTIDAD / ORGANIZATION'S NAME
**CONDADO 5 LLC**

OR

| 3b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | SUFIJO / *SUFFIX* |
|---|---|---|---|
| 3c. DIRECCIÓN POSTAL / *MAILING ADDRESS* **PO BOX 190085** | CIUDAD / *CITY* **San Juan** | ESTADO / *STATE* **PR** / CÓDIGO POSTAL / *POSTAL CODE* **00919** | PAÍS / *COUNTRY* **USA** |

4. COLATERAL: Esta declaración de financiamiento cubre la siguiente colateral: / *COLLATERAL: This financing statement covers the following collateral:*

Ver <u>Exhibit A</u> que se acompaña y hace formar parte de esta Declaración de Financiamiento.

| 5. Marque solo si aplica y solo una opción: Colateral está ☐ en posesión de un Fideicomiso (véase UCC1AdPR, renglón 7 e instrucciones) ☐ administrado por Representante de un difunto | Check *only* if applicable and check *only* one box: Collateral is ☐ held in a Trust (See UCC1AdPR, Item 17 and instructions) ☐ being administered by a Decedent's Personal Representative |
|---|---|

| 6a. Marque solo si aplica y una sola alternativa / *Check only if applicable and check only one box:* | 6b. Marque solo si aplica y solo una alternativa / *Check only if applicable and check only one box:* |
|---|---|
| ☐Transacción de Financiamiento Público / *Public-Finance Transaction*   ☐Transacción de Casa Prefabricada / *Manufactured-Home Transaction*   ☐Un Deudor es una entidad transmisora / *A Debtor is a Transmitting Utility* | ☐Gravamen Agrícola / *Agricultural Lien*   ☐Inscripción extrarregistral Non - UCC Filing |

| 7.☐DESIGNACIÓN ALTERNA (si aplica) *ALTERNATIVE DESIGNATION (if applicable):* | ☐Arrendador/Arrendatario *Lessee/Lessor* | ☐Consignatario/ Consignador *Consignee/Consignor* | ☐Vendedor/ Comprador *Seller/Buyer* | ☐Depositario/ Fiador *Bailee/Bailor* | ☐Concesionario/Co ncedente *Licensee/Licensor* |
|---|---|---|---|---|---|

8. DATOS OPCIONALES DE REFERENCIA PARA EL SOLICITANTE / *OPTIONAL FILER REFERENCE DATA:*

**COPIA OFICINA DE REGISTRO—**DECLARACIÓN DE FINANCIAMIENTO (Forma UCC1PR) (Rev. 05/09/14)

ESTADO LIBRE ASOCIADO DE
**PUERTO RICO**
DEPARTAMENTO DE ESTADO

Registro de Transacciones Comerciales

**DECLARACIÓN DE FINANCIAMIENTO PARTE ADICIONAL**
*FINANCING STATEMENT ADDITIONAL PARTY*

SIGA INSTRUCCIONES / *FOLLOW INSTRUCTIONS*

18. NOMBRE DE PRIMER DEUDOR: Igual a línea 1a o 1b en la Declaración de Financiamiento si línea 1b fue dejada en blanco porque el espacio provisto no era suficiente, marque aquí ☐
*NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here* ☐

| | |
|---|---|
| 18a. NOMBRE DE ENTIDAD / *ORGANIZATION'S NAME* | |
| **LAS MARTAS, INC.** | |
| OR | 18b. APELLIDO / *INDIVIDUAL'S SURNAME* |
| | NOMBRE / *FIRST PERSONAL NAME* |
| | SEGUNDO NOMBRE / *ADDITIONAL NAME*    SUFIJO / *SUFFIX* |

ESPACIO ARRIBA PARA USO OFICIAL DE REGISTRO
*THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY*

19. DEUDOR ADICIONAL: Provea sólo un nombre de Deudor (19a o 19b) (use nombre exacto y completo; no omita, modifique o abrevie ninguna parte del nombre del Deudor)
*ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)*

19a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME*

| OR | 19b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | SUFIJO / *SUFFIX* |
|---|---|---|---|---|
| | **BARRETO GINORIO** | **JUAN** | **MANUEL** | |
| | 19c. DIRECCIÓN POSTAL / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO / *STATE*   CÓDIGO POSTAL / *POSTAL CODE*   PAÍS / *COUNTRY* | |
| | **HC 05 BOX 91635** | **Arecibo** | **PR**   **00612**   **USA** | |

20. DEUDOR ADICIONAL: Provea sólo un nombre de Deudor (20a o 20b) (use nombre exacto y completo; no omita, modifique o abrevie ninguna parte del nombre del Deudor)
*ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)*

20a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME*

| OR | 20b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | SUFIJO / *SUFFIX* |
|---|---|---|---|---|
| | **HERNÁNDEZ RUIZ** | **MARÍA** | **ELENA** | |
| | 20c. DIRECCIÓN POSTAL / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO / *STATE*   CÓDIGO POSTAL / *POSTAL CODE*   PAÍS / *COUNTRY* | |
| | **HC 05 BOX 91635** | **Arecibo** | **PR**   **00612**   **USA** | |

21. DEUDOR ADICIONAL: Provea sólo un nombre de Deudor (21a o 21b) (use nombre exacto y completo; no omita, modifique o abrevie ninguna parte del nombre del Deudor)
*ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)*

21a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME*

| OR | 21b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | SUFIJO / *SUFFIX* |
|---|---|---|---|---|
| | | | | |
| | 21c. DIRECCIÓN POSTAL / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO / *STATE*   CÓDIGO POSTAL / *POSTAL CODE*   PAÍS / *COUNTRY* | |

22. ☐ ACREEDOR GARANTIZADO ADICIONAL o   ☐ ACREEDOR GARANTIZADO CEDENTE: Provea sólo un nombre (22a or 22b)
*ADDITIONAL SECURED PARTY'S NAME or   ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)*

22a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME*

| OR | 22b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | SUFIJO / *SUFFIX* |
|---|---|---|---|---|
| | | | | |
| | 22c. DIRECCIÓN POSTAL / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO / *STATE*   CÓDIGO POSTAL / *POSTAL CODE*   PAÍS / *COUNTRY* | |

23. ☐ ACREEDOR GARANTIZADO ADICIONAL o   ☐ ACREEDOR GARANTIZADO CEDENTE: Provea sólo un nombre (23a o 23b)
*ADDITIONAL SECURED PARTY'S NAME or   ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a o 23b)*

23a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME*

| 23b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | SUFIJO / *SUFFIX* |
|---|---|---|---|
| | | | |
| 23c. DIRECCIÓN POSTAL / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO / *STATE*   CÓDIGO POSTAL / *POSTAL CODE*   PAÍS / *COUNTRY* | |

24. MISCELÁNEO / *MISCELLANEOUS:*

## EXHIBIT A DE LA DECLARACION DE FINANCIAMIENTO

| DEUDORES: | ACREEDOR GARANTIZADO: |
|---|---|
| LAS MARTAS, INC.<br>HC 05 Box 91635<br>Arecibo, Puerto Rico 00612<br><br>JUAN MANUEL BARRETO GINORIO<br>MARÍA ELENA HERNÁNDEZ RUIZ<br>HC 05 Box 91635<br>Arecibo, Puerto Rico 00612 | CONDADO 5 LLC<br>PO Box 190085<br>San Juan, Puerto Rico 00919 |

Conforme a cierto Acuerdo de Gravamen Mobiliario con fecha de 12 de enero de 2005 (el "Acuerdo de Gravamen") constituido por Las Martas, Inc. Juan Manuel Barreto Ginorio y María Elena Hernández Ruiz (en conjunto, los "Deudores") y Banco Popular de Puerto Rico ("BPPR"), predecesor en interés de Condado 5 LLC (el "Acreedor Garantizado"), los Deudores le otorgaron a BPPR, como predecesor en interés del Acreedor Garantizado, un gravamen mobiliario e interés asegurado en primer rango en y sobre todo derecho, título e interés, presente y futuro, de los Deudores en:

(i)     Ciertos pagarés hipotecarios (en lo sucesivo, en conjunto, los "Pagarés Hipotecarios"), los cuales están garantizados por las hipotecas (en lo sucesivo, en conjunto, las "Hipotecas"), ambos descritos en el **Anejo I** que se acompaña y se hace formar parte de esta Declaración de Financiamiento, sobre la propiedad inmueble de Juan Manuel Barreto Ginorio y María Elena Hernández Ruiz descrita en el **Anejo II** que se acompaña y se hace formar parte de esta Declaración de Financiamiento (en lo sucesivo, la "Propiedad Hipotecada"), junto a todas sus extensiones, ampliaciones, modificaciones, renovaciones, accesiones, substituciones y reemplazos, y todas las adiciones y accesorios de cualquiera de las anteriores, y todo producto de cualquiera de las anteriores, incluyendo, sin limitación, todo efectivo, instrumento u otra propiedad de cualquier tipo que de tiempo en tiempo fuese recibida, este al cobro o de otra forma fuese distribuida en relación a o en cambio de los Pagarés Hipotecarios y todo producto derivados de la ejecución de los mismos, de las Hipotecas u otra garantía.

Todos los términos en mayúscula utilizados en este documento que no están de otra manera definidos en el mismo tienen el significado dispuesto en el Acuerdo de Gravamen.

Anejo I

## HIPOTECAS Y PAGARÉS HIPOTECARIOS

1. Pagaré Hipotecario otorgado por Juan Manuel Barreto Ginorio y María Elena Hernández Ruiz a favor del portador el 13 de mayo de 1994 en la suma principal de $250,000.00, asegurado por cierta hipoteca por la misma suma constituida mediante la Escritura Número 89 de Hipoteca otorgada en esa misma fecha ante el Notario Público Francisco J. Arraiza Donate, según enmendada por cierta Escritura Número 62 otorgada el 10 de octubre de 1995 ante el Notario Público William A. Power y por cierta Escritura Número 2 otorgada el 12 de enero de 2005 ante el Notario Público Francisco J. Arraiza Donate. Dicha hipoteca grava la finca número 2,333 inscrita al folio 255 del tomo 289 de Hatillo, Registro de la Propiedad de Puerto Rico, Sección Segunda de Arecibo, inscripción 14ta.

2. Pagaré Hipotecario otorgado por Juan Manuel Barreto Ginorio y María Elena Hernández Ruiz a favor de Banco Central Hispano – Puerto Rico el 10 de octubre de 1995 en la suma principal de $174,400.00, asegurado por cierta hipoteca por la misma suma constituida mediante la Escritura Número 63 de Hipoteca otorgada en esa misma fecha ante el Notario Público William A. Power, según enmendada por cierta Escritura Número 3 otorgada el 12 de enero de 2005 ante el Notario Público Francisco J. Arraiza Donate. Dicha hipoteca grava la finca número 2,333 inscrita al folio 255 vuelto del tomo 289 de Hatillo, Registro de la Propiedad de Puerto Rico, Sección Segunda de Arecibo, inscripción 15ta.

3. Pagaré Hipotecario otorgado por Juan Manuel Barreto Ginorio y María Elena Hernández Ruiz a favor de Banco Popular de Puerto Rico el 6 de marzo de 1998 en la suma principal de $125,600.00, asegurado por cierta hipoteca por la misma suma constituida mediante la Escritura Número 31 de Hipoteca otorgada en esa misma fecha ante el Notario Público Francisco J. Arraiza Donate, según enmendada por cierta Escritura Número 4 otorgada el 12 de enero de 2005 ante el Notario Público Francisco J. Arraiza Donate. Dicha hipoteca grava la finca número 2,333 inscrita al folio 257 del tomo 289 de Hatillo, Registro de la Propiedad de Puerto Rico, Sección Segunda de Arecibo, inscripción 17ma.

4. Pagaré Hipotecario otorgado por Juan Manuel Barreto Ginorio y María Elena Hernández Ruiz a favor de Banco Popular de Puerto Rico el 11 de abril de 2002 en la suma principal de $165,000.00, asegurado por cierta hipoteca por la misma suma constituida mediante la Escritura Número 59 de Hipoteca otorgada en esa misma fecha ante el Notario Público Francisco J. Arraiza Donate. Dicha hipoteca grava la finca número 2,333 inscrita al folio 257 del tomo 289 de Hatillo, Registro de la Propiedad de Puerto Rico, Sección Segunda de Arecibo, inscripción 19na.

5. Pagaré Hipotecario otorgado por Juan Manuel Barreto Ginorio y María Elena Hernández Ruiz a favor de Banco Popular de Puerto Rico el 11 de marzo de 2003 en la suma principal de $180,500.00, asegurado por cierta hipoteca por la misma suma constituida mediante la Escritura Número 23 de Hipoteca otorgada en esa misma fecha ante el Notario Público Francisco J. Arraiza Donate. Dicha hipoteca grava la finca número 2,333 inscrita al folio 258 del tomo 289 de Hatillo, Registro de la Propiedad de Puerto Rico, Sección Segunda de Arecibo, inscripción 20ma.

**Anejo II**

## PROPIEDAD HIPOTECADA

1. Finca número 2,333 inscrita en el Registro de la Propiedad de Puerto Rico, Sección Segunda Arecibo, a los folio 21, 105, 256 de los tomos 45, 62 y 289 de Hatillo.

# RECIBO DE PRESENTACIÓN

| | |
|---|---|
| **Arsenio Ramos Hernández** | **Departamento de Justicia** |
| **José A. Maymó Azize** | **Registro de la Propiedad** |
| Registrador | **Arecibo: Sección II** |
| Teléfono: 787-879-3818 | |

| | |
|---|---|
| **Modo de Presentación:** Telemática | **Fecha y Hora de Presentación:** 2 de junio de 2021, 3:04PM |

| Asiento | Sección |
|---|---|
| **2021-066955-AR02** | **Arecibo: Sección II** |

| Documento Presentado: | | Datos del Presentante: | |
|---|---|---|---|
| Naturaleza: | Judicial | Nombre: | LUIS G PARRILLA HERNANDEZ |
| Tipo de Documento: | Demanda | Teléfono: | 787-766-7000 |
| Agencia: | Tribunal de Primera Instancia, Sala de Bayamón | Correo Electrónico: | lparrilla@ferraiuoli.com |
| Acción: | Cobro de Dinero y Ejecución de Hipoteca | Dirección: | |
| Demandado: | Las Martas, Inc.; Juan Manuel Barreto Ginorio, María Elena Hernández Ruiz y la Sociedad Legal de Gananciales Compuesta | PO BOX 195168   SAN JUAN  PUERTO RICO 00919 5168 | |
| Demandante: | Condado 5 LLC | Observaciones: | |
| Ex Parte: | --- | --- | |
| Caso: | AR2021CV00693 | | |
| Email | lparrilla@ferraiuoli.com, notificaciones@ferraiuoli.com | | |

## TRANSACCIONES

| Transacción | Valor | A Favor De | Datos de Finca |
|---|---|---|---|
| Anotación de Demanda | $1,215,536.60 | CONDADO 5, LLC | Finca: 2333, Demarcación: Hatillo, Número Catastro: , Localización: NARANJITO, Solar: - |

## ARANCELES

**Exento:** NO

| Concepto | No. Serie | Fecha | Cantidad |
|---|---|---|---|
| Comprobante de Inscripción | 80533-2021-0602-80238015 | 6/2/2021 | $4.00 |
| Comprobante de Inscripción | 80533-2021-0602-80238044 | 6/2/2021 | $4.00 |
| Comprobante de Presentación | 80533-2021-0602-80238002 | 6/2/2021 | $15.00 |
| Código Político | 80533-2021-0602-80238028 | 6/2/2021 | $0.50 |
| Comprobante de Presentación | 80533-2021-0602-80238031 | 6/2/2021 | $15.00 |
| Código Político | 80533-2021-0602-80238053 | 6/2/2021 | $0.50 |

Case 22-33553-SLM Doc 1211 Filed 07/02/25 Entered 07/02/25 17:01:01 Desc: Exhibit XLI - Proof of Certificates filed by Condado Page 194 of 202

| Cargo Telemático | | 80533-2021-8603<br>80238066 | | | | $10.00 |

| **DOCUMENTOS COMPLEMENTARIOS** | |
|---|---|
| **Tipo de Documento** | **Descripción** |
| No hay documentos complementarios | |
| **PLANOS** | |
| **Numero de Caso** | **Numero de Plano** |

# RECIBO DE PRESENTACIÓN

| | |
|---|---|
| **Frank Quiñones Vigo**<br>Registrador<br>Teléfono: 787-878-3525 | **Departamento de Justicia**<br>**Registro de la Propiedad**<br>**Arecibo: Sección I** |

| | |
|---|---|
| **Modo de Presentación:** Telemática | **Fecha y Hora de Presentación:** 2 de junio de 2021, 3:04PM |

| Asiento | Sección |
|---|---|
| **2021-066956-AR01** | **Arecibo: Sección I** |

| Documento Presentado: | | Datos del Presentante: | |
|---|---|---|---|
| Naturaleza: | Judicial | Nombre: | LUIS G PARRILLA HERNANDEZ |
| Tipo de Documento: | Demanda | Teléfono: | 787-766-7000 |
| Agencia: | Tribunal de Primera Instancia, Sala de Bayamón | Correo Electrónico: | lparrilla@ferraiuoli.com |
| Acción: | Cobro de Dinero y Ejecución de Hipoteca | Dirección: | |
| Demandado: | Las Martas, Inc.; Juan Manuel Barreto Ginorio, María Elena Hernández Ruiz y la Sociedad Legal de Gananciales Compuesta | PO BOX 195168   SAN JUAN  PUERTO RICO 00919 5168 | |
| Demandante: | Condado 5 LLC | Observaciones: | |
| Ex Parte: | --- | --- | |
| Caso: | AR2021CV00693 | | |
| Email | lparrilla@ferraiuoli.com, notificaciones@ferraiuoli.com | | |

## TRANSACCIONES

| Transacción | Valor | A Favor De | Datos de Finca |
|---|---|---|---|
| Anotación de Demanda | $1,215,536.60 | CONDADO 5, LLC | Finca: 47349, Demarcación: Arecibo, Número Catastro: , Localización: HATO ABAJO, Solar: - |

## ARANCELES

**Exento:** NO

| Concepto | No. Serie | Fecha | Cantidad |
|---|---|---|---|
| Comprobante de Inscripción | 80533-2021-0602-80238015 | 6/2/2021 | $4.00 |
| Comprobante de Inscripción | 80533-2021-0602-80238044 | 6/2/2021 | $4.00 |
| Comprobante de Presentación | 80533-2021-0602-80238002 | 6/2/2021 | $15.00 |
| Código Político | 80533-2021-0602-80238028 | 6/2/2021 | $0.50 |
| Comprobante de Presentación | 80533-2021-0602-80238031 | 6/2/2021 | $15.00 |
| Código Político | 80533-2021-0602-80238053 | 6/2/2021 | $0.50 |

Case 22-32850-KRH Doc 1141 Filed 07/02/25 Entered 07/02/25 13:04:01 Desc Exhibit XLI - Proof of Claim 5251 - Image by Condado Page 196 of 202

| Cargo Telemático | | | | | | $10.00 |
|---|---|---|---|---|---|---|

80533 2021-0603
80238066

| **DOCUMENTOS COMPLEMENTARIOS** | |
|---|---|
| **Tipo de Documento** | **Descripción** |
| No hay documentos complementarios | |

| **PLANOS** | |
|---|---|
| **Numero de Caso** | **Numero de Plano** |

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**DEPARTAMENTO DE JUSTICIA**
**REGISTRO INMOBILIARIO DIGITAL DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO**

**Arecibo: Sección II**
**José A. Maymó Azize**
**Registrador de la Propiedad**
jose.maymo@justicia.pr.gov

---

### CERTIFICACIÓN DE PROPIEDAD INMUEBLE

**TURNO DE CERTIFICACIÓN: 2021-011427-CERT**

---

A solicitud de LUIS G PARRILLA HERNANDEZ se expide la presente sobre las constancias del Registro Inmobiliario Digital de Puerto Rico, y yo José A. Maymó Azize, Registrador **CERTIFICO** la siguiente información de la finca que se relaciona:

**Finca número: 2333**

**Demarcación: Hatillo**

---

### Descripción de la Finca

---

Número de Catastro: ---. Rústica: BARRIO  NARANJITO de Hatillo. Solar: Cabida: 108,023.5 Metros Cuadrados. Linderos: Norte, con Luis F. Peraza, Gregorio Toledo y servidumbre de paso existente. Sur, con Gregorio Toledo. Este, con Iván Amador y Sucesión de Iván Amador. Oeste, con Gregorio Toledo.  En su origen, se formó por la agrupación de las fincas 1899, 1812 y 1700 de Hatillo. Rectificada según surge de la inscripción 16ta. al folio 256 vuelto del tomo 289 de Hatillo.

### Titulares

---

Su dominio consta inscrito a favor de los esposos Juan Manuel Barreto Ginorio y María Elena Hernández Ruíz, quienes adquieren por compra a las Sucesiones Toledo Barreto, Toledo Delgado y Toledo Toledo, por el precio de $329,760.00, según escritura 88, otorgada en Hatillo, Puerto Rico, el 13 de mayo de 1994, ante el notario Francisco J. Arraiza Donate, inscrito al folio 107 vuelto del tomo 62 de Quebradillas, inscripción 13ra.

**Hipoteca**: en garantía de Pagaré a favor del Portador, o a su orden, por la suma principal de $250,000.00, con intereses a una tasa equivalente a uno por ciento sobre la tasa de interés preferencial (prime rate) fluctuante, prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York para préstamos comerciales a corto plazo (New York Prime Rate), desde la fecha de su emisión hasta la fecha de su presentación, garantizándose, además, una suma equivalente al 10% del principal para cubrir costas, gastos y honorarios de abogados, en caso de reclamación judicial, es decir la suma de $25,000.00. Tasándose en la suma de $250,000.00. Según escritura 89, otorgada en Hatillo, Puerto Rico, el 13 de mayo de 1994, ante el notario Francisco J. Arraiza Donate, inscrito al folio 255 del tomo 289 de Hatillo, según inscripción 14ta.

**Hipoteca**: en garantía de Pagaré a favor de Banco Central Hispano - Puerto Rico, o a su orden, por la suma principal de $174,400.00, con intereses a razón del 10 1/8% anual, vencedero a la presentación, bajo affidavit 8,368, más un crédito de $17,440.00 para costas, gastos y honorarios de abogado, en caso de reclamación judicial. Tasada en una suma igual al principal del Pagaré. Según escritura 63, otorgada en Manatí, Puerto Rico, el 10 de octubre de 1995, ante el notario William A. Power, inscrita al folio 255 vuelto del tomo 289 de Hatillo, inscripción 15ta.

**Modificación de Hipoteca por Inscripción**: de la hipoteca de la inscripción 14ta., a los efectos de disponer que a partir de la fecha de la escritura, el Pagaré generará intereses al tipo anual fluctuante equivalente a la tasa preferencial (Prime Rate) vigente de tiempo en tiempo en sus oficinas principales en el Citibank, N. A. en Nueva York. Además. incluye dos créditos hipotecarios adicionales, el primero equivalente al monto de cinco años de intereses al nuevo tipo pactado y el segundo equivalente a 10% de la suma principal del Pagaré para cubrir aquellos adelantos que pueda hacer el tenedor del mismo y que quedarán garantizados por la hipoteca. Según escritura 62, otorgada en Manatí, Puerto Rico, el 10 de octubre de 1995, ante el notario William A. Power, inscrita al folio 255 vuelto del tomo 289 de Hatillo, inscripción 15ta

**Hipoteca**: en garantía de Pagaré a favor de Banco Popular de Puerto Rico, o a su orden, por la suma principal de $125,600.00, más intereses fluctuantes (prime rate) prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York, vencedero a presentación, bajo affidávit 21,060. Se garantiza un crédito adicional de 10% para costas, gastos y honorarios de abogados, en caso de ejecución o reclamación judicial. Tasándose en $125,600.00, según escritura 31, otorgada en Hatillo, Puerto Rico, el 6 de marzo de 1998, ante el notario Francisco J. Arraiza Donate, inscrita al folio 257 del tomo 289 de Hatillo, inscripción 17ma.

**Hipoteca**: en garantía de Pagaré a favor de Banco Popular de Puerto Rico, o a su orden, por la suma principal de $165,000.00, más a la tasa de interés preferencial fluctuante (prime rate) prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York (New York Prime Rate), vencedero a presentación, bajo affidávit 21,004. Se garantiza un crédito adicional de $16,500.00 para costas, gastos y honorarios de abogados. Tasándose en $165,000.00, según escritura 59, otorgada en Hatillo, Puerto Rico, el 11 de abril de 2002, ante el notario Francisco J. Arraiza Donate, inscrita al folio 257 vuelto del tomo 289 de Hatillo, inscripción 19na.

**Hipoteca**: en garantía de Pagaré a favor de Banco Popular de Puerto Rico, o a su orden, por la suma principal de $180,500.00, más a la tasa de interés preferencial fluctuante (prime rate) prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York (New York Prime Rate), vencedero a presentación, bajo affidávit 26,850. Se garantiza un crédito adicional de $18,050.00 para costas, gastos y honorarios de abogados. Tasándose en $180,500.00, según escritura 23, otorgada en Hatillo, Puerto Rico, el 11 de marzo de 2003, ante el notario Francisco J. Arraiza Donate, inscrita al folio 258 del tomo 289 de Hatillo, inscripción 20va.

**Interrupción de Periodo Prescriptivo**: de la hipoteca a favor del Portador por la suma principal de $250,000.00, a los únicos efectos de que comiencen nuevamente los 20 años a partir de la fecha de otorgamiento de la escritura, según escritura 2, otorgada en Hatillo, Puerto Rico, el 12 de enero de 2005, ante el notario Francisco J. Arraiza Donate, inscrito en virtud de la Ley 216-2010 al folio 79 del tomo 451 de Hatillo, inscripción 21va.

**Interrupción de Periodo Prescriptivo**: de la hipoteca a favor del Banco Central Hispano de Puerto Rico, por la suma principal de $174,400.00, a los únicos efectos de que comiencen nuevamente los 20 años a partir de la fecha de otorgamiento de la escritura, según escritura 3, otorgada en Hatillo, Puerto Rico el 12 de enero de 2005, ante el notario Francisco J. Arraiza Donate, inscrito en virtud de la Ley 216-2010 al folio 80 del tomo 451 de Hatillo, inscripción 22da.

**Interrupción de Periodo Prescriptivo**: de la hipoteca a favor del Banco Popular de Puerto Rico, por la suma principal de $125,600.00, a los únicos efectos de que comiencen nuevamente los 20 años a partir de la fecha de otorgamiento de la escritura, según escritura 2, otorgada en Hatillo, Puerto Rico, el 12 de enero de 2005, ante el notario Francisco J. Arraiza Donate, inscrito en virtud de la Ley 216-2010 al folio 81 del tomo 451 de Hatillo, inscripción 23ra.

**Documentos Pendientes de Despacho**

| Asiento | Transacciones | Documento |
|---|---|---|
| 2021-066955-AR02 | Anotación de Demanda | según presentada el 28 de mayo de 2021, ante el Tribunal de Primera Instancia, Sala de Arecibo, caso civil AR2021CV00693, sobre Cobro de Dinero y Ejecución de Hipoteca, seguido por Condado 5, LLC vs. Las Martas, Inc., Juan Manuel Barreto Ginorio, también conocido como Juan M. Barreto Ginorio, María Elena Hernández Ruíz, también conocida como María E. Hernández Ruíz, y la Sociedad Legal de Bienes Gananciales compuesta entre ellos, y los Estados Unidos de América, en la cual se alega que los demandados adeudan a Condado 5, LLC., en virtud del Préstamo I, la suma de $1,215,536.00, la cual se compone $1,202,818.82 por concepto de principal, más $12,744.78 por concepto de intereses acumulados y no pagados, los cuales continúan acumulándose a razón de $142.00 diario, y en virtud del Préstamo II, una suma no menor de $385,317.74, la cual se compone de $267,728.59 por concepto de principal, más $117,589.12 por concepto de intereses acumulados y no pagados, los cuales continúan acumulándose a razón de $31.61 diarios. Se solicita el pago de dichas sumas de dinero o la venta la propiedad en pública subasta para satisfacer dicho pago. |

Aparece(n) anotado(s) en los libros Especiales los siguientes:

Embargo Federal: A favor de Internal Revenue Services (IRS), presentado al asiento 2017-009318-FED, el 7 de diciembre de 2017, por la suma de $13,915.74, siendo el deudor Juan M Barreto Ginorio.

Embargo Federal: A favor de Internal Revenue Services (IRS), presentado al asiento 2019-009728-FED, el 3 de octubre de 2019, por la suma de $3,003.39, siendo el deudor Juan M Barreto Ginorio.

Embargo Federal: A favor de Internal Revenue Services (IRS), presentado al asiento 2019-009732-FED, el 4 de octubre de 2019, por la suma de $9,307.39, siendo el deudor Juan M Barreto Ginorio.

Embargo Federal: A favor de Internal Revenue Services (IRS), presentado al asiento 2019-011487-FED, el 11 de diciembre de 2019, por la suma de $1,402.46, siendo el deudor Juan M Barreto Ginorio.

Observaciones: Que del Registro de Embargos Estatales, Registro de Sentencias y del Registro Embargos del Centro de Recaudación de Ingresos Municipales no aparece anotación alguna que afecte el título de dicha finca.

Despachado: el 6 de julio de 2021, 9:42AM.

Expedido la presente, hoy 14 de julio de 2021, 6:44PM.
Derechos: $15.00, Número de comprobante: 80533-2021-0602-80337005

**Firmado electrónicamente por el registrador José A. Maymó Azize el 14 de julio de 2021, 6:44PM**

**Codigo de Validación:** b013cfe8-269d-457e-8212-7ad6d7d870f3



**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**DEPARTAMENTO DE JUSTICIA**
**REGISTRO INMOBILIARIO DIGITAL DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO**

**Arecibo: Sección I**
**Frank Quiñones Vigo**
**Registrador de la Propiedad**
fquinones@justicia.pr.gov

---

### CERTIFICACIÓN DE PROPIEDAD INMUEBLE
**TURNO DE CERTIFICACIÓN: 2021-011434-CERT**

---

A solicitud de LUIS G PARRILLA HERNANDEZ se expide la presente sobre las constancias del Registro Inmobiliario Digital de Puerto Rico, y yo Frank Quiñones Vigo, Registrador **CERTIFICO** la siguiente información de la finca que se relaciona:

**Finca número: 47349**

**Demarcación: Arecibo**

---

#### Descripción de la Finca

---

Número de Catastro: ---. Rústica: BARRIO  HATO ABAJO de Arecibo. Solar: Cabida: 1,427.702 Metros Cuadrados. Linderos: Norte, con solar #19 agregado al solar #20 propiedad de Alejandro Rivera de León. Sur, con solar #17 propiedad de Dr. William Pérez Cruz. Este, con calle de uso público, hoy calle municipal que conduce a la carretera estatal PR-653. Oeste, con Esteban Mena.  Esta finca se forma por AGREGACIÓN de un solar con cabida de 475.821 metros cuadrados, segregado de la finca #15,930.

#### Titulares

---

INSCRITA a favor de JUAN MANUEL BARRETO GINORIO, mayor de edad, casado con Elena Hernández Ruíz, propietario y vecino de Arecibo, quien adquiere con CARÁCTER PRIVATIVO, por el título de donación, con un valor de $57,112.86. Así resulta de la escritura #51, otorgada en Arecibo el 19 de marzo de 2002, ante el notario Francisco J. Arraiza Donate, que motivó la Inscripción 1ª de la finca #47349, al folio 70 del Tomo 1240 de Arecibo.

INSCRITO el solar agregado a esta finca con cabida de 475.821 metros cuadrados, a favor de JUAN MANUEL BARRETO GINORIO, mayor de edad, soltero, agricultor y vecino de Arecibo, quien adquiere con CARÁCTER PRIVATIVO, por el título de donación, con un valor de $28,549.26. Así resulta de la escritura #113, otorgada en Arecibo el 1º de septiembre de 2006, ante el notario Francisco J. Arraiza Donate, que motivó la Inscripción 5ª de la finca #47349, al folio 71 del Tomo 1240 de Arecibo.

Case 3:23-cv-01831-SCC-HRV Document 41-1 Filed 07/08/25 Page 201 of 202
Case 3:23-cv-01831-SCC-HRV Document 41-1 Filed 07/08/25 Entered 07/08/25 15:37:00 Desc:
Exhibit XLI - Proof of Claim Number 1 Page 9 of 10 Page 201 of 202

**Servidumbre:** Afecta por su procedencia a tres (3) servidumbres a favor de la Autoridad de Energía Eléctrica de Puerto Rico.

**Hipoteca:** En garantía de pagaré suscrito bajo afidávit #29,764 a favor de BANCO POPULAR DE PUERTO RICO, o a su orden. PRINCIPAL: $150,000.00. INTERESES: en su pago total y solvente a una tasa equivalente a medio por ciento (1/2%) sobre la tasa de interés preferencial (prime rate) fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York para préstamos comerciales. VENCIMIENTO: a la presentación. CRÉDITOS ADICIONALES: se le asigna la suma de un 10% o sea $15,000.00 del principal para costas, gastos y honorarios de abogado. TASACIÓN: $150,000.00. CONDICIONES: Cláusula de Aceleración. Así resulta de la escritura #100, otorgada en Hatillo el 21 de julio de 2006, ante el notario Francisco J. Arraiza Donate, que motivó la Inscripción 3ª de la finca #47349, al folio 71 del Tomo 1240 de Arecibo.

**Condiciones Restrictivas:** La parte compradora deberá cumplir con las siguientes condiciones: 1- No podrá construirse estructuras de madera para propósitos residenciales. 2- No podrá utilizarse el terreno para instalar furgones para propósitos residenciales y/o almacenaje. 3- Los zafacones para el recogido de basura localizados fuera del área de vivienda deberán ser soterrados. 4- La estructura a edificarse sobre el solar antes mencionado habrá de ser construida en concreto armado y bloques y su costo de construcción no podrá ser menor de $200,000.00 y para uso residencial exclusivamente. 5- Una vez segregados y vendidos más de la mitad de los solares en este proyecto se construirá una corporación sin fines de lucro y se elígirá una Junta de Directores que regirá los destinos del Proyecto. 6- La referida Junta de Directores tendrá facultad para establecer un reglamento que regirá los destinos del proyecto y establecerá una cuota mensual de mantenimiento para áreas verdes y/o cualquier otro propósito comunal, cuya cuota, la cual podrá ser revisada de tiempo en tiempo por la referida Junta de Directores, la parte compradora se compromete a pagar. 7- En la eventualidad de que surja una rotura de las aceras por motivos de construcción de la vivienda sobre el referido solar, será de la responsabilidad de la parte compradora reparar la misma a satisfacción y conforme al diseño del proyecto. 8- La fachada de la estructura a construirse para propósitos residenciales, deberá construirse no menos de siete (7) metros a partir de la colindancia que tiene acceso a la calle principal, disponiéndose, que en aquellos solares que estén localizados en una esquina la fachada de la estructura para propósitos residenciales deberá construirse no menos de siete (7) metros a partir de la colindancia que tiene acceso a la calle principal. Todas las fachadas de las estructuras para propósitos residenciales deberán estar localizadas hacia la colindancia que tiene acceso a la calle principal. La verja a construirse no deberá sobrepasar la fachada la estructura, respetándose los siete (7) metros antes mencionados. Para propósitos de esta cláusula la calle principal será la que da al único acceso hacia la carretera estatal #653. 9- No podrá tenerse en el solar caballos, ni aves de corral. El comprador podrá tener no más de dos mascotas consistentes en perros y/o gatos. 10- El proyecto tendrá un solo acceso de entrada y salida hacia la carretera estatal #653. La parte compradora deberá cumplir con las siguientes condiciones las cuales se mencionan a continuación: 1- No podrá construirse estructuras de madera para propósitos residenciales. 2- No podrá utilizarse el terreno para instalar furgones para propósitos residenciales y/o almacenaje. 3- Los zafacones para el recogido de basura localizados fuera del área de vivienda deberán ser soterrados. 4- La estructura a edificarse sobre el solar antes mencionado habrá de ser construida en concreto armado y bloques y su costo de construcción no podrá ser menor de $200,000.00 y para uso residencial exclusivamente. 5- Una vez segregados y vendidos más de la mitad de los solares en este proyecto se construirá una corporación sin fines de lucro y se elígirá una Junta de Directores que regirá los destinos del Proyecto. 6- La referida Junta de Directores tendrá facultad para establecer un reglamento que regirá los destinos del proyecto y establecerá una cuota mensual de mantenimiento para áreas verdes y/o cualquier otro propósito comunal, cuya cuota, la cual podrá ser revisada de tiempo en tiempo por la referida Junta de Directores, la parte compradora se compromete a pagar. 7- En la eventualidad de que surja una rotura de las aceras por motivos de construcción de la vivienda sobre el referido solar, será de la responsabilidad de la parte compradora reparar la misma a satisfacción y conforme al diseño del proyecto. 8- La fachada de la estructura a construirse para propósitos residenciales, deberá construirse no menos de siete (7) metros a partir de la colindancia que tiene acceso a la calle principal, disponiéndose, que en aquellos solares que estén localizados en una esquina la fachada de la estructura para propósitos residenciales deberá construirse no menos de siete (7) metros a partir de la colindancia que tiene acceso a la calle principal. Todas las fachadas de las estructuras para propósitos residenciales deberán estar localizadas hacia la colindancia que tiene acceso a la calle principal. La verja a construirse no deberá sobrepasar la fachada la estructura, respetándose los siete (7) metros antes mencionados. Para propósitos de esta cláusula la calle principal será la que da al único acceso hacia la carretera estatal #653. 9- No podrá tenerse en el solar caballos, ni aves de corral. El comprador podrá tener no más de dos mascotas consistentes en perros y/o gatos. 10- El proyecto tendrá un solo acceso de entrada y salida hacia la carretera estatal #653. Así resulta de la escritura #113, otorgada en Arecibo el 1º de septiembre de 2006, ante el notario Francisco J. Arraiza Donate, que motivó la Inscripción 5ª de la finca #47349, al folio 71 del Tomo 1240 de Arecibo.

**Hipoteca:** En garantía de pagaré suscrito bajo afidávit #29,811 a favor de BANCO POPULAR DE PUERTO RICO, o a su orden. PRINCIPAL: $50,000.00. INTERESES: en su pago total y solvente a una tasa equivalente a medio por ciento (1/2%) sobre la tasa de interés preferencial (prime rate) fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York para préstamos comerciales a corto plazo. VENCIMIENTO: a la presentación. CRÉDITOS ADICIONALES: un crédito adicional de 10% o sea $5,000.00 del principal para costas, gastos y honorarios de abogado. TASACIÓN: $50,000.00. CONDICIONES: Cláusula de Aceleración. Así resulta de la escritura #114, otorgada en Hatillo el 1º de septiembre de 2006, ante el notario Francisco J. Arraiza Donate, que motivó la Inscripción 6ª de la finca #47349, al folio 71 vto. del Tomo 1240 de Arecibo.

**Hipoteca:** En garantía de pagaré suscrito bajo afidávit #30,708 a favor de BANCO POPULAR DE PUERTO RICO, o a su orden. PRINCIPAL: $175,000.00. INTERESES: en su pago total y solvente a una tasa equivalente a medio por ciento (1/2%) sobre la tasa de interés preferencial (prime rate) prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York para préstamos comerciales a corto plazo (New York Prime Rate). Los cambios en la tsa de interés será efectivos a partir de la fecha de efectividad de cualquier cambio en la tasa preferencial (prime rate) antes indicada. VENCIMIENTO: a la presentación. CRÉDITOS ADICIONALES: se garantizan además $17,500.00 para el pago de costas, gastos y honorarios de abogado en caso de reclamación judicial. TASACIÓN: $175,000.00. CONDICIONES: Cláusula de Aceleración y Sustancias Peligrosas. Así resulta de la escritura #105, otorgada en Hatillo el 8 de octubre de 2007, ante el notario Francisco J. Arraiza Donate, que motivó la Inscripción 7ª de la finca #47349, al folio 72 del Tomo 1240 de Arecibo.

Aparece(n) anotado(s) en los libros Especiales los siguientes:

Embargo Federal: A favor de Internal Revenue Services (IRS) presentado al Asiento 2017-009318-FED el día 7 de diciembre de 2017 por la suma de $13,915.74, siendo el deudor Juan M Barreto Ginorio.

Embargo Federal: A favor de Internal Revenue Services (IRS) presentado al Asiento 2019-009728-FED el día 3 de octubre de 2019 por la suma de $3,003.39, siendo el deudor Juan M Barreto Ginorio.

Embargo Federal: A favor de Internal Revenue Services (IRS) presentado al Asiento 2019-009732-FED el día 4 de octubre de 2019 por la suma de $9,307.39, siendo el deudor Juan M Barreto Ginorio.

Embargo Federal: A favor de Internal Revenue Services (IRS) presentado al Asiento 2019-011487-FED el día 11 de diciembre de 2019 por la suma de $1,402.46, siendo el deudor Juan M Barreto Ginorio.

Embargo Federal: Contra Juan Barreto Ginorio y M Ruíz, por la suma $12,144.71, por concepto de deuda. Notificación número 775845911, anotado el día 20 de abril de 2011, al folio 20, asiento 3, folio 53 del Libro 5 de Embargos Federales.

Observaciones: Que de los libros de embargos a favor del Estado Libre Asociado de Puerto Rico, Centro de Recaudación de Ingresos Municipales y libros de Sentencias, no aparece anotación alguna que afecte el título de dicha finca.

Despachado: el 22 de junio de 2021, 4:08PM.

Expedido la presente, hoy 23 de junio de 2021, 7:41AM.
Derechos: $15.00, Número de comprobante: 80533-2021-0602-80936008

**Firmado electrónicamente por el registrador  Frank Quiñones Vigo el 23 de junio de 2021, 7:41AM**

**Codigo de Validación:** 34257b29-dbf3-46b1-9da1-9904b6d4c423