United States Bankruptcy Court
District of Puerto Rico

| | |
|---|---|
| In re: | Case No. 22-02380-ESL |
| LAS MARTAS INC | Chapter 12 |
| Debtor | |

# CERTIFICATE OF NOTICE

| | | |
|---|---|---|
| District/off: 0104-3 | User: admin | Page 1 of 2 |
| Date Rcvd: Aug 01, 2025 | Form ID: pdf002 | Total Noticed: 1 |

The following symbols are used throughout this certificate:
**Symbol    Definition**

\+           Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Aug 03, 2025:**

| Recip ID | Recipient Name and Address |
|---|---|
| db | + LAS MARTAS INC, HC 05 BOX 91635, ARECIBO, PR 00612-9517 |

TOTAL: 1

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

## BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

## NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Aug 03, 2025                       Signature:        /s/Gustava Winters

---

## CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on August 1, 2025 at the address(es) listed below:**

**Name                    Email Address**

ALEXANDRA MILAGROS RODRIGUEZ DIAZ
            on behalf of Trustee JOSE RAMON CARRION MORALES arodriguez@ch13-pr.com

CARMEN PRISCILLA FIGUEROA
            on behalf of Creditor CRIM cpfbkcy@gmail.com cpfbkcy@gmail.com

DANIEL MARK PRESS
            on behalf of Cross Defendant CONDADO 5  LLC dpress@chung-press.com, pressdm@gmail.com;danpress@recap.email

GUSTAVO A CHICO-BARRIS
            on behalf of Creditor CONDADO 5 LLC gchico@ferraiuoli.com
            edocketslit@ferraiuoli.com;gchico@ecf.courtdrive.com;atorres@ferraiuoli.com

JOSE RAMON CARRION MORALES
            EBNMAIL@CH13-PR.COM

MAXIMILIANO TRUJILLO GONZALEZ

District/off: 0104-3 | User: admin | Page 2 of 2
Date Rcvd: Aug 01, 2025 | Form ID: pdf002 | Total Noticed: 1

on behalf of Interested Party Vaqueria Tres Monjitas Inc maxtruj@gmail.com trujillogonzalezmaximiliano@gmail.com

MONSITA LECAROZ ARRIBAS
    ustpregion21.hr.ecf@usdoj.gov

PEDRO J LOPEZ BERGOLLO
    on behalf of Counter-Defendant US SMALL BUSINESS ADMINISTRATION pedro.lopez-bergollo@sba.gov

RAFAEL A GONZALEZ VALIENTE
    on behalf of Interested Party SUIZA DAIRY INC. rgv@g-glawpr.com, zi@g-glawpr.com

SONIA COLON COLON
    on behalf of Creditor CONDADO 5 LLC scolon@ferraiuoli.com
    edocketslit@ferraiuoli.com;scolon@ecf.courtdrive.com;atorres@ferraiuoli.com

TOMAS F. BLANCO-PEREZ
    on behalf of Creditor CONDADO 5 LLC tblanco@ferraiuoli.com
    tblanco@ecf.courtdrive.com;atorres@ferraiuoli.com;edocketslit@ferraiuoli.com

TOTAL: 11

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 22-02380 (ESL) |
| LAS MARTAS, INC. | CHAPTER 12 |
| Debtor | FILED & ENTERED ON AUG/01/2025 |

**OPINION AND ORDER DENYING APPLICATION OF DIVESTITURE DOCTRINE**

This case is before the court upon the *Motion to Stay Any Pending Matter Currently on Appeal Under the Divestiture Rule* filed by Condado 5, LLC ("Condado") on June 11, 2025, requesting the court to apply the divestiture rule, stay the distribution of the consigned funds and/or any matter predicated and/or related to the issues on appeal pending before the U.S. District Court for the District of Puerto Rico (the "District Court") (the "**Motion to Stay**", dkt. #197); the *Response in Opposition to [the Motion to Stay]* filed by the Debtor (the "**Opposition to Stay**", dkt. #203); the *Reply to [Opposition to Stay]* filed by Condado (the "**Reply to Motion to Stay**", dkt. #210).

Also before this court are the *Urgent Motion Staying Any Redirection, Withholding or Distribution of Milk Sale Proceeds During the Pendency of Condado's Appeal and for Consignment of Proceeds Pending Resolution of the Appeal* filed by Condado on June 24, 2025, requesting the court to apply the divestiture rule and order Vaqueria Tres Monjitas Inc. ("Tres Monjitas") to consign all current and future milk proceeds with the court pending resolution of the Appeal (the "**Urgent Motion**", dkt. #202); the *Response in Opposition to [Urgent Motion]* filed by the Debtor (the "**Opposition to Urgent Motion**", dkt. #213); the *Reply to [Opposition to Urgent Motion]* filed by Condado (the "**Reply to Urgent Motion**", dkt. #219); and, the Chapter 12 Trustee's *Position as to [the Motion to Stay] and [the Urgent Motion]* (the "**Trustee's Position**", dkt. #229).

For the reasons stated herein, both the *Motion to Stay* (dkt. #197) and the *Urgent Motion* (dkt. #202) are DENIED.

Relevant Procedural Background[1]

(A) The First and Second Bankruptcy Case

1. On June 21, 2011, the Debtor filed a petition for relief under Chapter 12 (the "**First Bankruptcy Case**", Bankr. Case No. 11-05237, dkt. #1), which was substantially consolidated with Bankr. Case Nos. 11-05236 and 11-05239.

2. On January 16, 2018, after various procedural events, the consolidated First Bankruptcy Case was dismissed (Bankr. Case No. 11-05236, dkt. 387).

3. On December 14, 2018, the Debtor filed a petition for relief under Chapter 12 (the "**Second Bankruptcy Case**", Bankr. Case No. 18-07304, dkt. #1).

4. On April 15, 2020, the court entered an *Opinion and Order* (the "**Order Determining Scope of Condado's Lien**", Bankr. Case No. 18-07304, dkt. #120) wherein it concluded as follows:

> … The court has found that Condado has a valid lien over the milk quota since the inception of the contested matter. The issue is whether the lien over the milk quota extends to the milk produced by the cows.
>
> The security agreement does not specify that the dairy cows or the raw milk produced by Debtor's dairy farm operation serve as collateral to the loans. The milk is produced by the cows. The court agrees with the Chapter 12 trustee that the milk quota assigned by ORIL is the amount of milk that can be produced by the milk producer for the fresh milk market. The milk quota is a production limit. A milk quota is an asset and the value is determined by market conditions under ORIL regulations. Milk quotas do not produce milk. Since Condado's collateral does not include the cows, it may not claim that its security interest attaches to any identifiable proceeds of the cows.
>
> Upon the above conclusion, the court need not delve on the soundness of the Puerto Rico decision in <u>PR Asset Portfolio 2013-1 International LLC v. Tropical Heifers, Inc.</u>, nor the appropriateness of allowing that milk produced by cows be subject to a lien because of its perishable nature, how it is processed, and the applicable Puerto Rico milk quota regulations.
> …
> In view of the foregoing, the court concludes that the milk produced by Debtor's cows is not subject to Condado's collateral.

---

[1] This Debtor has a long history. For the sake of judicial economy, this *Opinion and Order* will only note those matters which directly impact the matters before it, that is, the applicability of the divestiture doctrine.

Bankr. Case No. 18-07304, dkt. #120, pp. 16-17, lines 14-3.

5. On July 7, 2020, reconsideration of the *Order Determining Scope of Condado's Lien* was denied (Bankr. Case No. 18-07304, dkt. #147).

6. On July 13, 2020, Condado appealed the *Order Determining Scope of Condado's Lien* to the District Court in the case styled <u>Condado 5, LLC v. Las Martas, Inc.</u>, Civil Case No. 20-cv-01344 (PAD). <u>See</u> Bankr. Case No. 18-07304, dkt. #149. The issues on appeal before the District Court were whether the Bankruptcy Court (1) "erred in holding that Condado's lien over the Debtors' milk quota does not extend or attach to the milk produced and sold to milk processing plants under Debtor's bi-weekly milk quota", and (2) "erred in holding that the proceeds generated by the Debtor from the milk produced and sold to milk processing plants under Debtor's bi-weekly milk quota is not subject to Condado's collateral" (Bankr. Case No. 18-07304, dkt. #161).

7. On April 22, 2021, after various procedural events, the Second Bankruptcy Case was dismissed (Bankr. Case No. 18-07304, dkt. #251).

8. On May 17, 2022, the U.S. Bankruptcy Appellate Panel for the First Circuit (the "BAP") affirmed the dismissal of the Second Bankruptcy Case. <u>See</u> Bankr. Case No. 18-07304, dkt. #279; BAP Case No. 21-017, Document No. 001145273.

9. On October 29, 2021, the appeal of the *Order Determining Scope of Condado's Lien* was dismissed as moot upon the dismissal of the Second Bankruptcy Case. <u>See</u> Civil Case No. 20-cv-01344 (PAD), dkt. #40, 41.

10. On November 28, 2021, the Debtor appealed the District Court's dismissal to the U.S. Court of Appeals for the First Circuit (the "First Circuit") (Civil Case No. 20-cv-01344 (PAD), dkt. #42), which was voluntarily dismissed on July 19, 2023 (Civil Case No. 20-cv-01344 (PAD), dkt. #50, 51).

(B) <u>The Third Bankruptcy Case</u>

11. On August 16, 2022, the Debtor filed the instant petition for relief under Chapter 12 (the "**Third Bankruptcy Case**", dkt. #1).

-3-

12. On August 17, 2022, Condado filed a *Motion to Prohibit Use of Cash Collateral and for Entry of Order Authorizing Condado to Seek and Collect Proceeds* (the "**Motion to Prohibit Use of Cash Collateral**", dkt. #9), to which the Debtor filed a *Response to Motion to Prohibit Use of Cash Collateral and for Entry of Order Authorizing Condado 5, LLC, to Seek and Collect Proceeds*, dkt. #15), and Condado filed a *Reply to the Debtor's Response to Motion to Prohibit Use of Cash Collateral and for Entry of Order Authorizing Condado 5, LLC, to Seek and Collect Proceeds* (dkt. # 25).

13. On September 1, 2022, Suiza Dairy, Inc. ("Suiza Dairy") filed an adversary proceeding Complaint (Adv. Proc. No. 22-00062, dkt. #1) alleging that there was a competing interest between the Debtor and Condado over the funds generated from the Debtor's sale of raw milk to Suiza Dairy. See id., pp. 6-11, ¶¶ 1-21.

14. On September 16, 2022, the court held a hearing to consider the *Motion to Prohibit Use of Cash Collateral* and the related responses. At the hearing, the court ordered the Chapter 12 Trustee to file their position. See *Minutes of Hearing held on September 16, 2022*, dkt. #34.

15. On September 23, 2022, the Chapter 12 Trustee filed their *Position and Memorandum of Law in Support Thereof to the Motion to Prohibit Use of Cash Collateral* (dkt. #35), to which Condado filed a response on October 14, 2022 (dkt. #46).

16. On February 15, 2023, after various procedural events, the court issued an *Opinion and Order* (the "**Second Order Determining Scope of Condado's Lien**", dkt. #102) that states as follows:

> The record clearly shows that in the Debtor's first bankruptcy case the critical factor was the repayment terms of the secured loan with Banco Popular de Puerto Rico, Condado's predecessor in interest. The travel of the first case shows the numerous joint stipulations filed by and between the Debtor and Banco Popular de Puerto Rico over the use of cash collateral, which were ultimately incorporated into the plan confirmed in August 2012 and the postconfirmation amended plan dated August 3, 2016, confirmed in September 2016. However, the debtor's first case, 11-05237, filed under the name of Vaquería Las Martas, Inc., was consolidated in July 2011, with case number 11-05236 filed by Juan Manuel Barreto Ginorio, and case number 11-05239 filed by JM Dairy, Inc., all chapter 12 cases with docket entries made in case 11-05236 for being the first filed case of the three. The

-4-

> confirmed plan was a consolidated plan of all three debtors. The secured debt with Banco Popular de Puerto Rico, now Condado, was guaranteed by collateral of each of the three consolidated Chapter 12 debtors. Thus, the facts are different from the instant case, wherein only Las Martas, Inc. (Vaquería Las Martas, Inc.) is the only debtor, and the collateral is only the milk quota. This difference is of critical importance as the court is conscious that court approved stipulations must be observed.
>
> The court has thoroughly considered the position and argument of the debtor, Condado and the Chapter 13 trustee. The court agrees with the position and legal basis espoused by the Chapter 13 trustee. Since the same has been detailed above, a repetition is not necessary and is incorporated as the court's own, in the following conclusions: considering the facts leading to the stipulations and the confirmed plans in the first case and that the court's decision in the second case is the later, the court finds that the doctrine of *res judicata* is not applicable; Condado's perfected prepetition security agreement over debtor's milk quota is limited to the milk quota, it does not extend to its proceeds or products; Condado's collateral is limited to the milk quota but does not include proceeds, products, or profits of the milk quota; and, Condado's perfected pre-petition security agreement over debtor's account receivables does not extend to post-petition account receivables as the same became ineffective by the effect of § 552(a).
>
> …
>
> In view of the foregoing, the court denies Condado's motion for prohibition to use cash collateral resulting from the post-petition sale of milk.

dkt. #102, pp. 15-16, lines 9-11. See also In re Las Martas, Inc., 2023 Bankr. LEXIS 419, 2023 WL 2024889 (Bankr. D.P.R. 2023).

17. On that same date, February 15, 2023, Condado appealed the *Second Order Determining Scope of Condado's Lien* to the District Court in the case styled Condado 5, LLC v. Las Martas, Inc., Civil Case No. 23-cv-01074 (RAM) (the "**Appeal**"). See *Notice of Appeal*, dkt. #103.

18. On March 9, 2023, Condado filed a *Motion for Stay Pending Appeal* of the *Second Order Determining Scope of Condado's Lien* (dkt. #121), which the Debtor opposed (dkt. #123), and Condado filed a reply thereto (dkt. #129). On April 24, 2023, the court issued an *Order* denying a stay pending appeal (dkt. #131) as follows:

> … the court declines to revisit its decision. The court also declines to find that the arguments have a substantial probability to prevail on appeal. Thus, the court finds that the appellant fails to meet the key requirement of a strong likelihood to succeed on the merits of the appeal.

> The appellant may move the court where the appeal is pending, that is, the U.S. District Court for the District of Puerto Rico, case number 23-cv-01074, for relief to stay pending appeal pursuant to Fed. R. Bankr. P. 8007(b)

dkt. #131, p. 5, lines 2-8.

19. Condado did not seek a stay pending appeal with the District Court. See, e.g., Civil Case No. 23-cv-01074 (RAM).

20. On September 29, 2023, after various procedural events, including an evidentiary hearing (dkt. #143), the Third Bankruptcy Case was dismissed pursuant to 11 U.S.C. §1208(c)(9) for continuing loss to or diminution of the Debtor's estate and the absence of reasonable likelihood of rehabilitation (dkt. #148). Reconsideration of dismissal was denied (dkt. #162).

21. Also on September 29, 2023, following the dismissal of the Third Bankruptcy Case, Condado filed a *Motion to Withdraw Consigned Funds* (dkt. #149), arguing that the dismissal terminated the automatic stay, the bankruptcy estate, "restore[d] all property rights to the position in which they were found at the commencement of the case", and caused the dismissal of any pending adversary proceeding without further order, including Adv. Proc. No. 22-00062. As such, Condado requested "the withdrawal and disbursement of the aforementioned funds deposited with the Court in favor of Condado" (id., p. 3). The Debtor filed a *Response to Motion to Withdraw Consigned Funds and Cross Motion to Disburse Funds to Debtor* (dkt. #154), arguing that the court has "twice ruled that Condado 5 has no lien on the post-petition proceeds of its milk sales" (id., p. 1, ¶ 2), and "not only should the funds not be disbursed to Condado 5, they should be disbursed to the Debtor, as Condado 5 has no security interest in those funds" (id., p. 4, ¶ 4). Condado filed a reply (dkt. #167), arguing again that "[a]bsent a confirmed [] plan [of reorganization] at the time of dismissal, § 349(b) basically restores parties to the position they would have had if the bankruptcy case had not been filed" (id., p. 3, ¶ 13) (internal citations omitted). Condado also argued that that the balance of equities weighs in favor of turning over the consigned funds to Condado or, in the alternative, that such consigned funds should remain with the court until Condado obtains relief from the state court in the foreclosure case for

the seizure of property. See also *Motion to Inform in Support of Condado's Motion to Withdraw Consigned Funds*, dkt. #186.

22. On October 10, 2023, Condado filed a *Motion to Stay Appellate Proceedings* with the District Court whilst the order dismissing the Third Bankruptcy Case became final and unappealable (Civil Case No. 23-cv-01074 (RAM), dkt. #24), which was granted (Civil Case No. 23-cv-01074 (RAM), dkt. #25).

23. On November 9, 2023, the Debtor appealed both the dismissal and the denial of reconsideration of dismissal to the Bankruptcy Appellate Panel (the "BAP") in the case styled Las Martas, Inc., v. Condado 5, LLC, BAP Appeal Case No. 23-026. See *Notice of Appeal*, dkt. #168.

24. On April 5, 2024, the court "declined to exercise jurisdiction over pending matters until the same are decided by the appellate courts" (the "**April 5, 2024 Order**", dkt. #188). Because divestiture is again before this court, the *Order* is transcribed in its entirety below:

> On September 1, 2022, Plaintiff Suiza Dairy … filed the instant Complaint alleging that there is a competing interest between the Debtor and Condado … over the funds generated from the Debtor's sale of raw milk to Suiza Dairy. On September 29, 2023, this Court entered an Opinion and Order dismissing Debtor's Chapter 12 case, Case No. 22-02380.
>
> There are two motions pending a decision in this adversary proceeding. First, the motion for summary judgment on crossclaim filed by Las Martas … (dkt. #42), which "requests that the Court enter summary judgment in its favor directing Plaintiff Suiza Dairy Inc. to pay the receivables at issue to Debtor, free of any lien of Condado 5, LLC, including all amounts paid into Court pursuant to this interpleader case and the Orders entered in the main case at Docs. 55 and 92, except that the pre-petition receivable in the amount of $3000 should be paid to Condado 5 and applied to the balance due under its loan." The opposition to the summary judgment filed by Condado (dkt. #63) whereby Condado alleges that this court's decision of February 15, 2023, denying Condado's motion for prohibition to use cash collateral resulting from the post-petition sale of milk, was appealed to the U.S. District Court for the District of Puerto Rico, Case No. 23-cv-01074 (RAM), and that the same is pending.1 Condado contends that such appeal triggers the divestiture rule, which divests the lower court of jurisdiction over matters on appeal. The funds deposited are the subject-matter of the appeal before the district court. Second, Condado's motion to dismiss the adversary proceeding pursuant to PR LBR 7041-1, which directs the dismissal of any adversary proceeding upon the

dismissal of the lead bankruptcy case (dkt. #64). The opposition filed by Las Martas (dkt. #67), and the reply filed by Condado (dkt. #71).

The court also notes a related matter pending in the lead bankruptcy case, that is, Condado's motion to withdraw consigned funds in the amount of $164,898.46, on the grounds that the dismissal of the lead bankruptcy case terminates the automatic stay and the bankruptcy estate, and also terminates the instant adversary proceeding (Lead Case, dkt. #149); the opposition and cross-motion to disburse funds to debtor filed by Las Martas (Lead Case, dkt. #154), whereby they allege that this court previously ruled that Condado has no lien over the consigned funds and that the dismissal order is pending reconsideration; and the reply (Lead Case, dkt. #167) and motion in support (Lead Case, dkt. #187) filed by Condado. The court further notes that Las Martas filed a notice of appeal of the dismissal order on November 9, 2023 (Lead Case, dkt. #168), which is pending in the Bankruptcy Appellate Panel for our First Circuit (the "BAP"), BAP Case No. 23-26.

**The above-mentioned events show that the issue of whether Condado has a valid lien over the consigned funds is critical to the matters pending before the court in both the adversary proceeding and the lead bankruptcy case. This court's decision finding that Condado does not have a lien on the sale proceeding and the order dismissing the bankruptcy case are both on appeal. See, Case No. 23-cv-01074 and BAP Case No. 23-26. The key to both being whether the dismissal order is or is not reversed. Thus, any decision by this court on the pending matters hinges on whether the bankruptcy case stands dismissed. At this time, the dismissal order is not final as the appeal before the BAP is pending. Which, in turn, is also the reason why the appeal before the district court has been stayed.**

In view of the foregoing, the court declines to exercise jurisdiction over the pending matters until the same are decided by the appellate courts. See, *e.g.*, In re Old Cold, LLC, 602 B.R. 798, 822 (B.A.P. 1st Cir. 2019), *aff'd*, 976 F.3d 107 (1st Cir. 2020).

Copy of this order shall also be entered in the lead bankruptcy case.

dkt. #188, pp. 1-3, lines 14-8 (emphasis added).

25. On March 5, 2025, the BAP vacated the dismissal of the Third Bankruptcy Case and remanded the case back to this court for further proceedings. See dkt. #190; BAP Case No. 23-026, Document 001151413.

26. On April 24, 2025, the Chapter 12 Trustee filed a *Motion to Inform and Request for Continuation of Proceedings* with the District Court (Case No. 23-cv-01074 (RAM), dkt. #30), which was granted on April 25, 2025 (Case No. 23-cv-01074 (RAM), dkt. #31).

27.   On June 6, 2025, Suiza Dairy filed a *Motion for Voluntary Dismissal* of Adv. Proc. No. 22-00062 (Adv. Proc. No. 22-00062, dkt. #76).

28.   On June 9, 2025, the court held a status conference in this Third Bankruptcy Case. The *Minutes of Status Conference Held on June 9, 2025 and Order* (the "**Minute Order**", dkt. #196) reads as follows:

> 1.   Condado shall immediately cease collecting the Debtor's proceeds from the sale of milk.
> 2.   Condado shall submit to the Debtor and the Trustee a detail of all funds received from milk proceeds of the Debtor since the filing of the petition within thirty (30) days.
> 3.   The Debtor shall file a summary of its monthly operations since the dismissal of the case through May 2025 within thirty (30) days. Monthly reports of operations shall be filed thereafter in the ordinary course.
> 4.   The Debtor and Condado shall file a Joint Report on the distribution of the consigned funds within thirty (30) days.
> 5.   The Debtor shall file an amended Chapter 12 plan within ninety (90) days from the filing of the Joint Report.

dkt. #196, pp. 2-4, lines 25-9.

29.   Also on June 9, 2025, the court held a status conference in Adv. Proc. No. 22-00062. The *Minute Entry* reads as follows:

> Plaintiffs motion for voluntary dismissal of the adversary proceeding (Dkt. #76) is hereby granted. Condado, Debtor and Trustee have no opposition. Disbursement of consigned funds will be determined in the main case. Judgment of dismissal will be entered.

Adv. Proc. No. 22-00062, dkt. #77. See also *Judgement*, Adv. Proc. No. 22-00062, dkt. #80

30.   On June 11, 2025, Condado filed a *Motion to Stay* (dkt. #197), requesting "to apply the divestiture rule, stay the distribution of the consigned funds and/or any matter predicated and/or related to the issues on Condado's Appeal". Condado argues that "any adjudication or distribution of the consigned funds at this juncture would directly interfere with the jurisdiction of the Appellate Court by effectively deciding matters on the very issue on appeal".

31.   On June 24, 2025, Tres Monjitas filed a *Motion to Inform No Further Payments to Condado* (dkt. #201).

32. On June 24, 2025, Condado filed an *Urgent Motion* (dkt. #202), requesting the court apply the divestiture rule, averring that the stop of payments is at the heart of its appeal, and requesting the court follow its *April 5, 2024 Order* (dkt. #188) and order Tres Monjitas to deposit future sale proceeds with the court pending resolution of the Appeal.

33. On June 25, 2025, Debtor filed an *Opposition to Stay* (dkt. #203), averring that Condado failed to cite Fed. R. Bankr. P. 8007, to refer to the standards for such a stay, or argue likelihood of success on the merits. They also argue that there is no risk of interference with appellate jurisdiction because the monies can be re-diverted to Condado if it prevails on appeal.

34. On June 25, 2025, the court ordered parties in interest to file a response to the *Urgent Motion* (dkt. #205).

35. On June 26, 2025, Condado filed a *Motion to Dismiss* (dkt. #207) for bad faith, unusual delay, and because the case constitutes a two-party dispute.

36. On June 26, 2025, Tres Monjitas stated that it "will retain all payments assigned to Condado 5 LLC until the Honorable Court determines the payee of the product of the sale of raw milk: the debtor, the trustee, Condado [] or the Clerk of the U.S. Bankruptcy Court" (dkt. #206, p. 1, ¶ 5).

37. On July 1, 2025, Condado filed a *Reply to [Opposition to Stay]* (dkt. #210), averring that its request "is not a traditional motion for a stay pending appeal under Fed. R. Bankr. P. 8007, but rather a request for enforcement of the well-established divestiture rule as a jurisdictional limitation, consistent with the type of orders this Court has previously issued in cases where an appeal is pending" (id., p. 4, ¶ 19) (original emphasis omitted); that granting the request "would support the Appellate Process by ensuring that the issue on Appeal (the validity of Condado's lien and entitlement to the funds) remains intact for adjudication, without any party gaining an improper advantage from interim lower court action" (id., p. 6, ¶ 26); that "[d]istributing the Consigned Funds to the Debtor is not a simple, ministerial enforcement of an unstayed judgment, it is an irreversible allocation of the very property in controversy[, and ] [h]ere the act of distribution would resolve who gets the funds before the appellate court resolves the

question of who is entitled to the funds. Far from being a mere 'enforcement' step, such distribution would 'expand upon or alter' the effect of the Court's prior order by prematurely cementing its outcome" (id., p. 7, ¶¶ 30-31) (original emphasis omitted). Condado also argues that "if the District Court ultimately reverses or modifies this Court's ruling regarding Condado's lien, undoing a distribution made in the interim could prove complex and/or impossible. The funds may be spent or disbursed to various parties, and the estate's resources could be depleted" (id., p. 7, ¶ 32).

38. On July 2, 2025, Condado filed a *Motion for Relief from the Automatic Stay* under Section 362(d)(4)(B) and under Section 362(d)(1) (dkt. #211), to which the Debtor filed a *Response to Motion for Relief from Stay* (dkt. #224), and Condado a *Reply to Response to the Motion to Stay* (dkt. #227).

39. On July 2, 2025, the Debtor filed an *Opposition to Urgent Motion* (dkt. #213), arguing that "stopping the continued seizure of milk proceeds … is to enforce the Court's judgment, not to expand upon or alter it, and it most definitely does not moot the appeal" (id., p. 2, ¶ 5).

40. On July 10, 2025, Condado filed a *Reply to Urgent Motion* (dkt. #219), averring that it "seeks to preserve the status quo for appellate resolution by the District Court, who currently holds appellate jurisdiction over that issue, by preventing an irreversible change in the status of the milk proceeds while the Appeal is pending under the divestiture rule" (id., p. 2, ¶ 6) (original emphasis omitted); "merely asks the Court to refrain from allowing any distribution or re-routing of those contested proceeds in the interim while the Appeal remains under appellate jurisdiction" (id., p. 3, ¶ 11); "[i]f the Debtor (or a third party such as VTM) were permitted to divert or dissipate the milk sale proceeds now, it would directly threaten the Appellate Court's ability to afford meaningful relief later" (id., p. 3, ¶ 12); "[t]he entire subject of the Appeal is whether those milk proceeds are encumbered by Condado's lien. If the proceeds are paid out to the Debtor or otherwise spent during the pendency of the Appeal, they would simply vanish, and any victory by Condado in the District Court would be futile. That is, an appellate ruling in

Condado's favor could become impossible to effectuate, as the funds would no longer available" (id., p. 3, ¶ 13); and "preserving the status quo means ensuring that no party obtains or uses the disputed milk proceeds until the Appeal is resolved" (id., p. 4, ¶ 15) (original emphasis omitted).

41. On July 18, 2025, the Chapter 12 Trustee filed their *Position* as to the Motion to Stay and the Urgent Motion (dkt. #229) wherein they join and adopt Debtor's position in its responses to both the *Motion for Stay* and the *Urgent Motion for Stay*; "agree[] that … Condado is, belatedly, asking for a stay pending appeal without complying with the requirements of Fed. R. Bank. P. 8007" (id., p. 3, ¶ 12); and,

> the Divestiture Rule is not applicable, inasmuch as the court's order does not expand the judgment being appealed but enforces the same. In the event that Debtor has access to the funds – which he needs for the feasibility of the plan — Condado will not be prejudiced or devoid of remedies if it prevails in the appeal, since it will (a) be receiving monthly payment under the Plan; and (b) may ask for the disgorgement of funds from Debtor later. However, the debtor is subject to irreparable damage to its business if the judgment is not enforced. Condado has not asked for a stay pending appeal, nor has it provided a bond to compensate the debtor if the judgment appealed is sustained. The continuance of the status quo prevents the Debtor's access to the funds for which it is entitled by an unstayed judgment, which are essential to its operation and may cause its failure before the appellate court sustains the appealed judgment. In essence, maintaining the status quo would actually affect or alter the effects of the judgment.
>
> The stay requested by Condado of the order of June 9, 2025, but not the stay of the judgment appealed, is convenient and cheaper to Condado at the expense of the Debtor and makes complying with Fed. R. Bank. P. 8007 meaningless. It is unquestionable that Debtor access to the proceeds of milk sales essential to its operation and the formulation of a feasible Chapter 12 plan.

Id., p. 3, ¶¶ 12-13.

42. The court held a hearing on the *Motion for Relief from the Automatic Stay* and related responses on July 22, 2025. See *Audio of July 22, 2025 Hearing*, dkt. 230. Issues of divesture and mootness were raised by the parties in connection therewith. See id.; *Minutes of Hearing Held on July 22, 2025*, dkt. #233.

<u>Applicable Law and Discussion</u>

(A)   <u>The Applicability of the Divestiture Rule to Bankruptcy Court Orders</u>

The First Circuit BAP provided a detailed analysis of the divestiture doctrine and its relevance to bankruptcy court orders in <u>Mission Prod. Holdings, v. Schleicher & Stebbins Hotels, L.L.C. (In re Old Cold, LLC)</u>, 602 B.R. 798, 822-823 (1st Cir. BAP 2019), *aff'd sub nom.*, 976 F.3d 107 (1st Cir. 2020), stating as follows:

> Generally, a notice of appeal divests the lower court of jurisdiction over those matters on appeal. See <u>Griggs v. Provident Consumer Discount Co.</u>, 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." <u>Id.</u> (citations omitted); <u>see also</u> <u>Watson v. Boyajian (In re Watson)</u>, 403 F.3d 1, 6 (1st Cir. 2005) (citing <u>Griggs</u>). This principle, known as the "divestiture rule," is a judge-made doctrine designed to promote judicial economy and prevent the confusion that would result from two courts addressing the same issue. 20 James Wm. Moore, <u>Moore's Federal Practice: Civil</u> ¶ 303.32[1] (3d ed. 2009); <u>see also</u> <u>Neary v. Padilla (In re Padilla)</u>, 222 F.3d 1184, 1190 (9th Cir. 2000) (citations omitted); <u>In re Whispering Pines</u>, 369 B.R. at 759 (citations omitted). "The divestiture of jurisdiction rule is, however, not a per se rule." <u>United States v. Rodgers</u>, 101 F.3d 247, 251 (2d Cir. 1996). "[I]ts application is guided by concerns of efficiency and is not automatic." <u>Id.</u> (citations omitted). "Whatever the superficial attractiveness of a per se rule that filing of a notice of appeal automatically divests the district court of jurisdiction as to matters covered by the notice, such a rule is subject to abuse, and [the court's] application of the divestiture rule must be faithful to the principle of judicial economy from which it springs." <u>Id.</u>
>
>                                          …
>
> The divestiture rule is applicable to an appeal from a bankruptcy court order. <u>In re G-I Holdings, Inc.</u>, 568 B.R. 731, 763 (Bankr. D.N.J. 2017) (citation omitted); <u>see also</u> <u>In re Whispering Pines</u>, 369 B.R. at 759 (concluding that bankruptcy court did not have jurisdiction to enter order granting relief from stay while appeal of order confirming plan, which provided for the sale of the subject property, was pending). "Courts have recognized, however, that due to the inherent nature of bankruptcy cases, 'discrete controversies within the overall case framework may often deserve separate appellate consideration' ...." <u>In re G-I Holdings, Inc.</u>, 568 B.R. at 763 (citation omitted). They have cautioned, therefore, "against a 'broad rule that a bankruptcy court may not consider any request which either directly or indirectly touches upon the issues involved in a pending appeal and may not do anything which has any impact on the order on appeal.' " <u>Id.</u> (citation omitted); <u>see also</u> <u>In re Whispering Pines</u>, 369 B.R. at 758 ("The application of a broad rule that a bankruptcy court may not consider any request filed while an appeal is pending has the potential to severely hamper a bankruptcy court's ability to administer its cases

in a timely manner."). "Instead, the test is a functional one: 'once an appeal is pending, it is imperative that a lower court not exercise jurisdiction over those issues which, although not themselves expressly on appeal, nevertheless so impact the appeal so as to interfere with or effectively circumvent the appeal process.' " In re G-I Holdings, Inc., 568 B.R. at 763 (quoting In re Whispering Pines, 369 B.R. at 759). Thus, the test for determining if a pending appeal divests a lower court of jurisdiction is whether the subject matter presented in the appeal is so "closely related" to the issues raised in the motion that the entry of the order "impermissibly interfere[s]" with the appellant's rights in its appeal. In re Whispering Pines, 369 B.R. at 759.

602 B.R. at 822-823 (holding that divestiture doctrine was not applicable).

Further, "[c]ourts have recognized a distinction in the divestment of jurisdiction between acts undertaken to enforce the judgment and acts which expand upon or alter it; the former being permissible, and the latter prohibited. The application of the distinction in the case law between acts of enforcement and acts of alteration is most germane in the context of a Chapter 11 bankruptcy case which involves the court's issuance of innumerable orders involving a myriad of issues, one or more of which may be on appeal at any given moment." In re Betteroads Asphalt, LLC, 610 B.R. 28, 37 (Bankr. D.P.R. 2019), quoting In re Sabine Oil & Gas Corp., 548 B.R. 674, 678-79 (Bankr. S.D.N.Y. 2016).

In In re Old Cold, LLC, the BAP affirmed the U.S. Bankruptcy Court for the District of New Hampshire (the "New Hampshire Bankruptcy Court"), concluding that such court had jurisdiction and did not abuse its discretion in granting relief from stay to foreclose on liens over the debtor's remaining cash. In so doing, the BAP concluded as follows:

> … the record does not reflect that the issue pending before the Supreme Court was so "closely related" to the issues raised in the Stay Relief Motion so as to "impermissibly interfere[]" with Mission's rights in the Supreme Court Appeal. See In re Whispering Pines, 369 B.R. at 759. […] A nexus between the issues is not readily apparent from the record. In fact, Mission does not argue that the legal issues in the Supreme Court Appeal overlap with the legal issues raised in connection with the Stay Relief Motion. Rather, Mission contends that the subject matter of the Supreme Court Appeal is "closely related to" the issues raised by the Stay Relief Motion because the granting of relief from stay could (and did) result in the dissipation of assets that would otherwise be available to satisfy Mission's asserted administrative claim. Thus, Mission claims, the Stay Relief Order impermissibly interfered with its rights and effectively circumvented the appeal process.

602 B.R. at 823-824.

On appeal, the First Circuit affirmed the BAP, "agree[ing] with the BAP that the disbursement of the funds … did not moot [the] appeal", 976 F.3d at 115, and stating as follows:

> "Unlike other assets ... (e.g. real property, conveyances), cash is a fungible item." United States v. $46,588.00 in U.S. Currency & $20.00 in Canadian Currency, 103 F.3d 902, 904 n.5 (9th Cir. 1996) (quoting Attorney General Policy Directive 87-1 (Mar. 13, 1987)) (holding that the comingling of the cash in question with other cash did not deprive the court of jurisdiction). Even under the less stringent doctrine of equitable mootness (the applicability of which to stay relief orders we need not decide), the failure to obtain a stay pending appeal, by itself, does not provide "sufficient ground for a finding of mootness." Rochman v. Ne. Utils. Serv. Grp. (In re Pub. Serv. Co. of N.H.), 963 F.2d 469, 473 (1st Cir. 1992). Rather, such mootness requires "the challenged bankruptcy court order [to have] been implemented to the degree that meaningful appellate relief is no longer practicable." Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.), 136 F.3d 45, 48 (1st Cir. 1998). In contrast to a case where we are unable to return title to the estate because it has been transferred to a good faith purchaser, we simply cannot say that ordering a party on appeal to disgorge mere cash is impracticable and does not afford meaningful appellate relief. See Spirtos v. Moreno (In re Spirtos), 992 F.2d 1004, 1006–07 (9th Cir. 1993) (finding no mootness where the creditor "stripped the plans of their assets" but there was no foreclosure or sale and the receiving party was a party to the appeal and knew of the appeal at time it took that action, as the court could fashion relief by ordering the money returned to the estate); Salomon v. Logan (In re Int'l Envtl. Dynamics, Inc.), 718 F.2d 322, 326 (9th Cir. 1983) (holding the court could fashion relief where there were simply "erroneously disbursed funds").
>
> …
>
> Moreover, the Supreme Court rejected the argument that the disbursement of the remaining cash from the estate mooted its consideration of the § 365(n) appeal, noting that, if successful, Mission "can seek the unwinding of prior distributions to get its fair share of the estate." Mission Prod. Holdings, Inc., 139 S. Ct. at 1661. It would be inconsistent to now hold that any such relief is so implausible as to preclude our review of this order. Accordingly, we find no basis to conclude this appeal is equitably moot, moot under Article III, or moot under the provisions of the Bankruptcy Code and rules.
>
> Having concluded that Mission's appeal is not moot, we next answer whether the granting of Mission's petition for a writ of certiorari divested the bankruptcy court of jurisdiction to decide the stay relief motion…
>
> As we have just discussed, though, if S & S had no right to the assets, we could order a disgorgement in this case. And the Supreme Court recognized that the disbursement of the cash had no impact on its ability to decide Mission's appeal as long as there was "any chance of money changing hands." Mission Prod. Holdings, 139 S. Ct. at 1660. […] [C]ontrary to Mission's assertion that the stay relief order

would "impermissibly interfere with the rights on appeal," we find no such interference.

976 F.3d at 115-117.

Following the First Circuit's decision affirming both the BAP and the New Hampshire Bankruptcy Court, the New Hampshire Bankruptcy Court again addressed the divestiture rule, observing that "[t]he mere fact that property at issue in an appeal is the same as the property at issue before the bankruptcy court is not dispositive where the bankruptcy court's resolution of an issue will not interfere with the pending appeal." In re Old Cold, LLC, 2021 WL 3484662, at *14 (Bankr. D.N.H. Aug. 6, 2021) (citations omitted).

(B)  Whether Divestiture Rule is Applicable to this Case

Prior to addressing the applicable law, the court notes that the circumstances underlying the *April 5, 2024 Order* have materially changed. First, dismissal of the instant case was vacated, and the case remanded for further proceedings. Second, the adversary proceeding filed by Suiza Dairy, which concerned the competing interest between the Debtor and Condado over the milk proceeds, was voluntarily dismissed, although Tres Monjitas now faces a similar challenge (see, dkt. #201). The present procedural and factual posture of this case differs significantly from that which existed at the time of the prior order. With this in mind, the court will now consider the applicability of the divestiture doctrine.

The Appeal concerns the extent of Condado's lien. Specially, whether the bankruptcy court (1) "erred in holding that the post-petition proceeds, products, or profits generated by the Debtor from the milk produced and sold to milk processing plants under Debtor's bi-weekly milk quota are not subject to Condado's lien"; and/or, (2) "erred in failing to enforce the *res judicata* and/or collateral estoppel effects of the *Stipulations for the Use of Case Collateral in the Debtor's First Bankruptcy Case …* " (dkt. #109). The *Minute Order* concerns the cessation of collection of milk proceeds. Plainly, the property at issue in both the Appeal and this court is the same.

Condado urges this court to adopt a broad rule that a bankruptcy court may not consider any request which either directly or indirectly touches upon the issues involved in the Appeal. However, this Third Bankruptcy Case has already been stayed for several years pending appellate

-16-

review. Adopting such a sweeping proposition would only further hamper this court's ability to administer this case efficiently and in a timely manner.

A noted above, the fact that the property at issue in the Appeal is the same as the property at issue before this court is not dispositive—particularly where this court's resolution of a matter will not interfere with the pending Appeal. Importantly, there is a distinction between acts undertaken to enforce a judgment and those that seek to expand or alter. Here, the cessation of collection constitutes an act taken to enforce or implement the *Second Order Determining Scope of Condado's Lien* —an order which was not stayed— and directly affects the Debtor's ability to propose a confirmable plan. This conclusion does not "impermissibly interfere" with the Appeal, as it does not alter or expand upon the issues under appellate review.

As the U.S. Bankruptcy Court for the Southern District of New York aptly explained:

> If the divestiture doctrine were to be applied in a way that divests bankruptcy courts of jurisdiction over all issues relevant to confirmation on which the court has previously ruled and are the subject of a pending appeal, this would lead to an absurd result—courts would likely decline to rule on any issues that could be implicated at confirmation for fear of interfering with a debtor's ability to emerge from chapter 11. Moreover, it would effectively cede control of the conduct of a chapter 11 case to disappointed litigants. This cannot be, and is not, the law.

In re Sabine Oil & Gas Corp., 548 B.R. at 680.

At this juncture, after careful review of the record, briefs and arguments presented, the court concludes that it retains jurisdiction to enforce or to proceed in conformity with the *Second Order Determining Scope of Condado's Lien*.

## CONCLUSION

For the reasons stated herein, both the *Motion to Stay* (dkt. #197) and the *Urgent Motion* (dkt. #202) are DENIED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 1st day of August 2025.

Enrique S. Lamoutte
United States Bankruptcy Judge