IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| In Re: | Case No.: 22-02380 ESL |
|---|---|
| Las Martas, Inc. | Chapter 12 |
| Debtor | |

### TRUSTEE'S OPPOSITION TO MOTION TO DISMISS

TO THE HONORABLE COURT:

NOW COMES José R. Carrión, Chapter 12 Standing Trustee (the "Trustee"), and very respectfully submits his opposition as the Motion to Dismiss filed by Condado 5, LLC ("Condado") on June 26, 2025 (Docket 207, the "Motion to Dismiss). Condado argues that Debtor Las Martas, Inc.'s ("Debtor" or "Las Martas") multiple bankruptcy petitions constitute actions in bad faith which has prevented the collection of it by preventing the foreclosure of a real property owned by a third party. As explained below, however, it is Condado's own bad faith litigation tactics and the disregard for court orders, that have led to debtor's multiple bankruptcy filings and has caused the conditions that have unreasonably delay the debtor's reorganization under Chapter 12.

### I. INTRODUCTION

Since Condado's arguments are based in actions that are purported to have occurred in this and other bankruptcy filings, it is necessary to understand the cause of the circumstances of Las Martas' second and third bankruptcy petitions and the extent of Condado's actions on those cases. Condado's hands are not clean.

Las Martas is a dairy farm corporation licensed to operate by the Puerto Rico Milk Industry Regulatory Office ("ORIL" for its Spanish acronym). Due to an assignment approved by ORIL, the Debtor owns a raw milk production Quota which

authorizes the corporation to produce up to 58,700 liters of raw milk every 14 days to be sold as fresh milk in the Puerto Rican market. The Quota was listed in Schedule A/B with a value of $117,400.00 or $2.00 per liter (Docket 18).

On January 12, 2005, Banco Popular de Puerto Rico (BPPR), predecessor in interest of Condado 5, extended to the Debtor a credit facility in the amount of $1,850,000.00 (the "Loan"). As part of the loan agreement by and between Debtor and BPPR, the parties executed a security agreement to guarantee the loan with various properties given as collateral, among them, real property, contracts, account receivables and Debtor's milk production Quota. The real property that was given as collateral is not owned by Las Martas, but by its principal, Juan Barreto Gionorio ("Barreto") and identified as Property No. 2,333 – 27.48 *cuerdas,* recorded in the Property Registry II of Arecibo PR (the "Property"). The Debtor owns the contracts, the milk production quota and the account receivables for the sale of milk. The security agreement identified Debtor's milk production Quota of 58,700 liters of raw milk produced every 14 days, and account receivables related to raw milk sales transactions with Suiza Dairy, with priority for $7,450 every 14 days. Upon signing the security agreement, all described collateral were attached to it.

On January 21, 2005, to perfect a lien over debtor's assets, the original creditor, BPPR, filed a Financing Statement for both the milk production quota and the account receivables, with the PR State Department under the provisions of the Puerto Rico Uniform Commercial Code ("PR UCC"). BPPR also timely registered a lien over the milk production quota in the Registry of Quotas Transactions at ORIL pursuant to the PR Milk Quota Act. (5 LPRS § 1135) Also, against "Barreto", BPPR filed Financing Statement to perfect its interest over the "Property".

### A. First Bankruptcy Petition (11-05237)

On June 21, 2011, the Debtor filed a petition under Chapter 12, which was substantively consolidated with cases 11-05236 of Barreto and 11-05239 of JM Dairy Inc., a related corporation ("JM Dairy"). A Chapter 12 Plan was confirmed on August 30, 2012.

On July 30, 2013, BPPR informed the transfer of its claim to PR Assets Portfolio 2013-1 International, LLC ("PR Assets") While this case was pending, on January 21st, 2015, the Financing Statements originally filed with the Puerto Rico State Department and perfected under UCC § 2260(a), expired, by operation of UCC § 2335(a). PR Assets, therefore, ceased to have a perfected secured interest in debtor's account receivables. Hence, lien no longer enforceable in bankruptcy. Notwithstanding this, PR Assets acted like it had the same rights as before and continued to receive the proceeds from the debtor's raw milk sales.

During September 2017, the Island was affected by two Hurricanes, Irma on September 6 and Maria on September 20, devastating all aspect of the Puerto Rico economy, including the dairy industry. Less than a month thereafter, on October 11, 2017, PR Assets informed the transfer of its claim to Condado. Condado bargain to acquire a credit in a bankruptcy case shortly after the most devastating hurricanes in Puerto Rico's history with knowledge of its impact on the dairy industry and the debtor. Under the extreme circumstances that existed at that moment, on October 27, 2017, the debtors and Condado reached a stipulation were the first agreed for the second to receive from "Suiza and/or Tres Monjitas"[1], 20% of the payments related to

---

[1] Suiza Dairy, Inc., and Vaqueria Tres Monjitas, Inc.

the sale of raw milk, **even though the creditor no longer had a perfected secured interest over such funds**. Condado negotiating position was overwhelming strong, it asserted the acquired "secure interest rights" over all proceeds of the little milk production after the hurricanes and generously accepted only 20% of it.

Debtor's operation after the hurricanes was substantially impaired and led to Debtor's default with its required payments under the Chapter 12 confirmed plan and under the stipulation with Condado. On November 29, 2017, the Trustee requested the dismissal of the case and on **January 16, 2018**, the case was dismissed.

### B. Second Bankruptcy Petition (18-07304)

Almost a year after the dismissal of the first case, on December 14, 2018, the Debtor filed its second Chapter 12 bankruptcy petition. It should be noted that, during this time, Condado did not attempt to foreclose the real property owned by its principal or any other assets which comprised its collateral. Condado continued to receive must of the proceeds related to account receivables from the sale of debtor's operation raw milk.

Condado continued to have a secured interest over the milk quota, but not over the account receivables since January 21st, 2015, when the lien expired, by operation of the PR-UCC § 2335(a). Nevertheless, undeterred Condado claimed a secured interest over the account receivables arguing that they were a *product* or *proceeds of* the Milk Quota which still encumbered in its favor. These claims were opposed by the debtor and prompted litigation that concluded two years later, on April 15, 2020, with an Opinion and Order which concluded that Condado's secured interest was limited

to the Milk Quota and not the milk produced by Debtor's cows and sold post-petition to the milk processing plant. Condado requested reconsideration of this Opinion and Order, which was denied on July 7, 2020, and on July 13, 2020, Condado appealed.

On January 25, 2021, Debtor requested the enforcement of the Court's determination related to Condado's lack of security interest in the proceeds of the sale of its milk, but the same was denied based on the *divestiture rule* as the decision was on appeal. <u>Notwithstanding what was determined by the court's Opinion and Order, and the fact that Condado did not obtain a stay pending appeal, as Condado's request for the same was denied, Condado proceed ignoring the Court's determination and continued stubbornly collecting all of debtor's account receivables from the milk processing plant, thus depriving Debtor of the funds needed to operate and to propose a feasible reorganization plan</u>.

On April 22, 2021, after various procedural events, the second case was dismissed. This order was Appealed to the Bankruptcy Appellate Panel, which on May 17, 2022, affirmed the dismissal. On October 29, 2021, the appeal by Condado of the Opinion and Order (Case 18-07304, Dkt. 120) was dismissed as moot upon the dismissal of the bankruptcy case 18-07304 [Civil Case No. 20-cv-01344 (PAD)]. On November 28, 2021, the debtor appealed the District Court's dismissal to the U.S. Court of Appeals for the First Circuit which was voluntarily dismissed on July 19, 2023.

### C. <u>Third Bankruptcy Petition (22-02380)</u>

On August 16, 2022, the debtor filed its third and current petition under Chapter 12 (Docket 1). Condado again claimed a secured interest over debtor's

proceeds of raw milk sales, notwithstanding previous court determination on the matter. As it occurred in the second case, the Court determined again on February 15, 2023, that Condado's secured interest was limited to the Quota and not the milk produced by Debtor's cows and sold post-petition to the milk processing plant (Docket 102). Condado, once again appealed the Court's decision to the District Court (Case No. 23-01074).

On March 9, 2025, Condado filed a Motion for Stay Pending Appeal (Docket 131) which, after some litigation, was denied by this Honorable Court on April 24, 2023 (Docket 131). Prior to the appeal, Condado had requested dismissal of the present case arguing that Las Martas' estate was diminishing and that it would not be able to propose a feasible plan (Docket 22). An evidentiary hearing was held on June 23, 2023, to discuss the matter (Docket 144). The Court dismissed the case on September 29, 2023 (Docket 148). Las Martas requested reconsideration of the order of dismissal on October 12, 2023 (Docket 153) which was denied by the Court on October 30, 2023 (Docket 162). Considering this, a second appeal, this time to the Bankruptcy Appellate Pannel for the First Circuit (the "BAP") and with Debtor as the Appellant was filed (Case No. 23-026). During the pendency of the appeal regarding the dismissal of the case, the appeal filed with the District Court was stayed. On March 5, 2025, the BAP reversed the order of dismissal and remanded the case to the Bankruptcy Court for further proceedings (Docket 190). As per the Trustee's request, the District Court lifted the stay on the pending appeal on April 25, 2025.

In light of the BAP's ruling, this Honorable Court held a status conference on June 9, 2025, regarding the present case (Docket 196). During the same, it ordered the parties to perform the following tasks:

(a) For Condado 5, LLC ("Condado") to immediately cease collecting the Debtor's proceeds from the sale of milk;

(b) For Condado 5, LLC ("Condado") to submit to Las Martas, Inc. (the "Debtor") and the Trustee a detail of all funds received from milk proceeds of the Debtor since the filing of the petition within thirty (30) days;

(c) For the Debtor and Condado to file a Joint Report on the distribution of the consigned funds within thirty (30) days;

(d) For Debtor to file a summary of its monthly operations since the dismissal of the case through May 2025 within thirty (30) days and regular monthly operating reports thereafter; and

(e) For the Debtor to file an amended plan within 90 days.

Condado, on June 11, 2025, filed a Motion for Entry of Order to Stay Any Pending Matter Currently on Appeal Under the Divestiture Rule (Docket 197, the "Motion for Stay"). In the same, Condado requested under the Divestiture Rule[i] that this Honorable Court refrain from ordering any distribution of funds consigned with the Court to the parties, as it may affect the appeal pending in the District Court. Id. Case No. 23-01074. Specifically, Condado argued that, if the consigned funds were distributed to the Debtor, it could circumvent the appellate process and force Condado into prejudicial positions. It further stated that it could risk conflicting rulings between the Bankruptcy Court and the appeal in the District Court, resulting in the premature distribution of contested funds, undermining appellate jurisdiction.

That same day, Condado filed an Urgent Motion Staying any Redirection, Withholding or Distribution of Milk Sale Proceeds During the Pendency of Condado's

Appeal and for Consignment of Proceeds Pending Resolution of the Appeal (Docket 202, the "Urgent Motion for Stay"), reiterating the request made in the Motion for Stay for the Court to apply the Divestiture Rule to preserve the *status quo* of this case. Furthermore, Condado requested that Tres Monjitas be ordered to consign proceeds of milk with the Bankruptcy Court instead of delivering the same directly to the Debtor. All Condado's action delaying debtor's access to the funds needed for its operation.

On June 25, 2025, Debtor filed its response to the Motion for Stay (Docket 203). In the same, Debtor argued that the Motion for Stay is basically a motion for stay pending appeal, even though it fails to address Fed. R. Bank. App. P. 8007 or show that it complied with its requirements.[ii] Id. Debtor further argued the Divestiture Rule is not applicable, since Debtor is not requesting the Court to either expand or alter the appealed judgment but to enforce it. Id. Moreover, Debtor stated that the Court's order for Condado to inform the amount of the funds received from milk proceeds and for Debtor to report its status of operations should not be stayed, as it is information that will help the Court analyze arguments regarding how distribution of funds should be made. Id. The Trustee, on July 18, 2025, requested leave to file his position as to the Motion for Stay and the Urgent Motion (Docket 28) and filed the same joining Debtor's arguments (Docket 29).

Meanwhile, on June 26, 2025, Condado filed a second Motion to Dismiss for Debtor's lack of good faith in this bankruptcy proceeding (Docket 207). In essence, Condado argues that Debtor's repeated filings in a conspiracy with its principal Barreto and his former spouse Maria Elena Hernandez Ruiz ("Hernandez"), as well as JM Dairy, have impeded Condado from concluding the foreclosure procedures on

the "Property". Shortly thereafter, on July 2, 2025, Condado filed Motion for Relief from Stay, basically repeating the arguments included in the Motion to Dismiss (Docket 211).

A hearing to discuss the Motion for Relief from Stay was held on July 22, 2025 (Docket 233). During that time, the Court noted that Las Martas did not show any opposition to the foreclosure of the Property, as it had responded that it had no real estate and, thus, the automatic stay of this case could not apply to any real property. Id. Further, the Court stated that it was not placed in a position to determine if Condado had been provided with adequate protection regarding its lien over the Milk Quota, the only security that Condado has in this case. Id. Considering this, the Court reiterated its orders from the hearing held on July 22, 2025, stating that:

(a) Condado shall file with the Court submit a detail of all funds received from milk proceeds of the Debtor since the filing of the petition within 14 days;
(b) Debtor and Condado shall file a Joint Report on the distribution of the consigned funds within thirty (14) days;
(c) Debtor shall file his proposition of adequate protection over the milk quota 14 days after the compliance of the above two orders and Condado must reply 14 days thereafter.

On August 1, 2025, this Honorable Court entered an Opinion and Order denying Condado's request to apply the divestiture rule (Docket 48). Condado, on August 5, 2025, informed that, between September 29, 2023, and March 5, 2025 – while the bankruptcy was dismissed and said order was being appealed – it received $190,489.65 and, after the dismissal was reversed it received $17,286.28 (Docket 250).

Las Martas, on August 7, 2025, filed its summary of its monthly operations since the dismissal of the case through May 2025 (Docket 251). That same day, Las Martas and Condado filed the Joint Report regarding distribution of the consigned funds (Docket 252). In the same, Las Martas stated that Condado shall receive $3,000.00 from a pre-petition account receivables. Id. Also, Las Martas stated that, since Condado received over $207,000.00 since the filing of the case, — substantially more than the value of $117,400.00 of the Milk Quota -- it has received enough adequate protection, and the totality of the consigned funds must go to Las Martas. Id. As to Condado, said entity once again argued that the Bankruptcy Court lacked jurisdiction to adjudicate or authorize the distribution of the consigned funds under the divestiture rule and announced it would file an Emergency Motion in Aid of Jurisdiction with the District Court.[2] Id. Vaqueria Tres Monjitas, Inc., however, has already informed that it will start to make disbursements to the Debtor (Docket 254), pursuant to the opinion and order entered by this Honorable Court on August 1, 2025 (Docket 248).

It should be noted that Appeal 23-01704 with the District Court has been thoroughly briefed. The parties are waiting for the District Court to either schedule oral arguments or issue its resolution.

As explained in detail below, this Honorable Court should deny the Motion to Dismiss because Las Martas' bankruptcy does not affect Condado's foreclosure of the Property. Also, it is Condado's own actions – the retention of funds to which it has no right – that have prevented Debtor from filing a feasible plan and obtain

---
[2] Motion filed on August 11, 2025, on District Court, Appeal Case No. 23-01074 RAM, Document 32.

confirmation. Debtor vehemently defense of its rights against Condado's stubborn pretention to enforce rights it does not have, is not bad faith.

## II. ARGUMENT

### A. Las Martas' bankruptcy case does not and have not prevented Condado from foreclosure of the property.

In the Motion to Dismiss, Condado argues that Debtor is *in cahoots* with Barreto, Hernandez, and JM Dairy to thwart the foreclosure of the Real Property. As explained below, this argument is incorrect.

First of all, Debtor has failed to argue with specificity and failed to submit any evidence that Debtor has conspired with other parties to impede the foreclosure of the property. In the Motion to Dismiss, Condado conveniently forget that Las Martas is a separate entity from its principal, his former spouse and JM Dairy. Actions performed by Barreto, Hernandez or JM Dairy, Inc. cannot be attributed to Las Martas. While Barreto may be in bankruptcy, he is in a separate Chapter 11 case, with a separate attorney and a different bankruptcy estate. Moreover, Las Martas, Barreto, Hernandez, and JM Dairy have their separate attorneys in the foreclosure proceeding.

Furthermore, as per information provided by Condado in the Motion to Dismiss, Las Martas has had little participation in the foreclosure case. As a matter of fact, Las Martas only appears four times, which are as follows:

| Title of Document | Date | Requested Remey |
|---|---|---|
| Motion Assuming Legal Representation and Requesting Extension of Time to Answer Complaint | 8/25/2021 | Requesting 45 more days to answer complaint |
| Motion to Stay Proceedings Against Las Martas, Inc. | 10/5/2021 | Requesting the case be stayed pending the outcome of Appeal 21-0017 |

| Urgent Motion Requesting Stay of Proceedings | 8/24/2022 | Requesting to stay the case due to bankruptcy filing by Las Martas, Inc. Case No. 22-02380 |
|---|---|---|
| Motion for Reconsideration | 5/17/2024 | Counsel that sanctions imposed of $50.00 be vacated. (Granted 3 days later on May 20, 2024) |

From the events shown above, Las Martas only requested an extension of time to answer a complaint, which is not an unusual request, and for the stay of the proceedings regarding its bankruptcies. As to the request for stay of the proceedings, the same would affect only Las Martas. As has been repeatedly stated, the property is privately owned by Barreto and Hernandez and Las Martas has no participation in it. The automatic stay in this bankruptcy case has no effect on Barreto, his former spouse, or the property and, thus, should have no effect on the foreclosure proceeding.

As a matter of fact, on August 17, 2022 – shortly after the bankruptcy case was filed Condado filed a Motion for Entry of Order Declaring the Codebtor Stay Inapplicable, (Docket 11), in which Condado informed that it has started foreclosure proceedings against the Debtor, Barreto, Hernandez and JM Dairy, that Condado's claim did not pertain to a consumer loan and that there were no unusual circumstances that merited for Las Martas' automatic stay to be extended to its co-guarantors. This request was unopposed by Las Martas and, thus, the same was granted by the Court on September 12, 22022 (Docket 28).

Considering the above, Las Martas' bankruptcy does not prevent the foreclosure of the property as claimed by Condado. Any arguments regarding this matter relates to another case and has nothing to do with any property serving as collateral to Condado that comprises property of the estate of Las Martas. As Las Martas well stated in its Debtor's Response to Motion for Relief from Stay:

> "As such, the automatic stay in this case does not apply to any real estate. Clearly, then, neither this case nor the prior cases filed by this Debtor could have in any way impacted Condado's attempts to foreclose on someone else's property". See, ¶1 of Docket 224.

This statement was considered by this Honorable Court to conclude that the automatic stay did not apply for the foreclosure of the Property. Debtor's argument that Las Martas is somehow thwarting its foreclosure attempts on the property are incorrect and must be disregarded. Any argument regarding the foreclosure of the Property belongs in another case.

B. **Condado has acted in bad faith by preventing Las Martas access to funds needed for its operation and filing a feasible and confirmable Chapter 12 Plan**.

It is a well-established principle that a party seeking relief from a court must do so with clean hands. To that effect, the Supreme Court of the United States has stated as follows:

> "The guiding doctrine in this case is the equitable maxim that 'he who comes in equity must come with clean hands.' This maxim is far more than mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter to which it seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of court equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on its part to be the 'abetter of inequity'." Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co. 324 U.S. 806, 814 (1945).

The bankruptcy courts have determined that both debtors and creditors must show good faith and clean hands when requesting relief.

> "As a general matter, bankruptcy relief is equitable in nature, and, as a general rule, equitable remedies are not available to any party who fails to act in an equitable fashion. As the Fifth Circuit noted 'a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e. avoidance of liens, discharge of debts, marshaling and turnover of assets) available only to those debtors and creditors with 'clean hands'." In Re Betteroads Asphalt, LLC, 594 B.R. 516, 558 (Bank. D.P.R1. 2018, quoting Little Creed Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.) 779 F. 2d 1068, 1072 (5th Cir. 1986).

See also, In re Davis, 2014 WL 1310298 at *2 (Bank. E.D.N.C. 2014) citing Matter of Little Creek Dev. Cop. 779 F. 2d. ("The requirement of good faith 'protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons available only to those debtors and creditors with 'clean hands".)

The Court in In Re Davis, further added that "[t]he doctrine of 'unclean hands' prevents a party from obtaining equitable relief if the party has been guilty of any inequitable or wrongful conduct with respect to the transaction or subject matter litigation." Id., citing Worldcom, Inc. v. Boyne 68 F. App'x 447, 451 (4th Cir. 2003).

As to the application for this doctrine, the Puerto Rico district court has stated that the improper misconduct must be related to the controversy. To that effect, in Jose S. Belaval v. Perez-Perdomo, 488 F.3d 11, 15 (D.P.R. 2007), citing Texaco P.R. Inc., v. Dep't of Consumer Affairs, 60 F. 3d 867, 880 (1st Cir. 1995) the District Court stated as follows:

> "The doctrine has its limits, and not all misconduct by a plaintiff will soil the plaintiff's hands. Among other things, the doctrine 'only applies when the claimant's misconduct is directly related to the merits of the controversy between the parties, that is, when the tawdry acts 'in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication' ."

It is undisputed that this is Las Martas' third bankruptcy case. It is also undisputed that, without the use of the milk sale proceeds, Las Martas would be unable to operate and reorganize its finances. Condado has argued that Las Martas' repeated bankruptcy filings are acts of bad faith that have prevented it from collecting on its debt. However, the totality of circumstances show that it is Condado's own actions — knowingly retaining funds to which it is not entitled — which have led to Las Martas' repeated filings and the delay in obtaining confirmation of a Chapter 12 plan.

As stated above, Las Martas filed its first bankruptcy case on June 21, 2011, Case No. 11-05239 and a Chapter 12 plan was confirmed on August 30, 2012. Las Martas maintained payments under the confirmed plan until Hurricanes Irma and Maria had a devastating effect on the dairy industry, preventing the completion of plan payments. Las Martas reached an onerous agreement with Condado under distress, yielding 20 percent of the profits it needed to maintain its operations, even though Condado no longer had an enforceable secured interest in Debtor's account receivables. After said catastrophic events, Debtor could not make the plan payments, and the Trustee had no other choice but to request dismissal. However, the failure of this bankruptcy was not due to bad faith, but to an onerous starving agreement with Condado and hardship conditions outside of Debtor's control.

Las Martas filed its second bankruptcy case on December 14, 2018 – almost a year after the first bankruptcy case was dismissed. As stated above, during that time, neither Las Martas nor Barreto were in bankruptcy, and nothing prevented Condado from foreclosing the real property. However, Condado failed to do so and continued obtaining payments from Las Martas' milk sales production.

In the second bankruptcy case, after much litigation, as with this case, this Honorable Court determined that the only collateral pertaining to Las Martas securing Condado's debt was the Milk Quota and that Condado had no security interest over the post-petition accounts receivables from the sale of raw milk. Condado appealed this decision with the District Court. Even though Condado requested a stay pending appeal and the same was denied by this Honorable Court, Condado continued to unlawfully retain all proceeds from the sale of raw milk by Debtor and failed to refund all amounts received from its sale after the bankruptcy was filed. In another bad faith legal tactic, Condado, while retaining all the funds to which it was not entitled, it filed a Motion to Dismiss for unreasonable delay in obtaining confirmation and lack of feasibility of plan, notwithstanding the obvious impossibility of Debtor to file a feasible plan without access to the funds it needed for its operation and to which this Honorable Court had already concluded Condado had no right to retain. This second bankruptcy case was dismissed on April 22, 2025, and, as a result, the appeal, which had been thoroughly briefed by the parties regarding the controversy as to the extent of Condado's liens, was dismissed as well.

Considering the above, Debtor had no other choice but to file the third bankruptcy. Debtor circumstances have changed as in the second bankruptcy he had obtained a Court determination that ensures his access to the proceeds of the milk sales. Also, its production has improved, despite of Condado's unlawful retention of part of the milk proceeds. Nevertheless, even though the Court had determined in the previous case that Condado did not have a lien over Debtor's accounts receivables, it filed a Motion to Prohibit Use of Cash Collateral and for Entry of Order Authorizing Condado 5, LLC to Seek and Collect Proceeds (Docket 9), acting as if it had an

enforceable lien over the accounts receivables. Once again, after extensive litigation, this Court determined that Condado did not have a lien over Debtor's post-petition account receivables and that the only collateral securing Condado's claim against Las Martas was a Milk Quota with a value of $117,400.00.

On September 29, 2023, the case was again dismissed for "continuing loss to or diminution of debtor's state and absence of reasonable likelihood of rehabilitation". Reconsideration was denied., debtor appealed. Even though the dismissal was pending appeal and, therefore, the bankruptcy case had not yet been closed, Condado retained funds which the Court had already established it had no right to, receiving over $207,000 during the pendency of the dismissal. Since the value of the Quota is $117,400.00, Condado has already received substantially almost twice the value of its collateral and definitively more than what could be considered adequate protection. However, Condado acting in bad faith has purposely failed to comply with this Court's order to prepare and file a Joint Report regarding the distribution of consigned funds to which, per this Court's determination, it has not lien. Condado's continues to disregard this Court's orders, insisting that this Court has no jurisdiction to enforce its own unstayed and not appealed ruling under the divestiture rule, even though the Court has already analyzed and rejected this argument.

### III. CONCLUSION

By failing to comply with this Court's orders while retaining Debtor's funds over which it has no lien, Condado has created a situation in which Las Martas cannot present a feasible plan and has no other choice but to file multiple bankruptcies. If,

in the previous case, Las Martas had access to the funds to which the Court already decided it was entitled, and the appeal had run its course, the filing of this third bankruptcy may have been prevented. It is Condado's refusal to comply with the Court's orders that had forced Debtor to file multiple bankruptcies without obtaining plan confirmation. Condado cannot request dismissal for a situation of its own creation. Under the Doctrine of "Unlean Hands", Condado's misconduct, inequitableness and bad faith prevents the relief sought and in consequence its motion to dismiss this case should be denied.

WHEREFORE for the reasons described above, the Trustee respectfully prays for this Honorable Court to deny Condado's Motion to Dismiss.

In San Juan, Puerto Rico this **13th** day of August 2025.

### Certificate of Service

The Chapter 12 Standing Trustee herewith hereby certify that on this same date, notice of the foregoing will be sent to Debtor's principal, Mr. Juan Manuel Barreto Ginorio, first class mail to: **HC 05 Box 91635, Arecibo, PR, 00612**, and to his former spouse, Mrs. Maria Elena Hernandez Ruiz, first class mail to: **Bo. Barrio Pueblo, #79 Calle Petunia, Hatillo, PR 00659**. Also on this same date, we electronically filed the foregoing with the Clerk of the Court using the Next Gen CM/ECF system which will send notification of such filing to all Next Gen CM/ECF participants in this case, including the Debtor's counsel, the Condado 5, LLC, the U.S. Trustee for Region 21, and all parties requesting notice.

In San Juan, Puerto Rico this 12th day of August 2025.

JOSE R. CARRION
CHAPTER 12 STANDING TRUSTEE
P.O. Box 9023884
Old San Juan Station,
San Juan, P.R. 00902-3884
Tel (787) 977-3535
FAX (787) 977-3550

By: /s/ *José R. Carrión*
USDC No. 203712

*TRUSTEE'S OPPOSITION ....*  19

---

[i] The Bankruptcy Appellate Panel for the First Circuit BAP has described the Divestiture Rule as follows: Generally, a notice of appeal divests the lower court of jurisdiction over those matters on appeal. See Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Id. (citations omitted); see also Watson v. Boyajian (In re Watson), 403 F.3d 1, 6 (1st Cir. 2005) (citing Griggs). This principle, known as the "divestiture rule," is a judge-made doctrine designed to promote judicial economy and prevent the confusion that would result from two courts addressing the same issue. 20 James Wm. Moore, Moore's Federal Practice: Civil ¶ 303.32[1] (3d ed. 2009); see also Neary v. Padilla (In re Padilla), 222 F.3d 1184, 1190 (9th Cir. 2000) (citations omitted); In re Whispering Pines, 369 B.R. at 759 (citations omitted). "The divestiture of jurisdiction rule is, however, not a per se rule." United States v. Rodgers, 101 F.3d 247, 251 (2d Cir. 1996). "[I]ts application is guided by concerns of efficiency and is not automatic." Id. (citations omitted). "Whatever the superficial attractiveness of a per se rule that filing of a notice of appeal automatically divests the district court of jurisdiction as to matters covered by the notice, such a rule is subject to abuse, and [the court's] application of the divestiture rule must be faithful to the principle of judicial economy from which it springs." Id." In Re Old Cold, LLC 602 B.R. 798, 822 (1st Cir. BAP 2019)

[ii] The courts have determined that parties requesting a stay of the proceedings pending appeal under Fed. R. of Bank. P. 8007, the must show: (a) whether or not the applicant has made a strong showing of success on the merits; (b) whether the applicant will receive irreparable harm if remedy is not granted; and (c) if granting the stay will affect other parties; and (d) where the public interest lies. Condado has not addressed any of these matters. Acevedo-Garcia v. Vera-Monroig, 296 F. 3d 13 f. 3 (1st Cir. 2002)