## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 22-02380 (ESL) |
| LAS MARTAS, INC. | CHAPTER 12 |
| Debtor. | |

**MOTION IN COMPLIANCE WITH ORDER**
(Related ECF No. 267)

TO THE HONORABLE COURT:

COMES NOW secured creditor Condado 5, LLC ("Condado"), through the undersigned counsels, and respectfully states and prays as follows:

Procedural Background

1. On August 21, 2025, the Debtor filed its *Position on Adequate Protection* (the "*Debtor's Position*", ECF No. 263).

2. On August 26, 2025, the ordered Condado to state its position with regards to the *Debtor's Position*. See *Order*, ECF No. 267.

3. In compliance, Condado hereby states its position with regards to the *Debtor's Position*.

4. The Debtor's milk quota serves as Condado's collateral in the instant case and the primary source of Condado's secured interest in this case. The Debtor has continued (and continues) to use and benefit from the milk quota throughout the bankruptcy. While in bankruptcy, the Debtor has been enjoying the protection of the automatic stay while Condado's collateral is effectively being used without compensation.

5. The Debtor has provided no meaningful protection to Condado's interest in the milk quota while it has been in bankruptcy in the instant Third Bankruptcy Case. From the outset of this case to date, the Debtor has failed to offer or provide any meaningful adequate protection to Condado for the use of the milk quota. In particular, no cash payments, periodic payments, or other forms of compensation were made to Condado during the initial pendency of the case to protect Condado against any decline or risk to its collateral.

6. Indeed, the Debtor's own submission confirms that Condado received nothing from the Debtor's milk proceeds during that entire period. The Debtor did not escrow funds, provide replacement liens, or take any other steps to preserve the value of Condado's interest in the quota while the automatic stay shielded the Debtor. As discussed below, this lack of adequate protection has persisted for years, and continues to this day, demonstrating a pattern of neglect of Condado's rights.

7. The only time Condado received any funds related to the milk quota was when the bankruptcy case was dismissed, that is, while the Debtor was *not* in bankruptcy, and briefly after it was reinstated, not due to any voluntary payments by the Debtor. As the Debtor acknowledges, Condado collected certain milk proceeds during the period the case was dismissed (and the automatic stay was not in effect), and a small amount shortly after reinstatement. Specifically, the timeline of payments is as follows:

8. First, from August 16, 2022 (Petition Date) through September 29, 2023 (Dismissal Date) Condado received $0.00 from the Debtor's milk proceeds. During this initial 13-month period under Chapter 12 protection, the Debtor paid absolutely nothing to Condado for the use of the milk quota.

9. Second, from September 29, 2023 (case Dismissal) through March 5, 2025 (Date the Dismissal was Vacated) Condado received approximately $190,489.65 from the Debtor's milk proceeds. These funds were obtained *while the case was dismissed*, in other words, *at a time when there was no automatic stay in place*. During that interval, Condado was free to enforce its rights against the milk quota and related proceeds outside of bankruptcy, which is how these collections occurred. Importantly, these receipts were not the result of any adequate protection arrangement ordered by this Court or agreed to by the Debtor; rather, they were collected *despite* the Debtor's bankruptcy, not because of it. **To reiterate, the Loan with Condado in this case has been past due and payable since January 12, 2015, to wit, over ten (10) years ago**. See *Amended Note*, Proof of Claim No. 1, Part 5, p. 22.

10. <u>Finally</u>, from March 5, 2025 (Reinstatement of the Case) through June 3, 2025 (Date of Last Payment Received) Condado received only $17,286.28 from the milk-processing plant during this post-reinstatement period. This relatively small amount was obtained in the early months after the case was reinstated (apparently under the prior arrangements still in effect with the milk plant). After June 3, 2025, Condado has received no further payments or adequate protection distributions from the Debtor's operations.

11. These figures make clear that the Debtor itself has never affirmatively provided Condado with adequate protection payments during the pendency of the bankruptcy case. No payments at all were made while the automatic stay was initially in effect. The substantial funds Condado collected (the ~$190,489) came during the hiatus when the case was dismissed and Condado had to protect its interests on its own outside of bankruptcy. The modest $17,286 collected after reinstatement was likewise not part of any Court-approved adequate protection plan, but rather a carryover from the period of dismissal and ensuing legal scramble, and only because these funds were sent directly by the milk processing plant to Condado.

12. Thus, the Debtor cannot credibly claim that it has kept Condado "adequately protected". To the contrary, Condado's recovery of some proceeds was achieved in spite of the Debtor's bankruptcy, not because of any adequate protection provided by the Debtor.

13. Since the case was reinstated in March 2025 (and the automatic stay reinstated), the Debtor has resumed operating under Chapter 12 without making adequate protection payments to Condado. Other than turning over the $3,000 receivable (which the Debtor concedes is Condado's collateral), the Debtor proposes no further cash payments and/or safeguards for Condado's interest going forward. Instead, the *Debtor's Position* essentially argues that Condado has already gotten enough money in the past and that no ongoing protection is necessary. This position is flawed both legally and factually. Adequate protection is meant to protect the secured creditor's interest prospectively as the case continues, and the Debtor's past failure to provide protection cannot be excused by pointing to funds that Condado managed to obtain outside of the bankruptcy process.

14. The Debtor argues that Condado has been "overpaid" for adequate protection, claiming that the total amount Condado received (approximately $207,775.93) exceeds even the full value of the milk quota collateral. See *Debtor's Position*, ECF No. 263, pp. 2-3, ¶ 9. The Debtor notes that it values the quota at about $117,400 (using $2/quart) and, even under a higher $5/quart valuation ($293,500), calculates that three years' worth of interest or "present value" payments would range from roughly $30,000 to $90,000. Because Condado's collections total ~$207k, the Debtor concludes that "no matter how one looks at it", Condado has already received more than any conceivable adequate protection payment would have been. Id. In short, the Debtor asserts Condado is ahead of the game and thus not entitled to anything further (and indeed suggests Condado has been paid in excess of its collateral's value).

15. Condado disagrees with the Debtor's "overpayment" argument. Fundamentally, the Debtor is attempting to take credit for payments it never made in bankruptcy. The vast majority of the $207,775 that the Debtor cites came in during the case's dismissal (September 2023 to March 2025), *when the Debtor was outside of bankruptcy and not subject to the automatic stay*, and Section 361 was inapplicable. Those funds were obtained by Condado through its own collection efforts or arrangements with the milk processor when there was no automatic stay in a loan that has been past due and payable in its entirety over 10 years ago, *not* from any effort by the Debtor to protect Condado while in bankruptcy.

16. It is well-settled that adequate protection under 11 U.S.C. § 361 and § 362(d)(1) is concerned with preventing a decrease in the creditor's interest while the automatic stay is in place. During the dismissal period, there was no stay in place, hence, no adequate protection payments *per se* were required by the Bankruptcy Code at that time (and indeed none were ordered or provided). Condado's recovery of $190,489.65 during that interval was simply the exercise of Condado's non-bankruptcy rights: *it was not a substitute for adequate protection during the bankruptcy*.

17. The Debtor cannot retroactively declare that those outside collections "satisfied" its adequate protection obligations. That is tantamount to having a retroactive imposition of the

automatic stay, which has been disallowed in our First Circuit. See In re de Jesus Saez, 721 F.2d 848, 851-852 (1st Cir. 1983); Lomagno v. Salomon Bros. Realty Corp. (In re Lomagno), 320 B.R. 473 (B.A.P. 1st Cir. 2005), aff'd 429 F.3d 16 (1st Cir. 2005) (disallowing the retroactive application of the automatic stay); Laurel Valley Dev., LLC v. Parker (In re Parker), 624 B.R. 222, 230 (Bankr. W.D. Pa. 2021) ("there is overwhelming support for the proposition that the *vacatur* of an order of dismissal of a [bankruptcy] case does not retroactively impose the automatic stay"); Lashley v. First Nat'l Bank of Live Oak (In re Lashley), 825 F2d. 362, 364 (11th Cir. 1987), cert. denied, 484 U.S. 1075 (1988) (bankruptcy court lacks the power to retroactively impose the automatic stay); Singleton v. Countrywide Home Loans, Inc. (In re Singleton), 358 B.R. 253, 261 (D.S.C. 2006) (the Bankruptcy Court had no authority to retroactively reimpose the automatic stay); Sewell v. MGF Funding, Inc. (In re Sewell), 345 B.R. 174, 179-81 (B.A.P. 9th Cir. 2006) (the Bankruptcy Court did not have discretion to retroactively impose the automatic stay); Frank v. Gulf States Finance Co. (In re Frank), 254 B.R. 368, 374 (Bankr. S.D. Tex. 2000) (automatic stay terminated upon dismissal, and repossession of vehicle did not violate the automatic stay because reinstatement of the case occurred after date of repossession); Holloway v. Valley Auto Sales (In re Holloway), 565 B.R. 435, 438-439 (Bankr. M.D. Ala. 2017) (*vacatur* of order of dismissal does not retroactively reinstate automatic stay); In re Rivera, 280 B.R. 699, 701 (Bankr. S.D. Ala. 2001) (finding no authority to retroactively reinstate the automatic stay for the time period between date of original dismissal and reinstatement of the case); Weston v. Rodriguez (In re Weston), 110 B.R. 452 (E.D. Cal. 1989), aff'd, 967 F.2d 596 (9th Cir. 1992) (a foreclosure sale after dismissal was not violation of automatic stay even where dismissal was reversed on appeal and bankruptcy reinstated). To do so would invert the purpose of adequate protection. The Debtor provided *no* protection during the time it was enjoying the automatic stay, and once the case was dismissed Condado helped itself to its collateral. Those proceeds cannot be used as an offset to deny Condado the protection it is entitled to *while the stay is in effect*.

18. The Debtor also points to the $17,286.28 Condado received between March 5, 2025 and June 3, 2025 (after the case was reinstated) as part of the $207k total. Again, this was

not the result of any deliberate adequate protection arrangement by the Debtor. In fact, these payments resulted from the milk processing plant continuing to divert payments pursuant to pre-reinstatement instructions until matters were sorted out. Regardless, $17,286 over several months is a very modest amount in the context of Condado's secured claim (which is hundreds of thousands of dollars) and in relation to the ongoing accrual of interest on that claim. Those funds certainly did not fully protect Condado from the risk of the Debtor's continued use of the quota through mid-2025. And tellingly, since June 3, 2025, Condado has received nothing further, meaning for the last three months (and counting) Condado has once again been left without any adequate protection as the Debtor continues to utilize the milk quota.

19. Condado should not be penalized for having belatedly recovered some funds during a gap in the bankruptcy under non-bankruptcy law. Rather, the focus now should be on the path forward, ensuring that Condado's interest is protected for the remainder of this case. The Debtor cannot erase its past obligations by pointing to coincidental collections outside of its control. If anything, those collections demonstrate that Condado's collateral (the milk proceeds from the quota) was substantial, and that Condado would have been far worse off had it *not* acted during the dismissal period. The bottom line is that the Debtor, *while in bankruptcy*, has never voluntarily paid adequate protection, and Condado remains exposed to risk. Especially considering that this is the **Debtor's Third Bankruptcy Case after the dismissal of its previous two bankruptcy cases**. See procedural background in In re Las Martas, No. 22-02380 (ESL), ECF No. 114, 2023 Bankr. LEXIS 2413, 2023 LX 43218, 2023 WL 6413170 (Bankr. D.P.R. Sep. 29, 2023).

20. The Debtor also suggests that if the Court were inclined to require an ongoing adequate protection payment, it should be limited to about $831.58 per month (which is $9,979 per year) and that even this token amount should be "credited against the money already paid to Condado." *Debtor's Position*, ECF No. 263, p. 3, ¶ 10. In other words, the Debtor argues it has a $207,000 "credit" and need not actually pay anything going forward until that credit is exhausted. This proposal is untenable considering the long default trajectory of the Loan over the years in

the past bankruptcy cases previously dismissed and the totality of the circumstances. See factual background in the *Opinion and Order*, ECF No. 65, pp. 2-4. As explained, the money "already paid to Condado" was not provided by the Debtor as part of any adequate protection in bankruptcy, most of it came when the Debtor was out of bankruptcy, when Sections 361 and 362 were not in effect. There is no legal basis to treat those collections as a prepayment of adequate protection for the Debtor's future use of the collateral.

21. Adequate protection under § 361 is implicated during pendency and applicability of § 362, that is, while the Debtor is in bankruptcy and the automatic stay is in place, and is meant to safeguard the creditor's interest *during the bankruptcy case* on an ongoing basis, typically through contemporaneous periodic payments or other contemporaneous relief. See Thomas O. Kelly III, Compensation for Time Value as Part of Adequate Protection During the Automatic Stay in Bankruptcy, 50 U. Chi. L. Rev. 305, 366-309 (1983) ("'Adequate protection' must be provided in every situation *in which the secured creditor is not permitted to foreclose*. … Under the Code, adequate protection under § 361 refers to the protection of secured creditors *during the [automatic] stay*") (italics added). "Although Congress recognized the need to enjoin lien enforcement, it tempered the automatic stay by imposing counterbalancing safeguards. One of these safeguards is the right of a secured creditor to 'adequate protection' of its interest *during the pendency of the bankruptcy case*." Lauris N. Molbert, Adequate Protection for the Undersecured Creditor: Compensation for the Delay in Enforcing Foreclosure Rights, 60 N.D. L. Rev. 515, 518 (1984) (italics added).

22. Plainly, adequate protection is not a bookkeeping exercise where a debtor can claim an off-the-record surplus and pay nothing more. Adopting the Debtor's position would encourage a dangerous precedent: a debtor could avoid paying adequate protection, later claim the creditor "got paid anyway" through self-help or by pre-petition payments, and then refuse to pay future post-petition adequate protection. This is inequitable and unsupported by the Bankruptcy Code.

23. For all the foregoing reasons, Condado respectfully submits that the Debtor has failed to provide meaningful adequate protection of Condado's interest in the milk quota throughout this Chapter 12 case while the case has been active and the automatic stay has been in place. The Debtor's assertion that Condado has been "overpaid" outside of bankruptcy by way of non-bankruptcy law is not supported by the facts or the law. To the contrary, Condado only obtained funds when the case was dismissed, which cannot be counted as the Debtor's fulfillment of its statutory duties under the Bankruptcy Code. The result is that Condado's secured position has been allowed to stagnate (and risk erosion) while the Debtor continues to benefit from the use of the milk quota and the protections of bankruptcy. Accordingly, Condado requests that the Court require the Debtor to provide appropriate adequate protection forthwith or, failing that, to grant relief from the automatic stay under § 362(d)(1) so that Condado may protect its interest directly.

24. The instant motion is for informational purposes only. Condado hereby reserves any and all remedies and/or rights it has asserted or may assert with regard to the outstanding contested matters.

## Prayer for Relief

WHEREFORE, Condado respectfully moves the Court to take notice of the foregoing and deem the *Order* (ECF No. 267) complied.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 9th day of September 2025.

[Space intentionally left blank. Signature page to follow.]

## Certificate of Service

We hereby certify on this same date, we electronically filed the foregoing with the Clerk of the Court using the Next Gen CM/ECF system, which will send notification of such filing to all Next Gen CM/ECF participants in this case, including the Debtor's counsel, the Chapter 12 Trustee, the US Trustee for Region 21, and all parties that requested notice.

September 9, 2025  
San Juan, PR

**Ferraiuoli** LLC

Attorneys for Condado  
American International Plaza  
250 Muñoz Rivera Avenue  
6th Floor  
San Juan, PR 00918  
PO Box 195168  
San Juan, PR 00919-5168  
Phone: (787) 766-7000  
Facsimile: (787) 766-7001

*/s/ Gustavo A. Chico-Barris*  
GUSTAVO A. CHICO-BARRIS  
USDC-PR No. 224205  
gchico@ferraiuoli.com

*/s/Tomás F. Blanco-Pérez*  
TOMAS F. BLANCO-PEREZ  
USDC-PR No. 304910  
tblanco@ferraiuoli.com