**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | CASE NO. 22-02380 (ESL) |
| LAS MARTAS, INC. | CHAPTER 12 |
| Debtor. | |

**CONSOLIDATED REPLY TO OPPOSITIONS TO MOTION TO DISMISS**
(Related ECF Nos. 207, 256 and 259)

TO THE HONORABLE COURT:

COMES NOW Condado 5, LLC ("Condado") through the undersigned counsel, and respectfully states and prays as follows:

Factual and Procedural Background

1. On June 26, 2025, Condado filed a *Motion to Dismiss* (ECF No. 207).

2. On August 12, 2025, the Chapter 12 Trustee filed an *Opposition to Motion to Dismiss* (the "*Trustee's Opposition*", ECF No. 256).

3. On August 18, 2025, the Debtor filed a *Response to Motion to Dismiss* (the "*Debtor's Opposition*", ECF No. 259) (collectively with the *Trustee's Opposition*, the "Oppositions").

4. The Oppositions do not dispute the clear record of the Debtor's bad faith and protracted abuse of the bankruptcy process. The totality of the circumstances, including the Debtor's two prior bankruptcy cases (both dismissed for cause), the unchanged and deteriorating financial condition of the Debtor, and the strategic timing of this third bankruptcy filing to derail state foreclosure proceedings, demonstrates that this case was filed and prosecuted in bad faith. In substance, this Chapter 12 case is a litigation tactic aimed at preventing Condado from enforcing a debt that has been in default for over a decade, rather than a good-faith effort to reorganize. Accordingly, cause exists under 11 U.S.C. § 1208(c) to dismiss this case.

Applicable Law and Discussion

A.    The Debtor, Not Condado, Is Responsible for the Delays in Reorganization.

5.   Both the Debtor and the Trustee attempted to shift blame to Condado for the Debtor's failure to achieve reorganization, suggesting that Condado's conduct caused the Debtor's delays. This contention is unsupported by the record. The undisputed history of this Debtor in bankruptcy shows a pattern of delay and inability to confirm a plan that is attributable to the Debtor's own actions and financial reality, not to any misconduct by Condado.

6.   First, the Debtor has already had two prior Chapter 12 cases before the present case, and each was dismissed by the Court for the Debtor's failures. The Debtor's first Chapter 12 case (filed in 2011) was dismissed in January 2018 for material default of a confirmed plan and unreasonable delay prejudicial to creditors (See Bankr. Case No. 11-05236-ESL12, ECF Nos. 386, 387). The Debtor's second Chapter 12 case (filed in December 2018) likewise ended in dismissal on April 22, 2021, for unreasonable delay and the Debtor's failure to timely file a confirmable plan (See Opinion and Order, Bankr. Case No 18-07304-ESL12, ECF No. 251, 2021 Bankr. LEXIS 1075, 2021 WL 8200008 (Bankr. D.P.R. Apr. 22, 2021)). These dismissals, one of which was affirmed on appeal by the Bankruptcy Appellate Panel (See Vaqueria Las Martas, Inc. v. Condado 5, LLC (In re Vaqueria Las Martas, Inc.), 638 B.R. 482 (B.A.P. 1st Cir. 2022)), reflect that the Debtor, *over many years*, persistently failed to perform and could not propose a feasible reorganization. The dilatory tactics of the Debtor were so pronounced that the prior court's opinion gave a detailed recount of the Debtor's repeated delays (See Opinion and Order, Bankr. Case No 18-07304-ESL12, ECF No. 251, 2021 Bankr. LEXIS 1075, 2021 WL 8200008 (Bankr. D.P.R. Apr. 22, 2021)). In short, long before the disputes over cash collateral in the current case, the Debtor had already established a track record of delay and default in bankruptcy.

7.   Second, the Debtor's current Chapter 12 case has followed the same pattern. This case was filed on August 16, 2022, making it the Debtor's third bankruptcy petition. After a year of litigation, the Court dismissed this case on September 29, 2023, due to the Debtor's continuing

losses and inability to confirm a feasible plan (ECF No. 148). Notably, the Court found that the Debtor's financial situation had only worsened since the prior cases, with no substantial change in circumstances aside from increasing debt and diminishing assets, and that "there is no hope of rehabilitation" (*Opinion and Order Dismissing Case*, Bankr. Case No. 22- 02380-ESL12, ECF No. 148, pp. 33-34, 2023 Bankr. LEXIS 2413, at *59, 2023 WL 6413170, at *17). The Court observed that the Debtor had "consistently demonstrated for the past eleven years (in bankruptcy) that [it] do[es] not have a viable farming operation" (Id.), that the estate was steadily diminishing, and that the Debtor "does not operate a sustainable milk producing operation" capable of meeting its expenses and plan obligations (Id.). These findings underscore that any delays in confirming a plan have been due to the Debtor's own operational failures and insolvency, not any behavior by Condado. Indeed, the Debtor's debt to Condado has been fully matured since January 2015 (over ten years ago), yet the Debtor remains unable to pay that obligation or reorganize its business. As the Court succinctly noted, the Debtor "may not continue to speculate with Condado's money." (Id.).

8.    Third, the Trustee's suggestion that Condado's post-dismissal retention of certain milk sale proceeds forced the Debtor into this third bankruptcy is both legally and factually misplaced. To begin, allegations of creditor misconduct do not excuse a debtor's bad faith or erase cause for dismissal. Section 1208(c) focuses on the Debtor's conduct and the viability of the reorganization, and the Court's duty is "to protect the interests of creditors and parties in interest" and prevent abuse of the process. See In re Vaqueria Las Martas, Inc., No. 18-07304-ESL12, 2021 Bankr. LEXIS 1075, at *14, 2021 WL 8200008, at *5 (Bankr. D.P.R. Apr. 22, 2021). Here, even setting aside the dispute over the milk proceeds, the objective record shows the Debtor was suffering continuing losses and was unable to propose a confirmable plan, which is why the Court (in 2023) dismissed the case for cause. The Debtor's inability to reorganize cannot be pinned on Condado. The doctrine of unclean hands cannot be used by the Debtor to justify an abuse of the bankruptcy process. A debtor who has repeatedly failed to meet its obligations

cannot evade dismissal by pointing to the creditor's purported bad faith; as shown above, the Debtor's own history of delay and default is the central cause of its predicament.

9. In sum, the record establishes that the Debtor, not Condado, is responsible for the protracted and fruitless reorganization efforts spanning the last decade. The Debtor's pattern of delay was firmly in place long before the recent disputes over cash collateral, and it is the Debtor's consistent inability to operate profitably and propose feasible plans that has led to serial bankruptcy filings. Condado's enforcement of its rights as a secured creditor is not the cause of the Debtor's failures. Rather, it is the Debtor's failures that have compelled Condado to repeatedly seek relief. Accordingly, the "unreasonable delay" in this case (and the prior cases) is attributable squarely to the Debtor. Cause for dismissal under § 1208(c)(1) has been amply demonstrated.

B. *The Debtor's Serial Filings Were Not in Good Faith and Were Intended to Frustrate Foreclosure.*

10. The Debtor contends that its bankruptcy filings were made in good faith and not for the purpose of frustrating Condado's foreclosure efforts. The factual record tells a very different story. This third bankruptcy case was filed as part of an orchestrated effort to thwart Condado's foreclosure and collection efforts, rather than to genuinely reorganize the Debtor's financial affairs. Indeed, the Debtor's own principal has effectively admitted that the bankruptcy route is being used as a weapon to forestall foreclosure.

11. Most telling is the sworn testimony of the Debtor's principal, Mr. Juan M. Barreto Ginorio. When questioned on the record about his response if Condado succeeded in obtaining a foreclosure judgment against the farm property, Mr. Barreto candidly acknowledged that he would file for bankruptcy to stop that foreclosure (See *Transcript*, ECF No. 182, p. 39, lines 22-25, and p. 40, lines 1-7), with the express purpose "to stop the execution of a foreclosure judgment". This admission is powerful evidence of the Debtor's motive. It confirms that the Debtor (through its principal) views bankruptcy not as a means to restructure debts in an orderly way, but as a last-ditch tool to prevent Condado from enforcing its mortgage. In short, the Debtor's filing

was "motivated by or targeted at one sole creditor" (Condado) which is the hallmark of a bad-faith filing. See In re Stevenson, 583 B.R. 573, 581 (B.A.P. 1st Cir. 2018). As the Motion to Dismiss succinctly put it, the Debtor's pattern of conduct is aimed at thwarting Condado's foreclosure and collection efforts on a loan that's been past due and payable over 10 years, making this filing nothing more than an attempt to frustrate a creditor. Such conduct is both bad faith and a two-party dispute.

12.    The Debtor argues that it filed this case in order to "pay its debts to the best of its ability" (*Debtor's Opposition*, ECF No. 259, p. 7), not to stop a foreclosure of property owned by a third party. But this self-serving characterization is flatly contradicted by the chronology of events. On August 24, 2022, just days after filing the petition, the Debtor rushed to the Puerto Rico Court of First Instance and moved to stay the foreclosure proceedings. The timing speaks volumes: Condado's foreclosure case (filed in 2021) had been progressing toward a likely judgment (Condado had a summary judgment motion pending), and the Debtor made its Chapter 12 filing at the eleventh hour to invoke the automatic stay and halt that process. The Debtor's immediate action to notify the state court of the bankruptcy and seek a stay demonstrates that stopping the foreclosure was indeed a primary purpose of the filing. It is disingenuous for the Debtor to claim otherwise. The bottom line is that the Debtor's use of the automatic stay had the intended effect of freezing the foreclosure action against the farm and shielding the Debtor's principal's asset from creditor execution, at least temporarily.

13.    Finally, the Debtor points to certain changes in circumstances, for example, an increase in its cattle herd at the time of filing, and the resolution of the dispute over milk proceeds (*Debtor's Opposition*, ECF No. 259, p. 7), to argue that this case was filed with genuine reorganization prospects. But those purported improvements have proven fleeting or illusory. The Debtor admits that its herd size diminished again due to the very cash collateral dispute it blames on Condado (Id.), and by the time of the oppositions, the Debtor still had no confirmed plan on file. In fact, the Court's findings in its *Opinion and Order Dismissing Case* make clear that nothing

fundamental had changed for the better: the Debtor's asset base and income remained insufficient, and the looming foreclosure on the farm (the Debtor's place of operations) threatened the viability of any plan. The natural disasters in 2017 (which the Debtor cites as the reason for its first plan's failure) do not explain or excuse the Debtor's inability to reorganize in the many years since. By 2023, the Court concluded that the Debtor's operation "has continued to diminish for the past four years and nine months" and that "there is no reasonable likelihood" of rehabilitation. *Opinion and Order Dismissing Case*, Bankr. Case No. 22- 02380-ESL12, ECF No. 148, pp. 33-34, 2023 Bankr. LEXIS 2413, at *59, 2023 WL 6413170, at *17 (boldface and underline added). Against this backdrop, the Debtor's insistence that it is acting in good faith simply cannot be taken at face value. All objective signs point to a bad-faith filing aimed at delaying Condado's collection efforts, rather than a good-faith effort to promptly restructure and pay creditors.

14. In sum, the Debtor's third bankruptcy filing was not borne of sudden bona fide change or necessity, but rather was a calculated move to interfere with Condado's foreclosure of a long-overdue debt. The Debtor's own words and actions belie the claimed good faith. This Court and others have recognized that filing a bankruptcy solely to avoid payment to a single creditor or to hinder a creditor's actions is a paradigmatic lack of good faith. See Gier v. Farmers State Bank (In re Gier), 986 F.2d 1326, 1330 (10th Cir.1993) (debtor motivated by desire not to pay rather than inability to pay); In re Virden, 279 B.R. at 410 (dismissal for bad faith when creditor's filing was motivated by a desire to avoid payment to a single creditor rather than by any inability to meet his liabilities); In re Mattson, 241 B.R. 629, 634 (Bankr. D. Minn. 1999) (dismissing case with prejudice, the court found that there was only one creditor of any substance, that the debtors did everything in their power to stall and avoid payment of the debt pre-petition, and that the Chapter 13 case was filed solely to avoid payment of this debt); In re Ramji, 166 B.R. 288, 290 (Bankr. S.D. Texas 1993) (dismissing the case upon a finding of bad faith when the debtor filed the petition solely to avoid payment to a single creditor). That is exactly the scenario here.

Therefore, cause exists to dismiss this case for bad faith under the Bankruptcy Code's broad "for cause" standard (as part of the Court's § 1208(c) analysis).

C. *The Automatic Stay Was Invoked to Protect Property the Debtor Does Not Own, Illustrating the Abuse of Process*

15. The Debtor and Trustee both argue that this bankruptcy case does not impact the foreclosure of property not owned by the Debtor (namely, the farm property on which the dairy operates, which is owned by Mr. Barreto personally) (See *Trustee's Opposition*, ECF No. 256, p. 13; *Debtor's Opposition*, ECF No. 259, p. 1). This argument attempts to downplay the Debtor's misuse of the automatic stay, but it is not supported by the facts. In reality, the Debtor and its insiders have repeatedly exploited the bankruptcy stay to halt foreclosure proceedings against the Barreto farm, even though that property is not part of this Debtor's estate, which underscores the abusive purpose of these filings.

16. As noted above, the Debtor's August 2022 petition immediately prompted a request to stay the foreclosure case, despite the farm being owned by Mr. Barreto. This was not an isolated event. The record shows a concerted, multi-party effort to continuously stall the foreclosure through bankruptcy filings by different parties (See Summary of Pleadings made by the Debtor and its insiders, ECF No. 207, pp. 4-10). When this Court dismissed the Debtor's case in September 2023 (terminating the stay as to Las Martas, Inc.), Condado moved again to advance its foreclosure in the Commonwealth court. In response, Mr. Barreto himself filed a personal bankruptcy (Case No. 23-03681) on November 9, 2023, and immediately notified the state court to stay the foreclosure proceedings due to his individual Chapter 12 case (Id.). The very next day, November 10, 2023, Mr. Barreto's former spouse (a co-guarantor on the loan) likewise asked the court to stay the foreclosure, citing the pending bankruptcies of both Las Martas and Mr. Barreto (Id.). And just weeks later, on November 27, 2023, the related entity JM Dairy, Inc. joined in requesting a stay of the foreclosure, again invoking the bankruptcy filings of Las Martas and Mr. Barreto (Id.).

17. This pattern of serial filings by the Debtor and its insiders to freeze the foreclosure on the Barreto farm is exactly what Condado has argued, and what the Debtor denies. The Debtor insists the case does not impact the foreclosure of third-party property, but the only reason the foreclosure has not been completed after years of litigation is because at every turn, one of the Barreto-affiliated parties has been in bankruptcy and has pleaded for a stay of the foreclosure.

18. Indeed, Condado's Motion to Dismiss detailed how the Debtor, Mr. Barreto, his ex-spouse, and JM Dairy have joined efforts to thwart, stall and/or delay the foreclosure through a barrage of filings, expressly moving for the staying of the Foreclosure Case at each opportunity. The state court record (summarized in the *Motion to Dismiss*, ECF No. 207, pp. 4-10) is replete with examples of these tactics, some of which even resulted in sanctions against the Debtor's side. It is therefore untenable for the Debtor to claim that its bankruptcy has no effect on the foreclosure. On the contrary, shielding the Barreto farm from foreclosure has been a central goal of these bankruptcies.

19. In summary, the oppositions' assertion that this case "does not impact" the foreclosure of non-estate property is simply wrong. The impact has been very real, by design: the Debtor's filing (and the subsequent filings by insiders) have kept the foreclosure in limbo for years. This factor strongly supports dismissal. The use of Chapter 12 as a shield for a third party's property, especially in the context of serial filings, confirms that the Debtor's case was not filed for a valid reorganization purpose. It is additional evidence of bad faith and cause for dismissal.

D. **This Case Is Essentially a Two-Party Dispute Between the Debtor and Condado.**

20. The Debtor also argues that this bankruptcy is *not* a two-party dispute because it has "many" other creditors who will be affected (*Debtor's Opposition*, ECF No. 259, p. 6). The presence of other creditors in the schedules does not change the reality that, at its core, this case revolves around a single, bitter dispute between the Debtor (and its principal) and Condado. The genesis and trajectory of all three of the Debtor's bankruptcy cases have been dictated by the conflict with Condado, and virtually every major event in these cases has been precipitated by

that one relationship (the default on Condado's loan and the efforts to foreclose on the farm). Courts have recognized that cause for dismissal exists where a debtor's reorganization essentially involves the resolution of a two-party dispute and the debtor has filed in an effort to gain an advantage over one creditor. See In re Stevenson, 583 B.R. 573, 581 (B.A.P. 1st Cir. 2018) (record suggested that debtor's bankruptcy filing was motivated by or targeted at one single creditor and that it was part of a pattern of conduct aimed at thwarting that creditor's eviction efforts); In re Bared Espinosa, 2006 Bankr. LEXIS 3829, 2006 WL 3898379, at *4 (Bankr. D.P.R. Jan. 27, 2006) (dismissing the bankruptcy case where it was merely a "two-party dispute"); In re Spade, 258 B.R. 221 (Bankr. D. Colo. 2001) (dismissing involuntary chapter 7 petition where bankruptcy was filed in response to a two-party dispute between debtor and a single creditor). That is exactly the situation here.

21. To be sure, the Debtor has other creditors. But significantly, no other creditor has joined in opposing the Motion to Dismiss or argued that it needs this Chapter 12 case to protect its interests. The only parties fighting to keep this case alive are the Debtor and the Chapter 12 Trustee, and the Trustee's concern, notably, is not about other unsecured or priority creditors, it is centered on the dispute with Condado (the Trustee essentially advocates that the Debtor should get another chance because of Condado's alleged conduct). This underscores that the driving force of the case is the Debtor-Condado feud. While the Debtor's schedules may list vendors, lenders, or governmental creditors, the day-to-day reality of this Chapter 12 proceeding has been a single-minded focus on Condado's claim, Condado's collateral (milk proceeds and the farm), and Condado's foreclosure efforts.

22. In fact, the Debtor's own plan proposal, as mentioned, is primarily about how to handle Condado's secured claim (cram it down to collateral value) and use the remaining income for operations and other creditors. No complex multi-party restructuring is occurring or appears on the horizon, no committee of unsecured creditors, no major collective bargaining or widespread negotiation with numerous claimants. The fate of the case hinges on one creditor, Condado.

23. Moreover, the economic realities reinforce that Condado is by far the Debtor's most significant creditor. Condado's claim (approximately $1.85 million plus years of interest) towers in comparison to all of the other claims in this case. The Debtor's prior confirmed plan (in the first case) and its failed plan attempts in the second and third cases have all been dominated by how to address the Condado debt, because without resolving that, no plan is feasible (the debt is secured by the essential assets for the dairy operation and is too large to simply ignore or pay in full). By contrast, the Debtor has made no showing that the other creditors were pressing or that they could not be dealt with through non-bankruptcy means. It appears those other debts were not the impetus for this filing. Indeed, the record from the 2023 dismissal opinion indicates a "consistent lack of payment to creditors" across the board (*Opinion and Order Dismissing Case*, Bankr. Case No. 22- 02380-ESL12, ECF No. 148, pp. 33-34, 2023 Bankr. LEXIS 2413, at *59, 2023 WL 6413170, at *17), implying the Debtor has not been making significant payments to any creditors, inside or outside of bankruptcy. The Debtor's non-Condado creditors are effectively along for the ride in this case, while the real battle is between the Debtor (and Mr. Barreto) and Condado.

24. Therefore, the Court should reject the Debtor's attempt to portray this matter as a legitimate multi-party reorganization. In substance, it is a two-party dispute between Debtor/Barreto and Condado, and the Debtor is using Chapter 12 as a tactical device in that dispute. This is classic "bad faith" grounds for dismissal recognized in numerous cases. Cause exists to dismiss on this basis as well, pursuant to § 1208(c) and the Court's inherent authority to prevent misuse of its jurisdiction.

E. *The Totality of Circumstances Demonstrates Bad Faith and Abuse of the Bankruptcy Process*

25. When the Court considers all of the circumstances of this case in their entirety, the conclusion is inescapable: the Debtor's Chapter 12 filing is a bad faith repeat filing and an abuse

of the bankruptcy process. Neither the Debtor's nor the Trustee's arguments dispel this conclusion.

26. This Debtor has been in bankruptcy three times (2011, 2018, and 2022), and both prior cases were dismissed for cause ((See Bankr. Case No. 11-05236-ESL12, ECF Nos. 386, 387; *Opinion and Order*, Bankr. Case No 18-07304-ESL12, ECF No. 251, 2021 Bankr. LEXIS 1075, 2021 WL 8200008 (Bankr. D.P.R. Apr. 22, 2021)). The Debtor's principal and affiliated company (JM Dairy) have also filed bankruptcies during this period. Such a history of serial filings weighs heavily toward bad faith.

27. There has been no significant change in the Debtor's financial or operational circumstances that would justify this third filing. In fact, the Debtor's condition has worsened over time. Assets (like the cattle herd) have decreased as per the Debtor's own admission (*Debtor's Opposition*, ECF No. 259, p. 7), liabilities have increased, and the farm property remains under threat of foreclosure. Filing a new case without a bona fide change or new hope of rehabilitation suggests an intent to unfairly manipulate the Bankruptcy Code, not a genuine reorganization effort.

28. The timing and conduct of the Debtor and its insiders make clear that the primary motivation of this filing was to halt Condado's foreclosure and debt collection. The Debtor's principal admitted that bankruptcy would be used to stop foreclosure (See *Transcript*, ECF No. 182, p. 39, lines 22-25, and p. 40, lines 1-7), and indeed bankruptcy filings were orchestrated at every critical juncture of the foreclosure case. Courts widely recognize such use of bankruptcy, as a sword against one creditor on a long-defaulted debt, as strong evidence of bad faith. See Gonzales–Ruiz v. Doral Fin. Corp. (In re Gonzales-Ruiz), 341 B.R. 371, 382 (B.A.P. 1st Cir. 2006); In re Sullivan, 326 B.R. at 204; In re Fleury, 294 B.R. at 12.

29. The Debtor, its shareholder (Mr. Barreto), his former spouse, and his other corporation (JM Dairy) have taken turns filing bankruptcy or pleadings to stall the foreclosure in a coordinated fashion. This pattern of repetitive filings, sometimes in rapid succession, indicates an

abuse of the bankruptcy stay and a deliberate attempt to frustrate creditors through procedural tactics. Such conduct goes far beyond the good-faith use of the Bankruptcy Code's breathing spell. It is an improper scheme to delay, hinder or defraud creditors, which the Code does not condone.

30. Throughout the Debtor's bankruptcies, the lack of a viable business model has been a constant. The most recent findings by this Court (in 2023) were that the Debtor had "no hope of rehabilitation" and could not propose a feasible plan because it "does not operate a sustainable" farming operation and the estate is steadily losing value. *Opinion and Order Dismissing Case*, Bankr. Case No. 22- 02380-ESL12, ECF No. 148, pp. 33-34, 2023 Bankr. LEXIS 2413, at *59, 2023 WL 6413170, at *17. The Debtor's pattern of nonpayment (the Condado debt unpaid since 2015, and other creditors going unpaid as well) continues unabated. The absence of any realistic prospect of reorganization, even after years in Chapter 12, underscores that this case serves only to delay inevitable consequences, not to reorganize in the proper sense.

31. Viewing these factors together, the totality of circumstances overwhelmingly supports the finding of bad faith. This case exemplifies the scenario in which dismissal is warranted to protect the bankruptcy system from misuse. As the Motion to Dismiss aptly summarized, the Debtor's third filing was motivated by or targeted solely at Condado, and its conduct has been aimed at thwarting Condado's foreclosure on a decade-old debt. The Debtor's long history in bankruptcy (14 years of intermittent proceedings with no successful reorganization) and its tactical maneuvers in and out of court demonstrate an abuse of the bankruptcy process for purposes of delay and obstruction. This is precisely the kind of scenario that § 1208(c) (and the Court's inherent powers) are meant to address. Each of the statutory grounds cited in the Motion to Dismiss is satisfied here: unreasonable delay prejudicial to creditors, failure to propose a feasible plan, and bad faith use of Chapter 12 to resolve a two-party dispute. Taken together, these circumstances compel the dismissal of the case.

<u>Prayer for Relief</u>

WHEREFORE, Condado 5, LLC prays that this Honorable Court dismiss the instant case for cause pursuant to 11 U.S.C. § 1208(c) and grant such further relief as may be just and proper.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 14th day of October 2025.

<u>Certificate of Service</u>

We hereby certify that on this same date, we electronically filed the foregoing with the Clerk of the Court using the Next Gen CM/ECF system which will send notification of such filing to all Next Gen CM/ECF participants in this case, including the Debtor's counsel, the Chapter 12 Trustee, the U.S. Trustee for Region 21, and all parties that requested notice. Motions and orders processed through CM/ECF are "presumed to be served on the same date of the electronic filing". <u>P.R. Elec. Power Auth. v. Vitol, Inc.</u>, 298 F.R.D. 23, 26 (D.P.R.2014).

San Juan, PR
October 14, 2025

**Ferraiuoli** LLC
Attorneys for Condado
American International Plaza
250 Muñoz Rivera Avenue
6th Floor
San Juan, PR 00918
PO Box 195168
San Juan, PR 00919-5168
Telephone: 787.766.7000
Facsimile: 787.766.7001

<u>/s/Gustavo A. Chico-Barris</u>
GUSTAVO A. CHICO-BARRIS
USDC-PR No. 224205
gchico@ferraiuoli.com

<u>/s/Tomás F. Blanco-Pérez</u>
TOMAS F. BLANCO-PEREZ
USDC-PR No. 304910
tblanco@ferraiuoli.com