United States Bankruptcy Court
District of Puerto Rico

| | |
|---|---|
| In re: | Case No. 22-02380-ESL |
| LAS MARTAS INC | Chapter 12 |
| Debtor | |

# CERTIFICATE OF NOTICE

| | | |
|---|---|---|
| District/off: 0104-3 | User: admin | Page 1 of 2 |
| Date Rcvd: Oct 29, 2025 | Form ID: pdf002 | Total Noticed: 1 |

The following symbols are used throughout this certificate:
**Symbol    Definition**

\+          Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Oct 31, 2025:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | LAS MARTAS INC, HC 05 BOX 91635, ARECIBO, PR 00612-9517 |

TOTAL: 1

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

## BYPASSED RECIPIENTS

The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.

NONE

## NOTICE CERTIFICATION

I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.

Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.

Date: Oct 31, 2025         Signature:         /s/Gustava Winters

---

## CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on October 29, 2025 at the address(es) listed below:

| Name | Email Address |
|---|---|
| ALEXANDRA MILAGROS RODRIGUEZ DIAZ | on behalf of Trustee JOSE RAMON CARRION MORALES arodriguez@ch13-pr.com |
| CARMEN PRISCILLA FIGUEROA | on behalf of Creditor CRIM cpfbkcy@gmail.com cpfbkcy@gmail.com |
| DANIEL MARK PRESS | on behalf of Cross Defendant CONDADO 5 LLC dpress@chung-press.com, pressdm@gmail.com;danpress@recap.email |
| GUSTAVO A CHICO-BARRIS | on behalf of Creditor CONDADO 5 LLC gchico@ferraiuoli.com edocketslit@ferraiuoli.com;gchico@ecf.courtdrive.com;atorres@ferraiuoli.com |
| JOSE RAMON CARRION MORALES | EBNMAIL@CH13-PR.COM |
| MAXIMILIANO TRUJILLO GONZALEZ | |

| | | |
|---|---|---|
| District/off: 0104-3 | User: admin | Page 2 of 2 |
| Date Rcvd: Oct 29, 2025 | Form ID: pdf002 | Total Noticed: 1 |

    on behalf of Interested Party Vaqueria Tres Monjitas Inc maxtruj@gmail.com  trujillogonzalezmaximiliano@gmail.com

MONSITA LECAROZ ARRIBAS
    ustpregion21.hr.ecf@usdoj.gov

PEDRO J LOPEZ BERGOLLO
    on behalf of Counter-Defendant US SMALL BUSINESS ADMINISTRATION pedro.lopez-bergollo@sba.gov

RAFAEL A GONZALEZ VALIENTE
    on behalf of Interested Party SUIZA DAIRY  INC. rgv@g-glawpr.com, zi@g-glawpr.com

SONIA COLON COLON
    on behalf of Creditor CONDADO 5 LLC scolon@ferraiuoli.com
    edocketslit@ferraiuoli.com;scolon@ecf.courtdrive.com;atorres@ferraiuoli.com

TOMAS F. BLANCO-PEREZ
    on behalf of Creditor CONDADO 5 LLC tblanco@ferraiuoli.com
    tblanco@ecf.courtdrive.com;atorres@ferraiuoli.com;edocketslit@ferraiuoli.com

TOTAL: 11

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

LAS MARTAS, INC.

Debtor

CASE NO. 22-02380 (ESL)

CHAPTER 12

FILED AND ENTERED 10/29/2025

## OPINION AND ORDER

This case is before the court upon the request for relief from the automatic stay filed by secured creditor Condado 5, LLC ("**Condado**") (dkt. #211), and Debtor's response (dkt. #224). Also before the court is the request to deem the automatic stay terminated filed by Condado (dkt. #266), Debtor's response (dkt. #273), and Condado's reply (dkt. #298).

<u>Relevant Procedural Background</u>[1]

(A)   <u>The First and Second Bankruptcy Case</u>

1.   On June 21, 2011, the Debtor filed a petition for relief under Chapter 12 (the "**First Bankruptcy Case**", Bankr. Case No. 11-05237, dkt. #1), which was substantially consolidated with Bankr. Case Nos. 11-05236 and 11-05239.

2.   On January 16, 2018, after various procedural events, the consolidated First Bankruptcy Case was dismissed (Bankr. Case No. 11-05236, dkt. 387).

3.   On December 14, 2018, the Debtor filed a petition for relief under Chapter 12 (the "**Second Bankruptcy Case**", Bankr. Case No. 18-07304, dkt. #1).

4.   On April 15, 2020, the court entered an *Opinion and Order* (the "**Order Determining Scope of Condado's Lien**", Bankr. Case No. 18-07304, dkt. #120) wherein it concluded as follows:

> … The court has found that Condado has a valid lien over the milk quota since the inception of the contested matter. The issue is whether the lien over the milk quota extends to the milk produced by the cows.
>
> The security agreement does not specify that the dairy cows or the raw milk produced by Debtor's dairy farm operation serve as collateral to the loans. The milk

---

[1] This Debtor has a long history. For the sake of judicial economy, this *Opinion and Order* will only note those matters which directly impact the matters before it, that is, relief from the automatic stay

-1-

> is produced by the cows. The court agrees with the Chapter 12 trustee that the milk quota assigned by ORIL is the amount of milk that can be produced by the milk producer for the fresh milk market. The milk quota is a production limit. A milk quota is an asset and the value is determined by market conditions under ORIL regulations. Milk quotas do not produce milk. Since Condado's collateral does not include the cows, it may not claim that its security interest attaches to any identifiable proceeds of the cows.
>
> Upon the above conclusion, the court need not delve on the soundness of the Puerto Rico decision in PR Asset Portfolio 2013-1 International LLC v. Tropical Heifers, Inc., nor the appropriateness of allowing that milk produced by cows be subject to a lien because of its perishable nature, how it is processed, and the applicable Puerto Rico milk quota regulations.
>
> …
>
> In view of the foregoing, the court concludes that the milk produced by Debtor's cows is not subject to Condado's collateral.

Bankr. Case No. 18-07304, dkt. #120, pp. 16-17, lines 14-3. Reconsideration of the *Order Determining Scope of Condado's Lien* was denied on July 7, 2020 (Bankr. Case No. 18-07304, dkt. #147).

5. On July 13, 2020, Condado appealed the *Order Determining Scope of Condado's Lien* to the District Court in the case styled Condado 5, LLC v. Las Martas, Inc., Case No. 20-cv-01344 (PAD). See Bankr. Case No. 18-07304, dkt. #149.

6. On April 22, 2021, after various procedural events, the Second Bankruptcy Case was dismissed (Bankr. Case No. 18-07304, dkt. #251). The U.S. Bankruptcy Appellate Panel for the First Circuit (the "BAP") affirmed the dismissal of the Second Bankruptcy Case on May 17, 2022. See Bankr. Case No. 18-07304, dkt. #279; BAP Case No. 21-017, Document No. 001145273.

7. On October 29, 2021, the appeal of the *Order Determining Scope of Condado's Lien* was dismissed as moot upon the dismissal of the Second Bankruptcy Case. See Civil Case No. 20-cv-01344 (PAD), dkt. #40, 41. The Debtor appealed the District Court's dismissal to the U.S. Court of Appeals for the First Circuit (the "First Circuit") on November 28, 2021 (id., dkt. #42), and voluntarily dismissed the same July 19, 2023 (id., dkt. #50, 51).

(B) The Third Bankruptcy Case

8. On August 16, 2022, the Debtor filed the instant petition for relief under Chapter 12 (the "**Third Bankruptcy Case**", dkt. #1).

9. On August 17, 2022, Condado filed a *Motion to Prohibit Use of Cash Collateral and for Entry of Order Authorizing Condado to Seek and Collect Proceeds* (the "**Motion to Prohibit Use of Cash Collateral**", dkt. #9), to which the Debtor filed a *Response to Motion to Prohibit Use of Cash Collateral and for Entry of Order Authorizing Condado 5, LLC, to Seek and Collect Proceeds*, dkt. #15), and Condado filed a *Reply to the Debtor's Response to Motion to Prohibit Use of Cash Collateral and for Entry of Order Authorizing Condado 5, LLC, to Seek and Collect Proceeds* (dkt. # 25).

10. On September 1, 2022, Suiza Dairy, Inc. ("Suiza Dairy") filed an adversary proceeding Complaint (Adv. Proc. No. 22-00062, dkt. #1) alleging that there was a competing interest between the Debtor and Condado over the funds generated from the Debtor's sale of raw milk to Suiza Dairy. See id., pp. 6-11, ¶¶ 1-21.[2]

11. On September 16, 2022, the court held a hearing to consider the *Motion to Prohibit Use of Cash Collateral* and the related responses. At the hearing, the court ordered the Chapter 12 Trustee (the "**Trustee**") to file his position. See *Minutes of Hearing held on September 16, 2022*, dkt. #34.

12. On September 23, 2022, the Trustee filed their *Position and Memorandum of Law in Support Thereof to the Motion to Prohibit Use of Cash Collateral* (dkt. #35), to which Condado filed a response on October 14, 2022 (dkt. #46).

13. On February 15, 2023, after various procedural events, the court issued an *Opinion and Order* (the "**Second Order Determining Scope of Condado's Lien**", dkt. #102)[3] that states as follows:

---

[2] On June 6, 2025, Suiza Dairy filed a *Motion for Voluntary Dismissal* of Adv. Proc. No. 22-00062 (Adv. Proc. No. 22-00062, dkt. #76), which was granted on June 9, 2025. See *Minute Entry*, Adv. Proc. No. 22-00062, dkt. #77; *Judgement*, Adv. Proc. No. 22-00062, dkt. #80

[3] The Second Order Determining Scope of Condado's Lien was appealed by Condado to the District Court on February 15, 2023 (Case No. 23-cv-01074 (RAM)), and affirmed on September 4, 2025.

-3-

> The record clearly shows that in the Debtor's first bankruptcy case the critical factor was the repayment terms of the secured loan with Banco Popular de Puerto Rico, Condado's predecessor in interest. The travel of the first case shows the numerous joint stipulations filed by and between the Debtor and Banco Popular de Puerto Rico over the use of cash collateral, which were ultimately incorporated into the plan confirmed in August 2012 and the postconfirmation amended plan dated August 3, 2016, confirmed in September 2016. However, the debtor's first case, 11-05237, filed under the name of Vaquería Las Martas, Inc., was consolidated in July 2011, with case number 11-05236 filed by Juan Manuel Barreto Ginorio, and case number 11-05239 filed by JM Dairy, Inc., all chapter 12 cases with docket entries made in case 11-05236 for being the first filed case of the three. The confirmed plan was a consolidated plan of all three debtors. The secured debt with Banco Popular de Puerto Rico, now Condado, was guaranteed by collateral of each of the three consolidated Chapter 12 debtors. Thus, the facts are different from the instant case, wherein only Las Martas, Inc. (Vaquería Las Martas, Inc.) is the only debtor, and the collateral is only the milk quota. This difference is of critical importance as the court is conscious that court approved stipulations must be observed.
>
> The court has thoroughly considered the position and argument of the debtor, Condado and the Chapter 13 trustee. The court agrees with the position and legal basis espoused by the Chapter 13 trustee. Since the same has been detailed above, a repetition is not necessary and is incorporated as the court's own, in the following conclusions: considering the facts leading to the stipulations and the confirmed plans in the first case and that the court's decision in the second case is the later, the court finds that the doctrine of *res judicata* is not applicable; Condado's perfected prepetition security agreement over debtor's milk quota is limited to the milk quota, it does not extend to its proceeds or products; Condado's collateral is limited to the milk quota but does not include proceeds, products, or profits of the milk quota; and, Condado's perfected pre-petition security agreement over debtor's account receivables does not extend to post-petition account receivables as the same became ineffective by the effect of § 552(a).
>
> …
>
> In view of the foregoing, the court denies Condado's motion for prohibition to use cash collateral resulting from the post-petition sale of milk.

In re Las Martas, Inc., 650 B.R. 359, 371 (Bankr. D.P.R. 2023), *aff'd sub nom.*, 2025 WL 2538834 (D.P.R. Sept. 4, 2025).

14. On April 24, 2023, this court denied Condado's request for a stay pending appeal of the Second Order Determining Scope of Condado's Lien (dkt. #131). See also dkt. #121, 123, 129. Condado did not seek a stay pending appeal with the District Court. See, e.g., Case No. 23-cv-01074 (RAM).

15. On September 29, 2023, after various procedural events, including an evidentiary hearing (dkt. #143), the Third Bankruptcy Case was dismissed for continuing loss to or diminution of the Debtor's estate and the absence of reasonable likelihood of rehabilitation pursuant to 11 U.S.C. § 1208(c)(9) (dkt. #148). Reconsideration of dismissal was denied (dkt. #162), and the Debtor appealed both the dismissal and the denial of reconsideration to the Bankruptcy Appellate Panel (the "**BAP**"), BAP Appeal Case No. 23-026. See *Notice of Appeal*, dkt. #168.

16. Also on September 29, 2023, following the dismissal of the Third Bankruptcy Case, Condado filed a *Motion to Withdraw Consigned Funds* (dkt. #149), arguing that the dismissal terminated the automatic stay and the bankruptcy estate, "restore[d] all property rights to the position in which they were found at the commencement of the case", and caused the dismissal of any pending adversary proceeding without further order, including Adv. Proc. No. 22-00062. As such, Condado requested "the withdrawal and disbursement of the aforementioned funds deposited with the Court in favor of Condado" (id., p. 3). The Debtor filed a *Response to Motion to Withdraw Consigned Funds and Cross Motion to Disburse Funds to Debtor* (dkt. #154), arguing that the court has "twice ruled that Condado 5 has no lien on the post-petition proceeds of its milk sales" (id., p. 1, ¶ 2), and "not only should the funds not be disbursed to Condado 5, they should be disbursed to the Debtor, as Condado 5 has no security interest in those funds" (id., p. 4, ¶ 4). Condado filed a reply (dkt. #167), arguing again that "[a]bsent a confirmed [] plan [of reorganization] at the time of dismissal, § 349(b) basically restores parties to the position they would have had if the bankruptcy case had not been filed" (id., p. 3, ¶ 13) (internal citations omitted). Condado also argued that that the balance of equities weighs in favor of turning over the consigned funds to Condado or, in the alternative, that such consigned funds should remain with the court until Condado obtains relief from the state court in the foreclosure case for the seizure of property. See also *Motion to Inform in Support of Condado's Motion to Withdraw Consigned Funds*, dkt. #186.

17. On March 5, 2025, the BAP vacated the dismissal of the Third Bankruptcy Case and remanded the case back to this court for further proceedings. See dkt. #190; BAP Case No.

23-026, Document 001151413. See In re Las Martas, Inc., 2023 WL 6413170 (Bankr. D.P.R. Sept. 29, 2023), *vacated and remanded*, 667 B.R. 60 (B.A.P. 1st Cir. 2025).

18. On April 5, 2024, this court "declined to exercise jurisdiction over pending matters until the same are decided by the appellate courts" (the "**April 5, 2024 Order**", dkt. #188).

19. On June 9, 2025, the court held a status conference. The *Minutes of Status Conference Held on June 9, 2025 and Order* (the "**Minute Order**", dkt. #196) reads as follows:

> 1. Condado shall immediately cease collecting the Debtor's proceeds from the sale of milk.
> 2. Condado shall submit to the Debtor and the Trustee a detail of all funds received from milk proceeds of the Debtor since the filing of the petition within thirty (30) days.
> 3. The Debtor shall file a summary of its monthly operations since the dismissal of the case through May 2025 within thirty (30) days. Monthly reports of operations shall be filed thereafter in the ordinary course.
> 4. The Debtor and Condado shall file a Joint Report on the distribution of the consigned funds within thirty (30) days.
> 5. The Debtor shall file an amended Chapter 12 plan within ninety (90) days from the filing of the Joint Report.

dkt. #196, pp. 2-4, lines 25-9.

20. On June 11, 2025, Condado moved the court for entry of orders applying the divestiture rule to stay the distribution of consigned funds and/or any matter predicated and/or related to the Appeal, which the court denied on August 1, 2025. See *Opinion and Order Denying Application of Divestiture Rule*, dkt. #248.[4]

21. On June 26, 2025, Condado filed a *Motion to Dismiss* (dkt. #207) for bad faith, unusual delay, and because the case constitutes a two-party dispute. The Trustee filed an *Opposition to Motion to Dismiss* on August 12, 2025 (dkt. #256), the Debtor filed a *Response to*

---

[4] See *Motion to Stay Any Pending Matter Currently on Appeal Under the Divestiture Rule* (the "**Motion to Stay**", dkt. #197); *Response in Opposition to [the Motion to Stay]* (dkt. #203); *Reply to Order Dkt No 205* (dkt. #206, p. 1, ¶ 5) ("Tres Monjitas informed that it "will retain all payments assigned to Condado 5 LLC until the Honorable Court determines the payee of the product of the sale of raw milk: the debtor, the trustee, Condado [] or the Clerk of the U.S. Bankruptcy Court"."); *Reply to [Opposition to Stay]* (dkt. #210); *Motion to Inform No Further Payments to Condado* (dkt. #201); *Urgent Motion Staying Any Redirection, Withholding or Distribution of Milk Sale Proceeds During the Pendency of Condado's Appeal and for Consignment of Proceeds Pending Resolution of the Appeal* (the "**Urgent Motion**", dkt. #202); *Response in Opposition to [Urgent Motion]* (dkt. #213); *Reply to [Opposition to Urgent Motion]* (dkt. #219); Trustee's *Position as to [the Motion to Stay] and [the Urgent Motion]* (dkt. #229).

-6-

*Motion to Dismiss* on August 18, 2025 (dkt. #259), and Condado filed a *Consolidated Reply to Oppositions to Motion to Dismiss* on October 14, 2025 (dkt. #299).

22. On July 2, 2025, Condado filed a *Motion for Relief from the Automatic Stay* under Section 362(d)(1) and (d)(4)(B) (the "**Motion for Stay Relief**", dkt. #211), to which the Debtor filed a *Response to Motion for Relief from Stay* on July 16, 2025 (the "**Response to Stay Relief**", dkt. #224). In its response, the Debtor stated that it "is willing to make adequate protection payments on the value of the ORIL milk quota (but again, as discussed at the June 9 hearing, that needs to be offset against the funds paid to Condado during the dismissal period)" (dkt. #224, ¶ 4). The minutes of the hearing held on July 22, 2025, to consider the motion for relief from stay (the "**Hearing on Relief From Stay**") read as follows:

> … The court stated that after reading Condado's motion for relief from the automatic stay and Debtor's response, it appeared that the Debtor had no objection to allow Condado to pursue the foreclosure of property securing its liens based on the statement in paragraph one which stated the following:
>
>> It appears to this Debtor that this Motion for Relief was filed in the wrong case. To be clear, Condado's lien in this case attaches to (a) a small receivable as of the commencement of the case – Debtor is happy to allow Condado to have that; (b) and Debtor's ORIL milk quota. Debtor in this case owns no real estate. As such, the automatic stay in this case does not apply to any real estate. Clearly, then, neither this case nor the prior cases filed by this Debtor could have in any way impacted Condado's attempts to foreclose on someone else's property.
>
> dkt. #224, p. 1, ¶1.
>
> Counsel for the Debtor clarified that the consent was only as to the receivables as of the commencement of the case but not as to the milk quota because without the milk quota the Debtor cannot continue to operate.
>
> Counsel for the Debtor proffered that Condado had been given adequate protection as to the milk quota based on the funds disbursed to Condado from the sale of milk. Counsel for Condado responded by arguing the matter as to the milk quota had to be considered in tune with all the applicable facts surrounding this case and thoroughly explained in the motion for relief from the automatic stay.
>
> The court stated that the parties had not placed it in a position to determine if the debtor had provided adequate protection to Condado on account of its lien over the milk quota. In order for the court to decide as to the adequacy of adequate protection

the parties must proffer the basis for their respective positions. The Chapter 12 Trustee stated that in order for the Debtor to state its position it had to obtain from Condado a detail of the amounts that it had received since the date of filing the petition, as ordered by the court in the minute order of the status conference held on June 9, 2025 (dkt. #196).

…

As stated by the Chapter 12 Trustee, the parties' compliance with providing key relevant information is necessary to determine … whether the Debtor has provided Condado with adequate protection on its lien over the milk quota, the value of which also remains undetermined. Therefore, the court orders as follows:

1. Condado shall file with the court "a detail of all funds received from milk proceeds of the Debtor since the filing of the petition within" fourteen (14) days.
2. "The Debtor and Condado shall file a Joint Report on the distribution of the consigned funds within" fourteen (14) days.
3. The Debtor shall submit its proposition of adequate protection over the milk quota fourteen (14) days after compliance with the above two orders.
4. Condado shall file a reply within fourteen (14) days after the Debtor submits its proposition as to adequate protection.

*Minutes of Hearing Held on July 22, 2025*, dkt. #233, pp. 2-4, lines 22-2. See also *Audio of Hearing Held on July 22, 2025*, dkt. 230.

23. On August 5, 2025, Condado informed that it received $190,489.65 from milk proceeds from September 29, 2023 (when the case was dismissed) through March 5, 2025 (when the dismissal was vacated), and $17,286.28 from March 5, 2025 through June 3, 2025 (when they received their last payment), for a total of $207,775.93. See *Motion in Compliance with Order*, dkt. #250.

24. On August 7, 2025, the Debtor and Condado filed a *Joint Report on the Distribution of the Consigned Funds* (dkt. #252) wherein Debtor states that "Condado is entitled to adequate protection of its interest in the milk quota", and proposes as follows:

> It is Debtor's position that the quota is worth $2/quart, or $117,400 for the 58,700 quarts of quota. Condado has valued it as high as $5/quart, or $293,500. Even using Condado's numbers and a 10% interest rate for purposes of adequate protection, that would be $29,350/year. This case was filed on August 16, 2022, so for 3 years of adequate protection payments, that would be $88,050. Since Condado has already received over $207,000, it has already been overpaid for adequate protection of its interest in the milk quota, no matter how one looks at it.

> Accordingly, Condado does not need any of the consigned funds towards adequate protection of its interest in the milk quota, so the remaining funds (after paying $3000 to Condado) should be disbursed to the Debtor.

Id., pp. 1-2, ¶¶ 5-6 (footnote omitted). In turn, Condado "asserts that the Bankruptcy Court is divested of jurisdiction to adjudicate or authorize any distribution of the consigned funds" (id., p. 2, ¶ 7).

25. On August 8, 2025, Tres Monjitas informed that "will make future payments for the purchase of the above captioned debtor, after the appeal or other legal terms run out or this Honorable Court orders otherwise. This pursuant to the Opinion and Order … [at] Dkt No 248" (dkt. #254).

26. On August 11, 2025, Condado filed an *Urgent Motion in Aid of Jurisdiction and/or for Stay Pending Appeal* with the District Court, requesting it stay any distribution of the consigned funds (Case No. 23-cv-01074 (RAM), dkt. #32), which was denied on August 26, 2025 (Case No. 23-cv-01074 (RAM), dkt. #36). See *Informative Motion*, dkt. #268.

27. On Augst 21, 2025, the Debtor filed its *Position on Adequate Protection* ("**Debtor's Position on Adequate Protection**", dkt. #263), stating:

> The Court has ruled that Condado does not have a lien on the consigned funds, except for $3000 that was a receivable as of the petition date. Its lien extends only to that receivable and to the milk quota.
>
> Debtor agrees that Condado should receive the $3000 from the consigned funds in satisfaction of its lien on the account receivable …
>
> It is Debtor's position that the quota is worth no more than $2/quart, or $117,400 for the 58,700 quarts of quota, and that this value has not materially changed … An 8.5% interest rate (when prime is at 7.5%2 ) maintains present value under *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004). $117,400 at 8.5% is $9979/year.
>
> Condado has valued the quota as high as $5/quart, or $293,500. Even using Condado's numbers and a 10% rate for purposes of adequate protection, that would be $29,350/year.
>
> This case was filed on August 16, 2022, so for 3 years of adequate protection payments, that would be about $30,000 (using $2/qt. at 8.5%) - $90,000 (using $5/qt. at 10%) to date. Since Condado has already received over $207,000 (more than the full value of its collateral), it has already been overpaid for adequate protection of its interest in the milk quota …

Debtor's position is that since the collateral is not declining in value, no adequate protection payments are required, and Condado is adequately protected by the collateral maintaining its value. However, if despite Timbers a periodic payment is to be required, it should be $9979/year ($831.58/month), to be credited against the money already paid to Condado. But in any event, the amounts already paid to Condado exceed any reasonable adequate protection that may be required.

… Condado does not need any of the consigned funds towards adequate protection of its interest in the milk quota, so the remaining funds (after paying $3000 to Condado) should be disbursed to the Debtor.

Id., pp. 1-4, ¶¶ 1-12. Condado was ordered to state its position (dkt. #267).

28. On August 25, 2025, Condado filed a *Motion for Entry of Order Deeming the Automatic Stay Terminated* pursuant to 11 U.S.C. § 362(e)(1) (the "**Motion for Stay Termination**", dkt. #266).

29. On September 8, 2025, the Debtor filed a *Response to Motion for Entry of Orde Deeming the Automatic Stay Terminated* (dkt. #273) averring that "[s]ince the only relief Condado requested was as to non-Debtor real property, which is not impacted by the stay, there is simply nothing to deem the stay terminated as to" (id., ¶ 3) because 11 U.S.C. § 362(e)(1) applies to any act against property of the estate and the real estate at issue is not property of the Debtor's estate.

30. On September 9, 2025, Condado filed a *Motion in Compliance with Order* ("**Condado's Position on Adequate Protection**", dkt. #276), stating that it "disagrees with the Debtor's 'overpayment' argument. Fundamentally, the Debtor is attempting to take credit for payments it never made in bankruptcy. The vast majority of the $207,775 that the Debtor cites came in during the case's dismissal (September 2023 to March 2025), when the Debtor was outside of bankruptcy and not subject to the automatic stay, and Section 361 was inapplicable" (id., ¶ 15), and "Debtor cannot retroactively declare that those outside collections 'satisfied' its adequate protection obligations" (id., ¶ 17). Condado also argues that the $17,286.28 it received between March 5, 2025 and June 3, 2025 "is a very modest amount in the context of Condado's secured claim (which is hundreds of thousands of dollars) and in relation to the ongoing accrual of interest on that claim" and "did not fully protect Condado from the risk of the Debtor's

-10-

1  continued use of the quota through mid-2025. And tellingly, since June 3, 2025, Condado has
2  received nothing further, meaning for the last three months (and counting)" (id., ¶ 18).

3    31. On October 14, 2025, Condado filed a *Reply to Response to Motion for Entry of*
4  *Orde Deeming the Automatic Stay Terminated* (dkt. #298) averring that "[t]he motion for relief
5  from stay was filed July 2, 2025, and the Court held a hearing on July 22 within the initial 30
6  days. Crucially, at that hearing[,] the Court did not enter an order continuing the stay pending a
7  final hearing, nor made a finding that the Debtor was likely to prevail, and Condado never agreed
8  to any such continuance" (id., ¶8). Condado argues they "did not waive its § 362(e)(1) rights, and
9  the automatic stay terminated on the schedule dictated by the Bankruptcy Code" (id., ¶12), that
10 "Debtor's milk quota is unquestionably part of the estate, and … Condado could not foreclose
11 or otherwise realize its lien on the quota without stay relief" (id., ¶14) and "[t]hus, the Court
12 should deem the stay terminated as to that property by operation of § 362(e)(1)" (id., ¶16).

13   32. On October 27, 2025, Condado filed a *Motion to Dismiss* upon Debtor's failure to
14 file monthly operating reports under Section 1208 (dkt. #300).

15        <u>Applicable Law and Discussion</u>

16 (A) <u>Termination of the Automatic Stay Under Section 362(e)(1)</u>

17   The Bankruptcy Code imposes strict time limits for determinations on motions for relief
18 from stay. See <u>In re Nasco P.R., Inc.</u>, 117 B.R. 35, 37 (Bankr. D.P.R. 1990) ("Section 362(e)
19 provide[s] an expedited and strictly defined timetable to process motions to lift stay."). Section
20 362(e)(1) provides, in relevant part, as follows:

> Thirty days after a request under [11 U.S.C. § 362(d)] for relief from the stay of any act against property of the estate … such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under [11 U.S.C. § 362(d)]. A hearing under this subsection may be a preliminary hearing, or may be consolidated with the final hearing under [11 U.S.C. § 362(d)] … The court shall order such stay continued in effect pending the conclusion of the final hearing under [11 U.S.C. § 362(d)] … if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of such final hearing. If the hearing under this subsection is a preliminary hearing, then such final hearing shall be concluded not later than

thirty days after the conclusion of such preliminary hearing, unless the 30-day period is extended with the consent of the parties in interest or for a specific time which the court finds is required by compelling circumstances.

11 U.S.C. § 362(e)(1).

"The time periods specified in the Code are quite brief and underscore the expedited nature of stay litigation." 3 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 362.08[4][b] (16th ed. 2025). As provided in the statute, however, where an initial hearing is held, the court may extend the 30-day period by compelling circumstances. See id., at ¶ 362.08[5]

Condado argues that the time periods delineated in Section 362(e)(1) have not been complied with and that, as a result, the automatic stay has terminated by operation of law. Condado also argues that it has "not waived" (dkt. #298, ¶ 7) or "consented to the extension of any term in § 362(e)" (dkt. #266, ¶ 2). The Debtor argues that Condado waived its rights under § 362(e)(1) through its conduct (dkt. #273, ¶ 4). In the alternative, it argues that should the court find that the stay was terminated, the same be reimposed (id., ¶ 5).

Condado filed its Motion for Stay Relief on July 2, 2025. A hearing was held on July 22, 2025. The minutes reflect that "[t]he court stated that the parties had not placed it in a position to determine if the debtor had provided adequate protection to Condado on account of its lien over the milk quota. In order for the court to decide as to the adequacy of adequate protection the parties must proffer the basis for their respective positions." dkt. #233, p. 2, lines 12-15. The forgoing constitutes compelling circumstances to extend the stay. At the conclusion of the hearing, the stay was not lifted. Instead, the court ordered (i) the parties to file a detail of funds received within fourteen (14) days, (ii) Debtor to submit its proposition of adequate protection fourteen (14) days thereafter, and (iii) Condado to reply to Debtor's proposition as to adequate protection fourteen (14) days thereafter. See id., pp. 3-4, lines 21-2, ¶¶ 1-4. Condado did not voice its intention to assert any rights under Section 362(e)(1), nor did it request reconsideration of the 42-day supplemental briefing period[5] ordered by the court either at the hearing or thereafter. Instead, Condado complied with the supplemental briefing. Thereafter, on August 25, 2025, that

---

[5] This period was extended by leaves to file replies, sur-replies, and general requests for extensions of time.

is, thirty-four (34) days into the 42-day supplemental briefing period, Condado filed the Motion for Stay Termination. Moreover, Condado asserts "bad faith" as cause for both relief from the automatic stay under Section 362(d)(1) and dismissal under Section 1208(c). Both motions rely on the same set of facts and exhibits to support a finding of bad faith. Both motions are therefore closely intertwined, and an evidentiary hearing on the *Motion to Dismiss* (dkt. #207) is scheduled for December 18, 2025, at 10:00 AM. See *Order and Notice*, dkt. #260. The forgoing also constitutes compelling circumstances to extend the stay.

Condado's arguments as to the statutory termination of the automatic stay under section 362(e)(1) are not consistent with the facts, nor a fair characterization of what transpired, as evidenced by the record. The court, thus, concludes that, notwithstanding the arguments to the contrary, Condado implicitly waived its right to raise any timeliness objection under Section 362(e)(1). See, *e.g.*, In re Belmont Realty Corp., 112 B.R. 4, 6 (Bankr. D.R.I. 1990); In re Wedgewood Realty Grp., Ltd., 878 F.2d 693, 698 (3rd Cir. 1989). Thus, the Motion for Stay Termination (dkt. #207) is DENIED, and the automatic stay remains in effect.

(B)     Standard for Relief from the Automatic Stay Under Section 362(d)(4)(B)

Condado also moves for relief from the automatic stay under Section 362(d)(4)(B) of the Bankruptcy Code, which provides as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under [11 U.S.C. § 362(a)], such as by terminating, annulling, modifying, or conditioning such stay—
>
> (4) with respect to a stay of an act against real property under [11 U.S.C. § 362(a)], by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—
> …
> (B) multiple bankruptcy filings affecting such real property.

11 U.S.C. § 362(d)(4)(B).

"Real property", for purposes of Section 362(d)(4), refers to real estate property. See <u>Property</u>, Black's Law Dictionary (12th ed. 2024).[6] As previously held, Condado has a perfected pre-petition security agreement over debtor's milk quota, which does not extend to its proceeds, products, or profits; and a perfected pre-petition security agreement over Debtor's account receivables, which does not extend to post-petition account receivables. See <u>In re Las Martas, Inc.</u>, 650 B.R. at 371. Both the milk quota and the account receivables constitute personal intangible property.[7]

To the extent Condado's claim is secured only by interests in personal property, Section 362(d)(4)(B) is inapplicable, and the Motion for Stay Relief (dkt. #211, Part B) is DENIED in part.

(C) <u>Standard for Relief from the Automatic Stay Under Section 362(d)(1)</u>

Condado moves for relief from the automatic stay under Section 362(d)(1) of the Bankruptcy Code, which provides as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under [11 U.S.C. § 362(a)], such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1).

The Bankruptcy Code does not define "cause" for purposes of Section 362(d)(1), and "[t]here is no set list of circumstances that a bankruptcy court is required to consider in evaluating whether § 362(d)(1) 'cause' exists to lift the automatic stay." <u>In re Reyes</u>, BAP Case No. 23-033, 2024 WL 5342527, at *7 (B.A.P. 1st Cir. 2024) (citations omitted).

---

[6] Defining "real property" as "[l]and and anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land. • Real property can be either corporeal (soil and buildings) or incorporeal (easements). — Also termed *realty*; *real estate*. Cf. *personal property (1)*."

[7] "Milk quotas are personal intangible property". <u>In re Ruiz Ruiz</u>, 2021 WL 6102147, at *3, 2021 Bankr. LEXIS 3504 (Bankr. D.P.R. Dec. 23, 2021), *aff'd*, 629 F. Supp. 3d 11, 14 (D.P.R. 2022), *rev'd sub nom.*, 122 F.4th 1 (1st Cir. 2024). "The milk quota is a personal property comprised of a right to produce a certain amount of milk as allowed by its established quota." <u>Id.</u>, at *3

-14-

Determining whether "cause" for stay relief exists requires a fact-intensive inquiry that must be made on a case-by-case basis. See In re Montgomery, 285 B.R. 345, 346 (Bankr. D.R.I. 2002); In re Nieves, 647 B.R. 809, 834 (B.A.P. 1st Cir. 2023). Lack of good faith may constitute cause for the dismissal of the petition [under] 1112(b), as well as cause to lift the stay under 362(d)(1)." Matter of Inesta Quiñones, 73 B.R. 333, 337 (Bankr. D.P.R. 1987), *holding modified on other grounds by*, In re Estrella, 257 B.R. 114 (Bankr. D. P.R. 2000) (citations omitted). See also In re Coastal Cable T.V., Inc., 709 F.2d 762 (1st Cir.1983); Matter of Three Star Telecast, Inc., 73 B.R. 270, 273 (Bankr. D.P.R. 1987); In re Baez, 106 B.R. 16, 18 (Bankr. D.P.R. 1989); 3 Collier on Bankruptcy ¶ 362.07[3][a] (16th ed. 2025).

"The party moving for stay relief under § 362(d)(1) has the initial burden to come forward with [*prima facie*] evidence showing that cause exist[s]. [O]nce the moving party establishes cause for such relief, the burden then shifts to the debtor to demonstrate that he is entitled to the stay. If the movant fails to meet its initial burden to demonstrate cause, relief from the automatic stay should be denied." In re Reyes, BAP Case No. 23-033, 2024 WL 5342527, at *7 (internal citations and quotations omitted). Bankruptcy courts have "broad discretion" in assessing cause for relief from the automatic stay under Section 362(d)(1). See Id., at *7, citing Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1288 (2nd Cir. 1990).

Condado avers that "[t]he Debtor filed this case in bad faith with the sole purpose of circumventing the Foreclosure Case against the Debtor's principal and co-guarantor (Mr. Juan Manuel Barreto Ginorio), his former spouse and co-guarantor (Ms. Maria Elena Hernandez Ruiz) and JM Dairy, Inc. (as further co-guarantor of the Loan) in a Loan that matured more than 10 years ago" (dkt. #211, ¶ 44). Further, that Mr. Barreto (Debtor's president and shareholder) "planned the foregoing scheme to stall the Foreclosure Case" a per his testimony (dkt. #211, ¶ 45, citing dkt. #182, p. 29, lines 19-25; p. 30, lines 1-13; p. 39, lines 22-25; and p. 40, lines 1-7). As stated, both the Motion for Stay Relief (dkt. #211) and the motion to dismiss (dkt. #207) rely on

the same set of facts and exhibits to support a finding of bad faith. Both motions are therefore closely intertwined.

As such, an evidentiary hearing to consider Part C of the Motion for Stay Relief (dkt. #211, Part C), that is, whether bad faith exists, is hereby set for December 18, 2025, at 10:00 AM. This court will only consider the merits of those documents filed in the English language.[8]

(D)   Adequate Protection

Lack of adequate protection of a party's interest in property is the most common basis for granting relief for cause under 11 U.S.C. § 362(d)(1). See 3 Collier on Bankruptcy ¶ 362.07[3] (16th ed. 2025). " 'Adequate protection' is mandated by certain provisions of the Code when requested by an entity with an interest in property in which the estate has an interest. An entity is entitled to adequate protection as a matter of right, not merely as a matter of discretion, when the entity is stayed from enforcing its interest, when the estate proposes to use, sell or lease property in which the entity has an interest, and when property on which the entity has a lien is to be used as collateral for a loan. This protection is provided both as a matter of policy and, arguably, as a matter of constitutional law." Id., at ¶ 361.02 (16th ed. 2025).

A review of the docket reflects that in its Response to Stay Relief, the Debtor stated that it "is willing to make adequate protection payments on the value of the ORIL milk quota (but again, as discussed at the June 9 hearing, that needs to be offset against the funds paid to Condado during the dismissal period)" (dkt. #224, ¶ 4). At the Hearing on Relief From Stay, the court ordered the Debtor to "submit its proposition as to adequate protection", and for Condado to file a response thereto (dkt. #233, pp. 3-4, lines 25-2). Both parties complied. See dkt. #263, 276. However, neither Debtor's Position on Adequate Protection nor Condado's Position on Adequate Protection attach or make reference to supporting documentation for their positions. Moreover, adequate protection is not requested as alternate relief in the motion for relief from stay. This

---

[8] See Banco Popular de P.R. v. Santiago-Salicrup, 630 B.R. 374, 378 (D.P.R. 2021), citing Estades-Negroni v. Assocs. Corp. of N. Am., 359 F. 3d 1, 2-3 (1st Cir. 2004); In re Bernier, 2022 WL 17096264, at *6-7, 2022 Bankr. LEXIS 3283, at *17-18 (Bankr. D.P.R. 2022). See also 48 U.S.C. § 864; L. Civ. R. 5(c); P.R. LBR 9070-1(c).

court thus declines to consider the matter further. See <u>Ondine Shipping Corp. v. Cataldo</u>, 24 F.3d 353, 356–57 (1st Cir. 1994) ("[I]n our adversary system of justice it is the parties' responsibility to marshal evidence and prove their points. Litigants cannot expect the court to do their homework for them. […] [c]ourts … are most frequently moved to help those who help themselves.") (citations omitted).

<u>CONCLUSION</u>

For the reasons stated herein,

1. The Motion for Stay Termination (dkt. #266) is DENIED.

2. To the extent Condado's claim is secured only by interests in personal property, Section 362(d)(4)(B) is inapplicable, and the Motion for Stay Relief (dkt. #211, Part B) is DENIED in part.

3. An evidentiary hearing to consider Part C of the Motion for Stay Relief (dkt. #211, Part C), that is, whether bad faith exists, is hereby set for December 18, 2025, at 10:00 AM. A separate order shall follow.

4. The automatic stay remains in effect until such time as a ruling on the merits of the Motion for Stay Relief (dkt. #211, Part C) and/or the motion(s) to dismiss (dkt. #207, 300) is made.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 29th day of October 2025.

*Enrique S. Lamoutte*
United States Bankruptcy Judge