**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

IN RE:

LAS MARTAS, INC.

　　　　Debtor.

CASE NO. 22-02380 (ESL)

CHAPTER 12

**PRE-TRIAL REPORT**
(Related ECF Nos. 260 & 329)

TO THE HONORABLE COURT:

COMES NOW secured creditor Condado 5, LLC ("Condado"), through the undersigned counsels, and in compliance with the *Order and Notice Setting Hearing* (ECF No. 260) submits this Pre-Trial Report as follows:

**I.　　Statement of the Issues**

i.　　Condado's Statement of the Issues

　　1.　　Whether this case should be dismissed.

**II.　　Uncontested Facts**

i.　　Condado's Uncontested Facts

　　2.　　On or around January 12, 2005, Banco Popular de Puerto Rico ("BPPR"), predecessor in interest of Condado, extended to the Debtor a credit facility in the amount of $1,850,000.00 (the "Loan"). See *Loan Agreement* (Proof of Claim No. 1, Part 4, pp. 1-23).

　　3.　　The Debtor's principal, Mr. Juan Manuel Barreto Ginorio ("Barreto"), his former spouse, Maria Elena Hernandez Ruiz, and JM Dairy, Inc. ("JM Dairy") all serve as guarantors to the Loan. See *Loan Agreement*, Proof of Claim No. 1, Part 4, p. 1 and *Amended Note*, Proof of Claim No. 1, Part 5, p. 9.

　　4.　　The Loan was to be repaid in a term of five (5) years, but BPPR agreed to extend it for ten (10) more years, which ultimately *matured* and has been **past due and payable since January 12, 2015, to wit, over ten (10) years ago**. See *Amended Note*, Proof of Claim No. 1, Part 5, p. 22.

　　5.　　On June 21, 2011, the Debtor filed its first Chapter 12 petition (Bankr. Case No. 11-05237-ESL), Barreto filed his own bankruptcy case (Bankr. Case No. 11-05236-ESL) and JM Dairy

also filed its own bankruptcy (Bankr. Case No. 11-05239-ESL). These bankruptcy cases were substantively consolidated with Bankr. Case No. 11-05236-ESL filed by Barreto (*Order Granting Consolidation*, Bankr. Case No. 11-05239, ECF No. 22). These consolidated cases, however, were dismissed on January 16, 2018, for material default with the terms of the confirmed plan on August 30, 2018. See Bankr. Case No. 11-05236-ESL12, ECF Nos. 386, 387 (dismissed upon Chapter 12 Trustee's request pursuant to 11 U.S.C. § 1208(c)(1),(6) for unreasonable delay prejudicial to creditors and material default with respect to the terms of a confirmed plan).

6.      Only a few months later, on December 14, 2018, the Debtor filed a second Chapter 12 petition (Case No. 18-07304-ESL12, ECF No. 1). After more than two years in bankruptcy, however, on April 22, 2021, the Debtor's second bankruptcy case was dismissed through an *Opinion and Order* pursuant 11 U.S.C. § 1208(c)(1) for *unreasonable delay prejudicial to creditors* (including Condado), and *failure to timely file a confirmable plan*. See *Opinion and Order*, Bankr. Case No 18-07304-ESL12, ECF No. 251, 2021 Bankr. LEXIS 1075, 2021 WL 8200008 (Bankr. D.P.R. Apr. 22, 2021). The *Opinion and Order* was appealed to Bankruptcy Appellate Panel for the First Circuit (BAP 1st Cir. No. 22-0017), which *affirmed* the dismissal through an *Opinion and Order* issued on April 21, 2022. See Vaqueria Las Martas, Inc. v. Condado 5, LLC (In re Vaqueria Las Martas, Inc.), 638 B.R. 482 (B.A.P. 1st Cir. 2022).

7.      On the same date, Barreto filed his second Chapter 12 petition (Case No. 18-07310-ESL12, ECF No. 1), which was dismissed on July 25, 2019. See *Minute Entry*, Bankr. Case No 18-07310-ESL12, ECF No. 62.

8.      On April 18, 2019, JM Dairy also filed a second bankruptcy petition, this time under Chapter 11 (Bankr. Case No. 19-02168, ECF No. 1), which was ultimately dismissed on June 28, 2021 (Bankr. Case No. 19-02168, ECF No. 97) upon Condado's request (Bankr. Case No. 19-02168, ECF No. 82).

9.      Meanwhile, on May 28, 2021, Condado filed a *Foreclosure Complaint* with the PR Court of First Instance, Superior Court of Arecibo (the "PR Court of First Instance"), Case No. AR2021CV00693 (the "Foreclosure Case") against the Debtor, the Debtor's principal and co-guarantor

(Mr. Barreto), his former spouse and co-guarantor (Ms. Maria Elena Hernandez Ruiz) and JM Dairy

(as further co-guarantor of the Loan). See Proof of Claim No. 1, Part 3, pp. 1-18, and Part 9, pp. 1-

10.

10.     Since the filing of the Foreclosure Case, the Debtor, its sole shareholder (Mr. Juan M.

Barreto Ginorio), his former spouse (Ms. Maria Elena Hernandez Ruiz) and his other corporation (JM

Dairy) have joined efforts to thwart, stall and/or delay Condado's legitimate collection efforts in the

Foreclosure Case (either by bad faith litigation tactics or by incessant the bankruptcy filings and

expressly moving for the staying of the Foreclosure Case). Below is a summary of their pleadings and

filings[1] (some of their tactics resulted in the imposition of sanctions):

| Title of Document | Filing Party | Date | SUMAC No. | Requested Remedy | Exhibit No. |
|---|---|---|---|---|---|
| *Motion Requesting Extension of Time to File Answer to Complaint* | Juan Manuel Barreto Ginorio | 07/13/2021 | 9 | Barreto Ginorio requested *30 days* to hire the counsel and answer the complaint against him. | **I** |
| *Motion by Party's Own Right* | Maria Elena Hernandez Ruiz | 07/28/2021 | 11 | Hernandez Ruiz requested *an additional term -not specified in the motion- to answer the complaint* and requested the appointment of legal counsel through Servicios Legales. | **II** |
| *Motion Assuming Legal Representation and Requesting Extension to Answer Complaint* | Juan Manuel Barreto Ginorio, through counsel | 08/09/2021 | 14 | Counsel requested *30 more days* to file an answer to the complaint. | **III** |
| *Motion Assuming Legal Representation and Requesting Extension to Answer Complaint* | Las Martas, Inc., through counsel | 08/25/2021 | 22 | Requesting *45 more days* to answer the complaint. | **IV** |

[1] For the sake of judicial economy, Condado seeks leave to submit all these documents in Spanish and, if an appeal should be taken, Condado will submit translations.

| Title of Document | Filing Party | Date | SUMAC No. | Requested Remedy | Exhibit No. |
|---|---|---|---|---|---|
| *Motion to Dismiss* | Maria Elena Hernandez Ruiz, through counsel | 09/09/2021 | 31 | Requesting the dismissal of the complaint against her because as she divorced Barreto Ginorio in 2006 and in the Divorce Decree, Barreto Ginorio consented he was responsible for all debts arising from the conjugal legal partnership *despite the fact that she is a signing party and co-guarantor to the Loan (Proof of Claim No. 1, Parts 6 and 7).* | **VI** |
| *Motion Assuming Legal Representation and Requesting Extension to Answer Complaint* | JM Dairy, Inc., through counsel[2] | 10/04/2021 | 38 | *Requesting 45 more days* to answer the complaint. | **VII** |
| *Motion to Stay Proceedings Against Las Martas, Inc.* | Las Martas, Inc. | 10/05/2021 | 43 | Requesting the case be stayed pending the outcome of Appeal No. 21-0017. | **VIII** |
| *Motion* | Maria Elena Hernandez Ruiz, through counsel | 03/07/2022 | 70 | Requesting an Order for Condado to submit all evidence related to the loan, and original copy of the file without alterations, each and every amendment, evidence, and documents related to the loan *even though she is a signing party to the Loan and all documents were attached to the Complaint.* | **IX** |

---

[2] JM Dairy filed an Answer to Complaint on November 9, 2021 (SUMAC No. 54). The Answer to Complaint was accepted by the PR State Court on November 16, 2021 (SUMAC No. 56).

| Title of Document | Filing Party | Date | SUMAC No. | Requested Remedy | Exhibit No. |
|---|---|---|---|---|---|
| *Informative Motion Requesting Case be Referred to Mediation* | Juan Manuel Barreto Ginorio, through counsel | 03/14/2022 | 79 | Designating the collateral as his principal residence and requesting mandatory mediation. | **X** |
| *Informative Motion Requesting an Extension to Respond to Plaintiff's Request for Continuance Regards to the Motion for Summary Judgment* | Juan Manuel Barreto Ginorio, through counsel | 03/23/2022 | 88 | Requesting *30 more days* to file a response to Condado's *Motion for Summary Judgment*. | **XI** |
| *Informative Motion in Response to Order Regarding Request to Activate Terms to Respond to Plaintiff's Request for Summary Judgment* | Juan Manuel Barreto Ginorio, through counsel | 04/13/2022 | 98 | Requesting that Condado's *Motion for Summary Judgment* be denied because he submitted an untimely discovery request to Condado, which forced Condado to object. | **XII** |
| *Informative Motion Requesting Clarification to Plaintiff to Answer Request for Summary Judgment* | Juan Manuel Barreto Ginorio, through counsel | 07/22/2022 | 116 | Requesting (i) updated payoff as Barreto has continued making payments to the loan and payments in 2022 exceed 12,000.00; and (ii) after updated payoff was received, requested *10 more days* to respond to the *Motion for Summary Judgment*. | **XIII** |
| *Urgent Motion Requesting Stay of Proceedings* | Las Martas, Inc., through counsel | 08/24/2022 | 129 | Requesting to stay the case due to bankruptcy filing by Las Martas, Inc., Case No. 22-02380. | **XIV** |
| *Informative Motion and Request to Stay Proceedings Due to Bankruptcy Filing* | Juan Manuel Barreto Ginorio, through counsel | 11/09/2023 | 154 | Requesting to stay proceedings as Barreto Ginorio filed for bankruptcy, Case No. 23-03681. | **XV** |

| Title of Document | Filing Party | Date | SUMAC No. | Requested Remedy | Exhibit No. |
|---|---|---|---|---|---|
| *Request to Stay Proceedings and for Entry of Default* | Maria Elena Hernandez Ruiz, through counsel | 11/10/2023 | 159 | Requesting to stay the foreclosure proceedings as Las Martas and Barreto are in bankruptcy *even though there is no co-debtor stay* (ECF Nos. 11 and 27). | **XVI** |
| *Motion Joining Request to Stay Proceedings and for Entry of Default* | JM Dairy, Inc. | 11/27/2023 | 170 | Joined request to stay the proceedings by Las Martas and Barreto *even though there is no co-debtor stay* (ECF Nos. 11 and 27).  Further, JM Dairy requested a 10-day extension to file a response to the Counterclaim. | **XVII** |
| *Motion for Reconsideration* | Las Martas, Inc., through counsel | 05/17/2024 | 187 | Counsel that sanctions imposed by the Court be vacated. | **XVIII** |
| *Informative Motion* | Juan Manuel Barreto Ginorio, through counsel | 10/01/2024 | 198 | Three years into the Foreclosure Case, he requested that the case be referred to mediation as the property object to the complaint is Barreto's only principal residence. | **XIX** |
| *Informative Motion Regarding Outcome of Foreclosure Case through Mediation via Videoconference* | Centro de Mediación de Conflictos | 12/13/2024 | 202 | Motion sets forth that no agreement was reached during mediation. | **XX** |

11.    Below are a few rulings issued by the PR Court of First Instance in the Foreclosure Case:

| Title of Ruling | Date | SUMAC No. Ruling | Resolving SUMAC No. | Granted Remedy | Exhibit No. |
|---|---|---|---|---|---|
| *Notification and Order* | 08/03/2021 | 12 | 11 | The Court granted 30 days for Hernandez Ruiz to file an answer to the | **XXI** |

| Title of Ruling | Date | SUMAC No. Ruling | Resolving SUMAC No. | Granted Remedy | Exhibit No. |
|---|---|---|---|---|---|
| | | | | Complaint and instructed her to seek/schedule a legal consultation at Servicios Legales. | |
| *Notification and Order* | 08/10/2021 | 15 | 14 | Barrero Ginorio's legal representation was accepted and the Court granted him 30 days to file an answer to the Complaint. | **XXIII** |
| *Notification and Order* | 08/26/2024 | 25 | 22 | Las Martas' legal representation was accepted and the Court granted it 30 days to file an answer to the Complaint. | **XXIV** |
| *Notification and Order* | 10/05/2021 | 41 | 38 | JM Dairy's legal representation was accepted and the Court granted it 30 days to file an answer to the Complaint. | **XXVI** |
| *Notification and Order* | 10/19/2021 | 48 | 43, 44 | The Court denied the Motion to Stay Pending Appeal. | **XXVII** |
| *Notification and Order* | 10/22/2021 | 50 | 49 | The Court afforded Barreto Ginorio a final 10-day term to file an answer to the complaint under penalty of being found in default. | **XXVIII** |
| *Minute of Initial Hearing* | 02/10/2022 | 67 | N/A | The Court ruled the following:<br>• Granted 20 days to counsel for Barreto, JM Dairy and Las Martas to Answer the Counterclaim.<br>• Granted 20 days to counsel for Barreto to inform if he will seek mediation as afforded by the law. | **XXIX** |

| Title of Ruling | Date | SUMAC No. Ruling | Resolving SUMAC No. | Granted Remedy | Exhibit No. |
|---|---|---|---|---|---|
| | | | | • The request for summary judgment by Condado is set aside and a limited discovery will be allowed prior to answering the request for summary judgment. The court offered 20 days from the day after the hearing.<br>• Granted 35 days for Barreto to file any pleading regarding mediation or *credito litigioso*.<br>• The request for dismissal is set aside and counsel for Hernandez is afforded 30 days to inform efforts with the bank.<br><br>A status hearing was scheduled for July 5, 2022, at 9:00am via videoconference. | |
| *Notification and Order* | 03/11/2022 | 73 | 70 | The Court ordered the party to initiate discovery to inquire or requests documents he is interested in from Condado. | **XXX** |
| *Notification and Order* | 03/14/2022 | 83 | 79 | The Court afforded Plaintiff and Codefendants 20 days to respond to Barreto's Motion requesting case be transferred to mediation. | **XXXI** |
| *Notification and Order* | 03/30/2022 | 93 | 88 | The Court afforded the co-defendant a final term of 15 days to file its response to the Motion for Summary Judgment. | **XXXII** |

| Title of Ruling | Date | SUMAC No. Ruling | Resolving SUMAC No. | Granted Remedy | Exhibit No. |
|---|---|---|---|---|---|
| *Notification and Order* | 04/18/2022 | 99 | 98 | The Court suspended terms of motion for summary judgment until discovery disputes are resolved on or before May 31, 2022. | **XXXIII** |
| *Notification and Order* | 07/22/2022 | 117 | 116 | The Court ordered Condado to provide payoff of debt as of present.  The Court afforded Barreto Ginorio *10 more days*, as a last extension to file his position as to the *Motion for Summary Judgment*. | **XXXIV** |
| *Partial Judgment* | 08/31/2022 | 135 | 129 | The case was stayed as to co-defendant Las Martas | **XXXV** |
| *Partial Judgment* | 11/09/2023 | 158 | 154 | The case was stayed as to co-defendant Barreto Ginorio | **XXXVI** |
| *Notification and Order* | 11/14/2023 | 163 | 159 | The Court ordered the parties to reply within 15 days. | **XXXVII** |
| *Notification and Order* | 12/04/2023 | 173 | 170 | The Court noted the Motion. | **XXXVIII** |
| *Resolution* | 04/18/2024 | 181 | 159, 170 | Denying the requests of Hernandez Ruiz and JM Dairy to stay the case. | **XXXIX** |
| *Order* | 05/15/2024 | 184 | N/A | Order imposing sanctions to Las Martas in the amount of $50.00. | **XXXX** |
| *Resolution* | 05/20/2024 | 188 | 187 | The Court granted the Motion for Reconsideration and sanctions were set aside. | **XXXXI** |
| *Order Referring Case to Mediation in Foreclosure Cases* | 10/08/2024 | 201 | 198 | The Court scheduled a mediation for October 21, 2024, at 8:45am. | **XXXXII** |

| Title of Ruling | Date | SUMAC No. Ruling | Resolving SUMAC No. | Granted Remedy | Exhibit No. |
|---|---|---|---|---|---|
| *Notification and Order* | 01/14/2025 | 203 | 202 | The Court noted the Informative Motion stating the parties did not reach an agreement in mediation. The Court scheduled a pre-trial hearing for April 8, 2025, at 9:00a.m. | **XXXXIII** |

12.     On August 16, 2022, the Debtor filed the instant **third** Chapter 12 bankruptcy petition (ECF No. 1).

13.     On September 1, 2022, Condado filed a *Motion to Dismiss* the instant bankruptcy case under Section 1208(c) of the Bankruptcy Code (ECF No. 22).  On October 3, 2022, the Debtor filed a *Response to Motion to Dismiss* (ECF No. 37).

14.     On June 15, 2023, the Bankruptcy Court held an evidentiary hearing to consider Condado's *Motion to Dismiss* and Debtor's *Opposition* and took the matter under advisement.  See *Minutes of Hearing Held on June 15, 2023*, ECF No. 143.

15.     On September 29, 2023, the Bankruptcy Court entered an *Opinion and Order* dismissing the instant case (ECF No. 148).

16.     On November 9, 2023, the Debtor filed a *Notice of Appeal* electing to have the instant appeal heard by the Bankruptcy Appellate Panel for the First Circuit (ECF No. 168).

17.     On March 5, 2025, the Bankruptcy Appellate Panel entered an *Opinion and Order* (ECF No. 190) vacating the *Opinion and Order Dismissing Case* finding that "[b[ecause § 1208(c)(9) is phrased in the conjunctive and the court's order expressly granted Condado's motion to dismiss based on that provision, we conclude here. Our determination of this narrow issue does not reach the court's assessment of the second prong of § 1208(c)(9) or any other basis for dismissal."

18.     On June 26, 2025, Condado filed a *Motion to Dismiss* (ECF No. 207), to which the Trustee opposed on August 12, 2025 (ECF No. 256) and the Debtor opposed on August 18, 2025 (ECF No. 259). Condado filed a consolidated reply on October 14, 2025 (ECF No. 299).

### III.    Proposed Conclusions of Law

i.    Condado's Proposed Conclusions of Law

*(A)    Dismissal under Section 1208(c) of the Bankruptcy Code, generally.*

19.    Section 1208(c) of the Bankruptcy Code generally provides that "[o]n request of a party in interest, and after notice and a hearing, the court may dismiss a case under this chapter for cause." 11 U.S.C. § 1208.

20.    "The determination of what constitutes cause for dismissal *is based on the circumstances of each particular case*, including the specific examples provided in section 1208(c) to protect the interests of creditors and parties in interest." In re Vaqueria Las Martas, Inc., No. 18-07304-ESL12, 2021 Bankr. LEXIS 1075, at *14, 2021 WL 8200008, at *5 (Bankr. D.P.R. Apr. 22, 2021) (italics added).

21.    "Section 1208 provides a *non-exclusive* list of reasons a bankruptcy court may dismiss a case for cause." Haffey v. Crocker (In re Haffey), 576 B.R. 540, 550 (B.A.P. 6th Cir. 2017) (italics added). Also see In re Michels, 305 B.R. 868, 872 (B.A.P. 8th Cir. 2004) ("the list set forth at section 1208(c)(1)-(9) is non-exclusive"); In re Milky Way Organic Farm, LLC, 2017 Bankr. LEXIS 417, at *10 (Bankr. D. Vt. 2017) (Section 1208(c) "is an illustrative, non-exclusive list"); In re Betteroads Asphalt, LLC, 594 B.R. 516, 556 (Bankr. D.P.R. 2018) ("the term 'cause' as a **non-exhaustive** basis for dismissal … ha[s] been explicitly included in other sections of the Code such as 11 U.S.C. §§1112(b)(1); 921(c); 930(a); 707(a); **1208(c)**; and 1307(c)") (boldface added).

22.    "The decision to dismiss a Chapter 12 petition is within the sound discretion of the bankruptcy court". Akers v. Micale, 609 B.R. 175, 184 (W.D. Va. 2019). Also see Vaqueria Las Martas, Inc. v. Condado 5, LLC (In re Vaqueria Las Martas, Inc.), 638 B.R. 482, 495 (B.A.P. 1st Cir. 2022) ("[t]he dismissal of a debtor's chapter 12 case is reviewed for abuse of discretion").

23.    "Section 1208(c) provides only for the dismissal of the case", not conversion to Chapter 7. In re Vaqueria Las Martas, Inc., 2021 Bankr. LEXIS 1075, at *14, 2021 WL 8200008, at *5.

(B)   *There is cause to dismiss the instant case for bad faith and unusual delay, and the case constitutes a two-party dispute.*

24.      Bad faith filing constitutes cause to dismiss under Section 1208(c) of the Bankruptcy Code.  See In re Hyman, 82 B.R. 23 (Bankr. D.S.C. 1987); In re Galloway Farms, Inc., 82 B.R. 486 (Bankr. S.D. Iowa 1987).

25.      Courts use the same criteria used in Chapter 13 cases to determine whether a debtor has filed a Chapter 12 petition in bad faith.  See Hall v. United States, 566 U.S. 506, 516 (2012), citing 8 Collier on Bankruptcy ¶1200.01[5] ("because chapter 12 was modeled on chapter 13, and because so many of the provisions are identical, chapter 13 cases construing provisions corresponding to chapter 12 provisions may be relied on as authority in chapter 12 cases"); In re Walton, 116 B.R. 536, 540 (Bankr. N.D. Ohio 1990); In re Wickliffe, 106 B.R. 470, 473 (Bankr. W.D. Ky. 1989) (same); In re Edwards, 87 B.R. 671 (Bankr. W.D. Okla. 1988)) ("[s]ince Chapter 12 was modeled after, and is substantially identical in many respects, to Chapter 13, decisions under Chapter 13 may be looked to in order to predict attitudes of courts to related issues which may arise under Chapter 12.").

26.      "Bankruptcy courts in the First Circuit apply *a totality of the circumstances test* to determine whether a debtor has filed a chapter [12] in good faith (or bad faith)."  In re Taal, 520 B.R. 370, 375 (Bankr. D.N.H. 2014).  Also see Cabral v. Shamban (In re Cabral), 285 B.R. 563, 573-574 (B.A.P. 1st Cir. 2002) (adopting the "totality of the circumstances test" to determine lack of good faith by affirming a bankruptcy court's decision based on the "totality of circumstances" test).  "[T]he inquiry is inherently fact sensitive, done on a case-by-case basis, and may involve consideration of other factors or a more general balancing of equities."  Sullivan v. Solimini (In re Sullivan), 326 B.R. 204, 212 (B.A.P. 1st Cir. 2005).

27.      "Bankruptcy courts routinely allow for dismissal of proceedings when pre-petition bad faith conduct is present, as courts treat such conduct as 'for cause.'"  In re Ramos, 2009 WL 2913445 at *1, 2009 Bankr. LEXIS 1086 at *4 (Bankr. S.D.N.Y. 2009).

28.      Courts in our First Circuit typically consider the following factors to determine if a petition has been filed in bad faith:

(1) debtor's accuracy in stating her debts and expenses, (2) debtor's honesty in the bankruptcy process, including whether she has attempted to mislead the court and whether she has made any misrepresentations, (3) whether the Bankruptcy Code is being unfairly manipulated, (4) the type of debt sought to be discharged, (5) whether the debt would be dischargeable in a Chapter 7, and (6) debtor's motivation and sincerity in seeking Chapter [12] relief.

In re Sullivan, 326 B.R. at 212.

29.     Two additional factors have been highlighted in our First Circuit when examining the totality of the circumstances: **(1) a debtor's history of filings and dismissals, and (2) whether a debtor only intended to defeat or circumvent state court litigation**.  See In re Sullivan, 326 B.R. at 212.  "[T]hese two factors would certainly be considered in determining whether a debtor is unfairly manipulating the Bankruptcy Code and in considering the debtor's motivation and sincerity in seeking Chapter [12] relief."  Id.  Also see In re Fleury, 294 B.R. 1, 5-6 (Bankr. D. Mass. 2011) ("A finding that the debtor lacked good faith does not require fraudulent intent by the debtor.  Malfeasance, ill will towards the creditors, malice or actual fraud is not required to find a debtor lacked good faith.").

30.     The filing of bankruptcy solely to thwart a creditor claim rather than making an honest effort to pay debts constitutes bad faith.  See Gier v. Farmers State Bank (In re Gier), 986 F.2d 1326, 1330 (10th Cir.1993) (debtor motivated by desire not to pay rather than inability to pay); In re Virden, 279 B.R. at 410 (dismissal for bad faith when creditor's filing was motivated by a desire to avoid payment to a single creditor rather than by any inability to meet his liabilities); In re Mattson, 241 B.R. 629, 634 (Bankr. D. Minn. 1999) (dismissing case with prejudice, the court found that there was only one creditor of any substance, that the debtors did everything in their power to stall and avoid payment of the debt pre-petition, and that the Chapter 13 case was filed solely to avoid payment of this debt); In re Ramji, 166 B.R. 288, 290 (Bankr. S.D. Texas 1993) (dismissing the case upon a finding of bad faith when the debtor filed the petition solely to avoid payment to a single creditor).

31.     Accordingly, courts find bad faith where a debtor has a history of prior filings, where there is no significant change in circumstances or legitimate bankruptcy purpose and, where the filing of the petition was solely to thwart a creditor's claim rather than making a honest effort to pay debts.

See Gonzales–Ruiz v. Doral Fin. Corp. (In re Gonzales-Ruiz), 341 B.R. 371, 382 (B.A.P. 1st Cir. 2006); In re Sullivan, 326 B.R. at 204; In re Fleury, 294 B.R. at 12.

32.    Bankruptcy courts also find bad faith where the "Debtor's reorganization essentially involves the resolution of a two-party dispute."  In re Fonke, 310 B.R. 809, 817 (Bankr. S.D. Tex. 2004). Also see In re Klevorn, 181 B.R. at 11.  In these cases, the debtor's bad faith was apparent from a filing motivated by or targeted at one sole creditor.  The Bankruptcy Appellate Panel for the First Circuit has also stated that dismissal is appropriate when "the bankruptcy forum is being used to resolve what is in essence a two-party dispute".  In re Efron, 529 B.R. at 405.  Also see In re Stevenson, 583 B.R. 573, 581 (B.A.P. 1st Cir. 2018) (record suggested that debtor's bankruptcy filing was motivated by or targeted at one single creditor and that it was part of a pattern of conduct aimed at thwarting that creditor's eviction efforts); In re Bared Espinosa, 2006 Bankr. LEXIS 3829, 2006 WL 3898379, at *4 (Bankr. D.P.R. Jan. 27, 2006) (dismissing the bankruptcy case where it was merely a "two-party dispute"); In re Spade, 258 B.R. 221 (Bankr. D. Colo. 2001) (dismissing involuntary chapter 7 petition where bankruptcy was filed in response to a two-party dispute between debtor and a single creditor).

33.    Here, there is no dispute that Debtor has *a long history of prior bankruptcy filings since 2011* (both prior cases were dismissed), and there *is no significant change in circumstances or legitimate bankruptcy purpose*.  This is the Debtor's third bankruptcy petition.  The First Bankruptcy Petition filed on June 21, 2011 (Case No. 11-05237-ESL12, ECF No. 1), subsequently consolidated with Case No. 11-5236-ESL12 (ECF No. 20), was dismissed on January 16, 2018 pursuant to 11 U.S.C. § 1208(c)(6) for material default with respect to the terms of a confirmed plan, and pursuant 11 U.S.C. § 1208(c)(1) for unreasonable delay prejudicial to creditors (Case No. 11-5236-ESL12, ECF No. 387).

34.    The Debtor's Second Bankruptcy Petition was filed on December 14, 2018 (Case No. 18-07304-ESL12, ECF No. 1) and was dismissed on April 22, 2021 pursuant 11 U.S.C. § 1208(c)(1) for unreasonable delay prejudicial to creditors, and Debtor's failure to file a timely confirmable plan under 11 U.S.C. § 1208(c)(3) (Case No. 18-07304-ESL12, ECF No. 251, 275).  The *Opinion and Order*

in Second Bankruptcy Petition affords a detailed recount of the Debtor's *dilatory tactics*.  See In re

Vaqueria Las Martas, Inc., 2021 Bankr. LEXIS 1075, 2021 WL 8200008.

35.     Condado has had to appear and defend itself from continuing attacks, past and

present, to no avail, and is currently working and incurring additional costs to foreclose on this same

loan that **has been past due and payable since** January 12, 2015 (Proof of Claim No. 1, Part 5, p.

22), that is, for over 10 years.  In other words,

36.     The Debtor filed this case in bad faith with the sole purpose of circumventing the

*Foreclosure Case* against the Debtor's principal and co-guarantor (Mr. Juan Manuel Barreto Ginorio),

his former spouse and co-guarantor (Ms. Maria Elena Hernandez Ruiz) and JM Dairy, Inc. (as further

co-guarantor of the Loan) in a Loan that matured **more than 10 years ago**.

37.     We underscore that at the Hearing held on June 15, 2023, Mr. Barreto (Debtor's

president and shareholder) testified *how he planned the foregoing scheme to stall the Foreclosure

Case as follows*:

Q. Now, Mr. Barreto, if Condado succeeds in its foreclosure case and it gets an order
allowing them to foreclose on the farm property, what will you do?

A. I haven't analyzed it yet.  But I've spent my entire life working in this business since I was
a child.

Q. So will you file any proceedings to stop the foreclosure?
...

A. Yes.

Q. Do you know what kind of proceeding?

A. I haven't analyzed it, it would be analyzed in the moment.

Q. But would that possibly be a bankruptcy filing?

MR. CHICO-BARRIS:  I was going to object to the question, Your Honor, because it's leading.

THE COURT:  I'm going to overrule the objection.  But do note that the answer may not be the
best interest of the debtor.

Q. Would that possibl[y] include a bankruptcy filing?

A. Total?

Q. No.  Like, a Chapter 13, Chapter 12, Chapter 11?

A. Yes.

*Transcript*, ECF No. 182, p. 29, lines 19-25, and p. 30, lines 1-13.  He also testified during cross-examination as follows:

> Q. Your counsel asked you earlier that if Condado succeeds in the foreclosure case filed with the Puerto Rico Court of First Instance, foreclosing that same property, that you would basically file for bankruptcy to stop that foreclosure, correct?
>
> A. Yes.
>
> Q. And the purpose of that would be to stop the execution of a foreclosure judgment, right?
>
> A. Yes.
>
> Q. Do you know how long this loan has been past due?
>
> A. No.

*Transcript*, ECF No. 182, p. 39, lines 22-25, and p. 40, lines 1-7.

38.     The Debtor also argues that this bankruptcy is *not* a two-party dispute because it has "many" other creditors who will be affected (*Debtor's Opposition*, ECF No. 259, p. 6). The presence of other creditors in the schedules does not change the reality that, at its core, this case revolves around a single, bitter dispute between the Debtor (and its principal) and Condado. The genesis and trajectory of all three of the Debtor's bankruptcy cases have been dictated by the conflict with Condado, and virtually every major event in these cases has been precipitated by that one relationship (the default on Condado's loan and the efforts to foreclose on the farm). Courts have recognized that cause for dismissal exists where a debtor's reorganization essentially involves the resolution of a two-party dispute and the debtor has filed in an effort to gain an advantage over one creditor. See In re Stevenson, 583 B.R. 573, 581 (B.A.P. 1st Cir. 2018) (record suggested that debtor's bankruptcy filing was motivated by or targeted at one single creditor and that it was part of a pattern of conduct aimed at thwarting that creditor's eviction efforts); In re Bared Espinosa, 2006 Bankr. LEXIS 3829, 2006 WL 3898379, at *4 (Bankr. D.P.R. Jan. 27, 2006) (dismissing the bankruptcy case where it was merely a "two-party dispute"); In re Spade, 258 B.R. 221 (Bankr. D. Colo. 2001) (dismissing involuntary chapter

7 petition where bankruptcy was filed in response to a two-party dispute between debtor and a single creditor). That is exactly the situation here.

39.     To be sure, the Debtor has other creditors. But significantly, no other creditor has joined in opposing the Motion to Dismiss or argued that it needs this Chapter 12 case to protect its interests. The only parties fighting to keep this case alive are the Debtor and the Chapter 12 Trustee, and the Trustee's concern, notably, is not about other unsecured or priority creditors, it is centered on the dispute with Condado (the Trustee essentially advocates that the Debtor should get another chance because of Condado's alleged conduct). This underscores that the driving force of the case is the Debtor-Condado feud. While the Debtor's schedules may list vendors, lenders, or governmental creditors, the day-to-day reality of this Chapter 12 proceeding has been a single-minded focus on Condado's claim, Condado's collateral (milk proceeds and the farm), and Condado's foreclosure efforts.

40.     In fact, the Debtor's own plan proposal, as mentioned, is primarily about how to handle Condado's secured claim (cram it down to collateral value) and use the remaining income for operations and other creditors. No complex multi-party restructuring is occurring or appears on the horizon, no committee of unsecured creditors, no major collective bargaining or widespread negotiation with numerous claimants. The fate of the case hinges on one creditor, Condado.

41.     Moreover, the economic realities reinforce that Condado is by far the Debtor's most significant creditor. Condado's claim (approximately $1.85 million plus years of interest) towers in comparison to all of the other claims in this case. The Debtor's prior confirmed plan (in the first case) and its failed plan attempts in the second and third cases have all been dominated by how to address the Condado debt, because without resolving that, no plan is feasible (the debt is secured by the essential assets for the dairy operation and is too large to simply ignore or pay in full). By contrast, the Debtor has made no showing that the other creditors were pressing or that they could not be dealt with through non-bankruptcy means. It appears those other debts were not the impetus for this filing. Indeed, the record from the 2023 dismissal opinion indicates a "consistent lack of payment to creditors" across the board (*Opinion and Order Dismissing Case*, Bankr. Case No. 22- 02380-ESL12, ECF No.

148, pp. 33-34, 2023 Bankr. LEXIS 2413, at *59, 2023 WL 6413170, at *17), implying the Debtor has

not been making significant payments to any creditors, inside or outside of bankruptcy. The Debtor's

non-Condado creditors are effectively along for the ride in this case, while the real battle is between

the Debtor (and Mr. Barreto) and Condado.

42.      Therefore, the Court should reject the Debtor's attempt to portray this matter as a

legitimate multi-party reorganization. In substance, it is a two-party dispute between Debtor/Barreto

and Condado, and the Debtor is using Chapter 12 as a tactical device in that dispute. This is classic

"bad faith" grounds for dismissal recognized in numerous cases. Cause exists to dismiss on this basis

as well, pursuant to § 1208(c) and the Court's inherent authority to prevent misuse of its jurisdiction.

*(C)      The Debtor, not Condado, is directly responsible for the delays in reorganization.*

43.      Both the Debtor and the Trustee attempt to shift blame to Condado for the Debtor's

failure to achieve reorganization, suggesting that Condado's conduct caused the Debtor's delays. This

contention is unsupported by the record.  The undisputed history of this Debtor in bankruptcy shows

a pattern of delay and inability to confirm a plan that is attributable to the Debtor's own actions and

financial reality, not to any misconduct by Condado.

44.      <u>First</u>, the Debtor is a repeat filer.  It already had *two* prior Chapter 12 cases before

filing the instant third bankruptcy case, and each prior petition was *dismissed* by the Court for the

Debtor's failures.  The Debtor's <u>first</u> Chapter 12 case (filed in 2011) was dismissed in January 2018

for material default of a confirmed plan and unreasonable delay prejudicial to creditors (*See* Bankr.

Case No. 11-05236-ESL12, ECF Nos. 386, 387).  The Debtor's <u>second</u> Chapter 12 case (filed in

December 2018) likewise ended in dismissal on April 22, 2021 for unreasonable delay and the

Debtor's failure to timely file a confirmable plan (*Opinion and Order*, Bankr. Case No 18-07304-ESL12,

ECF No. 251, 2021 Bankr. LEXIS 1075, 2021 WL 8200008 (Bankr. D.P.R. Apr. 22, 2021)).  These

dismissals, the last one was affirmed on appeal by the Bankruptcy Appellate Panel (<u>Vaqueria Las</u>

<u>Martas, Inc. v. Condado 5, LLC (In re Vaqueria Las Martas, Inc.)</u>, 638 B.R. 482 (B.A.P. 1st Cir. 2022)),

reflect that the Debtor, *<u>over many years</u>*, persistently failed to perform and could not propose a feasible

reorganization.  The dilatory tactics of the Debtor were so pronounced that the Court's *Opinion* gave

a detailed recount of the Debtor's repeated delays (*Opinion and Order*, Bankr. Case No 18-07304-
ESL12, ECF No. 251, 2021 Bankr. LEXIS 1075, 2021 WL 8200008 (Bankr. D.P.R. Apr. 22, 2021)).
So, long before the disputes over cash collateral in the current case, the Debtor had already
established a track record of delay and default in bankruptcy.

46.     Second, the Debtor's current Chapter 12 case has followed the same pattern.  This
case was filed on August 16, 2022, making it the Debtor's third bankruptcy petition.  After a year of
litigation, the Court dismissed this case on September 29, 2023 due to the Debtor's continuing losses
and inability to confirm a feasible plan (ECF No. 148).  Notably, the Court found that the Debtor's
financial situation had only *worsened* since the prior cases, with no substantial change in
circumstances aside from increasing debt and diminishing assets, and that "there is no hope of
rehabilitation" (*Opinion and Order Dismissing Case*, Bankr. Case No. 22- 02380-ESL12, ECF No. 148,
pp. 33-34, 2023 Bankr. LEXIS 2413, at *59, 2023 WL 6413170, at *17).  The Court observed that the
Debtor had "consistently demonstrated for the past eleven years (in bankruptcy) that [it] do[es] not
have a viable farming operation" (id.), that the estate was steadily diminishing, and that the Debtor
"does not operate a sustainable milk producing operation" capable of meeting its expenses and plan
obligations (id.). These findings underscore that any delays in confirming a plan have been due to the
Debtor's own operational failures and insolvency, not any behavior by Condado.  Indeed, the Debtor's
debt to Condado has been fully matured since January 2015 (over ten years ago), yet the Debtor
remains unable to pay that obligation or reorganize its business. As the Court succinctly noted, the
Debtor "may not continue to speculate with Condado's money" (id.).  Condado has only asserted its
rights in bankruptcy.

46.     Third, the suggestion that Condado's post-dismissal retention of certain milk sale
proceeds forced the Debtor into this third bankruptcy is both legally and factually misplaced.  To begin
with, the loans in this case matured over 10 years ago, so Condado has been entitled for full collection
since then.  Mere allegations of creditor misconduct do not excuse a debtor's bad faith or erase cause
for dismissal.  Section 1208(c) focuses on the Debtor's conduct and the viability of the reorganization,
and the Court's duty is "to protect the interests of creditors and parties in interest" and prevent abuse

of the process.  See In re Vaqueria Las Martas, Inc., No. 18-07304-ESL12, 2021 Bankr. LEXIS 1075, at *14, 2021 WL 8200008, at *5 (Bankr. D.P.R. Apr. 22, 2021).  Here, even setting aside the dispute over the milk proceeds, the objective record shows the Debtor was suffering continuing losses and was unable to propose a confirmable plan, which is why the Court (in 2023) dismissed the case for cause.  The Debtor's inability to reorganize cannot be pinned on Condado.  The doctrine of unclean hands cannot be used by the Debtor to justify the abuse of the bankruptcy process.  A debtor who has repeatedly failed to meet its obligations for over a decade cannot evade dismissal by pointing to the creditor's purported bad faith; as shown above, the Debtor's own history of delay and default is the central cause of its predicament (even before Condado acquired these loans).

47.     In sum, the record establishes that the Debtor, not Condado, is responsible for the protracted and fruitless reorganization efforts spanning the last decade. The Debtor's pattern of delay was firmly in place long before the recent disputes over cash collateral, and it is the Debtor's consistent inability to operate profitably and propose feasible plans that has led to serial bankruptcy filings. Condado's enforcement of its rights as a secured creditor is not the cause of the Debtor's failures. Rather, it is the Debtor's own failures that have compelled Condado to repeatedly seek relief. Accordingly, the "unreasonable delay" in this case (and the prior cases) is attributable squarely to the Debtor. Cause for dismissal under § 1208(c)(1) has been amply demonstrated.

*(D)     The Debtor's serial filings were not in good faith and were intended to frustrate foreclosure.*

48.     The Debtor alleges that its bankruptcy filings were made in good faith and not for the purpose of frustrating Condado's foreclosure efforts. The factual record tells a very different story. Especially this *third* bankruptcy case, which was filed as part of an orchestrated effort to thwart Condado's foreclosure and collection efforts after the dismissal of the second bankruptcy case, rather than to genuinely reorganize the Debtor's financial affairs. Indeed, the Debtor's own principal effectively admitted that the bankruptcy route was being used as a weapon to forestall foreclosure.

49.     Most telling is the sworn testimony of the Debtor's principal, Mr. Juan M. Barreto Ginorio.  When questioned in open court by Las Martas' counsel about his response if Condado succeeded in obtaining a foreclosure judgment against the farm property, Mr. Barreto candidly

acknowledged that he would simply file for bankruptcy *yet again* to halt that foreclosure, with the express purpose "to stop the execution of a foreclosure judgment". *Transcript*, ECF No. 182, p. 39, lines 22-25, and p. 40, lines 1-7. This admission is powerful evidence of the Debtor's true motive in its (and his own) repeated bankruptcies. It confirms that the Debtor (through its principal) views bankruptcy not as a means to restructure debts in an orderly way, but as a last-ditch tool to prevent Condado from enforcing its mortgage. Thus, the Debtor's most current bankruptcy filing was "motivated by or targeted at one sole creditor" (Condado), which is the hallmark of a bad-faith filing. See In re Stevenson, 583 B.R. 573, 581 (B.A.P. 1st Cir. 2018). As the *Motion to Dismiss* succinctly put it, the Debtor's pattern of conduct is aimed at thwarting Condado's foreclosure and collection efforts on a loan that has been past due and payable *for over 10 years*, making this filing nothing more than an attempt to frustrate a creditor. Such conduct is both bad faith and constitutes a two-party dispute.

50.     The Debtor argues that it filed this case to "pay its debts to the best of its ability" (*Debtor's Opposition*, ECF No. 259, p. 7), not to stop a foreclosure of property owned by a third party. But this self-serving characterization is flatly contradicted by the chronology of events. On August 24, 2022, just days after filing the instant petition (ECF No. 1: 8/16/2022), the Debtor rushed to the Puerto Rico Court of First Instance and to stay the foreclosure proceedings. The timing speaks volumes: Condado's foreclosure case (filed in 2021) had been progressing toward a likely judgment (Condado had a summary judgment motion pending), and the Debtor made its Chapter 12 filing at the eleventh hour to invoke the automatic stay and halt that process. The Debtor's immediate action to notify the state court of the bankruptcy and seek a stay demonstrates that stopping the foreclosure was indeed a primary purpose of the filing. It is disingenuous for the Debtor to claim otherwise. The bottom line is that the Debtor's use of the automatic stay had the intended effect of freezing the foreclosure action against the farm and shielding the Debtor's principal's asset from creditor execution, at least temporarily.

51.     Finally, the Debtor points to certain changes in circumstances, for example, an increase in its cattle herd at the time of filing, and the resolution of the dispute over milk proceeds (*Debtor's Opposition*, ECF No. 259, p. 7), to argue that this case was filed with genuine reorganization

prospects. But those purported improvements have proven fleeting or illusory. The Debtor admits that its herd size diminished again due to the very cash collateral dispute it blames on Condado (id.), and by the time of the oppositions, the Debtor still had no confirmed plan on file. In fact, the Court's findings in its *Opinion and Order Dismissing Case* (ECF No. 148) make clear that nothing fundamental had changed for the better: the Debtor's asset base and income remained insufficient, and the looming foreclosure on the farm (the Debtor's place of operations) threatened the viability of any plan. The natural disasters in 2017 (which the Debtor cites as the reason for its first plan's failure) do not explain or excuse the Debtor's inability to reorganize in the many years since. By 2023, the Court concluded that the Debtor's operation "has continued to diminish for the past four years and nine months" and that "there is no reasonable likelihood" of rehabilitation. See *Opinion and Order Dismissing Case*, ECF No. 148, pp. 33-34, 2023 Bankr. LEXIS 2413, at *59, 2023 WL 6413170, at *17. Against this backdrop, the Debtor's insistence that it is acting in good faith simply cannot be taken at face value. Objectively, the bankruptcy filing is aimed at delaying Condado's collection efforts, rather than a good-faith effort to promptly restructure and pay creditors.

52.     In sum, the Debtor's third bankruptcy filing was another calculated move to interfere with Condado's foreclosure of a long-overdue debt. The Debtor's own words and actions belie any claimed good faith. This Court (and others) have recognized that filing a bankruptcy solely to hinder a creditor's actions is a paradigmatic lack of good faith. See In re Cameron, No. 3:18-CV-01165 (JCH), 2019 U.S. Dist. LEXIS 51095, 2019 WL 1383069, at *8 (D. Conn. Mar. 27, 2019) (finding debtors engaged in "bad faith scheme to hinder and delay the completion of the Foreclosure Action" where "it appears that [their] bankruptcy litigation is part of a broader strategy to use legal proceedings to forestall foreclosure"); In re Felberman, 196 B.R. 678, 681 (Bankr. S.D.N.Y. 1995) ("[t]he filing of a bankruptcy petition merely to prevent foreclosure, without the ability or the intention to reorganize, is an abuse of the Bankruptcy Code"); Santiago v. Carrión (In re Santiago), 671 B.R. 774, 781 (B.A.P. 1st Cir. 2025) ("repeated filings aimed solely at frustrating foreclosure through invocation of the automatic stay constitutes bad faith and an abuse of the bankruptcy process"); In re Fleury, 294 B.R. 1, 7 (Bankr. D. Mass. 2003) (stating that debtor's history of filings demonstrated she was "not making

an honest effort to repay her debts to the best of her abilities but instead [wa]s attempting to thwart payment to the Creditor"); Gier v. Farmers State Bank (In re Gier), 986 F.2d 1326, 1330 (10th Cir.1993) (debtor motivated by desire not to pay rather than inability to pay); In re Virden, 279 B.R. at 410 (dismissal for bad faith when creditor's filing was motivated by a desire to avoid payment to a single creditor rather than by any inability to meet his liabilities); In re Mattson, 241 B.R. 629, 634 (Bankr. D. Minn. 1999) (dismissing case with prejudice, the court found that there was only one creditor of any substance, that the debtors did everything in their power to stall and avoid payment of the debt pre-petition, and that the Chapter 13 case was filed solely to avoid payment of this debt); In re Ramji, 166 B.R. 288, 290 (Bankr. S.D. Texas 1993) (dismissing the case upon a finding of bad faith when the debtor filed the petition solely to avoid payment to a single creditor). That is exactly the scenario here. Therefore, cause exists to dismiss this case for bad faith under the Bankruptcy Code's broad "for cause" standard (as part of the Court's § 1208(c) analysis).

*(E)    The automatic stay was invoked to protect property the Debtor does not own, illustrating the abuse of process.*

53.    The Debtor and Trustee both argue that this bankruptcy case does not impact the foreclosure of property not owned by the Debtor (namely, the farm property on which the dairy operates, which is owned by Mr. Barreto personally) (See *Trustee's Opposition*, ECF No. 256, p. 13; *Debtor's Opposition*, ECF No. 259, p. 1).  This argument attempts to downplay the Debtor's misuse of the automatic stay, but it is not supported by the facts.  In reality, the Debtor and its insiders have repeatedly exploited the bankruptcy stay to halt foreclosure proceedings against the Barreto farm, even though the property is not part of this Debtor's estate, which underscores the abusive purpose of these filings.

54.    The Debtor's third bankruptcy petition (ECF No. 1) immediately prompted a request to stay the foreclosure case, despite the farm being owned by Mr. Barreto and this is a commercial loan, not a consumer debt (which renders the co-debtor stay inapplicable). This was not an isolated event. The record shows a concerted, multi-party effort to continuously hinder and stall the foreclosure through bankruptcy filings by different parties (See Summary of Pleadings made by the Debtor and its

insiders, ECF No. 207, pp. 4-10). When this Court dismissed the Debtor's case in September 2023 (ECF No. 148) (thereby terminating the stay pursuant to § 362(c)(2)(B)), Condado moved again to advance its Foreclosure Case with the PR Court of First Instance. To avoid that, Mr. Barreto himself filed a personal bankruptcy on November 9, 2023 (Case No. 23-03681, ECF No. 1), and immediately notified the state court to stay the foreclosure proceedings due to his individual Chapter 11 case. The very next day, November 10, 2023, Mr. Barreto's former spouse (a co-guarantor on the loan) likewise asked the PR Court of First Instance to stay the Foreclosure Case, citing the pending bankruptcies of both Las Martas and Mr. Barreto. And just weeks later, on November 27, 2023, the related entity JM Dairy, Inc. joined in requesting a stay of the foreclosure, again invoking the bankruptcy filings of Las Martas and Mr. Barreto.

55.    This pattern of serial filings by the Debtor and its insiders to halt the Foreclosure Case on the Barreto farm is exactly what Condado has argued, and what the Debtor denies. The Debtor insists the case does not impact the foreclosure of third-party property, but the only reason the foreclosure has not been completed after years of litigation is because at every turn, one of the Barreto-affiliated parties has filed for bankruptcy and/or has pleaded for a stay of the Foreclosure Case. That is strategic bad faith.

56.    Indeed, Condado's *Motion to Dismiss* detailed how the Debtor, Mr. Barreto, his ex-spouse, and JM Dairy have joined efforts to thwart, stall and/or delay the foreclosure through a barrage of filings, expressly moving for the staying of the Foreclosure Case at each opportunity. The state court record (summarized in the *Motion to Dismiss*, ECF No. 207, pp. 4-10) is replete with examples of these tactics, some of which even resulted in sanctions against the Debtor's side. It is therefore untenable for the Debtor to claim that its bankruptcy has no effect on the foreclosure. On the contrary, shielding the Barreto farm from foreclosure has been a central goal of these bankruptcies.

57.    In summary, the *Oppositions*' assertion that this case "does not impact" the foreclosure of non-estate property is puzzling and plainly wrong. The impact has been very real, by design: the Debtor's filing (and the subsequent filings by insiders) have kept the foreclosure in limbo for years. This factor strongly supports dismissal. The use of Chapter 12 as a shield for a third party's property,

especially in the context of serial filings, confirms that the Debtor's case was not filed for a valid reorganization purpose. It is additional evidence of bad faith and cause for dismissal.

(F)    *The totality of circumstances demonstrates bad faith and abuse of the bankruptcy process.*

58.    When the Court considers the totality of the circumstances, the conclusion is inescapable: the Debtor's <u>third</u> bankruptcy is a bad faith, repeat filing and an abuse of the bankruptcy process.  Nothing has changed since the previous bankruptcy filing.  And neither the Debtor's or the Trustee's arguments dispel this conclusion.

59.    This Debtor has been in bankruptcy three times (2011, 2018, and 2022), and both prior cases were dismissed ((<u>See</u> Bankr. Case No. 11-05236-ESL12, ECF Nos. 386, 387; *Opinion and Order*, Bankr. Case No 18-07304-ESL12, ECF No. 251, 2021 Bankr. LEXIS 1075, 2021 WL 8200008 (Bankr. D.P.R. Apr. 22, 2021)). The Debtor's principal and affiliated company (JM Dairy) have also filed bankruptcies during this period. Such a history of serial filings weighs heavily in favor of bad faith.

60.    There has been no significant change in the Debtor's financial or operational circumstances that would justify this third filing. In fact, the Debtor's condition has worsened over time, as this Court meticulously determined in its *Opinion and Order* (ECF No. 148).  Assets (like the cattle herd) have decreased as per the Debtor's own admission (*Debtor's Opposition*, ECF No. 259, p. 7), liabilities have increased, and the farm property remains under threat of foreclosure. Filing a new case without a bona fide change or new hope of rehabilitation suggests an intent to unfairly manipulate the Bankruptcy Code, not a genuine reorganization effort.

61.    Importantly, the timing and conduct of the Debtor and its insiders reveal that the *primary* motivation of this filing was to halt Condado's Foreclosure Case. The Debtor's principal openly admitted that (*Transcript*, ECF No. 182, p. 39, lines 22-25, and p. 40, lines 1-7), and indeed bankruptcy filings were orchestrated at every critical juncture of the Foreclosure Case. Courts widely recognize such use of bankruptcy, as a sword against one creditor on a long-defaulted debt, as strong evidence of bad faith.  See <u>Gonzales–Ruiz v. Doral Fin. Corp. (In re Gonzales-Ruiz)</u>, 341 B.R. 371, 382 (B.A.P. 1st Cir. 2006); <u>In re Sullivan</u>, 326 B.R. at 204; <u>In re Fleury</u>, 294 B.R. at 12.

62.     The Debtor, its shareholder (Mr. Barreto), his former spouse, and his other corporation (JM Dairy) have taken turns filing bankruptcy and/or pleadings to stall and hinder the foreclosure in a coordinated fashion. This pattern of repetitive filings, sometimes in rapid succession, indicates an abuse of the bankruptcy stay and a deliberate attempt to frustrate Condado's legitimate non-bankruptcy collection rights. Such conduct goes far beyond the good-faith use of the Bankruptcy Code's breathing spell: It is an improper scheme to delay, hinder or defraud creditors, which the Code does not condone.

63.     Throughout the Debtor's bankruptcies, the lack of a viable business model has been a constant. The most recent findings by this Court (in 2023) were that the Debtor had "no hope of rehabilitation" and could not propose a feasible plan because it "does not operate a sustainable" farming operation. *Opinion and Order Dismissing Case*, Bankr. Case No. 22- 02380-ESL12, ECF No. 148, pp. 33-34, 2023 Bankr. LEXIS 2413, at *59, 2023 WL 6413170, at *17. The Debtor's pattern of nonpayment (the one with Condado has been past due and payable in its entirety since 2015) continues unabated. The absence of any realistic prospect of reorganization, even after years in Chapter 12, underscores that this case serves only to delay inevitable consequences, not to reorganize in the proper sense.

64.     Viewing these factors together, the totality of circumstances overwhelmingly supports a bad faith finding. This case exemplifies the scenario in which dismissal is warranted to protect the bankruptcy system from misuse.  The Debtor's third filing was motivated by or targeted solely at Condado, and its conduct has been aimed at thwarting Condado's foreclosure on a decade-old debt. The Debtor's long history in bankruptcy (14 years of intermittent proceedings with no successful reorganization or repayment) and its tactical maneuvers in and out of court demonstrate an abuse of the bankruptcy process for purposes of delay and obstruction.  This is precisely the kind of scenario that § 1208(c) (and the Court's inherent powers) are meant to address. Each of the statutory grounds cited in the *Motion to Dismiss* is satisfied here: unreasonable delay prejudicial to creditors, failure to propose a feasible plan, and bad faith use of Chapter 12 to resolve a two-party dispute. Taken together, these circumstances compel the dismissal of the case.

### IV.     **Proposed Witnesses**

i.      Condado's Proposed Witness:

65.     Condado does not anticipate calling witnesses at the hearing, as the relevant facts are established by the docket and the parties' filings, from which this court may take judicial notice. However, Condado reserves the right to call witnesses, including without limitation Gabriel de Hoyos and/or Mr. Juan M. Barreto (a hostile witness to Condado).  Condado also reserves all rights and objections on all bases set forth in the Federal Rules of Bankruptcy Procedure, Federal Rules of Civil Procedure, Federal Rules of Evidence, and governing law or rules of similar import.

### V.     **Proposed Evidence**

i.      Condado's Proposed Evidence

| CONDADO'S ID (LTR) | DEBTOR'S ID (NO.) | EXHIBIT LTR/NO. | JOINT EXHIBIT | DESCRIPTION OF EXHIBIT |
|---|---|---|---|---|
| A | | | | Exhibit I - SUMAC 9 - Motion for Extension to Answer Complaint |
| B | | | | Exhibit II - SUMAC 11 - Motion for Extension to Answer Complaint |
| C | | | | Exhibit III - SUMAC 14 - Motion Assuming Representation and for Extension to Answer Complaint |
| D | | | | Exhibit IV - SUMAC 22 - Motion Assuming Representation and for Extension to Answer Complaint |
| E | | | | Exhibit VI - SUMAC 31 - Motion to Dismiss |
| F | | | | Exhibit VII - SUMAC 38 - Motion Assuming Representation and for Extension to Answer Complaint |
| G | | | | Exhibit VIII - SUMAC 43 - Motion to Stay Proceedings Against Las Martas |
| H | | | | Exhibit IX - SUMAC 70 Motion |
| I | | | | Exhibit X - SUMAC 79 - Informative Motion and Request Case be Referred to Mediation |

| CONDADO'S ID (LTR) | DEBTOR'S ID (NO.) | EXHIBIT LTR/NO. | JOINT EXHIBIT | DESCRIPTION OF EXHIBIT |
|---|---|---|---|---|
| J | | | | Exhibit XI - SUMAC 88 - Informative Motion and for Extension to Answer Motion for continuance of deadlines related to the Motion for Summary Judgment |
| K | | | | Exhibit XII - SUMAC 98 - Informative Motion |
| L | | | | Exhibit XIII - SUMAC 116 - Informative Motion and Request for Clarification to Aswer the Motion for summary Judgment |
| M | | | | Exhibit XIV - SUMAC 129 - Urgent Motion Requesting Stay of Proceedings |
| N | | | | Exhibit XV - SUMAC 154 - Informative Motion and Request to Stay Proceedings |
| O | | | | Exhibit XVI - SUMAC 159 - Request to Stay Proceedings and for Entry of Default |
| P | | | | Exhibit XVII - SUMAC 170 - Joinder to Request to Stay Proceedings and Extension of time |
| Q | | | | Exhibit XVIII - SUMAC 187 - Motion for Reconsideration |
| R | | | | Exhibit XIX - SUMAC 198 - Informative Motion and Request Case be Referred to Mediation |
| S | | | | Exhibit XX - SUMAC 202 - Informative Motion Regarding Outcome of Mediation |
| T | | | | Exhibit XXI - SUMAC 12 - Notification and Order |
| U | | | | Exhibit XXIII - SUMAC 15 - Notification and Order |
| V | | | | Exhibit XXIV - SUMAC 25 - Notification and Order |
| W | | | | Exhibit XXVI - SUMAC 41 - Notification and Order |

| CONDADO'S ID (LTR) | DEBTOR'S ID (NO.) | EXHIBIT LTR/NO. | JOINT EXHIBIT | DESCRIPTION OF EXHIBIT |
|---|---|---|---|---|
| X | | | | Exhibit XXVII - SUMAC 48 - Notification and Order |
| Y | | | | Exhibit XXVIII - SUMAC 50 - Notification and Order |
| Z | | | | Exhibit XXIX - SUMAC 67 - Minute of Initial Hearing |
| AA | | | | Exhibit XXX - SUMAC 73 - Notification and Order |
| BB | | | | Exhibit XXXI - SUMAC 83 - Notification and Order |
| CC | | | | Exhibit XXXII - SUMAC 93 - Notification and Order |
| DD | | | | Exhibit XXXIII - SUMAC 99 - Notification and Order |
| EE | | | | Exhibit XXXIV - SUMAC 117 - Notification and Order. |
| FF | | | | Exhibit XXXV - SUMAC 135 - Partial Judgment |
| GG | | | | Exhibit XXXVI - SUMAC 158 - Partial Judgment |
| HH | | | | Exhibit XXXVII - SUMAC 163 - Notification and Order |
| II | | | | Exhibit XXXVIII - SUMAC 173 - Notification and Order |
| JJ | | | | Exhibit XXXIX - SUMAC 181 Resolution |
| KK | | | | Exhibit XXXX - SUMAC 184 Order |
| LL | | | | Exhibit XXXXI - SUMAC 188 Resolution |
| MM | | | | Exhibit XXXXII - SUMAC 201 - Order Referring Case to Mediation |
| NN | | | | Exhibit XXXXIII - SUMAC 203 - Notification and Order |

Condado reserves the right to present evidence (including rebuttal evidence) during the hearing. Condado also reserves all rights and objections on all bases set forth in the Federal Rules of Bankruptcy Procedure, Federal Rules of Civil Procedure, Federal Rules of Evidence, and governing law or rules of similar import.

<u>Prayer for Relief</u>

WHEREFORE, Condado respectfully requests the Court to accept this Pre-Trial Report in compliance with the *Order and Notice Setting Hearing* (ECF No. 260) and grant any further relief that is equitable, just and proper.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, on this 16th day of December 2025.

**Ferraiuoli** LLC
Attorneys for Condado
American International Plaza
250 Muñoz Rivera Avenue
6th Floor
San Juan, PR 00918
PO Box 195168
San Juan, PR 00919-5168
Telephone: (787) 766-7000
Facsimile: (787) 766-7001


*/s/ Gustavo A. Chico-Barris*
GUSTAVO A. CHICO-BARRIS
USDC-PR No. 224205
gchico@ferraiuoli.com


*/s/Tomás F. Blanco-Pérez*
TOMAS F. BLANCO-PEREZ
USDC-PR No. 304910
tblanco@ferraiuoli.com