**UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO RICO**

```
-----------------------------------------------------------X
In re:                                                     :    Chapter 12
                                                           :
LAS MARTAS, INC.                                           :    Case No. 22-02380 (ESL)
                                                           :
            Debtor.                                        :
                                                           :
-----------------------------------------------------------X
```

**DEBTOR'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

TO THE HONORABLE COURT:

COMES NOW the Debtor, Las Martas, Inc., through the undersigned counsel, respectfully submits these proposed findings of fact and conclusions of law:

PROPOSED FINDINGS OF FACT

1. This case was filed in good faith.

2. Debtor's circumstances changed significantly since the prior case.

3. As of the filing of this case, Debtor had additional cows and thus additional production capacity.  It had 45 milking cows at the time of the 2018 petition (which number declined during the prior case); it had 61 at the time the present case was filed.  [See Schedule A/B from 2018 case; Schedule A/B from 2022 case].

4. Debtor's level of milk production at the time this case was filed was significantly greater than during the prior case.  [See MORs from both cases].

5. Comparing August-November 2018 and 2022, Debtor had 52-59 cows in production in 2022, as compared to 39-42 in 2018. Debtor's biweekly milk production averaged under 6000

litres in 2018; in 2022, it averaged over 9700 litres, an increase of over 50%. Milk proceeds were under $4000/2 weeks in 2018; in 2022, they have averaged over $8000, more than double. This is a material change as of the time of filing this case, and had Debtor received the proceeds of its milk production, it would have allowed the Debtor to operate profitably. [Production Comparison Chart, MORs, Testimony of Barreto and Galindez]

6. Milk production will increase once Debtor receives the withheld funds, as they will allow the Debtor to purchase more cows and use feed designed to increase milk production, instead of primarily grazing. [Testimony of Barreto and Galindez]

7. Debtor also recently installed a new roof on its production facility, which provides a better environment for the cows, particularly in strong sun and heat, thus contributing to increased production. [Testimony of Barreto]

9. After the 6-month window of interest-only payments to Condado 5 (to allow for those increases to take effect), the Plan provides for payments to Condado 5 of $2596/month; $526/month to the SBA; and $2500/month to the Trustee for the first year, and increasing to $3500 thereafter.

10. The Debtor has not been paying a full salary to its principal, Juan Barreto, nor paying him rent for the farm, because its milk proceeds have been paid to Condado 5 or escrowed. [Testimony of Barreto, MORs]   If Debtor operates as proposed, it will increase production, and be able to not only fund the payments under the plan, but to increase those payments over time as production increases.

11. The Debtor's increased milk production will be sufficient to pay rent and salary sufficient to pay Condado the value of its claim secured by the farm in his individual case, as well as to otherwise fund a plan in the individual case.

12. Debtor also has paid off or had forgiven certain debts, and has different creditors including an SBA EIDL loan on favorable terms. [Schedules from 2018 and 2023 cases; claims registers]. The claims filed are similar to the prior case, although some claims have been satisfied (or reduced, including Condado 5). The only significant new claim is the Covid EIDL SBA loan, which is payable over 30 years at 3.75% ($526/month) by its terms.

13. Further, the value of milk quotas has declined significantly, reducing the value of Condado's security interest and freeing up funds to pay other creditors. [Testimony of Barreto, Galindez; ORIL certificate]. This decline in asset value benefits Debtor because that asset is fully encumbered and thus the value of Condado 5's secured claim that Debtor has to pay has declined, freeing up revenue (unencumbered by Condado 5's lien) for operations and to pay other creditors.

15. This case was filed to stop the diversion of Debtor's payments for its milk to Condado so that the money can be used to operate in order to fairly and equitably pay its debts, in full or in part. [Barreto Testimony] Thus is a legitimate bankruptcy purpose – to reorganize, by using the funds that had been taken solely by Condado to pay all legitimate creditors. It filed not, as Condado alleged, to stop a foreclosure of property owned by a third party, but to stop diverting all funds to Condado, and reorganize by paying Condado the value of its secured claim, and using the remaining funds to operate and to repay other creditors.

16. Debtor has filed a confirmable plan, so there will be no unreasonable delay, and any delay was due to the actions of Condado in continuing to take Debtor's funds without a valid lien on them, as the Court in fact held in both cases.

17. As for being a two-party dispute, or a single creditor, Debtor's schedules belie that assertion. There are many substantial creditors, and they should all be treated fairly and

equitably, as the Code provides.

CONCLUSIONS OF LAW

1. Condado has no lien on Debtor's milk proceeds.

2. Without that lien, the plan in this case is eminently confirmable, and is certainly feasible (that "the debtor will be able to make all payments under the plan and to comply withthe plan," 12 U.S.C. § 1225(a)(5)).

3. To dismiss a case, cause must first exist, in which event then and only then does the Court have discretion to dismiss. *See In re Costa Bonita Beach Resort Inc.*, 479 BR 14, 38 (Bankr. D. P.R. 2012) (cause must first be proven before court considers dismissal or conversion, under § 1112).

4. There is no "cause" based on loss or diminution of assets since the case was filed, as the Debtor is operating quite profitably once the payments to Condado/the Court's escrow are factored into the Debtor's revenue.

5. Condado 5 has failed to establish cause for dismissal.

6. This case was not filed in bad faith. Courts in the First Circuit typically consider the following factors to determine if a petition has been filed in bad faith: (1) debtor's accuracy in stating her debts and expenses, (2) debtor's honesty in the bankruptcy process, including whether she has attempted to mislead the court and whether she has made any misrepresentations, (3) whether the Bankruptcy Code is being unfairly manipulated, (4) the type of debt sought to be discharged, (5) whether the debt would be dischargeable in a Chapter 7, and (6) debtor's motivation and sincerity in seeking Chapter [12] relief. *In re*

*Sullivan*, 326 B.R. 204, 212 (B.A.P. 1st Cir. 2005). Condado does not and cannot show bad faith under any of these factors, particularly given the significant changes of circumstances.

7. Bad faith filing, which this is not, is not in itself cause for dismissal in any event. The First Circuit, in the case of *In re Capital Food Corp.*, 490 F.3d 21, 24 (1st Cir. 2007), expressly declined to decide whether section 1112(b) imposes a good faith filing requirement. Chapter 12 also has no good faith filing requirement, unlike Chapter 13 (Compare § 1325(a)(7) with § 1225(a) – "(7) the action of the debtor in filing the petition was in good faith" is not present in § 1225). Congress intended that difference to have meaning.

8. This is not a single creditor case, although being a single creditor case does not mean a case is filed in bad faith. "A single debt of more than $500,000 can be just as oppressive as a thousand smaller ones and can make the need for bankruptcy relief just as real." *In re Tallman*, 397 BR 451 (Bankr. N.D. Ind. 2008).

9. Nor is this a two-party dispute justifying dismissal.

> "Petitions in bankruptcy arising out of a two-party dispute do not per se constitute a bad-faith filing by the debtors." *In re Stolrow's, Inc.*, 84 B.R. 167, 171 (9th Cir. BAP 1988). Courts that find bad faith based on two-party disputes do so where "it is an apparent two-party dispute that can be resolved outside of the Bankruptcy Court's jurisdiction." *Oasis at Wild Horse Ranch, LLC v. Sholes (In re Oasis at Wild Horse Ranch, LLC)*, 2011 WL 4502102 at *10, 2011 Bankr.LEXIS 4314 at *29 (9th Cir. BAP Aug. 26, 2011) (emphasis added) (citing *N. Cent. Dev. Co. v. Landmark Capital Co. (In re Landmark Capital Co.)*, 27 B.R. 273, 279 (D.Ariz.1983)); and see *St. Paul Self Storage Ltd. P'ship,* 185 B.R. [580,] 583 [(9th Cir. BAP 1995)] (debtor's only significant asset was a claim against one creditor set to be tried in state court and bankruptcy court supervision of debtor's liquidation was not necessary to protect other creditors). Typical bad faith two-party dispute cases may involve delays on the eve of trial (litigation tactics), forum shopping, new-debtor syndrome (special purpose entities), repeat filers, and repeatedly delayed foreclosure sales. There are no such common indicators here.

*In re Sullivan*, 522 BR 604, 616 (9th Cir. BAP 2014). Other than the fact that this is a repeat filing, those factors do not exist here either.

10. As there is no cause to dismiss this case, the motion to dismiss must be denied.

Dated: December 16, 2025.

Respectfully submitted,

/s/ Daniel M. Press
Daniel M. Press, #204704
CHUNG & PRESS, P.C.
6718 Whittier Ave., Suite 200
McLean, VA 22101
(703) 734-3800
dpress@chung-press.com

CERTIFICATE OF SERVICE

      I hereby certify that on December 16, 2025, I electronically filed the foregoing with the Clerk of the Court using the Next Gen CM/ECF system, which will send notification of such filing to all Next Gen CM/ECF participants in this case, including counsel for Condado 5, the Chapter 12 Trustee, and the U.S. Trustee for Region 21.

                                             /s/ Daniel M. Press
                                             Daniel M. Press, #204704